UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOTTI KAPLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE and IMAX CORPORATION,<br><br>Defendants. | Case No. 1:06-CV-06128 (NRB) |
| SANTIAGO GUZMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,<br><br>Defendants. | Case No. 1:06-CV-006235 (NRB) |

**[Caption continues on next page]**

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ROBERT LIEBLANG FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

| | |
|---|---|
| ERIC S. BERGEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE and IMAX CORPORATION,<br><br>Defendants. | Case No. 1:06-CV-06313 (NRB) |
| MICHAEL J. LAROSA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,<br><br>Defendants. | Case No. 1:06-CV-06349 (NRB) |
| ROBERT FEENEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,<br><br>Defendants. | Case No. 1:06-CV-06449 (NRB) |

**[Caption continues on next page]**

| | |
|---|---|
| FLOYD REYNOLDS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER and FRANCIS T. JOYCE,<br><br>Defendants. | Case No. 1:06-CV-06693 (NRB) |
| ANTHONY CAIAFA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, FRANCIS T. JOYCE, BRADLEY J. WECHSLER, and KATHRYN A. GAMBLE,<br><br>Defendants. | Case No. 1:06-CV-07057 (NRB) |
| ROBERT B. GRAY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER and FRANCIS T. JOYCE,<br><br>Defendants. | Case No. 1:06-CV-07162 (NRB) |

x

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND........................................................................................ 2

POINT I: THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES................ 4

POINT II: MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF .................................... 4

A. THE PROCEDURE REQUIRED BY THE PSLRA ............................................. 5

B. MOVANT SATISFIES THE LEAD PLAINTIFF REQUIREMENTS OF THE PSLRA ........................................................................................ 6

1. Movant Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff.......................................................................... 6

2. Movant Has The Requisite Financial Interest In The Relief Sought By The Class........................................................................... 6

3. Movant Otherwise Satisfies Rule 23....................................................... 8

POINT III : MOVANT'S CHOICE OF LEAD COUNSEL SHOULD BE APPROVED......... 11

CONCLUSION............................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Babcock v. Computer Assocs. Int'l, Inc.*,
212 F.R.D. 126 (E.D.N.Y. 2003) ............................................ 9, 10

*Compare Montoya v. Mamma.com, Inc.*,
2005 U.S. Dist. LEXIS 10224 (S.D.N.Y. May 31, 2005) ............................ 7

*Goplen v. 51job, Inc.*,
2005 U.S. Dist. LEXIS 15059 (S.D.N.Y. July 26, 2005) ............................ 7

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)............................................ 6

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ............................................ 8

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
2004 U.S. Dist. LEXIS 27043 (N.D. Ohio May 12, 2004)............................ 8

*In re MicroStrategy, Inc. Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) ............................................ 2

*In re Party City Sec. Litig.*,
189 F.R.D. 91 (D.N.J. 1999)............................................ 6

*In re Veeco Instruments Inc., Sec. Litig.*,
233 F.R.D. 330 (S.D.N.Y. 2005) ............................................ 8

*Johnson v. Celotex Corp.*,
899 F.2d 1281 (2d Cir. 1990)............................................ 4

*Johnson v. Dana Corp.*,
No. 05-cv-7388 (N.D. Ohio Mar. 27, 2006) ............................................ 7

*Lax v. First Merchs. Acceptance Corp.*,
1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)............................ 2, 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 2004 U.S. Dist. LEXIS 9571 (S.D.N.Y. May 27, 2004)............................ 6, 7, 9

*Priest v. Zayre Corp.*,
118 F.R.D. 552 (D. Mass. 1988)............................................ 9

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986) .......... 9

**STATUTES**

15 U.S.C. § 78u-4(a)(1) .......... 5

15 U.S.C. § 78u-4(a)(3)(A), (B) .......... 5, 6

15 U.S.C. § 78u-4(a)(3)(A)(i) .......... 5

15 U.S.C. § 78u-4(a)(3)(B) .......... passim

15 U.S.C. § 78u-4(a)(3)(B)(i) .......... 5

15 U.S.C. § 78u-4(a)(3)(B)(ii) .......... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii) .......... 1, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .......... 6

15 U.S.C. § 78u-4(a)(3)(B)(v) .......... 4

Fed. R. Civ. P. 23 .......... 4, 8, 9, 10

Fed. R. Civ. P. 23(a)(3) .......... 9

Fed. R. Civ. P. 23(a)(4) .......... 10

Fed. R. Civ. P. 42(a) .......... 1, 4

## INTRODUCTION

Class member Robert Lieblang (or "Movant") hereby moves this Court for entry of an order (1) consolidating the above-captioned actions; (2) appointing Movant as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and (3) approving Movant's selection of Girard Gibbs LLP ("Girard Gibbs") and Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") to serve as Lead Counsel pursuant to the PSLRA.

Pursuant to the PSLRA, prior to selecting a Lead Plaintiff, the Court must decide whether to consolidate the above-captioned actions ("Actions"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). As soon as practicable after a decision on consolidation has been rendered, the Court is to appoint as the Lead Plaintiff the movant or group of movants with the largest financial interest of those seeking such appointment in the litigation and which otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See id.*

In Point I, Movant submits that the above-captioned actions should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a). In Point II, Movant argues that he should be appointed Lead Plaintiff and that his selection of Lead Counsel should be approved because Movant: (1) timely filed a motion for appointment of Lead Plaintiff; (2) suffered a loss of $397,530.56 in connection with transactions in IMAX securities during the Class Period, and thus has a substantial financial interest; and (3) will adequately represent the interests of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). In Point III, Movant argues that his selection of Girard Gibbs and Milberg Weiss as Lead Counsel should be approved by the Court because, pursuant to the PSLRA, the presumptive Lead Plaintiff selects Lead Counsel and Girard Gibbs and Milberg Weiss have extensive experience in the prosecution

of securities class actions and will more than adequately represent the interests of all class members.

## FACTUAL BACKGROUND

This is a federal class action on behalf of all persons and entities who purchased or otherwise acquired the securities of IMAX Corporation ("IMAX" or the "Company") between October 8, 2004 and August 9, 2006 (the "Class Period"), and who were damaged thereby, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").[1] The Actions allege that IMAX is a leading entertainment technology company that operates a worldwide chain of cinemas that feature films using its proprietary IMAX technology. During the Class Period, defendants issued positive statements regarding IMAX's financial condition, prospects of merging with another company, and internal controls. Defendants failed to disclose, however, that these statements were materially false and misleading because, during the Class Period, IMAX failed to properly account for revenues from its theatre systems and films; IMAX lacked adequate internal controls, particularly with respect to its revenue recognition; and contrary to defendants' representations, IMAX's reported financial results did not comply with Generally Accepted Accounting Principles ("GAAP"). In addition, as a result of its accounting and other problems during the Class Period, IMAX failed to attract a buyer or merger partner.

---

[1] The above-captioned actions allege differing class periods. For the purpose of this motion, Movant has used the longer of the class periods to demonstrate that he will most adequately represent the entire class of purchasers of IMAX securities that was affected by defendants' materially false and misleading statements and/or omissions. Such differences will not affect consolidation of the related actions if or when the actions are transferred to one district, as this issue can be resolved when the appointed lead plaintiff files a consolidated complaint. *See, e.g., In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431-32 (E.D. Va. 2000) (consolidating actions alleging different class periods and naming different defendants); *Lax v. First Merchs. Acceptance Corp*., No. 97C2715, 1997 U.S. Dist. LEXIS 11866, at *4 (N.D. Ill. Aug. 6, 1997) (same).

On August 9, 2006, the truth emerged. On that day, IMAX issued a press release announcing that the Securities and Exchange Commission ("SEC") had commenced an investigation of the Company and that it had uncovered "material weaknesses" in the Company's accounting for its theater systems. In the release, the Company stated, in relevant part, as follows:

> The Company indicated that it is in the process of responding to an informal inquiry from the U.S. Securities and Exchange Commission regarding the Company's timing of revenue recognition, including its application of multiple element arrangement accounting in its revenue recognition for theatre systems. Under multiple element arrangement accounting, the revenues associated with different elements of an IMAX theatre system contract are segregated and can be recognized in different periods. The Company recognized revenue in the fourth quarter of 2005 on 10 theatre installations in theatres which did not open in that quarter, and in seven of those cases, revenue associated with the screen element of the system was deferred until the final screen was installed. Of these seven installations, three theatres had their screens completed in the first quarter of 2006, two in the second quarter of 2006, and screens in the remaining two theatres have either since been completed or are expected to be completed over the remainder of 2006. The value associated with the elements other than the screen elements of those system installations was recognized in the fourth quarter when they were substantially completed.

On the same day, IMAX revealed that there were material weaknesses with respect to its accounting for a "complex film accounting transaction," and that the "control deficiency resulted in a negative adjustment of $0.8 million to [] Consolidated Statement of Operations for the three months ended June 30, 2006. . . " In reaction to these disclosures, the price of IMAX stock fell $3.91, or 40.6%, from its closing price of $9.63 on August 9, 2006, to close at $5.73 on August 10, 2006. On August 21, 2006, IMAX announced that its Chief Financial Officer, defendant Francis T. Joyce, had resigned, causing the price of IMAX shares to decline further.

## POINT I

## THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42(a). Pending before this Court are eight related actions, each of which asserts class claims on behalf of those who purchased or otherwise acquired IMAX securities for alleged violations of the Exchange Act during the Class Period. The Actions each name the Company and certain of its officers and/or directors as defendants and involve the same factual and legal issues, namely, whether plaintiffs purchased or otherwise acquired IMAX securities at artificially inflated prices as a result of defendants' allegedly false and misleading statements, and whether defendants' conduct violates Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). That test is met here. Therefore, the Actions should be consolidated.

## POINT II

## MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

Movant should be appointed Lead Plaintiff because he has complied with all of the PSLRA's requirements, has demonstrated the largest financial interest in this litigation and otherwise meets the relevant requirements of Fed. R. Civ. P. 23. As the presumptive Lead Plaintiff, Movant's selection of the law firms of Girard Gibbs and Milberg Weiss to serve as Lead Counsel, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), should be approved by the Court.

**A. The Procedure Required By the PSLRA**

The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed, above-captioned action caused notice to be published on *Marketwire* on August 11, 2006.[2]

Second, within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Finally, the PSLRA provides that within 90 days after publication of the notice the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

---

[2] *See* Declaration Of Jonathan K. Levine In Support Of The Motion Of Robert Lieblang For Consolidation, Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel submitted herewith (the "Levine Decl."), Exh. A. Unless otherwise indicated, all exhibit references herein are to the Levine Decl.

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See generally Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, No. 03 Civ. 8264, 2004 U.S. Dist. LEXIS 9571, at *17-23 (S.D.N.Y. May 27, 2004) (Sweet, J.).

### B. Movant Satisfies The Lead Plaintiff Requirements Of The PSLRA

#### 1. Movant Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff in this case, under 15 U.S.C. § 78u-4(a)(3)(A) and (B), expires on October 10, 2006. Movant's application, filed October 10, 2006, is thus timely. Movant has reviewed the complaint and is willing to serve as a representative party on behalf of the Class. *See* Exhibit B (certification of Robert Lieblang). In addition, Movant has selected and retained competent counsel to represent him and the Class. *See* Exhibits E and F (attaching firm resumes of Girard Gibbs and Milberg Weiss, respectively). Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have his application for appointment as Lead Plaintiff, and his selection of Girard Gibbs and Milberg Weiss as Lead Counsel approved by the Court.

#### 2. Movant Has The Requisite Financial Interest In The Relief Sought By The Class

Pursuant to the PSLRA, identification of the most adequate plaintiff, "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). Where, as here, related actions allege different class periods, the class period used to calculate "the largest financial interest" is the longest one. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) ("The

Catanzarite Action is relied upon for the purposes of this [lead plaintiff] motion because the class period alleged therein covers the ***longest class period alleged*** in the actions filed against the Defendants.") (emphasis added). Here, the longest class period is October 8, 2004 through August 9, 2006, and this is the period used to calculate Movant's financial interest in this action. The PSLRA, however, does not provide a method for determining the relative financial interests of lead plaintiff movants. Courts are generally divided on how relative financial interest should be determined. Briefly, some courts have adopted the "FIFO" (First-In-First-Out) methodology. Under this methodology, first-purchased shares (even if purchased before the class period) are offset against first-class period sales. *See, e.g., Goplen v. 51job, Inc.,* No. 05-cv-0769, 2005 U.S. Dist. LEXIS 15059, at *8 (S.D.N.Y. July 26, 2005) (Haight, J.). Other courts have adopted the "LIFO" methodology. Under this methodology, last-purchased shares are offset against first-class period sales; any remaining shares sold during the class period are generally offset against shares held at the beginning of the class period. *See, e.g., Johnson v. Dana Corp.,* No. 05-cv-7388 (N.D. Ohio Mar. 27, 2006) (Order at 3-8) (attached as Exhibit D).

In this case, because Movant did not have pre-Class Period holdings of IMAX securities, the LIFO and FIFO analysis yields the same financial interest: $397,530.56. *See* Exhibit C.

Courts have also employed a four-factor analysis in determining a movant's financial interest.[3] Movant's financial interest under this methodology may be expressed as follows:

---

[3] Under the four-factor analysis, courts consider the following to determine the largest financial interest: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *See Pirelli v. Armstrong Tire Corp. v. LaBranche & Co., Inc.,* 229 F.R.D. 395 (S.D.N.Y. 2004) (quoting *Lax v. First Merchs. Acceptance Corp.,* No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 17, 1997)) . The fourth factor of this analysis, "approximate loss," is generally considered most important, although the term is interpreted differently by different courts. *Compare Montoya v. Mamma.com, Inc.,* No. 05-cv-2313, 2005 U.S. Dist. LEXIS 10224, at *4 (S.D.N.Y. May 31, 2005) (Baer, J.) (applying FIFO

| **Total Shares Purchased During Class Period** | **Net Shares Purchased During Class Period** | **Net Funds Expended During Class Period** | **Approximate Loss**[4] |
|---|---|---|---|
| 139,581 | 88,581 | $905,100 | $397,530.56 |

As demonstrated herein, Movant has a large financial interest in this case. Therefore, Movant satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3. Movant Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two — typicality and adequacy — directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until

---

methodology to determine approximate loss) and *In re Veeco Instruments Inc., Sec. Litig.*, 233 F.R.D. 330 (S.D.N.Y. 2005) (McMahon, J.) (same) *with In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100-02 (S.D.N.Y. 2005) (Scheindlin, J.) (using LIFO to determine approximate loss) and *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 03-cv- 2166, 2004 U.S. Dist. LEXIS 27043, at *23 (N.D. Ohio May 12, 2004) (same).

[4] *See supra* n.4. As discussed, since Movant's financial interest is the same under both a FIFO and LIFO analysis, Movant's approximate loss is $397,530.56.

the Lead Plaintiff moves for class certification. *See Pirelli Armstrong Tire Corp.*, 2004 U.S. Dist. LEXIS 9571, at *53. Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Pirelli Armstrong Tire Corp.*, 2004 U.S. Dist. LEXIS 9571, at *54; *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Pirelli Armstrong Tire Corp.*, 2004 U.S. Dist. LEXIS 9571, at *54.

Movant satisfies this requirement because, just like all other Class members, he: (1) purchased or otherwise acquired IMAX securities during the Class Period; (2) purchased or otherwise acquired IMAX securities at prices artificially inflated as a result of the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages

thereby. Thus, Movant's claims are typical of those of other Class members since his claims and the claims of other Class members arise out of the same course of events.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Movant to represent the Class to the existence of any conflicts between the interest of Movant and the members of the Class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *Babcock*, 212 F.R.D. at 131 (citation omitted).

Here, Movant is an adequate representative of the class. As evidenced by the injury suffered by Movant, who acquired 139,581 shares of IMAX stock at prices artificially inflated by defendants' materially false and misleading statements, the interests of Movant are clearly aligned with the interests of the members of the Class, and there is no evidence of any antagonism between Movant's interests and those of the other members of the Class. Further, Movant has taken significant steps that demonstrate he will protect the interests of the Class: he has retained competent and experienced counsel to prosecute these claims and to further investigate the facts giving rise to this action. In addition, as shown below, Movant's proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movant *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

## POINT III

## MOVANT'S CHOICE OF LEAD COUNSEL SHOULD BE APPROVED

Movant has selected Girard Gibbs and Milberg Weiss to serve as Lead Counsel, subject to Court approval. Girard Gibbs and Milberg Weiss possess extensive experience litigating securities class actions and have successfully prosecuted numerous securities class actions on behalf of injured investors. Girard Gibbs has extensive securities litigation experience and has recovered hundreds of millions of dollars for individual and institutional shareholders. For example, Girard Gibbs currently serves as co-lead counsel in *In re American Express Financial Advisors Securities Litigation*, 04-cv-1773 (S.D.N.Y.), and served as co-lead counsel in *Scheiner v. i2 Technologies, Inc.*, 01-418 (N.D. Tex.). Currently, Girard Gibbs also represents more than 20 large institutional investors in *In re Winstar Communications Securities Litigation*, 01-cv-3014 (S.D.N.Y.) and represents the California State Teachers' Retirement System in *CalSTRS v. Qwest Communications, Inc.* Milberg Weiss currently serves as lead counsel or as chair of plaintiffs' executive committees in many high-profile securities actions pending throughout the country. Milberg Weiss has been appointed as lead or co-lead counsel in landmark class actions, including *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998), where plaintiffs' recovery was the largest ever in an antitrust case, and is currently chairman of the Executive Committee appointed as Lead Counsel in *In re Initial Pub. Offering Sec. Litig.*, No. 21-mc-92 (S.D.N.Y. filed Aug. 9, 2001).

## CONCLUSION

For the foregoing reasons, Movant satisfies the requirements of the PSLRA for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). Movant respectfully requests that this Court: (1) consolidate the Actions; (2) appoint Movant as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B) and (3) approve his selection of Girard Gibbs and Milberg Weiss as Lead Counsel.

DATED: October 10, 2006

Respectfully submitted,

**GIRARD GIBBS LLP**

By: ___/s/_*Jonathan K. Levine*
Jonathan K. Levine (JL-8390)

Aaron M. Sheanin
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4500
Facsimile: (415) 981-4846

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
Janine L. Pollack (JP-0178)
Sharon M. Lee (SL-5612)
One Pennsylvania Plaza - 49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**Proposed Lead Counsel**