**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOTTI KAPLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE and IMAX CORPORATION,<br><br>Defendants. | Case No. 1:06-CV-06128 (NRB) |
| SANTIAGO GUZMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,<br><br>Defendants. | Case No. 1:06-CV-006235 (NRB) |

**[Caption continues on next page]**

**DECLARATION OF JONATHAN K. LEVINE**
**IN SUPPORT OF THE MOTION OF ROBERT LIEBLANG FOR CONSOLIDATION,**
**APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF SELECTION OF LEAD COUNSEL**

| | |
|---|---|
| ERIC S. BERGEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE and IMAX CORPORATION,<br><br>Defendants. | Case No. 1:06-CV-06313 (NRB) |
| MICHAEL J. LAROSA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,<br><br>Defendants. | Case No. 1:06-CV-06349 (NRB) |
| ROBERT FEENEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,<br><br>Defendants. | Case No. 1:06-CV-06449 (NRB) |

**[Caption continues on next page]**

| | |
|---|---|
| FLOYD REYNOLDS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER and FRANCIS T. JOYCE,<br><br>Defendants. | Case No. 1:06-CV-06693 (NRB) |
| ANTHONY CAIAFA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, FRANCIS T. JOYCE, BRADLEY J. WECHSLER, and KATHRYN A. GAMBLE,<br><br>Defendants. | Case No. 1:06-CV-07057 (NRB) |
| ROBERT B. GRAY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER and FRANCIS T. JOYCE,<br><br>Defendants. | Case No. 1:06-CV-07162 (NRB) |

x

I, Jonathan K. Levine, under penalty of perjury, hereby declare:

1. I am a partner of Girard Gibbs LLP and am admitted to practice in the Southern District of New York. I submit this declaration in support of the motion of Robert Lieblang For Consolidation, Appointment As Lead Plaintiff And Approval Of Selection Of Lead Counsel.

2. Attached hereto as Exhibit A is a true and correct copy of the PSLRA notice published by counsel for plaintiff in the first-filed action on *Marketwire* on August 11, 2006.

3. Attached hereto as Exhibit B is a true and accurate copy of the PSLRA certification of Robert Lieblang (or "Movant").

4. Attached hereto as Exhibit C is a chart analyzing Movant's financial interest in the litigation.

5. Attached hereto as Exhibit D is an Order in *Johnson v. Dana Corp.*, No. 05-cv-7388 (N.D. Ohio Mar. 27, 2006).

6. Attached hereto as Exhibit E is the firm resume of Girard Gibbs LLP.

7. Attached hereto as Exhibit F is the firm resume of Milberg Weiss Bershad & Schulman LLP.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 10th day of October, 2006 at San Francisco, California.

_____/s/__*Jonathan K. Levine*______
Jonathan K. Levine (JL-8390)

# EXHIBIT A

*The Paskowitz Law Firm Files Class Action on Behalf of IMAX Corporation Investors Market Wire August 11, 2006 Friday*

Copyright 2006 Market Wire, Incorporated
All Rights Reserved
Market Wire

**August** 11, 2006 Friday 2:00 PM GMT

**LENGTH:** 402 words

**HEADLINE:** The Paskowitz Law Firm Files **Class Action** on Behalf of **IMAX** Corporation Investors

**DATELINE:** NEW YORK, NY; Aug 11, 2006

**BODY:**

The Paskowitz Law Firm, P.C. announces that is has filed a lawsuit on behalf of purchasers of the securities of **IMAX** Corp. ("**IMAX**" or "the Company") (NASDAQ: **IMAX)** from February 17, 2006 through August 9, 2006 ("the Class Period"). The action was filed in the Southern District of New York against **IMAX,** and certain of its officers and directors.

For further information you may call toll free, 1-800-705-9529, or contact counsel by e-mail by writing to lpaskowitz@pasklaw.com.

The Complaint alleges violations of the federal securities laws through false and misleading statements and omissions concerning **IMAX's** financial health and business prospects. During February and March 2006, the company issued press releases touting the Company's financial success, and indicated the Company's willingness to explore financial options. A press release issued as late as May 9, 2006 continued to mislead investors concerning **IMAX's** true financial condition.

Then on August 9, 2006, the Company shocked the market by announcing that it was being investigated by the SEC and that the Company had uncovered a "material weakness" in its revenue accounting. The press release also stated the Company had yet to find an investor to effectuate a merger or purchase. After these announcements the Company's stock substantially dropped. The Complaint further alleges that **IMAX** and its top executives knew during the Class Period that revenue was being improperly recognized, but failed to make the necessary adjustments, thus artificially inflating the stock.

If you purchased **IMAX** stock during the Class Period, you may qualify to serve as Lead Plaintiff on behalf of the Class, which consists of all persons and entities who purchased **IMAX** stock from February 17, 2006 through August 9, 2006. You are not required to have sold your **IMAX** stock in order to claim damages, or to serve in this role. All motions for appointment as Lead Plaintiff must be filed with the Court no later than October 10, 2006.

If you wish to discuss this action or have any questions concerning this notice or your rights or interests with respect to this matter, please contact Mr. Paskowitz. Mr. Paskowitz will personally speak with you at no cost or obligation.

If you purchased **IMAX** stock, and would like further information, please contact:

The Paskowitz Law Firm, P.C.

Laurence Paskowitz, Esq.
Toll free: 1-800-705-9529

SOURCE: Paskowitz Law Firm

**LOAD-DATE:** August 12, 2006

Source: News & Business > / . . . / > **Wire Service Stories**
Terms: **imax & class action and date(geq (08/11/2006) and leq (08/13/2006))** (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Tuesday, October 10, 2006 - 11:28 AM EDT

# EXHIBIT B

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Bob Lieblang, certify that:

1. I have reviewed the complaint and I authorize Milberg Weiss Bershad & Schulman LLP and Girard Gibbs LLP to act on my behalf in this matter in applying for Lead Plaintiff status and for all other purposes.
2. I did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. I am willing to serve as a Lead Plaintiff either individually or as part of a group. A Lead Plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include providing testimony at deposition and trial, if necessary.
4. I represent and warrant that I am authorized to execute this Certification on behalf of the purchasers of the subject securities described herein (including, as the case may be, myself, any co-owners, any corporations or other entities, and/or any beneficial owners).
5. I will not accept any payments for serving as a representative party on behalf of the class beyond the purchaser's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is unaffected by my decision to serve as a representative party or Lead Plaintiff.
7. The number of shares or other securities of Imax Corporation (NASDAQ:IMAX) I held immediately **BEFORE** the first day of the Class Period, October 28, 2004 (if any) was: 0 and the type of securities was (check one):
   ☐ Common Stock ☐ Bonds ☐ Preferred Stock ☐ Call ☐ Put

8. I have listed below all my transactions in the securities of Imax Corporation (NASDAQ:IMAX) **DURING** the Class Period as follows:

| **Type of Security** (Common stock, Preferred Stock, Calls, Puts or Bonds) | **Purchase/Acquisition or Sale/Disposition** | **Quantity** | **Trade Date** (mm/dd/yy) | **Price per Share/Security ($)** |
|---|---|---|---|---|
| SEE Schedule A | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

(* List additional transactions on separate sheet, if necessary)

These securities were acquired or held in (check all that apply):

☒ General (non-retirement account) ☐ Merger/acquisition/distribution ☐ Gift
☐ IRA ☐ Employer-sponsored plan (401k, 403b, etc.)

9. I made the following sales of securities of Imax Corporation (NASDAQ:IMAX) during the **90-day period AFTER** the Class Period:

**Sales (August 9, 2006 to 90 days later)**

| **Type of Security** (Common stock, Preferred Stock, Calls, Puts or Bonds) | **Quantity** | **Trade Date** (mm/dd/yy) | **Price per Share/Security ($)** |
|---|---|---|---|
| | | | |
| | | | |

10. During the three years prior to the date of this Certification, I have not sought to serve and I have not served as a representative party for a class in an action filed under the federal securities laws except as described below (if any):

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate.

Executed this 22 day of September, 2006

Robert Lieblang (signature)
Bob Lieblang

**Schedule A**

**Robert Lieblang Transaction(s) in IMAX Corporation (1)**

**Purchase(s)**

| Date | Shares | Price |
|---|---|---|
| 04/27/06 | 2,000 | 9.9300 |
| 04/27/06 | 2,600 | 9.9500 |
| 04/27/06 | 5,000 | 9.9400 |
| 04/27/06 | 200 | 10.0188 |
| 04/27/06 | 200 | 10.0200 |
| 05/08/06 | 800 | 9.8600 |
| 05/09/06 | 900 | 9.6200 |
| 05/09/06 | 500 | 9.4599 |
| 05/15/06 | 1,000 | 9.3100 |
| 05/26/06 | 500 | 8.9000 |
| 05/26/06 | 400 | 8.8700 |
| 06/02/06 | 1,200 | 9.1700 |
| 06/02/06 | 1,000 | 9.1700 |
| 07/19/06 | 15,000 | 10.0800 |
| 07/19/06 | 29,741 | 9.9200 |
| 07/19/06 | 1,000 | 10.0480 |
| 07/19/06 | 6,340 | 10.0500 |
| 07/20/06 | 25,000 | 10.0500 |
| 07/24/06 | 1,000 | 10.1000 |
| 07/24/06 | 200 | 10.1169 |
| 07/24/06 | 2,000 | 10.0700 |
| 07/24/06 | 5,000 | 10.2000 |
| 07/27/06 | 1,000 | 10.7500 |
| 07/28/06 | 4,242 | 10.7000 |
| 07/28/06 | 2,758 | 10.7400 |
| 07/28/06 | 200 | 10.7986 |
| 07/28/06 | 1,800 | 10.8000 |
| 07/28/06 | 200 | 10.7986 |
| 07/28/06 | 2,800 | 10.8000 |
| 07/31/06 | 1,400 | 10.4990 |
| 07/31/06 | 3,600 | 10.5000 |
| 08/03/06 | 5,000 | 10.3900 |
| 08/08/06 | 4,192 | 9.8400 |
| 08/08/06 | 808 | 9.8800 |
| 08/09/06 | 5,000 | 10.1500 |
| 08/09/06 | 5,000 | 10.1400 |

**Sale(s)**

| Date | Shares | Price |
|---|---|---|
| 05/01/06 | 1,000 | 9.8000 |
| 05/01/06 | 1,000 | 9.7700 |
| 05/01/06 | 1,000 | 9.7700 |
| 05/01/06 | 1,000 | 9.7700 |
| 05/01/06 | 1,000 | 9.7600 |
| 05/01/06 | 1,000 | 9.7500 |
| 05/01/06 | 1,000 | 9.7000 |
| 05/01/06 | 1,000 | 9.6700 |
| 05/01/06 | 1,000 | 9.6100 |
| 05/01/06 | 1,000 | 9.6100 |
| 05/11/06 | 200 | 9.6000 |
| 05/11/06 | 100 | 9.6012 |
| 05/11/06 | 500 | 9.6000 |
| 05/11/06 | 500 | 9.6000 |
| 05/11/06 | 900 | 9.6000 |
| 05/15/06 | 100 | 9.3112 |
| 05/15/06 | 361 | 9.2720 |
| 05/15/06 | 539 | 9.2800 |
| 05/30/06 | 100 | 9.1200 |
| 06/05/06 | 3,000 | 9.0600 |
| 07/31/06 | 1,000 | 10.7908 |
| 07/31/06 | 1,000 | 10.8000 |
| 07/31/06 | 1,000 | 10.7908 |
| 07/31/06 | 1,000 | 10.7900 |
| 07/31/06 | 1,000 | 10.7900 |
| 07/31/06 | 1,000 | 10.7900 |
| 07/31/06 | 700 | 10.8200 |
| 08/04/06 | 2,500 | 10.3000 |
| 08/04/06 | 500 | 10.3000 |
| 08/04/06 | 2,000 | 10.2600 |
| 08/04/06 | 1,215 | 10.2000 |
| 08/04/06 | 785 | 10.2100 |
| 08/09/06 | 1,000 | 9.6400 |
| 08/09/06 | 20,000 | 9.6500 |
| 08/10/06 | 25,000 | 5.6000 |
| 08/10/06 | 5,000 | 5.6500 |
| 08/10/06 | 2,500 | 5.6750 |
| 08/10/06 | 10,000 | 5.5590 |
| 08/10/06 | 20,000 | 5.5650 |
| 08/10/06 | 10,000 | 5.5700 |
| 08/10/06 | 8,581 | 5.5800 |
| 08/10/06 | 7,500 | 5.9000 |

(1) My broker prepared a summary of all my IMAX transactions which included an additional sale of 7,500 shares on 8/10/06 that is not reflected in my official monthly brokerage account statements. The summary, therefore, appears to have included the additional sale in error.

# EXHIBIT C

Class Period: 10/28/04-8/9/06

**IMAX Corporation (NASDAQ:IMAX)**

Hold price: $4.9936

| PLAINTIFF | PURCHASE TRANSACTIONS DATE | SHARES | SHARE COST | PURCHASE AMOUNT | SALES TRANSACTIONS (1) DATE | SHARES | SHARE PRICE(2) | SALES AMOUNT | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|
| Lieblang, Robert | 04/27/06 | **2,000** | 9.9300 | 19,860.00 | 05/01/06 | 1,000 | 9.8000 | 9,800.00 | |
| | 04/27/06 | **2,600** | 9.9500 | 25,870.00 | 05/01/06 | 1,000 | 9.7700 | 9,770.00 | |
| | 04/27/06 | **5,000** | 9.9400 | 49,700.00 | 05/01/06 | 1,000 | 9.7700 | 9,770.00 | |
| | 04/27/06 | **200** | 10.0188 | 2,003.76 | 05/01/06 | 1,000 | 9.7700 | 9,770.00 | |
| | 04/27/06 | **200** | 10.0200 | 2,004.00 | 05/01/06 | 1,000 | 9.7600 | 9,760.00 | |
| | 05/08/06 | **800** | 9.8600 | 7,888.00 | 05/01/06 | 1,000 | 9.7500 | 9,750.00 | |
| | 05/09/06 | **900** | 9.6200 | 8,658.00 | 05/01/06 | 1,000 | 9.7000 | 9,700.00 | |
| | 05/09/06 | **500** | 9.4599 | 4,729.95 | 05/01/06 | 1,000 | 9.6700 | 9,670.00 | |
| | 05/15/06 | **1,000** | 9.3100 | 9,310.00 | 05/01/06 | 1,000 | 9.6100 | 9,610.00 | |
| | 05/26/06 | **500** | 8.9000 | 4,450.00 | 05/01/06 | 1,000 | 9.6100 | 9,610.00 | |
| | 05/26/06 | **400** | 8.8700 | 3,548.00 | 05/11/06 | 200 | 9.6000 | 1,920.00 | |
| | 06/02/06 | **1,200** | 9.1700 | 11,004.00 | 05/11/06 | 100 | 9.6012 | 960.12 | |
| | 06/02/06 | **1,000** | 9.1700 | 9,170.00 | 05/11/06 | 500 | 9.6000 | 4,800.00 | |
| | 07/19/06 | **15,000** | 10.0800 | 151,200.00 | 05/11/06 | 500 | 9.6000 | 4,800.00 | |
| | 07/19/06 | **29,741** | 9.9200 | 295,030.72 | 05/11/06 | 900 | 9.6000 | 8,640.00 | |
| | 07/19/06 | **1,000** | 10.0480 | 10,048.00 | 05/15/06 | 100 | 9.3112 | 931.12 | |
| | 07/19/06 | **6,340** | 10.0500 | 63,717.00 | 05/15/06 | 361 | 9.2720 | 3,347.19 | |
| | 07/20/06 | **25,000** | 10.0500 | 251,250.00 | 05/15/06 | 539 | 9.2800 | 5,001.92 | |
| | 07/24/06 | **1,000** | 10.1000 | 10,100.00 | 05/30/06 | 100 | 9.1200 | 912.00 | |
| | 07/24/06 | **200** | 10.1169 | 2,023.38 | 06/05/06 | 3,000 | 9.0600 | 27,180.00 | |
| | 07/24/06 | **2,000** | 10.0700 | 20,140.00 | 07/31/06 | 1,000 | 10.7908 | 10,790.80 | |
| | 07/24/06 | **5,000** | 10.2000 | 51,000.00 | 07/31/06 | 1,000 | 10.8000 | 10,800.00 | |
| | 07/27/06 | **1,000** | 10.7500 | 10,750.00 | 07/31/06 | 1,000 | 10.7908 | 10,790.80 | |
| | 07/28/06 | **4,242** | 10.7000 | 45,389.40 | 07/31/06 | 1,000 | 10.7900 | 10,790.00 | |
| | 07/28/06 | **2,758** | 10.7400 | 29,620.92 | 07/31/06 | 1,000 | 10.7900 | 10,790.00 | |
| | 07/28/06 | **200** | 10.7986 | 2,159.72 | 07/31/06 | 1,000 | 10.7900 | 10,790.00 | |
| | 07/28/06 | **1,800** | 10.8000 | 19,440.00 | 07/31/06 | 700 | 10.8200 | 7,574.00 | |
| | 07/28/06 | **200** | 10.7986 | 2,159.72 | 08/04/06 | 2,500 | 10.3000 | 25,750.00 | |
| | 07/28/06 | **2,800** | 10.8000 | 30,240.00 | 08/04/06 | 500 | 10.3000 | 5,150.00 | |
| | 07/31/06 | **1,400** | 10.4990 | 14,698.60 | 08/04/06 | 2,000 | 10.2600 | 20,520.00 | |
| | 07/31/06 | **3,600** | 10.5000 | 37,800.00 | 08/04/06 | 1,215 | 10.2000 | 12,393.00 | |
| | 08/03/06 | **5,000** | 10.3900 | 51,950.00 | 08/04/06 | 785 | 10.2100 | 8,014.85 | |
| | 08/08/06 | **4,192** | 9.8400 | 41,249.28 | 08/09/06 | 1,000 | 9.6400 | 9,640.00 | |
| | 08/08/06 | **808** | 9.8800 | 7,983.04 | 08/09/06 | 20,000 | 9.6500 | 193,000.00 | |
| | 08/09/06 | **5,000** | 10.1500 | 50,750.00 | 08/10/06 | 25,000 | 5.7300 | 143,250.00 | |
| | 08/09/06 | **5,000** | 10.1400 | 50,700.00 | 08/10/06 | 5,000 | 5.7300 | 28,650.00 | |
| | | | | | 08/10/06 | 2,500 | 5.7300 | 14,325.00 | |
| | | | | | 08/10/06 | 10,000 | 5.7300 | 57,300.00 | |
| | | | | | 08/10/06 | 20,000 | 5.7300 | 114,600.00 | |
| | | | | | 08/10/06 | 10,000 | 5.7300 | 57,300.00 | |
| | | | | | 08/10/06 | 8,581 | 5.7300 | 49,169.13 | |
| | | | | | 08/10/06 | 7,500 | 5.7300 | 42,975.00 | |
| **Lieblang, Robert Total** | | **139,581** | | **1,407,595.49** | | **139,581** | | **1,010,064.93** | **(397,530.56)** |

(1) Sales have been applied on a FIFO basis.
(2) Sales within 90 days from the end of the class period were valued at the average closing price from the end of the class period until the date of the sale.

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

John Johnson, Individually and On Behalf of All Others Similarly Situated,

Case No. 3:05cv7388

Plaintiff,

v.

ORDER

Dana Corporation, *et al.*,

Defendants.

---

Howard Frank, Individually and On Behalf of All Others Similarly Situated,

Case No. 3:05cv7393

Plaintiffs,

v.

Dana Corporation, *et al.*,

Defendants.

---

Amalgamated Workers Union, et al., Individually and On Behalf of All Others Similarly Situated,

Case No. 3:05cv7406

Plaintiffs,

v.

Dana Corporation, *et al.*,

Defendants.

---

Donald Doty, Individually and On Behalf of All

Case No. 3:05cv7417

Others Similarly Situated,

Plaintiff(s)

v.

Dana Corporation, *et al.*,

Defendants.

---

Alvin Greenberg, Individually and On Behalf of All Others Similarly Situated,

Case No. 3:05cv7457

Plaintiff(s)

v.

Dana Corporation, *et al.*,

Defendants.

This is a securities case. Multiple plaintiffs have brought suit against Dana Corporation and some of its corporate officers alleging the company misstated its earnings, artificially inflating the value of its stock, in violation of the Securities Exchange Act of 1934. 15 U.S.C. §§ 78j(b), 78t(a). Jurisdiction exists under 28 U.S.C. § 1331.

Pending are competing motions to be named lead plaintiff. For the following reasons, the City of Philadelphia shall be named lead plaintiff.[1]

**Procedural Background**

Defendant Dana Corporation is a Toledo-based supplier of automobile parts. Plaintiffs are

---

1

On March 3, 2006, Dana Corporation filed for Chapter 11 bankruptcy protection. Consequently, proceedings against Dana will likely have to be stayed. Plaintiffs, however, have alleged Dana and its officers are joint and severally liable for these violations. Thus, Dana's bankruptcy should not alter the "largest financial interest" analysis, as it appears that the case can proceed against the corporate officers.

all purchasers of Dana Corporation securities between March 23, 2005, and September 14, 2005. Some time before March 23, plaintiffs allege Dana, whose business had suffered due to price increases in raw materials, began to misstate its net income to meet earnings expectations. Plaintiffs claim they purchased Dana securities in reliance on these inaccurate financial records and suffered damage accordingly.

The plaintiffs each raise substantially similar claims and their cases were consolidated January 18, 2006. Three of them, the Mississippi Public Employees' Retirement System ("MPERS"), the Pensions Trust Fund Group ("PTFG"), and the City of Philadelphia Board of Pensions & Retirement ("City of Philadelphia"), seek to be appointed lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). 15 U.S.C. § 78u-4.

**Discussion**

Congress enacted the PSLRA in response to a concern that securities litigation had become "lawyer-driven." H.R. Conf. Rep. No. 104-369, at 31-35 (1995). To combat abuses preceived to result from that situation, Congress sought to "encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class. *Id.* at 32.

Consequently, when appointing a lead plaintiff, the PSLRA creates a rebuttable presumption in favor of the party with the largest financial interest. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). A competing plaintiff may refute that finding only by demonstrating that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class ... or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

**A. Largest Financial Interest**

The PSLRA does not define how courts are to determine which plaintiff has the largest financial interest. *In re The Goodyear Tire & Rubber Comp. Sec. Litig.*, 2004 WL 3314943, *3 (N.D.Ohio 2004); *In re Cardinal Health, Inc. Sec. Litig.*, 26 F.R.D. 298, 302 (S.D.Ohio 2005); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005). Instead, courts have adopted two competing methodolgies: "first in, first out" (FIFO) and "last in, first out" (LIFO). *Compare In re Veeco Instruments, Inc.*, 2005 WL 3288652, *2 (S.D.N.Y. 2005) (applying FIFO) (citing Thompson v. *Shaw Group, Inc.*, 2004 WL 2988503 (E.D.La. 2004); *In re Cardinal*, 26 F.R.D. 298)[2]; *with In re Goodyear*, 2004 WL 3314943, *3 (applying LIFO and four-factor inquiry); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295, (E.D.N.Y. 1998) (same); *In re Nice Sec. Litig.*, 188 F.R.D. 206, 217 (D.N.J. 1999) (same); *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 375 n.4 (E.D. Va. 2003) (same).

Here, the parties dispute the soundness of LIFO v. FIFO. Each party endorses a methodology that enhances its respective claim to lead plaintiff status.

**1. FIFO v. LIFO**

The largest financial interest inquiry is not complicated when parties only purchase and sell shares within the class period. The analysis, however, becomes more complicated when parties enter the class period having previously bought the defendant's securities. Then, the question arises: how to calculate plaintiff's damages from purchasing shares at allegedly inflated prices when it has,

---

2

Upon closer examination, *In re Veeco* is less than compelling. Both cases that opinion relies on in support of FIFO offer support for LIFO upon closer examination. *see Thompson*, 2004 WL 2988503, *5 (noting competing methodologies suggested same result and stating that at later stages "FIFO may be insufficiently accurate and jettisoned in favor of LIFO"); *In re Cardinal*, 226 F.R.D. at 304 ("Lead Plaintiff candidates did not provide the Court with a breakdown of losses under LIFO ... designated Lead Plaintiff is the same under either methodology ... the Court 'resorts' to the FIFO methodology for the 'immediate narrow purpose' of evaluating the plaintiffs ... this use of FIFO in no way demonstrates a modicum of approval of FIFO.").

arguably, also profited from selling shares at the same inflated prices?

Under FIFO, a plaintiff's sales of defendant's shares during the class period are matched first against any pre-existing holdings of shares. The net gains or losses from those transactions are excluded from damage calculations.

In contrast, under LIFO a plaintiff's sales of defendant's share during the class period are matched first against the plaintiff's most recent purchase of defendant's shares and gains or losses from those transactions are considered in damage calculations.

Consequently, under FIFO, many plaintiffs will show damages from defendant's alleged misconduct when those plaintiffs actually profited from the misconduct. An example is instructive:

> Consider an Investor A with accumulated holdings of 10,000 shares of XYZ Corporation that were acquired when everything was on the up and up in terms of corporate disclosures, and that represent the investor's long-term commitment to the company's prospects. Assume further that unknown to Investor A but during what later turns out to be a plaintiffs' class period-a time when the nondisclosure of adverse information caused the stock price to be too high in terms of real value-Investor A both buys and sells an aggregate of 5,000 shares of XYZ stock in various transactions before the stock price later falls out of bed, and that such class-period transactions leave Investor A neither out of pocket nor in pocket when the expenditures for and the proceeds of those transactions are aggregated.
>
> Is there any real question that Investor A, who has thus retained the same long-term stake in XYZ that preceded the class period, has sustained neither gain nor loss from the transactions during the class period? To sharpen the issue even further, is there any question that Investor A is in an economic position identical to that of Investor B, someone who also held 10,000 shares of XYZ before the beginning of what later proved to be the class period, and who didn't trade at all during the class period? Or is there any question that both Investor A and Investor B are in the identical economic position as Investor C, a person who held no XYZ shares before the class period and whose purchases and sales during the class period, each aggregating 5,000 shares, also resulted in a wash in terms of the dollars involved?

*In re Comdisco Sec. Litig.*, 2004 WL 905938, *2-3 (N.D.Ill. 2004).

In the above scenario, using LIFO all three plaintiffs would have suffered the same damage: $0. But, under FIFO, while Investors B and C would show no damages, Investor A would show damages stemming from his purchase of the last 5,000 shares. Thus, City of Philadelphia argues

FIFO is not accurate and this court should adopt the LIFO methodology.

Plaintiffs MPERS and PTFG contend Judge Shadur's reasoning in *In re Comdisco, supra,* is unsound. They argue that any proceeds from sales correspond first to pre-existing holdings - ala FIFO - before being applied as a setoff against losses for the damage calculation. MPERS and PTFG offer in support of their contentions two arguments: 1) FIFO is the standard accounting method, used by the Internal Revenue Service (IRS); and 2) because courts do not award damages with respect to shares held prior to the class period, courts should likewise ignore profits with respect to those same shares. Neither argument is compelling.

First, the IRS and a court adjudicating securities litigation face very different issues in selecting accounting methodologies. While a court must calculate the harm a defendant has caused, the IRS adopts FIFO to deal with the peculiar incentives of the Internal Revenue Code. As Judge Shadur noted:

> [T]he reasons for [FIFO] treatment for income tax purposes are readily apparent: In light of the long-term trend of increasing values in stocks, plus the facts (1) that FIFO rather than LIFO therefore typically increases the measurement of currently recordable gains and (2) that stocks held until death get a stepped up basis while at the same time escaping income taxation entirely, what other approach might be expected from taxing authorities who are properly interested in maximizing the benefits to the fisc?

*Id.* at 2.

The IRS, therefore, adopts FIFO not because it is necessarily more accurate than LIFO, but because it forces taxpayers to recognize gains they would prefer - for tax purposes - to ignore.

In this context, however, FIFO has the opposite effect - allowing plaintiffs to cordon off their profits from the defendant's misconduct. Using FIFO, plaintiffs with significant pre-existing holdings of defendants' securities can profit from substantially from defendant's misconduct and then turn around and show a loss for purposes of litigation.

Second, MPERS's and PTFG's contention that because courts do not award damages for losses with respect to pre-existing shares, courts should likewise not subtract profits from the sale of those shares when calculating damages. That argument is unconvincing.

Securities laws punish firms who make material misstatements that induce investors to purchase their securities. With respect to any pre-existing shares, defendant's misconduct did not influence the purchases which were based on accurate information. Thus, those shares fall outside the purpose and plain language of the statute.

Further, losses with respect to pre-existing shares stem not from defendant's misconduct, but from the failure of defendant's business. If a firm overstates its earnings, artificially propping up its share price, and then corrects the problem causing that share price to fall, the drop in value itself is not a product of the overstatement - only the timing of the drop in value is. Put simply, the value of those pre-existing shares would have fallen even if the firm did not misstate its earnings - the drop in value would just have occurred sooner. Consequently, MPER's and PTFG's analogy is not well taken.

Therefore, to determine which party has the largest financial interest for the purposes of appointing a lead plaintiff, this court endorses the use of LIFO over FIFO. Consequently, the City of Philadelphia has the largest financial interest and is the presumptive lead plaintiff.

**2. The Presumption in Favor of the City of Philadelphia Stands.**

To rebut the presumption that lies in favor of the City of Philadelphia, MPERS and PTFG contend: 1) the City of Philadelphia already is engaged in four other securities matters and cannot, therefore, adequately represent the putative class; and 2) the City of Philadelphia's use of LIFO over FIFO, reducing its own damages by approximately $400,000, demonstrates it can not adequately represent the class. Neither argument has merit.

Unless a court grants an exception, "a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant other Federal Rules of Civil Procedure during any 3-year period." 15 U.S.C. § 78u-4(b)(3)(B)(vi). MPERS and PTFG acknowledge that the City of Philadelphia is not in violation of this provision, but argue that even where a plaintiff is not in literal violation of that rule, courts have the discretion to disqualify them from lead plaintiff contention if they are spread too thin. *see In re: OfficeMax, Inc. Sec. Litig.*, No. 1:00cv2432, Doc. 45, p. 15 ("Thus, the fact that one serves as a lead plaintiff in other class actions, even if fewer than five, though not determinative, is still relevant to the question of adequacy."). Having reviewed the submissions, there is nothing unique about the City of Philadelphia's involvement in other litigation that warrants an exercise of this discretion.

Second, MPERS and PTFG argue that the City of Philadelphia's advocation of the LIFO methodology is in itself evidence that the City is unfit to serve as lead plaintiff. Any plaintiff that would voluntarily use an accounting method that reduces its own damages, they argue, cannot adequately represent the class.

That argument proves too much. It would incentivize the sacrifice of accounting accuracy to inflated damage calculations in all circumstances. Potential lead plaintiffs would use the most aggressive accounting methods possible, no matter how inaccurate and how likely the court would later reject such methods. The City of Philadelphia has reduced its damage calculation, but only by an amount it almost certainly could not recover at trial. That is being realistic, not poor advocacy.

Consequently, MPERS and PTFG have failed to rebut the presumption that lies in favor of the City of Philadelphia. The City's motion to be named lead plaintiff, therefore, shall be granted.

**Conclusion**

In light of the foregoing, it is, therefore,

ORDERED THAT:

1) the City of Philadelphia's motion to be appointed lead plaintiff be, and the same hereby is granted;

2) the City of Philadelphia's selection of Barrack, Rodos & Bacine as lead counsel be, and the same hereby is approved;

3) all other motions to be appointed lead plaintiff be, and the same hereby are denied.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

# EXHIBIT E

GIRARD GIBBS LLP

Attorneys at Law

601 California Street, 14th Floor | San Francisco, CA 94108-2819
Tel: 415.981.4800 | Fax: 415.981.4846 | www.girardgibbs.com

# FIRM RESUME

Girard Gibbs LLP specializes in class action and business litigation. Founded in 1995, the firm represents clients throughout the United States in complex securities, antitrust, product liability, and consumer protection actions. The firm specializes in representing and counseling institutional investors in securities and derivative litigation and has represented or advised some of the largest institutional investors in the United States. Girard Gibbs currently is prosecuting securities actions on behalf of the California State Teachers' Retirement System, Allianz of America, Inc., Fireman's Fund Insurance Company, Jefferson Life Insurance Company and Preferred Life Insurance Company. The firm previously has served as outside counsel to the California Public Employees Retirement System (CalPERS), the Kansas Public Employees Retirement System, the State of Wisconsin Investment Board, the Louisiana Teachers' Retirement System, the Louisiana State Employees Retirement System, and the Los Angeles County Employees Retirement Association.

The firm's partners are experienced in all aspects of class action practice and complex securities and business litigation. Girard Gibbs seeks to apply its experience as plaintiffs' attorneys to manage and resolve civil litigation effectively on behalf of all the firm's clients. The firm also provides consulting and preventive counseling services to corporate clients and professionals on a variety of legal issues.

## PARTNERS

**Daniel C. Girard** has served as court-appointed lead counsel, class counsel and liaison counsel in class action proceedings throughout the United States. He has prosecuted over 50 class action matters successfully, including cases in the fields of securities, corporate governance, partnership, antitrust, civil rights, telecommunications, anti-racketeering, unfair competition, false advertising, computer fraud, credit repair, truth-in-lending, and multi-level marketing. Some of the cases in which Mr. Girard served in a leadership role include the Prison Realty Securities Litigation, where as co-lead counsel he obtained one of the largest securities settlements on record ($134 million), the Digex Litigation, where he was counsel to the Kansas Public Employees Retirement System, and helped obtain one of the largest class action settlements in Delaware Chancery Court ($165 million in cash and stock, and non-cash benefits valued at $450 million), the In re i2 Technologies Securities Litigation, where he was again counsel to the Kansas Public Employees Retirement System and obtained a settlement of $88 million in cash, and the MCI Non-Subscriber Rates Litigation, where as lead counsel he obtained the largest settlement ever achieved in a telecommunications class action ($90 million). Mr. Girard also served as the lead attorney for San Francisco's Chinese American schoolchildren in Ho v. San Francisco Unified School District. The Ho litigation settled on the first day of trial when the SFUSD agreed to a comprehensive injunction prohibiting the

unlawful use of race and ethnicity in San Francisco public school admissions. The Ho litigation was widely followed, and has been discussed in a number of law review articles.

Mr. Girard currently represents Allianz of America, Inc., Fireman's Fund and other large private institutional investors in litigation against Grant Thornton and other defendants arising out of their investments in Winstar Communications, Inc. He represents the California State Teachers Retirement System in litigation against Qwest Communications, Inc. and outside auditor Arthur Andersen. Mr. Girard is co-lead counsel in the In re American Express Financial Advisors Securities Litigation, which has tentatively settled for more than $100 million. He serves in a leadership capacity in Natural Gas Antitrust Cases I, II, III and IV, antitrust litigation against numerous natural gas companies for manipulating the market for natural gas in California. Mr. Girard also is prosecuting several class actions on behalf of consumers nationwide.

Mr. Girard was appointed to the Judicial Conference Advisory Committee on Civil Rules, beginning October 1, 2004. Mr. Girard is a member of the American Law Institute. He is past Chair of the American Bar Association Business Law Section Subcommittee on Class Actions, Co-Chair of the Business and Corporate Litigation Committee's Task Force on Litigation Reform and Rule Revision, and Vice-Chair of the Business and Corporate Litigation Committee. He is also a member of the National Association of Public Pension Attorneys, the International Corporate Governance Network and the Council of Institutional Investors. Mr. Girard serves as Chair of the Board of Trustees of the St. Matthew's Episcopal Day School in San Mateo, California. He has been a volunteer conservation easement monitor for the Peninsula Open Space Trust since 1991.

Mr. Girard was a partner at Lieff, Cabraser, Heimann & Bernstein LLP from 1988 to 1994. He was an associate with Brobeck, Phleger & Harrison from 1984 to 1987, specializing in securities and corporate law. Mr. Girard is a 1984 graduate of the School of Law, University of California at Davis where served as an editor of the Law Review. He received his undergraduate degree from Cornell University in 1979. Mr. Girard is admitted to the California Bar. He also is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Fifth and Ninth Circuits, as well as the United States District Courts for the District of Colorado and the Northern, Eastern, Central and Southern Districts of California.

**Eric H. Gibbs** has served as court-appointed lead counsel, class counsel and liaison counsel in numerous consumer class actions throughout the United States. He has prosecuted over 25 consumer class action matters successfully, including cases involving telecommunications, credit cards, unfair competition, false advertising, truth-in-lending, product liability and credit repair. For instance, as Court appointed co-lead class counsel, Mr. Gibbs negotiated a favorable settlement for a large class of people who purchased an Apple iPod and experienced battery problems. See In Re Ipod Cases, JCCP No. 4335 (San Mateo County, California). In approving the settlement, the Court found the class was represented by "extremely well qualified" counsel who negotiated "a significant and substantial benefit to the class members as a result of the settlement of this case." Mr. Gibbs also served in a leadership role in Fantauzzo v. Razor, a class action resulting in, among other things, the recall of potentially defective electric scooters, and Roy v. Hyundai Motor America, where the parties have agreed to a class action settlement that addresses allegedly defective air-bags in

passenger vehicles. Other consumer class actions in which Mr. Gibbs acted in a leadership role that resulted in favorable settlements for class members include, Mitchell v. American Fair Credit Association and Mitchell v. Bankfirst, N.A., which generated one of the largest settlements in the United States under the credit services laws (over $40 million), Providian Credit Card Cases, which resulted in one of the largest class action recoveries in the United States arising out of consumer credit card litigation ($105 million), and In re LookSmart Litigation, a nationwide class action settlement providing cash and benefits valued at approximately $20 million.

Mr. Gibbs currently serves as lead counsel in the following matters, among others: In Re Girls Gone Wild Litigation, Case No. BC296675, Los Angeles County, California (certified class of more than 1 million people); Gutzler v. General Motors, Case No. 03CV208786, Jackson County, Missouri (certified class); Paul v. HCI Direct, RG03091369, Alameda County, California (certified class); Brodhead v. Fleetwood Enterprises, CV-05-04560-DT, Central District of California; In re General Motors Corp. DexCool Vehicle Coolant Litigation, MDL No. 1562, pending in the USDC, Southern District of Illinois; and In Re Hyundai and Kia Horsepower Litigation, Case No. 02CC00287, Orange County, California.

Mr. Gibbs is a 1995 graduate of the Seattle University School of Law. He received his undergraduate degree from San Francisco State University in 1991. Before joining Girard Gibbs, he worked for two years as a law clerk for the Consumer Protection Division of the Washington Attorney General's Office. Mr. Gibbs has lectured on consumer class actions, including for the Consumer Rights Section of the San Francisco Bar Association, where he acted as a featured speaker concerning, "Successfully Obtaining Attorneys' Fees Under Fee-Shifting Statutes." Mr. Gibbs is scheduled as a featured speaker concerning consumer class actions throughout 2006. He is a member of the American Bar Association, the Association of Trial Lawyers of America, the National Association of Consumer Advocates, the Consumer Attorneys of California, and the Alameda County Bar Association. Mr. Gibbs is admitted to the California Bar. He also is admitted to practice before the United States Court of Appeals for the Ninth Circuit, as well as the United States District Courts for the District of Colorado and the Northern, Eastern, Central and Southern Districts of California.

**Jonathan K. Levine** has extensive experience prosecuting complex securities fraud, accounting fraud and class action litigation. He has served and is serving as court-appointed class counsel, lead counsel and liaison counsel in numerous complex class actions in federal courts throughout the United States and in state courts in California. Mr. Levine has prosecuted over 20 securities fraud actions successfully, including cases of complex accounting fraud involving Arthur Andersen, Ernst & Young, KPMG Peat Marwick, Deloitte & Touche, Price Waterhouse and Grant Thornton. Some of the cases in which Mr. Levine served in a leadership role include Rosen v. Macromedia, Inc., where as co-lead counsel he obtained a $48 million securities class action settlement in California state court, In re Gupta Corporation Securities Litigation, where as co-lead counsel he obtained a $15 million settlement, Provenz v. Miller, where as co-lead counsel he obtained a $15 million securities class action settlement, and Providian Credit Card Cases, where as co-lead counsel he obtained a class action settlement of $105 million, one of the largest class action recoveries in the United States arising out of consumer credit card litigation.

Mr. Levine currently represents Allianz of America, Inc., Fireman's Fund and other large private institutional investors in federal securities litigation against Grant Thornton and other defendants arising out of their investments in Winstar Communications, Inc. He is court-appointed co-lead counsel in the In re American Express Financial Advisors Securities Litigation, which has tentatively settled for more than $100 million, and the AOL Spin-Off Accounts Billing Litigation, which settled for more than $25 million. He also is serving as lead counsel in Paul v. HCI Direct, Inc., Broadhead v. Fleetwood Enterprises, Inc. and Bowen v. Whirlpool Corporation.

Mr. Levine is the author of "E-Mail and Voice Mail Discovery Issues," Glasser LegalWorks (1998), "Discovery Techniques in Commercial Litigation and Recent Developments In the Rules of Discovery," American Trial Lawyers Association (1991), and the co-author of "The Business Judgment Rule and Derivative Actions," Practicing Law Institute (1989). He has lectured on securities litigation under the Private Securities Litigation Reform Act of 1995, consumer fraud and predatory lending litigation, and computer discovery and electronic data retention risk control. Mr. Levine was recently appointed as a member of the Committee on Federal Courts of the State Bar of California. He is the past chair of the American Bar Association Litigation Section Subcommittee on Officers and Directors Liability. He also currently serves as Chairman of the Piedmont Planning Commission.

For nine years prior to joining Girard Gibbs, Mr. Levine was a partner at the New York law firm of Kaplan Fox & Kilsheimer LLP, where he specialized in securities fraud, accounting fraud and consumer class action litigation. Mr. Levine is a 1988 graduate of Fordham University School of Law. He received his undergraduate degree from Columbia University in 1985. Mr. Levine is a member of the California State Bar Association, New York State Bar Association, Connecticut Bar Association, American Bar Association, the Association of Business Trial Lawyers – Northern California, and the Association of Trial Lawyers of America. He is admitted to the New York, Connecticut and California Bars. He also is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Second, Fourth, Ninth and Eleventh Circuits, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Northern District of Texas, and the Northern, Central, Eastern and Southern Districts of California.

**A. J. De Bartolomeo** has extensive experience in complex litigation, including the prosecution and defense of class actions arising under the securities, communications, consumer protection and copyright laws. Ms. De Bartolomeo currently serves as co-lead counsel representing the California State Teachers Retirement System in securities litigation against Qwest Communications, Inc., its former officers and directors, and outside auditor Arthur Andersen, involving one of the largest and most pervasive corporate financial frauds in United States history in CalSTRS v. Qwest Communications, et al., pending in California Superior Court for the County of San Francisco. She served as counsel for the State of New Jersey in a securities fraud matter against Gemstar – TV Guide and two of its former officers in State of New Jersey v. Gemstar. She also currently serves as co-lead counsel in the Literary Works in Electronic Databases Litigation, in which the United States District Court for the Southern District of New York recently granted final approval to what is believed to be the largest copyright class action settlement in history ($18 million). Ms. De Bartolomeo has extensive experience in the negotiation and administration of class action settlements, including the $90 million settlement in MCI Non-Subscriber Rates Litigation. She has also

worked in the securities industry from 1982-1985, as an assistant trader at Tucker, Anthony & R.L. Day (now known as RBC Dain Rauscher).

Ms. De Bartolomeo is a member of the American Bar Association Sections on Litigation, Business Law and Communications. She is also a member of the National Association of Public Pension Attorneys, where she is an active participant in the Task Force on Securities Litigation and Damage Calculation and has contributed to the Task Force publications. She is also a member of the American Trial Lawyers Association, the Council of Institutional Investors and the National Association of State Retirement Administrators.

Ms. De Bartolomeo is a 1988 graduate of the University of California, Hastings College of the Law. She received her undergraduate degree from Fairfield University in 1982, and a General Course degree in Economics from the University of London, London School of Economics and Political Science in 1981. Before joining Girard Gibbs, Ms. De Bartolomeo was an associate with Robins Kaplan Miller & Ciresi. She is admitted to the California Bar. She also is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the First, Second and Ninth Circuits, as well as the United States District Courts for the District of Michigan, the Southern District of Texas, and the Northern, Eastern, Central and Southern Districts of California.

**Elizabeth C. Pritzker** has extensive experience in complex litigation matters, including the prosecution of consumer, product liability, and securities class actions. She also represents journalists, print and broadcast media, and not-for-profit organizations in First Amendment-related litigation.

Ms. Pritzker currently serves as co-lead counsel in securities fraud litigation brought on behalf of the California State Teachers Retirement System against Qwest Communications, Inc., its former officers and directors, and outside auditor Arthur Andersen, CalSTRS v. Qwest Communications et al., San Francisco Superior Court Case No. 415566. She also serves in a leadership capacity in Natural Gas Antitrust Cases I, II, III and IV, antitrust litigation against numerous natural gas companies for manipulating the market for natural gas in California. Ms. Pritzker was co-lead counsel in coordinated consumer class action litigation against Apple Computer, Inc., In Re iPod Cases, which resulted in a settlement of over $60 million.

In 1992, Ms. Pritzker co-founded the First Amendment Project, a nonprofit, public interest law firm devoted exclusively to First Amendment-related litigation. From 1992 to 1999, she served as the Project's Executive Director and chief staff attorney. Over her seven-year tenure, she successfully litigated matters involving defamation law, copyright and trademark enforcement, licensing, privacy law, Internet law, and enforcement of state and federal right-to-know laws. In 2000, Ms. Pritzker was honored by the Society of Professional Journalists with the prestigious James Madison Freedom of Information Award for her legal work on behalf of journalists and media.

For three years prior to joining Girard Gibbs, Ms. Pritzker was a principal at the law firm of Cotchett, Pitre, Simon & McCarthy, where she specialized in consumer fraud, product liability, securities, construction fraud, and First Amendment-related litigation. Ms. Pritzker has served as a Lecturer in Mass Communications Law in the Department of Journalism at San Francisco State University. She formerly served as a Supervising Attorney in the Civil

Law and Motion Departments of the Alameda County Superior Court, and as a judicial extern to Judge Marilyn Hall Patel of the United States District Court for the Northern District of California. Ms. Pritzker is a frequent speaker on civil litigation matters, including discovery, pre-trial and class action procedures, for the Continuing Education of the Bar, the State Bar of California, and other professional attorney groups. Ms. Pritzker is a Board Member for the Legal Aid Society of San Mateo County.

Ms. Pritzker is a 1989 graduate of the University of San Francisco School of Law. She received her undergraduate degree in Economics from McGill University in 1983. Ms. Pritzker is a member of the Association of Trial Lawyers of America, National Association of Consumer Advocates, Trial Lawyers for Public Justice, California Women Lawyers, Consumer Attorneys of California, the Bar Association of San Francisco, the San Mateo Bar Association, and the Alameda County Bar Association. Ms. Pritzker is admitted to the California Bar. She also is admitted to practice before the United States Supreme Court, the United State Court of Appeals for Ninth Circuit, as well as the United States District Courts for the District of Colorado and the Northern, Central, Southern, and Eastern Districts of California.

**Aaron M. Sheanin** has extensive experience in complex litigation matters, including the prosecution of securities fraud and corporate governance cases on behalf of individual and institutional investors, as well as antitrust and complex consumer actions. He also advises several state pension funds and private institutional investors with respect to securities matters. Mr. Sheanin currently serves as lead counsel in Everett v. MCI, Inc., a nationwide class action challenging MCI's practice of assessing long distance telephone service charges to non-customers, pending in the United States District Court for the District of Arizona. He serves as co-chair of the Discovery Committee in Natural Gas Antitrust Cases I, II, III and IV, antitrust litigation against numerous natural gas companies for manipulating the California natural gas market, which has achieved settlements of $92 million to date.

Mr. Sheanin is a 1999 graduate of Columbia University School of Law, where he was a James Kent Scholar and a Harlan Fiske Stone Scholar. He received his undergraduate degree from the University of California at Berkeley in 1993, where he was elected to Phi Beta Kappa. Mr. Sheanin is a member of the American Bar Association and the San Francisco Bar Association. He has presented before the American Bar Association's Task Force on Contingent Fees (Tort Trial and Insurance Practice Section), and is a contributing author to "California Class Actions Practice and Procedure" (Matthew Bender, 1st Ed. 2003). From 1999 to 2001, Mr. Sheanin was a Pro Se law clerk for the United States Court of Appeals for the Second Circuit. Prior to joining Girard Gibbs, Mr. Sheanin was an associate with Lieff, Cabraser, Heimann & Bernstein LLP, where he had extensive experience prosecuting class action cases involving consumer protection, product defect and employment discrimination. In the summer of 1997, he was a judicial extern to the Honorable Barrington D. Parker, Jr. of the United States District Court, Southern District of New York. He is admitted to the New York, New Jersey and California Bars. He also is admitted to practice before the United States Court of Appeals for the Ninth Circuit, as well as the United States District Courts for the Northern, Central, Eastern and Southern Districts of California.

## ASSOCIATES

**Karen L. Hindin** is a 1994 graduate of Santa Clara University School of Law, where she was a public interest law scholar. She received her undergraduate degree from the University of California at Los Angeles in 1991. Ms. Hindin specializes in litigating consumer protection class actions and representative suits involving unfair and deceptive business practices in the banking, insurance, telecommunications, automotive, credit card, and various other industries. Prior to joining Girard Gibbs, Ms. Hindin practiced class action law at The Sturdevant Law Firm in San Francisco and Engstrom, Lipscomb & Lack in Los Angeles. Ms. Hindin also served as a research attorney for Judges Aurelio Munoz, Loren Miller, Jr., Judith Chirlen and Florence Marie Cooper. Ms. Hindin is an active member of the Consumer Attorneys of California, serving as an editor of the Forum Magazine, the San Francisco Trial Lawyers Association, serving as Co-Chair of the Women's Caucus, and Trial Lawyers for Public Justice, by whom she was awarded the Public Justice Achievement Award for her work on the case of *Ting v. AT&T*. She is admitted to the California Bar. She also is admitted to practice before the United States Court of Appeals for the Ninth Circuit, as well as the United States District Courts for the Northern, Central and Southern Districts of California.

**Rosemary M. Rivas** is a 2000 graduate of the University of California, Hastings College of the Law, where she served as Senior Note Editor of the Hastings Constitutional Law Quarterly and was a member of the Hastings Moot Court Board. While at Hastings, Ms. Rivas received the American Jurisprudence Award and the CALI Excellence For The Future Award for her studies in Wills & Trusts. She also assisted in the research and writing of a casebook on Wills & Trusts. Ms. Rivas received her undergraduate degree from San Francisco State University in 1997. Her practice includes litigating consumer class actions and representative cases involving unfair and deceptive business practices in the banking, insurance, internet and retail services industries. She is the Chair of the Consumer Rights Section of the Barristers Club. Ms. Rivas is an active member of the San Francisco Bar Association, the American Bar Association, the Association of Trial Lawyers of America and the Consumer Attorneys of California. Ms. Rivas also participates in the U.C. Hastings Alumni Mentor Program and was a speaker on the U.C. Hastings "Careers In The Law Panel." Ms. Rivas is fluent in Spanish. She is admitted to the California Bar. She also is admitted to practice before the United States Court of Appeals for the Ninth Circuit, as well as the United States District Courts for the Northern, Central, Eastern and Southern Districts of California.

**Dylan Hughes** is a 2000 graduate of the University of California, Hastings College of Law. He received his undergraduate degree from the University of California at Berkeley in 1995. Mr. Hughes was a spring 2000 extern for the Honorable Charles A. Legge of the United States District Court, Northern District of California. Before joining Girard Gibbs, he was a law clerk for the Honorable Paul A. Mapes, Administrative Law Judge of the Office of Administrative Law Judges, United States Department of Labor. Mr. Hughes is a member of the American Bar Association and the Consumer Rights Section of the Barristers Club. He is admitted to the California Bar. He also is admitted to practice before the United States Court of Appeals for the Ninth Circuit, as well as the United States District Courts for the Northern, Central, Eastern and Southern Districts of California.

**Sheri L. Kelly** is a 2003 graduate of the University of California, Hastings College of the Law, where she was Executive Editor of the Hastings Women's Law Journal. Ms. Kelly received her undergraduate degree from the University of California at Berkeley in 1997. In 2002 she served as an extern to the Honorable James R. Lambden of the California Court of Appeal (First District). Before joining Girard Gibbs, Ms. Kelly was an associate with Cotchett, Pitre, Simon & McCarthy from 2003 to 2005, where she prosecuted contract fraud, consumer protection, securities and antitrust cases on behalf of governmental entities, individuals and corporations. Ms. Kelly is a member of the Consumer Attorneys of California, the Association of Trial Lawyers of America, California Women's Lawyers and the American Bar Association. She is admitted to the California Bar. She also is admitted to practice before the United States Court of Appeals for the Ninth Circuit, as well as the United States District Courts for the Northern, Central, Eastern and Southern Districts of California.

**Lindy K. Lucero** is a 2003 graduate of the Georgetown University Law Center, where she served as an Articles Editor for the Georgetown Law Journal. She received her undergraduate degree, cum laude, from the University of California at San Diego in 1995. Before joining Girard Gibbs, Ms. Lucero worked as a staff attorney for the United States Court of Appeals for the Ninth Circuit from 2004 to 2006 and as a legislative staff attorney for the Mexican American Legal Defense and Educational Fund from 2003 to 2004. Ms. Lucero is admitted to the California Bar, as well as the United States District Courts for the Northern, Central, Eastern and Southern Districts of California.

## SIGNIFICANT RECOVERIES

Some of the cases in which the firm has had a leadership role are described below:

### Securities Cases

***In re American Express Financial Advisors Securities Litigation,*** Case No. 04-cv-01773-DAB (S.D.N.Y.). Girard Gibbs serves as co-lead counsel in this class action, brought on behalf of individuals who bought financial plans and invested in mutual funds from American Express Financial Advisors. The case alleges that American Express steered its clients into underperforming "shelf space funds" to reap kickbacks and other financial benefits. The parties have announced a $100 million cash settlement.

***Scheiner v. i2 Technologies, Inc., et al.***, Case No. 3:01-CV-418-H (N.D. Tex.). Girard Gibbs represented lead plaintiff, the Kansas Public Employees Retirement System, and served as co-lead counsel in this securities fraud class action on behalf of investors in i2 Technologies. The Hon. Barefoot Sanders approved cash settlements for $88 million from the company, its officers and its former auditor, Arthur Andersen LLP. As part of the settlement, i2 agreed to institute significant corporate governance reforms.

***In re: Prison Realty Securities Litigation***, Case No. 3:99-0452 (M.D. Tenn.). Girard Gibbs served as co-lead counsel in this securities class action brought on behalf of investors against a real estate investment trust and its officers and directors, following defendants' alleged false statements made in the context of a merger between Corrections Corporation of America and CCA Prison Realty Trust and subsequent operation of the merged entity. On

February 13, 2001, the Court granted final approval to a settlement for over $134 million in cash and stock.

***In re: Digex, Inc. Shareholder Litigation***, Consol. Case No. 18336 (Del. Ch. Ct. 2000). Girard Gibbs represented the Kansas Public Employees Retirement System, one of two institutional lead plaintiffs in this lawsuit whereby minority shareholders of Digex, Inc. sued to enjoin MCI WorldCom's planned acquisition of a controlling interest in Digex through a merger with Intermedia Communications, Inc., the majority shareholder. In a settlement approved by Delaware Chancery Court on April 6, 2000, a fund consisting of $165 million in MCI WorldCom stock and $15 million in cash was secured for Digex shareholders, as well as non-cash benefits valued at $450 million.

***In re Oxford Tax Exempt Fund Securities Litigation***, Case No. WMN-95-3643 (D. Md.). Girard Gibbs served as co-lead counsel in this class and derivative litigation brought on behalf of a real estate limited partnership with assets of over $200 million. Settlement providing for exempt issuance of securities under section 3(a)(10) of Securities Act of 1933, public listing of units, and additional settlement benefits valued at over $10 million approved January 31, 1997.

***Calliott v. HFS, Inc.***, Case No. 3:97-CV-0924-L (N.D. Tex.). Girard Gibbs intervened on behalf of an institutional client in this securities class action arising out of bankruptcy of Amre, Inc., a seller of home remodeling and repair services. Girard Gibbs was designated lead plaintiff's counsel under Private Securities Litigation Reform Act. Settlements for $7.3 million were approved August 1999 and December 2000.

***In re Total Renal Care Securities Litigation***, Case No. 99-01750 (C.D. Cal.). This securities fraud action arose out of restatement of earnings by healthcare provider, brought under the PSLRA by the Louisiana Teachers' Retirement System and the Louisiana School Employees Retirement System. Settled for $25 million and issuer's commitment to adopt comprehensive corporate governance reforms. Girard Gibbs served as liaison counsel.

***In re Towers Financial Corporation Noteholders Litigation***, MDL No. 994 (S.D.N.Y.). This securities and RICO class action was brought against promoters and professionals associated with failed investment scheme described by United States Securities and Exchange Commission as "largest Ponzi scheme in U.S. history." $6 million in partial settlements. $250 million judgment entered against four senior Towers executives. Girard Gibbs served as liaison counsel and as a plaintiffs' executive committee member. See Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, 945 F. Supp. 84 (S.D.N.Y.1996), rev'd, No. 97-7011, 1998 U.S. App. LEXIS 1448 (2d Cir. Jan. 28, 1998); In re Towers Financial Corporation Noteholders Litigation, 177 F.R.D. 167 (S.D.N.Y. 1997) ("class counsel--particularly Plaintiffs' Liaison counsel, Daniel Girard--has represented the plaintiffs diligently and ably in the several years that this litigation has been before me").

**Consumer Cases**

***In re Providian Credit Card Cases***, JCCP No. 4085 (Cal. Super. Ct. San Francisco County). Girard Gibbs served as court-appointed co-lead counsel in this nationwide class action suit brought on behalf of Providian credit card holders. The lawsuit alleged that Providian engaged in unlawful, unfair and fraudulent business practices by charging its customers unauthorized fees and charges. The Hon. Stuart Pollack approved a $105 million settlement, plus injunctive relief, which is one of the largest class action recoveries in the United States arising out of consumer credit card litigation.

***In re iPod Cases***, JCCP No. 4355 (Cal. Super. Ct. San Mateo County). Girard Gibbs, as court appointed co-lead counsel, negotiated a settlement conservatively valued at approximately $15 million which provided warranty extensions, battery replacements, cash payments, and store credits for those class members who experienced a battery failure. In granting final approval of the settlement, the Hon. Beth L. Freeman said that the class was represented by "extremely well qualified" counsel who negotiated a "significant and substantial benefit" for the class members.

***In re Sony BMG CD Technologies Litigation***, Case No. 1:05-cv-09575-NRB (S.D.N.Y.). Girard Gibbs served as co-lead counsel in this class action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* on behalf of millions of consumers who purchased SONY BMG music compact discs encoded with digital rights management ("DRM") software which limited CD functionality and acted as spyware on the users' computers. The Hon. Naomi Reice Buchwald granted approval to a settlement that provided for a nationwide recall of certain CDs, the dissemination of software utilities to remove the offending DRM, cash and other compensation for consumers, and injunctive relief governing SONY BMG's use of DRM.

***In Re PayPal Litigation*****,** Case No. C-02-1227-JF (PVT) (N.D.Cal., S.J. Div. 2002). Girard Gibbs served as co-lead counsel in this nationwide class action brought against PayPal alleging violations of the Electronic Funds Transfer Act ("EFTA") and California consumer protection statutes. The plaintiffs alleged that PayPal did not comply with the EFTA when restricting access to consumers' PayPal accounts, initiating certain electronic funds transfers or its error resolution processes. On September 24, 2004, Judge Fogel granted final approval to a settlement valued at $14.35 million in cash and returned funds, plus injunctive relief to ensure compliance with the EFTA.

***In re Literary Works In Electronic Databases Copyright Litigation***, MDL No. 1379 (GBD) (S.D.N.Y. 2000). Girard Gibbs served as co-lead counsel in this class action brought on behalf of freelance authors alleging that after freelance authors' works were published in newspapers, magazines, and other print publications with the authors' permission, those publications then licensed the works without the authors' permission to the commercial databases for electronic publication, in violation of the Federal Copyright Act. Five cases were consolidated for pretrial proceedings before the Honorable George B. Daniels, U.S. District Judge for the Southern District of New York. On September 27, 2005, Judge Daniels granted final approval of an $18 million cash settlement.

***In re America Online Spin-Off Accounts Litigation***, MDL No. 04-1581-RSWL (C.D. Cal.). Girard Gibbs served as court-appointed co-lead counsel in this nationwide class action suit brought on behalf of America Online subscribers who were billed for a second account without their knowledge, authorization or consent. The litigation settled for $25 million and certain changes in AOL's billing and account practices.

***Lehman v. Blue Shield of California***, Case No. CGC-03-419349 (Cal. Super. Ct. San Francisco County). In this class action lawsuit alleging that Blue Shield engaged in unlawful, unfair and fraudulent business practices when it modified the risk tier structure of its individual and family health care plans, a $6.5 million settlement was negotiated on behalf of former and current Blue Shield subscribers residing in California. The Honorable James L. Warren granted final approval of the settlement in March 2006.

***Roy v. Hyundai Motor America***, Case No. SACV 05-483-AHS (C.D. Cal.). Girard Gibbs served as court appointed co-lead counsel in this nationwide class action suit brought on behalf of Hyundai Elantra owners and lessees, based on allegations that the passenger air bag system installed on the Elantras was defective. A settlement was negotiated whereby Hyundai agreed to repair the air bag systems, provide reimbursement for transportation related expenses and an alternative dispute resolution program allowing for trade-ins and buy-backs. In approving the settlement negotiated by Girard Gibbs, the Honorable Alicemarie H. Stotler presiding, described the settlement as "pragmatic" and a "win-win" for all involved.

***Powers Law Offices, P.C. v. Cable & Wireless USA, Inc.***, Case No. 99 CV 12007 (EFH) (D. Mass 1999). Class action brought on behalf of all Cable & Wireless subscribers who were overcharged for recurring and incorrect fees on lines that were not presubscribed to C&W at the time. Girard Gibbs prosecuted the case from 1999 through 2005, and on October 27, 2005, Judge Harrington granted final approval of the $8 million settlement and the Bankruptcy Judge approved the 30% distribution from the unsecured creditors' fund of the bankruptcy liquidation proceeds.

***Lund v. AT&T Corp.***, Case No. C 98-1500-DDP (AJW) (C.D. Cal.). This class action lawsuit was brought on behalf of small businesses whose long-distance service was switched to Business Discount Plan, Inc. Girard Gibbs was appointed class counsel by the Honorable Dean D. Pregerson. The settlement, providing for full cash refunds and free long-distance telephone service, was approved in December 1999.

***In re MCI Non-Subscriber Telephone Rates Litigation***, MDL Docket No. 1275 (S.D. Ill.). This class action lawsuit was brought on behalf of all MCI subscribers who were charged MCI's non-subscriber or "casual caller" rates and surcharges instead of the lower rates which MCI advertises and which subscribers expect to be charged. Ten cases were consolidated for pretrial proceedings before the Honorable David R. Herndon, U.S. District Judge for the Southern District of Illinois. Judge Herndon appointed Girard Gibbs as co-lead counsel for the consolidated actions. On March 29, 2001, Judge Herndon granted final approval of a settlement for over $90 million in cash.

***Mitchell v. American Fair Credit Association***, Case No. 785811-2 (Cal. Super. Ct. Alameda County); ***Mitchell v. Bankfirst, N.A.***, Case No. C-97-1421-MMC (N.D. Cal.). This class action lawsuit was brought on behalf of California residents who became members of the

American Fair Credit Association ("AFCA"). Plaintiffs alleged that AFCA operated an illegal credit repair scheme. The Honorable James Richman certified the class and appointed the firm as class counsel on April 12, 1999. In February 2003, Judge Ronald Sabraw of the Alameda County Superior Court and Judge Maxine Chesney of the U.S. District Court for the Northern District of California granted final approval to settlements valued at over $40 million. *See Mitchell, et al., v. American Fair Credit Association, Inc., et al.*, 99 Cal. App. 4th 1345 (2002) (first reported decision under the California Credit Services Act of 1984).

***In re LookSmart Litigation***, Case No. 02-407778 (Cal. Super. Ct. San Francisco County). This nationwide class action suit was brought against LookSmart, Ltd. on behalf of LookSmart's customers who paid an advertised "one time payment" to have their web sites listed in LookSmart's directory, only to be later charged additional payments to continue service. The action involved claims for breach of contract and violation of California's consumer protection laws, among other things. On October 31, 2003, the Honorable Ronald M. Quidachay granted final approval of a nationwide class action settlement providing cash and benefits valued at approximately $20 million.

***Steff v. United Online, Inc.***, Case No. BC265953, (Los Angeles Super. Ct.). This nationwide class action suit was brought against NetZero, Inc. and its parent, United Online, Inc., by former NetZero customers. The Plaintiffs alleged that Defendants falsely advertised their internet service as being unlimited and guaranteed for a specific period of time when it was not, in violation of Consumers Legal Remedies Act, Civil Code §§ 17500 et seq. and the Unfair Competition Law, Business And Professions Code §§ 17200 et seq. The Honorable Victoria G. Chaney of the Los Angeles Superior Court granted final approval of a settlement that provides full refunds to customers whose services were cancelled and additional cash compensation. The settlement also places restrictions on Defendants' advertising.

***Mackouse v. The Good Guys - California, Inc.***, Case No. 2002-049656, (Alameda County Super. Ct.). This nationwide class action lawsuit was brought against The Good Guys and its affiliates alleging violations of the Song-Beverley Warranty Act and other California consumer statutes. The Plaintiff alleged that The Good Guys failed to honor its service contracts, which were offered for sale to customers and designed to protect a customer's purchase after the manufacturer's warranty expired. In May 9, 2003, the Honorable Ronald M. Sabraw granted final approval of a settlement that provides cash refunds or services at the customer's election.

***Stoddard v. Advanta Corp.***, Case No. 97C-08-206-VAB (Del. Superior Ct.). This nationwide class action lawsuit was brought on behalf of cardholders who were promised a fixed APR for life in connection with balance transfers, whose APR was then raised pursuant to a notice of change in terms. The Honorable Vincent A. Bifferato approved a $7.25 million settlement and appointed firm as co-lead counsel for the settlement class.

***In re America Online, Inc. Version 5.0 Software Litigation***, MDL Docket No. 1341 (S.D. Fla.). Girard Gibbs served as co-lead counsel in this MDL proceeding, which centralized 45 class actions. The action involved alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq., federal antitrust laws and state consumer protection statutes based on AOL's distribution of its Version 5.0 software upgrade. The Honorable Alan S. Gold granted final approval to a $15.5 million cash settlement on August 1, 2002.

***Mager v. First Bank of Marin***, CV-S-00-1524-PMP (D. Nev.). This nationwide class action was brought on behalf of people who were enrolled in First Bank of Marin's credit card program. In May 2002, the Judge Pro of the U.S. District Court for the District of Nevada approved a settlement providing for cash and non-cash benefits to class members.

**Other Cases**

***Ho v. San Francisco Unified School District***, Case No. C-94-2418-WHO (N.D. Cal.). This civil rights action was brought on behalf of a certified class of San Francisco public school students of Chinese descent to terminate racial and ethnic quotas imposed under 1983 desegregation consent decree. See Ho v. San Francisco Unified Sch. Dist., 965 F. Supp. 1316 (N.D. Cal. 1997), aff'd 147 F.3d 854 (9th Cir. 1998); see also 143 Cong. Rec. S6097, 6099 (1997) (statement of United States Senator Hatch referring to testimony of class representative before Senate Judiciary Committee).

***In re World War II Era POW Litigation***, Case No. C-99-5042-VRW (N.D. Cal.). This class action lawsuit was brought on behalf of American veterans who, as prisoners-of-war held by the Japanese during World War II, were forced to perform slave labor for Japanese industry. Commenting on the Ninth Circuit decision affirming dismissal of the claims, Mr. Girard was quoted in the New York Times, "It's not unusual that you see a demand for payment that isn't legally enforceable. But the demand stands. If the position of the Japanese companies involved is that they refuse to consider the demand for compensation and stand on legal defenses, the moral consequences are what they are."

# EXHIBIT F

# Milberg Weiss Bershad & Schulman LLP

## THE FIRM'S PRACTICE AND ACHIEVEMENTS

Milberg Weiss was founded in 1965 and was one of the first law firms to prosecute class actions in federal courts on behalf of investors and consumers. The firm pioneered this type of litigation and is now widely recognized as the nation's leading defender of the rights of victims against corporate and other large-scale wrongdoing. The firm has principal offices in New York City and additional offices in Boca Raton, Florida and Los Angeles, California. The firm's practice focuses on the prosecution of class and complex actions in many fields of commercial litigation, emphasizing securities, corporate fiduciary, consumer, insurance, antitrust, mass tort, human rights, and related areas of litigation.

In the firm's early years, its founding partners, Lawrence Milberg and Melvyn I. Weiss, built a new area of legal practice in representing shareholders' interests under the then recently amended federal procedure Rule 23, which allowed securities fraud cases, among others, to proceed as class actions. In the following decades, the firm's lawyers obtained decisions that established important legal precedents in many of their areas of practice, and prosecuted cases that set benchmarks in terms of case theories, organization, discovery, trial results, methods of settlement, and amounts recovered and distributed to clients and class members.

Important milestones included the firm's involvement in the *U.S. Financial* litigation in the early 1970s, one of the earliest large class actions, which resulted in the recovery of over $50 million by purchasers of the securities of a failed real estate development company; the Ninth Circuit decision in *Blackie v. Barrack* in 1975, which established the fraud-on-the-market doctrine for securities fraud actions; co-lead counsel position in the *In re Washington Public Power Supply System (WPPSS) Securities Litigation*, a seminal securities fraud action in the 1980s in terms of complexity and amounts recovered; representation of the Federal Deposit Insurance Corp. in a year-long trial to recover banking losses from a major accounting firm, leading to a precedent-setting global settlement; attacking the Drexel-Milken "daisy chain" of illicit junk-bond financing arrangements with numerous cases that resulted in substantial recoveries for investors; representing life insurance policyholders defrauded by "vanishing premium" and other improper sales tactics and obtaining large recoveries from industry participants; and ground-breaking roles in the multi-front attack on deception and other improper activities in the tobacco industry.

Milberg Weiss remains at the forefront in its areas of practice. Recent litigation results include: Nortel Networks (proposed settlement for cash and stock valued at $1.142 billion); Lucent Technologies Securities Litigation ($600 million recovery); Raytheon Co. Securities Litigation ($460 million recovery); Managed Care Litigation (recoveries over $1 billion and major changes in HMO practices); NASDAQ Market Makers Antitrust Litigation ($1 billion recoveries); Initial Public Offering Securities Litigation (partial settlements for guaranteed minimum of $1 billion).

The firm is consistently active in pro bono litigation, highlighted by its leadership role in the *Swiss Bank Litigation*, which led to the recovery of $1.25 billion from Swiss banks to benefit victims of the Holocaust and its recent efforts representing claimants of the September 11 Victim Compensation Fund.

The firm's lawyers come from many different professional backgrounds. They include former federal or state prosecutors, private defense attorneys, and government lawyers. The firm's ability to pursue claims against defendants is augmented by its 16-person team of investigators, headed by a former agent for the Federal Bureau of Investigation, and its four full-time forensic accountants.

In 2003, the partners of Milberg Weiss Bershad Hynes & Lerach LLP decided to separate into two groups, with Milberg Weiss Bershad & Schulman LLP serving as the continuing firm.

Milberg Weiss has been responsible for more than $45 billion in recoveries during the life of the firm. Examples of cases in which the firm has taken lead roles include the *WPPSS* litigation, which resulted in settlements totaling $775 million; the *Lincoln Savings and Loan Litigation*, with total recoveries of $240 million out of $288 million in estimated total losses; the *NASDAQ Market-Makers Antitrust Litigation*, which resulted in a $1.027 billion settlement; and actions against major life insurers, including Prudential and MetLife, where the firm has recovered billions of dollars on behalf of policyholders who were the victims of alleged churning and other improper practices. In addition, the firm currently plays major roles in the litigation arising from the two largest scandals in the financial community -- the *IPO Securities Litigation*, in which the firm serves as Chair of Plaintiffs' Executive Committee, and the *Mutual Funds Litigation*, in which the firm is Co-Chair of Plaintiffs' Counsel's Steering Committee. For more information, please visit www.milbergweiss.com.

# JUDICIAL COMMENDATIONS

In ***In re September 11 Victim Compensation Fund***, Preliminary Hearing, Claim No. 212-003658 (Dec. 9 2003), Special Master Kenneth R. Feinberg stated the following regarding the firm's commitment to the public interest:

> Let me say one more thing on the record before we adjourn, and please convey this to Mr. Weiss and to David Bershad. Once again, as I have learned over the years here in New York, the Milberg Weiss firm steps up to the plate in the public interest time and time again. The social conscience of the Milberg Weiss firm, acting through its excellent associates and partners, help deal with crises that confront the American people and others, and I am personally in the debt of Milberg Weiss for the work that it is doing, even under the gun with the December 22 deadline looming. I am once again in Milberg Weiss' debt for their extraordinary willingness to help out in the public interest, and I hope you'll relay that message back to the firm... they are second among none in terms of the public interest, and I'm very, very grateful, not only to you guys for doing this, but... for the firm's willingness to help out. I wanted to let everybody know that.

Mr. Feinberg echoed this sentiment in a subsequent hearing (September 11th Victim Compensation Fund Hearing before Special Master Kenneth R. Feinberg, May 11, 2004):

> I also note on the record that the pro bono service of the Milberg Weiss firm is well-known to lawyers and the public throughout the nation, and I'm grateful that this is one more example of how Milberg Weiss serves the nation.
>
> I want to note on the record the extraordinary professionalism and skill of counsel in the preparation of this claim. They have exhibited the finest character of the Bar, and I thank them for a job well done.

Milberg Weiss has been commended by countless judges all over the country for the quality of its representation in class action lawsuits. In ***In re Rite Aid Corp. Securities Litigation***, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003), Judge Dalzell commented on the skill and efficiency of Milberg Weiss attorneys in litigating the complex case:

> At the risk of belaboring the obvious, we pause to say a specific word about… the skill and efficiency of the attorneys involved…Milberg Weiss [was] extraordinarily deft and efficient in handling this most complex matter… they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write-down of over $1.6 billion in previously reported Rite Aid earnings… In short, it would be hard to equal the skill class counsel demonstrated here.

In ***In re Lucent Technologies, Inc. Securities Litigation***, No. 00 CV-621, slip op. at 14-15, 26 (D.N.J. Feb. 24, 2004), Judge Joel A. Pisano of the United States District Court for the District of New Jersey recently issued an Opinion approving the Settlement of the Lucent Technologies Securities Litigation, in which he complimented Milberg Weiss (Co-Lead Counsel for the Plaintiff Class) saying:

> [T]he attorneys representing the Plaintiffs are highly experienced in securities class action litigation and have successfully prosecuted numerous class actions throughout the United States. They are more than competent to conduct this action. Co-Lead Counsel diligently and aggressively represented Plaintiffs before this Court and in the negotiations that resulted in the Settlement . . . the efforts and ingenuity of Lead Plaintiffs and Lead Counsel resulted in an extremely valuable Settlement for the Benefit of the Class.

In ***In re IKON Office Solutions, Inc. Securities Litigation***, 194 F.R.D. 166, 195 (E.D. Pa. 2000), where Milberg Weiss served as co-lead counsel, Judge Marvin Katz of the United States District Court for the Eastern District of Pennsylvania commented on the skill and professionalism of plaintiffs' co-lead counsel:

> First, class counsel is of high caliber and has extensive experience in similar class action litigation… Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability both to prosecute the case effectively and to negotiate credibly. Similarly, defense counsel has a fine reputation and has displayed great skill in defending this complex class action. Their opposition to plaintiffs has been anything but token, and many of the battles on crucial issues were hard fought.
>
> Of particular note in assessing the quality of representation is the professionalism with which all parties comported themselves. The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines. This professionalism was also displayed in class counsel's willingness to cooperate with other counsel when appropriate… This cooperation enabled the parties to focus their disputes on the issues that mattered most and to avoid pointless bickering over more minor matters.

In ***In re NASDAQ Market-Makers Antitrust Litigation***, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), in an opinion dated November 9, 1998, approving settlements totaling over $1.027 billion, Judge Sweet commented:

> Counsel for the Plaintiffs [Milberg Weiss] are preeminent in the field of class action litigation, and the roster of counsel for Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties in this action achieved.

In ***In re Prudential Insurance Co. of America Sales Practices Litigation***, 962 F. Supp. 572, 585-86 (D.N.J. 1997), vacated on other grounds, in approving the settlement of a nationwide class action against a life insurer for deceptive sales practices, where Milberg Weiss was co-lead counsel, Judge Wolin observed:

> [T]he results achieved by plaintiffs' counsel in this case in the face of significant legal, factual and logistical obstacles and formidable opposing counsel, are nothing short of remarkable.
>
> * * *
>
> Finally, the standing and professional skill of plaintiffs' counsel, in particular Co-Lead Counsel, is high and undoubtedly furthered their ability to negotiate a valuable settlement and argue its merits before this Court. Several members of plaintiffs' counsel are leading attorneys in the area of class action litigation.

At the Fairness Hearing, Judge Wolin stated that "there is no doubt that Class Counsel have prosecuted the interests of the class members with the utmost vigor and expertise." *In re Prudential Ins. Co. of Am. Sales Practices Litigation*, 962 F. Supp. 450, 519 (D.N.J. 1997) (emphasis added).

In approving a $100 million settlement in ***In re Prudential Securities Inc. Partnership Litigation***, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), in which Milberg Weiss was one of the lead counsel, Judge Pollack noted that he had "had the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and is impressed with the quality of Plaintiffs' Class Counsel."

In ***Roy v. The Independent Order of Foresters***, Civ. No. 97-6225 (SKC) at 32 (D.N.J. Aug. 3, 1999), in his opinion on class certification, Judge Chesler noted:

> The firm of Milberg Weiss, which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the Prudential case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the Milberg firm has helped to secure for the plaintiff classes in both this case and the Prudential case are a testament to counsel's vigorous pursuit of the class interests.

In ***In re Buspirone Patent Litigation***, MDL Docket No. 1413 at 34:2-3 (S.D.N.Y. Nov. 6, 2003) (Final Approval Hearing Transcript), Judge Koeltl commented on plaintiffs' counsel:

> Let me say that the lawyers in this case have done a stupendous job.

In ***Kruman v. Christie's International***, PLC, 00 Civ. 6322 (LAK) at 36:13-16 (S.D.N.Y. June 2, 2003) (Final Approval Hearing Transcript), Judge Kaplan commented on class counsel's representation:

> I have satisfied myself in examining these papers that counsel involved in this case pursued this very difficult matter tenaciously, with skill, and got what I view to be an excellent result.

# PROMINENT CASES

• ***In re Lucent Technologies, Inc. Securities Litigation***, No. 00cv621 (AJL) (D.N.J.). This settlement provides compensation of $600 million to aggrieved shareholders who purchased Lucent stock between October 1999 and December 2000.

• ***In re Raytheon Securities Litigation***, 99 CV 12142 (E.D. Mass.). This case concerned claims that a major defense contractor failed to write down assets adequately on long term construction contracts. In May 2004, Raytheon and its auditor PricewaterhouseCoopers LLP settled for a total of $460 million.

• Milberg Weiss served as co-lead counsel in ***In re Oxford Health Plans, Inc. Securities Litigation***, MDL Dkt. No. 1222 (CLB) (S.D.N.Y.), in which settlements totaling $300 million in cash were approved by the Court in June 2003. Plaintiffs alleged that Oxford Health Plans, Inc. issued fraudulent financial statements that misstated its premium revenues and medical claims expense. KPMG LLP, Oxford's outside auditor, was also named as a defendant and was alleged to have issued a materially false and misleading audit opinion on Oxford's financial statements for the year ended December 31, 1996.

• In ***In re Rite Aid Securities Litigation***, Master File No. 99-1349 (E.D. Pa.), Judge Stewart Dalzell approved class action settlements totaling $334 million against Rite Aid ($207 million), KPMG ($125 million -- the second largest amount ever recovered from an

accounting firm in a federal securities class action, and the largest ever against an auditor in a case where the securities claims were limited to claims under section 10(b), which requires proof of knowing or reckless misconduct), and certain former executives of Rite Aid ($1.6 million).

• ***In re Deutsche Telekom AG Securities Litigation***, Civil Action No. 00-CV-9475 (NRB) (S.D.N.Y.). Milberg Weiss served as co-lead counsel in this securities class action, alleging that Deutsche Telekom issued a false and misleading registration statement which improperly failed to disclose its plans to acquire VoiceStream Wireless Corporation and materially overstated the value of the Company's real estate assets. On July 29, 2005, Judge Naomi Reice Buchwald approved a settlement of $120 million in cash.

• ***In re CVS Corp. Securities Litigation***, C.A. No. 01-11464 (JLT) (D. Mass). Milberg Weiss served as co-lead counsel in this class action alleging that defendants engaged in a series of accounting improprieties and issued false and misleading statements which artificially inflated the price of CVS stock. On September 7, 2005, Judge Joseph Tauro approved a settlement of $110 million dollars in cash for shareholders who acquired CVS stock between February 6, 2001 and October 30, 2001.

• ***In re Scheiner v. i2 Technologies, Inc.***, Civ. No. 3:01-CV-418-H (N.D. Tex.). May 2004 settlement of $84.85 million with i2 Technologies and certain individual defendants. Case alleged securities fraud against defendants relating to company's software product descriptions and alleged violations of Generally Accepted Accounting Principles.

• Milberg Weiss served as co-lead counsel in ***Irvine v. ImClone Systems***, Inc., No. 02 Civ. 0109 (RO) (S.D.N.Y.), in which a settlement of $75 million in cash was approved by the Court on July of 2005. Plaintiffs alleged that ImClone issued a number of misrepresentations and fraudulent statements to the market regarding the likelihood of approval of the drug Erbitux, thereby artificially inflating the price of ImClone stock.

• ***In re Initial Public Offering Securities Litigation***, 21 MC 92 (S.D.N.Y.). The Initial Public Offering Securities Litigation consists of 309 separate class actions involving more than 300 IPOs marketed between 1998 and 2000. The actions are coordinated for pre-trial purposes before U.S. District Court Judge Shira A. Scheindlin in the Southern District of New York. The defendants consist of the companies brought public, certain of their officers and directors and 55 of the investment banks that brought them public and underwrote various follow-on offerings. The lawsuits generally allege that the IPOs of these companies were manipulated by the investment banks to artificially inflate the market price of those securities and to conceal the amounts of compensation actually received by the underwriters and that these efforts were not disclosed to the investing public. A settlement between plaintiffs and the issuer defendants and their directors and officers was approved by the Court. The settlement guarantees a recovery of at $1 billion dollars for the settlement classes. The $1 billion guarantee from the issuers is subject to reduction by potential recoveries from the 55 Underwriter Defendants against whom the litigation continues. Recently, Judge Scheindlin granted plaintiffs' motions for class certification in six class actions against the Underwriter Defendants, which were selected to serve as test cases. This decision is currently being appealed to the U.S. Court of Appeals for the Second Circuit.

• In ***In re Mutual Funds***, Milberg Weiss has been appointed as the co-chair of the plaintiffs' counsel's steering committee, which is responsible for prosecuting this ground-breaking litigation involving timing and late trading allegations against (and on behalf of) more than 16 mutual fund families and affiliated entities. Pursuant to an order by the Panel for Multidistrict Litigation, these cases are proceeding before four judges in the District of Maryland. As co-chair, Milberg Weiss is responsible for overseeing a steering committee comprised of approximately 10 firms which are working together to prosecute this highly complex litigation.

• The firm was lead counsel in ***In re Prudential Insurance Co. Sales Practice Litigation***, Civ. No. 95-4707 (AMW) (D.N.J.), a landmark case which concerned securities claims as well as common law claims and which resulted in a recovery exceeding $4 billion for Prudential policyholders. The settlement was approved in a comprehensive decision handed down by the Third Circuit. Milberg Weiss has led the litigation of numerous other class actions involving alleged churning practices by other insurance companies and their agents, recovering billions of dollars in actions against major insurers, including MetLife, American Express/IDS, New York Life, ManuLife and John Hancock.

• In ***In re NASDAQ Market-Makers Antitrust Litigation***, MDL 1023 (S.D.N.Y.), Milberg Weiss served as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever.

• ***In re Washington Public Power Supply System Securities Litigation***, MDL 551 (D. Ariz.). A massive litigation in which Milberg Weiss served as co-lead counsel for a class that obtained settlements totaling $775 million after several months of trial.

• In ***In re American Continental Corp./Lincoln Savings & Loan Securities Litigation***, MDL 834 (D. Ariz.), Milberg Weiss served as the court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now-infamous Lincoln Savings & Loan. The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws. Recoveries totaled $240 million on $288 million in losses. A jury also rendered verdicts of more than $1 billion against Keating and others.

• ***In re Exxon Valdez***, No. A89-095 Civ. (D. Alaska) and ***In re Exxon Valdez Oil Spill Litigation***, 3 AN-89-2533 (Alaska Super. Ct. 3d Jud. Dist.). Milberg Weiss is a member of the Plaintiffs' Coordinating Committee and co-chair of Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

• In ***In re Managed Care Litigation***, MDL 1334 (S.D. Fla.). Final approval of a settlement between a nationwide class of physicians and defendant CIGNA Healthcare valued in excess of $500 million dollars was granted on April 22, 2004. A similar settlement valued in excess of $400 million involving a nationwide class of physicians and Aetna was approved by the Court on November 6, 2003. The settlements stem from a series of lawsuits filed in both state and federal court by physicians and medical associations currently pending against many of the nation's largest for-profit health insurers arising from conduct involving issues dating back to 1990. These settlements bring sweeping changes to the health care industry and involve improvements to physician-related business practices and provide for the establishment of an independent foundation dedicated to improving the quality of health care in America.

• ***In re Baldwin United Annuity Litigation***, No. M-21-35 (S.D.N.Y.). Milberg Weiss served as co-lead counsel in this consolidated proceeding on behalf of purchasers of annuities that was settled for over $160 million.

• ***In re MicroStrategy, Inc. Securities Litigation***, No. 00-473-A (E.D. Va.). Milberg Weiss served as co-lead counsel in this action, which alleged securities fraud based on a massive restatement. Settlements with the defendants totaled in excess of $150 million.

• ***In re Sunbeam Securities Litigation*** (No. 98-8258) (S.D. Fla) Milberg Weiss acted as co-lead counsel for the class. Plaintiffs alleged that Sunbeam, its auditor, and its management engaged in a massive accounting fraud which led to a restatement of over three years of previously reported financial results. The Court approved a combined settlement of over $140 million. The settlement amount included a $110 million settlement with Arthur Andersen, LLP, Sunbeam's auditor. The Andersen settlement is one of the largest amounts ever paid by a public accounting firm to settle claims brought under the federal securities laws. The settlement with the individuals was achieved on the eve of trial, and ended almost four years of litigation against Andersen and Sunbeam's insiders, including Albert Dunlap, Sunbeam's former Chairman and CEO. The settlement included a personal contribution from Dunlap of $15 million.

• In ***In re Computer Associates Securities Litigation***, Nos. 98-CV-4839, 02-CV-1226 (TCP) (E.D.N.Y.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement valued at over $134 million in these securities fraud class actions.

• In ***In re IKON Office Solutions, Inc. Securities Litigation***, MDL 1318, Docket No. 98-4286 (E.D. Pa.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement of $111 million in this securities fraud class action.

• In ***In re W.R. Grace & Co. (Official Committee of Asbestos Personal Injury Claimants v. Sealed Air. Corp. and Official Committee of Asbestos Personal Injury Claimants v. Fresenius Medical Care Holdings, Inc.)***, Nos. 02-2210 and 02-2211 (D. Del.), Milberg Weiss acted as lead counsel for the asbestos personal injury and property damage committees in two separate fraudulent conveyance actions within the W.R. Grace bankruptcy. The actions sought to return the assets of Sealed Air Corporation and Fresenius Medical Care Holdings (each of which had been Grace subsidiaries pre-bankruptcy) to the W.R. Grace bankruptcy estate. Complaints in both cases were filed in mid-March 2002, and agreements in principle in both cases were reached on November 27, 2002, the last business day before trial was set to begin in the Sealed Air matter. The total of the two settlements, which consisted of both cash and stock, was approximately $1 billion.

• ***In re Kruman v. Christie's International, PLC***, 284 No. 01-7309 (S.D.N.Y.), resulted in the first U.S. Court of Appeals holding that antitrust class actions on behalf of all purchasers injured worldwide can be brought in U.S. courts under U.S. law when an antitrust conspiracy has sufficient effects in the U.S. Decided in March 2002; led to successful settlement in 2003 of claims against

Christie's and Sotheby's on behalf of purchasers and sellers at auctions outside the U.S.

• ***In re Tyco International Ltd., Securities Litigation***, MDL Docket No. 02-1335-B (D.N.H.). Milberg Weiss is co-lead counsel in this litigation, which involves claims under the Securities Act of 1933 and the Securities Exchange Act of 1934 against Tyco and its former CEO, CFO, general counsel and certain former directors that arise out of Tyco's $5.8 billion overstatement of income and $900 million in insider trading, plus hundreds of millions of dollars looted by insiders motivated to commit the fraud. Claims are also made under the 1933 and 1934 Acts against PricewaterhouseCoopers, LLP, which is alleged to have published false audit opinions on Tyco's financial statements during the Class Period and to have failed to audit Tyco properly, despite knowledge of the fraud. In October 2004, the Court sustained the vast majority of plaintiffs' claims against Tyco and its former senior officers (Dennis Kozlowski, Mark Swartz, Mark Belnick and Frank Walsh), with the exception of one director, as well as Tyco's auditor, PwC.

• ***In re Nortel Networks Corp. Securities Litigation***, Civ. No. 01-CV-1855-RMB (S.D.N.Y.). This federal securities fraud class action was commenced in February 2001 against Nortel Networks Corp. and certain of its officers and directors. In February 2002, Milberg Weiss was appointed to serve as sole Lead Counsel for the Class and for the Court-appointed Lead Plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund. In January 2003, the Court sustained the Complaint in its entirety, denying defendants' motion to dismiss and, in September 2003, certified a Class. In certifying the Class, the Court specifically rejected defendants' argument that those who traded in Nortel securities on the Toronto Stock Exchange (and not the New York Stock Exchange) should be excluded from the Class. The Second Circuit denied defendants' attempted appeal.

• ***In re Xerox Securities Litigation***, No. 3:99-CV-2374 (AWT) (D. Conn.) and ***Carlson v. Xerox Corp.***, No. 3:00-CV-1621 (AWT) (D. Conn.). Milberg Weiss was appointed co-lead counsel in both of these cases. The first case was brought on behalf of a class of purchasers of Xerox common stock from October 22, 1998 (when Xerox first claimed that it was benefiting from a restructuring) through October 7, 1999 (when Xerox finally disclosed the massive problems with the restructuring that affected its operations and the impact of these problems on its revenues) and alleged misrepresentations regarding Xerox's restructuring. The second case was brought on behalf of a class of purchasers of Xerox common stock from February 17, 1998 through June 28, 2002 and alleged misrepresentations and failure to disclose massive accounting improprieties. As a result of these alleged accounting improprieties, on June 28, 2002 (the last day of the Class Period), Xerox issued a $6.4 billion restatement of equipment sales revenues booked over a five year period.

• Milberg Weiss is prosecuting numerous class actions involving a major area of investment abuse: deceptive sales of deferred annuity tax shelters to investors for placement in retirement plans that are already tax-qualified. In ***Nelson v. Pacific Life Ins. Co.***, No. CV203-131 (S.D. Ga.) the district court denied defendants' motion to dismiss and has certified a class. In ***American United Life Insurance Co. v. Douglas***, No. 29A02-0304-CV-350 (Ind. Ct. App.), denial of defendant's summary judgment motion was sustained on interlocutory appeal. The SEC and NASD have begun regulatory programs to address these problems.

• Milberg Weiss is co-lead counsel in ***In re Vivendi Universal, S.A. Securities Litigation***, 02 Civ. 5571 (RJH), a securities fraud class action on behalf of U.S. and foreign investors who purchased Vivendi ordinary shares or American Depository Shares. Plaintiffs allege that Vivendi embarked on a $77 billion acquisition spree in order to transform itself into a huge international conglomerate. Throughout the Class Period (October 30, 2000 through August 14, 2002), defendants (and in particular, Vivendi's former CEO and Chairman, Jean-Marie Messier, and Vivendi's former CFO, Guillaume Hannezo) reported strong revenue and earnings, and portrayed Vivendi as a company that was generating sufficient cash flow to satisfy its debt obligations on approximately $21 billion in debt that it had amassed in connection with financing its acquisition binge. However, plaintiffs allege that Vivendi's operations and financial condition were much weaker than what their public statements portrayed. Plaintiffs have already defeated defendants' motions to dismiss the complaint, and are in the midst of discovery that will take place in the U.S. and France (where French regulators are conducting their own formal investigations).

• ***Rabi Abdullahi v. Pfizer, Inc.***, 01 Civ. 8118 (WHP), (S.D.N.Y.). This is a case in which the firm has brought claims under the Alien Tort Claims act on behalf of Nigerian children and their families who were enrolled in a clinical trial of a drug by Pfizer without their knowledge. Plaintiff alleges that Pfizer's conduct violated the international prohibition on medical experimentation without informed consent when children suffering from meningitis, whose families had brought them to a local hospital for treatment, were secretly enrolled in a clinical trial of the Pfizer drug, Trovan. Plaintiff survived a motion to dismiss for failure to state a claim. The action was then dismissed

on forum non-conveniens grounds but the Second Circuit vacated that decision. The case is now back before the trial court.

• In ***In re General Instrument Corp. Securities Litigation***, No. 01-3051 (LR) (E.D. Pa.), Milberg Weiss served as co-lead counsel and obtained a pretrial settlement of $48 million in this securities fraud class action.

• ***In re Royal Dutch/Shell Transport ERISA Litig.***, No. 04-1398 (JWB) (D.N.J.). This was an ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the company's U.S. employees invested in the company's stock fund. The $90 million settlement is one of the largest recoverable amounts obtained in an ERISA breach of fiduciary duty case. Notably, the settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

• ***In re Triton Energy Limited Securities Litigation***, Civil Action No. 5-98-CV-256 (E.D. Tex. Texarkana Division), settled for $42 million. Plaintiffs alleged that defendants misrepresented, among other things, the nature, quality, classification and quantity of Triton's Southeast Asia oil and gas reserves during the period March 30, 1998 through July 17, 1998.

• Milberg Weiss served as co-lead counsel in ***In re Thomas & Betts Securities Litigation***, Civil Action No. 00-CV-2127 (W.D. Tenn), in which plaintiffs recovered $46.5 million dollars in cash from the Company and $4.65 in cash from its outside auditor, KPMG. Plaintiffs alleged that Thomas & Betts engaged in a series of accounting improprieties while publicly representing that its financial statements were in compliance with GAAP, and failed to disclose known trends and uncertainties regarding its internal control system and computer and information systems.

• ***In re MTC Electronic Technologies Shareholder Litigation***, Master File No. CV-93-0876 (JG) (E.D.N.Y.). Plaintiffs alleged that defendants issued false and misleading statements concerning, among other things, purported joint venture agreements to establish telecommunications systems and manufacture telecommunications equipment in China. The Court approved a settlement of $70 million, including $65 million in cash and $5 million worth of MTC Class A shares with "put" rights.

• In ***In re Painewebber Limited Partnerships Litigation***, Master File 94 Civ. 8547 (SHS) (S.D.N.Y.), Milberg Weiss represented investors alleging that PaineWebber developed, marketed and operated numerous investment partnerships as part of an ongoing conspiracy to defraud investors and enrich itself through excessive fees and commissions over a twelve-year period. On March 20, 1997, Judge Sidney Stein approved a settlement of $200 million, which consisted of $125 million in cash and $75 million worth of guarantees and fee waivers.

• In ***In re Ames Department Stores, Inc.***, MDL Dkt. No. 924 (MP) (S.D.N.Y.), Milberg Weiss represented purchasers of Ames securities alleging that defendants issued false and misleading statements regarding the success of Ames' integration of a major acquisition and the Company's future financial prospects. The Court approved a settlement of $41 million in cash.

• In ***In re VMS Securities Litigation***, No. 89 C 9448 (N.D. Ill.), Milberg Weiss secured a settlement of $59 million on behalf of a class of investors alleging that defendants committed securities fraud by engaging in misrepresentations concerning a group of real estate investment trusts. Plaintiffs alleged that defendants had misrepresented the funds' business practices, loan portfolios and financial well-being and concealed liquidity problems and the financial status of many of the funds' borrowers.

• In ***Andrews v. AT&T,*** No. CV 191-175 (S.D. Ga.). The firm represented a class of persons who paid for premium-billed "900-number" calls that involved allegedly deceptive games of chance, starting in 1993. Defendants included major long-distance companies, which approved the call programs and billed for the calls. Defendant MCI settled for $60 million in benefits; the class against AT&T was decertified on appeal and the firm prosecuted the individual plaintiffs' claims, obtaining a jury verdict in 2003 for compensatory and punitive damages.

## PRECEDENT-SETTING DECISIONS

Milberg Weiss has consistently been a leader in developing the law for investors and consumers under the federal securities, antitrust and consumer protection laws. The firm has represented individual and institutional plaintiffs in hundreds of class action litigations in federal and state courts throughout the

country. In most of those cases, Milberg Weiss has served as lead or co-lead counsel for the class. The firm has also been responsible for establishing many important precedents, including:

• ***Blackie v. Barrack***, 524 F.2d 891 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976). This is the seminal appellate decision on the use of the "fraud-on-the-market" theory, allowing investors who purchase stock at artificially inflated prices to recover even if they were personally unaware of the false and misleading statements reflected in the stock's price. The court stated that class actions are necessary to protect the rights of defrauded purchasers of securities.

• ***Novak v. Kasaks***, 216 F.3d 300 (2d Cir. 2000). The firm was lead counsel in this seminal securities fraud case in which the Second Circuit undertook an extensive analysis of the statutory text and the legislative history of the PSLRA and pre-existing Second Circuit case law. Among other things, the Second Circuit held that the PSLRA's pleading standard for scienter was largely equivalent to the pre-existing Second Circuit standard and vacated the district court's dismissal which sought to impose a higher standard for pleading scienter under the PSLRA. The Second Circuit also rejected any general requirement that plaintiffs' confidential sources must be disclosed to satisfy the PSLRA's newly-enacted particularity requirements.

• ***In re Cabletron Systems, Inc.***, 311 F.3d 11 (1st Cir. 2002). The First Circuit joined the Second Circuit in allowing a complaint to be based on confidential sources. The Court also accepted the argument made by Milberg Weiss that courts should consider the amount of discovery that has taken place in deciding a motion to dismiss and that the lack of discovery will result in a less stringent standard for pleading securities fraud claims with particularity.

• ***Gebhardt v. ConAgra Foods, Inc.***, 335 F.3d 824 (8th Cir. 2003). This important decision strongly reaffirmed the principle that whether an undisclosed fact would have been material to investors cannot ordinarily be decided on a motion to dismiss. The Eighth Circuit, stressing that "[t]he question of materiality hinges on the particular circumstances of the company in question," observed that even relatively small errors in financial statements might be material if they concern areas of particular importance to investors and raise questions about management integrity.

• ***In re Advanta Corp. Securities Litigation***, 180 F.3d 525 (3d Cir. 1999). Here, the firm successfully argued that, under the PSLRA, the requisite scienter is pled by making an adequate showing that the defendants acted knowingly or with reckless disregard for the consequences of their actions. As urged by this firm, the Third Circuit specifically adopted the Second Circuit's scienter pleading standard for pleading fraud under the PSLRA.

• ***In re NASDAQ Market-Makers Antitrust Litigation***, 169 F.R.D. 493 (S.D.N.Y. 1996). The court certified a class of millions of investors, who were harmed by an industry-wide conspiracy where NASDAQ market-makers set and maintained wide spreads, over defendants' strenuous objections.

• ***In re Initial Public Offering Securities Litigation***, 241 F. Supp. 2d 281 (S.D.N.Y. 2003). The Court sustained, in large part, the plaintiffs' complaints against more than 50 underwriters of high-tech stocks in one of the most comprehensive decisions issued under the securities laws. Milberg Weiss serves as the Chair of Plaintiffs' Executive Committee in this landmark litigation.

• ***Asher v. Baxter International, Inc.***, 377 F.3d 727 (7th Cir. 2004). In reversing and remanding the dismissal by the District Court, the Seventh Circuit resolved an important issue involving the PSLRA "safe harbor" for forward-looking statements in plaintiffs' favor. The Court held that whether a cautionary statement is meaningful is an issue of fact, because whether a statement is meaningful or not depends in part on what the defendant knew as well as other issues of fact. Thus, this issue is not appropriately resolved on a motion to dismiss.

• In ***In re Vivendi Universal, S.A. Securities Litigation***, 2003 U.S. Dist. LEXIS 19431 (S.D.N.Y. Nov. 3, 2003), Judge Harold Baer upheld plaintiffs' claims under Section 10(b) of the Securities Exchange Act of 1934, which alleged that Vivendi and two of its former executives (CEO Jean-Marie Messier and CFO Guillaume Hannezo) did not disclose to investors that: (1) Vivendi's corporate acquisition programs had brought Vivendi to the brink of a potentially catastrophic liquidity crisis; (2) although it consolidated the financial results of several majority owned subsidiaries, Vivendi did not have access to the cash flows of these entities; (3) Vivendi failed to write down billions of dollars of impaired goodwill from prior acquisitions; and (4) one of Vivendi's U.S. subsidiaries improperly recognized revenue "up front" on the full value of long term contracts. The case is particularly notable because the court held that because of defendants' activities in New York promoting Vivendi stock, defendants' conduct was more than "merely prepatory" to the alleged fraudulent scheme, and thus the court had jurisdiction not only over purchasers of Vivendi ADRs on the NYSE, but also over the claims of foreign purchasers who purchased Vivendi ordinary shares on foreign exchanges.

• In ***Hunt v. Alliance North American Government Income Trust, Inc.***, 159 F.3d 723 (2d Cir. 1998), the Second Circuit reversed the district court's ruling, which denied plaintiffs a cause of action against defendants for failing to disclose that the Trust was unable to utilize proper "hedging" techniques to insure against risk of loss. In the Court's view, taken together and in context, the Trust's representations would have misled a reasonable investor.

• In ***Shaw v. Digital Equip. Corp.***, 82 F.3d 1194 (1st Cir. 1996), the First Circuit remanded plaintiffs' action after affirming, in part, Milberg Weiss' position that in association with the filing of a prospectus related to the issuance of securities, a corporate-issuer must disclose intra-quarter, materially adverse changes in its business, if such adverse changes constitute "material changes" the disclosure of which is required pursuant to the Securities Act of 1933.

• ***In re Salomon, Inc. Shareholders Derivative Litigation***, 68 F.3d 554 (2d Cir. 1995). The Second Circuit affirmed the district court's holding that derivative federal securities claims against defendants would not be referred to arbitration pursuant to the arbitration provisions of the Rules of the New York Stock Exchange, but would be tried in district court. Shortly thereafter, the case settled for $40 million, which is among the largest cash recoveries ever recorded in a derivative action.

• ***Kamen v. Kemper Financial Services***, 500 U.S. 90 (1991). The Supreme Court upheld the right of a stockholder of a mutual fund to bring a derivative suit without first making a pre-suit demand.

• ***Goldman v. Belden***, 754 F.2d 1059 (2d Cir. 1985). The Second Circuit reversed the district court's dismissal of a securities fraud complaint, in an important opinion clarifying the "fraud" pleading requirements of Federal Rules of Civil Procedure, Rule 9(b).

• ***Mosesian v. Peat, Marwick, Mitchell & Co.***, 727 F.2d 873 (9th Cir.), cert. denied, 469 U.S. 932 (1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for §10(b) suits that are favorable to investors.

• ***Hasan v. CleveTrust Realty Investors***, 729 F.2d 372 (6th Cir. 1984). The Sixth Circuit very strictly construed, and thus narrowed, the ability of a "special litigation committee" of the board of a public company to terminate a derivative action brought by a shareholder.

• ***Cowin v. Bresler***, 741 F.2d 410 (D.C. Cir. 1984). The Court of Appeals reversed the lower court's dismissal of the complaint. The firm had sought the extraordinary remedy of the appointment of a receiver over the affairs of a public company due to the highly specific allegations of fraud, dishonesty and gross mismanagement by the corporation's controlling shareholders.

• ***Fox v. Reich & Tang, Inc.***, 692 F.2d 250 (2d Cir. 1982), aff'd sub nom, ***Daily Income Fund, Inc. v. Fox***, 464 U.S. 523 (1984). The court held that a derivative action to recover excessive advisory fees may be brought on behalf of an investment company without any prior demand on the board.

• ***Rifkin v. Crow***, 574 F.2d 256 (5th Cir. 1978). The Fifth Circuit reversed an order granting summary judgment for defendants in a §10(b) case, paving the way for future acceptance of the "fraud-on-the-market" rationale in the Fifth Circuit.

• ***Bershad v. McDonough***, 300 F. Supp. 1051 (N.D. Ill. 1969), aff'd, 428 F.2d 693 (7th Cir. 1970). The plaintiff obtained summary judgment for a violation of §16(b) of the Securities Exchange Act in which the transaction was structured by the defendants to look like a lawful option. The decision has been cited frequently in discussions as to the scope and purpose of §16(b).

• ***Heit v. Weitzen***, 402 F.2d 909 (2d Cir. 1968), rev'g, 260 F. Supp. 598 (S.D.N.Y. 1966). The court held that liability under §10(b) of the Securities Exchange Act extends to defendants who were not in privity with the named plaintiffs or the class represented by the named plaintiffs.

• ***In re Cox v. Microsoft***, No. 03-2922 (App. Div. 1st Dep't, June 2004). First appellate ruling in New York state courts that class actions may be pursued in the New York state courts for some antitrust violations on behalf of indirect purchasers under New York deceptive practices laws as well as common law claims for unjust enrichment. May open the door to class action recovery of damages on behalf of New York purchasers of Microsoft software comparable to settlements reached in various other states such as California, where Microsoft settled for approximately $1 billion.

• ***In re JLM Industries, Inc. v. Stolt-Nielsen SA***, No. 3:03CV348 (D. Conn. June 24, 2003). Milberg Weiss succeeded in establishing that arbitration of horizontal conspiracy claims, arising under Section 1 of the Sherman Act, cannot be compelled on grounds that such claims do not "arise from" the injured person's purchase contract. (Currently on appeal and awaiting decision from the Second Circuit.)

• In ***Puckett v. Sony Music Entertainment***, No. 108802/98 (New York Co. 2002), Milberg Weiss achieved a precedent-setting decision in which a class action was certified against Sony Music Entertainment on behalf of a class of recording artists who were parties to standard Sony recording or production agreements

entered into at any time during the period of January 1, 1965 to the date of the filing of the complaint in 1998. The complaint alleged that Sony had a policy of treating the value added tax on foreign sales of recordings improperly thereby impermissibly reducing the royalties paid or credited to the class members. Justice DeGrasse of the New York State Supreme Court determined that class certification was appropriate and that Gary Puckett (of Gary Puckett & the Union Gap) and jazz musician and composer Robert Watson were appropriate class representatives to represent the class of artists and producers to whom Sony accounts for foreign record royalties.

Additionally, in the context of shareholder derivative actions, Milberg Weiss has been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Cases in which such changes were made include:

• ***In re Marketspan Corporate Shareholder Litigation***, CV No. 98-15884 (N.Y. Sup. Ct.) (settlement agreement required modifications of corporate governance structure, changes to the audit committee and changes in compensation awards and the nominating committee);

• ***Abramsky v. Computer Sciences Corp.***, CV No. 98-00306-JBR (RLH) (D. Nev. 1998) (significant changes to the company's by-laws and governance procedures to enhance shareholder voting rights and the role of outside directors).

## THE FIRM'S PARTNERS

**MELVYN I. WEISS**, Senior and Founding Partner of Milberg Weiss Bershad & Schulman LLP, is a leading practitioner in the fields of securities, insurance, environmental, antitrust, and consumer litigation.

Mr. Weiss's expertise has been recognized on numerous occasions by courts appointing him to leadership positions in prosecuting complex litigations. Among the more prominent of the outstanding recoveries in cases where he has represented defrauded investors or consumers are the *Drexel/Milken* litigations (recoveries of over $1 billion for investors in, among others, *Columbia Savings & Loan* and *Executive Life Insurance Company of America*); *In re Washington Public Power Supply System Securities Litigation* ($775 million recovered after the country's largest municipal bond default); *Butcher Bank Litigation* (leading to $400 million recovery on behalf of the FDIC against Ernst & Young); *Oxford Healthcare Securities Litigation* ($300 million); *Prudential Limited Partnership Litigation* ($200 million); *Mercedes Brake Defect Litigation* ($100 million in settlement benefits); life insurance policy holder cases against *Prudential Life Insurance* ($4 billion), *John Hancock* ($400 million), *New York Life* ($300 million), *ManuLife* ($500 million) and *Metropolitan Life* ($1.7 billion). He was a pro bono lead counsel in the *Swiss Bank Litigation* involving Holocaust confiscations, which settled for $1.25 billion, and was a lead counsel in recovering $5 billion for Holocaust victims from German banks and companies. He is presently Chair of the Plaintiff's Executive Committee prosecuting over 300 cases involving misconduct in connection with initial public offerings, in which a partial settlement with some defendants of $1 billion has been announced.

Mr. Weiss received a B.B.A. in accounting from Baruch College of the City College of New York in 1957, and a J.D. degree from New York University School of Law in 1959. He was admitted to the Bar of the State of New York in 1960 and is presently a member of the Bar of the United States District Courts for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits, and the United States Supreme Court.

Mr. Weiss has lectured extensively to lawyers, law students, and other professionals throughout the country and abroad. He has been a guest lecturer at the New York University School of Law, Stanford University Law School, Harvard Law School, Duke Law School, University of Buenos Aires (where he is an honorary professor), and at the Salzburg Seminar Foundation in Austria. He has addressed the New York State Society of Certified Public Accountants, National Association of Accountants, National Association of Internal Auditors, and in 1993 delivered the Abraham Briloff Distinguished Lecture at the State University of New York at Binghamton on the role of the auditor in our society. He has frequently been quoted as a leading authority on shareholder and consumer rights in the national media and he has testified before congressional committees on securities litigation and accountants' liability. Mr. Weiss is a Fellow of The American College of Trial Lawyers. He received the 1993 Arthur T. Vanderbilt Medal from New York University Law School, the highest award given annually to an outstanding alumnus, and is a member of the law school's Board of Trustees and a recipient of the Alumni Achievement Award. In 2005, Accounting Today named Mr. Weiss as one of its Top 100 Most Influential People.

Mr. Weiss is a member of the American Bar Association (from 1986-1988, he served as a Co-Chair of the Class and Derivative Committee of the Litigation Section; from 1983-1986, he served as a member of the FRCP Rule 23 Class Action Improvement Committee; and from 1976-1982, he served as a member of the Corporate Law Committee of the Banking and Business Law Section), the Association of the Bar of the City of New York, and the New York Inns of Court. In 2000, Mr. Weiss was selected by Chief Judge Edward R. Becker of the Third Circuit to serve as a member of the Third Circuit Task Force on Selection of Class Counsel.

Mr. Weiss was a Commissioner of the Nassau County Charter Revision Commission, which proposed the new legislative form of government for the county's 1.3 million residents. He has testified before the U.S. Senate on tort "reform" proposals. He is a director and a member of the Executive Committee of the Israel Policy Forum, an organization devoted to encouraging peace in the Middle East. Until recently, Mr. Weiss served on the Board of Directors of the Salzburg Seminar Foundation and he is presently on the Boards of the Lawyers' Committee for Civil Rights Under Law, the World Council of the American Jewish Congress and the American Constitution Society. Mr. Weiss is the Vice Chairman of the Drum Major Institute for Public Policy, a think tank founded during the civil rights movement that today provides ideas to fuel the progressive agenda.

Mr. Weiss and his wife established the Melvyn and Barbara Weiss Public Interest Foundation at New York University School of Law to assist graduating public-interest lawyers in retiring their student loans. He has received the Anti-Defamation League's Gotham Award and Humanitarian Award; the United Jewish Appeal's Proskauer Award, given annually to an exemplary Jewish lawyer and humanitarian; the B'nai B'rith of Argentina Dignity & Justice Award for humanitarian activities; and the Ellis Island Medal of Honor from the National Ethnic Coalition of Organizations Foundation, Inc. Mr. Weiss is the International Chair of the Hatikva Project, which built a memorial on the site of the Israeli Embassy in Buenos Aires, which was destroyed by terrorists.

**DAVID J. BERSHAD [currently on leave of absence]** graduated from Cornell University in 1961 with an A.B. degree in philosophy. He graduated from Columbia Law School in 1964 and while there he participated in the Harlan Fiske Stone Moot Court Honors Competition and was elected a member of Phi Alpha Delta.

Mr. Bershad is a founding member of Milberg Weiss. He is primarily engaged in prosecuting complex securities and commercial litigations nationwide. He served as plaintiffs' liaison counsel in *In re Baldwin United Corporation Litigation*, M.D.L. No. 581 (S.D.N.Y.), and was prime negotiator of settlements aggregating more than $220 million, the largest federal securities class action settlement recorded at that time. Subsequently, he has led plaintiffs' counsel in a wide range of cases arising out of the federal securities laws, as well as antitrust and consumer laws. He has actively negotiated more than 100 complex class action settlements, including acting as prime negotiator and achieving a $1.07 billion settlement in *In re NASDAQ Market Makers Antitrust Litigation*, M.D.L. No.1023 (S.D.N.Y.), the largest antitrust class action settlement at that time. He recently acted as class lead counsel in securities class actions involving Rite Aid (settled in 2003 for approximately $300 million) and Lucent (global settlements of $600 million).

Mr. Bershad is a regular panelist on securities law matters for the Practising Law Institute, American Bar Association, American Conference Institute, Glasser Legal Works, and American Law Institute-American Bar Association. He lectures on the topics of complex litigation, federal securities law, class actions and financial derivatives. He has contributed the plaintiffs' view in a book, *Securities Class Actions: Abuses and Remedies*, published by the National Legal Center for the Public Interest, and has debated the plaintiffs' view of the world before the Federalist Society. He has also appeared as a legal expert on CNBC and CNN regarding significant business related public interest issues. Mr. Bershad was recently profiled in Fortune magazine's feature story for his leading role in the *Lucent Technologies Shareholder Litigation*.

Mr. Bershad is admitted to practice in the courts of the State of New York, as well as the United States District Court for the Southern District of New York, the United States Courts of Appeals for the Second, Third, Fourth, Seventh, and Ninth Circuits, and the U.S. Supreme Court.

**STEVEN G. SCHULMAN [currently on leave of absence]** graduated with a B.A. degree in history, *magna cum laude*, Phi Beta Kappa, from Williams College in 1973. He earned an M.A. degree (1975) and a M.A.L.D. degree (1976) in international relations from the Fletcher School of Law and Diplomacy at Tufts University. In 1980, Mr. Schulman received his J.D. degree with honors from the University of Chicago Law School, where he served on *The University of Chicago Law Review* and was elected to the Order of the Coif. Thereafter, he served for one year as a law clerk to the Honorable Robert L. Kunzig of the United States Court of Claims in Washington, D.C., following which he associated with Cravath, Swaine & Moore in New York City.

Since joining Milberg Weiss in 1986, Mr. Schulman has been engaged in prosecuting a wide variety of securities fraud class actions and shareholder derivative actions. He has also been actively and extensively involved in shareholder litigations arising from mergers and acquisitions, many of which were litigated in Courts of the State of Delaware. Among Mr. Schulman's significant recent cases, he served as lead trial counsel in *In re MicroStrategy, Inc. Securities Litigation* (E.D. Va.), which settled for an amount in excess of $150 million. He led the trial team in the landmark *In re Walt Disney Derivative Litigation* case, which has redefined the fiduciary duties of directors in public companies. He is also serving as lead counsel in the *In re Nortel Networks Corporation Securities Litigation* pending in the Southern District of New York, the *In re Williams Securities Litigation* pending in the Northern District of Oklahoma and in the *In re Raytheon Securities Litigation* pending in the District of Massachusetts. He is also significantly involved in the Firm's groundbreaking litigation relating to Wall Street's IPO allocation practices.

Mr. Schulman frequently lectures and participates in professional education panels, some of which include: Civil Practice and Litigation Techniques in Federal and State Courts, organized by ALI-ABA Committee on Continuing Professional Education (11/16-18/00); Key Issues Facing Boards Of Directors: The Coming Tide in

Securities Class Actions, organized by AIG, Freeborn & Peters, Milberg Weiss and the National Economic Research Associates (02/22/01); Leveraged Buyouts & Other Private Equity Investments, organized by City Bar Center for CLE - Association of the Bar of the City of New York (09/24/01); The 33rd Annual Institute on Securities Regulations, organized by Practicing Law Institute (11/7/01); Evolution of the Derivative Lawsuit, organized by Professional Liability Underwriting Society (02/06/02); Sarbanes-Oxley Act: Impact on Civil Litigation under the Federal Securities Laws, organized by ALI-ABA Committee on Continuing Professional Education (12/5/02); Corporate Governance and Disclosure, organized by Corporate Communications Broadcast Network (3/20/03); Seventh Circuit Judicial Conference Corporate Governance Roundtable, organized by The Seventh Circuit Bar Association (05/05/03); and The 35th Annual Institute on Securities Regulations, organized by Practicing Law Institute (11/8/03); Life and Health Insurance and Financial Services Litigation: Fallout From "Canary", organized by ALI-ABA Committee on Continuing Professional Education (05/06/04); Council of Institutional Investors 2005 Spring Conference (04/11/05); Director Liability in the Wake of the Disney Decision (Telephone Briefing), organized by Practicing Law Institute (09/08/05). In addition, Mr. Schulman has co-authored several publications on the subject of securities and shareholder litigation: "Leveraged Buyouts – Issues From The Shareholder Plaintiffs' Perspective," (09/01 NY, NY); "Developments in Private Securities Litigation Standards and Other Significant Case Law Developments" (11/01 NY, NY); "Duties and Liabilities of Outside Directors to Ensure That Adequate Information and Control Systems Are in Place – A Study in Delaware Law and the Private Securities Litigation Reform Act of 1995" (02/02 NY, NY); "Sarbanes-Oxley Act: The Impact on Civil Litigation Under the Federal Securities Laws from the Plaintiffs' Perspective" (12/5/02, NY, NY); "The Plaintiff's Perspective on Shareholder Class and Derivative Actions Alleging Breach of Fiduciary Duty" (3/12/03, NY, NY); "Cutting Edge Issues in the New Millennium: Corporate Governance and the Courts - The Sarbanes-Oxley Act and the Impact on Civil Litigation Under the Federal Securities Laws from the Plaintiffs' Perspective" (5/5/03, Milwaukee, WI); "Fallout From "Canary": "Private Civil Litigation and Legal Remedies Beyond Regulatory Measures" (5/6/04, Washington D.C.); Executive Pay Activism (4/11/05, Washington D.C.); Old Wine in New Bottles: The Curious Evolution" of the Concept of Loss Causation (09/05, NY, NY).

Mr. Schulman is a member of the Association of the Bar of the State of New York, the American Bar Association, and the Federal Bar Council. A member of the Association of the Bar of the City of New York, Mr. Schulman served on its Special Committee on Mergers, Acquisitions and Corporate Control Contests. He is a Presidential level member of the Association of Trial Lawyers of America (ATLA) and a Sustaining Fellow in the Roscoe Pound Institute. Mr. Schulman is a member of the Bars of the State of New York and the District of Columbia and is also admitted to practice before the District Court of the Southern, Northern, and Eastern Districts of New York.

**JEROME M. CONGRESS** received an A.B. degree with honors from Cornell University. From 1960 to 1962 he was a Fulbright Scholar at Oxford University, England, where he studied philosophy, politics and economics. He received an LL.B. degree *cum laude* from Harvard Law School where he was an editor of *Harvard Law Review* during 1963-1964.

Since graduating from law school, Mr. Congress has spent the bulk of his time in commercial and securities litigation.

Mr. Congress is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit.

**MICHAEL C. SPENCER** graduated from Yale University in 1973 with a B.A. degree, *magna cum laude*, with distinction, in philosophy. While at Yale, he was elected to Phi Beta Kappa. Mr. Spencer received a J.D. degree from Harvard Law School, *cum laude*, in 1976.

Mr. Spencer focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation.

Mr. Spencer began his legal career as a law clerk to Hon. Wm. Matthew Byrne Jr., United States District Court, Central District of California, in 1976-77. He then returned to New York and joined Cravath, Swaine & Moore as an associate, where he worked until 1986 on antitrust, banking, real estate, commercial and securities litigation matters. In his later years at Cravath, he represented the bond fund trustee in connection with bond defaults of Washington Public Power Supply System nuclear plants.

In 1986, he joined Milberg Weiss as an associate and became a partner later that year. He worked on the WPPSS securities fraud litigation and many of the firm's other cases, prominently including representation of the FDIC in its failed bank audit litigation involving the Butcher Brothers banks in Tennessee, which led to a year-long trial and a global settlement of all bank-related claims against Ernst & Whinney just before closing arguments to the jury in late 1992. He has since worked on many of the firm's securities fraud cases, and cases in

other areas, including representation of a broad coalition of union health care funds seeking to recover costs for treating smoking-related illnesses from the tobacco industry; Year 2000 litigation; cases involving alleged kickbacks in the mortgage insurance industry; and consumer and securities fraud cases against insurance companies selling deferred annuities into qualified retirement plans.

Mr. Spencer is admitted to practice in the courts of the States of New York and California, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Central District of California, and the United States Courts of Appeals for the Second, Third, Fourth, Seventh, Ninth, Eleventh, and D.C. Circuits.

**ROBERT A. WALLNER** received his B.A. degree from the University of Pennsylvania in 1976 graduating *magna cum laude*. He attended New York University School of Law, earning his J.D. degree in May 1979. He was elected to the law school's Order of the Coif and served as an editor of *New York University Law Review*.

Prior to joining Milberg Weiss, Mr. Wallner was associated with Cravath, Swaine & Moore. He has litigated complex securities, consumer and antitrust class actions throughout the country. He currently represents investors in *In re Initial Public Offering Securities Litigation* (S.D.N.Y.), *In re Deutsche Telekom Securities Litigation* (S.D.N.Y.) and *In re CMS Energy Corporation Securities Litigation* (E.D. Mich.). He has also represented consumers in *In re Synthroid Marketing Litigation* (N.D. Ill.) and the *Mercedes-Benz Tire Litigation* (D.N.J.).

Mr. Wallner is a frequent lecturer on securities and complex litigation issues, and serves on the editorial board of *Securities Litigation Report*, published by Glasser LegalWorks.

Mr. Wallner is a member of the Association of the Bar of the City of New York where he served as a member of its Federal Courts Committee. He also served as a member of the faculty of the American Bar Association's First Annual National Institute on Securities Litigation and Arbitration, in June 1998. Mr. Wallner is admitted to the New York Bar and the United States District Court for the Southern and Eastern Districts of New York.

**SANFORD P. DUMAIN** attended Columbia University where he received his B.A. degree in 1978. He graduated *cum laude* from Benjamin N. Cardozo School of Law of Yeshiva University in 1981.

Mr. Dumain represents plaintiffs in cases involving securities fraud, consumer fraud, insurance fraud and violations of the antitrust laws.

Mr. Dumain began his career as a law clerk to Judge Warren W. Eginton, U.S. District Court, District of Connecticut 1981-1982. During the early years of his practice, he also served as an Adjunct Instructor in Legal Writing and Moot Court at Benjamin N. Cardozo School of Law.

Mr. Dumain has lectured for ALI-ABA concerning accountants' liability and has prosecuted several actions against accounting firms.

During 1990, Mr. Dumain served on the trial team for a six-month trial in which the firm represented the City of San Jose, California, that resulted in a verdict for the city against defendants totaling over $18 million plus pre-judgment interest. the city's claims against two of the defendants were settled for $12 million while appeals to the Ninth Circuit were pending. Previously, settlements with eleven other defendants totaled over $12 million.

Judge Janet C. Hall of the District of Connecticut made the following comment in *In re: Fine Host Securities Litigation*, (Docket No. 3:97-CV-2619 (JCH)): "The court also finds that the plaintiff class received excellent counseling, particularly from the Chair of the Plaintiffs' Executive Committee, Attorney Dumain."

Mr. Dumain is admitted to practice to the State Bar of New York, U.S. District Court for the Southern and Eastern Districts of New York and District of Connecticut, and U.S. Courts of Appeals for the First, Second, Sixth, Seventh and Eighth Circuits.

**GEORGE A. BAUER III** earned his B.B.A. degree *magna cum laude* in 1976 from Bernard M. Baruch College of the City University of New York, where he majored in accounting. He was awarded the Andrew J. Coppola prize in Law from Baruch College. Mr. Bauer attended New York University School of Law and graduated with a J.D. degree in 1979.

Mr. Bauer's practice concentrates on Class Action Settlements and Settlement Administration. He has played a lead role in documenting and effectuating many of the largest and most complex securities litigations settlements ever obtained, notably including: the proposed $1.14 billion settlement for cash and stock of the *In re Nortel Networks Corp. Securities Litigation* Civil Action No. 01-CV-1855 (RMB) (S.D.N.Y.); the $1.027 billion settlement of the *In re NASDAQ Market-Makers Antitrust Litigation*, MDL No. 1023, (S.D.N.Y.); settlements relating to the $2 billion estate of the Drexel Burnham Lambert including *In re Drexel Burnham Lambert Group*, 90 Civ. 6954 (MP) (S.D.N.Y.) and the

$1.3 billion settlement of the *In re Michael Milken & Associates Securities Litigation*, MDL 924 (S.D.N.Y.); settlements worth over $775 million in *In re Washington Public Power Supply Systems Securities Litigation*, MDL 551 (D. Ariz.); settlements including cash and securities worth over $615 million in *In re Lucent Technologies Inc. Securities Litigation*, Case No 00-CV-621 (JAP) (D. N.J.); the $300 million cash settlement of *In re Oxford Health Plans Inc., Securities Litigation*, MDL No. 1222 (CLB) (S.D.N.Y.); the $200 million settlement in *In re PaineWebber Limited Partnerships Litigation*, Master File No. 94-Civ.8547 (SHS)(S.D.N.Y.); the settlement for cash and securities worth over $137.5 million in *In re Microstrategy Inc. Securities Litigation*, Civil Action N. 00-473-A (E.D. Va, Alexandria Division); the settlements for securities worth over $133.5 million in *In re Computer Associates Class Action Securities Litigation*, Master File No. 98 Civ. 4839 (TCP), and *In re Computer Associates 2002 Class Action Securities Litigation*, Master File No,.02-CV-1226 (TCP) (E.D.N.Y.); and the $110 million settlement in *In re Prudential Securities Inc. Limited Partnerships Securities Litigation*, MDL 1005 (MP) (S.D.N.Y.).

Mr. Bauer is a member of the Firm's Library Committee. He is also a member of the American Bar Association, the New York State Bar Association, the Association of Trial Lawyers of America, and the New York County Lawyers Association.

Mr. Bauer was admitted as a member of the New York Bar in January 1980 and is also admitted to the United States District Court for the Southern and Eastern Districts of New York. Mr. Bauer is admitted to practice before the United States Supreme Court and the United States Courts of Appeals for the Second and Fourth Circuits.

**BARRY A. WEPRIN** graduated from Harvard College in 1974. He received a J.D. degree from the New York University School of Law in 1978, and a master of public affairs from the Woodrow Wilson School of Princeton University in 1978. While in law school, Mr. Weprin was notes and comments editor of *New York University Law Review*.

Since joining Milberg Weiss in 1989, Mr. Weprin has specialized in securities and insurance litigation. He has served as co-lead counsel in a number of complex securities class action litigations, including *In re AremisSoft Securities Litigation* (D.N.J.), *In re All Star Inns Securities Litigation* (S.D.N.Y.), *In re York Research Securities Litigation* (S.D.N.Y.), and *Bharucha v. Reuters, PLC* (E.D.N.Y.). He was one of the principal attorneys in the sales practice litigations against The New York Life Insurance Company, The New England Life Insurance Service Company, The John Hancock Mutual Life Insurance Company, and The Prudential Life Insurance Company.

Previously, Mr. Weprin served as law clerk to Judge Charles P. Sifton of the United States District Court for the Eastern District of New York and was associated with the law firm of Wachtell Lipton Rosen & Katz where he specialized in commercial and securities litigation. From 1985 to 1989 he served as general counsel to the New York State Housing Finance Agency and the New York State Medical Care Facilities Finance Agency, two agencies that issue tax exempt bonds for financing nonprofit medical facilities and qualified housing projects.

In approving the settlement in the *Allstar Inns* case, Judge Peter Leisure stated:

> We have a situation here which is a classic example of the benefits to be derived through the class action vehicle, to have the high quality representation of the class. The reputation of counsel . . . Barry Weprin of Milberg Weiss, precedes them to this court and I'm familiar in other matters with the case in which these lawyers work.
>
> The class was indeed fortunate to have lawyers of this caliber on this matter and the court is satisfied that the class was well-represented and had the benefits of the quality of representation that would not have otherwise been available if the class action vehicle had not been used.

Mr. Weprin is a frequent lecturer on complex litigation issues.

Mr. Weprin is a member of the American Bar Association, the Association of the Bar of the City of New York, the New York County Lawyers Association, and the New York State Bar Association. Mr. Weprin is admitted to practice in New York, the United States District Court for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second Circuit, and the United States Supreme Court.

**RICHARD H. WEISS** received an A.B. degree *summa cum laude* from Princeton University in 1979. In 1980, he received an M.Phil. degree in international relations from Cambridge University, England. He graduated from Yale Law School in 1983.

Mr. Weiss is admitted to practice in the State of New York, the United States District Court for the Eastern and Southern Districts of New York, the United States Courts of Appeals for the Second, Sixth and Tenth Circuits, United States Supreme Court, and the United States Claims Court.

**BRAD N. FRIEDMAN** received an B.A. degree in government from Cornell University in 1982 and a J.D. degree *cum laude* from New York University School of Law in 1986, where he was an editor of the Law Review.

Mr. Friedman began his legal career as a clerk for the Honorable Max Rosenn, United States Court of Appeals for the Third Circuit. He was an associate at Simpson, Thacher & Bartlett for seven years before joining Milberg Weiss.

Mr. Friedman specializes in complex commercial matters, including securities, consumer, and life insurance class actions. He also has an active mass tort practice. He has recovered billions of dollars on behalf of injured plaintiffs, including as lead counsel in numerous "vanishing premium" and "churning" life insurance sales practice class actions (including cases against Prudential and Metropolitan Life). In 2002, Mr. Friedman acted as lead counsel on behalf of various asbestos committees in the W.R. Grace bankruptcy, and successfully recovered approximately $1 billion through a fraudulent conveyance litigation that settled on the eve of trial.

Mr. Friedman is a member of the Federal Bar Council, the American Bar Association, the American Trial Lawyer Association, the New York State Bar Association and the New York City Bar Association.

Mr. Friedman is admitted in the courts of the State of New York and New Jersey, as well as the United States Courts of Appeals for the Third and Fifth Circuits, and the United States District Courts for the Southern and Eastern Districts of New York and the District of New Jersey.

**JOSHUA H. VINIK** graduated with honors from the State University of New York at Oneonta in 1983 where he majored in economics. After graduating *cum laude* from Brooklyn Law School, Mr. Vinik clerked for Magistrate (now Judge) Carol B. Amon of the United States District Court for the Eastern District of New York.

Mr. Vinik's practice focuses primarily on class actions on behalf of defrauded investors, as well as complex commercial litigation, including accountants' liability actions and derivative actions. Mr. Vinik's extensive litigation efforts on behalf of aggrieved investors include many actions which have led to significant recoveries for investors, including *In re Baan Securities Litigation* (D.D.C.); *Lasky v. Brown (United Companies Financial Securities Litigation)* (M.D. La.), *Kaufman v. Motorola, Inc.* (N.D. Ill.) and *In re Salomon Inc. Shareholders Derivative Litigation* (S.D.N.Y.).

Mr. Vinik is a member of the American Bar Association, The New York State Bar Association and the Association of the Bar of the City of New York. Mr. Vinik is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York and the United States Courts of Appeals for the Second, Third, and Fifth Circuits.

**JEFF S. WESTERMAN** received his B.A. degree from Northwestern University in 1977, where he was selected to two senior honorary societies. He received his J.D. degree from the University of Pittsburgh in 1980, where he was a member of the Law Review.

Mr. Westerman's practice is primarily in the areas of securities fraud class actions, shareholder derivative actions and corporate mergers and acquisition litigation. He has served as lead or co-lead counsel in cases resulting in significant corporate governance changes and shareholder recoveries totaling more than $330 million.

Mr. Westerman has also been the moderator or speaker for programs on complex litigation, developments in class action practice, settlements, the Sarbanes-Oxley Corporate Responsibility Act, shareholder derivative actions and trends in business litigation.

Mr. Westerman was a member (2001-2003) and Co-Chair (2002-2003) of the Central District of California Attorney Delegation to the United States Ninth Circuit Judicial Conference. He serves on the Central District of California, U.S. Magistrate Judge Merit Selection Panel (2003-present) and the standing committee on Attorney Discipline (2004-present). He is also a member of the Central District of California Attorney Settlement Officer Panel (1998-present).

Mr. Westerman was the president of the Association of Business Trial Lawyers 2004-2005; a member of the Board of Governors (1997-2005), Treasurer (2001-2002), Secretary (2002-2003) and Vice President (2003-2004). He is also on the Board of Governors of the Consumer Attorneys Association of Los Angeles (2003-present).

Mr. Westerman is a member of the Los Angeles County Bar Executive Committee for the Litigation Section. He is also on the Complex Courts Bench-Bar Committee, and the Bench-Bar Civil Courts Committee; and served as Judge Pro Tem in the Los Angeles Small Claims Court in 1987-1988, 1990, 1992-1993 and 1996-1997. He is a member of the Los Angeles County and Federal Bar Associations. He was on the California State Bar Task Force on Complex Litigation, and Chair of the Judicial Education Subcommittee (1997).

Mr. Westerman is admitted to practice in the courts of the State of California, as well as the United States District Courts in California, the United States Court of Appeals for the Ninth Circuit and the United States Supreme Court.

**JANINE L. POLLACK** graduated from Rutgers University in 1986, with high honors, with a B.A. She majored in English and French and was a member of Phi Beta Kappa. In 1989, Ms. Pollack earned her J.D. from the University of Pennsylvania School of Law. She was a member of the International Journal of Business Law. Since joining Milberg Weiss in 1991, Ms. Pollack has prosecuted numerous different class actions, including securities and consumer fraud, sex discrimination and annuities cases. She is a member of the firm's Hiring Committee; runs the firm's CLE program; is in charge of, and a mentor in, the firm's Mentor program; and is an editor for numerous of the firm's publications and brochures. Ms. Pollack has spoken at numerous conferences and CLE programs, including Mealey's and the firm's in-house CLE program.

Ms. Pollack is a member of the American Bar Association. She was admitted to the New York State Bar in 1990. She was also admitted to the New Jersey State Bar in 1989, as well as the U.S. District Court for the District of New Jersey. In 1990, Ms. Pollack was admitted to the U.S. District Court for the Southern and Eastern Districts of New York.

**KIRK E. CHAPMAN** graduated *cum laude* from Harvard University in 1985 with a B.A. degree in biochemistry. He received his J.D. in 1989 from the University of Chicago where he was a member of the *Legal Forum* publication. Mr. Chapman's major practice areas are securities fraud class actions and employment discrimination matters.

Mr. Chapman is admitted to practice in the Courts of the State of New York as well as the United States District Courts for the Southern and Eastern Districts of New York.

**J. DOUGLAS RICHARDS** earned his A.B. degree in 1977 from the University of Chicago, majoring in economics, and earned his J.D. degree in 1981 from Harvard Law School. Before joining Milberg Weiss in June 2000, he served for nearly three years as deputy general counsel of the Commodity Futures Trading Commission (CFTC) in Washington, D.C. Before joining the CFTC, he was a litigator for more than 12 years with O'Sullivan Graev & Karabell, LLP in New York, first as a litigation associate from 1985-89 and then as a litigation partner from 1989 to October 1997 when he left to join the CFTC. From 1981 to 1985, he was a litigation associate with Cahill Gordon & Reindel in New York.

Mr. Richards is a member of the American Bar Association (Antitrust Section), the Antitrust Section of the Association of the Bar of the City of New York, the Advisory Board of the American Antitrust Institute, and the New York State Bar Association (Commercial and Federal Litigation Section, Committee on Civil Practice Law and Rules).

An experienced commercial litigator with a particularly extensive background in litigation relating to trade regulation and corporate finance, Mr. Richards is admitted to practice before the United States Supreme Court; the U.S. Courts of Appeals for all Circuits except the First and Federal Circuits; the U.S. District Courts for the Southern, Eastern, Northern and Western Districts of New York; the District of Connecticut; and all New York State Courts. He has argued more than twenty appeals in the federal and state courts of appeals, including more than a dozen appeals in the Second Circuit.

**MICHAEL M. BUCHMAN** attended North Carolina State University's Textile Engineering & Management program, later graduating *cum laude* from Alfred University where he received a B.A. degree and divisional honors in history in 1988. In 1992, he received a J.D. degree from The John Marshall Law School where he was a member of an award winning International Moot Court team. The following year, he received an LL.M. degree in international antitrust and trade law from Fordham University School of Law.

Prior to joining the Firm, Mr. Buchman served as an assistant attorney general in the Antitrust Bureau of the New York State Attorney General's Office. Mr. Buchman's practice has been devoted heavily to nationwide litigation in federal and state courts focusing on the prosecution of complex antitrust, consumer protection and privacy class actions.

Mr. Buchman has recently spearheaded an effort, on behalf of consumers and third-party payors, to challenge a variety of practices by pharmaceutical companies designed to prevent lower priced, therapeutically equivalent generic drugs from entering the market or to otherwise artificially inflate brand name prescription drug prices. He has served in a leadership capacity in these cases many of which have been resolved successfully. *See In re Buspirone Antitrust Litig*ation, MDL 1413 (S.D.N.Y.)(JGK) ($90 million settlement); *In re Relafen Antitrust Litigation*, 01-12222-WGY (D. Mass.) ($75 million settlement); *In re Augmentin Antitrust Litigation*, 02 Civ. 445 (E.D. Va., Norfolk Div.) (HCM) ($29 million settlement). He has also participated in the prosecution of *In re NASDAQ Market-Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.) (RWS), which is one of the largest antitrust settlements

in the more than one hundred year history of the Sherman Act ($1.027 billion).

The author or co-author of articles in international and domestic legal publications concerning procedure or competition law issues, Mr. Buchman has also served as a lecturer for the Practicing Law Institute on state unfair deceptive acts and practices statutes.

In addition to his admission to practice in Connecticut and New York, Mr. Buchman is admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York, the United States District Courts for Arizona and Connecticut, the United States Court of Appeals, Second Circuit, and the United States Court of International Trade.

**ARIANA J. TADLER** graduated from Hamilton College in 1989 with a Bachelor of Arts degree. In 1992, she received her J.D. from Fordham University School of Law, where she was the Articles and Commentary Editor of the Fordham Urban Law Journal, a member of the Moot Court Board and the 1990 recipient of the American Jurisprudence Award in Criminal Law.

Ms. Tadler has extensive experience litigating complex securities class actions, including certain high profile, fast-paced cases. In less than four years, she litigated three cases in the Eastern District of Virginia (aka the "Rocket Docket"), including *In re MicroStrategy Securities Litigation*, in which plaintiffs' counsel negotiated settlements valued at more than $150 million with the company and the auditor. Ms. Tadler is also one of the principal liaison counsel on behalf of plaintiffs in the *Initial Public Offering Securities Litigation*, which is pending before Judge Shira A. Scheindlin in the United States District Court for the Southern District of New York. In that capacity, she manages on a day-to-day basis 309 separate class actions which have been coordinated for pretrial purposes. Among the thousands of defendants in these actions are 55 of the nation's most prominent investment banks and more than 300 corporate issuers.

Ms. Tadler has attended numerous lectures and seminars nationwide at which she has been a selected speaker on various topics. Recent conferences include: The Sedona International Conference, "International Electronic Information Management Discovery and Disclosure" (July 2005); ABA Panel Securities Section Meeting, "Recent Developments in Federal Securities Class Actions" (August 2005); 8th Circuit Judicial Conference, "Panel on E-Discovery"; Women's Judicial Conference, "Ruling on Discovery in a High Tech World" (October 2005); SEC Institute Conference, "Staying Out of Trouble with the SEC, Analysts and the Plaintiff's Bar" (October 2005); Morrison & Foerster LLP/NASDAQ, Panel Series: "Corporate Board Member Liability: How Your Personal Assets Could Be At Risk In the Event Of Corporate Litigation"; PLUS Seminar: "Corporate Governance And Corporate Risk: Implications Of Sarbanes-Oxley For Underwriting And Claims" (February 2005); Mealey's Advanced E-Discovery Conference (September 2004); Directors and Officers Symposium: An Overview of the Mediation Process; Practicing Law Institute, Symposium: "D&O Liability and Insurance 2004: Directors & Officers Under Fire"; National Economic Research Associates: IPO Allocation; and American Bar Association: Pros and Cons of Laddering Cases.

Ms. Tadler is the co-author of "Damages in Federal Securities Litigation," Securities Litigation 1991: Strategies and Current Developments, Practicing Law Institute, 1991. Ms. Tadler is also a member of the Steering Committee of The Sedona Conference and has been a selected speaker on various panels regarding "Electronic Document Retention and Production." She is also an active member of the New York Inn of Court.

Ms. Tadler is a member of the Federal Bar Council, the American Bar Association, the Association of Trial Lawyers of America, the New York State Bar Association and the New York County Lawyers Association. Ms. Tadler is also involved in various charity and community organizations. She is currently a board member and Co-Chair of Development for MFY Legal Services.

Ms. Tadler is admitted to the Bars of the States of New York and New Jersey, as well as the United States District Court for the Southern and Eastern Districts of New York, the District of New Jersey and the United States Court of Appeals for the Third Circuit.

**LORI G. FELDMAN** protects the rights of shareholders in federal and state courts across the nation. From 2000 through mid-2005, she served as Managing Partner of the Firm's Seattle Office. While she is now practicing in the Firm's New York Office, Ms. Feldman continues to maintain close ties to Washington State and the Pacific Northwest.

Ms. Feldman is the daughter of retired public employees and understands the importance of protecting the investments of all workers and their families against corporate fraud. In 2002-2003 and 2004-2005, she was named a "Rising Star of Washington Law" by her fellow practitioners in Seattle. Rising Stars are considered to be Washington's top lawyers under the age of 40.

In addition to lecturing on class action practice, she recently served as Co-Chair of the Continuing Legal Education Committee of the Federal Bar Association for the Western District of Washington.

Ms. Feldman's representative recoveries exceed $100 million. Recently, she recovered millions of dollars for class members in litigation involving ConAgra Foods, Inc. (D. Neb.), Amazon.com (W.D. Wash.) (settlement pending approval), Paradigm Medical Industries (D. Utah), SpectraLink Corporation (D. Colo.) and Cutter & Buck (W.D. Wash.). She is currently representing shareholders in litigation involving, among several others, Washington Mutual, Inc. (W.D. Wash.), Select Medical (E.D. Pa.), Rhythms Net Connections (D. Colo.), Gilead Sciences, Inc. (N.D. Cal.), and Digimarc Corporation (D. Oregon). She is also currently representing participants and beneficiaries of retirements plans in ERISA litigation involving Pfizer, Inc. (S.D.N.Y) and The Coca-Cola Company (N.D. Ga.).

Ms. Feldman's zealous advocacy has resulted in important reported decisions by courts interpreting the federal securities laws, including but not limited to *Gebhardt v. ConAgra Foods, Inc.,* 335 F.3d 824 (8th Cir. 2003) (important loss causation and materiality appellate court ruling); *In re Rhythms NetConnections Securities Litigation,* 300 F. Supp. 2d 1081 (D. Colo. 2004) (denying motion to dismiss); *Kerns v. SpectraLink Corp.*, No. 2-D-263, 2003 U.S. Dist. Lexis 11711 (D. Colo. July 1, 2003) (granting class certification); and *In re Secure Computing Corp.*, 184 F. Supp. 2d 980 (N.D. Cal. 2001) (denying motion to dismiss).

Ms. Feldman is admitted to the Bars of the States of Washington and New York.

**BENJAMIN Y. KAUFMAN** earned his B.A. degree from Yeshiva University in 1985 and his J.D. degree from Benjamin N. Cardozo School of Law, Yeshiva University in 1988, where he was a Belkin Fellow, Belkin Scholar, and a member of the *Cardozo Arts and Entertainment Law Journal*. Mr. Kaufman also received a M.B.A. degree in finance from the Stern School of Business of New York University in 1999. Prior to joining Milberg Weiss in August of 1998, Mr. Kaufman was a court attorney for the New York State Supreme Court, New York County (1988-1990) and principal law clerk to Justice Herman Cahn of the Commercial Division of the New York State Supreme Court, New York County (1990-1998).

Mr. Kaufman focuses on class action litigating on behalf of defrauded investors and consumers as well as complex commercial litigation. Mr. Kaufman is a member of the bars of New York, New Jersey, the United States District Courts for the Districts of New York and New Jersey and the United States Court of Appeals for the Fourth Circuit.

**CLIFFORD S. GOODSTEIN** earned his A.B. degree from Harvard University in 1988 and his J.D. degree from New York University School of Law in 1993. After graduation, he served as a law clerk to the Honorable Alex T. Howard, Jr., Chief Judge of the United States District Court for the Southern District of Alabama, and then as an associate at Reboul, MacMurray, Hewitt, Maynard & Kristol and Baker & Botts prior to joining Milberg Weiss in January of 1998.

Mr. Goodstein works on a variety of actions on behalf of classes as well as individuals in consumer fraud, securities, antitrust, health care, and other areas. Mr. Goodstein is a member of the bars of New York and New Jersey.

**PETER SAFIRSTEIN** graduated from The George Washington University in 1978 with a B.A. degree. He received an M.A. degree in government (concentration in international relations) from Georgetown University in 1980. In 1985, he earned his J.D. degree from Brooklyn Law School where he was a member of the *Brooklyn Law Review* and the Moot Court Honors Society. Prior to joining Milberg Weiss, Mr. Safirstein was in private practice. In addition, Mr. Safirstein served as a staff attorney in the Enforcement Division for the U.S. Securities and Exchange Commission from 1985-1990. In 1988-89, Mr. Safirstein was designated as a special assistant United States attorney in the Southern District of New York where he was part of the trial team which prosecuted *United States v. Regan*, (the "Princeton/Newport" case) and *United States v. Lisa Jones*. Mr. Safirstein later served as an assistant United States attorney in the Southern District of Florida.

Mr. Safirstein is a member of the American Bar Association and the Association of the bar of the City of New York. Mr. Safirstein is a member of the Bars of the State of New York and the State of New Jersey and is also admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the Second and Third Circuits, the District Court of the Southern and Eastern Districts of New York and the District Court of New Jersey.

**PETER E. SEIDMAN** earned his B.A *cum laude* from Hobart College in 1979, following which he served as a Peace Corps volunteer living and working among the Guarani, an indigenous tribe in Paraguay. He earned an M.A. degree in journalism in 1982 from the University of Michigan and subsequently worked as a journalist for a variety of publications. In 1994, he was awarded a J.D. degree *cum laude* from the University of Michigan Law School.

Mr. Seidman joined Milberg Weiss in 2000 as an associate. He actively engages in the investigation and prosecution of securities litigation on behalf of defrauded investors. Before joining Milberg Weiss, he was an associate with the New York law firm of Orans, Elsen &

Lupert LLP for five years, where he was active in both civil and white collar criminal litigation in federal and state courts.

Mr. Seidman is admitted to practice in the courts of the State of New York, as well as the United States District Courts for the Northern, Southern, and Eastern Districts of New York.

**ANITA BRASS KARTALOPOULOS** graduated with a B.A. degree from the University of Toledo, with honors in 1974, majoring in classics, and graduated from Seton Hall Law School in 1982, with emphasis on health care law. Ms. Kartalopoulos works primarily in the areas of insurance, consumer fraud, securities and managed care. Before joining Milberg Weiss in 1998, she was in government service in the State of New Jersey, holding several positions including deputy commissioner of insurance for life and health, director of legal regulatory affairs for the Department of Health and Senior Services and executive director of the New Jersey Real Estate Commission.

As deputy commissioner of insurance she managed the New Jersey Insurance Department's Multi-State Task Force investigating the sales practices of the Prudential Insurance Company. She also served on the Board of Directors of MBL Insurance Company as a rehabilitator and managed litigation pursuant to the company's rehabilitation.

Thereafter as director of legal and regulatory affairs for the Department of Health and Senior Services, Ms. Kartalopoulos was responsible for litigation management, the development of all regulations implementing the New Jersey Healthcare statutes, the development and implementation of a streamlined Certificate of Need (CN) law, and the development of stringent prompt payment regulations to ensure that HMO's meet contractual obligations to physicians and ensure the stability of the health care network for the benefit of consumers.

As executive director of The New Jersey State Real Estate Commission, Ms. Kartalopoulos was responsible for implementing consumer disclosure/protection regulations which had been long opposed by the New Jersey real estate industry. She was also responsible for all disciplinary investigations and hearings against realtors, the inspection and registration of out of state land sales marketed in the State of New Jersey, continuing licensing of 84,000 realtors and brokers and the on-going development of real estate regulations. Ms. Kartalopoulos also worked with New Jersey Attorney General Deborah Poritz in the development of Megan's Law.

Prior to government service, Ms. Kartalopoulos specialized in local government law and land use representing a number of municipal governments, planning boards and boards of adjustment. She was responsible for litigation before both the State and Federal Courts, and negotiated significant settlements with the New Jersey Council on Affordable Housing (COAH) for the benefit of low income residents of the State.

Ms. Kartalopoulos has co-authored the following publications on the subject of securities and shareholder litigation: *Deterring Executive Compensation Excesses: Regulatory Weaknesses, Litigation Strengths* (03/05, NY, NY) and *Vintage Wine In New Bottles: The Curious Evolution of the Concept of Loss Causation* (11/05, NY, NY).

Ms. Kartalopoulos was admitted to the bar of New Jersey and the U.S. District Court, District of New Jersey, the same year. She is also admitted to the U.S. Courts of Appeals for the Federal Circuit and the 3rd Circuit.

**KAREN ROGERS** earned her B.A. degree from the University of California, Irvine, in 1983, her M.B.A. degree from Pepperdine University in 1990, and her J.D. degree from Southwestern University School of Law in 1996.

Ms. Rogers specializes in representing investors, including individual and institutional investors, in securities fraud class actions and shareholder derivative litigation. Ms. Rogers has been with the Firm since March 1997. While at Milberg Weiss, Ms. Rogers has successfully litigated numerous class action lawsuits which have resulted in multi-million dollar recoveries for defrauded investors, including, among others, cases such as *Mattel Securities Litigation*, *Accelerated Securities Litigation*, and *Hoeck v. CompUSA*.

While at Southwestern, Ms. Rogers was on the Dean's List from 1994-1995 and a member of the Law Review from 1995-1996. Ms. Rogers authored "Embryo Theft: The Misappropriation of Human Eggs at an Irvine Fertility Clinic Has Raised a Host of New Legal Concerns for Infertile Couples Using Reproductive Technologies," 26 Sw. U.L. Rev. 1133 (1997). In 1996, Ms. Rogers served as judicial extern for The Honorable Ronald S.W. Lew, U.S. District Court of California.

Prior to law school, Ms. Rogers earned an NASD Series 7 securities license and worked in the securities industry for five years at Drexel Burnham Lambert's Beverly Hills office.

Ms. Rogers is a member of the Association of Business Trial Lawyers, as well as the Los Angeles County, San Fernando Valley, and American Bar

Associations. Ms. Rogers is admitted to practice in the courts of the State of California, as well as the United States District Court for the Central District of California.

**PETER SLOANE** graduated with honors from Johns Hopkins University in 1994 with a B.A. degree in international relations and received his J.D. degree from Georgetown University Law Center in 1997. Upon graduation from law school, Mr. Sloane clerked for the Honorable Anthony W. Ishii of the United States District Court for the Eastern District of California. While an undergraduate at Johns Hopkins, Mr. Sloane was selected to participate in the Paul H. Nitze School of Advanced International Studies graduate program in Bologna, Italy, where he earned a graduate diploma in international relations. Prior to joining Milberg Weiss, Mr. Sloane was associated with Milbank, Tweed, Hadley & McCloy LLP, where he specialized in complex commercial litigation and consumer mass actions. He is fluent in Italian and conversant in French and Hebrew.

Mr. Sloane currently represents purchasers of securities in several securities fraud class actions, including *Irvine v. ImClone Systems, Inc., et al.* (S.D.N.Y.) and *In re Sears, Roebuck & Co. Securities Litigation* (N. D. Ill.).

Mr. Sloane is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

**CHRISTOPHER POLASZEK** earned his B.S. degree from Florida State University in 1992, *cum laude*, his M.B.A. degree from Florida State University in 1997, *cum laude*, his J.D. degree from Florida State University in 1997, *cum laude*, and his LL.M. degree from Georgetown University in 2000. While pursuing his legal education, Mr. Polaszek interned with the Florida Senate and United States Senator Bob Graham.

Mr. Polaszek currently specializes in securities fraud litigation. Prior to joining Milberg Weiss, Mr. Polaszek spent several years practicing commercial litigation with an emphasis on securities litigation and arbitration. In this regard, in addition to litigating matters in state and federal courts, he has represented numerous clients in securities arbitration proceedings conducted by the National Association of Securities Dealers, Inc., the New York Stock Exchange, and the American Arbitration Association. Mr. Polaszek is also a member of the Federal Bar Association and the American Bar Association.

Mr. Polaszek is admitted to practice in the courts of the State of Florida, as well as the United States District Courts for the Northern and Middle Districts of Florida

## OF COUNSEL

**JARED SPECTHRIE** graduated from Harvard College with honors in 1954 having majored in economics. After four years as a deck officer in the United States Coast Guard, he received a M.B.A. degree in accounting from Rutgers University in 1959, graduating first in his class. He is a Certified Public Accountant in the State of New York and practiced accounting for several years with a major auditing firm. He was graduated from New York Law School in 1965, *summa cum laude*, where he was first in his class and valedictorian. He was admitted to the Bar in New York State in 1965, and is admitted to practice before the U.S. District Court in the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second and Fifth Circuits. He has served on the faculty of New York Law School and has lectured on "Accountants' Liability" for the Practising Law Institute. He has been engaged in the full-time practice of law since 1965 and has specialized in federal securities law litigation for the past several years. Mr. Specthrie was lead counsel in *In re Viatron*, MDL 138 (D. Mass.), where aggregate settlements exceeding $15 million were obtained after several months of trial and a jury verdict on liability.

**SOL SCHREIBER** received a B.A. degree, *cum laude*, in 1952 from the City College of New York, and his LL.B. degree from Yale Law School in 1955.

From 1971 through 1978, Mr. Schreiber was a United States Magistrate Judge in the United States District Court for the Southern District of New York where he conducted more than 1,500 criminal and 3,500 civil pretrial hearings and settled approximately 1,000 civil cases. In addition to trying numerous civil and criminal cases, Mr. Schreiber supervised pretrial practice in derivative, class and complex actions in the admiralty, antitrust, aviation, securities, directors' and officers' and product liability fields, including *Berkey v. Kodak*, *Litton v. ATT*, the *Penn Central Commercial Paper Litigation*, the *New York Times* and *Readers' Digest* gender discrimination, the Argo Merchant-Nantucket stranding, and the Tenerife 747 collision cases.

From November 1978 to January 1982, when he joined Milberg Weiss, Mr. Schreiber served as the

President and Chief Executive Officer of a unit of the Federation of Jewish Philanthropies of New York which provided centralized legal, risk management and insurance services for the Federation's hospitals, homes for the aged, and health, education and community service agencies. He was Trial Counsel from 1955 through 1971 and Resident Counsel from 1966 through 1971 of the Brooklyn office of Liberty Mutual Insurance Co.

Mr. Schreiber has been a participant in numerous special project committees for the American Bar Association and the Second Circuit. From 1960 to present, Mr. Schreiber has been the Planning and Program Chairman of more than 125 national programs including ALI-ABA and PLI Continuing Professional Education national courses of study on evidence, civil practice and employment discrimination litigation in federal and state courts. He has been a frequent lecturer at professional programs and workshops on federal and state court civil procedure, federal and state court trial evidence and federal criminal practice and procedure. Mr. Schreiber was a reporter for the ABA Advocacy Task Force (1970-1971), which led to the formation of the National Institute for Trial Advocacy.

From 1972 to 1987, he served as an adjunct professor at Fordham Law School teaching courses in trial advocacy, product liability, mass torts and insurance disputes. He has been editor for more than 40 CLE course handbooks and major publications on civil practice and litigation, including ALI-ABA's three-volume *Civil Practice Guide, Litigation in Federal and State Courts* (8th ed. 1998). Mr. Schreiber is a member of the Board of Editors, *Moore's Federal Practice* (2d ed.).

Presently, Mr. Schreiber is Court-Appointed Special Master in *Marcos Human Rights Litigation*. He was Special Master in the Pan American Lockerbie cases, the *Agent Orange Litigation* (March 1982-January 1984), and a series of other complex federal civil cases.

Mr. Schreiber was Judicial Member, Anglo American Exchange on Civil Procedure (March 1974), and Hearing Officer, N.Y. State Master Energy Plan (fall 1979). He is the recipient of the Francis Rawle Award for outstanding achievements in post-admission legal education (ALI-ABA, July 1985) and the Presidential Award, Legal Aid Society (November 1984). Mr. Schreiber is also the founder and co-chair of the Ovarian Cancer Research Fund, Inc.

Mr. Schreiber is a member of the American Bar Association, the New York State Bar Association, the Association of the Bar of the City of New York and the American Law Institute. He is admitted to the bar of the State of New York, to the United States District Courts for the Southern and Eastern Districts of New York and to the Second Circuit Court of Appeals.

**PAUL D. YOUNG** received his B.A. *magna cum laude* from Yale University in 1981. He was elected to Phi Beta Kappa and granted with distinction in the history major. As a Fulbright Scholar, he studied at the Universitaet Bielefeld, Germany from 1981 to 1983. He graduated from Columbia University School of Law in 1986, where he was named a Harlan Fiske Stone Scholar.

Selected published decisions: *In re APAC Teleservices, Inc. Securities Litigation*, No. 97 Civ. 9145 (BSJ), 1999 U.S. Dist. LEXIS 17908 (S.D.N.Y. Nov. 19, 1999); *In re Ashanti Goldfields Securities Litigation*, 184 F. Supp. 2d 247 (E.D.N.Y. 2002); *In re Ashanti Goldfields Securities Litigation.*, No. 00 CV 717 (DGT)(RML), 2003 U.S. Dist. LEXIS 724, (E.D.N.Y. Jan. 7, 2003); *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65 (S.D.N.Y. 2000); *Dorchester Investors v. Peak International Limited*, 134 F. Supp. 2d 569 (S.D.N.Y. 2001); *Dorchester Investors v. Peak TrENDS Trust*, No. 99 Civ. 4696 (LMM), 2002 U.S. Dist. LEXIS 3067 (S.D.N.Y. Feb. 26, 2002); *Dorchester Investors v. Peak TrENDS Trust*, No. 99 Civ. 4696 (LMM) (FM), 2003 U.S. Dist. LEXIS 1446 (S.D.N.Y. Feb. 3, 2003); *In re General Instrument Corp. Securities Litigation*, No. 96 C 1129, 2000 U.S. Dist. LEXIS 17078 (N.D. Ill. Nov. 22, 2000); *Hunt v. Alliance North American Government Income Trust, Inc.*, 159 F.3d 723 (2d Cir. 1998); *Lipinski v. Skinner*, 781 F. Supp. 131 (N.D.N.Y. 1991); *In re MTC Electronic Technologies Shareholder Litigation*, 898 F. Supp. 974 (E.D.N.Y. 1995); *In re MTC Electronic Technologies Shareholder Litigation*, 993 F. Supp. 160 (E.D.N.Y. 1997); *Olczyk v. Cerion Technologies, Inc.*, 721 N.E.2d 732; (Ill. App. Ct. 1999); *Siemer v. Associates Financial Services.*, No. CV-97-281-TUC-JC (JMR), 1999 U.S. Dist. LEXIS 22784, (D. Ariz. July 23, 1999); *Siemer v. Associates First Capital Corp.*, No. CV 97-281 TUC JMR (JCC), 2001 U.S. Dist. LEXIS 12810 (D. Ariz. Mar. 30, 2001); *Siemer v. Associates First Capital Corp.*, No. CV 97-281-TUC-JC (JMR), 2000 U.S. Dist. LEXIS 21244, (D. Ariz. Dec. 14, 2000). He was a guest lecturer on predatory lending at the annual meetings of the NAACP in July 2001 and July 2002.

Mr. Young is a member of the New York City Bar Association. Mr. Young is admitted to practice before the United States District Court for the Southern, Northern and Eastern Districts of New York and the United States Courts of Appeals for the First, Second, Fourth, Fifth and Seventh Circuits and the United States District Court for the District of Arizona.

## SPECIAL COUNSEL

**JAMES M. SHAUGHNESSY** graduated *cum laude* from Adelphi University in 1967 with a B.A. degree in political science and *cum laude* from New York University School of Law in 1969. While at N.Y.U., Mr. Shaughnessy was elected to the Order of the Coif, was the administrative director of the moot court program, and, upon graduation, received the Benjamin F. Butler Award for scholarship and outstanding service to the law school.

Mr. Shaughnessy joined the firm of Casey, Lane & Mittendorf in New York City as a litigation associate in 1969 and became a litigation partner at that firm in 1976. In 1982, Mr. Shaughnessy joined the firm of Haythe & Curley as a litigation partner, and he was the managing partner of the firm for two years. In 1987, Mr. Shaughnessy joined the firm of Windels, Marx, Davies & Ives (now known as Windels, Marx, Lane & Mittendorf, LLP) as a litigation partner. He was the chairman of the Windels, Marx Litigation Department from 1988 through 1998, and was a member of the firm's Executive Committee from 1990 to 1992. Mr. Shaughnessy joined Milberg Weiss in 2001.

Over the course of his career, Mr. Shaughnessy has specialized in commercial, securities, insurance, aviation and bankruptcy litigation. Mr. Shaughnessy was lead defense counsel for Pan American World Airways, Inc. in *In re Air Disaster at Lockerbie, Scotland on December 21, 1988*, M.D.L. 799 (TCP) (E.D.N.Y.), and tried that case on behalf of Pan Am to a jury for three months.

Mr. Shaughnessy is a member of the American Bar Association, the New York State Bar Association, the Association of the Bar of the City of New York, and Federal Bar Council. Mr. Shaughnessy is admitted to practice in New York, California and New Jersey as well as before the United States Supreme Court, the United States Courts of Appeals for the Second, Fifth and Ninth Circuits, the United States District Courts for the Southern, Eastern, Northern and Western Districts of New York, the Southern District of California and the District of New Jersey, and the United States Tax Court.

## ASSOCIATES

**PAUL J. ANDREJKOVICS** graduated from Union College in 1992, Phi Beta Kappa, *magna cum laude*, with a B.A. degree in political science. In 1995, Mr. Andrejkovics received his J.D. degree from Albany Law School. He was admitted to the New York State Bar in 1996.

**LAUREN BLOCK** received a B.A. degree, *cum laude*, from University of Pennsylvania in 1982, and a J.D. degree from George Washington University Law School in 1985.

Ms. Block focuses her practice on class actions on behalf of defrauded investors, as well as complex commercial litigation. She was admitted to the New York and Pennsylvania State Bars in 1986.

**KENT A. BRONSON** received a B.A. from State University of New York at Binghamton in 1994. He graduated *cum laude* from University of Pittsburgh School of Law in 1998. During law school, Mr. Bronson was a research editor on the Law Review and a recipient of the Dean's Scholarship.

Mr. Bronson's practice is focused on securities, consumer and class action litigation. Prior to joining Milberg Weiss in 2005, as an associate at another law firm, Mr. Bronson was part of the team that successfully litigated a securities fraud class action lawsuit alleging that a major credit card company inflated its profits with illegal charges to consumers. *In re Providian Fin. Corp. Securities Litig.* (E.D. Pa.). Also, in *In re Coordinated Title Insurance Litigation* (Sup. Ct. Nassau County), Mr. Bronson helped successfully litigate class actions against eight title insurers for allegedly violating New York's consumer protection act in connection with the sale of mortgage refinance title insurance.

Mr. Bronson is admitted to the New York State Bar.

**ROSS B. BROOKS** earned his B.A. degree from Cornell University in 1992, *cum laude*, and his J.D. degree from the University of Chicago Law School in 1997.

Mr. Brooks divides his practice between False Claims Act litigation, representing whistleblowers in actions primarily involving Medicare and Medicaid fraud, and Mass Torts litigation, representing injured consumers in actions brought against pharmaceutical and medical device manufacturers. Prior to joining Milberg Weiss in 2003, Mr. Brooks worked as an associate with

law firms in New York and New Jersey, concentrating in the areas of complex commercial litigation and intellectual property.

Mr. Brooks is admitted to practice in the courts of the State of New York, as well as the United States District Court for the Southern District of New York.

**JENNIFER S. CZEISLER** graduated from Hofstra University in 1994 with a B.A. degree in psychology. After completing graduate degree work at Hunter School of Social Work (1994-95), she pursued a J.D. degree, which she earned in 1999 from the University of Miami School of Law, where she graduated *cum laude*. Ms. Czeisler was on the editorial board of the *Law Review of Psychology, Public Policy & Law* and earned numerous awards, including the Cali Excellence for the Future Award, Dean's Certificate of Achievement Award and membership in the Phi Delta Phi National Honor Society. Ms. Czeisler is admitted to practice in the State of New York and is a member of the American Bar Association, where she is committed to her pro bono work with the American Bar Association Commission on Legal Problems of the Elderly.

**DOMINIQUE DAY** graduated with an A.B. from Harvard University, *cum laude*, in 1992, and from Stanford Law School in 1999. Immediately following law school, Ms. Day was a law clerk for the Hon. Sterling Johnson Jr. of the United States District Court for the Eastern District of New York.

Ms. Day's practice focuses primarily on class action litigation on behalf of defrauded investors. Ms. Day also has significant litigation experience through her work as a public defender at a community-based indigent defense provider in the South Bronx. In addition, Ms. Day has experience as a non-profit director and has worked on Title VI, Title VII, voting rights, housing law, and welfare reform issues.

Ms. Day is admitted to the New York State Bar.

**ANNA DOVER** received a B.A. degree from Wesleyan University in 1995, and a J.D. degree from the University of California at Davis School of Law in 2001. While in law school, Ms. Dover was a member of the UC Davis Law Review.

Ms. Dover focuses her practice on class actions on behalf of defrauded investors and consumers. She currently represents shareholders in actions against various mutual fund families in which Milberg Weiss has been appointed sole or co-lead counsel including *In re Dreyfus Mutual Funds Fee Litigation* (W.D. Pa.) and *In re American Mutual Funds Fee Litigation* (C.D. Cal.).

She is admitted to practice in the courts of the State of California and New York.

**NEIL R. FRASER** graduated from the University of Massachusetts, Amherst in 1989 with a B.A. degree in political science. In 1992, he received his J.D. degree from Whittier Law School. While in law school, Mr. Fraser externed for the Hon. Vincent P. Zurzolo, United States Bankruptcy Judge for the Central District of California.

Mr. Fraser focuses his practice in the areas of securities, mass torts and employment discrimination. He is currently one of the attorneys litigating on behalf of the plaintiffs in the recently certified class action alleging employment discrimination at the Jacob K. Javits Convention Center, *Cokely, et al. v. NYCCOC, et al.* (S.D.N.Y.). In the mass torts practice, Mr. Fraser is a key part of the team representing over 330 individuals relating to injuries they sustained by their ingestion of the diet drug combination known as *Fen-Phen* in *In re Diet Drug Litigation Venued in Bergen County*. In securities, he worked on the successfully resolved *In re Racing Champions Securities Litigation* (N.D. Ill.) and is currently a member of the team handling the landmark *In re IPO Securities Litigation*, alleging various forms of market manipulation.

Mr. Fraser is admitted to practice in New York, New Jersey and the U.S. District Courts for the Southern District of New York, the Eastern District of New York and the District of New Jersey.

**CARLA FREDERICKS** graduated *magna cum laude* from the University of Colorado in 1997 and from Columbia Law School in 2001. While at Columbia, she was a Public Interest Fellow, a Charles Evans Hughes Scholarship recipient, and Executive Editor of the Columbia Journal of Environmental Law. Prior to law school, Ms. Fredericks served as an AmeriCorps volunteer in Colorado. She has performed extensive pro bono work on behalf of community organizations and the wrongfully convicted.

Ms. Fredericks joined Milberg Weiss in 2005. She focuses her practice on securities and class action litigation. She also has significant experience in civil rights litigation and labor and employment law.

Ms. Fredericks was admitted to the New York State Bar in 2002. She is a member of the New York State Bar Association and the New York County Lawyers Association.

**ANN GITTLEMAN** focuses her practice on securities and class action litigation. She also has significant experience in accountants' liability law. She graduated from Brooklyn Law School in 2004. While at Brooklyn, she was a member of the Moot Court Honor Society and National Moot Court Team, also, she

received the Alexander and Emily Mehr Prize for excellence in oral advocacy.

Prior to law school, Ms. Gittleman worked as an auditor at PricewaterhouseCoopers, shortly thereafter she was certified as a CPA. During law school Ms. Gittleman worked in the Office of the General Counsel at PricewaterhouseCoopers LLP dealing with securities class action matters and accountants' liability. After law school she worked at a firm in midtown specializing in accountants' liability matters. Ms. Gittleman joined Milberg Weiss in 2006. She is a member of the New York State Bar Association and the New York County Lawyers Association.

**TODD KAMMERMAN** received his B.A. degree *cum laude* with honors in politics from Brandeis University in 1999. In 2002, he received his J.D. degree from the Benjamin N. Cardozo School of Law. While at Cardozo, Mr. Kammerman was named an Alexander Fellow, through which he worked as a judicial intern in the chambers of the Honorable Joseph A. Greenaway, Jr., U.S.D.J. in Newark, NJ. Mr. Kammerman is a member of the bars of the States of New York and New Jersey and is admitted to practice before the United States District Court for the District of New Jersey.

**JOSHUA KELLER** graduated from the University of North Carolina in 1998 and from Albany Law School of Union University in 2004. Prior to entering law school, Mr. Keller was a Trial Preparation Assistant in the New York County District Attorney's Office. While a law student, Mr. Keller was associate editor of Albany Law Review and participated in the Senior Prize Trials competition.

Mr. Keller focuses his practice on securities class action litigation on behalf of defrauded individual and institutional investors. He currently represents shareholders in cases where Milberg Weiss has been appointed lead counsel, including *In re Sears, Roebuck & Co. Sec. Litig.* (N.D. Ill.).

Mr. Keller was admitted to the New York State Bar in 2005.

**JANUARY L. KERR** received her B.A. degree in government and law from Lafayette College and graduated from New York Law School, *cum laude* in 2001. While at NYLS, Ms. Kerr was active in the Moot Court Association and served as the Executive Editor. She received several awards including the Morris Orland Award for Excellence in Appellate Advocacy and the National Second Best Brief Award at the Burton D. Weschler Moot Court Competition. In 2001, Ms. Kerr was awarded the National Moot Court Association Honors and was elected into the Order of the Barristers. She was the Recipient of the Arthur Abbey Fellowship for public advocacy in 2002. Ms. Kerr has completed internships for the US Attorney's Office for the Southern District of New York and the Honorable Kevin Thomas Duffy, U.S. District Judge, S.D.N.Y. Ms. Kerr joined Milberg Weiss in 2003.

Ms. Kerr is a member of the New York State Bar Association, New York County Lawyers Association, New Jersey State Bar Association and the American Bar Association. She is admitted to the Bars of the States of New York and New Jersey and the United States District Court for the State of New Jersey.

**ARVIND B. KHURANA** received his B.A. from State University of New York at Albany in 1993 and a J.D. from St. John's University School of Law in 1999, *Dean's List Graduate.* While in law school, Mr. Khurana was on the Dean's List from 1995-1999 and a member of the American Bankruptcy Institute Law Review.

Mr. Khurana focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation. Prior to joining Milberg Weiss in August 2005, Mr. Khurana worked as an associate with a major international law firm in New York, concentrating in the area of complex commercial litigation.

Mr. Khurana is a member of the Federal Bar Council and admitted to practice in the state and federal courts of New York.

**SABRINA KIM** earned her B.A. degree from the University of California, Los Angeles, in 1992, and her J.D. degree from the University of California, Hastings College of Law in 1996.

Ms. Kim focuses primarily on securities and consumer class actions on behalf of defrauded investors and consumers. Ms. Kim came to Milberg Weiss from the California Department of Justice, where she was a deputy attorney general in the Consumer Law Section for six years. During her tenture as a state prosecutor, Ms. Kim served on the Attorney General's Asian Pacific Islander Advisory Board and prosecuted several high-profile, complex state and federal consumer fraud cases, including those against major predatory lenders, notorious immigration consultants, and others who engaged in unlawful and deceptive business practices. Ms. Kim has served as a speaker or panelist on Business and Professions Code Section 17200 and Proposition 64 for the Los Angeles County Bar Association Symposium and Mealey's Section 17200 Conference. Ms. Kim has also taught Consumer Law as an adjunct professor at Loyola Law School and is a board member of the Association of Business Trial Lawyers.

Ms. Kim is admitted to practice in the courts of the State of California, as well as the United States District Court for the Central District of California.

**MATTHEW A. KUPILLAS** graduated from the State University of New York at Albany in 1990 with a B.A. degree in philosophy. In 1994, Mr. Kupillas received his J.D. degree from New York University School of Law. Mr. Kupillas focuses his practice primarily on class actions on behalf of defrauded investors and consumers, as well as complex commercial litigation. His involvement in the *In re Oxford Health Plans, Inc. Securities Litigation* helped shareholders recover an aggregate settlement of $300 million. Mr. Kupillas is a member of the New York State Bar Association and the American Bar Association. He is a member of the bar of the State of New York and is admitted to practice before the United States District Court for the Eastern District of Wisconsin.

**TODD KUSSIN** received his B.A. degree from Cornell University in 1997 and his J.D. degree from Hofstra University School of Law in 2002. While a law student, Mr. Kussin served as Research Editor of the Hofstra Law Review. He also worked for the Unemployment Action Center, providing counsel to indigent clients seeking unemployment insurance.

Mr. Kussin focuses his practice primarily on securities class action litigation on behalf of defrauded individual and institutional investors. Prior to joining Milberg Weiss, Mr. Kussin was an associate at Clifford Chance US LLP.

Mr. Kussin was admitted to the New York State Bar in 2003.

**SHARON M. LEE** graduated from St. John's University in 1997 with a B.A. degree in Asian studies, and a M.A. degree in East Asian studies in 1998. Ms. Lee earned her J.D. degree from St. John's University School of Law in 2001 where she was the notes and comments editor of *The New York International Law Review*, and the author of an article published therein. Ms. Lee is a member of the New York State Bar Association. She is admitted to the bar of the State of New York, and is admitted to practice in the Southern and Eastern Districts of New York.

**SHANNON M. MCKENNA** received a B.S. from The College of New Jersey (formerly Trenton State College) in 2000. She graduated from The Catholic University of America, Columbus School of Law in 2003. While still in law school, Ms. McKenna gained trial experience in D.C. Superior Court representing indigent clients for D.C. Law Students in Court. After graduating from law school, Ms. McKenna served as federal judicial law clerk for the Honorable James McGirr Kelly, U.S.D.J., and for the Honorable David R. Strawbridge, U.S.M.J ., both of the District Court for the Eastern District of Pennsylvania. Following her clerkship, Ms. McKenna joined Milberg Weiss, where she has become an integral part of several securities fraud matters.

Ms. McKenna focuses her practice primarily on class actions on behalf of defrauded investors and consumers. Ms. McKenna is a member of the bars of the States of New Jersey, Pennsylvania and New York.

**KRISTI STAHNKE MCGREGOR** received her B.A. degree in political science, Phi Beta Kappa, from the University of Florida in 1995. She spent two years, 1993-94 and 1995-96, studying political science and economics at the Rheinische Friedrich-Wilhelms-Universitaet Bonn in Bonn, Germany. In 1999 Ms. McGregor received her J.D. degree from Emory University School of Law, where she was the Research Editor of the *Emory International Law Review* and student law clerk to Justice Norman Fletcher of the Georgia Supreme Court.

After graduating law school, Ms. McGregor was a recipient of the German Chancellor Fellowship through the Alexander Von Humboldt Foundation, which allowed her to attend the Westfaelische Wilhelms-Universitaet Muenster in Muenster, Germany and receive her LL.M. degree *magna cum laude* in German civil law in 2001.

Prior to joining Milberg Weiss in 2002, Ms. McGregor practiced in the international section of a large Atlanta law firm. She focuses her practice primarily on class actions on behalf of defrauded investors, as well as complex commercial litigation. She has particular experience in international litigation, primarily involving European companies. She is fluent in German. Ms. McGregor was admitted to the State Bar of Georgia in 1999, the New York Bar in 2003 and the Florida Bar in 2004.

**JOHN MILLS** earned his B.A. degree from Duke University in 1997, and his J.D. degree from Brooklyn Law School in 2000, *cum laude*. Mr. Mills currently concentrates on settlement documentation and administration. Mr. Mills is admitted to practice in the courts of the State of New York.

**JOHN REDIKER** earned his B.A. degree from the University of North Carolina in 1994, and his J.D. degree from Washington and Lee University School of Law in 1999. Mr. Rediker's practice involves class action securities and consumer fraud litigation. In addition, Mr. Rediker also has experience in multi-party environmental litigation, complex commercial litigation, and he was associate in-house counsel for an

international corporation. While in law school, he was Articles Editor for the *Environmental Law Digest* and was a third-year practice certified advocate for the Legal Aid Society of Rockbridge County.

Mr. Rediker is admitted to practice in the courts of the State of Colorado, as well as the United States District Court for the District of Colorado, and the United States Court of Appeals for the Tenth Circuit.

**TATIANA RODRIGUEZ** received a B.A. degree from McGill University in 1998, a J.D. from University of San Diego School of Law in 2001, and an L.L.M. from Boston University in Banking and Financial Law in 2004. During her LL.M. at Boston University, Ms. Rodriguez assisted in organizing and preparing materials examining the history and problems of the Investment Company Act. She also researched and wrote many papers dealing with current issues in the investment management industry.

Ms. Rodriguez focuses her practice on class actions on behalf of defrauded investors and consumers. She currently represents shareholders in actions against various mutual fund families in which Milberg Weiss has been appointed sole lead counsel, including *In re Goldman Sachs Fee Litigation* (S.D.N.Y.) and *In re Dreyfus Fee Litigation* (W.D. Pa.).

Ms. Rodriguez is admitted to the Bars of the States of New York and California.

**WILLIAM B. SCOVILLE, JR.** received a B.A. degree from Yale University in 1985 and a J.D. degree with Specialization in International Legal Affairs from Cornell Law School in 1992. As a law student, he participated in Cornell's Legal Aid Clinic, Criminal Justice Clinic, and Prison Project.

Mr. Scoville's practice consists primarily of complex securities litigation. He is fluent in French, Spanish, and Russian, and in 1997 received a fourth prize at the IBLA Grand Prize International Piano Competition in Sicily.

**TOMASITA L. SHERER** earned her B.A. from New York University in 1992, and her J.D. degree from Fordham University School of Law in 1999. After college and prior to law school, Ms. Sherer worked as a radio broadcaster for a national syndication firm and was heard on several major market radio stations including WINS AM and WCBS AM in New York.

Ms. Sherer focuses her practice primarily on pharmaceutical and medical device cases on behalf of injured consumers. Currently, she represents hundreds of individuals who have suffered serious personal injuries as a result of taking recalled arthritis and pain killer medications, Vioxx and Bextra. She also represents hundreds of individuals who were implanted with defective heart defibrillators and/or pacemakers manufactured by Guidant and Medtronic. Ms. Sherer has successfully represented clients around the country who suffered heart valve damage as a result of using the diet drug combination known as Fen Phen and was instrumental in resolving numerous cases during national settlement talks.

Ms. Sherer is also experienced with mass and toxic tort litigation involving several other industries including insurance, manufacturing and transportation. Ms. Sherer has assisted in the negotiation and implementation of class action settlements in environmental and chemical contamination, occupational chemical exposure and insurance sales practices cases. In addition to her toxic tort and products liability practice, Ms. Sherer has additional experience in general commercial litigation, arbitration and antitrust matters.

Ms. Sherer is an active volunteer for several community based organizations and is a member of several bar associations, including the American Bar Association and Puerto Rican Bar Association. Ms. Sherer also serves on the firm's Diversity Committee, where she works on planning programs and events related to the firm's commitment to increase diversity in the firm.

Ms. Sherer was admitted to the bar of the State of New York in 2000, and is admitted to practice before the United States District Court for the Southern and Eastern Districts of New York.

**ALISHA C. SMITH** graduated from the University of Maryland in 1997 with a B.A. degree in government and politics. In 2000, she earned her J.D. degree from Washington University School of Law in St. Louis. While a law student, Ms. Smith clerked for Judge Theodore McMillian on the United States Court of Appeals for the Eighth Circuit. Prior to graduation, she worked as a full-time intern at the Securities and Exchange Commission in the Division of Market Regulation Office of Chief Counsel.

After graduation, Ms. Smith remained in the Washington, D.C. area and in 2002 she received her LL.M. in securities regulation from the Georgetown University Law Center.

Ms. Smith focuses her practice in the area of securities fraud class action litigation.

Ms. Smith is a member of the Maryland State Bar Association, the American Bar Association, and the Securities and Exchange Commission Historical Society. Ms. Smith was admitted to practice in the State of Maryland in 2001 and admitted to practice in the State of New York in 2003.

**LEIGH SMITH** earned her B.A. degree from Rutgers University, New Brunswick, in 1990, with high

honors, her M.A. degree from Rutgers University, New Brunswick, in 1994, and her J.D. degree from Cornell Law School in 1999. Ms. Smith focuses her practice on class actions on behalf of defrauded investors. She also has significant experience with complex commercial litigation. At Rutgers, Ms. Smith majored in French and was elected to Phi Beta Kappa and Phi Sigma Iota. As a graduate student, she studied French literature and film and spent a year in France working as an assistant English teacher. In law school, Ms. Smith served as the Acquisitions Editor for the *Cornell Journal of Law and Public Policy* and was a member of the Cornell Moot Court Board. She was a finalist in the Cuccia Cup Moot Court Competition and received a CALI Award for Outstanding Achievement for her work in Cornell's Legal Aid Clinic. She also was active in a number of student organizations, including the Public Interest Law Union and the Women's Law Coalition, and was co-chair of Lambda Law Students. Since graduating, Ms. Smith has been associated with law firms in New York and New Jersey.

Ms. Smith is admitted to practice in the courts of the States of New York, New Jersey and Massachusetts, as well as the United States District Courts for the District of New Jersey, the District of Massachusetts, and the Southern and Eastern Districts of New York.

**MELISA TWOMEY** graduated from the Cornell University School of Industrial and Labor Relations in 2001 and earned her J.D. degree from Wayne State University School of Law in 2004. Ms. Twomey focuses her practice on class actions on behalf of defrauded investors and consumers. She primarily represents defrauded shareholders in actions involving securities and accounting fraud. Ms. Twomey is admitted to the Florida State Bar and the District Court for the Middle District of Florida.

**RACHEL WINTTERLE** earned her B.A. degree from the University of Wisconsin in 1991, her M.A. degree from American University in 1994, and her J.D. degree from Tulane University School of Law in 2002.

Ms. Wintterle concentrates her practice primarily on class actions on behalf of defrauded investors and consumers and is one of the attorneys prosecuting the *Initial Public Offering Securities Litigation* pending in the United States District Court for the Southern District of New York. Ms. Wintterle has also been active in healthcare litigation, including the *In re: Managed Care Litigation* and other class actions brought on behalf of physicians against managed care organizations.

Ms. Wintterle is active in pro bono work and teaches a weekly Street Law program in the New York City public school system. She is a member of the American Bar Association, New York State Bar Association, New York County Lawyers Association and the Louisiana State Bar Association. Ms. Wintterle is admitted to practice in the courts of the States of Louisiana and New York.

**JENNIFER L. YOUNG** received a B.A. degree from University of South Carolina in 1996. She graduated *cum laude* from the University's School of Law in 2002. During law school, Ms. Young was Associate Editor in Chief of the *South Carolina Law Review*, as well as a member of the South Carolina Moot Court Bar.

Ms. Young focuses her practice primarily on mass tort, consumer fraud, and complex commercial litigation. Ms. Young is admitted to practice in the state courts of South Carolina and New York. Her admission to practice in England and Wales is currently pending.