DATE FILED: 1/18/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

MOTTI KAPLAN, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, and IMAX CORPORATION,

Defendants.

----------------------------------X

**MEMORANDUM AND ORDER**

06 Civ. 6128 (NRB)

SANTIAGO GUZMAN, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

----------------------------------X

**MEMORANDUM AND ORDER**

06 Civ. 6235 (NRB)

ERIC S. BERGEN, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, and IMAX CORPORATION,

Defendants.

----------------------------------X

**MEMORANDUM AND ORDER**

06 Civ. 6313 (NRB)

MICROFILM JAN 22 2007 -12:00 PM

----------------------------------X

MICHAEL J. LAROSA, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

**MEMORANDUM AND ORDER**

06 Civ. 6349 (NRB)

----------------------------------X

ROBERT FEENEY, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

**MEMORANDUM AND ORDER**

06 Civ. 6449 (NRB)

----------------------------------X

FLOYD REYNOLDS, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

**MEMORANDUM AND ORDER**

06 Civ. 6693 (NRB)

----------------------------------X

----------------------------------X

ANTHONY CAIAFA, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

----------------------------------X

**MEMORANDUM AND ORDER**

06 Civ. 7057 (NRB)

----------------------------------X

ROBERT B. GRAY, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

----------------------------------X

**MEMORANDUM AND ORDER**

06 Civ. 7162 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This matter involves eight related cases brought against the IMAX Corporation ("IMAX"), a Canadian company, and three of its high level executives,[1] on behalf of a purported class of

[1] Richard Gelfond has served as co-chief executive officer since May of 1996, and co-chairman of IMAX since June of 1996. Bradley J. Wechsler has served as co-chief executive officer with Gelfond since May of 1996. Francis T. Joyce has served as IMAX's chief financial officer since 2001.

investors who purchased IMAX stock during the class period.[2] Seven sets of investors each filed motions to consolidate the actions, to be appointed as lead plaintiff, and to designate their lawyers as lead counsel. These include: (1) Westchester Capital Management, Inc. ("Westchester Capital"), acting as the investment advisor for five different investment funds[3] ("five funds"); (2) Snow Capital Investment Partners, L.P. ("Snow Capital"); (3) the Steelworkers Pension Trust ("Steelworkers Pension"); (4) Y Lu; (5) Paul Witt, Gerald Nash, Michael Pemberton, and Stacey Shehorn (collectively, the "IMAX Investor Group"); and (7) Jay M. Spritzler.[4] For the reasons set forth below, we consolidate the above-captioned actions pursuant to Fed. R. Civ. Proc. 42(a), appoint Westchester Capital as lead plaintiff, and designate the law firm of Abbey Spanier Rodd Abrams & Paradis, LLP, as lead counsel.

---

[2] Seven of the eight plaintiffs (Eric Bergen, Robert Gray, Santiago Guzman, Robert Feeney, Motti Kaplan, Michael LaRosa, and Floyd Reynolds), along with movants Westchester Capital Management, Y Lu, and Jay Spritzler, specify the class period to begin on February 17, 2006 and end on August 9, 2006. Plaintiff Anthony Caiafa and movants Snow Capital Investments, Robert Lieblang, Steelworkers Pension, Gary and Marlene Creagh, and IMAX Investor Group specify the class period to begin on October 28, 2004 and end on August 9, 2006. We will address the issue of differing class periods below.

[3] These five funds are GS Master Trust, MSS Merger Arbitrage Fund, The Merger Fund, The Merger Fund VL, and SphinX Merger Arbitrage Fund. See Declaration of Roy Behren (Nov. 2, 2006) ("Behren Decl.") ¶ 2

[4] We note that Gary and Marlene Creagh have since withdrawn their motion.

## DISCUSSION

### I. Consolidation of the Actions

Rule 42(a) of the Federal Rules of Civil Procedure provides as follows:

> When actions involving a common question of law and fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary cost or delay.

Under Rule 42(a), we have broad discretion to determine whether to consolidate actions, and in making this determination, we are to consider whether judicial economy favors consolidation. See Johnson v. Celotex Corp., 899 F.3d 1281, 1285 (2d Cir. 1990), cert. denied 498 U.S. 920 (1990). When a court is presented with securities actions in which the complaints are based on the same "public statements and reports," consolidation is appropriate if the actions present common questions of law and fact and if the parties will not be prejudiced. Werner v. Satterlee, Stephens, Burke & Burke, 797 F.Supp. 1196, 1211 (S.D.N.Y. 1992) (consolidation in securities actions appropriate in cases where complaints are based on "overlap[ping]" public statements and reports and where there are common questions of law and fact). However, "each case in which it may appear to be desirable to consolidate complaints in different actions must be

evaluated on its own facts with close attention to whether the anticipated benefits of a consolidated complaint outweigh potential prejudice to the parties." Id. (quoting Katz v. Realty Equities Corp., 521 F.2d 1354, 1360 (2d Cir. 1975)).

Here, all plaintiffs and movants allege that defendants violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, by issuing public statements and reports which misrepresented the financial standing of IMAX. All plaintiffs and movants also agree that the relevant class period ended on August 9, 2006. See supra note 2. On that day, IMAX announced: (1) that the SEC was investigating the timing of its revenue recognition practice, which segregated and recognized revenue in different financial quarters; (2) that it had uncovered a material weakness in its accounting which affected revenues; and (3) that a previously announced potential sale of the company was not progressing. This news precipitated a drop in the price of IMAX stock. See, e.g., Kaplan v. Gelfond, No. 06 Civ. 6128, Class Action Complaint for Violation of Federal Securities Laws ¶¶ 23-48. However, there is disagreement as to when the class period began, thus resulting in two different class periods alleged by the plaintiffs and the movants. The shorter of the two alleged class periods, which is relied upon by seven complaints and three of the seven movants, starts on February 17, 2006, when

IMAX announced its anticipated 2005 financial results in a press release. Between February 17, 2006 and August 9, 2007, IMAX made several additional public announcements about the well-being of the company, which resulted in a rise in the price of IMAX stock. The longer alleged class period, found in one of the eight complaints and relied upon by four of the seven movants, starts on October 28, 2004, sixteen months prior to the specified start of the shorter period. The parties who allege this period claim that the series of IMAX misrepresentations began with an October 28, 2004 press release, in which IMAX reported its third quarter 2004 financial results. See, e.g., Caiafa v. IMAX Corp., No. 06 Civ. 7057, Complaint for Violation of the Federal Securities Laws ¶¶ 18-31.

Despite the different start dates for the class period, we believe that consolidation is appropriate here. At the outset, we note that all the movants support consolidation and that no party objects, a consideration which weighs heavily against the potential for prejudice. See, e.g., Olsen v. New York Community Bancorp, Inc., 233 F.R.D. 101, 104-105 (E.D.N.Y. 2005) ("[I]t is apparent that no party will suffer prejudice from consolidation, a fact confirmed by the complete absence of any opposition thereto."). However, since consolidation issues directly involve the court's supervision of these litigations, we nevertheless address how the parties' disagreement regarding the

appropriate start date for the period class period affects our Rule 42(a) analysis.

Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation. See, e.g., Pinkowitz v. Elan Corp., Nos. 02 Civ. 862 (WK) et al., 2002 WL 1822118, at *3-4 (S.D.N.Y. July 29, 2002). In this case, the difference in start dates results in parties' reliance upon different financial statements in their pleadings. Of course, to the extent that the class periods overlap, the factual allegations overlap. However, even for the non-overlapping period, all plaintiffs and movants rely on a common pattern in their allegations: that defendants' statements to the investing public misrepresented or omitted to state material facts about the financial status of IMAX. Further, these matters share a common legal question: whether defendants' misrepresentations violated federal securities laws. In other words, the actions are all "securities fraud claims that arise from a common course of conduct. The dates on which the misrepresentations occurred do not change their nature." In re Cendant Corp. Lit., 182 F.R.D. 476, 478 (D.N.J. 1998) (noting that "[c]ourts which have addressed the issue have held that differing class periods alone will not defeat consolidation or

create a conflict"); see also In re Olsten Sec. Litig., 3 F.Supp.2d. 286, 293 (E.D.N.Y. 1998) (consolidating actions alleging violations of section 10(b) and 20(a) under Securities Exchange Act of 1934, despite the fact that one of the four complaints specified a class period which began before and ended during the class period alleged in the other three complaints); Dolan v. Axis Capital Holdings Ltd., Nos. 04 Civ. 8564 (RJH) et al., 2005 WL 883008, at *2 (S.D.N.Y. Apr. 13, 2005) (finding consolidation of cases with "similar or overlapping claims" under Section 10(b) and 20(a) of the Securities and Exchange Act of 1934, along with Rule 10b-5, appropriate pursuant to Rule 42(a) despite different but "coextensive" class periods).

Given the overlapping questions of law and fact presented in the cases before us, litigating a multitude of separate actions would only ensure the duplication of effort amongst parties and the needless expenditure of judicial resources. Thus, in light of the "well recognized" principle that the "consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs," In re Olsten Sec. Litig., 3 F.Supp.2d. at 293-94, we find it appropriate to consolidate these actions under Rule 42(a). Finally, we note that the filing of a consolidated complaint, see, e.g., Olsen, 233 F.R.D. at 104-105, and the determination

of class certification each offer opportunities to resolve remaining issues concerning the differing class periods.

**II. The PSLRA**

The PSLRA provides that a court "shall appoint as lead plaintiff the member . . . of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members": in other words, the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). This decision is to be made "as soon as practicable after [the decision to consolidate] is rendered." Id. § 78-u4(a)(3)(B)(ii).

In addition, the PSLRA establishes a rebuttable presumption regarding the appointment of the lead plaintiff. A plaintiff is presumed to be the most adequate plaintiff if it: (1) has either filed the complaint or made a motion in response to the publication of notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Id. § 78-u4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or instead is subject to "unique defenses" that render the plaintiff incapable of adequately representing the class. Id. § 78-u4(a)(3)(B)(iii)(II). After the appointment of the most

adequate plaintiff, that plaintiff shall retain counsel to represent the class, subject to court approval. Id. § 78-u4(a)(3)(B)(v).

## III. The Proposed Lead Plaintiffs

### A. The Presumptive Lead Plaintiff

#### 1. Timely Complaints and Motions

All seven of the class members seeking appointment as lead plaintiff meet the first requirement: namely, they have filed complaints and/or submitted motions for lead plaintiff status in a timely manner. Accordingly, we look to the second requirement to determine the presumptive lead plaintiff: that the movant have the largest financial interest in the action.

#### 2. Largest Financial Interest

The PSLRA is not explicit as to what method courts are to use in determining which plaintiff has the largest financial interest in the relief sought by the class. This omission has caused disputes over the appropriate method for calculating the largest financial interest among potential lead plaintiffs. However, in making this assessment, many courts have looked to four factors, first set forth in Lax v. First Merchants Acceptance Corp., Nos. 97 Civ. 2715 et al., 1997 WL 461036 (N.D. Ill. Aug. 11, 1997): (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number

of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered. Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (adopting the four-factor "Lax test"); In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 100 (S.D.N.Y. 2005) (relying on Lax test factors). Although courts have differed on how much weight to assign to each of the Lax factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant. See Weiss v. Friedman, Billings, Ramsey Group, Inc., No. 05 Civ. 4617 (RJH), 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of [the Lax test] elements") (quoting In re Vicuron Pharm. Inc. Sec. Litig., 225 F.R.D. 508, 510-11 (E.D.Pa. 2004)); see also Takara Trust v. Molex Inc., 229 F.R.D. 577, 579 (N.D. Ill. 2005) (in determining the largest financial interest, "most courts simply determine which potential lead plaintiff has suffered the greatest total losses"); In re Bally Total Fitness Sec. Litig., No. 04 Civ. 4697, 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005).

As set forth by the movants in their papers, it would appear that Westchester Capital has the largest financial interest in this case, followed by Snow Capital.[5] We note, to begin, that Westchester Capital and Snow Capital rely upon different class periods. Westchester Capital used the later start date of February 17, 2006, whereas Snow Capital used the earlier start date of October 28, 2004. For the purposes of this analysis, we use the longer class period with the earlier start date. We do so because the result under both potential class periods is the same for Westchester Capital.[6] See Memorandum of Points and Authorities in Support of Westchester Capital Management Inc.'s Motion ("Westchester Capital Mem. Supp.") at 9. The total number of shares purchased by Westchester Capital over the class period is 1,538,087 shares.

---

[5] An examination of the other movants' papers reveals that Westchester Capital and Snow Capital purchased significantly more shares of IMAX stock and sustained significantly greater losses than any of the other movants during the class period. See Declaration of Samuel K. Rosen in Support of Motion [on Behalf of Y Lu], Ex. B; Memorandum of Law in Support of Motion for Consolidation, Appointment of [Jay Spritzler as] Lead Plaintiff, and Approval of Selection of Co-Lead Counsel, at 10; Declaration of Douglas M. Risen in Support of Motion by the Steelworkers Pension Trust, Ex. A; Memorandum of Law in Support of the Motion of Robert Lieblang for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, at 8; Declaration of Evan J. Smith in Support of the Motion of the IMAX Investor Group, Ex. A.

[6] We note that Snow Capital purchased all of its shares of IMAX prior to February 17, 2006, and sold all of its shares on August 10, 2006. See Declaration of David A. Rosenfeld in Support of Snow Capital Investment Partners, L.P.'s Motion, ("Decl. Rosenfeld"), Ex. B. Thus, had we relied upon the shorter class period in our Lax factor analysis, Snow Capital would have purchased zero shares during the period, and consequently would not have had any losses.

Id. Since Westchester Capital sold 872,950 shares over the course of the class period, the net number of shares purchased by Westchester Capital is 710,137. See Declaration of Nancy Kaboolian in Support of Westchester Capital Management, Inc.'s Motion ("Kaboolian Decl."), Ex. C at 2. Westchester Capital spent $15,887,557.30 to purchase IMAX shares and received $8,748,283.61 from the sale of IMAX shares over the course of the class period, which results in $7,139,273.69 in net funds expended on IMAX stock. See id. Its approximate losses equal $3,623,551.79, using FIFO, or "first in, first out" analysis.[7] Westchester Capital Mem. Supp. at 9; see also Kaboolian Decl., Ex. C at 6. By comparison, since Snow Capital made no sales of its IMAX stock during the class period, it purchased 150,000 total shares of IMAX stock, resulting in $1,357,050.00 funds expended. See Decl. Rosenfeld, Ex. A, B. Snow Capital's losses, using FIFO, are approximately $481,327.03. Id. This comparison reveals that Westchester Capital has a greater

[7] FIFO, or "first in, first out," is a method of accounting where stocks which were acquired first are assumed to be sold first for the purpose of loss calculations. Another frequently employed method to assess losses for purposes of the Lax test is LIFO, or "last in, first out," where those stocks which were acquired most recently are assumed to be sold first. Many courts have stated a preference for LIFO over FIFO in securities cases, since the inflation of stock prices over the course of the class period may have resulted in gains accrued to plaintiffs. As a result, FIFO may overstate actual losses suffered by stockholders, whereas LIFO takes into account these gains. See In re eSpeed, 232 F.R.D. at 101. Here, at this stage, we use FIFO, as the parties have not provided enough information to conduct a LIFO analysis.

financial interest than Snow Capital in the litigation at hand, as measured by each of the Lax test factors.

### 3. Rule 23

Finally, we turn to the third requirement for the presumptive lead plaintiff; namely, that the plaintiff meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. As this Court has previously noted, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination of lead plaintiff under the PSLRA." Shi v. Sina Corp., Nos. 05 Civ. 2154 (NRB) et al., 2005 WL 1561438, at *2 (S.D.N.Y. July 1, 2005) (quoting In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998)). Further, at this stage of litigation, only a preliminary showing of typicality and adequacy is required. In re eSpeed, Inc. Sec. Litig., 232 F.R.D. at 102.

The typicality threshold is satisfied "where the claims arise from the same conduct from which the other class members' claims and injuries arise." Id. As discussed above in the context of consolidation, both Westchester Capital and other members of the class claim to have been injured by the overvaluation of IMAX stock. The underlying conduct from which the class members' claims arise is the same: alleged misrepresentations on the part of the defendants as to the company's worth. Thus, Westchester Capital meets the typicality

requirements under Rule 23 for the purposes of qualification for lead plaintiff.

The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy. See id.; Shi, 2005 WL 1561438, at *2. Westchester Capital has retained competent and experienced counsel, and its significant financial interest should ensure vigorous advocacy on behalf of the class. Further, there is no reason to believe that Westchester Capital has interests that are adverse to those of the class members. Accordingly, Westchester Capital is entitled to the most adequate plaintiff presumption.

**B. The Rebuttal Evidence and Standing**

As noted above, the presumption that Westchester Capital is the most adequate plaintiff may be rebutted if there is evidence that it will not fairly and adequately protect the interests of the class, or is subject to unique defenses that render it incapable of adequately representing the class. 15 U.S.C. § 78-u4(a)(3)(B)(iii)(II). Here, Snow Capital argues that Westchester Capital should be disqualified from consideration as most adequate plaintiff. Specifically, Snow Capital argues that

Westchester Capital was acting as an investment advisor, not purchasing the IMAX shares for its own account, as Snow Capital did, and thus Westchester Capital has no financial interest in the case and lacks standing to sue. See Snow Capital Investment Partners, L.P.'s Opposition to Competing Motions for Appointment as Lead Plaintiff ("Snow Capital Opp.") at 1-2.

Courts have found standing for an investment advisor if it is authorized to act as attorney-in-fact with unrestricted decision making authority for the funds at issue. In such instances, courts have considered the investment advisor to be the "purchaser" under federal securities laws, with standing to sue in its own name.[8] See Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 255 (S.D.N.Y. 2003) (concluding that investment advisor who was also attorney-in-fact for clients with unrestricted decision making authority and who had otherwise satisfied requirements under PSLRA for presumptive lead plaintiff had standing to pursue securities claims on

---

[8] It is true, as Snow Capital points out, that this Court has previously found an investment advisor to lack standing for the reasons set forth here by Snow Capital. See In re Turkcell Iletisim Hizmetler, A.S. Securities Litigation, 209 F.R.D. 353, 358 (S.D.N.Y. 2002). However, we were careful to note in Turkcell that the investment advisor at issue was not an attorney-in-fact for the investors, which distinguishes the situation in Turkcell from other cases in which investment advisors were found to have standing. See id. (citing Smith v. Suprema Specialties, 206 F.Supp.2d 627, 634-35 (D.N.J. 2002)). Thus, our decision in Turkcell is not at odds with our conclusion here: if Westchester Capital is an attorney-in-fact for the five funds which suffered losses from IMAX stock, it has standing to sue and to serve as lead plaintiff.

behalf of investors); In re eSpeed, Inc. Sec. Litig., 232 F.R.D. at 98 ("In order for an investment advisor to attain standing on behalf of investors[,] the transactions in question must have been executed as if by a single person. Moreover, the advisor must be the attorney in fact for his clients, and he must be granted both unrestricted decision-making authority and the specific right to recover on behalf of his clients."); Olsen, 233 F.R.D. at 107 (same).

Snow Capital further asserts that Westchester Capital has not demonstrated that it has the authority to sue on behalf of the five funds, nor to serve as lead plaintiff in their stead. Other courts have relied on declarations stating that the investment manager or adviser was the attorney-in-fact with the authorization to bring suit to recover investment losses. See, e.g., Weinberg, 216 F.R.D. at 255 (citing Ezra Charitable Trust v. Rent-Way, Inc., 136 F.Supp.2d 435, 441 (W.D. Pa. 2001)). Here, Westchester Capital has submitted a sworn declaration from Roy Behren, its Chief Compliance Officer, stating that Westchester Capital is attorney-in-fact for the five funds, and further that it is "authorized to undertake all acts on behalf of [the five funds], including the right to commence legal action on their behalf[,] which includes the right to seek to serve as lead plaintiff in an action brought pursuant to the federal securities laws on their behalf." Behren Decl. ¶¶ 1, 3.

On the basis of this representation, and given that Snow Capital's proffer to the contrary is inconclusive at best,[9] we conclude that the five funds have appointed Westchester Capital as attorney-in-fact, with the capacity to sue on behalf of the funds. Accordingly, Westchester Capital has standing to sue to recover the losses that its investors allegedly sustained due to IMAX's misrepresentations. Since there is no evidence in the record that suggests either that Westchester Capital would not fairly and adequately protect the interests of the class, or that it is subject to any unique defenses, the presumption that Westchester Capital should serve as lead plaintiff is not rebutted.

**IV. Lead Counsel**

As noted above, the PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval. 15 U.S.C. § 78-u4(a)(3)(B)(v). Westchester

[9] To support its assertion, Snow Capital submits selected pages of the Form N-1A/A, Registration Statement of an Open-End Management Investment Company for Merger Fund VL, one of the five funds, filed with the Securities Exchange Commission on July 23, 2003. See Snow Capital Investment Partners, L.P.'s Reply Memorandum in Further Support of its Motion for Appointment as Lead Plaintiff, Approval of its Selection of Lead Counsel and for Consolidation of Related Actions ("Snow Capital Reply"), Ex. A, B. Although this submission includes EX-99D, the Advisory Agreement, Snow Capital did not include EX-99H, which is the Power of Attorney section of the Statement. Retrieval of the complete document reveals that the Merger Fund VL designated Frederick W. Green, the President of Westchester Capital, as attorney-in-fact and agent. See Registration Statement of an Open-End Management Investment Company, Ex-99H, available at http://www.sec.gov/Archives/edgar/data/1208133/000089418903001004/0000894189-03-001004-index.htm.

Capital has accordingly selected the law firm of Abbey Spanier Rodd Abrams & Paradis LLP to serve as lead counsel. After reviewing the firm's resume, we see no reason why the firm should not represent the class. Accordingly, we approve Westchester Capital's selection of Abbey Spanier to serve as lead counsel.

## CONCLUSION

For the aforementioned reasons, we hereby order: (1) that the above-captioned actions be consolidated for all purposes pursuant to Fed. R. Civ. P. 42(a), under the following caption: In re IMAX Corporation Securities Litigation, Master File No. 06 Civ. 6128; (2) that class member Westchester Capital is appointed to serve as lead plaintiff in the consolidated action, pursuant to section 21D(a)(3)(B)(iii) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4-a(3)(B), as amended by the Private Securities Litigation Act of 1995; (3) that the law firm of Abbey Spanier Rodd Abrams & Paradis LLP is appointed to serve as lead counsel for the class in the consolidated action, pursuant to section 21D(a)(3)(B)(v) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4-a(3)(B), as amended by the Private Securities Litigation Act of 1995; and (4) within 20 days, lead plaintiff and lead counsel shall submit to this Court any proposed order that would further facilitate their representation of the class.

Accordingly, all motions by competing movants are hereby denied.

**IT IS SO ORDERED.**

Dated: New York, New York
January 17, 2007

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for Plaintiff Motti Kaplan and Movant Westchester Capital Management, Inc.

Nancy Kaboolian
Abbey Spanier Rodd Abrams & Paradis, LLP
212 East 39th Street
New York, NY 10016

Counsel for Plaintiff Santiago Guzman and Movant IMAX Investor Group

Evan J. Smith
Brodsky & Smith, L.L.C.
240 Mineola Blvd.
Mineola, NY 11501

Counsel for Plaintiff Eric Bergen and Movant Y Lu

Robert I. Harwood
Samuel Kenneth Rosen
Wechsler Harwood LLP
488 Madison Avenue, 8th Floor
New York, NY 10022

Counsel for Plaintiff Michael J. LaRosa and Movant Jay M. Spritzler

Ronen Sarraf
Sarraf Gentile, LLP
485 Seventh Avenue
Suite 1005
New York, NY 10018

Counsel for Plaintiff Robert Feeney

Brian Philip Murray
Murray, Frank & Sailer, LLP
275 Madison Avenue, Ste. 801
New York, NY 10016

Counsel for Plaintiff Floyd Reynolds and Robert Lieblang

Jonathan K. Levine
Girard Gibbs & De Bartolomeo, LLP
601 California St, Suite 1400
San Francisco, CA 94108

Counsel for Plaintiff Anthony Caiafa

Jack Gerald Fruchter
Lawrence Donald Levit
Abraham Fruchter & Twersky, L.L.P.
One Penn Plaza
Suite 1910
New York, NY 10119

Counsel for Plaintiff Robert B. Gray and Movants Gary and Marlene Creagh

Catherine A. Torell
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
150 East 52nd Street
New York, NY 10022

Counsel for Movant Snow Capital Investment Partners, L.P.

David Avi Rosenfeld
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP(LIs)
58 South Service Road
Suite 200
Melville, NY 11747

Counsel for Movant Steelworkers Pension Trust

Christopher J. Keller
Labaton Rudoff & Sucharow LLP
100 Park Avenue
12th Floor
New York, NY 10017

Counsel for Defendants IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, and Francis T. Joyce

Lewis Liman
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006