UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | Master File No. 06 Civ. 6128 (NRB) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 698-3400

**ATTORNEYS FOR DEFENDANT PRICEWATERHOUSECOOPERS LLP, AN ONTARIO LIMITED LIABILITY PARTNERSHIP**

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..... 1

II. BACKGROUND ..... 2

A. The Parties ..... 2

B. IMAX's Accounting ..... 2

III. ARGUMENT ..... 4

A. Plaintiffs' Allegations Must Comply With The Pleading Standards Of Rule 9(b) And The Private Securities Litigation Reform Act ..... 5

B. PwC-Canada Cannot Be Liable Under Section 10(b) For Misstatements Made By Others ..... 6

C. Plaintiffs Fail To Plead That PwC-Canada's Audit Opinions Were False When Issued ..... 8

D. Plaintiffs' Allegations Fail To Satisfy The Second Circuit's Stringent "Recklessness" Standard Applicable To Auditors ..... 9

1. Mere allegations of GAAP or GAAS violations cannot establish a strong inference of scienter ..... 10

2. Plaintiffs' allegations that PwC-Canada acted "recklessly" do not raise a strong inference of scienter ..... 11

3. The inferences to be drawn from Plaintiffs' allegations are neither cogent nor as strong as the competing inferences ..... 15

E. Plaintiffs Fail To Plead Adequately Loss Causation ..... 18

1. Plaintiffs must allege that their losses were caused by alleged false statements made by PwC-Canada ..... 18

2. Plaintiffs cannot establish loss causation based on IMAX's public announcements made on August 9 or November 8, 2006 ..... 19

3. Plaintiffs have failed to plead any losses from the disclosure of allegedly false statements made by PwC-Canada ..... 21

IV. CONCLUSION....................22

## TABLE OF AUTHORITIES

Page(s)

### CASES

*ATSI Communs., Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ........ 6, 17

*Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*,
368 F.3d 86 (2d Cir. 2004) ........ 5

*Chill v. General Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) ........ 11

*Davidoff v. Farina*,
No. 04 Civ. 7617 (NRB), 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ........ 11, 17

*Diaz v. Pataki*,
368 F. Supp. 2d 265 (S.D.N.Y. 2005) ........ 4

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990), *cert. denied*, 498 U.S. 941, 111 S. Ct. 347, 112 L. Ed. 2d 312 (1990) ........ 16, 17

*DSAM Global Value Fund v. Altris Software, Inc.*,
288 F.3d 385 (9th Cir. 2002) ........ 17

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ........ 1, 18

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985) ........ 8

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ........ 6, 17

*Funke v. Life Fin. Corp.*,
237 F. Supp. 2d 458 (S.D.N.Y. 2002) ........ 14

*Greenberg v. Crossroads Sys.*,
364 F.3d 657 (5th Cir. 2004) ........ 8

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir. 2001) ........ 8

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ........ 17

*In re AOL Time Warner Sec. & "ERISA" Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004) ........ 15

*In re AOL Time Warner, Inc. Sec. Litig.*,
503 F. Supp. 2d 666 (S.D.N.Y. 2007) ........ 19

*In re Avista Corp. Sec. Litig.*,
415 F. Supp. 2d 1214 (E.D. Wash. 2005) ........ 20

*In re BISYS Sec. Litig.*,
397 F. Supp. 2d 430 (S.D.N.Y. 2005) ........ 15

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004) ........ 14

*In re eSpeed, Inc. Sec. Litig.*,
457 F. Supp. 2d 266 (S.D.N.Y. 2006) ........ 19, 21

*In re IBM Corp. Sec. Litig.*,
163 F.3d 102 (2d Cir. 1998) ........ 5, 8

*In re JP Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005) ........ 17

*In re Kendall Square Research Corp. Sec. Litig.*,
868 F. Supp. 26 (D. Mass. 1994) ........ 7

*In re Livent, Inc. Sec. Litig.*,
78 F. Supp. 2d 194 (S.D.N.Y. 1999) ........ 8

*In re Loral Space & Comms. Ltd. Sec. Litig.*,
No. 01 Civ. 4388 (JGK), 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) ........ 13

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003) ........ 2

*In re Parmalat Sec. Litig.*,
501 F. Supp. 2d 560 (S.D.N.Y. 2007) ........ 11

*In re Rhodia S.A. Sec. Litig.*,
No. 1:05 Civ. 5389 (DAB), 2007 WL 2826651 (S.D.N.Y. Sept. 26, 2007) ........ 18, 19

*In re Salomon Analyst AT&T Litig.*,
350 F. Supp. 2d 455 (S.D.N.Y. 2004) ........ 8, 9

*In re Sunterra Corp. Sec. Litig.*,
199 F. Supp. 2d 1308 (M.D. Fla. 2002) ........ 15

*In re Tower Auto. Sec. Litig.*,
483 F. Supp. 2d 327 (S.D.N.Y. 2007) ........ 11

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
382 F. Supp. 2d 1173 (N.D. Cal. 2004) ........ 15

*In re Warnaco Group, Inc. Opinion Sec. Litig. (II)*,
388 F. Supp. 2d 307 (S.D.N.Y. 2005) ........ 7

*Kalnit v. Eicher*,
264 F.3d 131 (2d Cir. 2001) ........ 6, 10

*Lattanzio v. Deloitte & Touche LLP*,
476 F.3d 147 (2d Cir. 2007) ........ 18

*Lentell v. Merrill Lynch & Co. Inc.*,
396 F.3d 161 (2d Cir. 2005) ........ 18, 19

*Manufacturers Life Ins. Co. (U.S.A.) v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
No. 99 Civ. 1944 (NRB), 2000 WL 709006 (S.D.N.Y. May 31, 2000) ........ 14

*Mason v. Amer. Tobacco Co.*,
346 F.3d 36 (2d Cir. 2003) ........ 4

*Melder v. Morris*,
27 F.3d 1097 (5th Cir. 1994) ........ 16

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993) ........ 7

*Nappier v. PricewaterhouseCoopers LLP*,
227 F. Supp. 2d 263 (D.N.J. 2002) ........ 14, 15

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ........ 6, 11

*Overton v. Todman & Co.*,
478 F.3d 479 (2d Cir. 2007) ........ 7

*Podany v. Robertson Stephens, Inc.*,
318 F. Supp. 2d 146 (S.D.N.Y. 2004) ........ 8, 9

*Reiger v. Price Waterhouse Coopers LLP*,
117 F. Supp. 2d 1003 (S.D. Cal. 2000) ........ 17

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ........ 5

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ........ 10, 11, 13, 14, 15

*SEC v. Price Waterhouse*,
797 F. Supp. 1217 (S.D.N.Y. 1992) ........ 10, 16

*Shapiro v. Cantor*,
123 F.3d 717 (2d Cir. 1987) .......... 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499 (2007) .......... 5, 6, 10, 15, 16, 17

*Virginia Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991) .......... 8

*Vladimir v. Deloitte & Touche LLP*,
No. 95 Civ. 10319 (RPP), 2007 WL 151330 (S.D.N.Y. Mar. 31, 1997) .......... 14

*Weiss v. Amkor Tech., Inc.*,
No. CV 07-0278-PHX-PGR, 2007 WL 2808224 (N.D. Ariz. Sept. 25, 2007) .......... 20

*Winer Family Trust v. Queen*,
No. 05-3622, 2007 WL 2753734 (3d Cir. Sept. 24, 2007) .......... 17

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) .......... 4, 6, 18, 19

*Ziemba v. Cascade Int'l, Inc.*,
256 F.3d 1194 (11th Cir. 2001) .......... 14, 15

*Zucker v. Sasaki*,
963 F. Supp. 301 (S.D.N.Y. 1997) .......... 10, 13, 14, 16

**STATUTES**

15 U.S.C. § 78j .......... 1

15 U.S.C. § 78u-4, et seq. .......... 1, 5, 6, 18

**RULES**

FED. R. CIV. PROC. 12(b)(6) .......... 1, 4

FED. R. CIV. PROC. 9(b) .......... 1, 5, 7, 9

Defendant PricewaterhouseCoopers LLP, an Ontario limited liability partnership, ("PwC-Canada") respectfully submits this Memorandum of Law in support of its motion pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, et seq. ("PSLRA") to dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("Consolidated Amended Complaint" or "CAC").

## I. PRELIMINARY STATEMENT

In the Consolidated Amended Complaint, filed on October 2, 2007, Plaintiffs are seeking to recover damages from PwC-Canada for alleged violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, ("Section 10(b)") based on PwC-Canada's role as independent auditor of IMAX Corporation ("IMAX"). Because the portions of Plaintiffs' Consolidated Amended Complaint directed at PwC-Canada do not comply with the pleading standards mandated by Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA, the Complaint should be dismissed as to PwC-Canada.

There are at least four reasons to dismiss Plaintiffs' claims against PwC-Canada. First, Plaintiffs seek to impose liability on PwC-Canada for statements made by others, including IMAX and the Individual Defendants. To be liable under Section 10(b), however, a person must actually make a false or misleading statement. Anything short of that is at most aiding and abetting and cannot give rise to liability under the statute. Second, with respect to the statements actually made by PwC-Canada, Plaintiffs have failed to plead adequately that the statements were false. Third, Plaintiffs have failed to meet the PSLRA's stringent standards for pleading scienter on the part of PwC-Canada. They have failed to allege *any* facts evidencing PwC-Canada's intent to deceive, manipulate or defraud the market for IMAX securities. Fourth, Plaintiffs have failed to plead that their alleged losses were proximately caused by the alleged misrepresentations by PwC-Canada as required under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

For all of these reasons, Plaintiffs' claims against PwC-Canada should be dismissed without leave to replead.

## II. BACKGROUND[1]

### A. The Parties

Defendant IMAX is a publicly-traded corporation, registered under the laws of Canada, and along with its subsidiaries, is an entertainment technology company that specializes in large-format and three-dimensional ("3D") motion-picture systems. CAC at ¶ 8. The Individual Defendants are present and former officers and directors of IMAX. *Id.* at ¶¶ 9-12. Plaintiffs are a putative class of investors who allegedly purchased IMAX securities between and including February 27, 2003 and July 20, 2007 (the "Class Period"). Plaintiffs assert that the value of their IMAX securities declined as a result of alleged violations of federal securities laws. *Id.* at ¶¶ 21, 23-24. Plaintiffs' original complaint, filed on August 11, 2006, named IMAX and the Individual Defendants as defendants. Defendant PwC-Canada provides auditing, accounting and other services to clients throughout Canada and audited IMAX's annual financial statements throughout the putative class period. *Id.* at ¶ 20. PwC-Canada was added as a defendant with the filing of the Consolidated Amended Complaint on October 2, 2007.

### B. IMAX's Accounting

Despite its length, the essence of Plaintiffs' Consolidated Amended Complaint can be stated briefly. Plaintiffs allege that IMAX improperly applied multiple element accounting to its sales and leases of theater systems, violating Generally Accepted Accounting Principles ("GAAP") and

---

1 PwC-Canada is mindful that this is a motion to dismiss. Therefore, for purposes of this motion, it will rely on the allegations of the Consolidated Amended Complaint, materials filed with the SEC or relied on in the Complaint, and on facts that the Court may judicially notice. PwC-Canada respectfully requests that the Court take judicial notice of the documents attached as Exhibits A - G to the Declaration of Jennifer L. Conn ("Conn Decl."), filed concurrently herewith. The Court properly may consider each of those documents on this motion to dismiss. *See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003).

prematurely recognizing revenue, and that PwC-Canada knew the accounting was improper or was reckless in not knowing.

Multiple element accounting is governed, in large part, by EITF 00-21, *Revenue Arrangements with Multiple Deliverables* ("EITF 00-21"), issued by the Emerging Issues Task Force of the Financial Accounting Standards Board in May 2003.[2] CAC at ¶¶ 48, 49. IMAX disclosed its application of multiple element accounting to revenue recognition of theater system sales and sales-type leases in its Form 10-K for the year ended 2004 ("2004 10-K"). *Id.* at ¶ 51. IMAX continued to apply multiple element accounting to theater system sales and sales-type leases in 2005. *Id.* at ¶ 55.

On August 9, 2006, IMAX announced that the Securities and Exchange Commission ("SEC") had begun an informal inquiry into IMAX's revenue recognition practices.[3] *Id.* at ¶ 115. IMAX did not state in the press release, however, that its prior accounting practices were in error. On the contrary, IMAX expressed confidence that its accounting complied with GAAP and was supported by PwC-Canada.[4] On November 8, 2006, IMAX reported disappointing earnings and added that it was still responding to the SEC inquiry and an inquiry from the Ontario Securities Commission ("OSC").[5] Again, however, IMAX expressed confidence in its historical accounting practices and gave no indication that its prior audited financial statements might be in error.

---

[2] The EITF began discussions regarding the appropriate accounting for multiple element arrangements in July 2000 but did not reach the required consensus and issue EITF 00-21 until May 2003, nearly three years later. EITF 00-21, referenced in Plaintiffs' Consolidated Amended Complaint, is attached as Exhibit A to the Conn Decl.

[3] IMAX's August 9, 2006 press release (the "August 9 Press Release"), referenced in Plaintiffs' Consolidated Amended Complaint, is attached as Exhibit B to the Conn Decl.

[4] IMAX further reinforced its confidence that its revenue recognition policies complied with GAAP during its August 9, 2006 investor conference call ("August 9 Conference Call"). A copy of the transcript of the August 9 Conference Call, referenced in Plaintiffs' Consolidated Amended Complaint, is attached as Exhibit C to the Conn Decl.

[5] IMAX's November 8, 2006 press release (the "November 8 Press Release"), referenced in Plaintiffs' Consolidated Amended Complaint, is attached as Exhibit D to the Conn Decl.

Finally, on March 16, 2007, IMAX announced that it would delay filing its 2006 Form 10-K after finding accounting errors, and further stated its intention to restate its previously-filed financial statements for 2001 through 2005.[6] CAC at ¶ 126. As discussed further in Section III.E, below, the price of IMAX stock did not decline significantly upon the March 16, 2007 announcement of the need to restate previously-issued financial statements or upon IMAX's July 20, 2007 issuance of its restated financials for 2002 through 2005.[7]

Ultimately, IMAX determined that it had applied multiple element accounting incorrectly and, as a result, improperly recognized revenue on individual components of its theater systems prior to installation of the whole system. On July 20, 2007, IMAX filed restated financial statements for 2002 through 2005 and also filed its financial statements for 2006 and the quarter ended March 31, 2007. *Id.* at ¶ 139.

## III. ARGUMENT

The Court should grant a motion to dismiss when a complaint fails to state a viable claim for relief. *See* FED. R. CIV. PROC. 12(b)(6); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 171 (2d Cir. 1998) (affirming dismissal of Section 10(b) claim under Rule 12(b)(6)). In deciding PwC-Canada's motion, while assuming the truth of all factual allegations in the Consolidated Amended Complaint, the Court must disregard blanket, conclusory allegations of wrongdoing because "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Diaz v. Pataki*, 368 F. Supp. 2d 265, 269 (S.D.N.Y. 2005) (quoting *Mason v. Amer. Tobacco Co.*, 346 F.3d 36, 39 (2d Cir. 2003)).

---

[6] IMAX's March 16, 2007 press release on earnings (the "March 16 Press Release"), referenced in Plaintiffs' Consolidated Amended Complaint, is attached as Exhibit E to the Conn Decl.

[7] The closing price of IMAX stock on the New York Stock Exchange ("NYSE") on March 15, 2007 was $4.99 per share; the closing price on March 16, 2007 was $5.00 per share; the closing price on July 19, 2007 was $4.40 per share; and the closing price on July 20, 2007 was $4.85 per share. *See* Exhibits F and G to the Conn Decl.

### A. Plaintiffs' Allegations Must Comply With The Pleading Standards Of Rule 9(b) And The Private Securities Litigation Reform Act

To state a claim under Section 10(b) against PwC-Canada, Plaintiffs must allege that PwC-Canada "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs' relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 106 (2d Cir. 1998). Plaintiffs' allegations against PwC-Canada must comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated *with particularity*." FED. R. CIV. PROC. 9(b) (emphasis added). In the Second Circuit, Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

In enacting the Private Securities Litigation Reform Act in 1995, Congress expressly strengthened the pleading requirements regarding scienter.[8] The PSLRA requires that any complaint attempting to plead a claim under Section 10(b) must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if any allegation regarding the statement or omission is based on information or belief, the complaint shall state with particularity all facts on which the belief is formed." 15 U.S.C. § 78u-4(b)(1). Further, the PSLRA requires a plaintiff alleging a claim for securities fraud under Section 10(b) "to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*,

---

[8] Recognizing that Section 10(b) claims, "if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law," Congress enacted the PSLRA "[a]s a check against abusive litigation by private parties." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504 (2007). *See also Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 98 (2d Cir. 2004) ("the PSLRA was intended to curtail 'strike suits' – i.e., meritless class actions alleging fraud in the sale of securities . . . by instituting, among other things, heightened pleading requirements for class actions alleging fraud in the sale of securities").

the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs*, 127 S. Ct. at 2504 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, and n.12 (1976)). To state a Section 10(b) claim against PwC-Canada, "plaintiffs must 'state with particularity facts giving rise to a strong inference that [PwC-Canada] acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)).

To establish the requisite "strong inference" of scienter, Plaintiffs must allege "facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). It is not enough that the inference urged by Plaintiffs be "merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 127 S. Ct. at 2505. Thus, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Id.* at 2509. When, as here, a complaint is devoid of allegations of a defendant's motive to commit fraud, "it is still possible to plead scienter by identifying the circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations *must be correspondingly greater*." *Kalnit v. Eicher*, 264 F.3d 131, 142 (2d Cir. 2001) (emphasis added).[9]

## B. PwC-Canada Cannot Be Liable Under Section 10(b) For Misstatements Made By Others

The law in the Second Circuit is clear: PwC-Canada "'*must actually make a false or misleading statement* to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b).'" *Wright*, 152 F.3d at 175 (quoting *Shapiro v. Cantor*,

---

[9] To plead PwC-Canada's motive, Plaintiffs must allege that PwC-Canada stood to gain a concrete benefit from engaging in the alleged fraud. *See Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). The Consolidated Amended Complaint contains no such allegations.

123 F.3d 717, 720 (2d Cir. 1987)) (emphasis added). Put differently, any "misrepresentation *must be attributed to [a] specific actor* at the time of public dissemination, that is, in advance of the investment decision." *Wright*, 152 F.3d at 175 (citing *In re Kendall Square Research Corp. Sec. Litig.*, 868 F. Supp. 26, 28 (D. Mass. 1994)) (emphasis added).[10]

Accordingly, PwC-Canada may be liable under Section 10(b) only for its *own statements*, and cannot be liable for the statements of others or for contributing to the statements of others, including IMAX's unaudited quarterly financial statements, even if PwC-Canada "reviewed and approved" those unaudited quarterly statements. *See id.*; *see also In re Warnaco Group, Inc. Opinion Sec. Litig. (II)*, 388 F. Supp. 2d 307, 313-15 (S.D.N.Y. 2005).

Despite this settled law, Plaintiffs repeatedly – and erroneously – allege that PwC-Canada is liable under Section 10(b) for ***every single item of allegedly misleading information disseminated to the market during the Class Period***. *See* CAC at ¶¶ 149 *and* 170 (PwC-Canada "is also responsible for the material misinformation disseminated to the investing public during the Class Period"); *see also id.* at ¶¶ 203, 223. These allegations are incapable of supporting a Section 10(b) claim against PwC-Canada, even if they complied with the pleading requirements of Rule 9(b) and the PSLRA, which they do not. Further, Plaintiffs' general allegations that all "defendants" collectively made "untrue statements" or "employed devices, schemes and artifices to defraud" must be disregarded in assessing the viability of their claims against PwC-Canada.[11] *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the

---

[10] An auditor may be liable under Section 10(b) for an omission only if it "provides a certified opinion that is false or misleading when issued, subsequently learns or was reckless in not learning that the earlier statement was false or misleading, knows or should know that potential investors are relying on the opinion, yet fails to take reasonable steps to correct or withdraw its opinion and/or the underlying financial statements." *Overton v. Todman & Co.*, 478 F.3d 479, 480-81 (2d Cir. 2007). Plaintiffs' Consolidated Amended Complaint contains no allegations supporting such a theory of PwC-Canada's liability.

[11] *See, e.g.*, CAC at ¶¶ 207-09, 228-32.

complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *see also In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 213 (S.D.N.Y. 1999).

Plaintiffs identify only two alleged misstatements actually attributed to PwC-Canada. Those are PwC-Canada's statements, contained in its audit opinions on IMAX's year-end financial statements for 2002 through 2005 (the "Audit Opinions"), that PwC-Canada conducted its audits in accordance with GAAS and the standards of the PCAOB and that, in PwC-Canada's opinion, IMAX's audited financial statements complied with GAAP. CAC at ¶ 187. As to those statements, however, Plaintiffs have failed to plead adequately that they were false or that they were made with scienter.

### C. Plaintiffs Fail To Plead That PwC-Canada's Audit Opinions Were False When Issued

"It is well established that liability under section 10(b) *can* be predicated on statements of opinion, where it can be shown *not merely that a proffered opinion was incorrect or doubtful, but that the speaker deliberately misrepresented his actual opinion.*" *In re Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455, 465 (S.D.N.Y. 2004) (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095-96 (1991)) (emphasis added); *In re IBM*, 163 F.3d at 109 (holding opinion statements actionable "if the speaker does not genuinely and reasonably believe it or if it is without a basis in fact"); *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 153-54 (S.D.N.Y. 2004) (the "*sine qua non* of a securities fraud claim based on false opinion is that defendants *deliberately misrepresented a truly held opinion*") (citing *Virginia Bankshares*, 501 U.S. at 1095-96) (emphasis added).[12]

---

[12] *See also Greenberg v. Crossroads Sys.*, 364 F.3d 657, 670 (5th Cir. 2004) ("A statement of belief is only open to objection where the evidence shows that the speaker did not in fact hold that belief") (citation omitted); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 562 (6th Cir. 2001) (opinion statements are actionable only if "the speaker does not believe the opinion and the opinion is not factually well-grounded"); *Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir. 1985) (holding that "an opinion that has been issued without a genuine belief or reasonable basis is an 'untrue' statement which, if made knowingly or recklessly, is culpable conduct actionable under § 10(b)") (citation omitted).

For Plaintiffs' Consolidated Amended Complaint to survive PwC-Canada's motion to dismiss, it must "allege with particularity *provable facts* to demonstrate that the statement[s] of opinion [are] both *objectively* and *subjectively* false." *In re Salomon*, 350 F. Supp. 2d at 465-66 (emphasis added; citations and internal quotation marks omitted). "It is not sufficient for these purposes to allege that an opinion was unreasonable, irrational, excessively optimistic, not borne out by subsequent events, or any other characterization that relies on hindsight or falls short of an identifiable gap between the opinion publicly expressed and the opinion truly held." *Id.* at 466. Similarly, allegations "that it would have been possible to reach a different opinion than that reached by defendant based on information available to defendant at the time, or even that the defendant's opinion was unreasonable" are insufficient to survive a motion to dismiss. *Podany*, 318 F. Supp. 2d at 154. Simply put, Plaintiffs' allegations are incapable of raising the requisite strong inference that the Audit Opinions "deliberately misrepresented [PwC-Canada's] truly held opinion." *Id.* at 153-54. The Consolidated Amended Complaint is devoid of *any* allegations – much less allegations that comply with Rule 9(b) and the PSLRA – that PwC-Canada believed, at the time it issued its Audit Opinions, that its audits did not comply with GAAS or that IMAX's year-end financial statements for 2002 through 2005 were not fairly presented in accordance with GAAP. As such, Plaintiffs have failed to allege facts showing that the only statements alleged as the basis of PwC-Canada's potential Section 10(b) liability were, in fact, false.

### D. Plaintiffs' Allegations Fail To Satisfy The Second Circuit's Stringent "Recklessness" Standard Applicable To Auditors

Even if Plaintiffs had met their burden of pleading facts showing that the Audit Opinions were false – which they have not – their Section 10(b) claim against PwC-Canada fails as a matter of law because Plaintiffs have not met, and cannot meet, the stringent standards for pleading scienter under the PSLRA and Second Circuit law. Plaintiffs' conclusory allegations that PwC-Canada exhibited actionable "recklessness" in auditing IMAX's financial statements fail to raise a

strong inference that PwC-Canada's audits were "an extreme departure from the standards of ordinary care" that "approximate[d] an *actual intent to aid in the fraud* being perpetuated by the audited company." *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (emphasis added; citations and quotation marks omitted). That is, Plaintiffs' allegations must raise an inference that PwC-Canada's "accounting practices were so deficient that *the audit amounted to no audit at all,"* or that PwC-Canada's auditing judgments were such that "no reasonable accountant would have made the same decisions if confronted with the same facts," *Zucker v. Sasaki*, 963 F. Supp. 301, 307 (S.D.N.Y. 1997) (emphasis added), or that PwC-Canada's "shoddy accounting practices amount[ed] *at best to a pretend audit*, or of grounds supporting a representation so flimsy as to lead to the conclusion that there was *no genuine belief* back of it." *Rothman*, 220 F.3d at 98 (emphasis added; citation and quotation marks omitted). Moreover, as Plaintiffs have failed to plead motive on the part of PwC-Canada, the strength of Plaintiffs' "circumstantial allegations *must be correspondingly greater*." *Kalnit*, 264 F.3d at 142 (emphasis added). And Plaintiffs' "correspondingly greater" allegations must give rise to an inference of scienter that is not "merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 127 S. Ct. at 2505. Plaintiffs' allegations fail to meet this test.

**1. Mere allegations of GAAP or GAAS violations cannot establish a strong inference of scienter**

Plaintiffs' allegations that IMAX's accounting for theater system installations violated GAAP or that PwC-Canada's audits failed to comply with certain elements of GAAS are insufficient to raise an inference of scienter, much less a strong inference that is as plausible as any competing alternative. "[Plaintiff's] general allegations of GAAP and GAAS violations fail to satisfy the scienter requirements of Section 10(b) and Rule 10b-5. The mere misapplication of accounting principles by an independent auditor does not establish scienter." *Zucker*, 963 F. Supp. at 307 (citing *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992)); *In re Parmalat*

*Sec. Litig.*, 501 F. Supp. 2d 560, 584 (S.D.N.Y. 2007) ("Allegations that an auditor failed to follow GAAS or other auditing procedures do not alone support a claim of fraud."); *see also Novak*, 216 F.3d at 309 ("allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim").

To raise a strong inference of scienter based on GAAP or GAAS violations, Plaintiffs *must* allege facts demonstrating that PwC-Canada acted with "fraudulent intent." *See Rothman*, 220 F.3d at 98 ("Although the Complaint alleged that [the auditor] had violated various GAAP provisions, those allegations, 'without corresponding fraudulent intent,' do not suffice to state a securities fraud claim.") (quoting *Chill v. General Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996)); *In re Parmalat*, 501 F. Supp. 2d at 584 (holding that for the purposes of inferring scienter, "the issue is not whether plaintiffs have alleged GAAS violations, but whether they have alleged facts indicating that those violations were motivated by or indicative or products of fraudulent intent"); *In re Tower Auto. Sec. Litig.*, 483 F. Supp. 2d 327, 340-41 (S.D.N.Y. 2007) ("Even when [GAAP] violations are pled, the complaint fails to state a claim for securities fraud without evidence of fraudulent intent.").

In their Consolidated Amended Complaint, Plaintiffs fail to allege any facts suggesting, much less demonstrating, that PwC-Canada had motive to engage in fraud. "With respect to the allegations of GAAP violations, which comprise the bulk of plaintiffs' . . . claims, ***this failure to allege motive is fatal*** because allegations of GAAP violations or accounting irregularities alone are insufficient to state a securities fraud claim without evidence of 'corresponding fraudulent intent.'" *Davidoff v. Farina*, No. 04 Civ. 7617 (NRB), 2005 WL 2030501 at *17 (S.D.N.Y. Aug. 22, 2005) (quoting *Novak*, 216 F.3d at 309) (emphasis added).

### 2. Plaintiffs' allegations that PwC-Canada acted "recklessly" do not raise a strong inference of scienter

Plaintiffs' conclusory allegations fail to raise a strong inference that PwC-Canada "recklessly" performed its audits of IMAX's year-end financial statements for 2002 through 2005.

Plaintiffs allege that PwC-Canada violated GAAS by: (1) failing to understand IMAX's business operations, the importance of its theater system revenue, and the accounting treatment applied thereto by IMAX, CAC at ¶¶ 192, 222; (2) failing to properly consider the risk of fraud associated with IMAX's alleged desire to inflate revenue through the improper application of multiple element accounting to its theater system installations during a period when the Company was for sale, or, having considered such risk, failing to plan its audit procedures in light of that risk, *id.* at ¶ 198; and (3) failing to identify weaknesses in IMAX's internal controls, *id.* at ¶ 203. Plaintiffs' core allegations against PwC-Canada are:

> PWC has been IMAX's auditor for approximately 20 years and performed numerous quarterly reviews and annual audits of the Company. PWC performed an integrated audit of the Company's consolidated financial statements and its internal controls over financial reporting. PWC was regularly consulted by IMAX management and accounting issues and financial statements were always reviewed and opinions provided by PWC before the Company's financial statements were publicly disclosed. *Id.* at ¶ 223.
>
> Included in the subjects discussed between IMAX management and PWC was IMAX's revenue recognition policy and the application of multiple element accounting to IMAX's theater systems. The Company's approach to revenue recognition was an ongoing subject of review by PWC, and PWC provided advice to management with respect to revenue recognition for theater systems. PWC approved the revenue recognition policies described publicly by IMAX and the reflection thereof in the Company's financial statements. *Id.* at ¶ 223.
>
> PWC and IMAX management discussed the application of EITF 00-21 and SAB 104 at or about the time they became effective and PWC provided advice on IMAX's application thereof. Given the nature of PWC's access to internal IMAX books and records and PWC's knowledge of the true nature of the theater systems (i.e., that they operated as a single System Deliverable) PWC knew or recklessly disregarded that: multiple element accounting could not properly be applied to IMAX's theater systems; was not properly being applied; that the Company's disclosures with respect to its revenue recognition for theater systems was materially misleading; and that the clean audit opinions PWC issued on IMAX's financial statements were materially misleading. *Id.* at ¶ 224.
>
> This is particularly true given PWC's knowledge or reckless disregard that the Company separately accounted for the following units of accounting for a typical theater system revenue arrangement: (a) the projection system, sound system and related equipment (excluding the screen) and the supervision and installation of these components; (b) the screen and the supervision for the installation of the same;

(c) maintenance services; and (d) projectionist training. A reasonable reader of IMAX's public disclosures was not alerted to any of these facts. CAC at ¶ 225.

In essence, Plaintiffs allege that PwC-Canada learned of IMAX's accounting for theater system installations, consulted with IMAX regarding that accounting and provided advice about IMAX's accounting – all proper and expected actions for an auditor. Nowhere do Plaintiffs allege that there were facts unknown to PwC-Canada that different or additional audit procedures would have revealed. Thus, Plaintiffs do not even allege facts supporting an inference that PwC-Canada's audit procedures were deficient, much less that PwC-Canada's audits were such "an extreme departure from the standards of ordinary care" that they "approximate[d] an *actual intent to aid in the fraud* being perpetuated by the audited company," *Rothman*, 220 F.3d at 98 (emphasis added), or that PwC-Canada's audit procedures "were so deficient that *the audit amounted to no audit at all* . . . ." *Zucker*, 963 F. Supp. at 307 (emphasis added).[13]

Therefore, Plaintiffs' allegations boil down to a dispute over the application of GAAP. Plaintiffs allege that IMAX's accounting was wrong and PwC-Canada knew or recklessly disregarded that the accounting was wrong. Plaintiffs, however, point to no facts existing at the time showing that PwC-Canada was on notice that the accounting was wrong – no contemporaneous documents, articles or pronouncements saying that multiple element accounting could not be applied to theater systems like IMAX's. Plaintiffs can only point to questions raised by the SEC after the fact and to IMAX's determination in 2007 that its accounting in 2005 and earlier had been in error. That is not sufficient to plead scienter. *See In re Loral Space & Comms. Ltd. Sec. Litig.*, No. 01 Civ. 4388 (JGK), 2004 WL 376442 at *17 (S.D.N.Y. Feb. 27, 2004) (granting motion to dismiss in the absence of "allegations that there were any internal reports that suggested

---

[13] Further, these allegations *flatly contradict* Plaintiffs' allegations that PwC-Canada violated GAAS by failing to understand IMAX's business and the importance of revenue from its theater system installations, and by failing to adequately inform itself regarding IMAX's revenue recognition policies with respect to those installations, including the application of multiple element accounting. *See* CAC at ¶¶ 192, 222.

that the failure to take an impairment charge was an incorrect application of accounting principles" and "rose to the level of fraud"); *Manufacturers Life Ins. Co. (U.S.A.) v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 99 Civ. 1944 (NRB), 2000 WL 709006 at *3 (S.D.N.Y. May 31, 2000) ("[T]o say that because the statements or omissions proved in hindsight to be false, does not even suggest that [defendant] knew them to be false at the time of their making."); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1210 (11th Cir. 2001) ("Plaintiffs have pointed to no 'tips,' letters, or conversations raising inferences that [the auditor] knew of any fraud."). This is particularly so given that an inference of auditor recklessness is not warranted when "the accounting principle [at issue] was not a long-standing, well-recognized rule." *Funke v. Life Fin. Corp.*, 237 F. Supp. 2d 458, 468 (S.D.N.Y. 2002). The same is true in cases where "the applicable accounting principle may be simple [but] the application of that principle to the facts is complex." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 567 (S.D.N.Y. 2004).[14]

Instead, Plaintiffs rely on generic and conclusory allegations of "PWC's access to internal IMAX books and records" and "PWC's knowledge of the true nature of the theater systems" that cannot, as a matter of law, create an inference of scienter. *Zucker*, 963 F. Supp. at 309 (allegations of knowledge based on a defendant's "status as an auditor" insufficient to create an inference of scienter); *see also Rothman*, 220 F.3d at 98; *Nappier v. PricewaterhouseCoopers LLP*, 227 F. Supp. 2d 263, 276 (D.N.J. 2002) ("[An auditor's] role as [a company's] auditor is insufficient, by itself, to permit an inference that [the auditor] knew of these allegedly deceptive practices."); *Vladimir v. Deloitte & Touche LLP*, No. 95 Civ. 10319 (RPP), 2007 WL 151330 at *8 (S.D.N.Y. Mar. 31, 1997) (holding that plaintiffs' allegation that "Deloitte personnel were present at [the company's] corporate headquarters and financial offices and had continual access to and knowledge of [the

---

[14] The accounting principle at issue here, multiple element accounting, and its application to IMAX's theater installations are clearly complex. *See* EITF 00-21, Exh. A to the Conn Decl.

company's] . . . business information" constituted a "conclusory allegation insufficient to support a strong inference of deceit"). Nor does PwC-Canada's alleged failure to identify weaknesses in IMAX's internal controls support an inference of scienter. *See In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 450 (S.D.N.Y. 2005) ("Weak accounting controls may pave the way for fraud. They do not themselves constitute fraud. Accordingly, allegations regarding . . . 'red flags' do not suffice to create an inference of scienter . . .").

To raise an inference of scienter, Plaintiffs must, at a minimum, allege particularized facts indicating that, during its audits, PwC-Canada noted specific suspicious circumstances, became suspicious, but then did nothing to pursue its suspicions further. *See In re AOL Time Warner Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 240 n.51 (S.D.N.Y. 2004) (quoting *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1333 (M.D. Fla. 2002) ("'Red flags' are those facts which come to the attention of an auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors")). Put another way, Plaintiffs must allege particularized facts demonstrating that PwC-Canada was aware of, and ignored, "red flags" when it conducted its audit, *see Rothman*, 220 F.3d at 98; *see also Ziemba*, 256 F.3d at 1210, and the alleged facts "must be closer to smoking guns than mere warning signs." *Nappier*, 227 F. Supp. 2d at 278. The Consolidated Amended Complaint contains no such allegations and, as a result, fails to raise any inference of scienter, much less the strong inference required. *See Rothman*, 220 F.3d at 98; *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1185 (N.D. Cal. 2004) (dismissing complaint where plaintiffs pled no facts suggesting "that [the auditor] knew of such red flags and deliberately disregarded them").

**3. The inferences to be drawn from Plaintiffs' allegations are neither cogent nor as strong as the competing inferences**

As the Supreme Court made clear in *Tellabs*, it is not enough that the inferences urged by Plaintiffs be "merely plausible or reasonable – [they] must be cogent and at least as compelling as

any opposing inference of nonfraudulent intent." 127 S. Ct. at 2505. Plaintiffs would have this Court accept that:

> PwC-Canada, in the absence of any motive, approved IMAX's application of multiple element accounting to its theater system installations and issued unqualified audit opinions on IMAX's year-end financial statements for 2002 through 2005 with *conscious knowledge* that IMAX's application of multiple element accounting did not comply with GAAP and, accordingly, that PwC-Canada's audit opinions were materially false; or, alternatively, that
>
> PwC-Canada, in the absence of any motive, approved IMAX's application of multiple element accounting to its theater system installations and issued unqualified audit opinions on IMAX's year-end financial statements for 2002 through 2005 with a level of recklessness approaching an intent to aid IMAX in its alleged fraud or through the application of audit procedures so deficient as to amount to no audit at all.

As multiple courts have observed, "an accountant's greatest asset is its reputation for honesty, followed closely by its reputation for careful work." *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990), *cert. denied*, 498 U.S. 941, 111 S. Ct. 347, 112 L. Ed. 2d 312 (1990); *Zucker*, 963 F. Supp. at 308 (characterizing as "economically irrational" the inference that auditor would willingly condone client's fraud "at the risk of jeopardizing its reputation and license as well as the possibility of damages in an amount much greater than its fee" and concluding that "the Court need not credit such allegations"); *Price Waterhouse*, 797 F. Supp. at 1242 ("It is highly improbable that an accountant would risk surrendering a valuable reputation for honesty and careful work by participating in a fraud merely to obtain increased fees.") (citing *DiLeo*, 901 F.2d at 629). Accordingly, courts have rejected the "irrational inference" of fraudulent intent on the part of auditors even when, *as is not the case here*, financial motive is pled. *See Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994); *DiLeo*, 901 F.2d at 629 (concluding that "[i]t would have been irrational for any [defendant auditor's partners] to have joined cause" with defendant audit client and participate in the alleged fraud).

For the Court to credit either of Plaintiffs' proffered inferences, it would have to accept that PwC-Canada's audit personnel risked their careers, professional licenses and reputation, the professional reputation of PwC-Canada itself, and exposed themselves and their employer to potential criminal sanctions and/or civil damages, ***all in the absence of any alleged personal or firm-wide gain***. "One who believes that another has behaved irrationally has to make a strong case." *DiLeo*, 901 F.2d at 629. Here, Plaintiffs have failed to do so, and the inference that PwC-Canada acted honestly and, at most, negligently is far more cogent and compelling than the inference that PwC-Canada deliberately or recklessly, and without motive, acted fraudulently.[15] *Davidoff*, 2005 WL 2030501 at *17 ("With respect to the allegations of GAAP violations, which comprise the bulk of plaintiffs' . . . claims, ***this failure to allege motive is fatal*** because allegations of GAAP violations or accounting irregularities alone are insufficient to state a securities fraud claim without evidence of 'corresponding fraudulent intent.'") (emphasis added). Accordingly, Plaintiffs' Consolidated Amended Complaint against PwC-Canada must be dismissed. *See ATSI Communs.*, 493 F.3d at 104 (2d Cir. 2007) (affirming dismissal in light of "'plausible nonculpable explanation[]' for the defendants' actions that is more likely than any inference" of scienter) (quoting *Tellabs*, 127 S. Ct. at 2510). *See also Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) (affirming dismissal and characterizing a plaintiff's burden under *Tellabs* as "a higher standard than 'probable cause'"); *Winer Family Trust v. Queen*, No. 05-3622, 2007 WL 2753734 at *7 (3d Cir. Sept. 24, 2007) (affirming dismissal where proffered "inference is neither cogent, nor compelling, nor strong in light of competing inferences").

---

[15] Of course, allegations of negligence, even gross negligence, are not enough to support a Section 10(b) claim. *See Hochfelder*, 425 U.S. at 215; *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 624 (S.D.N.Y. 2005); *Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1014 (S.D. Cal. 2000), *aff'd sub nom.*, *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002).

**E. Plaintiffs Fail To Plead Adequately Loss Causation**

Plaintiffs cannot properly state a claim for relief under Section 10(b) unless they adequately allege that misrepresentations by PwC-Canada proximately caused their economic losses. *Dura*, 544 U.S. at 346. To do so, "[i]t is long settled that a securities-fraud plaintiff must prove both transaction and loss causation." *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 172 (2d Cir. 2005); *see also* 15 U.S.C. § 78u-4(b)(4) (PSLRA codification of loss causation requirement). "Establishing loss causation is critical because Section 10(b) is not meant to 'provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause.'" *In re Rhodia S.A. Sec. Litig.*, No. 1:05 Civ. 5389 (DAB), 2007 WL 2826651 at *15 (S.D.N.Y. Sept. 26, 2007) (quoting *Dura*, 544 U.S. at 345).

Loss causation is "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lattanzio v. Deloitte & Touche LLP,* 476 F.3d 147, 157 (2d Cir. 2007). To plead this critical element, Plaintiffs must allege "that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered, *i.e.*, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell*, 396 F.3d at 173. Failure to plead both that the falsity was revealed to the public *and* that the market reacted negatively to the disclosure is "fatal under Second Circuit precedent." *Id.* at 175.

**1. Plaintiffs must allege that their losses were caused by alleged false statements made by PwC-Canada**

For Plaintiffs to plead a Section 10(b) claim against PwC-Canada adequately, they must allege that their losses were caused by PwC-Canada's alleged misrepresentations, apart from misrepresentations allegedly made by any other defendant. *See Lattanzio*, 476 F.3d at 153 (considering whether an auditor caused a plaintiff's loss separately from the question of whether an issuer caused the loss); *Wright*, 152 F.3d at 174 ("[T]he misrepresentation must be attributed to *that*

*specific actor* at the time of public dissemination, that is, in advance of the investment decision.") (emphasis added); *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 676 (S.D.N.Y. 2007). The only statements actually made by PwC-Canada that Plaintiffs allege were false and misleading were contained within PwC-Canada's Audit Opinions – that IMAX's consolidated financial statements were fairly presented in accordance with GAAP; that IMAX maintained effective internal control over financial reporting; and that PwC-Canada performed its audits in accordance with GAAS and the standards of the PCAOB. *See* CAC at ¶¶ 187, 226-27. Thus, for Plaintiffs to plead loss causation as to PwC-Canada's alleged false statements, they must allege that (i) the above statements were false when made and that falsity was concealed from the market, (ii) they purchased IMAX stock after such statements were made, (iii) the falsity of the statements was revealed to the market, and (iv) the disclosure negatively affected the price of the stock. *See Lentell*, 396 F.3d at 173; *Wright*, 152 F.3d at 174.

**2. Plaintiffs cannot establish loss causation based on IMAX's public announcements made on August 9 or November 8, 2006**

"[I]t is axiomatic that a concealed fact cannot cause a decrease in the value of a stock before the concealment is made public." *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 296 (S.D.N.Y. 2006); *see also Lentell,* 396 F.3d at 175 n.4; *In re Rhodia*, 2007 WL 2826651 at *16. Thus, Plaintiffs could not have incurred any losses resulting from *PwC-Canada's* allegedly false and misleading statements contained within its Audit Opinions until the falsity of those statements was revealed to the market. Likewise, Plaintiffs could not have sustained any losses once the alleged falsity was revealed unless the market reacted negatively to the disclosure. *Lentell*, 396 F.3d at 173.

Plaintiffs allege that the falsity of PwC-Canada's statements was revealed on August 9, 2006, when IMAX issued a press release stating that the SEC had begun an informal inquiry "regarding the Company's timing of revenue recognition, including its application of multiple element arrangement accounting in its revenue recognition for theater systems." CAC at ¶ 115.

Plaintiffs make a similar allegation regarding IMAX's earnings conference call that same day and regarding IMAX's press release on November 8, 2006. CAC at ¶¶ 116, 124. However, IMAX's announcements regarding the SEC's informal inquiry did not reveal to the market that its historical financial statements might be, much less were, misstated, and cannot satisfy Plaintiffs' burden of pleading loss causation. *See, e.g., In re Avista Corp. Sec. Litig.*, 415 F. Supp. 2d 1214, 1219-20 (E.D. Wash. 2005) (holding insufficient under *Dura* allegations that Federal Energy Regulatory Commission's issuance of a show-cause order and announcement of possible enforcement action against defendant company constituted a corrective disclosure; "[s]ince the orders did not reveal any factual information showing [defendant] illegally manipulated the energy market or made factual representations, the FERC Orders do not provide a basis for asserting a causal relationship between [defendant's] alleged failure to disclose it manipulated the energy markets and Plaintiffs' alleged economic loss"); *Weiss v. Amkor Tech., Inc.*, No. CV 07-0278-PHX-PGR, 2007 WL 2808224 at *5-8 (N.D. Ariz. Sept. 25, 2007) (holding insufficient under *Dura* allegations that defendant company's disclosure that it was forming a special committee of its board of directors to investigate its stock option practices revealed to the market that defendant company's accounting for stock option grants and stock option controls, as the "press release [did] not signal, much less state, that any prior option grants were incorrect, that [defendant's] internal controls were weak, . . . or that prior financial statements were incorrect in any way").

Further, Plaintiffs ignore what actually was said in the press releases and on the conference call. The August 9, 2006 press release expressly stated, with respect to the application of multiple element accounting to theater system installations: "The Company believes its application of the above [multiple element] accounting policy is, and has historically been, in accordance with GAAP,

and the Company's position is supported by its auditors, PricewaterhouseCoopers LLP."[16] The same assurance regarding IMAX's accounting was given during the August 9, 2006 conference call (though omitted from the portion quoted by Plaintiffs at ¶ 116 of the Consolidated Amended Complaint) and in the November 8, 2006 press release. Thus, far from putting the market on notice that IMAX's accounting was in error or that its historical financial statements were misstated, these statements affirmed that IMAX's historical accounting was proper and that its financial statements were in accordance with GAAP. Therefore, the decreases in IMAX's stock price following the August 9 and November 8, 2006 disclosures are unrelated to the alleged false statements attributed to PwC-Canada, as the so-called "truth" concerning PwC-Canada's statements was not revealed by them. *In re eSpeed*, 457 F. Supp. 2d at 296 ("[I]t is axiomatic that a concealed fact cannot cause a decrease in the value of a stock before the concealment is made public.").[17]

### 3. Plaintiffs have failed to plead any losses from the disclosure of allegedly false statements made by PwC-Canada

It was not until March 16, 2007, before the markets opened, that IMAX disclosed that its prior audited financial statements were in error and would be restated and that the company expected to report material weaknesses in its internal controls. CAC at ¶ 126. Plaintiffs, however, do not allege any market reaction to IMAX's March 16, 2007 announcement.[18] Thus, at the time of

---

[16] The August 9, 2006 press release said nothing whatsoever about internal controls in effect during any period audited by PwC-Canada, though it reported a material weakness in internal control with respect to a transaction in the second quarter of 2006. *See* Section II.B, footnote 3, *supra*. The quarterly financial statements were not audited and, in any case, the transaction referenced had nothing to do with theater system installations.

[17] Here, there is plenty of other negative, company-specific information contained in the statements at issue to explain the ensuing decreases in IMAX's stock price. For example, on August 9, 2006, IMAX announced an informal inquiry by the SEC – never good news – and that it had failed in its effort to find a buyer for the company, at least at a price acceptable to the company's board. *See* Section II.B, footnote 3, *supra*. On November 8, 2006, IMAX announced a disappointing loss of 30 cents per share for the third quarter of 2006. *See* Section II.B, footnote 5, *supra*.

[18] That is not surprising. IMAX's closing stock price on March 15, 2007 on the NYSE was $4.99 per share. The stock closed on March 16, 2007 at $5.00 per share. *See* Section II.B, footnote 7, *supra*. Indeed, when IMAX issued its restated financial statements for 2002 through 2005 on July 20, 2007, its stock price ***rose*** $0.44 per share. *See id.*

the stock price declines alleged by Plaintiffs following IMAX's August 9 and November 8, 2006 disclosures, nothing was said to suggest that IMAX's prior audited financial statements were misstated. Then, when IMAX disclosed that its prior audited financial statements were in error and would be restated, the price of IMAX stock did not decline. Thus, Plaintiffs have failed to allege that any loss they experienced was caused by a misrepresentation on the part of PwC-Canada. For those reasons, as well, Plaintiffs' Consolidated Amended Complaint should be dismissed as to PwC-Canada.

## IV.
## CONCLUSION

For the foregoing reasons, Defendant PwC-Canada respectfully requests that this Court dismiss Plaintiffs' claims against it with prejudice and award such other and further relief as the Court deems appropriate.

Dated: New York, New York
December 10, 2007

GIBSON, DUNN & CRUTCHER LLP

By: ______________________
Jennifer L. Conn (JC-5753)

200 Park Ave., 47th Floor
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

M. Byron Wilder (*pro hac vice* motion pending)
Joshua P. Martin (*pro hac vice* motion pending)
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 698-3400

*Attorneys for Defendant PricewaterhouseCoopers LLP, an Ontario limited liability partnership*

100351369_1.DOC