UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE IMAX CORPORATION SECURITIES LITIGATION

Master File No. 06 Civ. 6128 (NRB)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT PRICEWATERHOUSECOOPERS LLP'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 698-3400

**ATTORNEYS FOR DEFENDANT PRICEWATERHOUSECOOPERS LLP, AN ONTARIO LIMITED LIABILITY PARTNERSHIP**

Defendant PricewaterhouseCoopers LLP, an Ontario limited liability partnership ("PwC-Canada"), respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint"), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, et seq. ("PSLRA").

## I.
## PRELIMINARY STATEMENT

In opposing PwC-Canada's Motion,[1] Plaintiffs fail to identify any *facts* set forth in the Complaint that would support a claim against PwC-Canada for violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j ("Section 10(b)"). Because Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA require Section 10(b) claims to be stated "with particularity," that failure must result in the dismissal of the claims against PwC-Canada.

Plaintiffs now concede that they can seek to impose Section 10(b) liability on PwC-Canada only for its "unqualified Audit Opinions with respect to IMAX's Class Period year-end financial statements." Pls. Opp. at 13. Thus, with respect to PwC-Canada, the only statements that are at issue are those contained in PwC-Canada's audit opinions for 2002 through 2005 (the "Audit Opinions").

As to those statements, Plaintiffs fail to plead any facts to show that the statements were made with the requisite scienter. The totality of Plaintiffs' scienter allegations against PwC-Canada is the bald, conclusory assertion that no reasonable auditor would have believed that IMAX's use of multiple element accounting was appropriate with respect to theater system components. Pls. Opp. at 33-34. Plaintiffs allege no motive for PwC-Canada to falsify its Audit Opinions, nor do they allege facts giving rise to a strong inference that PwC-Canada acted with intent to deceive or severe

---

1 Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Consolidated Class Action Complaint is referred to herein as "Opposition" or "Pls. Opp."

recklessness – much less facts giving rise to an inference that is cogent and at least as compelling as any inference of non-fraudulent intent. At best, Plaintiffs have alleged that a reasonable auditor would have reached a different conclusion as to IMAX's accounting. That might support a claim of negligence, but does not approximate an actual intent to defraud and, so, is insufficient here. *See In re Scottish Re Group Sec. Litig.*, No. 06 Civ. 5853 (SAS), 2007 U.S. Dist. LEXIS 81565 at *66 (S.D.N.Y. Nov. 1, 2007).

Moreover, Plaintiffs have not alleged that their alleged losses were caused by misstatements contained within PwC-Canada's Audit Opinions. When the need to restate IMAX's consolidated financial statements was announced, IMAX's share price did not decline.

## II.
## <u>ARGUMENT</u>

### A. Plaintiffs' Claims Are Limited to PwC-Canada's Audit Opinions on IMAX's Year-End Financial Statements For 2002 Through 2005

Plaintiffs concede, as they must, that PwC-Canada may not be held liable for statements that it did not make, and therefore they only seek to impose liability on PwC-Canada for its "issuance of unqualified Audit Opinions rendered with respect to IMAX's Class Period year-end financial statements." Pls. Opp. at 13. This limitation is required by Second Circuit authority and, to the extent Plaintiffs' allegations could be read to suggest that they seek to impose liability on PwC-Canada for statements made by others, such claims should be dismissed. *See, e.g., Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 478-79 (S.D.N.Y. 2006).

### B. Plaintiffs Fail to Allege Facts Supporting a Strong Inference of Scienter

The Complaint cannot survive dismissal unless Plaintiffs "plead facts that give rise to a 'strong' – *i.e.*, a powerful or cogent – inference" of scienter, and unless "a reasonable person would

deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007). Here, Plaintiffs fail to allege *any* facts that support an inference of scienter, much less a strong inference that is at least as compelling as any opposing inference.

Plaintiffs concede that they have pled no motive for PwC-Canada to falsify its Audit Opinions. Pls. Opp. at 35 (distinguishing cases cited by PwC-Canada on ground that "'motive' is not an essential component of scienter"). Moreover, Plaintiffs concede that they have not alleged any "red flags" that should have put PwC-Canada on notice that IMAX's accounting decisions were improper. *See id.* at 33 n.21.[2] Thus, Plaintiffs' claim against PwC-Canada boils down to the bald assertion that, presented with the facts to which PwC-Canada had access, no reasonable auditor would have believed that IMAX's use of multiple element accounting was appropriate for IMAX's theater system components. Pls. Opp. at 17, 33-34.

The *only* support Plaintiffs offer for their theory is the suggestion that the accounting principles at issue were so simple that anyone could have applied them correctly. *See* Pls. Opp. at 19-22, 31-35. Plaintiffs cite *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000), for the proposition that violation of simple accounting principles "creates a strong inference of scienter." Pls. Opp. at 19-20. In *MicroStrategy*, the court found that scienter was pled adequately against an auditor when, *in addition* to the alleged simplicity of the accounting principle at issue there (which was not multiple element accounting), there were allegations that the auditor disregarded numerous red flags and had violated the independence requirement by agreeing to sell MicroStrategy's products and act as a consultant regarding those products. 115 F. Supp. 2d at

2 In any case, allegations that an auditor failed to comply with GAAS are insufficient to give rise to liability for fraud. *In re BISYS Secs. Litig.*, 397 F. Supp. 2d 430, 450 (S.D.N.Y. 2005); *see also In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 584 (S.D.N.Y. 2007) (in fraud case, finding that "[a]llegations that an auditor failed to follow GAAS . . . do not alone support a claim of fraud. . . . Accordingly, the issue is not whether plaintiffs have alleged GAAS violations, but whether they have alleged facts indicating that those violations were motivated by or indicative or products of fraudulent intent.").

650-56. Nowhere in its opinion did the *MicroStrategy* court suggest that an alleged violation of GAAP alone, even if that violation concerned simple accounting principles, could raise a strong inference of scienter.[3] *See also Zucker v. Sasaki*, 963 F. Supp. 301, 307 (S.D.N.Y. 1997) ("The mere misapplication of accounting principles by an independent auditor does not establish scienter.").

Moreover, the accounting principle at issue here is not nearly as simple as Plaintiffs suggest. Although Plaintiffs disingenuously cite the principle that "revenue cannot be recognized before it is earned," that is not the principle at issue here. *See* Pls. Opp. at 19. The issue is, first, whether the components of an IMAX theater system are separate units of accounting under the multiple factors set forth in EITF 00-21 or under the other accounting literature referenced in paragraph 4(a) of EITF 00-21 and then, if they are, how the consideration paid by the customer should be allocated among the components.[4] Thus, this case is similar to *In re Bristol-Myers Squibb Secs. Litig.*, 312 F. Supp. 2d 549, 565-68 (S.D.N.Y. 2004), where the court dismissed a Section 10(b) claim for failure to plead scienter even though the plaintiffs had alleged that "'the GAAP provisions at issue are simple[,] and their violation obvious.'" The court noted that while "the applicable accounting principle might be simple, *i.e.*, whether all the risks and rewards of ownership transferred upon shipment of the goods, the application of that principle to the facts is complex." *Id.* at 567. Like the principle at issue in *Bristol-Meyers*, which required application of a "complex four-part test" to determine the appropriate accounting treatment, the principle in this case required complex

---

3 None of Plaintiffs' remaining cases help them either. In *In re Raytheon Sec. Litig.*, 157 F. Supp. 2d 131, 154-55 (D. Mass. 2001), the court dismissed a Section 10(b) claim against an auditor where "the plaintiff ha[d] not alleged facts which raise a strong inference of scienter on the part of PwC." *See also Nappier v. PricewaterhouseCoopers LLP*, 227 F. Supp. 2d 263, 278-82 (D.N.J. 2002) (dismissing Section 10(b) claim against auditor for failure to "offer allegations supporting a *strong* inference of scienter") (emphasis in original).

4 *See* EITF 00-21, attached as Exhibit A to the Declaration of Jennifer L. Conn in Support of Defendant PricewaterhouseCoopers LLP's Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("Conn Decl."). That the EITF addressed the question at all and that it required nearly three years of debate to reach a consensus further demonstrate that the issues involved in accounting for arrangements involving multiple deliverables are far from "simple."

judgments about whether IMAX's transactions met the criteria laid out in EITF 00-21. *See id.* at 567 & n.16; *see also Funke v. Life Financial Corp.*, 237 F. Supp. 2d 458, 468-71 (S.D.N.Y. 2002) (recommending dismissal of Section 10(b) claim where claim was based on the propriety of choosing one accounting treatment over another).

Plaintiffs have alleged no motive for PwC-Canada to risk destroying its professional reputation by participating in or recklessly disregarding a fraudulent scheme. They have alleged no "red flags" that should have put PwC-Canada on notice that multiple element accounting was not appropriate for IMAX's theater system components. They have alleged no audit procedures that PwC-Canada failed to undertake before opining that IMAX's consolidated financial statements complied with GAAP. Instead, the only "fact" that Plaintiffs have pled against PwC-Canada with any particularity is an alleged violation of GAAP – *i.e.* that PwC-Canada's initial accounting judgment turned out to be incorrect. That is grossly insufficient to support a strong inference of scienter. *See, e.g., Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[T]he failure of a non-fiduciary accounting firm to identify problems with the defendant-company's internal controls and accounting practices does not constitute reckless conduct sufficient for § 10(b) liability."); *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) ("Although the Complaint alleged that [the auditor] had violated various GAAP provisions, those allegations, without corresponding fraudulent intent, do not suffice to state a securities fraud claim.") (internal quotation marks omitted). Therefore, Plaintiffs' Section 10(b) claim against PwC-Canada must be dismissed.

### C. Plaintiffs' Claim Against PwC-Canada Must Be Dismissed For Failure to Plead Loss Causation

For Plaintiffs' Section 10(b) claims against PwC-Canada to survive dismissal, binding Second Circuit authority unequivocally requires that Plaintiffs establish a causal connection between PwC-Canada's alleged misrepresentations and Plaintiffs' losses. Alleged misrepresentations made by others will not suffice. *See Lattanzio*, 476 F.3d at 153 ("[T]o state a

§ 10(b) claim against an issuer's accountant, a plaintiff must allege a misstatement that is attributed *to the accountant* 'at the time of its dissemination, . . .'") (emphasis added); *Wright*, 152 F.3d at 174. Plaintiffs ignore this requirement and simply bundle all of their allegations of misrepresentations together as the alleged cause of their losses. *See* Pls. Opp. at 42 ("The Complaint alleges that *Defendants'* materially false and misleading Class Period statements regarding theater systems revenue and its [*sic*] recognition thereof caused Plaintiffs' losses.") (emphasis added). The only alleged misrepresentations attributable to PwC-Canada, however, are its Audit Opinions and, as to them, IMAX's August 9 and November 8, 2006 public announcements disclosed nothing indicating that they were false. Indeed, the announcements stated the opposite.[5]

Plaintiffs rely extensively on *In re Bradley Pharmaceuticals, Inc. Secs. Litig.*, 421 F. Supp. 2d 822 (D.N.J. 2006), to argue that their allegations of loss causation suffice.[6] There are, however, three important differences that distinguish *Bradley* from this case. First, *Bradley* did not involve allegations of misrepresentations in an auditor's opinion. Second, the disclosure of an SEC investigation in that case was unaccompanied by other company statements that could have caused the drop in stock price that followed. *Id.* at 824-25. Third, and importantly, the disclosure of the SEC investigation there was much more ominous and directly tied to securities law violations than was the case here -- Bradley issued a press release stating that the SEC was conducting an

---

5 *See* IMAX's August 9, 2006 press release, attached as Exhibit B to the Conn Decl. ("The Company believes its application of the above [multiple element] accounting policy is, and has historically been, in accordance with GAAP. . . .").

6 Plaintiffs cite two other cases in support of their loss causation argument, *In re Parmalat*, 501 F. Supp. 2d at 587, and *In re Tommy Hilfiger Sec. Litig.*, No. 04-CIV-7678, 2007 U.S. Dist. LEXIS 55088 (S.D.N.Y. July 20, 2007). It is unclear why Plaintiffs have cited *In re Parmalat*, as it is not a Section 10(b) case and the cited portion does not even arguably support their position. *In re Tommy Hilfiger* involves facts very similar to the *Bradley* case, discussed above, including a 22% stock price drop following the issuance of grand jury subpoenas to the company and several of its officers concerning the subject of the allegedly false statements in the Section 10(b) litigation. Thus, like *Bradley*, *In re Tommy Hilfiger* is unhelpful in addressing loss causation in this case.

"'informal inquiry relating to the Company to determine whether there *may have been violations of the federal securities laws*.'"[7] *See id.* (emphasis added).

This case is more analogous to *Weiss v. Amkor Technology*, No. CV 07-0278-PHX-PGR, 2007 U.S. Dist. LEXIS 71688, at *15-24 (D. Ariz. Sept. 25, 2007), where a company announced an internal investigation into the company's "historical stock option practices" amid other topics, some of which involved negative news. A 17% stock price drop immediately followed the announcements. *Id.* at *16. After the company later disclosed that, as a result of its investigation, it would have to restate its prior financial statements, suit was brought by shareholders of the company under Section 10(b). *See id.* at *18-19. The *Weiss* court dismissed the complaint for failure to plead loss causation adequately, finding that, as here, the initial public announcement said "nothing about prior alleged false statements," and did not "signal, much less state, that any prior option grants were incorrect, that Amkor's internal controls were weak, . . . or that prior financial statements were incorrect in any way." *Id.* at *21, 24. Because the stock price did not fall when the need to restate the company's prior financial statements was announced, plaintiffs had not adequately pled loss causation. *Id.* at *22-23; *see also In re Omnicom Group, Inc. Sec. Litig.*, No. 02 Civ. 4483 (WHP), 2008 U.S. Dist. LEXIS 6033, at *18 (S.D.N.Y. Jan. 29, 2008) ("[W]here a disclosure does not reveal the falsity of the alleged misstatements, it does not qualify as 'corrective.'"). "To prove loss causation, plaintiffs must distinguish the alleged fraud from the 'tangle of [other] factors' that affect a stock's price. While plaintiffs need not quantify the fraud-related loss, they must 'ascribe some rough proportion of the whole loss to [the alleged] misstatements.'" *In re Omnicom*, 2008 U.S. Dist. LEXIS 6033, at *20 (alterations in original; citations omitted).

---

[7] This is tantamount to stating that the SEC was conducting an investigation to determine whether Bradley had made material misstatements in its public filings.

The conclusions reached by the *Weiss* and *Omnicom* courts are equally applicable here. Because the August 9 and November 8, 2006 announcements did not reveal the alleged falsity of PwC-Canada's Audit Opinions, and because IMAX's stock price did not decline when IMAX disclosed that it would restate its previous financial statements or when those restated financials were issued, Plaintiffs have failed to plead loss causation as to their Section 10(b) claims against PwC-Canada.

## IV.
## CONCLUSION

For all of the reasons stated above and in PwC-Canada's opening memorandum of law, Defendant PwC-Canada respectfully requests that this Court dismiss Plaintiffs' claims against it with prejudice and award such other and further relief as the Court deems appropriate.

Dated: New York, New York
February 8, 2008

GIBSON, DUNN & CRUTCHER LLP

By: ______________________
Jennifer L. Conn (JC-5753)

200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

M. Byron Wilder (*pro hac vice* motion pending)
M. Cory Nelson (*pro hac vice* motion pending)
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 698-3400

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP, an Ontario limited liability partnership*

100378165_3.DOC