UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | Master File No. 06 Civ. 6128 (NRB) |

**PRICEWATERHOUSECOOPERS LLP'S SUPPLEMENTAL SUBMISSION PURSUANT TO AUGUST 12, 2008 LETTER FROM THE COURT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 698-3400

**ATTORNEYS FOR DEFENDANT PRICEWATERHOUSECOOPERS LLP, AN ONTARIO LIMITED LIABILITY PARTNERSHIP**

Defendant PricewaterhouseCoopers LLP, an Ontario limited liability partnership ("PwC-Canada") respectfully makes this submission pursuant to this Court's August 12, 2008 letter and in further support of its motion to dismiss.

This Court's August 12, 2008 letter requested that all parties "list each allegedly misrepresentative statement and the corresponding allegation and record evidence indicating the falsity of that statement." Although Plaintiffs make the conclusory allegation that PwC-Canada is liable for every alleged misstatement made during the class period, in their Complaint, Plaintiffs identify only two alleged misstatements actually attributed to PwC-Canada. Those are PwC-Canada's statements, contained in its audit opinions on IMAX's year-end financial statements for 2002 through 2005, that PwC-Canada conducted its audits in accordance with GAAS and the standards of the PCAOB and that, in PwC-Canada's opinion, IMAX's audited financial statements complied with GAAP. Consolidated Amended Complaint ("CAC") at ¶ 187. Plaintiffs allege that IMAX's restatement of its financial statements demonstrates the falsity of PwC-Canada's original audit opinions. *Id.* at ¶ 169.

Plaintiffs' allegations of falsity were accepted as true for purposes of PwC-Canada's Motion to Dismiss, but that does not change the fact that Plaintiffs have failed to plead scienter as to PwC-Canada. As explained in PwC-Canada’s previous submissions to the Court, the alleged errors attributed to PwC-Canada in the Complaint ("PwC failed to exercise due professional care, properly plan the audit, obtain sufficient competent evidential matter, properly assess the internal controls, and either properly consider the risk of fraud or properly incorporate its consideration of the risk of fraud into its audit procedures in its audit or the Company's December 21, 2002 through December 31, 2005 consolidated financial statements." *Id.* at ¶ 189) are, at most, allegations of simple negligence.

Plaintiffs also allege, as emphasized by their counsel at oral argument on defendants' motions to dismiss, that IMAX's description of its revenue recognition policy and, in particular, how IMAX applied multiple element accounting, as set forth in the footnotes to IMAX's year-end financial statements was incorrect. CAC at ¶¶ 51-59. In the footnotes to IMAX's 2002 through 2004 year-end financial statements,[1] IMAX stated that it "recognizes revenues from sales-type leases upon installation of the theater system. Revenue associated with a sales-type lease is recognized when all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; and collection is reasonably assured." 2002 IMAX Form 10-K at p. 44, n.2 (CAC ¶ 43); 2003 IMAX Form 10-K at p. 49, n.2 (CAC ¶ 46); 2004 IMAX Form 10-K at p. 54, n.2 (CAC ¶ 51).

Plaintiffs' counsel suggested at oral argument that those descriptions were false because IMAX recognized revenue on theater systems where the screen, according to Plaintiffs' counsel an essential element of the theater system, had not been installed. The Complaint, however, is devoid of any factual allegation that IMAX, in fact, recognized revenue in 2002 through 2004 on any theater systems before the screen was installed.

In 2005, when IMAX did apply multiple element accounting to its theater installations and, in some cases, recognized revenue on the installed elements of a theater system before other elements, such as the screen, were installed, that was disclosed in IMAX's financial statements:

> The Company's system sales and lease transactions typically involve the delivery of several products and services, including the projector, projection screen and sound system, supervision of installation, training of theater personnel, and advice on theater design and custom assemblies. In addition, on occasion, the Company will include film licenses or other specified elements as part of these transactions.

---

[1] IMAX described its revenue recognition policies and practices in other portions of the Forms 10-K as well, but PwC-Canada's audit opinions are limited to the audited financial statements. *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007).

> When the elements of theater systems meet the criteria for treatment as separate units of accounting, the Company generally allocates revenue to each element based on its relative fair value. Revenue allocated to an individual element is recognized when the revenue recognition criteria for that element is [sic] met.
>
> . . .
>
> The Company recognizes revenue from sales type leases when the installation of the respective theater system element is substantially complete and all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; and collection is reasonably assured.

2005 IMAX Form 10-K at p. 64, n.2 (emphasis added) (Exhibit B. to the Declaration of James C. Clark In Support of Defendants' Motion to Dismiss, Doc. 59).

Thus, in the year in which IMAX recognized revenue on installed elements of its theater systems[2] before all elements were installed, that fact was fully disclosed in its audited financial statements. Plaintiffs' allegations and arguments regarding IMAX's disclosure of its revenue recognition policy, therefore, add nothing to support a claim of scienter. Indeed, the disclosure of exactly what IMAX was doing adds credence to the inference that IMAX and PwC-Canada believed at the time that IMAX's revenue recognition policy in 2005 was proper and that they were, at most, mistaken. IMAX's restatement does not suggest otherwise particularly where, as here, Plaintiffs concede that they have not alleged any motive to commit wrongdoing on PwC-Canada's part. "[A]llegations of GAAP violations or accounting irregularities alone are insufficient to state a securities fraud claim without evidence of 'corresponding fraudulent intent.'" *Davidoff v. Farina*, 04 Civ. 7617 (NRB), 2005 U.S. Dist. LEXIS 17638, at *55 (S.D.N.Y. Aug. 22, 2005); *see also Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim").

---

[2] Plaintiffs allege that IMAX did so during certain quarters in 2006 as well, but PwC-Canada issued no opinions on IMAX's quarterly financial statements and Plaintiffs do not allege that PwC-Canada did so.

For these reasons and the reasons explained in PwC-Canada's previous submissions, Defendant PwC-Canada respectfully requests that this Court dismiss Plaintiffs' claims against it with prejudice.

Dated: August 18, 2008

Respectfully submitted,

/s/ M. Byron Wilder

Jennifer L. Conn (JC-5753)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

M. Byron Wilder (admitted *pro hac vice*)
M. Cory Nelson (admitted *pro hac vice*)
Samantha A. (Ferris) Lunn (admitted *pro hac* vice)
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 698-3400

*Attorneys for Defendant PricewaterhouseCoopers LLP, an Ontario limited liability partnership*

100501694_2.DOC