ABBEY SPANIER RODD & ABRAMS, LLP
ATTORNEYS AT LAW

212 EAST 39TH STREET
NEW YORK, NEW YORK 10016
PHONE 212 889 3700
FAX 212 684 5191
www.abbeyspanier.com

JILL S. ABRAMS
jabrams@abbeyspanier.com

August 18, 2008

**Via Messenger**

The Honorable Naomi Reice Buchwald
United States Courthouse
500 Pearl Street, Room 2270
New York, New York 10007-1312

**Re: In re IMAX Corp. Securities Litigation,
Master File No. 06-CV-6128 (NRB)**

Dear Judge Buchwald:

We represent Lead Plaintiff Westchester Capital Management, Inc. ("Lead Plaintiff') in the above-captioned action and we write in response to the Court's August 12, 2008 letter.

**The Misrepresentative Statements**

The chart annexed as Attachment A is submitted in response to the Court's request that the parties list each allegedly misrepresentative statement, the corresponding allegation and record evidence that indicates the falsity of the statement. We have organized our response by separating the allegations relating to the IMAX Defendants into the three types of misrepresentations alleged in our Complaint: a) those relating to IMAX's violation of its stated revenue recognition policy which was to recognize revenue on the installation of its theater systems; b) those relating to the inapplicability of multiple element arrangement ("MEA") accounting to IMAX's theater systems, IMAX's improper application of MEA and the resulting premature recognition of revenue in violation of its own stated accounting policy and of GAAP during the Class Period, and IMAX's failure to disclose the relevant requirements for such application in 2004 and 2005; and c) those relating to the adequacy of IMAX's of internal controls. We have included a separate section for misrepresentations made by PWC a) in its unqualified audit opinions on IMAX's 2002-2005 financial statements and b) with respect to the adequacy of IMAX's internal controls.

We have referred to pertinent portions of the Complaint that specifically identify the misrepresentations. Where the relevant SEC document or IMAX press release is not cited in the text of an allegation, we have provided a citation thereto. We have also cited additional supporting allegations which we believed would be useful to the Court's analysis.[1]

---

[1] The Complaint contains numerous allegations regarding misrepresentations made in IMAX's press releases, earnings conference calls, quarterly and yearly financial filings.

The record evidence of the falsity of the statements is reflected in numerous allegations throughout the Complaint concerning IMAX's July 5, 2007 and July 20, 2007 press releases addressing the Restatement and IMAX's Form 10-K for the year ended December 31, 2006 (which included the restatement of its financial results for fiscal years 2002 to 2005) ("Restatement"), filed with the SEC on July 20, 2007. We have provided limited examples of that evidence to avoid repetition. Attachment B consists of selected pages of the Restatement which we have highlighted in yellow as record evidence of the falsity of Defendants' statements.

**Statements by IMAX at Oral Argument**

Due to inconsistencies between the public record (the Complaint, Defendants' public statements and the applicable accounting literature) and certain statements made by counsel for IMAX during the course of the August 5, 2008 argument on Defendants' motions to dismiss Plaintiffs' Complaint, we believe clarification thereof to be appropriate.

During oral argument, IMAX's counsel made arguments that were never advanced in Defendants' briefing on the motions to dismiss.[2] Included therein was the position that IMAX had restated its 2002-2004 historical financials in light of a "new" revenue recognition policy rather than to correct an accounting error.[3] Tr. At 171,1. 8-10. However, under the accounting literature, a Company only restates its financials if it has committed an error in the application of the accounting policy that existed at the time the subject financial statements were issued, i.e. 2002-2004.

A company's financial statements are restated when there is an *error* in the *previous* application of its accounting policy such that those financial statements are deemed to have been materially misstated. Pursuant to Opinion 20 of the Accounting Principles Board ("APB 20") when such an error is identified, the company is *required* to correct that error by restating its financials for the prior period. ¶¶178-179. Thus, any suggestion by IMAX's counsel that the restatement of any portion of the Class Period financials was a result of some "new" policy is inconsistent not only with the accounting literature, but also with its own disclosures regarding the Restatement and the Restatement itself, dated July 20, 2007.

---

2 This new argument can not overcome the clear language of signed documents submitted to the S.E.C. which compromise the record upon which the Court and the parties are entitled to, and must, rely on for this motion to dismiss.

3 During oral argument, for the first time, IMAX's counsel addressed instances "where we did not receive a certificate of acceptance from the theater within the period where we recognized revenue" (Tr.27) which, he said was "not required by GAAP but something that new accounting policy requires."(Tr.26). In response to that argument, we note that under SAB 101, "when contractual customer acceptance provisions exist, the staff generally believes that the seller should not recognize revenue until customer acceptance occurs or the acceptance provisions lapse." Certainly, if such sign-off was required by IMAX's contracts for its costly theater systems (as common sense would indicate), the failure to obtain customer sign-off (and resulting GAAP violation) was easily determinable both by IMAX and PWC. The lack of such sign-off would indicate their awareness of the violation of GAAP with respect to those theater systems.

For example, IMAX's July 5, 2007 press release states, in pertinent part:

> The Company reported that, with regard to its accounting review in connection with revenue recognition for the years **2002-2006 ...** These revisions will be treated as the acceptance of an **error.**

(emphasis added).

The following portion of IMAX's July 20, 2007 press release announcing the Restatement, quoted in ¶39 of the Complaint, specifically states that IMAX corrected *prior* violations of its *previously* existing accounting policies, including 2002 through 2004:

> Consequently, the Company concluded that **errors occurred in its prior accounting for theatre systems,** has revised its policy with regard to revenue recognition for theatre systems, and restated its financial results in accordance with the revised policy. The revised policy has the effect of shifting theatre systems revenues from the period in which they were previously reported to subsequent periods. **The impact of these errors resulted in a net overstatement of aggregate earnings previously reported for the periods 2002 through 2005** of $10.4 million. The operating results for 2006 include the recognition of income resulting from the restatement of $7.4 million, meaning that the net earnings impact on future periods is $3.0 million. It is anticipated that, of that $3 million in net impact, the majority will be recognized in income in 2007. *Breaking it down further, a total of 16 installation transactions with a total revenue and margin impact of $25.4 million and $14.1 million, respectively, shifted between reported quarters in their originally reported years. In addition, a total of 14 installation transactions, with a total revenue and margin impact of $27.1 million and $14.0 million, respectively, shifted between fiscal years.*

(emphasis added).

Likewise, the Restatement itself, at page 33, contains a summary table of the impact of the Restatement on the audited consolidated financial statements for 2002 to 2005, with separate line entries for the theater systems for each year. The accompanying footnote describes the table as presenting the "net impact of these *restatement errors* related to the years *2002 to 2005*." The Complaint includes that table in paragraph 146. A copy of page 33 of the Restatement is included in Attachment B.

These excerpts from IMAX's own documents make it clear that IMAX's 2002-2004 financial statements were restated due to the correction of the accounting errors of which Plaintiffs complain. These excerpts also belie the statement by IMAX's counsel, at page 27 of the oral argument transcript, that the reason for the restatement of IMAX's 2002-2004 financial statements was to make the "financial statements all comparable with one another" and "that's what we told the investing public." The Restatement was prompted by government investigations

and required by the accounting literature and the acknowledgement that the accounting for IMAX's 2002-2005 theater system revenue was in error.

Based on the arguments and submissions made to the Court, Plaintiffs respectfully submit that a weighing of the competing inferences herein must result in a denial of Defendants' motions to dismiss the Complaint.

Respectfully submitted,

Jill S. Abrams

JSA:lk
Enclosures

cc: All Counsel (via facsimile and regular mail)

Attachment A

**Attachment A**

**IMAX Defendants**

**Misstatement #1: IMAX violated its own stated revenue recognition policy, which was to recognize revenue on the installation of its theater systems.**

| **Misrepresentative Statement** | **Corresponding Allegations** | **Record Evidence of the Falsity** |
|---|---|---|
| 2002 Form 10-K (pages 23 and 44)<br>• "The Company recognizes revenues from sales-type leases upon installation of the theater system.[1] Revenue associated with a sales-type lease is recognized when all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; and collection is reasonably assured."<br>• "Revenue from sales of theater systems is recognized when all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; title passes to the customer; installation of the system is complete; and collection is reasonably assured."<br><br>2003 Form 10-K (pages 24, 49)<br>• "The Company recognizes revenues from sales-type leases upon installation of the theater system. Revenue associated with a sales-type lease is recognized when all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; and collection is reasonably assured."<br>• "Revenue from sales of theater systems is recognized when all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; title passes to the customer; installation of the system is complete; and collection is reasonably assured."<br><br>2004 Form 10-K (pages 25, 53-54)<br>• "The Company recognizes revenues from sales and sales-type leases generally upon installation of the theater system. Revenue associated with a sale or sales-type lease is recognized when all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; and collection is reasonably assured."<br><br>2005 Form 10-K (pages 34 and 64)<br>• "The Company recognizes revenue from sales and sales type leases when the installation of the respective theater system element is substantially complete and all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; and collection is reasonably assured." | ¶40. Throughout the Class Period, IMAX publicly stated that revenue from theater systems sales and sales-type leases was recognized upon installation of the theater system. However, as the Company was ultimately forced to disclose, this was not the case; ¶42. Beginning in 2000 and continuing thereafter, revenue from theater system sales and lease agreements (the latter sometimes being referred to as "sales-type leases") was purportedly recognized at the time of the theater system installation rather than delivery; ¶¶43,44, 46. Each of the Company's Forms 10-K for the years ended December 31, 2002 through 2005 stated that IMAX only recognized revenue on its theater systems from sales type leases when all of the criteria set forth in SAB 101 were met; ¶45.FASCON 5 required revenue to be realized and earned" to be recognized: ¶¶56-59. The Restatement revealed that IMAX had improperly recognized revenue on individual components of its theater system prior to | July 5, 2008 IMAX Press Release ¶138.<br><br>July 20, 2008 IMAX Press Release ¶139.<br><br>2006 Form 10-K ("Restatement") ¶140;<br><br>Restatement pp. 2,32-33,38,71-72,91,95-96 (Attachment B) |

[1] IMAX's 2005 Form 10-K filed with the SEC on March 9, 2006 ("2005 Form 10-K") disclosed that the Company's "theater systems" include all of the following elements: "specialized projection equipment, advanced sound systems, specialty screens, theater automation control systems and film handling equipment." ¶35. *See* also 2002 Form 10-K (page 5); 2003 Form 10-K (page 5); 2004 Form 10-K (page 5); 2005 Form 10-K (page 5); 2006 Form 10-K, (Footnote 2)(A "System Deliverable" is defined by IMAX as the projection system, sound system, screen system and, if applicable, the 3D glasses cleaning machine, theater design support, supervisions of installation, projectionist training and the use of the IMAX brand, generally to be a single deliverable and a single unit of accounting). ¶47

| | | |
|---|---|---|
| | installation of the whole system; ¶¶93-94. Reports send to management indicated theater system installation dates. | |
| | | |
| **Misrepresentative Statement** | **Corresponding Allegation** | **Record Evidence of the Falsity** |
| Q3 2004 IMAX Corporation Earnings Conference Call (page 1)<br>• "In fact, we signed more theater systems in the third quarter, than in the entire year of 2001, and as you know, *although we recognize revenues at the time of installation…*" (Emphasis added). | ¶84. During the Company's October 28, 2004 Earnings Conference Call, "Wechsler misrepresented that 'we recognize revenue at the time of installation." | July 5, 2008 IMAX Press Release ¶138.<br><br>July 20, 2008 IMAX Press Release ¶139.<br><br>2006 Form 10-K ("Restatement") ¶140;<br><br>Restatement pp. 2, 32-33,38,71-72,91,95-96 (Attachment B) |
| IMAX's financial results, as reported quarterly and yearly, were materially overstated because its theater systems revenue and earnings were materially overstated. This included IMAX's 2003 financial results which repeated and /or referred to the 2002 results. | ¶¶ 60-62 address the false statements; ¶¶143-147 describe revenue and earnings impact of Restatement for 2002-2005. | July 5, 2008 IMAX Press Release ¶138.<br><br>July 20, 2008 IMAX Press Release ¶139;<br><br>2006 Form 10-K ("Restatement") ¶140;<br><br>Restatement pp. 2, 32-33,38, 71-72,91,95-96 (Attachment B) |

**Misstatement #2. While IMAX represented that it was recognizing revenue in accordance with GAAP in that it was recognizing revenue on the installation of the theater system, this was untrue. By improperly applying multiple element arrangement ("MEA") accounting, it was prematurely recognizing revenue on theater system components rather than recognizing revenue on installation. In applying MEA to individual components of the IMAX theater systems, IMAX violated GAAP and IMAX's own stated accounting policy. In 2004 and 2005, IMAX covered up the inapplicability of MEA to theater systems by repeating the SAB requirements for revenue recognition while failing to disclose the stringent requirements of EITF 0021.**

| Misrepresentative Statement | Corresponding Allegation | Record Evidence of the Falsity |
|---|---|---|
| 2002 Form 10-K (pages 23 and 44)<br>• "The Company recognizes revenues from sales-type leases upon installation of the theater system. Revenue associated with a sales-type lease is recognized when all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; and collection is reasonably assured."<br>• "Revenue from sales of theater systems is recognized when all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; title passes to the customer; installation of the system is complete; and collection is reasonably assured."<br><br>2003 Form 10-K (pages 24, 49)<br>• "The Company recognizes revenues from sales-type leases upon installation of the theater system. Revenue associated with a sales-type lease is recognized when all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; and collection is reasonably assured."<br>• "Revenue from sales of theater systems is recognized when all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; title passes to the customer; installation of the system is complete; and collection is reasonably assured."<br><br>2004 Form 10-K (pages 25, 53-54)<br>• "The Company recognizes revenues from sales and sales-type leases generally upon installation of the theater system. Revenue associated with a sale or sales-type lease is recognized when all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; and collection is reasonably assured."<br><br>2005 Form 10-K (pages 34 and 64)<br>• "The Company recognizes revenue from sales and sales type leases when the installation of the respective theater system element is substantially complete and all of the following criteria are met: persuasive evidence of an agreement exists; the price is fixed or determinable; and collection is reasonably assured."[2] | ¶40. "…this piecemeal revenue recognition (i.e. MEA) violated GAAP, and neither the fact that the accounting treatment was inappropriate (since IMAX's theater systems were ineligible for multiple element accounting) nor the ramifications of the improper accounting were fully disclosed to the public until the Company announced its restatement on July 20, 2007."; ¶47 For IMAX, revenue relating to its theater system (i.e. System Deliverable) "sales" were not realizable and earned until *all* components were delivered and installed since all components of the System Deliverable were required before the system was substantially complete and functional.; ¶¶48-50 EITF 00-21 addressed how to determine whether in an arrangement with multiple deliverables, the delivered items can be considered separate units of accounting; The components were not paid for separately, were the property of IMAX, were proprietary and had no standalone value; ¶54. During the Class Period, IMAX recognized revenue | July 5, 2008 IMAX Press Release ¶138.<br><br>July 20, 2008 IMAX Press Release ¶139.<br><br>2006 Form 10-K ("Restatement") ¶140;<br><br>Restatement pp. 2,32-33,38,71-72,91,95-96 (Attachment B) |

[2] It is important to note that while Defendants try to argue that this language somehow alerted the reader to the use of MEA for theater systems, the 2004 and 2005 Forms 10-K cite the identical requirements of SAB 101 for revenue recognition on theater systems installation as did IMAX's prior Forms 10-K cited above("persuasive evidence of an agreement",

| | | |
|---|---|---|
| | on components of numerous theater systems before they were installed…IMAX's theater systems were not comprised of multiple deliverables, and could not be treated as such, or revenue recognized on components thereof, under either SAB 101 or EITF 00-21…" The components were not paid for separately, were the property of IMAX, were proprietary and had no standalone value;; ¶59. IMAX "improperly recognized revenue on individual components of its theater systems prior to installation of the whole system. Because the elements of an IMAX theater are actually a single unit of accounting (i.e. System Deliverable), it was improper to segregate the System Deliverable into its components for revenue recognition purposes under EITF 00-21 for fiscal 2004 through the end of the Class Period, and improper to do so throughout the Class Period under FASCON 5 and SAB No. 1. Rather, revenue should not have been recognized until the System Deliverable was complete in its entirety." ¶¶35-38(describing characteristics of the theater systems); ¶¶117-118 provide specific examples of improper revenue recognition for incomplete theater systems; ¶¶141-142. Theater system is an integrated system, single deliverable and single unit of accounting. | |

etc). Yet, IMAX *never disclosed* that it must satisfy the very specific and stringent requirements of EITF 00 21 in 2004 and 2005 in order to properly recognize theater system revenue under MEA and GAAP. Those requirements are addressed in ¶¶50.See also ¶¶35-38, 40 and 54.

| **Misrepresentative Statement** | **Corresponding Allegation** | **Record Evidence of the Falsity** |
|---|---|---|
| 2004 Form 10-K (page 26 and 53)<br>• "Multiple Element Arrangements<br><br>*On occasion, the Company will include film licenses or other specified elements as part of system sales or lease agreements.* When separate prices are listed in a multiple element arrangement, these prices may not be indicative of the fair values of those elements because the prices of the different components of the arrangements may be modified through negotiation although the ¶¶aggregate consideration may not. *Revenues under these arrangements are allocated based upon the estimated relative fair values of each element."*<br><br>*"In the normal course of its business, the Company will have customers who, for a number of reasons are unable to proceed with theater construction or wish to modify the terms of an existing arrangement.* There is typically deferred revenue involved with these arrangements representing initial cash payments in advance of the default, settlement or modification of the arrangement. Pursuant to the policies discussed above, the total consideration to be received in these situations is allocated to each individual element of the settlement or modification arrangement based on the relative fair values of each element." | ¶¶51, 52. The Company's initial reference to MEA was provided in Item 7 of the Management Discussion and Analysis section of its 2004 Form 10-K. However, a reasonable reader of the 2004 10-K is led to believe that MEA was being applied in only the limited circumstances indicated by the italicized language. IMAX's discussion fails to disclose that it was actually applying MEA to its theaters systems, which were ineligible for MEA treatment under the requirements of EITF 0021(¶¶48-50) and overstating its revenue and earnings thereby. | July 5, 2008 IMAX Press Release ¶138.<br><br>July 20, 2008 IMAX Press Release ¶139.<br><br>2006 Form 10-K Restatement ¶140;<br><br>Restatement pp.2,32-33,38,71-72,91,95-96 (Attachment B) |
| | | |
| 2005 Form 10-K (page 35)<br><br>Where *these agreements [*referring to customers who "*are unable to, or elect not proceed with systems installation*…the initial lease payments that the customer previously made to the Company are typically recognized as revenue" or where the Company agreed *to terminate an existing lease agreement in favor of signing "new MPX systems agreements*."] have multiple elements meeting the criteria for treatment as separate units of accounting, the total consideration to be received in these situations generally is allocated to each individual element based on the relative fair values of each element. Each element is then accounted for based on applicable revenue recognition criteria. | ¶55. Similar to the2004 Form 10-K cited above, the 2005 Form 10-K continued to mislead investors because it appeared to be applying multiple element accounting in only these limited circumstances indicated by the italicized language. IMAX's discussion fails to disclose that it was actually applying MEA to its theaters systems, which were ineligible for MEA treatment under the requirements of EITF 0021(¶¶48-50) and overstating its revenue and earnings thereby. | July 5, 2008 IMAX Press Release ¶138;<br><br>July 20, 2008 IMAX Press ¶139;<br><br>2006 Form 10-K ("Restatement") ¶140;<br><br>Restatement pp.2,32-33,38,71-91,95-96 (Attachment B) |

**IMAX Defendants**

**Misstatement #3: Defendants' statements that there were no material weaknesses in internal control over financial reporting as of December 31, 2004 and December 31, 2005 were false and misleading.**

| **Misrepresentative Statement** | **Corresponding Allegation** | **Record Evidence of the Falsity** |
|---|---|---|
| 2004 Form 10-K (Management's Annual Report On Internal Control Over Financial Reporting)(page 86).<br>• Management has assessed the effectiveness of the Company's internal control over financial reporting, as at December 31, 2004, and has concluded that such internal control over financial reporting was effective as of that date. Additionally, based on the Company's assessment, the Company determined that there were no material weaknesses in internal control over financial reporting as of December 31, 2004.<br><br>2005 Form 10-K (Management's Annual Report On Internal Control Over Financial Reporting)(page 100).<br>• Management has assessed the effectiveness of the Company's internal control over financial reporting, as at December 31, 2005, and has concluded that such internal control over financial reporting was effective as of that date. Additionally, based on the Company's assessment, the Company determined that there were no material weaknesses in internal control over financial reporting as of December 31, 2005. | ¶150. According to the 2006 Form 10-K, during the course of the year-end 2006 audit, the Company and defendant PWC identified a number of material weaknesses in the Company's internal controls, including among others, weaknesses related to the Company's revenue recognition policies. The Company specifically concluded, and PWC concurred, in the Company's 2006 Form 10-K, that its internal control over financial reporting and its disclosure controls and procedures were *not* effective.<br><br>¶154. In its 2004 and 2005 Forms 10-K, IMAX's management concluded that the Company maintained effective internal controls over financial reporting. *See also* ¶¶159-161.<br><br>¶161. IMAX management's failure to identify control deficiencies (i.e., material weaknesses) existing at the company prior to 2006 rendered management's 2004 and 2005 Annual Reports on Internal Controls over Financial Reporting materially false and misleading. | 2006 Form 10-K ("Restatement") (pages 146-149)<br><br>By way of the Restatement the Company admitted that its internal control over financial reporting (for the period from 2002 through third quarter 2006) was not effective, particularly surrounding the Company's internal controls related to revenue recognition.<br><br>IMAX's management's Annual Report on Internal Control over Financial Reporting, as disclosed in its 2006 Form 10-K stated, in relevant part: "Management is responsible for establishing and maintaining adequate internal control over financial reporting for the Company.... Based on this assessment, management has concluded that such internal control over financial reporting was *not* effective as of December 31, 2006 due to the material weaknesses identified and discussed below...." |

**PWC**

**Misstatement #1: PWC issued unqualified audit opinions for 2002 to 2005 that materially misrepresented that IMAX's financial statements presented IMAX's fiancial position in accordance with GAAP and that it had conducted GAAS audits.**

| Misrepresentative Statement | Corresponding Allegation | Record Evidence of the Falsity |
|---|---|---|
| 2002 Form 10-K – PWC Audit Opinion (page 36)<br>• "We conducted our audits in accordance with auditing standards generally accepted in the United States....In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Company as at December 31, 2002 and 2001 and the results of its operations and cash flows for each year in the three–year period ended December 31, 2002 in accordance with accounting principles generally accepted in the United States."<br><br>2003 Form 10-K – PWC Audit Opinion (page 41)<br>• "In our opinion, the consolidated financial statements listed in the index appearing under Item 15(a)(1) present fairly, in all material respects, the financial position of IMAX Corporation (the "Company") as at December 31, 2003 and 2002, and the results of its operations and cash flows for each of the three years in the period ended December 31, 2003 in conformity with accounting principles generally accepted in the United States of America....We conducted our audits of these statements in accordance with auditing standards generally accepted in the United States of America, which require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement."<br><br>2004 Form 10-K – PWC Audit Opinion (page 44)<br>• "In our opinion, the consolidated financial statements listed in the accompanying index, present fairly, in all material respects, the financial position of IMAX Corporation (the "Company") and its subsidiaries at December 31, 2004 and December 31, 2003, and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2004 in conformity with accounting principles generally accepted in the United States of America..... We conducted our audits of these statements in accordance with the standards of the Public Company Accounting Oversight Board (United States)."<br><br>2005 Form 10-K – PWC Audit Opinion (page 55)<br>• "In our opinion, the consolidated financial statements listed under the accompanying index, present fairly, in all material respects, the financial position of IMAX Corporation (the "Company") and its subsidiaries at December 31, 2005 and December 31, 2004, and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2005 in conformity with accounting principles generally accepted in the United States of America....We conducted our audits of these statements in accordance with the standards of the Public Company Accounting Oversight Board (United States)." | ¶¶149, 169-170, 184,185, 187, 189 | July 5, 2008 IMAX Press Release ¶138;<br><br>July 20, 2008 IMAX Press Release ¶139;<br><br>2006 Form 10-K – ("Restatement") ¶140;<br><br>Restatement pp. 2,32-33,38,71-72,91,95-96 (Attachment B) |

**Defendant PWC**

**Misstatement #2: The statements that the Company maintained effective internal controls over its financial reporting were materially false and misleading.**

| | | |
|---|---|---|
| 2004 Form 10-K (page 44).<br>• Also, in our opinion, management's assessment, included in Management's Annual Report on Internal Control over Financial Reporting appearing in Item 9A, that the Company maintained effective internal control over financial reporting as of December 31, 2004 based on criteria established in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO), is fairly stated, in all material respects, based on those criteria. Furthermore, in our opinion, the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2004, based on criteria established in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).<br><br>2005 Form 10-K (page 55).<br>• Also, in our opinion, management's assessment, included in Management's Annual Report on Internal Control over Financial Reporting appearing in Item 9A, that the Company maintained effective internal control over financial reporting as of December 31, 2004 based on criteria established in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO), is fairly stated, in all material respects, based on those criteria. Furthermore, in our opinion, the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2005, based on criteria established in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). | ¶¶150, 162-170. | ¶ 138 (July 5, 2008 IMAX Press Release)<br><br>¶139 (July 20, 2008 IMAX Press Release)<br><br>¶140 2006 From 10-K ("Restatement")<br><br>Restatement at pp. 2, 32-33, 38, 71-72, 91, 95-96 (Attachment B) |

Attachment B

10kWIZARD
SEC POWER SEARCH

# FORM 10-K

## IMAX CORP - IMAX

**Filed: July 20, 2007 (period: December 31, 2006)**

Annual report which provides a comprehensive overview of the company for the past year

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**WASHINGTON, D.C. 20549**

# FORM 10–K

**(Mark One)**

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2006**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**Commission file Number 0–24216**

# IMAX Corporation
*(Exact name of registrant as specified in its charter)*

| **Canada** | **98–0140269** |
|---|---|
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification Number)* |
| **2525 Speakman Drive, Mississauga, Ontario, Canada** | **L5K 1B1** |
| *(Address of principal executive offices)* | *(Postal Code)* |

*Registrant's telephone number, including area code:* **(905) 403–6500**

*Securities registered pursuant to Section 12(b) of the Act:*

| Title of each class | Name of exchange on which registered |
|---|---|
| **Common Shares, no par value** | **The NASDAQ Stock Market LLC** |

*Securities registered pursuant to Section 12(g) of the Act:*

**None**
*(Title of class)*

Indicate by check mark if the registrant is a well–known seasoned issuer, as defined in Rule 405 of the Securities Act Yes ☐ No ☑

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐ No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☐ No ☑

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S–K is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10–K or any amendment to this Form 10–K ☑

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non–accelerated filer. See definition of "accelerated filer" and "large accelerated filer" in Rule 12B–2 of the Exchange Act

Large Accelerated Filer ☐ Accelerated Filer ☑ Non–Accelerate Filer ☐

Indicate by check mark whether the registrant is a shell Company (as defined in Rule 12b–2 of the Act). Yes ☐ No ☑

The aggregate market value of the common shares of the registrant held by non–affiliates of the registrant, computed by reference to the last sale price of such shares as of the close of trading on June 30, 2006 was $330.23 million (36,051,314 common shares times $9.16).

As of June 30, 2007, there were 40,288,074, common shares of the registrant outstanding.

Table of Contents

IMAX CORPORATION

## EXPLANATORY NOTE TO ANNUAL REPORT ON FORM 10-K

IMAX Corporation together with its wholly-owned subsidiaries (the "Company") previously announced its intention to restate its consolidated financial statements for the years ended December 31, 2002, 2003, 2004 and 2005, and the first nine months of 2006.

The consolidated statements of operations, shareholders' equity (deficit) and cash flows for the years ended December 31, 2005 and 2004, and the consolidated balance sheet as of December 31, 2005, including the applicable notes, contained in this Annual Report on Form 10-K, have been restated. The Company has also included in this report restated unaudited consolidated financial information for each of the first three quarters of 2006 and each of the quarters of 2005. The Company has also included in this report restated summary and selected financial information for the years ended December 31, 2003 and 2002.

For a description of the restatements, see note 4 to the accompanying audited consolidated financial statements in Item 8, Item 6. Selected Financial Data and "Restatement of Previously Issued Financial Statements" and "Material Weaknesses" in Item 7. Management's Discussion and Analysis of Financial Condition and Results of Operation contained in this Annual Report on Form 10-K.



Source: IMAX CORP, 10-K, July 20, 2007

Table of Contents

IMAX CORPORATION

**Item 6. Selected Financial Data**

*(In thousands of U.S. dollars, except per share amounts)*

The selected financial data set forth below is derived from the consolidated financial information of the Company. The financial information has been prepared in accordance with U.S. GAAP. All financial information referred to herein is expressed in U.S. dollars unless otherwise noted.

As explained in note 4 to the audited consolidated financial statements included in Item 8, the Company has identified certain errors related to: (a) revenue recognition, resulting from the Company's review of its theater system arrangements over the past 5 years in response to comments received from the staff of both the SEC and OSC, which indicated insufficient analysis of various sales and lease transactions and the accounting effect of certain contractual provisions within them; and, misallocations of consideration to elements within certain multiple element arrangements; (b) capitalization of costs into inventory and films assets and amortization of film assets in accordance with Statement of Position 00–2, "Accounting by Producers or Distributors of Films" ("SOP 00–2"); (c) income tax liabilities resulting from failure to make certain tax elections on a timely basis and (d) certain other items described under Other Adjustments in this item. In addition, in the preparation of the consolidated financial statements, the Company recorded other adjustments related to prior periods' unadjusted differences that had been deemed not to be material and adjustments related to prior periods recorded through 2002 opening retained earnings. The consolidated financial statements for the prior periods presented have been restated to reflect these error corrections under U.S. GAAP. A summary description of the more significant items resulting in the restatement are as follows:

i. The Company's revenue recognition policy has been revised to: a) treat the theater system equipment (including the projector, sound system, screen system and, if applicable, 3D glasses cleaning machine) and certain initial services associated with the theater system equipment as a single deliverable and as a single unit of accounting, b) require specific delivery and performance conditions be met; and c) require specific customer acceptance requirements be met. These revisions impact the timing of when the Company recognizes revenue from theater system sales and leases and resulted in revenue related to 14 transactions being moved to later years (revenue and net earnings impact of $27.1 million and $14.0 million, respectively). As a consequence, revenue and net earnings of $5.1 million and $3.0 million, respectively, related to three transactions has been deferred to be recognized in years subsequent to 2006. The most significant impact was in 2005, where revenue for 10 installations was moved to later years (revenue and net earnings impact of $17.5 million and $9.7 million, respectively). Eight installations were moved to 2006 (with a revenue and net earnings impact of $14.1 million and $7.5 million, respectively) and two installations (with a revenue and net earnings impact of $3.4 million and $2.2 million, respectively) were moved to 2007.

   An additional 16 transactions (revenue and net earnings impact of $25.4 million and $14.1 million, respectively) moved between quarters in the year they were originally reported. These adjustments have been included in the restated "Quarterly Financial Data (Unaudited)" presented on page 132.

   Other adjustments related to theater systems include the misallocation of consideration to elements within certain multiple element arrangements, reclassification of certain transactions from sales to sales–type leases and from sales–type leases to operating leases given remaining lien rights or non–standard contractual provisions, inappropriate deferral and allocation of revenue to elements, and improperly recognized finance income on certain transactions. These adjustments resulted in a net decrease of income of $1.9 million for the period 2002 through 2006.

ii. Adjustments for inventory costs, film and income tax accounting and the impact of prior periods' unadjusted differences resulted in a net decrease of income of $4.6 million for periods prior to 2006 including a net decrease of income of $0.8 million in periods prior to 2002, $3.1 million of these timing adjustments increased income in 2006 with the remaining $1.5 million to increase income in 2007 and thereafter.

Table of Contents

## IMAX CORPORATION

**Item 6. Selected Financial Data** (cont'd)

For additional discussion regarding the impact of this restatement see note 4 to the accompanying audited consolidated financial statements in Item 8 and additional commentary in this Item. The summary table below presents the impact of the restatement for each of the years in the four year period ended December 31, 2005(1):

| | 2005 | 2004 | 2003 | 2002 |
|---|---|---|---|---|
| Net earnings (loss), as previously reported | $16,598 | $10,244 | $ 231 | $11,972 |
| Restatement items | | | | |
| Revenue recognition – Theater Systems | (6,802) | (1,562) | — | (2,107) |
| Revenue recognition – Other | 901 | (556) | (218) | (2,198) |
| Inventory costs | 295 | (227) | (296) | (245) |
| Film accounting | (2,759) | 318 | (12) | — |
| Branch level interest taxes | (298) | (276) | (234) | — |
| Other adjustments | (113) | (237) | 16 | (1,301) |
| | (8,776) | (2,540) | (744) | (5,851) |
| Net earnings (loss), as restated | $ 7,822 | $ 7,704 | $ (513) | $ 6,121 |

(1) The impact of the restatement adjustments to Shareholders' Deficit as of December 31, 2001 resulted in a decrease to the deficit of $0.9 million.

The net impact of these restatement errors related to the years 2002 to 2005 is the recognition of income of $10.6 million in 2006 and $6.4 million expected to be recognized in future periods (the majority of which is expected in 2007).

**IMAX CORPORATION**

**Item 6. Selected Financial Data** (cont'd)

The following information presents the financial impact of the restatement adjustments on the Company's previously reported Consolidated Statement of Operations data for the year ended December 31, 2002:

| | As Previously Reported(1) | Revenue Recognition– Theater Systems(2) | Revenue Recognition– Other(2) | Inventory Costs(2) | Film Accounting(2) | Branch Level Interest Taxes(2) | Other Adjustments(2) | As Restated |
|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | |
| Equipment and product sales | $ 45,584 | $ (4,918) | $ (1,265) | $ — | $ — | $ — | $ (115) | $ 39,286 |
| Services | 67,359 | — | 685 | — | — | — | (4,455) | 63,589 |
| Rentals | 6,388 | — | 507 | — | — | — | — | 6,895 |
| Finance income | 4,691 | — | (679) | — | — | — | — | 4,012 |
| Other revenues | 5,080 | — | (2,700) | — | — | — | — | 2,380 |
| | 129,102 | (4,918) | (3,452) | | | | (4,570) | 116,162 |
| **Costs of goods sold, services and rentals** | | | | | | | | |
| Equipment and product sales | 20,874 | (2,811) | (378) | — | — | — | 124 | 17,809 |
| Services | 49,334 | — | 93 | — | — | — | (4,175) | 45,252 |
| Rentals | 5,426 | — | (1,453) | — | — | — | 162 | 4,135 |
| | 75,634 | (2,811) | (1,738) | — | — | — | (3,889) | 67,196 |
| **Gross margin** | 53,468 | (2,107) | (1,714) | — | — | — | (681) | 48,966 |
| Selling, general and administrative expenses | 34,906 | — | — | 245 | — | — | 559 | 35,710 |
| Research and development | 2,362 | — | — | — | — | — | — | 2,362 |
| Amortization of intangibles | 1,418 | — | — | — | — | — | — | 1,418 |
| Income from equity-accounted investees | (283) | — | — | — | — | — | — | (283) |
| Receivable provisions net of (recoveries) | (1,233) | — | 484 | — | — | — | (718) | (1,467) |
| Restructuring costs and asset impairments | (121) | — | — | — | — | — | 524 | 403 |
| **Earnings from operations** | 16,419 | (2,107) | (2,198) | (245) | — | — | (1,046) | 10,823 |
| Interest income | 413 | — | — | — | — | — | 102 | 515 |
| Interest expense | (17,564) | — | — | — | — | — | (250) | (17,814) |
| Gain on retirement of notes | 11,900 | — | — | — | — | — | (107) | 11,793 |
| **Net earnings (loss) from continuing operations** | 11,168 | (2,107) | (2,198) | (245) | — | | (1,301) | 5,317 |
| Net earnings from discontinued operations | 804 | — | — | — | — | — | — | 804 |
| **Net earnings (loss)** | $ 11,972 | $ (2,107) | $ (2,198) | $ (245) | $ — | $ | $ (1,301) | $ 6,121 |
| **Earnings (loss) per share** | | | | | | | | |
| Earnings (loss) per share – basic and diluted: | | | | | | | | |
| Net earnings (loss) from | $ 0.34 | $ (0.06) | $ (0.07) | $ (0.01) | $ — | $ — | $ (0.04) | $ 0.16 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| continuing operations | | | | | | | | |
| Net earnings from discontinued operations | $ 0.02 | $ — | $ — | $ — | $ — | $ — | $ — | $ 0.02 |
| Net (loss) earnings | $ 0.36 | $ (0.06) | $ (0.07) | $ (0.01) | $ — | $ — | $ (0.04) | $ 0.18 |

(1) The Company has changed the presentation of revenues and cost of good sold, services and rentals to conform to the presentation requirements specified in Regulation S–X of the Securities Exchange Act of 1934.

(2) See pages 39 to 40 for explanations of restatement adjustments.



Source: IMAX CORP, 10–K, July 20, 2007

**IMAX CORPORATION**

**Report of Independent Registered Public Accounting Firm**

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

A material weakness is a control deficiency, or combination of control deficiencies, that results in more than a remote likelihood that a material misstatement of the annual or interim financial statements will not be prevented or detected. As of December 31, 2006, the following material weaknesses have been identified and included in management's assessment:

1. The Company did not maintain adequate controls, including period–end controls, over the analysis and review of revenue recognition for sales and lease transactions in accordance with U.S. GAAP. Specifically, effective controls were not maintained to correctly assess the identification of deliverables and their aggregation into units of accounting and in certain cases the point when certain units of accounting were substantially complete to allow for revenue recognition on a theater system. In addition, the Company did not have effective controls over other aspects of such transactions including identifying the fair values of certain future deliverables, identifying certain clauses in arrangements that impact revenue recognition, accounting for warranty costs, the appropriate accounting for certain settlement agreements and the recognition of finance income on impaired receivables.

2. The Company did not maintain effective controls, including period–end controls, over accounting for film transactions in accordance with U.S. GAAP. Specifically, effective controls were not maintained related to the classification and accurate recording of marketing and advertising costs of co–produced film productions, production fees on co–produced films and the application of the individual–film forecast computation method to film assets, participation liabilities and deferred production fees.

3. The Company did not maintain effective controls, including period–end controls, over the accounting for contract origination costs in accordance with U.S. GAAP. Specifically, effective controls were not maintained related to the classification of fees paid to a professional services firm.

4. The Company did not maintain adequate controls over the complete and accurate recording of postretirement benefits other than pensions in accordance with U.S. GAAP. Specifically, effective controls were not maintained over the complete identification of all relevant contractual provisions within its executive employment contracts.

Each of the control deficiencies referred to above contributed to the restatement of the Company's consolidated financial statements for the years ended December 31, 2002 through 2005, its consolidated financial statements for each of the quarters in the year ended December 31, 2005 and its consolidated financial statements for each of the quarters ended March 31, June 30 and September 30, 2006, and audit adjustments to the Company's 2006 annual consolidated financial statements, affecting principally revenues, costs of goods sold, selling, general, and administrative expenses, accounts receivable, financing receivables, inventories, prepaid expenses, film assets, fixed assets, other assets, accounts payable, accrued liabilities and deferred revenue, and related disclosures including postretirement benefits.

5. The Company did not maintain effective controls over the intraperiod allocation of the provision for income taxes in accordance with U.S. GAAP. Specifically, effective controls were not in place such that the tax provisions were appropriately allocated to continuing operations, discontinued operations, and accumulated other comprehensive income. This control deficiency resulted in an audit adjustment to the Company's 2006 annual consolidated financial statements, affecting the provisions for income taxes, net earnings from discontinued operations, and accumulated other comprehensive income.

**IMAX CORPORATION**

**Report of Independent Registered Public Accounting Firm**

6. The Company did not maintain adequate controls over the lines of communication between operational departments and the Finance Department related to revenue recognition for sales and lease transactions. Specifically, effective controls were not maintained to raise on a timely basis certain issues relating to observations of the installation process, any remaining installation or operating obligations, and concessions on contractual terms that may impact the accuracy and timing of revenue recognition. This control deficiency contributed to the restatement of the Company's consolidated financial statements for the years ended December 31, 2002 through 2005, its consolidated financial statements for each of the quarters in the year ended December 31, 2005 and its consolidated financial statements for each of the quarters ended March 31, June 30 and September 30, 2006, and audit adjustments to the Company's 2006 annual consolidated financial statements, affecting principally revenues, costs of goods sold, selling, general, and administrative expenses, financing receivables, inventories, prepaid expenses, fixed assets, other assets, accounts payable, accrued liabilities and deferred revenue, and related disclosures.

7. The Company did not maintain adequate controls over the timely communication between departments of information relating to developing issues that may impact the Company's financial reporting. Specifically, effective controls were not maintained over the status of a review of cap limits under the Company's Stock Option Plan that affected the recording and related disclosure of stock–based compensation benefits. This control deficiency contributed to a restatement of the Company's September 30, 2006 financial statements, affecting accrued liabilities, other equity and selling, general and administrative expenses, and related disclosures.

These material weaknesses were considered in determining the nature, timing, and extent of audit tests applied in our audit of the December 31, 2006 consolidated financial statements, and our opinion regarding the effectiveness of the Company's internal control over financial reporting does not affect our opinion on those consolidated financial statements.

In our opinion, management's assessment that the Company did not maintain effective internal control over financial reporting as of December 31, 2006, is fairly stated, in all material respects, based on criteria established in Internal Control — Integrated Framework issued by the COSO. Also, in our opinion, because of the effects of the material weaknesses described above on the achievement of the objectives of the control criteria, the Company has not maintained effective internal control over financial reporting as of December 31, 2006, based on criteria established in Internal Control — Integrated Framework issued by the COSO.

Chartered Accountants, Licensed Public Accountants
Toronto, Ontario
July 20, 2007



Source: IMAX CORP, 10-K, July 20, 2007

**IMAX CORPORATION**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
**In accordance with United States Generally Accepted Accounting Principles**
*(Tabular amounts in thousands of U.S. dollars, unless otherwise stated)*

**4. Restatement of Previously Issued Financial Statements** (cont'd)

**Revenue Recognition – Theater Systems**

As described in notes 1 and 2 (n) of these audited consolidated financial statements, the Company's revenue arrangements include multiple elements. In prior years, the Company considered each component of its theater systems to be a separate element. As a result, revenue was recognized when certain components were installed. As part of the review of its revenue recognition policy, the Company concluded its policy for revenue recognition on theater systems should be revised to treat all components of the theater system (including the projector, sound system, screen system and, if applicable, 3D glasses cleaning machine), theater design support, supervision of installation, projectionist training and the use of that IMAX brand as a single deliverable and as a single unit of accounting. In addition, the Company revised its policy to require that (i) the projector, sound system and screen system be installed and be in full working condition, the 3D glasses cleaning machine, if applicable, be delivered and projectionist training be completed, and (ii) written customer acceptance thereon be received, or the public opening of the theater take place, before revenue can be recognized. In conjunction with these changes, the Company undertook an extensive review of all of its revenue arrangements for theater systems for the period from 2002 to 2006. Two transactions which were originally recorded in 2004 (revenue and net earnings impact of $3.0 million and $1.6 million, respectively) were moved to 2005 and 2006. Eight transactions which were originally recorded in 2005 (revenue and net earnings impact of $14.1 million and $7.5 million, respectively) were moved to 2006 and two transactions which were originally recorded in 2005 were moved to 2007 (revenue and net earnings impact of $3.4 million and $2.2 million, respectively). In addition, one transaction recorded in 2002 was moved to 2005 (revenue and net earnings impact of $4.9 million and $2.1 million, respectively) and one transaction recorded in 2006 was moved to 2007 (revenue and net earnings impact of $1.7 million and $0.6 million, respectively).

**Revenue Recognition – Other**

As a result of the review of the revenue arrangements, the Company identified additional errors including the following:

- Based on an analysis of fair values of elements within arrangements, the Company determined that fair value previously allocated in certain multiple element arrangements was not appropriate and has adjusted these amounts.
- The existence of certain non–standard contractual provisions resulted in: the reclassification of certain sales arrangements to sales–type lease transactions, for accounting purposes when the customer was granted title to the system until all payments were made and certain sales–type leases to operating leases given substantially all of the benefits and risks of ownership had not passed to the customer; and the timing of recognition of the minimum annual payments under certain arrangements.
- Settlement revenue was recognized on a MPX upgrade which was conditional upon the Company meeting certain conditions which were ultimately not met during the year. The Company has deferred the amount of settlement revenue awaiting installation of an alternate theater system configuration.
- Finance income continued to be recognized when the related financing receivables were impaired. The Company has revised its procedures and discontinued the recognition of finance income until the impairment issues were resolved.

The impact of these adjustments was a decrease in income in 2004 of $0.6 million and an increase to income in 2005 of $0.9 million.

Table of Contents

**IMAX CORPORATION**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
**In accordance with United States Generally Accepted Accounting Principles**
*(Tabular amounts in thousands of U.S. dollars, unless otherwise stated)*

**4. Restatement of Previously Issued Financial Statements** (cont'd)

The following table presents the impact of the restatement on the Company's previously issued consolidated statement of operations for the year ended December 31, 2005:

| | As Previously Reported(1) | Revenue Recognition–Theater Systems | Revenue Recognition–Other | Inventory Costs | Film Accounting | Branch Level Interest Taxes | Other Adjustments | As Restated |
|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | |
| Equipment and product sales | $ 61,077 | $ (11,099) | $ 750 | $ — | $ — | $ — | $ — | $ 50,728 |
| Services | 58,084 | (14) | 832 | — | (547) | — | — | 58,355 |
| Rentals | 6,819 | — | 497 | — | — | — | — | 7,316 |
| Finance income | 4,632 | (115) | 88 | — | — | — | — | 4,605 |
| Other revenues | 14,318 | — | — | — | — | — | — | 14,318 |
| | 144,930 | (11,228) | 2,167 | | (547) | | | 135,322 |
| **Costs of goods sold, services and rentals** | | | | | | | | |
| Equipment and product sales | 28,977 | (4,261) | 996 | (506) | — | — | 10 | 25,216 |
| Services | 41,656 | 3 | 27 | — | 2,212 | — | 71 | 43,969 |
| Rentals | 2,216 | — | 244 | — | — | — | — | 2,460 |
| Other costs of goods sold | 143 | — | (1) | — | — | — | — | 142 |
| | 72,992 | (4,258) | 1,266 | (506) | 2,212 | — | 81 | 71,787 |
| **Gross margin** | 71,938 | (6,970) | 901 | 506 | (2,759) | | (81) | 63,535 |
| Selling, general and administrative expenses | 37,287 | 22 | — | 211 | — | — | 32 | 37,552 |
| Research and development | 3,264 | (40) | — | — | — | — | — | 3,224 |
| Amortization of intangibles | 911 | — | — | — | — | — | — | 911 |
| Receivable provisions net of (recoveries) | (859) | (150) | — | — | — | — | — | (1,009) |
| Asset impairments | 13 | — | — | — | — | — | — | 13 |
| **Earnings from operations** | 31,322 | (6,802) | 901 | 295 | (2,759) | | (113) | 22,844 |
| Interest income | 1,004 | — | — | — | — | — | — | 1,004 |
| Interest expense | (16,773) | — | — | — | — | (102) | — | (16,875) |
| **Earnings (loss) from continuing operations before income taxes** | 15,553 | (6,802) | 901 | 295 | (2,759) | (102) | (113) | 6,973 |
| Recovery of (provision for) income taxes | (934) | — | — | — | — | (196) | — | (1,130) |
| **Net earnings (loss) from continuing operations** | 14,619 | (6,802) | 901 | 295 | (2,759) | (298) | (113) | 5,843 |
| Net earnings from discontinued operations | 1,979 | — | — | — | — | — | — | 1,979 |
| **Net earnings (loss)** | $ 16,598 | $ (6,802) | $ 901 | $ 295 | $ (2,759) | $ (298) | $ (113) | $ 7,822 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Earnings (loss) per share** | | | | | | | | |
| Earnings (loss) per share – basic: | | | | | | | | |
| Net earnings (loss) from continuing operations | $ 0.37 | $ (0.17) | $ 0.02 | $ 0.01 | $ (0.07) | $ (0.01) | $ — | $ 0.15 |
| Net earnings from discontinued operations | $ 0.05 | $ — | $ — | $ — | $ — | $ — | $ — | $ 0.05 |
| Net (loss) earnings | $ 0.42 | $ (0.17) | $ 0.02 | $ 0.01 | $ (0.07) | $ (0.01) | $ — | $ 0.20 |
| Earnings (loss) per share – diluted: | | | | | | | | |
| Net earnings (loss) from continuing operations | $ 0.35 | $ (0.16) | $ 0.02 | $ 0.01 | $ (0.07) | $ (0.01) | $ | $ 0.14 |
| Net earnings from discontinued operations | $ 0.05 | $ — | $ — | $ — | $ — | $ — | $ — | $ 0.05 |
| Net earnings (loss) | $ 0.40 | $ (0.16) | $ 0.02 | $ 0.01 | $ (0.07) | $ (0.01) | $ — | $ 0.19 |

(1) The Company has changed the presentation of revenues and cost of goods sold, services and rentals to conform to the presentation requirements specified in Regulation S–X of the Securities Exchange Act of 1934.

Table of Contents

**IMAX CORPORATION**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
**In accordance with United States Generally Accepted Accounting Principles**
*(Tabular amounts in thousands of U.S. dollars, unless otherwise stated)*

**4. Restatement of Previously Issued Financial Statements** (cont'd)

The following table presents the impact of the restatement on the Company's previously issued consolidated statement of operations for the year ended December 31, 2004:

| | As Previously Reported(1) | Revenue Recognition–Theater Systems | Revenue Recognition–Other | Inventory Costs | Film Accounting | Branch Level Interest Taxes | Other Adjustments | As Restated |
|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | |
| Equipment and product sales | $ 48,107 | $ (2,898) | $ (917) | $ — | $ — | $ — | $ (233) | $ 44,059 |
| Services | 59,175 | (34) | 624 | — | (161) | — | — | 59,604 |
| Rentals | 5,585 | — | 672 | — | — | — | — | 6,257 |
| Finance income | 3,991 | (61) | 98 | — | — | — | — | 4,028 |
| Other revenues | 19,122 | — | (729) | — | — | — | — | 18,393 |
| | 135,980 | (2,993) | (252) | — | (161) | — | (233) | 132,341 |
| **Costs of goods sold, services and rentals** | | | | | | | | |
| Equipment and product sales | 20,870 | (1,501) | 29 | (2) | — | — | (42) | 19,354 |
| Services | 45,501 | 1 | (9) | — | (479) | — | 210 | 45,224 |
| Rentals | 3,222 | — | 284 | — | — | — | (323) | 3,183 |
| Other costs of goods sold | 469 | — | — | — | — | — | — | 469 |
| | 70,062 | (1,500) | 304 | (2) | (479) | — | (155) | 68,230 |
| **Gross margin** | 65,918 | (1,493) | (556) | 2 | 318 | — | (78) | 64,111 |
| Selling, general and administrative expenses | 36,066 | 31 | — | 229 | — | — | 31 | 36,357 |
| Research and development | 3,995 | 39 | — | — | — | — | — | 4,034 |
| Amortization of intangibles | 719 | — | — | — | — | — | — | 719 |
| Receivable provisions net of (recoveries) | (1,487) | (1) | — | — | — | — | — | (1,488) |
| Asset impairments | 848 | — | — | — | — | — | — | 848 |
| **Earnings from operations** | 25,777 | (1,562) | (556) | (227) | 318 | — | (109) | 23,641 |
| Interest income | 756 | — | — | — | — | — | — | 756 |
| Interest expense | (16,853) | — | — | — | — | (90) | (128) | (17,071) |
| Loss on retirement of notes | (784) | — | — | — | — | — | — | (784) |
| Recovery of long-term investments | 293 | — | — | — | — | — | — | 293 |
| **Earnings (loss) from continuing operations before income taxes** | 9,189 | (1,562) | (556) | (227) | 318 | (90) | (237) | 6,835 |
| Recovery of (provision for) income taxes | 255 | — | — | — | — | (186) | — | 69 |
| **Net earnings (loss) from continuing operations** | 9,444 | (1,562) | (556) | (227) | 318 | (276) | (237) | 6,904 |
| Net earnings from discontinued operations | 800 | — | — | — | — | — | — | 800 |
| **Net earnings (loss)** | $ 10,244 | $ (1,562) | $ (556) | $ (227) | $ 318 | $ (276) | $ (237) | $ 7,704 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Earnings (loss) per share** | | | | | | | | |
| Earnings (loss) per share – basic: | | | | | | | | |
| Net earnings (loss) from continuing operations | $ 0.24 | $ (0.04) | $ (0.01) | $ — | $ 0.01 | $ (0.01) | $ (0.01) | $ 0.18 |
| Net earnings from discontinued operations | $ 0.02 | $ — | $ — | $ — | $ — | $ — | $ — | $ 0.02 |
| Net (loss) earnings | $ 0.26 | $ (0.04) | $ (0.01) | $ — | $ 0.01 | $ (0.01) | $ (0.01) | $ 0.20 |
| Earnings (loss) per share – diluted: | | | | | | | | |
| Net earnings (loss) from continuing operations | $ 0.24 | $ (0.04) | $ (0.01) | $ — | $ 0.01 | $ (0.01) | $ (0.02) | $ 0.17 |
| Net earnings from discontinued operations | $ 0.02 | $ — | $ — | $ — | $ — | $ — | $ — | $ 0.02 |
| Net earnings (loss) | $ 0.26 | $ (0.04) | $ (0.01) | $ — | $ 0.01 | $ (0.01) | $ (0.02) | $ 0.19 |

(1) The Company has changed the presentation of revenues and cost of goods sold, services and rentals to conform to the presentation requirements specified in Regulation S–X of the Securities Exchange Act of 1934.



Source: IMAX CORP, 10–K, July 20, 2007