UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**PLAINTIFFS' RESPONSE TO IMAX DEFENDANTS' SUPPLEMENTAL SUBMISSION**

The IMAX Defendants' Supplemental Submission makes statements about Plaintiffs' case that are simply wrong. Plaintiffs have submitted this response to correct those inaccuracies.

On page 2 of their brief, the IMAX Defendants state that Plaintiffs do not allege that IMAX's description of its policy of recognizing revenue on installation of the theater system was misleading. To the contrary, Plaintiffs allege that while IMAX said that it recognized revenue for theater systems upon installation, in fact, IMAX recognized revenue prior to the installation of its theater systems.[1] See Plaintiffs' Aug.15, 2008 Attachment A ("Attachment A"), at pp.1-2

[1] Defendants also say that multiple element arrangement accounting ("MEA") did not "go into effect until fiscal periods beginning after June 15, 2003". Imax Supp. at 2. But MEA existed before the adoption of EITF 00 21. EITF 00 21was adopted in June 2003, setting out the specific accounting criteria to be applied for determining "whether an arrangement with multiple deliverables contains more than one unit of accounting and thus whether revenue recognition should be afforded to the various units separately..." ¶49. However, whether pre or post-June 2003, MEA treatment could not be appropriate under GAAP unless *all* of the required criteria were satisfied at the time of the accounting. ¶¶ 44-50.As such, MEA could never be applied to IMAX theater systems because the theater systems always functioned as a Single Deliverable. ¶¶35, 47. As the Complaint states, "IMAX's explanation [for the reason for its Restatement of its theater systems financials] is nonsensical, both in light of the revenue recognition requirements of EITF 0021(which applied at IMAX for revenue arrangements entered into in fiscal years beginning after June 13, 2003(i.e. third quarter 2003) and continuing thereafter), SAB 101 and FASCON 5, *which applied prior to and during and after the adoption of EITF 0021*." ¶142; ¶¶44-50. Plaintiffs allege that IMAX consciously or recklessly failed to disclose that it was not following its own expressly stated theater system revenue recognition policy, that IMAX could not meet the requisite GAAP criteria for MEA for theater system revenue recognition, and that Defendants thereby recklessly or knowingly wrongfully applied MEA to IMAX's theater system revenue throughout the Class Period.

Notwithstanding IMAX's position that Plaintiffs allege that IMAX "accelerated revenue" in only limited periods (IMAX Supplemental Submission, at p. 5), this case is premised on IMAX's misleading statements about its revenue recognition policy and improper revenue recognition *throughout* the Class Period. Examples of such allegations include the following: "Throughout the Class Period, IMAX publicly stated that revenue from theater systems sales and sales-type leases was recognized upon installation of the theater system…IMAX improperly accelerated its revenue recognition on theater systems and concomitantly reported earnings thereon, when only certain elements of its systems were installed…"¶40; "For IMAX, revenue relating to its theater system(i.e. System Deliverable) "sales" were not realizable and earned until *all* components of the System Deliverable were required before the system was substantially complete and functional…beginning in fiscal year 2002, and continuing throughout the Class Period…"¶47; "As ultimately revealed…the Company had, throughout the Class Period, improperly recognized revenue on individual components of its theater systems prior to installation of the whole system…."¶59. The chart at paragraph 146 of the Complaint quantifies the impact of the Restatement for fiscal tears 2002 through 2005.

Defendants contend that IMAX adequately disclosed that it "recognized revenue with respect to certain elements of the theater system before all of the elements were installed…" IMAX Supp. at 4. However, even when IMAX referred to MEA, its goal was obfuscation and concealment. In its 2004 and 2005 Forms 10-K, when IMAX actually used the term "multiple element accounting", it said that MEA was applied in only occasional, limited circumstances involving film licenses, situations in which customers are unable to proceed with construction but are not otherwise in default, or

when a customer is going to terminate an existing agreement in exchange for an agreement to buy IMAX's new MPX product. Attachment A, p.5.Reference to these limited circumstances did not inform investors that IMAX was recognizing revenue contrary to its stated policy and in violation of GAAP.

Defendants also argue that language in its 2005 Form 10-K disclosed IMAX's application of MEA to individual components of its theater systems. They cite the following language from page 64 of the 2005 Form 10-K as support:

> *When the elements of theater systems meet the criteria for treatment as separate units of accounting*, the Company generally allocates the revenue to each element based on its relative fair value. Revenue allocated to an individual element is recognized *when revenue recognition criteria* for that element is met.
>
> ...
>
> The Company recognizes revenue from sales and sales type leases when the *installation of the respective theater system element is substantially* complete and *all of the following criteria are met*: persuasive evidence of an agreement exists; the price is fixed or determinable; and collection is reasonably assured.

(emphasis supplied)

Notably absent from the first-quoted paragraph is any disclosure of the EITF criteria necessary "for treatment as separate units of accounting." To properly recognize revenue on individual elements of an IMAX theater system as separate units of accounting under EITF 00 21 and GAAP, IMAX must satisfy each of the specific and stringent criteria of EITF 00 21.[2] In light of IMAX's admission, in its Restatement, that it was an error to treat any part of the theater system as a separate unit of accounting from 2002 to 2006 because the theater system was always a Single Deliverable, the inference can be drawn that IMAX did not disclose the EITF 00 21 criteria (or how IMAX was able to meet those criteria) in order to conceal its improper recognition of theater system revenue under MEA and GAAP. This point is further enforced by the fact that the second

[2] Those requirements are addressed in ¶¶50and 53 (the item must have "standalone value", etc.).

quoted paragraph, unlike the first quoted paragraph, sets forth the specific revenue recognition requirements of SAB 101. The identical SAB 101 criteria are disclosed in IMAX's Forms 10-K for 2002 to 2004 (Attachment A, p.3). Thus, IMAX selectively disclosed the revenue recognition criteria it could fulfill and failed to disclose the criteria it was unable to satisfy.

Finally, while Defendants attempted to save face by hailing IMAX's current revenue recognition policy as some "new" policy devised with the help of the SEC and OSC, in fact, the Restatement forced IMAX to apply the very revenue recognition policy it told the investing public it had been using throughout the Class Period. Thus, post-Restatement, an IMAX theater system is being treated as the Single Deliverable it has always been.

Plaintiffs respectfully submit that the Complaint adequately alleges the liability of the IMAX Defendants and PWC and that, for the reasons set forth herein and in Plaintiffs' prior submissions, Defendants' motions must be denied.

Respectfully submitted,

Dated: August 20, 2008

**ABBEY SPANIER RODD & ABRAMS, LLP**

By: ______________________
Arthur N. Abbey, Esq. (AA-8074)
Jill S. Abrams, Esq. (JA-1578)
Richard B. Margolies (RM-9311)
212 East 39th Street
New York, NY 10016
Tel.: 212-889-3700
Fax: 212-684-5191

*Counsel for Lead Plaintiff*
*Westchester Capital Management*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | Master File No. 06 CIV. 6128 (NRB) |

**CERTIFICATE OF SERVICE**

I, Lillian Kozon, hereby certify, under penalty of perjury pursuant to 28 U.S.C. §1746, that on this 20th day of August, 2008, true and correct copies of Plaintiff, Westchester Capital Management's Response to IMAX Defendants' Supplemental Submission have been served via the Court's Electronic Case Filing system and regular mail to:

| | |
|---|---|
| Byron M. Wilder, Esq.<br>Gibson, Dunn & Crutcher, LLP<br>2100 McKinney Avenue<br>Suite 1100<br>Dallas, TX 75201<br>Tel: (214) 698-3231<br>Fax: (214) 698-3400 | Jennifer L. Conn, Esq.<br>Gibson, Dunn & Crutcher, LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>Tel: (212) 351-4086<br>Fax: (212) 351-5353 |
| Lewis Liman, Esq.<br>Cleary, Gottlieb, Steen & Hamilton, LLP<br>One Liberty Plaza<br>New York, NY 10006-1470<br>Tel: (212) 225-2000<br>Fax: (212) 225-3999 | |

Lillian Kozon