# EXHIBIT B

# EITF ABSTRACTS

**Issue No. 00-21**

**Title:** Revenue Arrangements with Multiple Deliverables

**Dates Discussed:** July 19–20, 2000; September 20–21, 2000; November 15–16, 2000; January 17–18, 2001; April 18–19, 2001; July 19, 2001; November 14–15, 2001; January 23–24, 2002; March 20–21, 2002; June 19–20, 2002; September 11–12, 2002; October 25, 2002; November 21, 2002; January 23, 2003; March 20, 2003; May 15, 2003

**References:**
FASB Statement No. 3, *Reporting Accounting Changes in Interim Financial Statements*
FASB Statement No. 13, *Accounting for Leases*
FASB Statement No. 45, *Accounting for Franchise Fee Revenue*
FASB Statement No. 48, *Revenue Recognition When Right of Return Exists*
FASB Statement No. 66, *Accounting for Sales of Real Estate*
FASB Statement No. 68, *Research and Development Arrangements*
FASB Statement No. 91, *Accounting for Nonrefundable Fees and Costs Associated with Originating or Acquiring Loans and Initial Direct Costs of Leases*
FASB Technical Bulletin No. 90-1, *Accounting for Separately Priced Extended Warranty and Product Maintenance Contracts*
FASB Concepts Statement No. 5, *Recognition and Measurement in Financial Statements of Business Enterprises*
APB Opinion No. 20, *Accounting Changes*
AICPA Accounting Research Bulletin No. 45, *Long-Term Construction-Type Contracts*
AICPA Statement of Position 81-1, *Accounting for Performance of Construction-Type and Certain Production-Type Contracts*
AICPA Statement of Position 97-2, *Software Revenue Recognition*
AICPA Statement of Position 98-9, *Modification of SOP 97-2,* Software Revenue Recognition, *With Respect to Certain Transactions*
AICPA Statement of Position 00-2, *Accounting by Producers or Distributors of Films*
SEC Staff Accounting Bulletin No. 101, *Revenue Recognition in Financial Statements*
SEC Staff Accounting Bulletin No. 101, *Revenue Recognition in Financial Statements—Frequently Asked Questions and Answers*

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

**ISSUE**

1. Many companies offer multiple solutions to their customers' needs. Those solutions may involve the delivery or performance of multiple products, services, or rights to use assets, and performance may occur at different points in time or over different periods of time. In some cases, the arrangements include initial installation, initiation, or activation services and involve consideration in the form of a fixed fee or a fixed fee coupled with a continuing payment stream. The continuing payment stream generally corresponds to the continuing performance, and the amount of the payments may be fixed, variable based on future performance, or a combination of fixed and variable payment amounts.

2. This Issue addresses certain aspects of the accounting by a vendor for arrangements under which it will perform multiple revenue-generating activities. Specifically, this Issue addresses how to determine whether an arrangement involving multiple deliverables contains more than one unit of accounting. In applying this Issue, separate contracts with the same entity or related parties that are entered into at or near the same time are presumed to have been negotiated as a package and should, therefore, be evaluated as a single arrangement in considering whether there are one or more units of accounting. That presumption may be overcome if there is sufficient evidence to the contrary. This Issue also addresses how arrangement consideration should be measured and allocated to the separate units of accounting in the arrangement.

3. This Issue does not address when the criteria for revenue recognition are met or provide guidance on the appropriate revenue recognition convention for a given unit of accounting. For example, this Issue does not address when revenue attributable to a unit

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

of accounting should be recognized based on proportional performance. The timing of revenue recognition for a given unit of accounting will depend on the nature of the deliverable(s) composing that unit of accounting (and the corresponding revenue recognition convention) and whether the general conditions for revenue recognition have been met.

4. This Issue applies to all deliverables (that is, products, services, or rights to use assets) within contractually binding arrangements (whether written, oral, or implied, and hereinafter referred to as "arrangements") in all industries under which a vendor will perform multiple revenue-generating activities, except as follows:

a. A multiple-deliverable arrangement or a deliverable(s) in a multiple-deliverable arrangement may be within the scope of higher-level authoritative literature.[1]T That higher-level authoritative literature (including, but not limited to, Statements 13, 45, and 66; Interpretation 45; Technical Bulletin 90-1; and SOPs 81-1, 97-2, and 00-2) (referred to hereinafter as "higher-level literature") may provide guidance with respect to whether and/or how to allocate consideration of a multiple-deliverable arrangement. The following describes the three categories into which that higher-level literature falls and the application of this Issue or the higher-level literature in determining separate units of accounting and allocating arrangement consideration:

   i. If higher-level literature provides guidance regarding the determination of separate units of accounting and how to allocate arrangement consideration to those separate units of accounting, the arrangement or the deliverable(s) in the arrangement that is within the scope of that higher-level literature should be accounted for in accordance with the relevant provisions of that literature rather than the guidance in this Issue.

   ii. If higher-level literature provides guidance requiring separation of deliverables within the scope of higher-level literature from deliverables not within the scope of higher-level literature, but does not specify how to allocate arrangement consideration to each separate unit of accounting, such allocation should be performed on a relative fair value basis using the entity's best estimate of the

[1]Whether a deliverable(s) is within the scope of higher-level authoritative literature is determined by the scope provisions of that literature, without regard to the order of delivery of that item in the arrangement. The term *higher-level literature* refers to categories (a) and (b) of the generally accepted accounting principles (GAAP) hierarchy as defined in AICPA Statement on Auditing Standards No. 69, *The Meaning of "Present Fairly in Conformity With Generally Accepted Accounting Principles" in the Independent Auditor's Report*. EITF consensuses represent category (c) of the hierarchy.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

fair value of the deliverable(s) within the scope of higher-level literature and the deliverable(s) not within the scope of higher-level literature.[2,3] Subsequent accounting (identification of separate units of accounting and allocation of value thereto) for the value allocated to the deliverable(s) not subject to higher-level literature would be governed by the provisions of this Issue.

iii. If higher-level literature provides no guidance regarding the separation of the deliverables within the scope of higher-level literature from those deliverables that are not or the allocation of arrangement consideration to deliverables within the scope of the higher-level literature and to those that are not, then the guidance in this Issue should be followed for purposes of such separation and allocation.[4] In such circumstances, it is possible that a deliverable subject to the guidance of higher-level literature does not meet the criteria in paragraph 9 of this Issue to be considered a separate unit of accounting. In that event, the arrangement consideration allocable to such deliverable should be combined with the amount allocable to the other applicable undelivered item(s) within the arrangement. The appropriate recognition of revenue should then be determined for those combined deliverables as a single unit of accounting.

---

[2]Solely for purposes of the allocation between deliverables within the scope of higher-level literature and deliverables not within the scope of higher-level literature, an entity's best estimate of fair value is not limited to vendor-specific objective evidence of fair value or third-party evidence of fair value, as those concepts are discussed in paragraph 16 of this Issue.

[3]For example, leased assets are required to be accounted for separately under the guidance of Statement 13. Consider an arrangement that includes the lease of equipment under an operating lease, the maintenance of the leased equipment throughout the lease term (executory cost), and the sale of additional equipment unrelated to the leased equipment. The arrangement consideration should be allocated between the Statement 13 deliverables and the non-Statement 13 deliverables on a relative fair value basis using the entity's best estimate of fair value of the Statement 13 and non-Statement 13 deliverables. (Although Statement 13 does not provide guidance regarding the accounting for executory costs, it does provide guidance regarding the allocation of arrangement consideration between the lease and the executory cost elements of an arrangement. Therefore, this example refers to the leased equipment and the related maintenance as Statement 13 deliverables.) The guidance in Statement 13 would then be applied to separate the maintenance from the leased equipment and to allocate the related arrangement consideration to those two deliverables. This Issue would be applied to further separate any non-Statement 13 deliverables and to allocate the related arrangement consideration.

[4]For example, SOP 81-1 provides separation and allocation guidance (segmentation provisions) for deliverables within its scope. However, SOP 81-1 does not provide separation and allocation guidance between SOP 81-1 deliverables and non-SOP 81-1 deliverables. Consider an arrangement that includes designing complex electronic equipment, manufacturing complex electronic equipment (both SOP 81-1 deliverables), and providing the service of running the equipment for a fixed period of time once the equipment is designed, manufactured, and placed in service (a non-SOP 81-1 deliverable). This Issue would be applied to identify separate units of accounting and to allocate arrangement consideration to those separate units of accounting. If applying the guidance in this Issue results in the separation of the design and manufacture of the equipment from the service of running the equipment, the segmentation provisions of SOP 81-1 would be used to determine if it is appropriate to further segment the design deliverables from the manufacture deliverables in accordance with its segmentation provisions. If this Issue prohibits separation of the SOP 81-1 deliverables from the non-SOP 81-1 deliverables, then the amounts otherwise allocable to the design and manufacture deliverables and to the service of running the equipment should be combined. The appropriate recognition of revenue should then be determined for those combined deliverables as a single unit of accounting.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

b. Arrangements that include vendor offers to a customer for either (1) free or discounted products or services that will be delivered (either by the vendor or by another unrelated entity) at a future date if the customer completes a specified cumulative level of revenue transactions with the vendor or remains a customer of the vendor for a specified time period or (2) a rebate or refund of a determinable cash amount if the customer completes a specified cumulative level of revenue transactions with the vendor or remains a customer of the vendor for a specified time period, are excluded from the scope of this Issue. Additionally, arrangements involving the sale of award credits by broad-based loyalty program operators are excluded from the scope of this Issue.

5. The issues are:

Issue 1—How to determine whether an arrangement with multiple deliverables consists of more than one unit of accounting

Issue 2—If an arrangement consists of more than one unit of accounting, how the arrangement consideration should be allocated among the separate units of accounting

Issue 3—What effect, if any, certain customer rights due to vendor nonperformance have on the measurement of arrangement consideration and/or the allocation of consideration to the delivered unit(s) of accounting

Issue 4—How to account for direct costs incurred related to an arrangement that (a) are not associated with a specific deliverable or (b) are associated with a specific deliverable but that deliverable is required to be combined with another deliverable (or other deliverables)

Issue 5(a)—The impact, if any, of a customer's ability to cancel a contract and incur a cancellation penalty on the measurement of arrangement consideration

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

Issue 5(b)—The impact, if any, of consideration that varies as a result of future *customer* actions on the measurement and/or allocation of arrangement consideration

Issue 5(c)—The impact, if any, of consideration that varies as a result of future *vendor* actions on the measurement and/or allocation of arrangement consideration

Issue 6—The impact of a vendor's intent not to enforce its contractual rights in the event of customer cancellation on the measurement and/or allocation of arrangement consideration.

**EITF DISCUSSION**

6. In an arrangement with multiple deliverables, the Task Force reached a consensus that the principles in paragraph 7 and application guidance in paragraphs 8–17 should be used to determine (a) how the arrangement consideration should be measured, (b) whether the arrangement should be divided into separate units of accounting, and (c) how the arrangement consideration should be allocated among the separate units of accounting. Examples illustrating the application of the principles and application guidance in this Issue are included in Exhibit 00-21B.

**Principles**

7. The principles applicable to this Issue are:

- Revenue arrangements with multiple deliverables should be divided into separate units of accounting if the deliverables in the arrangement meet the criteria in paragraph 9.
- Arrangement consideration should be allocated among the separate units of accounting based on their relative fair values (or as otherwise provided in paragraph

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

12). The amount allocated to the delivered item(s) is limited as discussed in paragraph 14.

- Applicable revenue recognition criteria should be considered separately for separate units of accounting.

## Application Guidance

### Units of Accounting (Issue 1)

8. A vendor should evaluate all deliverables in an arrangement to determine whether they represent separate units of accounting. That evaluation must be performed at the inception of the arrangement and as each item in the arrangement is delivered.

9. In an arrangement with multiple deliverables, the delivered item(s) should be considered a separate unit of accounting if all of the following criteria are met:

a. The delivered item(s) has value to the customer on a standalone basis. That item(s) has value on a standalone basis if it is sold separately by any vendor or the customer could resell the delivered item(s) on a standalone basis. In the context of a customer's ability to resell the delivered item(s), the Task Force observed that this criterion does not require the existence of an observable market for that deliverable(s).
b. There is objective and reliable evidence of the fair value of the undelivered item(s).
c. If the arrangement includes a general right of return relative to the delivered item, delivery or performance of the undelivered item(s) is considered probable and substantially in the control of the vendor.

Refer to the flowchart in Exhibit 00-21A for an illustration of the above criteria. The criteria for dividing an arrangement into separate units of accounting should be applied consistently to arrangements with similar characteristics and in similar circumstances.

10. The arrangement consideration allocable to a delivered item(s) that does not qualify as a separate unit of accounting within the arrangement should be combined with the amount allocable to the other applicable undelivered item(s) within the arrangement. The

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

appropriate recognition of revenue should then be determined for those combined deliverables as a single unit of accounting.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

**Measurement and Allocation of Arrangement Consideration (Issues 2, 3, 5(a), 5(b), 5(c), and 6)**

11. The amount of total arrangement consideration must be fixed or determinable other than with respect to the impact of (a) any refund rights or other concessions (hereinafter collectively referred to as "refund rights") to which the customer may be entitled or (b) performance bonuses to which the vendor may be entitled.

12. If there is objective and reliable evidence of fair value (as discussed in paragraph 16) for all units of accounting in an arrangement, the arrangement consideration should be allocated to the separate units of accounting based on their relative fair values (the relative fair value method), except as specified in paragraph 13. However, there may be cases in which there is objective and reliable evidence of the fair value(s) of the undelivered item(s) in an arrangement but no such evidence for the delivered item(s). In those cases, the residual method should be used to allocate the arrangement consideration. Under the residual method, the amount of consideration allocated to the delivered item(s) equals the total arrangement consideration less the aggregate fair value of the undelivered item(s). The "reverse" residual method (that is, using a residual method to determine the fair value of an undelivered item) is not an acceptable method of allocating arrangement consideration to the separate units of accounting, except as described in paragraph 13.

13. To the extent that any separate unit of accounting in the arrangement (including a delivered item) is required under GAAP to be recorded at fair value (and marked to market each reporting period thereafter), the amount allocated to that unit of accounting should be its fair value. Under those circumstances, the remainder of arrangement

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

consideration should be allocated to the other units of accounting in accordance with the requirements in paragraph 12.

14. The amount allocable to a delivered item(s) is limited to the amount that is *not* contingent upon the delivery of additional items or meeting other specified performance conditions (the noncontingent amount). That is, the amount allocable to the delivered item(s) is the lesser of the amount otherwise allocable in accordance with paragraphs 12 and 13, above, or the noncontingent amount. Additionally, although Statement 48 may impact the amount of revenue recognized, the allocated amount is not adjusted for the impact of a general right of return pursuant to that Statement.

15. The Task Force reached a consensus that the measurement of revenue per period should be limited to the measurement that results from assuming that cancellation of the arrangement will not occur. The Task Force observed that the amount recorded as an asset for the excess of revenue recognized under the arrangement over the amount of cash or other consideration received from the customer since the inception of the arrangement should not exceed all amounts to which the vendor is legally entitled, including cancellation fees (in the event of customer cancellation). However, the Task Force further observed that whether a vendor intends to enforce its contractual rights in the event of customer cancellation should be considered in determining the extent to which an asset should be recorded.

16. Contractually stated prices for individual products and/or services in an arrangement with multiple deliverables should *not* be presumed to be representative of fair value. The best evidence of fair value is the price of a deliverable when it is

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

regularly sold on a standalone basis. Fair value evidence often consists of entity-specific or vendor-specific objective evidence (VSOE) of fair value. As discussed in paragraph 10 of SOP 97-2, VSOE of fair value is limited to (a) the price charged for a deliverable when it is sold separately or (b), for a deliverable not yet being sold separately, the price established by management having the relevant authority (it must be probable that the price, once established, will not change before the separate introduction of the deliverable into the marketplace). The use of VSOE of fair value is preferable in all circumstances in which it is available. Third-party evidence of fair value (for example, prices of the vendor's or any competitor's largely interchangeable products or services in sales to similarly situated customers) is acceptable if VSOE of fair value is not available.

**Accounting for Direct Costs in an Arrangement with Multiple Deliverables (Issue 4)**

17. The Task Force agreed not to provide guidance on Issue 4 due to the broad, general nature of the question and its applicability beyond arrangements involving multiple deliverables. As such, this Issue does not address the allocation of direct costs in an arrangement.

## Disclosure

18. A vendor should disclose (a) its accounting policy for recognition of revenue from multiple-deliverable arrangements (for example, whether deliverables are separable into units of accounting) and (b) the description and nature of such arrangements, including performance-, cancellation-, termination-, or refund-type provisions.

## Transition

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

19. The guidance in this Issue is effective for revenue arrangements entered into in fiscal periods beginning after June 15, 2003. Alternatively, entities may elect to report the change in accounting as a cumulative-effect adjustment in accordance with Opinion 20 and Statement 3. If so elected, disclosure should be made in periods subsequent to the date of initial application of this consensus of the amount of recognized revenue that was previously included in the cumulative effect adjustment. Early application of this consensus is permitted.

20. The Task Force reached its consensus on this Issue subject to certain clarifications to be made with respect to the scope provisions in paragraph 4(a). At the May 15, 2003 meeting, the Task Force finalized the scope of those provisions. For an enterprise that adopted the consensuses in this Issue prior to the May 15, 2003 meeting, the final guidance in paragraph 4(a) should be treated as a new consensus subject to the transition and effective date provisions in Topic No. D-1, "Implications and Implementation of an EITF Consensus."

21. The SEC Observer commented that the SEC staff would review and revise SAB 101 and the SAB 101 FAQ, as necessary, to be consistent with the consensus in this Issue. In the interim, however, to the extent that the guidance in SAB 101 (and the SAB 101 FAQ) and Issue 00-21 conflict, the guidance in this Issue should be followed.

**STATUS**

22. No further EITF discussion is planned.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

**Exhibit 00-21A**

## DETERMINING SEPARATE UNITS OF ACCOUNTING[5]




[5]This diagram represents an overview of the provisions of this Issue with respect to determining the separate units of accounting in an arrangement and should, therefore, be reviewed in conjunction with the entire consensus.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

**Exhibit 00-21B**

## EXAMPLES OF THE APPLICATION OF THE EITF CONSENSUS ON ISSUE 00-21

**Note: The examples below provide guidance *only* with respect to determining whether a multiple-deliverable revenue arrangement contains more than one unit of accounting and, if so, how to measure and allocate the arrangement consideration to the separate units of accounting. As discussed in paragraph 3, above, this Issue (including the examples below) does *not* address (for any unit of accounting) when the criteria for revenue recognition are met or provide guidance on the appropriate revenue recognition convention.**

### Example 1—Cellular Telephone Contract

CellularCo runs a promotion in which new customers who sign a two-year contract receive a "free" phone. The contract requires the customer to pay a cancellation fee of $300 if the customer cancels the contract. There is a one-time "activation fee" of $50 and a monthly fee of $40 for the ongoing service. The same monthly fee is charged by CellularCo regardless of whether a "free" phone is provided. The phone costs CellularCo $100. Further, assume that CellularCo frequently sells the phone separately for $120. CellularCo is not required to refund any portion of the fees paid for any reason. CellularCo is a sufficiently capitalized, experienced, and profitable business and has no reason to believe that the two-year service requirement will not be met. CellularCo is considering whether (a) the phone and (b) the phone service (that is, the airtime) are separable deliverables in the arrangement. The activation fee is simply considered additional arrangement consideration to be allocated. The phone and activation are

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

delivered first, followed by the phone service (which is provided over the two-year period of the arrangement).

**Evaluation:** The first condition for separation is met for the phone. That is, the phone has value on a standalone basis because it is sold separately by CellularCo. The second condition for separation also is met because objective and reliable evidence of fair value exists for the phone service. Finally, there are no general rights of return in this arrangement. Therefore, the phone and the phone service should be accounted for as separate units of accounting.

The total arrangement consideration is $1,010. The fair value of the phone service is $960 ($40 × 24 months), the price charged by CellularCo. The fair value of the phone is $120, the price of the phone when sold separately by CellularCo. Without considering whether any portion of the amount allocable to the phone is contingent upon CellularCo's providing the phone service, CellularCo would allocate the arrangement consideration on a relative fair value basis as follows: $112.22 [$1,010 × ($120 ÷ [$120 + $960])] to the phone and $897.78 [$1,010 × ($960 ÷ [$120 + $960])] to the phone service. However, because a "free" phone is provided in the arrangement and the customer has no obligation to CellularCo if phone service is not provided, $62.22 (assuming the customer has paid the nonrefundable activation fee) is contingent upon CellularCo's providing the phone service. Therefore, the amount allocable to the phone is limited to $50 ($112.22 – $62.22), and the amount allocable to the phone service is increased to $960.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

**Example 2—Can Manufacturing Equipment**

Company C sells high-speed aerosol can manufacturing equipment. Company C sells a complete manufacturing process, which consists of Equipment X, Y, and Z. Company C does not sell Equipment X, Y, and Z separately; however, other companies do sell the same equipment separately and there is a market for used equipment. Installation is not considered in this example.

Company C is evaluating revenue recognition under the following scenario:

> Company C delivered Equipment X and Z on March 27, but did not deliver Equipment Y until April 6. Without Equipment Y, the customer does not have use of Equipment X and Z. However, there is an active market for new Equipment X, Y, and Z on a separate basis, as the equipment is often bought separately from other vendors as replacements become necessary. The contract provides that if all pieces of equipment are not delivered, the customer may return Equipment X and Z and have no liability to Company C. The contract requires delivery of all equipment prior to June 1, and Company C has sufficient production capacity and inventory to deliver all of the equipment prior to that contractual deadline.

**Evaluation:** The first condition for separation is met for Equipment X and Z. Equipment X and Z have value on a standalone basis because they are sold separately by other vendors. The second condition for separation is also met because sufficient objective and reliable evidence of the fair value exists for Equipment Y based on the prices charged for the separate pieces of equipment by other unrelated vendors. Finally, there is no general right of return in the arrangement. Therefore, Equipment X, Y, and Z should be accounted for as separate units of accounting. However, even though accounted for as separate units of accounting, the arrangement consideration allocable to both Equipment X and Z is $0 because the full amount otherwise allocable to those separate deliverables is contingent upon the delivery of Equipment Y.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

**Example 3—Standard Equipment and Installation**

Company E is an experienced manufacturer of equipment used in the construction industry. Company E's products range from small to large individual pieces of automated machinery to complex systems containing numerous components. Unit selling prices range from $200,000 to $2.5 million. Unit selling prices are quoted inclusive of installation.

Each equipment model has standard performance specifications and is not otherwise customized for the specific needs of a buyer. Company E extensively tests the equipment against those specifications prior to shipment. The installation process does not involve changes to the features or capabilities of the equipment and does not require proprietary information about the equipment in order for the installed equipment to perform to specifications.

While there are others in the industry with sufficient knowledge about the installation process for the equipment, as a practical matter, most purchasers engage Company E to perform the installation services. However, some customers choose not to have the equipment installation performed by Company E for various reasons (for example, their proprietary use of the equipment, their preference that installation be performed by their own employees or other vendors with whom the customers have established relationships, or for their own convenience). If a potential customer wishes to purchase equipment without installation, Company E will not reduce the quoted selling price for the commensurate value of the installation. If a customer chooses to purchase equipment without installation, there is only one deliverable.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

Assume that a customer enters into an arrangement to purchase equipment with a price of $200,000 from Company E and chooses to have Company E perform the installation for that equipment. The customer is obligated to pay Company E the arrangement consideration upon delivery of the equipment. The price of the installation service when it is performed by vendors other than Company E is $8,000. There are no refund rights (general or otherwise) in the arrangement. Company E is considering whether (a) the equipment and (b) the installation service are separable units of accounting in the arrangement.

**Evaluation:** The first condition for separation is met for the equipment. The equipment has standalone value as it is sometimes sold separately by Company E. The second condition for separation is also met. Objective and reliable evidence of the fair value for the installation exists. There is sufficient evidence of the fair value of the installation on a separate component basis (as evidenced by the amount charged by independent third parties). Finally, there are no general refund rights. Therefore, the equipment and the installation are considered separate units of accounting in the arrangement.

Regardless of whether the installation is performed, the total arrangement consideration is $200,000. Therefore, consideration in the arrangement should be allocated on a relative fair value basis. In this case, the arrangement consideration of $200,000 should be allocated to the separate units of accounting based on their relative fair values. Thus, allocation of the arrangement consideration would be $192,308 [$200,000 × ($200,000 ÷ [$200,000 + $8,000])] to the equipment and $7,692 [$200,000 × ($8,000 ÷ [$200,000 +

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

$8,000])] to the installation service. Additionally, none of the amount allocable to the equipment is contingent upon performing the installation.

**Example 4—Automobiles Sold with Lifetime Maintenance Services**

Company A is an established auto dealer. Company A's service center provides all scheduled maintenance services (including oil changes) at no additional charge (other than for parts) for any customer who purchases an automobile from Company A for the period that the customer owns the automobile. The customer may also choose to have the maintenance services performed by others without affecting the vehicle warranty, but most customers utilize Company A's maintenance services unless they move to a distant location. Neither Company A nor any other dealer sells the automobile without the lifetime maintenance services. However, Company A sells maintenance services separately to customers who did not purchase their vehicles from Company A. The automobiles are sold subject to a limited warranty and there are no refund rights in the arrangement. Customers are obligated to Company A for all arrangement consideration upon taking delivery of the automobile. Since lifetime maintenance services are not sold separately by Company A, they are not within the scope of Technical Bulletin 90-1.

**Evaluation:** The first condition for separation is met for the automobile because, even though the automobile is not sold separately by any vendor, it is considered to have standalone value because the customer could resell the automobile on a standalone basis. The second condition for separation also is met. There is sufficient evidence of the fair value of the maintenance services on a separate component basis (as evidenced by the amount charged on a standalone basis by Company A for maintenance services and data

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

available from which to estimate the volume and types of maintenance services provided during a typical customer's ownership of the vehicle). Finally, there are no refund rights (general or otherwise) in the arrangement. Therefore, the automobile and the maintenance services should be considered separate units of accounting in the arrangement.

Consideration in the arrangement should be allocated using the residual method. The fair value of the maintenance services should be determined as described in the above paragraph. The remaining arrangement consideration should be allocated to the automobile. Additionally, none of the amount allocable to the automobile is contingent upon providing the maintenance services.

**Example 5—Sale of Home Appliances with Installation and Maintenance Services**

Company S is an experienced home appliance dealer. Company S also offers a number of services together with the home appliances that it sells. Assume that Company S regularly sells Appliance W on a standalone basis. Company S also sells installation services and maintenance services for Appliance W. However, Company S does not offer installation or maintenance services to customers who buy Appliance W from other vendors. Pricing for Appliance W is as follows:

| | |
|---|---|
| • Appliance W only | $800 |
| • Appliance W with installation service | $850 |
| • Appliance W with maintenance services | $975 |
| • Appliance W with installation and maintenance services | $1,000 |

Note also that the incremental amount charged by Company S for installation of $50 approximates the amount charged by independent third parties.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

Appliance W is sold subject to a general right of return. If a customer purchases Appliance W with installation and/or maintenance services, in the event that Company S does not complete the services satisfactorily, the customer is only entitled to a refund of the portion of the fee that exceeds $800.

Assume that a customer purchases Appliance W with both installation and maintenance services for $1,000. Based on its experience, Company S believes that it is probable that installation of the equipment will be performed satisfactorily to the customer. Company S is evaluating whether Appliance W and the installation service represent separate units of accounting. (The maintenance services are separately priced at $175 and should be accounted for based on the guidance in Technical Bulletin 90-1.)

**Evaluation:** The first condition for separation is met for Appliance W because it is sometimes sold separately by Company S. The second condition for separation is also met. There is objective and reliable evidence of the fair value of the installation on a separate component basis (as evidenced by the amount charged by independent third parties). The third condition for separation is met because, even though a general right of return exists, performance of the appliance installation is probable and within the control of Company S. Therefore, Appliance W and installation should be accounted for as separate units of accounting.

Company S would allocate $175 of the arrangement consideration to the maintenance services based on the guidance in Technical Bulletin 90-1. Without considering whether any of the amount otherwise allocable to Appliance W is contingent upon the performance of the installation, Company S would allocate the remainder of the

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

arrangement consideration ($825) to Appliance W and the installation service in proportion to their fair values. The fair value of Appliance W is its price when sold separately ($800), and the fair value of the installation service is the amount charged by independent third parties, which approximates $50. Therefore, the amounts otherwise allocable to Appliance W and to the installation services are $776 [$825 × ($800 ÷ [$800 + $50])] and $49 [$825 × ($50 ÷ [$800 + $50])], respectively. Since the customer is entitled only to a refund of the portion of the fee that exceeds $800 if the installation is not performed, no portion of the amount allocable to Appliance W is contingent upon that installation.

**Example 6—Biotech License, Research and Development, and Contract Manufacturing Agreement**

Biotech Company (Biotech) enters into an agreement with Pharmaceutical Company (Pharma). The agreement includes (a) Biotech licensing certain rights to Pharma, (b) Biotech providing research and development services to Pharma, and (c) Biotech contract manufacturing product for Pharma. Additional details on each of those aspects of the agreement follow.

*License:* Biotech licenses certain rights on an exclusive basis to Pharma for a period of 10 years. The license gives Pharma the exclusive right to market, distribute, and manufacture Drug B as developed using Technology A. Biotech retains all ownership rights to Technology A and Drug B. There are no when-and-if-available clauses or other performance obligations associated with the license, except as described below.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

*Research and development:* Biotech agrees to provide research and development services on a best-efforts basis to Pharma. Biotech agrees to devote four full-time equivalents (FTEs) to the research and development activities, and Pharma expects to devote several full-time equivalents to the research and development activities as well. The objective of the research and development services is to develop Drug B using Technology A. The ultimate objective is to receive Food and Drug Administration (FDA) approval on Drug B.

*Contract manufacturing:* If successfully developed, Biotech agrees to manufacture Drug B for Pharma for a period of five years.

Compensation under the arrangement is as follows:

- Biotech receives $5 million up-front upon signing the agreement.
- Biotech receives $2 million upon meeting each of 4 defined milestones ($8 million in total if all 4 defined milestones are met).
- Biotech receives $250,000 per year for each FTE that performs research and development activities.
- Biotech receives "cost plus 30 percent" for manufacturing Drug B (that is, Biotech will receive compensation for its direct costs plus a 30 percent margin for manufacturing Drug B).

None of these payments, once received, are refundable, even if FDA approval is never received. In addition, while Biotech must perform on a best-efforts basis, it is not obligated to achieve the milestones.

While Biotech has licensed certain rights related to Technology A to other parties, Biotech has not licensed Technology A to others for use in the development of Drug B. Likewise, Biotech has not licensed the marketing, distribution, or manufacturing rights of Drug B to any other party.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

Pharma must use Biotech to perform the research and development activities necessary to develop Drug B using Technology A because the know-how and expertise related to Technology A is proprietary to Biotech. In other words, Biotech is the only party capable of performing the level and type of research and development services required by Pharma under the agreement. Biotech has determined that the fees charged for the research and development services (that is, the $250,000 per year for each FTE that performs research and development activities) are competitive with what other third-party vendors charge for similar research and development services (that is, they represent the fair value of those services). In addition, Biotech regularly provides similar research and development services to other customers for comparable fees. The fees earned by Biotech if it reaches the milestones represent performance bonuses that are contingent only on performance of the research and development services (that is, they are unrelated to the contract manufacturing deliverable and are not part of the fair value of the research and development services).

Assuming that the contract manufacturing provided by Biotech could be provided by other contract manufacturers (who would not be dependent on Biotech for critical ingredients), the license agreement gives Pharma the right to manufacture the drug; no proprietary information related to the manufacturing process would preclude other parties from being able to manufacture Drug B. Biotech has determined that cost plus 30 percent is competitive with what other third-party contract manufacturers charge for manufacturing drugs similar to Drug B (that is, it represents the fair value of those services). In addition, Biotech regularly provides similar contract manufacturing services for other customers for comparable fees.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

**Evaluation:** There are three deliverables in this arrangement that should be considered for separation: (1) license, (2) research and development activities, and (3) contract manufacturing. The efforts expended by Biotech to reach each of the four defined milestones are considered part of the research and development activities and are not evaluated on a standalone basis. The fees earned by Biotech if it reaches the milestones represent performance bonuses that are contingent only on performance of the research and development services (that is, they are unrelated to the contract manufacturing deliverable).

The license deliverable does not meet the first criterion for separation. The license deliverable does not have standalone value to Pharma. Because Drug B has not yet been developed, the license is of no value to Pharma without the ensuing research and development activities using Technology A, which is proprietary to Biotech. Likewise, Pharma could not sell the license on a standalone basis to another party (that is, without Biotech agreeing to provide the research and development activities for that other party).

On a combined basis, however, the license and research and development activities have value on a standalone basis. That is, Biotech, in similar arrangements, has sold the license and research and development separately from the manufacturing process. Additionally, Pharma could sell that combined unit of accounting to another party.

The combined unit of accounting (license and research and development activities) also meets the second criterion for separation from the contract manufacturing because Biotech has objective and reliable evidence of the fair value of the contract manufacturing (based on what it and other third parties charge for that type of service).

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

Finally, there are no general rights of return in the arrangement. Therefore, the combined unit of accounting should be considered a separate unit of accounting in the arrangement.

Biotech has not entered into any other agreements in which it has (a) licensed the marketing, distribution, and manufacturing rights to Technology A for use in the development of Drug B and (b) agreed to perform research and development activities to develop Technology A into Drug B. In addition, given the unique nature of Technology A, third-party fair value evidence for the combined unit of accounting also does not exist. As such, Biotech does not have objective and reliable evidence of the fair value of the combined unit of accounting. Based on that analysis, the method of allocating the arrangement consideration would be the residual method because fair value evidence exists for the contract manufacturing, but not the combined unit of accounting. Because the contract manufacturing deliverable is priced at its fair value, none of the other arrangement consideration should be allocated to the contract manufacturing deliverable.

**Example 7—Sale of Medical Equipment with Cartridges and Installation**

Company M manufactures and sells complex medical equipment to physicians and hospitals for medical scanning purposes. Prior to shipment, each piece of equipment is extensively tested to meet company and FDA specifications. The equipment is shipped fully assembled, but some installation and setup is required.

Installation is a standard process, outlined in the owner's manual, consisting principally of uncrating, calibrating, and testing the equipment. A purchaser of the equipment could complete the process using the information in the owner's manual, although it would probably take significantly longer than it would take Company M's technicians to

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

perform the tasks. While the process is not complex and does not involve proprietary information, other vendors do not provide the service. Historically, most installations are performed by Company M and are completed within 7–24 days of shipment. Installation is included in the overall sales price of the equipment (that is, Company M does not sell the equipment on a noninstalled basis) and has an estimated fair value of $20,000 (based on per diem rates for technician time).

In addition, the customer must pay for cartridges that record images. The retail price of each cartridge is $250. Company M is the only manufacturer of the cartridges but also sells them on a wholesale basis through a wide network of distributors. Each cartridge can handle only a specific number of scans. Once a cartridge is exhausted, a new one must be purchased in order to use the equipment. Company M always sells its equipment with a starter supply of 20 cartridges.

The sales price of the arrangement that consists of the equipment, installation, and 20 cartridges is $400,000. The customer is obligated to pay in full upon delivery of the equipment. The customer is entitled to a refund of $25,000 if Company M does not perform the installation or if the 20 cartridges are not delivered. On March 15, Company M delivers the equipment and on April 5 delivers the 20 cartridges and performs the installation. Company M is evaluating whether delivery of the equipment represents a separate unit of accounting.

**Evaluation:** The first condition for separation is met for the equipment because, even though Company M has never sold the equipment without the cartridges, a customer could resell the equipment (in a primary or secondary market). The second condition for

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

separation is also met because objective and reliable evidence of fair value exists for the cartridges and the installation based on third-party evidence and Company M's entity-specific evidence of fair value. The third condition for separation is met because there are no general rights of return involved in this arrangement. Therefore, the equipment should be accounted for as a separate unit of accounting.

The residual method should be used to allocate the arrangement consideration. Accordingly, the amount otherwise allocable to the equipment, cartridges, and installation would be as follows: $375,000 to the equipment ($400,000 – [$250 × 20] – $20,000), $5,000 to the cartridges ($250 × 20), and $20,000 to the installation. Additionally, no portion of the amount allocable to the equipment is contingent upon the delivery of the cartridges or performance of the installation. That is, if the cartridges are not delivered and the installation is not performed, Company M would be entitled to $375,000.

**Example 8—Sale of Computer System**

Company B sells computer systems. On April 20, a customer purchases a computer system from Company B for $1,000. The system consists of a CPU, a monitor, and a keyboard. Solely for purposes of simplifying this illustration of the application of the guidance in this Issue, it is assumed that the CPU does not include software that is more-than-incidental to the products in the arrangement; therefore, the provisions of SOP 97-2 do not apply. On April 30, Company B delivers the CPU to the customer without the monitor or keyboard. Each of the items can be purchased separately at a cost of $700 for the CPU, $300 for the monitor, and $100 for the keyboard. The CPU could function with

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

monitors or keyboards manufactured by others, who have them readily available. The customer is entitled to a refund equal to the separate price of any item composing the system that is not delivered. The arrangement does not include any general rights of return. Company B is evaluating whether delivery of the CPU represents a separate unit of accounting.

**Evaluation:** The first condition for separation is met for the CPU, as it is sold separately by Company B. The second condition for separation is met because the fair values of the undelivered items (keyboard and monitor) are objectively and reliably determined based on the price of that equipment when sold separately by Company B. The third condition for separation is met because there are no general rights of return. Therefore, the CPU should be accounted for as a separate unit of accounting.

Without considering whether any portion of the amount allocable to the CPU is contingent upon delivery of the other items, Company B would allocate the arrangement consideration on a relative fair value basis. Therefore, the portion of the arrangement fee otherwise allocable to the CPU is $636.36 ($1,000 × [$700 ÷ $1,100]), of which $36.36 ($636.36 – [$1,000 – $400]) is subject to refund if the monitor and keyboard are not delivered. Therefore, the amount allocable to the CPU is limited to $600, which is the amount that is not contingent upon delivery of the monitor and keyboard.

**Example 9—Sale of 12 Bolts of Fabric**

Company D sells fabric for use in manufacturing clothing. Customers may purchase fabric from Company D in individual 50-yard bolts or in bulk lots consisting of multiple bolts. One of Company D's customers (Customer A) is a manufacturer of band uniforms

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

that prefers to purchase the fabric in bulk because it needs the fabric to have a high level of consistency in color and quality. Customer A enters into an arrangement with Company D to purchase a 12-bolt bulk lot of fabric that is to be delivered by Company D in 3 4-bolt installments over a period of 3 months. At Customer A's request, Company D provides a customer satisfaction guarantee that it will refund double the price (up to a maximum of the total arrangement fee) for each bolt of fabric that is not delivered or not delivered from the same dye lot as the initial installment. That is, the double-money-back guarantee provides that the customer, in addition to having no obligation for bolts of fabric not delivered or not delivered from the appropriate dye lot, will receive a refund for (or will not be obligated to pay for) an equal number of bolts. There are no general rights of return included in the arrangement. The price for an individual 50-yard bolt of fabric is $160, and the price for a 12-bolt bulk lot is $1,824.

In determining the units of accounting under the arrangement, Company D considered the following scenario:

> Company D sold the 12-bolt bulk lot of fabric to Customer A on November 1, 20X2. Company D will deliver the first of three four-bolt installments of fabric on November 15 and will deliver the remaining installments on December 15, 20X2, and January 15, 20X3. Customer A is obligated to Company D for the full price of the fabric on November 15, 20X2, subject to the money-back guarantee. Company D has sufficient production capacity and inventory to deliver all of the fabric in accordance with the installment provisions of the arrangement and, therefore, believes that it will do so. In addition, Company D has entered into similar arrangements with many other customers in the past and has rarely failed to deliver fabric from the appropriate dye lot under its bulk-sale arrangements.

**Evaluation:** The first condition for separation is met for the delivered fabric because Company D also sells bolts of fabric individually. The second condition for separation is also met because objective and reliable evidence of fair value exists based on Company

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

D's vendor-specific evidence of fair value. Arrangement consideration would be allocated evenly among the 12 bolts of fabric because each has an identical fair value (based on Company D's vendor-specific evidence of fair value). The third condition for separation is met because there are no general rights of return in the arrangement. Therefore, the delivered fabric should be accounted for as a separate unit of accounting.

However, in allocating the arrangement consideration, no amount is allocable to the initial delivered fabric because the arrangement provides the customer with a double-money-back guarantee for each bolt of fabric not delivered from the same dye lot as the initial installment. However, upon delivery of the second four-bolt installment (assuming that installment is delivered from the same dye lot as the initial installment), the amount allocable to that installment would be the amount related to four bolts of fabric. That is, if the third installment was not delivered or was not delivered from the same dye lot as the initial installment, Company D would be entitled only to the price charged for four bolts of fabric.

**Example 10—Painting Contract**

PainterCo is a contractor that provides painting services for commercial and private residences. PainterCo contracts with a customer to paint the customer's house for $3,000. The price is inclusive of all paint, which is obtained by PainterCo at a cost of $800. The customer is given the right to purchase paint separately if so desired (although the customer did not opt to do so in this example). The paint would have cost the customer $900 if purchased from a hardware store. The painting service would have cost $2,150 if purchased without the paint.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution

All paint necessary to complete the project is delivered to the customer's house prior to the beginning of the work. The customer has a general right of return with respect to any unopened can of paint. Further, the customer may receive a full refund of the sales price for all of the paint (whether or not the cans were opened) if PainterCo does not paint the house. PainterCo has always completed the painting service in accordance with contract terms and, therefore, believes that performance of the painting service in this arrangement is probable. PainterCo does not sell paint without providing the painting service.

**Evaluation:** The first condition for separation is met because the paint is sold separately by other vendors. The second condition for separation is also met for the painting service because objective and reliable evidence of fair value exists as PainterCo sells the painting service separately. The third condition for separation is met because, even though a general right of return exists, performance of the painting service is probable and within the control of PainterCo. Therefore, the paint and the painting service are considered separate units of accounting.

However, in allocating the arrangement consideration, no amount would be allocated to the paint because, in the event that PainterCo does not perform the painting service, the customer may return all of the paint for a full refund.

Copyright © 2003, Financial Accounting Standards Board Not for redistribution