# EXHIBIT H

U.S. Securities and Exchange Commission

## SECURITIES AND EXCHANGE COMMISSION

## 17 CFR Part 211

## [Release No. SAB 108]

## Staff Accounting Bulletin No. 108

**AGENCY:** Securities and Exchange Commission.

**ACTION:** Publication of Staff Accounting Bulletin.

**SUMMARY:** The interpretations in this Staff Accounting Bulletin express the staff's views regarding the process of quantifying financial statement misstatements. The staff is aware of diversity in practice. For example, certain registrants do not consider the effects of prior year errors on current year financial statements, thereby allowing improper assets or liabilities to remain unadjusted. While these errors may not be material if considered only in relation to the balance sheet, correcting the errors could be material to the current year income statement. Certain registrants have proposed to the staff that allowing these errors to remain on the balance sheet as assets or liabilities in perpetuity is an appropriate application of generally accepted accounting principles. The staff believes that approach is not in the best interest of the users of financial statements. The interpretations in this Staff Accounting Bulletin are being issued to address diversity in practice in quantifying financial statement misstatements and the potential under current practice for the build up of improper amounts on the balance sheet.

**DATE:** September 13, 2006.

**FOR FURTHER INFORMATION CONTACT:** Mark S. Mahar, Office of the Chief Accountant (202) 551-5300, Todd E. Hardiman, Division of Corporation Finance (202) 551-3400, or Toai P. Cheng (202) 551-6918, Division of Investment Management, Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549.

**SUPPLEMENTARY INFORMATION:** The statements in staff accounting bulletins are not rules or interpretations of the Commission, nor are they published as bearing the Commission's official approval. They represent interpretations and practices followed by the Division of Corporation Finance, the Division of Investment Management and the Office of the Chief Accountant in administering the disclosure requirements of the Federal

securities laws.

Nancy M. Morris
Secretary

Date: September 13, 2006

---

Part 211 – [AMEND]

Accordingly, Part 211 of Title 17 of the Code of Federal Regulations is amended by adding Staff Accounting Bulletin No. 108 to the table found in Subpart B.

## STAFF ACCOUNTING BULLETIN NO. 108

The staff hereby adds Section N to Topic 1, Financial Statements, of the Staff Accounting Bulletin Series. Section N provides guidance on the consideration of the effects of prior year misstatements in quantifying current year misstatements for the purpose of a materiality assessment.

*Note*: The text of SAB 108 will not appear in the Code of Federal Regulations.

### Topic 1: Financial Statements

* * * * *

### N. Considering the Effects of Prior Year Misstatements when Quantifying Misstatements in Current Year Financial Statements

*Facts:* During the course of preparing annual financial statements, a registrant is evaluating the materiality of an improper expense accrual (*e.g.*, overstated liability) in the amount of $100, which has built up over 5 years, at $20 per year.[1] The registrant previously evaluated the misstatement as being immaterial to each of the prior year financial statements (*i.e.*, years 1-4). For the purpose of evaluating materiality in the current year (*i.e.*, year 5), the registrant quantifies the error as a $20 overstatement of expenses.

*Question 1:* Has the registrant appropriately quantified the amount of this error for the purpose of evaluating materiality for the current year?

*Interpretive Response:* No. In this example, the registrant has only quantified the effects of the identified unadjusted error that arose in the current year income statement. The staff believes a registrant's materiality evaluation of an identified unadjusted error should quantify the effects of the identified unadjusted error on each financial statement and related financial statement disclosure.

Topic 1M notes that a materiality evaluation must be based on all relevant quantitative and qualitative factors.[2] This analysis generally begins with quantifying potential misstatements to be evaluated. There has been diversity in practice with respect to this initial step of a materiality analysis.

The diversity in approaches for quantifying the amount of misstatements primarily stems from the effects of misstatements that were not corrected at the end of the prior year ("prior year misstatements"). These prior year misstatements should be considered in quantifying misstatements in current year financial statements.

The techniques most commonly used in practice to accumulate and quantify misstatements are generally referred to as the "rollover" and "iron curtain" approaches.

The rollover approach, which is the approach used by the registrant in this example, quantifies a misstatement based on the amount of the error originating in the current year income statement. Thus, this approach ignores the effects of correcting the portion of the current year balance sheet misstatement that originated in prior years (*i.e.*, it ignores the "carryover effects" of prior year misstatements).

The iron curtain approach quantifies a misstatement based on the effects of correcting the misstatement existing in the balance sheet at the end of the current year, irrespective of the misstatement's year(s) of origination. Had the registrant in this fact pattern applied the iron curtain approach, the misstatement would have been quantified as a $100 misstatement based on the end of year balance sheet misstatement. Thus, the adjustment needed to correct the financial statements for the end of year error would be to reduce the liability by $100 with a corresponding decrease in current year expense.

As demonstrated in this example, the primary weakness of the rollover approach is that it can result in the accumulation of significant misstatements on the balance sheet that are deemed immaterial in part because the amount that originates in each year is quantitatively small. The staff is aware of situations in which a registrant, relying on the rollover approach, has allowed an erroneous item to accumulate on the balance sheet to the point where eliminating the improper asset or liability would itself result in a material error in the income statement if adjusted in the current year. Such registrants have sometimes concluded that the improper asset or liability should remain on the balance sheet into perpetuity.

In contrast, the primary weakness of the iron curtain approach is that it does not consider the correction of prior year misstatements in the current year (*i.e.*, the reversal of the carryover effects) to be errors. Therefore, in this example, if the misstatement was corrected during the current year such that no error existed in the balance sheet at the end of the current year, the reversal of the $80 prior year misstatement would not be considered an error in the current year financial statements under the iron curtain approach.

Implicitly, the iron curtain approach assumes that because the prior year financial statements were not materially misstated, correcting any immaterial errors that existed in those statements in the current year is the "correct" accounting, and is therefore not considered an error in the current year. Thus, utilization of the iron curtain approach can result in a misstatement in the current year income statement not being evaluated as an error at all.

The staff does not believe the exclusive reliance on either the rollover or iron curtain approach appropriately quantifies all misstatements that could be material to users of financial statements.

In describing the concept of materiality, FASB Concepts Statement No. 2, *Qualitative Characteristics of Accounting Information*, indicates that materiality determinations are based on whether "it is probable that the judgment of a reasonable person relying upon the report would have been changed or influenced *by the inclusion or correction of the item*" (emphasis added).[3] The staff believes registrants must quantify the impact of correcting all misstatements, including both the carryover and reversing effects of prior year misstatements, on the current year financial statements. The staff believes that this can be accomplished by quantifying an error under both the rollover and iron curtain approaches as described above and by evaluating the error measured under each approach. Thus, a registrant's financial statements would require adjustment when either approach results in quantifying a misstatement that is material, after considering all relevant quantitative and qualitative factors.

As a reminder, a change from an accounting principle that is not generally accepted to one that is generally accepted is a correction of an error.[4]

The staff believes that the registrant should quantify the current year misstatement in this example using both the iron curtain approach (*i.e.*, $100) and the rollover approach (*i.e.*, $20). Therefore, if the $100 misstatement is considered material to the financial statements, after all of the relevant quantitative and qualitative factors are considered, the registrant's financial statements would need to be adjusted.

It is possible that correcting an error in the current year could materially misstate the current year's income statement. For example, correcting the $100 misstatement in the current year will:

- Correct the $20 error originating in the current year;
- Correct the $80 balance sheet carryover error that originated in Years 1 through 4; but also
- Misstate the current year income statement by $80.

If the $80 understatement of current year expense is material to the current year, after all of the relevant quantitative and qualitative factors are considered

considered, the prior year financial statements should be corrected, even though such revision previously was and continues to be immaterial to the prior year financial statements. Correcting prior year financial statements for immaterial errors would not require previously filed reports to be amended. Such correction may be made the next time the registrant files the prior year financial statements.

The following example further illustrates the staff's views on quantifying misstatements, including the consideration of the effects of prior year misstatements:

*Facts:* During the course of preparing annual financial statements, a registrant is evaluating the materiality of a sales cut-off error in which $50 of revenue from the following year was recorded in the current year, thereby overstating accounts receivable by $50 at the end of the current year. In addition, a similar sales cut-off error existed at the end of the prior year in which $110 of revenue from the current year was recorded in the prior year. As a result of the combination of the current year and prior year cut-off errors, revenues in the current year are understated by $60 ($110 understatement of revenues at the beginning of the current year partially offset by a $50 overstatement of revenues at the end of the current year). The prior year error was evaluated in the prior year as being immaterial to those financial statements.

*Question 2:* How should the registrant quantify the misstatement in the current year financial statements?

*Interpretive Response:* The staff believes the registrant should quantify the current year misstatement in this example using both the iron curtain approach (*i.e.*, $50) and the rollover approach (*i.e.*, $60). Therefore, assuming a $60 misstatement is considered material to the financial statements, after all relevant quantitative and qualitative factors are considered, the registrant's financial statements would need to be adjusted.

Further, in this example, recording an adjustment in the current year could alter the amount of the error affecting the current year financial statements. For instance:

- If only the $60 understatement of revenues were to be corrected in the current year, then the overstatement of current year end accounts receivable would increase to $110; or,
- If only the $50 overstatement of accounts receivable were to be corrected in the current year, then the understatement of current year revenues would increase to $110.

If the misstatement that exists after recording the adjustment in the current year financial statements is material (considering all relevant quantitative and qualitative factors), the prior year financial statements should be corrected, even though such revision previously was and continues to be

immaterial to the prior year financial statements. Correcting prior year financial statements for immaterial errors would not require previously filed reports to be amended. Such correction may be made the next time the registrant files the prior year financial statements.

If the cut-off error that existed in the prior year was not discovered until the current year, a separate analysis of the financial statements of the prior year (and any other prior year in which previously undiscovered errors existed) would need to be performed to determine whether such prior year financial statements were materially misstated. If that analysis indicates that the prior year financial statements are materially misstated, they would need to be restated in accordance with Statement 154.[5]

*Facts:* When preparing its financial statements for years ending on or before November 15, 2006, a registrant quantified errors by using either the iron curtain approach or the rollover approach, but not both. Based on consideration of the guidance in this Staff Accounting Bulletin, the registrant concludes that errors existing in previously issued financial statements are material.

*Question 3:* Will the staff expect the registrant to restate prior period financial statements when first applying this guidance?

*Interpretive Response:* The staff will not object if a registrant[6] does not restate financial statements for fiscal years ending on or before November 15, 2006, if management properly applied its previous approach, either iron curtain or rollover, so long as all relevant qualitative factors were considered.

To provide full disclosure, registrants electing not to restate prior periods should reflect the effects of initially applying the guidance in Topic 1N in their annual financial statements covering the first fiscal year ending after November 15, 2006. The cumulative effect of the initial application should be reported in the carrying amounts of assets and liabilities as of the beginning of that fiscal year, and the offsetting adjustment should be made to the opening balance of retained earnings for that year. Registrants should disclose the nature and amount of each individual error being corrected in the cumulative adjustment. The disclosure should also include when and how each error being corrected arose and the fact that the errors had previously been considered immaterial.

Early application of the guidance in Topic 1N is encouraged in any report for an interim period of the first fiscal year ending after November 15, 2006, filed after the publication of this Staff Accounting Bulletin. In the event that the cumulative effect of application of the guidance in Topic 1N is first reported in an interim period other than the first interim period of the first fiscal year ending after November 15, 2006, previously filed interim reports need not be amended. However, comparative information presented in reports for interim periods of the first year subsequent to initial application should be adjusted to reflect the cumulative effect adjustment as of the beginning of the year of initial application. In addition, the disclosures of

selected quarterly information required by Item 302 of Regulation S-K should reflect the adjusted results.

---

[1] For purposes of these facts, assume the registrant properly determined that the overstatement of the liability resulted from an error rather than a change in accounting estimate. See FASB Statement 154, *Accounting Changes and Error Corrections*, paragraph 2, for the distinction between an error and a change in accounting estimate.

[2] Topic 1N addresses certain of these quantitative issues, but does not alter the analysis required by Topic 1M.

[3] Concepts Statement 2, paragraph 132. See also Concepts Statement 2, Glossary of Terms - Materiality.

[4] Statement 154, paragraph 2h.

[5] Statement 154, paragraph 25.

[6] If a registrant's initial registration statement is not effective on or before November 15, 2006, and the registrant's prior year(s) financial statements are materially misstated based on consideration of the guidance in this Staff Accounting Bulletin, the prior year financial statements should be restated in accordance with Statement 154, paragraph 25. If a registrant's initial registration statement is effective on or before November 15, 2006, the guidance in the interpretive response to Question 3 is applicable.

*http://www.sec.gov/interp/account/sab108.htm*

---