# EXHIBIT I

# IMAX Corporation

## Auditor's preliminary report to the Audit Committee

## For the year ended December 31, 2005

**Meeting Date: March 1, 2006**

PRICEWATERHOUSECOOPERS

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00095

| Matter to be communicated | Auditor's response |
|---|---|
| **Auditor's responsibility for conducting the Audits in Accordance with PCAOB Standards** | *Engagement:*<br>We have been engaged to complete the following for the IMAX Corporation ("the Company"):<br>▪ Audit the consolidated financial statements of the Company at December 31, 2005 and for the year then ending prepared in accordance with US GAAP. The objective of our audit was to obtain reasonable, but not absolute, assurance about whether the financial statements, prepared in accordance with generally accepted accounting principles, are free from material misstatement.<br>▪ Audit the Company's internal control over financial reporting used to prepare the US GAAP statements as of December 31, 2005. The objective of an audit of internal control over financial reporting is the expression of opinions on the effectiveness of internal control over financial reporting and on management's assessment as to whether the Company maintained effective internal control over financial reporting. This audit included obtaining an understanding of internal control over financial reporting, evaluating management's assessment, and testing and evaluating the design and operating effectiveness of internal control.<br><br>*Audit Approach:*<br>Our audit scope was consistent with our plan presented to the Audit Committee on April 12, 2005.<br><br>*Status of Audits:*<br>As of the writing of this report, February 23, 2006, we have not completed all the audit procedures that are required to finalize our audit opinions. We have included a list of the outstanding procedures as Appendix A to this report. We will update the committee as to the current outstanding position at the March 1st meeting as we will continue to work through the procedures over the next week. Our report will remain unsigned until the financial statements are filed with the various regulators and we will update our audit procedures through to that date. The Company is currently anticipating that the financial statements will be filed on or around March 9th. |



PRICEWATERHOUSECOOPERS

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00096

Confidential

| Matter to be communicated | Auditor's response |
|---|---|
| **Significant accounting policies, including critical accounting policies and alternative treatments within generally accepted accounting principles and the auditor's judgment about the quality of accounting principles** | |
| • The *initial selection of and changes in significant accounting policies* or their application; methods used to account for significant unusual transactions; and effect of significant policies in controversial or emerging areas for which there is a lack of authoritative guidance or consensus. | During the year, the Company did not adopt any new accounting policies. However, the fact pattern concerning post installation obligations of installed theatre systems lead to the application of multiple elements arrangement accounting to theatre system revenues. Previously, such accounting had only been applicable to multiple elements in lease terminations and bundled contracts that included film licences. The 2005 accounting involves the application of an existing accounting standard and the Company's accounting policy to changed circumstances. It is therefore not considered a change in accounting policy. |
| • *Critical accounting policies and practices* applied by the client in its financial statements; | The Company's critical accounting policies and practices are consistent with the prior year and include: Accounting for Leases and Revenue Recognition thereon; Accounting for settlement revenue; Valuation of Long-lived assets; Accounting for taxes, including valuation allowances on deferred tax assets; Accounting for employee future benefits primarily focused on the pension plan for the Co-CEO's; Stock based compensation including the use of an adopted binomial model for the calculation of fair values; |
| • *Alternative treatments within GAAP* for accounting policies and practices related to material items, including recognition, measurement, presentation and disclosure alternatives, that have been discussed with client management during the current audit period. | During our audit, we spent a considerable amount of time reviewing the Company's support for the accounting for the 14 system installations recorded in the 4th quarter. Our focus was mainly on the post installation obligations of ten installed systems where the theatre had not opened to the public by December 31, 2005. Management considered its positions with reference to both its internal revenue recognition guideline and SAB 104 (the SEC's guidance for registrants on revenue recognition).<br><br>As part of our assessment of management's decisions in this area we considered a number of factors, including:<br>▪ Client acceptance sign off obtained by the Company, including any exceptions noted by the customer; |



PRICEWATERHOUSECOOPERS

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00097

| Matter to be communicated | Auditor's response |
|---|---|
| | • Installation sign-off checklists completed by IMAX installers;<br>• Concessions granted to certain customers in the 4th quarter, involving both deferral of certain contractual payments, and granting of marketing allowances;<br>• Remaining costs expected to be incurred in 2006 in relationship to the total costs of the theatre system;<br>• Items noted as remaining obligations at December 31, 2005, including the full installation or delivery of the screen, projector alignment, sound tuning, projectionist training, reinstallation obligations, and various other items.<br>• Information from in-house general counsel as to the customer's entitlement to partial refunds on potential non-fulfilment of the remaining obligations existing at December 31, 2005.<br><br>In addition we received external confirmations from the customers on a sample of five of the ten installations above.<br><br>Management concluded that all of its post-installation obligations are inconsequential or perfunctory. Accordingly, revenues on the systems were initially fully recognized by management.<br><br>Upon final review of the facts and circumstances around these transactions, we indicated to management that we believe certain of the obligations to be consequential and not perfunctory. Accordingly, the preferred accounting treatment for these installations was to first identify any elements which could be accounted for separately under multiple element accounting guidance. Any such separable elements are required to be fair valued, and, if undelivered, revenue and costs relating to these elements would be deferred until the element was delivered. For separation of elements to occur, specified criteria must be met under applicable accounting standards.<br><br>This accounting treatment has been adopted by the Company, and thus two material elements have been identified and deferred: the screen; and for one customer, a contingent obligation to reinstall the system in another location. Based on the identification of these two elements, the Company has deferred the screen system in seven of the ten installations, and the reinstallation obligation in one of the ten. This resulted in management recording an adjustment to defer revenue of $0.8 million and costs of $0.6 million resulting in gross margin impact of $0.2 million.<br><br>After the deferral of these two elements, management has concluded for the ten installations that the remaining obligations on the delivered elements are inconsequential or perfunctory, and has therefore recognized revenue on these elements. |



FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00098

Confidential

| Matter to be communicated | Auditor's response |
|---|---|
| **Significant Transactions During the Year** | The following significant transactions occurred during the year and involved the following impact on net income:<br><br>Settlement Revenue (14 transactions) $14.3 million<br>Recovery on DPI loans $ 2.0 million<br>Recovery of NIL provisions $ 0.8 million<br><br>Management's report to the Audit Committee includes further detail on the accounting for these transactions. |
| **Management judgements and accounting estimates** | In preparing the financial statements as at December 31, 2005, the following were the more significant estimates made by management:<br><br>• Allowances for uncollectibility of accounts receivable and net investment in leases<br>• Allowances for inventory obsolescence<br>• Future cash flows associated with long-lived assets and film assets, and related estimates of fair value<br>• Estimates of ultimate revenues for film assets and participation costs<br>• Fair value of goodwill<br>• Valuation allowances for uncertainty of realization of deferred income tax assets<br>• Estimates for tax exposures<br>• Estimates underlying the accounting for the Company's defined benefit pension plan<br>• Fair value of theater systems for FAS 13 lease calculations<br>• Allowances on loans receivable from Digital Projection Inc. (fully provided against)<br>• Accrued liabilities for excess space in Los Angeles office (including potential sublease income), various contingencies (including the outcome of various pending lawsuits), and various accruals at year-end, including bonuses<br><br>Management has provided the audit committee with further explanations on each estimate considered by the Company and the actual amounts recorded in the financial statements as of December 31 2005. |





FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00099

Confidential

| Matter to be communicated | Auditor's response |
|---|---|
| **Audit Adjustments** | The Company processed certain audit adjustments during our engagement. These have been noted in Appendix B. The assessment of the effect of these adjustments on the evaluation of the Company's internal control system has not yet been finalized. |
| **Other information reviewed during the Audit** | Our audit report covers only the consolidated financial statements and notes; however, we will also read the Management Discussion and Analysis (MD&A) that will be included in the 10K to ensure this information is consistent with the information appearing in the consolidated financial statements.<br><br>As part of our audit, we will also read the remaining portions of the annual report, 10K filing, the proxy circular and the Annual Information Form prior to the submissions to ensure that the information is consistent with the information appearing in the consolidated financial statements. |
| **Disagreements with management** | None noted |
| **Consultation with other accountants on accounting or auditing matters** | We are not aware of consultations with other accountants on accounting or other auditing matters. |
| **Major issues discussed with management prior to retention** | None noted |
| **Difficulties encountered in performing the audit** | Management provided us with access to all records, documents and other required information and management gave us its full cooperation throughout the year and kept us informed of important transactions and events. |
| **Internal control deficiencies**<br>*Any significant deficiencies or material weaknesses in the design or operation of internal control that came to the auditor's attention during the audit.* | Our audit work on internal controls is not yet complete as identified in the outstanding list in Appendix A. As of February 23, 2006, we have not yet received management's evaluation of deficiencies noted in its testing and management's report on its process. |
| **Fraud and illegal acts** | No illegal acts or incidents of fraud have been identified. |
| **Independence** | Our independence letter has been attached to this report under Appendix C |

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00100



PRICEWATERHOUSECOOPERS

| Matter to be communicated | Auditor's response |
| --- | --- |
| **Other material written communications** | |
| • Schedules of unadjusted differences | At the time of writing this report, we have no unadjusted audit differences. |
| • Disclosure Deficiencies | • Note 16g – The Company should estimate the liability on the closed end contracts, and then note that there may be amounts in addition as a small number of contracts do not have a limit, rather than saying a reasonable estimate cannot be made.<br>• Note 22 – 'Other' and 'Corporate' segments are combined in the depreciation and purchases notes and should be separately disclosed.<br>• Note 23 – Discussion of concentrations of credit risk does not disclose current concentrations of credit risk, and does not indicate any amounts for risks the customer faces.<br>• Note 14 – Disclosure should be made of the maximum available under the credit facility as at December 31, 2005.<br><br>Currently we believe that the discussions in the MD&A related to key performance indicators for systems revenue and margin need to be revised. In its discussion of the results for the year, the company refers to 'recognitions' of operating leases as having an effect on revenue and margin in the current year, and includes new operating leases in its table of system leases explaining the changes in revenue. However, operating lease revenue is recognized over the term of the lease. This discussion might imply to a reader of the MD&A that there is some sort of equivalence between the effect of sales type leases and operating leases on revenues and margin. The total increase in revenues from operating leases between 2005 and 2004 is $0.8 million, less than 1% of systems revenue. |
| • Management representation letter | The management representation letter has been attached to this report under Appendix D. |
| • Reports on observations and recommendations on internal controls | We have some observations on the internal controls tested during the 404 process. We will provide management with a report on the observations prior to its filing of Form 10-K with the regulators. |

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00101



PRICEWATERHOUSECOOPERS

| Matter to be communicated | Auditor's response |
| --- | --- |
| **Other regulatory requirements**<br>• Results of regulatory inspections of PwC | In 2005, the Canadian Public Accountability Board (CPAB) inspected the Canadian operations of PwC. The public version of their report is available at www.cpab-ccrc.ca. PwC has reviewed the CPAB report. The recommendations reflect areas where improvements can be made but, in our view, they do not reflect any fundamental flaws in our processes or methodologies.<br><br>There were no recommendations in the 2005 CPAB report on PwC relating to the financial statements of IMAX Corporation. However, CPAB does not review all our engagements and does not review every aspect of every engagement selected. We view CPAB's feedback as constructive and are committed to ensuring that our systems and processes are responsive to CPAB and compliant with the new quality control standards issued by the CICA that are effective for years ending on or after December 31, 2005. In our view, none of CPAB's comments represents an issue that impacts our Firm's ability to provide companies with audits conducted in accordance with Canadian generally accepted auditing standards.<br><br>The Public Company Accounting Oversight Board, the board that oversees auditors of U.S. public companies, has not inspected the Canadian Firm in 2005 or 2004. |

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00102

## Appendix A – List of Outstanding Issues as of February 23, 2006

The following documents have been discussed with management, and we will need to receive and review final copies before our opinions can be signed:

- Review of management's final assessment of the 404 process, including a complete listing of all deficiencies, and the Company's evaluation of unremediated deficiencies
- Review of final draft MD&A for consistency with the financial statements
- Review of the proxy circular, annual report and the Form 10-K filing for consistency
- Review of final draft US GAAP financial statements
- Engagement letter signed by Audit Committee Chair and Chief Financial Officer
- Management's final refreshed 404 scoping documentation, process narratives, and control matrix
- Management's final assessment of significant disclosures and mapping to related controls
- Receipt of management's representation letter





FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00103

Confidential

**Awaiting the following information / documentation from management**

- Finalization of the bonus accrual
- Fair value analysis to support revenue recognized on 2005 lease signings
- Revised note disclosures for the following notes:
    - Discontinued operations
    - Accounting policies for multiple element arrangements
    - Litigation
    - Supplemental consolidating financial information

**Audit procedures to be completed by PwC**

- Audit procedures outstanding:
  Testing of certain manual journal entries processed during the fourth quarter
  Review of subsequent events in the post fieldwork period
  Completion of audit of 2005 tax provision
- Financial statement disclosures not yet agreed to supporting documentation:
  Tax disclosures (received 2/21)
- Third party confirmations not yet received
  5 responses to legal enquiry letters
  4 customer detail confirmations, and follow up on one confirmation
- Control procedures outstanding:
  Completion of testing of 14 controls relating to the year end close, tax processes, and budgeting process
- Finalization of partner and manager review once above procedures completed





FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00104

Confidential

IMAX-US020948

## Appendix B – List of Audit Adjustments

The following audit adjustment was recorded by management during the course of our audit:

| | Income Overstatement (Understatement) US$ millions | Assets (Overstatement) Understatement US$ millions | Liabilities Overstatement (Understatement) US$ millions | Shareholders equity (Overstatement) Understatement US$ millions |
|---|---|---|---|---|
| Application of multiple element accounting to theatre systems revenue recognition | 0.2 | (0.8) | 0.6 | (0.2) |





FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00105

## Appendix C – Independence letter

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00106



PRICEWATERHOUSECOOPERS

PRICEWATERHOUSECOOPERS

PricewaterhouseCoopers LLP
Chartered Accountants
PO Box 82
Royal Trust Tower, Suite 3000
Toronto Dominion Centre
Toronto, Ontario
Canada M5K 1G8
Telephone +1 416 863 1133
Facsimile +1 416 365 8215

February 23, 2006

To the Members of the Audit Committee of the Board of Directors of IMAX Corp.

We have been engaged to audit the consolidated financial statements of IMAX Corporation (the "Company") for the year ending December 31, 2005.

Independence Standards Board (ISB) Standard No. 1, Independence Discussions with Audit Committees, and Canadian generally accepted auditing standards, require that we communicate at least annually with you regarding all relationships between our Firm and the Company that, in our professional judgment, may reasonably be thought to bear on our independence. We have prepared the following comments to facilitate our discussion with you regarding independence matters arising since February 25, 2005, the date of our last letter.

We are not aware of any relationships between our Firm and the Company that, in our professional judgment, may reasonably be thought to bear on our independence which have occurred since February 25, 2005, the date of our last letter, through the date of this letter.

The total fees billed to the Company for audit and audit related services were US$1,620,000 and for non-audit services were US$112,000 during the period from January 1, 2005 to December 31, 2005. Appendix E to our report to the audit committee on February 23, 2006, provides an analysis of these services according to the types of services and related fiscal period.

We hereby confirm that as of the date of this letter, we are independent accountants with respect to the Company, within the meaning of the Securities Acts administered by the Securities and Exchange Commission, the requirements of the Independence Standards Board, and the Rules of Professional Conduct of the Institute of Chartered Accountants of Ontario.

This report is intended solely for the use of the Audit Committee, the Board of Directors, management, and others within the Company and should not be used for any other purposes.

We look forward to discussing with you the matters addressed in this letter as well as other matters that may be of interest to you at our upcoming meeting on March 1, 2006. We will be prepared to answer any questions you may have regarding our independence as well as other matters.

Very truly yours,

PricewaterhouseCoopers LLP

PricewaterhouseCoopers LLP

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00107

PricewaterhouseCoopers refers to the Canadian firm of PricewaterhouseCoopers LLP and the other member firms of PricewaterhouseCoopers International Limited, each of which is a separate and independent legal entity

## Appendix D – Management Representation letter

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00108

***Expected draft of management's representation letter***

We are providing this letter in connection with your audits of (1) the consolidated financial statements of IMAX Corporation (the "Company") as of December 31, 2005 and December 31, 2004 and for each of the three years in the period ended December 31, 2005 for the purpose of expressing an opinion as to whether such consolidated financial statements present fairly, in all material respects, the financial position, results of operations, and cash flows of IMAX Corporation in conformity with accounting principles generally accepted in the United States of America; and (2) the Company's internal control over financial reporting as of December 31, 2005 for the purpose of expressing opinions as to whether management's assessment that the Company maintained effective internal control over financial reporting is fairly stated, in all material respects, and whether the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2005, based on criteria established in Internal Control—Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). We confirm that we are responsible for the fair presentation in the consolidated financial statements of financial position, results of operations, and cash flows in conformity with generally accepted accounting principles, for establishing and maintaining effective internal control over financial reporting, and for performing an assessment of the effectiveness of internal control over financial reporting based on criteria established in Internal Control—Integrated Framework issued by the COSO.

Certain representations in this letter are described as being limited to those matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would have been changed or influenced by the omission or misstatement.

We confirm, to the best of our knowledge and belief, as of March @@, the date of your report, the following representations made to you during your audit(s):

1. The consolidated financial statements referred to above are fairly presented in conformity with accounting principles generally accepted in the United States of America, and include all disclosures necessary for such fair presentation and disclosures otherwise required to be included therein by the laws and regulations to which the Company is subject.

2. We have made available to you all:

   a. Financial records and related data.
   b. Minutes of the meetings of stockholders, directors, and Audit or other committees of directors, and summaries of actions of recent meetings for which minutes have not yet been prepared. The most recent meetings held were: Audit Committee - @@; Board of Directors Meeting – February @@, 2006; Compensation Committee - @@; Governance Committee - @@.

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00109



PRICEWATERHOUSECOOPERS

3. There have been no communications from regulatory agencies concerning noncompliance with or deficiencies in financial reporting practices in the last year, other than the comment letters from the OSC relating to the Annual Report on Form 10-K, dated March 28, 2005, May 9, 2005, June 20, 2005, and September 27, 2005

4. There are no material transactions, agreements or accounts that have not been properly recorded in the accounting records underlying the consolidated financial statements.

1. The effects of the uncorrected financial statements misstatements summarized in the accompanying schedule are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

2. We have performed an assessment of the effectiveness of the Company's internal control over financial reporting based on criteria established in *Internal Control—Integrated Framework* issued by the COSO.

3. We did not use any of your procedures performed during your audits of internal control over financial reporting or the financial statements as part of the basis for our assessment of the effectiveness of internal control over financial reporting.

4. We have concluded that the Company has maintained effective internal control over financial reporting based on criteria established in *Internal Control—Integrated Framework* issued by the COSO as of December 31, 2005.

5. We have disclosed to you all deficiencies in the design or operation of internal control over financial reporting (whether or not remediated) identified as part of our assessment of the effectiveness of internal control over financial reporting as of December 31, 2005. We have also disclosed to you which of these deficiencies we believe are significant deficiencies or material weaknesses in internal control over financial reporting.

6. The items summarized in the accompanying schedule are appropriately (1) classified as significant deficiencies or material weaknesses in internal control over financial reporting, both individually and in the aggregate; and (2) reflected as to the status of the remediation as of December 31, 2005.

7. We acknowledge our responsibility for the design and implementation of programs and controls to provide reasonable assurance that fraud is prevented and detected.

8. We have no knowledge of any fraud or suspected fraud affecting the Company involving:

   a. Senior management,
   b. Management or other employees who have significant roles in internal control over financial reporting, or
   c. Others where the fraud could have a material effect on the consolidated financial statements.

9. We have no knowledge of any allegations of fraud or suspected fraud affecting the Company received in direct communications from employees, former employees, analysts, regulators, short sellers, or others. We have no knowledge of any reasonably credible allegations of fraud

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00110

or suspected fraud affecting the entity received in other communications from employees, former employees, analysts, regulators, investors or others.

*(As to items 11, 12 and 13, we understand the term "fraud" to mean those matters described in Statement on Auditing Standards No. 99.)*

10. There have been no violations or possible violations of laws or regulations whose effects should be considered for disclosure in the consolidated financial statements or as a basis for recording a loss contingency.

11. The Company has no plans or intentions that may materially affect the carrying value or classification of assets and liabilities.

12. The following, if material, have been properly recorded or disclosed in the consolidated financial statements:

    a. Related-party transactions, including sales, purchases, loans, transfers, leasing arrangements, and guarantees, and amounts receivable from or payable to related parties. (We understand the term "related party" to include those entities described in Statement on Auditing Standards No. 45, footnote 1.)

    b. Guarantees, whether written or oral, under which the Company is contingently liable.

    c. Significant estimates and material concentrations known to management that are required to be disclosed in accordance with the AICPA's Statement of Position 94-6, *Disclosure of Certain Significant Risks and Uncertainties*. (Significant estimates are estimates at the balance sheet date that could change materially within the next year. Concentrations refer to volumes of business, revenues, available sources of supply, or markets or geographic areas for which events could occur that would significantly disrupt normal finances within the next year.)

13. The Company has satisfactory title to all owned assets, and there are no liens or encumbrances on such assets nor has any asset been pledged as collateral, except as disclosed in the consolidated financial statements.

14. The Company has complied with all aspects of contractual agreements that would have a material effect on the consolidated financial statements in the event of noncompliance.

15. Receivables recorded in the consolidated financial statements represent bona fide claims against debtors for sales or other charges arising on or before the balance sheet dates and are not subject to discount except for normal cash discounts. Receivables classified as current do not include any material amounts which are collectible after one year except as disclosed in note 4 to the consolidated financial statements. All receivables have been appropriately reduced to their estimated net realizable value.

16. Inventories recorded in the consolidated financial statements are stated at the lower of cost or market, cost being determined on an average cost basis, and due provision was made to reduce all slow-moving, obsolete, or unusable inventories to their estimated useful or scrap values.

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00111



PRICEWATERHOUSECOOPERS

Inventory quantities at the balance sheet dates were determined from physical counts or from the Company's perpetual inventory records, which have been adjusted on the basis of physical inventories taken by competent employees on December 15 and 16, 2005, or through direct confirmation with operators of third party warehouses. Liabilities for amounts unpaid are recorded for all items included in inventories at balance sheet dates and all quantities billed to customers at those dates are excluded from the inventory balances. from a customer site that are being stored in a third party warehouse, the Company has received confirmation from third party storage facilities concerning the existence of quantities, and the Company is satisfied as to the physical safeguarding measures in place. For systems delivered to customer sites that were not yet fully installed as of December 31, 2005, we have shipping documents evidencing arrival at client site or other destination.

17. All liabilities of the Company of which we are aware are included in the consolidated financial statements at the balance sheet dates. There are no other liabilities or gain or loss contingencies that are required to be accrued or disclosed by Financial Accounting Standards Board (FASB) Statement No. 5, *Accounting for Contingencies*, and no unasserted claims or assessments that our legal counsel has advised us are probable of assertion and required to be disclosed in accordance with that Statement.

18. The Company has appropriately reconciled its books and records (e.g., general ledger accounts) underlying the consolidated financial statements to their related supporting information (e.g., sub ledger or third-party data). All related reconciling items considered to be material were identified and included on the reconciliations and were appropriately adjusted in the consolidated financial statements. There were no material unreconciled differences or material general ledger suspense account items that should have been adjusted or reclassified to another account balance. There were no material general ledger suspense account items written off to a balance sheet account, which should have been written off to an income statement account and vice versa. All consolidating entries have been properly recorded. All intracompany and intercompany accounts have been eliminated or appropriately measured and considered for disclosure in the consolidated financial statements.

19. The unaudited interim financial information has been prepared and presented in conformity with accounting principles generally accepted in the United States of America applicable to interim financial information and with Item 302(a) of Regulation S-K. The unaudited quarterly financial information for the year ended December 31, 2005 also has been prepared on a basis consistent with the corresponding interim periods in the year ended December 31, 2004 and, to the degree appropriate, with the consolidated financial statements for the years ended December 31, 2005 and December 31, 2004. The unaudited interim financial information for the three months ended December 31, 2005 and December 31, 2004 does not include any material amount of year-end adjustments that have not been disclosed or any material amounts that should have been included in earlier interim periods of the respective fiscal years.

20. We have not completed the process of evaluating the impact that will result from adopting Financial Accounting Standards Board (FASB) Statement No. 123R as discussed in Note @@ to the consolidated financial statements. The Company is therefore unable to disclose the impact that adopting FASB Statement No. 123R will have on its financial position and results of operations when such Statement is adopted.

or

FOIA CONFIDENTIAL TREATMENT REQUESTED
IX 00112



PRICEWATERHOUSECOOPERS

We have completed the process of evaluating the impact that will result from the adoption of Financial Accounting Standards Board (FASB) Statement No. 123R as discussed in Note @@ to the consolidated financial statements. Such effects are properly disclosed in the financial statements.

21. The consolidated financial statements disclose all of the matters of which we are aware that are relevant to the Company's ability to continue as a going concern, including all significant conditions and events, mitigating factors and the Company's plans. The Company also has the intent and ability to take actions necessary to continue as a going concern. We have made available to you all relevant information on the Company's ability to continue as a going concern that could affect the consolidated financial statements, including the recoverability or classification of recorded assets or the amounts and classification of liabilities. Accordingly, the Company's consolidated financial statements are appropriately prepared on a going concern basis.

22. We assume responsibility for the findings of specialists in evaluating the pension cost and obligation associate with the defined benefit pension plan, and the fair values of stock options determined under the modified binomial model and have adequately considered the qualifications of the specialists in determining the amounts and disclosures used in the consolidated financial statements and underlying accounting records. We did not give nor cause any instructions to be given to specialists with respect to the values or amounts derived in an attempt to bias their work, and we are not otherwise aware of any matters that have had an impact on the objectivity of the specialists.

23. All material costs that have been deferred to future periods meet the definition of an asset as defined in the Statement of Financial Accounting Concepts No. 6, Elements of Financial Statements and are realizable.

24. All cash and bank accounts and all other properties and assets of the Company of which we are aware are included in the consolidated financial statements at December 31, 2005 and December 31, 2004.

25. Arrangements with financial institutions involving compensating balances or other arrangements involving restrictions on cash balances, line of credit, or similar arrangements have been properly disclosed

26. Provisions have been made for losses to be sustained in the fulfillment of, or from inability to fulfill, any sales commitments. Provisions have been made for losses to be sustained as a result of purchase commitments for inventory quantities in excess of normal requirements or at prices in excess of prevailing market prices.

27. The Company has adopted and applied the relevant provisions of FASB Interpretation No. 46 (FIN 46), Consolidation of Variable Interest Entities or FASB Interpretation No. 46R (revised December 2003) (FIN 46R), Consolidation of Variable Interest Entities, and related FASB Staff Positions (FSPs) for all variable interest entities (VIEs) in accordance with the effective dates in paragraphs 29-31 of FIN 46R and paragraph 27 of FIN 46. The Company has properly:

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00113

a. Identified variable interest(s) currently held in entities and determined whether the entity is a variable interest entity. In making this assessment, management considered whether any reconsideration events occurred.

b. Consolidated the VIEs for which the Company is the primary beneficiary. Additionally, management considered whether any reconsideration events occurred. In making its assessment, management considered related party and defacto agency relationships.

c. Complied with the disclosures requirements of FIN 46 or FIN 46R regarding VIEs that are not consolidated by the Company, but which the Company holds a significant variable interest.

28. The company has appropriately evaluated the criteria in paragraph 4h(1)-4h(4) of FASB Interpretation No. 46 (revised December 2003), Consolidation of Variable Interest Entities (FIN 46R) when assessing that Digital Projection Inc qualifies for the business scope exception and does not need to be evaluated pursuant to the requirements of FIN 46R.

29. All borrowings and financial obligations of the Company of which we are aware are included in the consolidated financial statements at December 31, 2005 and December 31, 2004, as appropriate. We have fully disclosed to you all borrowing arrangements of which we are aware.

30. The Company has not violated any covenants on its Senior Notes due 2010 or its line of credit from Congress Financial during any of the periods reported. We have fully disclosed to you all covenants and information related to how we determined our compliance with the terms of the covenants.

31. The Company reviewed the classification of the gain on extinguishment of debt, recognized in the current period and for all periods presented in the consolidated financial statements, in accordance with FAS 145, *Rescission of FASB Statements No. 4, 44, and 64, Amendment of FASB Statement No. 13, and Technical Corrections*. The Company has not classified a gain of $8.3 million related to the extinguishment of debt as an extraordinary item because that gain does not meet the criteria in APB 30, *Reporting the Results of Operations - Reporting the Effects of Disposal of a Segment of a Business, and Extraordinary, Unusual and Infrequently Occurring Events and Transactions*, for classification as an extraordinary item.

32. The Company has appropriately accounted for and disclosed the impact of all contracts entered into for the existence of financial guarantees pursuant to FIN 45, Guarantor's *Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others*. We have fully disclosed to you all such guarantees.

33. We have adopted FASB Statement No. 133, *Accounting for Derivative Instruments and Hedging Activities as amended by FASB Statement No. 138 and FASB Statement No. 149 and interpreted by Derivatives Implementation Group issues (together, "FAS 133")* as of January 1, 2001.

a. The methods and significant assumptions used to determine the fair values of financial instruments and commodity derivatives are as follows: the estimated fair value of the Senior Notes and long-term receivables is estimated based on current market rates. The methods

FOIA CONFIDENTIAL TREATMENT REQUESTED
IX 00114



PRICEWATERHOUSECOOPERS

and significant assumptions used result in a measure of fair value appropriate for financial statement measurement and disclosure purposes in accordance with FAS 133.

b. We have adequately disclosed each significant concentration of credit risk arising from all financial instruments whether from an individual counterparty or groups of counterparties in accordance with FASB Statement No. 107, *Disclosures about Fair Value of Financial Instruments*, as amended by FAS 133.

c. We have evaluated the contracts into which we have entered to determine whether any such contracts are in effect hybrid instruments that contain embedded derivative instruments. We have determined that we do not have any contracts which contain embedded derivative instruments.

34. The Company has reviewed tangible long-lived assets, operating lease agreements that contain return provisions that require the leased assets to be returned in the same condition that existed at lease inception (i.e., the agreement requires the removal of any leasehold improvements at the end of the lease term) and other agreements for associated asset retirement obligations (AROs), and have recognized related liabilities where required, in accordance with FASB Statement No. 143, *Accounting for Asset Retirement Obligations*. The methods and assumptions used to measure the fair value of recorded AROs are appropriate and reasonable under the circumstances and utilize the best available information.

35. Capital stock repurchase options or agreements or capital stock reserved for options, warrants, conversions, or other requirements have been properly disclosed.

36. The listings provided to you of stock-based compensation awards granted, exercised, cancelled, and forfeited during the reporting period are complete and accurate.

37. All the pertinent rights and privileges of the Company's outstanding equity securities have been properly disclosed. Transactions that occurred after December 31, 2005, but before March @@, 2006, that would have materially changed the number of common shares or potential common shares outstanding at the end of the period if the transaction had occurred prior to the end of the period have been properly disclosed.

38. We have reviewed long-lived assets to be held and used or to be disposed of by sale for impairment in accordance with FASB Statement No. 144, Accounting for the Impairment or Disposal of Long-Lived Assets, whenever events or changes in circumstances have indicated that the carrying amount of assets might not be recoverable, and have appropriately recorded the adjustment.

We also have reviewed goodwill and indefinite-lived intangibles for impairment in accordance with FASB Statement No. 142, *Goodwill and Other Intangible Assets*, and have appropriately recorded adjustments to the carrying value of these assets based on the results of the impairment tests.

39. The Company has concluded that the Miami Theater LLC is a component of the entity with operations and cash flows that can be clearly distinguished, operationally and for financial reporting purposes from the rest of the entity, as required by FASB Statement No. 144,

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00115

*Accounting for the Impairment or Disposal of Long-Lived Assets*. The component has been disposed of in a transaction that has eliminated the component's operations and cash flows from the Company's ongoing operations, and the Company does not have any significant continuing involvement in the operations of the component following the disposal.

40. Changes in lease provisions, including renewals or extensions of the terms of the lease have been evaluated by the Company based on FAS 13, *Accounting for Leases*, par. 9, in order to determine whether the change gives rise to a new lease with a classification different from the previous classification.

41. The actuarial assumptions and methods used to measure liabilities and costs for financial accounting purposes for pension and other postretirement benefits are appropriate in the circumstances. The discount rate assumptions used in the actuarial valuation of our pension benefit obligations were determined using an acceptable methodology developed on a consistent basis and taking into account the individual characteristics of each plan, such as projected cash flow patterns and payment durations.

42. The Company is continuing to execute its restructuring plan. The consolidated financial statements include a restructuring accrual for exit costs in respect of the LA facility of $1.9 million, and involuntary termination benefits totaling $0.1 million at December 31, 2005. The Company has evaluated this accrual and determined that it is not excessive. The accruals and all significant changes, if any, from the original restructuring plan have been properly recognized, classified and disclosed in accordance with EITF 94-3, *Liability Recognition for Certain Employee Termination Benefits and Other Costs to Exit an Activity (Including Certain Costs Incurred in a Restructuring)* and SAB 100, *Restructuring and Impairment Charges*.

43. The Company has identified all nonmonetary transactions and has applied the relevant provisions of APB 29, *Accounting for Nonmonetary Transactions*, as amended by FAS 153.

44. We have reviewed the criteria for revenue recognition included in SAB 104, namely, evidence of arrangement, delivery, fixed price and collectibility are recognizing revenue in accordance with SAB 104.

45. The Company has identified all revenue arrangements involving multiple deliverables and adopted and applied the relevant provisions of EITF 00-21, *Accounting for Revenue Arrangements with Multiple Deliverables*, as of December 31, 2005 for applicable arrangements that are within the scope of EITF 00-21.

46. The Company has fully disclosed to you separate arrangements with the same entity or related parties that are entered into at or near the same time.

47. For revenue arrangements involving multiple deliverables that are within the scope of EITF 00-21, the Company has properly:

   - Considered whether a deliverable(s) in an arrangement is within the scope of other existing higher-level authoritative literature and applied such literature to the extent that it provides guidance regarding whether and/or how to separate multiple-

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00116

deliverable arrangements and how to allocate value among those separate units of accounting.

- Determined whether revenue arrangements with multiple deliverables consist of more than one unit of accounting at inception of the arrangement and as each item in the arrangement is delivered.
- The Company has properly allocated non-contingent consideration to the delivered item(s) based on the aggregate fair value of the undelivered item(s) because objective and reliable evidence of fair value for all units of accounting in the arrangement is not available.

48. Pursuant to paragraphs 10-15 of FASB Statement No. 131 (FAS 131), Disclosures about Segments of an Enterprise and Related Information, including the operating results regularly reviewed by the Chief Operating Decision Makers, the Co-CEOs, management has identified following operating segments: IMAX systems, films, individual owned and operated theatres, and Other.

49. Management has evaluated the economic characteristics and aggregation criteria of each segment and determined that the owned and operated theaters exhibit similarities in all areas noted pursuant to paragraph 17 of FAS 131, *Disclosures about Segments of an Enterprise and Related Information,* and are appropriately aggregated pursuant to that paragraph. .

50. The consolidated financial statements disclose all the relevant factors used to identify the Company's reportable segments, including whether operating segments have been aggregated.

51. The Company has appropriately considered EITF 04-10 *Determining Whether to Aggregate Operating Segments That Do Not Meet the Quantitative Thresholds* with the aggregation of the owned and operated theatres. EITF 04-10 addresses issues surrounding the aggregation criteria in paragraph 17 of Statement 131 when determining whether operating segments that do not meet the quantitative thresholds may be aggregated in accordance with paragraph 19 of Statement 131.

52. The deferred tax asset valuation allowance has been determined pursuant to the provisions of FASB Statement No. 109, *Accounting for Income Taxes,* and based on the weight of the available evidence is adequate to reduce the total deferred tax asset to an amount that will, more likely than not, be realized.

53. The Company has appropriately reconciled its deferred tax asset and deferred tax liability books and records underlying the consolidated financial statements to their related supporting information. All related reconciling items considered to be material were identified and included on the reconciliations and were appropriately adjusted in the consolidated financial statements

54. The method used to determine our liabilities for potential assessments from taxing authorities has been applied on a basis consistent with that of the prior year and the resulting liabilities are supported by specifically identified income tax exposures. In cases where it is only reasonably possible that a loss has been incurred, or the amount of loss cannot be reasonably estimated, appropriate disclosures have been provided.

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00117

55. Changes to the liabilities for specific income tax exposures were recognized in the appropriate period, including the appropriate interim period, to which they relate and all individually significant changes to such liabilities have been properly disclosed in the consolidated financial statements, even if the net amount of all such changes was insignificant.

56. We have provided you with all information related to all significant income tax uncertainties of which we are aware. We have also provided you with access to all opinions and analyses that relate to positions we have taken in regard to significant income tax matters.

57. We have informed you of all customer negotiations that we are aware of that have occurred or are currently in process through to the date of this letter that may have a material impact on the net investment in lease valuations; we confirm that the sales and leasing projection equipment contracts that you requested and were provided to you are complete; we also confirm no side letters have been issued by the Company in connection with its sales and lease agreements. We confirm that for all installations recognized as revenue in the period, that as of December 31, 2005, installation is complete, meeting full working standards according to the contract provisions and system specifications, that all substantial issues which were raised by the client and which IMAX acknowledges have been resolved to the satisfaction of both parties, except where standards or issues relate to elements of the contract which have been accounted for separately using multiple element arrangement guidance.

58. Settlements/Terminations: we represent that all settlements and terminations of lease agreements and intents to lease have appropriately been recognized into revenue in the quarter. We have based this on our assessment of the probability that there will be no ongoing obligation owing to these terminated customers in the future.

59. Accounts receivable recorded in the consolidated financial statements represent bona fide claims against debtors for sales, lease transactions or other charges arising on or before the balance sheet dates and are not subject to discount except for normal cash discounts. All accounts receivable amounts have been appropriately reduced to their estimated net realizable value. Included within the financing receivables balance are long-term receivables, which have been discounted to arrive at the estimated fair value of the receivable balance at December 31, 2005. All the estimates used to develop the allowance as of December 31, 2005 and 2004 have been updated with current information through the date of this letter.

60. The net investment in leases at the period end represents only the minimum lease payments due under sales-type leases on systems that have been recognized in revenue under the Company's revenue recognition policy for sales type leases. We have reviewed the net investment in leases for impairment, applied a systematic methodology for measuring and documenting lease losses and made appropriate allowances thereon if necessary, in accordance with FASB Statement No. 13, *Accounting for Leases* and FASB Statement No. 5, *Accounting for Contingencies*. We have measured impaired leases based upon either (1) the present value of expected future cash flows from the lease discounted at the Company's borrowing rate if the theatre is not expected to close in the near future, or (2) the fair value of the underlying lease collateral if it was expected that the system would be returned to the Company in the near future. When determining the fair value of the underlying collateral the Company considered the age of the system, the projector model and the ability to redeploy the refurbished system back into the theatre network. The allowance for lease losses encompasses estimated probable losses related to specifically-

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00118



PRICEWATERHOUSECOOPERS

identified leases and we have considered all negotiations and potential collection issues with theatre operators. All the estimates used to develop the allowance as of December 31, 2005 have been updated with current information through the date of this letter.

61. The Company is amortizing its film assets using the individual-film-forecast method as prescribed by AICPA Statement of Position 00-2, *Accounting by Producers or Distributors of Films.* We have developed estimates of ultimate revenues for each of the films based upon information available through to the date of this letter and have used this information to calculate the amortization for the year. The estimates of ultimate revenues were also used in the discounted cash flow models developed for each film asset to determine the fair value of the film as of December 31, 2005. The discounted cash flow models have been updated for information available through the date of this letter and when the estimated fair value is less than the net book value of the film, we have appropriately written down the asset value.

62. Magnificent Desolation, Harry Potter 4, Polar Express, NASCAR and Space Station films: we represent that the estimates of ultimate revenues are the best estimates of the anticipated net future revenues for the film based on the information that we have available at the current time; we have prepared these Ultimates using a methodology which is consistent with that used to prepare Ultimates in the past; we have informed you of all negotiations of arrangements that we are aware of that have occurred or are currently in progress through to the date of this letter that may have a material impact on the accounting for the film revenues and associated costs;

63. For a sales-type lease or a direct sale, we have consistently recognized revenue when: persuasive evidence of an arrangement exists (signed lease agreement); the price is fixed or determinable; for sales-type leases, the lease term commences; for sales transactions, title passes; collection is reasonably assured; and installation of the system is complete. As criteria for completion of installation, the Company requires the following to be complete: the technology department had confirmed that the installation has been completed in accordance with the terms of the contract; significant issues raised by the customer, that Imax management is in agreement with, have been satisfactorily resolved; and the installed system complies with all the material terms of the contract.

64. For operating leases, minimum lease payments are recognized as revenue on a straight-line basis over the lease term. Additional rentals in excess of the minimum lease payments are recognized as revenue when the theater operator reports to the Company that the additional rents are owing and collection is believed to be reasonably assured.

65. When the Company and a lessee agree to change the provisions of a lease (other than renewing the lease or extending its term), we evaluate whether the new arrangement would be classified as a sales-type lease or an operating lease under FAS 13. For all amendments that have been agreed to between the Company and its lessees during the year, we have appropriately considered the accounting and disclosure impact of the new terms in accordance with FAS 13.

66. Revenue from licensing of films is recognized when a licensing arrangement exists, the film is complete and has been delivered, the license period has begun, the fee is fixed or determinable and collection is believed to be reasonably assured. Where the license fees are based on a share of the customer's revenue, the Company recognizes revenue as the customer exhibits the film, assuming that all the other revenue criteria under SAB 101 are met.

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00119

67. The amounts recorded in the supplemental consolidating financial information reflect: the parent Company's balance sheet, statement of operations and cash flows, including subsidiaries accounted for using the equity method; the combined balance sheets, statements of operations and cash flows of subsidiaries guaranteeing the subsidiaries debt; the combined balance sheets, statements of operations and cash flows of subsidiaries not guaranteeing the subsidiaries debt; and eliminating entries to arrive at the consolidated figures.

To the best of our knowledge and belief, there were no (1) events that have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustment to or disclosure in the aforementioned consolidated financial statements; and (2) changes in internal control over financial reporting or other factors that might significantly affect internal control over financial reporting, including any corrective actions taken by us with regard to significant deficiencies and material weaknesses, that have occurred subsequent to December 31, 2005 and through the date of this letter.

Signed by co-CEOs, CFO and Controller

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00120



Confidential IMAX-US020964

**Appendix E - Fees**

## Fees – total amounts billed in 2005 related to the following audit periods

| | *Fees relating to F'2005 (US$'000)* | *Fees relating to F'2004 (US$'000)* |
|---|---|---|
| *Audit services:* | | |
| *Integrated Audit and quarterly reviews* | 824 | 728 |
| ***Total audit services:*** | **824** | **728** |
| *Audit-related services:* | | |
| *Pension and benefit plans* | 21 | - |
| *Consultations* | 24 | 23 |
| ***Total audit-related services fees:*** | **51** | **23** |
| | | |
| ***Total tax services:*** | **112** | **-** |
| | | |
| ***TOTAL*** | **987** | **751** |

FOIA CONFIDENTIAL
TREATMENT REQUESTED
IX 00121



PRICEWATERHOUSECOOPERS