# EXHIBIT A

Court File No. CV-06-3257-00

***ONTARIO***

**SUPERIOR COURT OF JUSTICE**

B E T W E E N :

MARVIN NEIL SILVER and CLIFF COHEN

Plaintiffs

- and –

IMAX CORPORATION, RICHARD L. GELFOND,
BRADLEY J. WECHSLER and FRANCIS T. JOYCE

Defendants

Proceeding under the *Class Proceedings Act, 1992*

**SUPPLEMENTARY FACTUM OF THE PLAINTIFFS**
**(Motion for Leave and Certification returnable December 15, 2008)**

December 6, 2008

**SISKINDS LLP**
Barristers & Solicitors
680 Waterloo Street
London, ON N6A 3V8

**A. DIMITRI LASCARIS**
LSUC Number: 50074A

Tel: 519.672.2121
Fax: 519.672.6065
Email: dimitri.lascaris@siskinds.com

**SUTTS, STROSBERG LLP**
Lawyers
600 - 251 Goyeau Street
Windsor, ON N9A 6V4

**HARVEY T. STROSBERG, Q.C.**
LSUC#: 12640O
**PATRICIA A. SPEIGHT**
LSUC Number: 26380C
**JAY STROSBERG**
LSUC Number: 47288F

Tel: 519.561.6228
Fax: 519.561.6203
Email: hts@strosbergco.com

Lawyers for the Plaintiffs

TO:

**MCCARTHY TETRAULT LLP**
Suite 4700
Toronto Dominion Bank Tower
Toronto, ON M5K 1E6

**R. PAUL STEEP**
LSUC Number: 21869L
**DANA PEEBLES**
LSUC Number: 30820V

Tel: 416.601.7998
Fax: 416.868.0673

Lawyers for the Defendants and Proposed Defendants

Court File No. CV-06-3257-00

***ONTARIO***

**SUPERIOR COURT OF JUSTICE**

BETWEEN:

MARVIN NEIL SILVER and CLIFF COHEN

Plaintiffs

- and –

IMAX CORPORATION, RICHARD L. GELFOND,
BRADLEY J. WECHSLER and FRANCIS T. JOYCE

Defendants

Proceeding under the *Class Proceedings Act, 1992*

**SUPPLEMENTARY FACTUM OF THE PLAINTIFFS**
**(Motion for Leave and Certification returnable December 15, 2008)**

## PART I - INTRODUCTION

1. This factum supplements the Plaintiffs' factum on their motion for leave under Part XXIII.1 of the *OSA*[1] and for certification as a class proceeding. In this supplementary factum, the Plaintiffs address the following issues:

(a) The definition of "misrepresentation' under the *OSA*;

(b) The liability of Wechsler, Gelfond, Joyce and Gamble under the *OSA* for the alleged misrepresentations; and

(c) The specific affirmative defences relied upon by the Defendants and Proposed Defendants, and the application of the evidence before the Court thereto, including:

1 Defined terms used herein have the meanings attributed to them in the Plaintiffs November 24, 2008 factum.

(i) the "reasonable investigation" defence contained in subsection 138.4(6), and the factors set out in subsection 138.4(7) which are to be considered by the Court in considering that defence;

(ii) reliance on the opinion of an expert, as contained in subsection 138.4(11).

## PART II: THE FACTS

2. The Plaintiffs rely upon the facts set forth in their November 24, 2008 factum.

## PART III: ISSUES AND THE LAW

### Misrepresentation: The Legal Test

3. The *OSA* defines a misrepresentation as follows:

> "misrepresentation" means,
>
> (a) an untrue statement of material fact, or
>
> (b) an omission to state a material fact that is required to be stated or that is necessary to make a statement not misleading in the light of the circumstances in which it was made.

4. A misrepresentation can manifest itself in three ways:

(a) by an untrue statement of material fact;

(b) by an omission to state a material fact that is required to be stated; or

(c) by an omission to state a material fact that is necessary to make a statement not misleading in the light of the circumstances in which it was made. This latter category captures "half truths".

> *Kerr v. Danier Leather Inc.*, 2005 CarswellOnt 7296 (Ont. C.A.) at para 61, aff'd 2007 SCC 44, [2007] 3 S.C.R. 331 at para. 5.
>
> *Skye Properties Ltd. v. Wu*, 2008 CarswellOnt 6500 (S.C.J.) at para 132.

5. The definition of a "material fact" is integral to the meaning of misrepresentation for the purposes of identifying a misrepresentation. Section 1 of the *OSA* defines "material fact" as follows:

> "Material fact" where used in relation to securities issued or proposed to be issued means a fact that significantly affects, or would reasonably be expected to have a significant effect on, the market price or value of such securities.

6. Materiality is an objective standard. In assessing materiality, the Court should have regard to the surrounding circumstances, which will assist in determining what is material. The most common description of the materiality standard articulated by the Ontario courts has been borrowed from the United State's Supreme Court's decision in *TSC Industries v. Northway Inc.*, which held as follows:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote ... It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

> *Skye Properties Ltd. v. Wu*, 2008 CarswellOnt 6500 (S.C.J.) at para 133.

> *Re YBM Magnex International Inc.* 26 O.S.C.B. 5285 (Ontario Securities Commission) at para 92.

> *TSC Industries v. Northway Inc.*, 426 U.S. 438 (1976) at 449.

7. In this context, a fact may be considered material if there is a substantial likelihood that a reasonable investor would consider it important in deciding whether to invest and at what price. Generally, an investor can be taken to want to know facts that would reasonably be expected to significantly affect the market price or value of the securities.

> *Re YBM Magnex International Inc.* 26 O.S.C.B. 5285 (Ontario Securities Commission) at para 90.

> *Skye Properties Ltd. v. Wu*, 2008 CarswellOnt 6500 (S.C.J.) at para 134.

8. In these circumstances, the materiality of the misrepresentation alleged is supported by the following facts:

(a) the alleged correction of the misrepresentation caused the stock price to decline approximately 40%;[2]

(b) Dr. Kryzanowski has opined that the correction of the misrepresentation, however characterized, caused at least 75% of that price change;[3]

(c) Dr. Comment, formerly Deputy Chief Economist of the SEC, has opined that, even if the misrepresentation had no impact on Imax's cash flows, it would still have caused a false inflation in Imax's share price during the Class Period;[4]

(d) Imax, Wechsler, Gelfond, and Joyce, among others, went to great trouble and expense to ensure the installation of as many theatre systems as possible in Q4/05, at least in part because they knew that doing so would result in improved revenue figures on Imax's financial statements;[5]

(e) Imax, Wechsler, and Gelfond touted the facts alleged to have been misrepresented as key indicators of Imax's strength and the basis upon which it was determined to be an opportune time to attempt to identify a transaction to maximize shareholder value;[6]

(f) The SEC and the OSC viewed the matter of Imax's revenue recognition practices to be of sufficient importance to commence an informal inquiry into Imax's revenue recognition practices, and particularly its application of RAMD during the Class Period;[7] and

(g) Imax, the Individual Defendants, and the Proposed Defendants viewed the matter as being of sufficient importance to warrant a restatement of Imax's financial statements.

---

2 First Robb Affidavit, para 34, Plaintiffs' Initial Record, tab 2, p. 46.

3 Kryzanowski Affidavit, para 39, Plaintiffs' Second Record, tab 2, p. 714.

4 Comment Affidavit, para 19, Plaintiffs' Reply Record, tab 1, p. 1449.

5 See Plaintiffs' Factum dated November 24, 2008, paras 114-123.

6 Imax Corporation's March 9, 2006 Press Releases, Exhibits "J" and "K" to the First Robb Affidavit, Plaintiffs' Initial Record, tabs 2-J and 2-K.

7 See Plaintiffs' Factum dated November 24, 2008, paras 192-193.

9. The manner in which Imax's Class Period disclosures were false and/or materially misleading are set out at paragraphs 174, 176, 179, 180, 181, 182, 183 of their November 24, 2008 factum.

10. Imax's Class Period disclosures that:

(a) it had "completed" 14 theatre installations in Q4/05 which was a record for a single quarter,[8]

(b) "recognized revenue" on 38 theatre systems in 2005 versus 22 in 2004,[9] and

(c) that its financial statements complied with U.S. GAAP,

in the context of its previously disclosed revenue recognition policy stating that it recognized revenue on theatre system installations on the completion of those installations, and in the absence of any disclosure that Imax had changed its revenue recognition policy or that in fact it had recognized revenue on numerous theatres where installation was in fact not complete created the impression that Imax had performed substantially better in the relevant period than it had. That impression was corrected by Imax's August 9 disclosure that in fact it had not installed the screens on 7 of the 14 allegedly complete installations in Q4/05.[10]

11. The plaintiffs submit that, by restating Imax's financial statements, the defendants have effectively admitted that Imax's overstatement of GAAP revenues and GAAP earnings was material. It is scarcely credible that Imax and its management would have incurred the expense and distraction of a restatement had management believed that the overstatement was immaterial.

**Section 138.3 – Liability of Officers**

12. The *OSA* defines "officer" as follows:

---

8 Imax Corporation February 17, 2006 Press Release, Exhibit "I" to the First Robb Affidavit, Plaintiffs' Initial Record, tab 2-I, p. 233.

9 See Plaintiffs' Factum dated November 24, 2008 at paras 175-179, 183.

10 Imax Corporation August 9, 2006 Press Release, Exhibit "M" to the First Robb Affidavit, Plaintiffs' Initial Record, tab 2-M, p. 251.

> "officer", with respect to an issuer or registrant, means,
>
> (a) a chair or vice-chair of the board of directors, a chief executive officer, a chief operating officer, a chief financial officer, a president, a vice-president, a secretary, an assistant secretary, a treasurer, an assistant treasurer and a general manager,
>
> (b) every individual who is designated as an officer under a by-law or similar authority of the registrant or issuer, and
>
> (c) every individual who performs functions similar to those normally performed by an individual referred to in clause (a) or (b);

13. Paragraph 138.3(c) *OSA* provides that a person who purchases securities of a responsible issuer after a document containing a misrepresentation is released by the responsible issuer and before the misrepresentation is publicly corrected has a cause of action against, among others:

> (c) each officer of the responsible issuer who authorized, permitted or acquiesced in the release of the document.

14. Each of Wechsler, Gelfond, Joyce, and Gamble is alleged to be liable as an officer who authorized, permitted or acquiesced in the release of Imax's Class Period disclosures containing the misrepresentations. Each has admitted in his or her affidavit that he/she was an officer of Imax during the relevant period.[11]

15. Wechsler and Gelfond are quoted at length in the February 17 and March 9, 2006 Press Releases. Each also signed the 2005 10-K, indicating it to be "duly authorized".[12] The Plaintiffs submit that this is a sufficient basis upon which to find that they "authorized, permitted, or acquiesced in" the release of these documents.

16. Joyce and Gamble also both signed the 2005 10-K. Joyce signed as the "Chief Financial Officer (Principal Financial Officer)". Gamble signed as the "Vice President, Finance and Controller (Principal Accounting Officer)". The Plaintiffs submit that this is a sufficient basis upon which to find that they "authorized, permitted, or acquiesced in" the release of the 2005 10-K.

---

11 Gelfond Affidavit, para 2, Wechsler Affidavit, paras 1-2, Joyce Affidavit, para 1, Gamble Affidavit, para 1; Responding Parties' Motion Record, Vol. I, tabs 1, 2, 8, 9, pp. 1, 7, 43, 49.

12 2005 10-K, Exhibit "F" to the First Robb Affidavit, Plaintiffs' Initial Record, tab 2-F, p. 219.

17. Both March 9, 2006 Press Releases were largely derivative of the information contained in the 2005 10-K. This is this is a sufficient basis upon which to find that Joyce and Gamble "authorized, permitted, or acquiesced in" the release of the March 9, 2006 press releases.

18. Mr. Joyce testified that he did not recall whether he reviewed the February 17, 2006 Press Release before it was released, but that he would have had input into the number of installations that Imax was claiming for Q4/05.[13]

19. Ms. Gamble has testified that she reported directly to Mr. Joyce and that she oversaw the fact gathering process in respect of installations for Imax's financial reporting on Q4/05.[14] She was also involved in the formulation of Imax's accounting positions with respect to theatre installations, later incorporated into the Class Period disclosure documents.[15] It is submitted that this is a sufficient basis upon which to find that she "authorized, permitted or acquiesced in" the release of the February 17, 2006 press release.

## The Affirmative Defences

### "Reasonable Investigation"

20. The Defendants and Proposed Defendants appear to assert affirmative defences afforded to them by Part XXIII.1 of the *OSA* with a view to establishing that the Plaintiffs have no "reasonable possibility of success" in their Part XXIII.1 claims. The first affirmative defence asserted is defined in the statute as follows:

> **138.4 Burden of proof and defences**
>
> Reasonable investigation
>
> (6) A person or company is not liable in an action under section 138.3 in relation to,
>
> (a) a misrepresentation if that person or company proves that,
>
> > (i) before the release of the document or the making of the public oral statement containing the misrepresentation, the person or company conducted or caused to be conducted a reasonable investigation, and

---

13 Second Joyce Transcript, p. 448.

14 Cross Examination Transcript of Kathryn Gamble taken March 3, 2008, pp. 27-29.

15 Gamble Transcript, pp. 122-123.

(ii) at the time of the release of the document or the making of the public oral statement, the person or company had no reasonable grounds to believe that the document or public oral statement contained the misrepresentation; or

(b) a failure to make timely disclosure if that person or company proves that,

(i) before the failure to make timely disclosure first occurred, the person or company conducted or caused to be conducted a reasonable investigation, and

(ii) the person or company had no reasonable grounds to believe that the failure to make timely disclosure would occur.

Factors to be considered by court

(7) In determining whether an investigation was reasonable under subsection (6), or whether any person or company is guilty of gross misconduct under subsection (1) or (3), the court shall consider all relevant circumstances, including,

(a) the nature of the responsible issuer;

(b) the knowledge, experience and function of the person or company;

(c) the office held, if the person was an officer;

(d) the presence or absence of another relationship with the responsible issuer, if the person was a director;

(e) the existence, if any, and the nature of any system designed to ensure that the responsible issuer meets its continuous disclosure obligations;

(f) the reasonableness of reliance by the person or company on the responsible issuer's disclosure compliance system and on the responsible issuer's officers, employees and others whose duties would in the ordinary course have given them knowledge of the relevant facts;

(g) the period within which disclosure was required to be made under the applicable law;

(h) in respect of a report, statement or opinion of an expert, any professional standards applicable to the expert;

(i) the extent to which the person or company knew, or should reasonably have known, the content and medium of dissemination of the document or public oral statement;

(j) in the case of a misrepresentation, the role and responsibility of the person or company in the preparation and release of the document or the making of the public oral statement containing the misrepresentation or the ascertaining of the facts contained in that document or public oral statement; and

(k) in the case of a failure to make timely disclosure, the role and responsibility of the person or company involved in a decision not to disclose the material change.

21. Once a misrepresentation has been demonstrated, the *OSA* places the onus on the Defendants and Proposed Defendants to establish that they:

(a) conducted or caused to be conducted a reasonable investigation before the document containing the misrepresentation was released; and

(b) had no reasonable grounds upon which to believe that the document contained a misrepresentation when released.

22. The Plaintiffs submit that there is more than a reasonable possibility that the Defendants will not be able to establish that their "investigation" was reasonable because, among other factors:

(a) Although the Delhi Post contained allegations of serious wrongdoing against Imax personnel, the investigation was completed without speaking to anyone other than Imax personnel. A truly diligent investigation would have elicited pertinent information from sources outside of Imax, and may well have resulted in a correct application of GAAP to Imax's Q4/05 theatre installations;[16]

(b) In the context of the audit of Imax's 2005 financial statements, Imax management entered its discussions with Imax's with the manifest objective of recognizing as much revenue as possible on Q4/05 installations, and did so with a view toward meeting its aggressive guidance for 2005 and dressing the company up for sale. As a result, Imax's discussions with its auditors in the period leading up to the making of the misrepresentations virtually excluded the possibility of employing the correct revenue recognition policy, which was to refrain from recognizing any of the revenue associated with a theatre system installation until such time as all of the elements of the system, including the silver screen, had been installed. Indeed, that treatment would have been

16 See Plaintiffs' Factum dated November 24, 2008, paras 98-113.

consistent with Imax's own written internal revenue recognition policies, which had very recently been updated;[17]

(c) Numerous obligations remained outstanding at the end of 2005 that were not communicated to Imax's auditors;[18]

(d) Upon being questioned by the SEC about their application of RAMD, the Defendants conducted a further investigation of the appropriate accounting treatment that focused only on accounting literature, and that disregarded the possibility that their initial investigation of the appropriate accounting treatment omitted to consider pertinent facts regarding the installations themselves; and

(e) The fact that a further investigation was deemed necessary, and ultimately resulted in a dramatically different conclusion, raises in and of itself a serious question as to the adequacy of the defendants' initial investigation.[19]

23. The Plaintiffs submit that there is more than a reasonable possibility that the Defendants and Proposed Defendants will not be able to establish at trial that they had no reasonable grounds upon which to believe that the Class Period disclosures contained a misrepresentation because, among other factors:

(a) they knew, but did not disclose to the public, that Imax in fact had not "completed" 14 theatre installations in Q4/05;

(b) they knew, but did not disclose to the public, that the accounting treatment adopted by Imax with respect to its Q4/05 theatre installations did not comply with Imax's own internal accounting policies;

(c) they knew, but did not disclose to the public, that Q4/05 was the first reporting period with respect to which Imax had applied RAMD to theatre system installations

---

17 Leebron Transcript, p. 61; "Policy 10-A, Revenue- System Leases", Plaintiffs' Sixth Record, Vol. 2, tab 44-B, p. 631.

18 See Plaintiffs' Factum dated November 24, 2008, paras 218-222.

19 First Wechsler Transcript, pp. 163-171.

even though there were at least two prior reporting periods at the end of which theatre systems had only been partially installed; and

(d) they knew that Imax's previous disclosures had always indicated that Imax recognized revenue on theatre system installations upon the installation of the theatre system, and that there was no disclosure in the 2005 10-K that such practice had changed.[20]

**"Expert Report, Statement or Opinion"**

24. It is anticipated that the Defendants and Proposed Defendants will assert that the Plaintiffs have no reasonable possibility of success at trial because of the affirmative defence contained in subsection 138.4(11), which provides as follows:

> Expert report, statement or opinion
>
> (11) A person or company, other than an expert, is not liable in an action under section 138.3 with respect to any part of a document or public oral statement that includes, summarizes or quotes from a report, statement or opinion made by the expert in respect of which the responsible issuer obtained the written consent of the expert to the use of the report, statement or opinion, if the consent had not been withdrawn in writing before the document was released or the public oral statement was made, if the person or company proves that,
>
> (a) the person or company did not know and had no reasonable grounds to believe that there had been a misrepresentation in the part of the document or public oral statement made on the authority of the expert; and
>
> (b) the part of the document or oral public statement fairly represented the report, statement or opinion made by the expert.
>
> [Emphasis added.]

25. Part XXIII.1 of the *OSA* includes the following definition of an "expert" at section 138.1:

> "expert" means a person or company whose profession gives authority to a statement made in a professional capacity by the person or company including, without limitation, an accountant, actuary, appraiser, auditor, engineer, financial analyst, geologist or lawyer, but not including an entity that is an approved rating organization for the purposes of National Instrument 44-101 of the Canadian Securities Administrators.

---

20 See Plaintiffs' Factum dated November 24, 2008 at paras 226-229.

26. The Defendants and Proposed Defendants appear to assert that they reasonably relied on PwC, Imax's auditors, and as such are shielded from liability. It is the Plaintiffs' position that there is more than a reasonable possibility that this defence will not succeed at trial because:

(a) the misrepresentation alleged is not contained exclusively in the report of Imax's auditors (at p. 55-56 of the 2005 10-K), which is the only part of the 2005 10-K that appears to "include, summarize or quote from" any expert;[21]

(b) certain facts relevant to the application of RAMD to Q4/05 theatre installations were known to the Defendants and Proposed Defendants, or ought to have been known to them, but which were not communicated to PwC prior to the issuance of its initial audit opinion, and those facts might have changed PwC's opinion on revenue recognition in relation to some of those installations;[22]

(c) subsection 138.4(11) specifically prohibits an "expert" from relying on it. As an accountant, Joyce may not therefore rely on subsection 138.4(11). Similarly, by virtue of their extensive experience in financial and accounting matters, other Defendants and Proposed Defendants, particularly Copland, Girvan and Gamble, may constitute "experts" for purposes of the *OSA* and would therefore be disqualified from relying upon this affirmative defence;

(d) Imax management specifically represented to PwC and to the public that it was *the responsibility of Imax management* to prepare Imax's financial statements and to ensure that those financial statements were free of material misstatement; and

(e) as described in paragraph 21 above, the Defendants and Proposed Defendants had good reason to doubt the correctness of the misrepresentation when made.

---

21 2005 10-K, Exhibit "F" to the First Robb Affidavit, Plaintiffs' Initial Record, tab 2-F, p. 166-167.

22 See Plaintiffs' Factum dated November 24, 2008, paras 218-222.

## PART IV: RELIEF REQUESTED

27. The Plaintiffs therefore reiterate their request for the relief set out in their November 24, 2008 factum.

ALL OF WHICH IS RESPECTFULLY SUBMITTED this 6th day of December, 2008.

Harvey Strosberg Q.C.

A. Dimitri Lascaris

Jay Strosberg

## SCHEDULE "A"
## LIST OF AUTHORITIES


1. *Kerr v. Danier Leather Inc.*, 2005 CarswellOnt 7296 (Ont. C.A.) at para 61, aff'd 2007 SCC 44, [2007] 3 S.C.R. 331.

2. *Skye Properties Ltd. v. Wu*, 2008 CarswellOnt 6500 (S.C.J.).

3. *Re YBM Magnex International Inc.* 26 O.S.C.B. 5285 (Ontario Securities Commission).

4. *TSC Industries v. Northway Inc.*, 426 U.S. 438 (1976) at 449.

**SCHEDULE "B"**
**RELEVANT STATUTES**

**Securities Act**

## R.S.O. 1990, CHAPTER S.5

**1.** (1) In this Act,

[…]

"material fact", when used in relation to securities issued or proposed to be issued, means a fact that would reasonably be expected to have a significant effect on the market price or value of the securities; ("fait important")

[…]

"misrepresentation" means,

(a) an untrue statement of material fact, or

(b) an omission to state a material fact that is required to be stated or that is necessary to make a statement not misleading in the light of the circumstances in which it was made; ("présentation inexacte des faits")

[...]

"officer", with respect to an issuer or registrant, means,

(a) a chair or vice-chair of the board of directors, a chief executive officer, a chief operating officer, a chief financial officer, a president, a vice-president, a secretary, an assistant secretary, a treasurer, an assistant treasurer and a general manager,

(b) every individual who is designated as an officer under a by-law or similar authority of the registrant or issuer, and

(c) every individual who performs functions similar to those normally performed by an individual referred to in clause (a) or (b); ("dirigeant")

## PART XXIII.1
## CIVIL LIABILITY FOR SECONDARY MARKET DISCLOSURE

INTERPRETATION AND APPLICATION

**Definitions**

**138.1** In this Part,

"expert" means a person or company whose profession gives authority to a statement made in a professional capacity by the person or company including, without limitation, an accountant, actuary, appraiser, auditor, engineer, financial analyst, geologist or lawyer, but not including an entity that is an approved rating organization for the purposes of National Instrument 44-101 of the Canadian Securities Administrators; ("expert")

[…]

**138.3** (1) Where a responsible issuer or a person or company with actual, implied or apparent authority to act on behalf of a responsible issuer releases a document that contains a misrepresentation, a person or company who acquires or disposes of the issuer's security during the period between the time when the document was released and the time when the misrepresentation contained in the document was publicly corrected has, without regard to whether the person or company relied on the misrepresentation, a right of action for damages against,

(a) the responsible issuer;

(b) each director of the responsible issuer at the time the document was released;

(c) each officer of the responsible issuer who authorized, permitted or acquiesced in the release of the document;

[…]

Silver and Cohen and Imax Corporation et al.
Plaintiff Defendants

Court File No: CV-06-3257-00

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Brampton

# PLAINTIFFS' SUPPLEMENTARY FACTUM

**SUTTS, STROSBERG LLP**
Lawyers
600 – 251 Goyeau Street
Windsor, ON N9A 6V4

**Harvey T. Strosberg, Q.C. LSUC# 12640O**
**Jay Strosberg LSUC# 47228F**
Tel: 519.561.62228
Fax: 519.561.6203

**SISKINDS LLP**

**A. Dimitri Lascaris, LSUC#** 50074A
Tel: 519.660.7844
Fax: 519.660.7845

Lawyers for the plaintiffs