of fact and conclusions of law. Absent a class action, individuals will be pitted against the Defendants who are part of a wealthy corporation with, comparatively, unlimited resources. As a matter of efficiency, the determination of the issues that are common to all Class Members should be done once at one common issues trial for the benefit of all parties.

*Rumley* v. *British Columbia* [2001] 3 S.C.R. 184 at p. 206, para. 38.

*Wilson* v. *Servier Canada Inc.* (2000), 50 O.R. (3d) 219 (S.C.J.) at paras. 124-126.

331. Access to justice is the most important consideration in assessing preferability. Access to justice is achieved by certifying the action as a class proceeding if there are numerous small damage claims that would not justify individual actions.

*Anderson* v. *Wilson* (1999), 44 O.R. (3d) 673 (C.A.) at p. 679.

332. If this action is not certified as a class proceeding, access to justice for many potential claimants will be thwarted because the costs to prosecute an individual action will be prohibitively expensive and is beyond the reach of virtually all Class Members.

Cohen Affidavit, paras. 7, 14, 15, Plaintiffs' Initial Record, tab 4, pp. 640-641.

Silver Affidavit, paras 8, 13,14, Plaintiffs' Initial Record, tab 5, pp. 278-280.

333. Mr. Cohen lost $2,026. Mr. Silver purchased 1000 Imax shares at an average cost of $11.36 per share. Imax shares are now trading at $3.87 per share. Mr. Silver's loss is approximately $7,500. The Plaintiffs will not prosecute individual actions because it would make no sense to do so. In the context of this action, the twin objectives of judicial economy and increased access to justice mandate a class

proceeding and lead, inexorably, to the conclusion that a class proceeding is the preferable procedure.

> *Rumley* v. *British Columbia* [2001] 3 S.C.R. 184 at paras. 33-38.
>
> *Hollick* v. *Toronto* (2001), 205 D.L.R. (4th) 19 (S.C.C.) at para. 31.

334. There is no evidence that some Class Members suffered large losses. But, even if some did suffer large losses, this would not justify a dismissal of the certification motion. In *Ward-Price*, the action was certified a class proceeding where the class members' damage claims ranged from "$21,762.42 to $127,609.94 with the average claim being about $60,000.00." Similarly, the Divisional Court certified a class proceeding where the class members claimed damages of tens of millions of dollars each. Moreover, the existence of some class members with large losses does not make an individual action economical for those persons such as Mr. Silver and Mr. Cohen who lost small amounts of money.

> *Millard* v. *North George Capital Management Ltd.*, [2000] O.J. No. 1535 (S.C.J.).
>
> *Delgroso* v. *Paul* (1999), 45 O.R. (3d) 605 (Gen.Div.).
>
> *Ward-Price* v. *Mariners Haven Inc.*, [2002] O.J. No. 4260 (S.C.J.) at para. 42.
>
> *Canadian Imperial Bank of Commerce* v. *Deloitte & Touche*, [2003] O.J. No. 2069 (Div.Ct.).

335. A class proceeding is the preferable procedure because:

(a) any applicable limitation period is tolled for the entire Class;

(b) a formal notice program will alert most Class Members to the litigation;

(c) the Class has attracted an experienced counsel team, on a contingency basis, because the individual claims of the Class Members are aggregated;

(d) the Class, as a whole, will be better able to address difficult issues such as the impact of the leveraged buyout on collectibility;

(e) the action will be case managed by a single judge;

(f) the court will protect the interests of absent Class Members;

(g) after the trial of the common issues, the court may create streamlined procedures to deal with any remaining individual issues;

(h) it creates a reasonable cost/benefit ratio;

(i) absent a class action, it is unlikely that a lawyer will accept a retainer from an individual Class Member on a contingency basis to prosecute the issues raised in this action; and

(j) any order or settlement will accrue to the benefit of the entire Class, without the necessity of resorting to principles of issue, estoppel or abuse of process.

336. Further, s. 24 to s. 26 the *CPA* are directed to the simplification and management of any individual issues that may remain after the determination of the common issues. In *Anderson*, the Court of Appeal stated:

> In my view, it seems sensible with this number of potential Plaintiffs and the similarities that are evidence in their claims, that any potential efficiency in advancement of their claims through the flexibility provided by the *CPA* should, where reasonable, be utilized.
>
> *Anderson* v. *Wilson* (1999), 44 O.R. (3d) 673 (C.A.) at p. 683.

337. All of the key issues will be determined at the common issues trial. The only potential individual issues are reliance and damages. If necessary, these issues can be dealt with in a summary manner. The potential individual issues remaining after the common issues trial in this action are much simpler than the issues that were anticipated after the common issues trial in *Rumley* and *Cloud*.

338. As previously established at paragraph 281, the fact that certain of the causes of action may require proof of individual reliance is no bar to certification if resolution of the common issues will significantly advance the litigation.

339. In all of these circumstances, the Plaintiffs submit that they have satisfied the s. 5(1)(d) requirement.

**(5) THE SUBSECTION 5(1)(E) REQUIREMENT: THE PROPOSED REPRESENTATIVE PLAINTIFFS WOULD FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS AND DO NOT HAVE, ON THE COMMON ISSUES, AN INTEREST IN CONFLICT WITH THE INTERESTS OF OTHER CLASS MEMBERS**

340. The test to determine whether a person will be appointed as a representative plaintiff is as follows:

> In *Endean* v. *Canadian Red Cross Society*, Smith J. considered the representative plaintiff requirements and held that the two most important considerations in determining whether the plaintiff was appropriate were whether there was a common interest with other class members and whether the representatives would 'vigorously prosecute' the claim. It has been established that there is a common interest and I can see no reason why the representative Plaintiffs would not vigorously prosecute the claim. Any individual Plaintiffs who feel that the representative Plaintiffs would not represent them well may opt out of the class proceeding and pursue individual actions.
>
> *Campbell* v. *Flexwatt Corp*., [1997] B.C.J. No. 2477 (B.C.C.A.) at paras. 75-76.

341. To date, the proposed representative Plaintiffs have vigorously and capably prosecuted this action. They have retained competent counsel. They have a common interest with the other Class Members. They have no interest in conflict with other members of the Class in relation to the common issues. The representative of a class need not have "typical" involvement nor be the best possible representative.

> *VitaPharm Canada Ltd.* v. *F. Hoffmann-LaRoche Ltd.* (2005), 74 O.R. (3d) 758 (Div. Ct.) at para. 44.

*Western Canadian Shopping Centres Inc.* v. *Dutton* [2001] 2 S.C.R. 534 at para. 41.

*Pearson* v. *Inco Ltd.* (2006), 78 O.R. (3d) 641 (C.A.) at p. 673.

342. "The fact that a class contains members whose varying fact situations or injuries could result in varying damage assessments … will not for this reason alone generate a conflict of interest."

Eizenga et al., *Class Actions Law and Practice* (looseleaf), para. 3.89.

**(6) THE SUBSECTION 5(1)(E)(II) REQUIREMENT: A WORKABLE PLAN**

343. The Plaintiffs propose a workable litigation plan for the prosecution of this action. It details the steps in the litigation through a common issues trial including notice to Class Members. It also proposes a method to determine any remaining individual issues.

344. In summary, the revised litigation plan contemplates the following steps:

(a) publication of notice of the order certifying the action as a class proceeding;

(b) all interlocutory steps leading to the common issues trial;

(c) a court appointed and supervised administrator and referee(s) to determine all issues not determined at the common issues trial;

(d) a process before the referee(s) that will include:

(i) documentary production;

(ii) completion of a claim form dealing with the issue of reliance for those Class Members, if any, who are required to prove reliance on an individual basis;

(iii) completion of a claim form to prove individual trading losses, if necessary;

(iv) a mechanism to allow the Defendants to dispute eligibility and/or calculation of losses;

(v) determination of eligibility, reliance and damages on an individual basis, if necessary;

(vi) oral examinations for discovery or written interrogatories only if a Class Member claims a loss great than $50,000;

(vii) if a Class Member claims a loss of more than $50,000, there shall be oral examinations for discovery of no more than 3 hours to be completed within a fixed period; and

(viii) references will be heard in writing, or at the referee's discretion, in person, with summary procedures for oral testimony and argument;

(e) the court will supervise the process and the administrator will periodically report to the court;

(f) the court may authorize interim payments to Class Members; and

(g) the court will consider whether there should be a cy-pres payment.

Exhibit "O" to the First Robb Affidavit, Plaintiffs' Initial Record, tab 2(O).

345. The litigation plan proposes an efficient and manageable procedure. At the certification motion, the litigation plan must necessarily be preliminary. Not all procedural details need be particularized. The purpose of the litigation plan at the certification motion is to assist the motions judge to determine whether the action is manageable and whether the goals of the *CPA* will be served by certification of the action as a class proceeding. As the litigation progresses, the revised litigation plan can be modified as required.

*Andersen* v. *St. Jude Medical Inc.,* [2004] O.J. No. 132 (S.C.J.) at para. 14.

346. The final decision of how to resolve any individual issues can only be made in light of the evidence and the conclusions reached at the common issues trial. Section 25 of the *CPA* confers a wide discretion upon the trial judge to determine how individual issues are to be dealt with, including the power to dispense with usual procedural steps. It is for the trial judge to determine how issues not determined at the common issues trial will be decided. As Cullity J. wrote:

> The court at this stage of the proceeding is, of course, not equipped with sufficient foresight to predict with any certainty the most appropriate method, or methods, of resolving the individual issues that will remain after the trial of common issues. That question – and the details that will need to be addressed – must be considered in the light of the decisions on the common issues and the evidence that will be given at the trial. For this reason, Section 25 of the *CPA* confers a wide discretion on the trial judge to decide how the individual issues will be dealt with. The discretion includes authority to authorise or dispense with procedural steps – including discovery – and to prescribe rules relating to the admission of evidence and the means of proof that the judge considers appropriate.
>
> The motions judge has only to determine whether a proposed plan is "workable". A workable plan, in my opinion, is one that could probably be managed and for which, on the evidence before the court, it is more probable than not that it would be sufficiently effective to permit a finding that the objectives of the *CPA* would be achieved by allowing the action to proceed in accordance with the plan. A workable plan in this sense would support the plaintiff's case on the issue of preferability.
>
> A finding that a litigation plan is satisfactory for the purposes of certification does not bind the Defendants to accept it after a trial of the common issues and, of course, it does not in any way bind the trial judge. Nor is it cast in stone before the trial as it can be amended from time to time with the approval of the court.
>
> *Healey* v. *Lakeridge*, [2006] O.J. No. 5621 (S.C.J.) at p. 2, paras. 2 – 4.
>
> *Taylor* v. *Canada (Minister of Health),* [2007] O.J. No. 3312 (S.C.J.) at p. 29, para. 104.

347. The litigation plan is a work in progress. Inevitably, it will require amendment.

> *Cloud* v. *Canada (Attorney General)* (2004), 73 O.R. (3d) 401 (C.A.) at p. 425, para. 95.
>
> *Pearson* v. *Inco Ltd.* (2006), 78 O.R. (3d) 641 (C.A.) at p. 674, para. 97.

348. The requirements of section 5(1)(e) have been satisfied. The Plaintiffs should be appointed as representative Plaintiffs for the class proceeding.

**CONCLUSION ON CERTIFICATION**

349. The Plaintiffs have satisfied the tests in s. 5 of the *CPA*. The court should certify the action as a class proceeding.

## PART III—THE *OSA* TEST FOR LEAVE

350. In the portion of the factum that follows, the Plaintiffs assert that they have satisfied the test for leave set out in s.138.8(1) of the *OSA* to plead the right of action set out in s.138.3.

**THE S.138.8(1) TEST FOR LEAVE**

351. The language of section 138.8 is mandatory. The court must grant leave to plead the causes of action contained in section 138.3 if the following two-part test is met:

(a) the action is brought in good faith; and

(b) there is a reasonable possibility that the action will be resolved at trial in favour of the plaintiff.

*Securities Act,* R.S.O. 1990, c. S. 5, s. 138.8(1) as amended ("*OSA*").

**THE PLAINTIFFS HAVE BROUGHT THE ACTION IN GOOD FAITH**

352. Black's Law Dictionary defines "good faith" as:

> an intangible and abstract quality with no technical meaning or statutory definition, and it encompasses, amongst other things, an honest belief the absence of malice and the absence of design to fraud or to seek an unconscionable advantage, and an individual's personal good faith is a concept of his own mind and inner spirit and, therefore, may not conclusively be determined by his protestations alone.

353. Some of the principles that the court should consider in deciding whether the Plaintiffs have satisfied the "good faith" requirement in s.138.8(1)(a) are as follows:

(a) good faith is a question of fact;

(b) whether a plaintiff has commenced an action in good faith requires an objective assessment of the plaintiffs' subjective intent;

(c) belief in the merits of the claim is cogent evidence of good faith, but it is not determinative;

(d) whether the parties had pre-existing disputes is a relevant factors in determining good faith;

(e) bad faith may be inferred from an absence of a belief in an arguable cause of action; and

(f) the concept of good faith is founded on honesty.

*Jennings* v. *Bernstein*, [2001] O.J. No. 831 (S.C.J.).

*Acupulco Holdings Ltd.* v. *Jeaen,* [1997] 47 Alta. L.R. (3d) 234 (C.A.).

*Munrealty Inc.* v. *Ideal Construction Co. Ltd.,* [2005] O.J. No. 3751 (S.C.J.).

354. To date, the representative Plaintiffs have, vigorously and capably prosecuted the action and have demonstrated that they have commenced the action in good faith.

355. Mr. Silver has deposed that he "commenced this action to recover the loss on my Imax investment" and to ensure:

> … that the Defendants are held accountable for their behaviour and to send a message to officers and directors of other public companies that they too will be held accountable for misrepresentations made to the public. I have no ulterior motive, nor any improper or collateral purpose in commencing this action.
>
> Silver Affidavit, paras 14-15, Plaintiffs' Initial Record, tab 3, pp. 279-280.

356. Mr. Cohen gave the following evidence:

> In this action, I seek to recover the losses incurred by me, Neil and the other Class Members as a result of acquiring Imax securities and holding them throughout the Class Period.
>
> …
>
> I have commenced this action to recover the loss on my Imax investment. I note, however, Michael Robb's estimate that litigating this lawsuit to conclusion will cost approximately $750,000. I could not afford to litigate this case on my own, and given the size of my loss, it would not make sense to litigate this case for my benefit alone.
>
> I have also commenced this action to ensure that the Defendants are held accountable for their behaviour and to send a message to officers and directors of other public companies that they too will be held accountable for misrepresentations made to the public. I have no ulterior motive, nor any improper or collateral purpose in commencing this action.
>
> Cohen Affidavit paras. 7, 14, 15, Plaintiffs' Initial Record, tab 4, pp. 640-641.

357. The Plaintiffs may be motivated, in part, by a modest self-interest. But, a self-interested plaintiff may be acting in good faith. As Robins J.A. remarked in the *Richardson* decision (albeit in the context of considering whether the good faith requirement was met in a derivative action):

> Whether it is motivated by altruism, as the motions court judge suggested, or by self-interest, as the respondents suggest, is beside the point. Assuming as I suppose, it is the latter, self

> interest is hardly a stranger to the security or investment business. Whatever the reason, there are legitimate legal questions raised here that call for judicial resolution. The fact that this shareholder is prepared to assume the costs and undergo the risks of carriage of action that may be ultra vires and in breach of shareholders' rights does not provide a proper basis for impugning its bona fides. In my opinion, there is no valid reason for concluding that the good faith condition specified in s.339(2)(b) has not been satisfied.
>
> *Richardson Greenshields of Canada Limited* v. *Kalmacoff* (1995), 22 O.R. (3d) 577 at 587 (C.A.).

358. The Plaintiffs have little to gain (in financial terms) if they are successful in the action, and they face a costs order if they are unsuccessful on the motion for leave pursuant to the *OSA*[252].

359. Significantly, as it relates to the plaintiffs, there is no evidence of:

(a) malice;

(b) the intention to defraud or to seek an unconscionable advantage;

(c) bad faith;

(d) dishonesty; or

(e) pre-existing disputes among the parties.

360. There are legitimate issues to be tried in this action. The Plaintiffs have prosecuted the action despite the associated risks and the potential of facing costs if unsuccessful. The Plaintiffs commenced this motion and action in good faith.

---

[252] S.138.11 of the *OSA* provides that the prevailing party on the motion for leave is entitled to costs despite the provisions of the *CJA* and the *CPA*.

**THERE IS A REASONABLE POSSIBILITY THAT THE ACTION WILL BE RESOLVED AT TRIAL IN FAVOUR OF THE PLAINTIFFS**

361. The test set out in s. 138.8(1)(b) has not been judicially considered. Therefore, in order to determine the meaning of the phrase "*there is a reasonable possibility that the action will be resolved at trial in favour of the plaintiffs*" in the context of s. 138.8(1)(b), it is helpful to examine the legislative history of Part XXIII.1.

362. Part XXIII.1 is remedial legislation. The main goal of enacting Part XXIII.1 was to deter misrepresentations and the failure to make timely disclosures in the secondary market. The method of meeting this goal was by creating limited civil liability.

> P. Emerson and G. Clarke, Bill 198 and Ontario's Securities Act: *Giving Investors and the OSA Added Muscle*, 3rd Annual Directors' Governance Summit, at p. 13.
>
> Committee on Corporate Disclosure, *Final Report: Responsible Corporate Disclosure – A Search for Balance* (Chair T.I.A. Allen, Toronto: The Toronto Stock Exchange, 1997) (the "*TSE Committee Report*").
>
> CSA Notice 53-302: *Proposal for a Statutory Civil Remedy for Investors in the Secondary Market*, (2000) 23 O.S.C.B. 7383 (November 3) (the "*CSA Notice*") at p. 7385.

363. While Part XXIII.1 was in the draft legislation stage, corporate issuers made submissions to the TSE Committee and to the Canadian Securities Administrators ("CSA") regarding the draft provisions. One of the main concerns expressed by corporate issuers was the potential of facing "strike suits".

> P. Anisman, *Securities Class Actions: Ontario's Limited Liability Regime for Secondary Market*, Osgoode Hall Law School 3rd National Symposium on Class Actions Without Borders, ("Anisman Paper") at p.10.

364. In the decision of *Epstein v. First Marathon Inc.*, Justice Cumming described a "strike suit" as follows:

> The term "strike action" or "strike suit" has emerged in the context of certain class proceedings litigation in the United States. The term connotes the commencement and pursuit of a class proceeding where the merits of the claim are not apparent but the nature of the claim and targeted transaction is such that a sizeable settlement can be achieved with some degree of probability. The term suggests a class proceeding that is properly regarded as an abuse of process.
>
> *Epstein* v. *First Marathon Inc.*, [2000] O.J. No. 452 (S.C.J.) at para. 41.

365. A plaintiff who commences a strike suit does not act in good faith.

366. As a result of the concerns expressed by corporate issuers, the CSA modified the draft legislation. The modifications were enacted and are contained in s. 138.8(1).

367. CSA Notice 53-302 explains the purpose of the screening mechanism contained in s. 138.8(1) as follows:

> One of the risks of creating statutory liability for misrepresentations or failures to make timely disclosures is the potential for investors to bring actions lacking any real basis in the hope that the issuer will pay a settlement just to avoid the cost of litigation. **To limit unmeritorious litigation or strike suits, Plaintiffs would be required to obtain leave of the court to commence an action**. In granting leave, the court would have to be satisfied that the action (i) is being brought in good faith, and (ii) has a reasonable possibility of success.
>
> *CSA Notice* at Executive Summary, (f) [emphasis added].

368. If a proposed action is not "unmeritorious" and is not a "strike suit," it "has a reasonable possibility of success" and satisfies the screening mechanism in s. 138.8(1).

369. Put differently, as long as there is some evidence which, if accepted by the court, is consistent with the misconduct described in s. 138.3 (eg. some evidence of misrepresentation), then, there is a "*reasonable possibility that the action will be resolved at trial in favour of the plaintiffs*".

370. This interpretation is consistent with the judicial treatment of the words "*reasonable possibility*" in other contexts.

371. In the context of a dangerous offender application under s. 753.1(2)(c) of the *Criminal Code*, the Court must find that there is "*a reasonable possibility of eventual control of the risk in the community.*" In analyzing s. 753.1(2)(c), the Ontario Court of Justice determined that a "*possibility is less than a probability.*"

*R.* v. *Walford*, [2007] O.J. No. 744 at para. 80.

372. The Alberta Court of Appeal concluded that "*Section 753.1 requires only that there be a reasonable possibility of eventually controlling the risk that J.G.T. poses in the community. The section does not require certainty or even a probability.*" Therefore, the term "*reasonable possibility*" is a lower threshold than a "*probability*".

*R. v. J.G.T.*, [2000] A.J. No. 938 at para. 263.

373. In the decision *R. v. Biniaris*, the Supreme Court of Canada held that considering the words "*reasonable possibility of success*" required both an objective assessment and, to some extent, a subjective one.

*R.* v. *Biniaris* [2000] 1 S.C.R. 381 at para. 34.

374. In the decision of *Richardson Greenshields of Canada Limited v. Kalmacoff*, the Court of Appeal for Ontario considered an appeal from a decision refusing to grant leave to commence a derivative action under the *Canada Business Corporations Action*. In authorizing the derivative action, Robins J.A. considered the purpose of a derivative action. He wrote:

> In deciding whether leave should be granted, it should be borne in mind that a derivative action brought by an individual shareholder on behalf of a corporation serves a dual purpose. First, it ensures that a shareholder has a right to recover property or enforce rights for the corporation if the directors refuse to do so. Second, and more important for our present purposes, it helps to guarantee some degree of accountability and to ensure that control exists over the board of directors by allowing shareholders the right to bring an action against directors if they have breached their duty to the company: M. A. Maloney, "Whither The Statutory Derivative Action?", (1986) 64 Can.Bar Rev.309.
>
> **It should also be borne in mind that s. 339 is drawn in broad terms and, as remedial legislation, should be given a liberal interpretation in favour of the complainant. The court is not called upon at the leave stage to determine questions of credibility or to resolve the issues in dispute, and ought not to try. These are matters for trial.**
>
> …
>
> *Richardson Greenshields of Canada Limited v. Kalmacoff* (1995), 22 O.R. (3d) 577 (C.A.) at p. 584-585. [emphasis added]

375. Under s. 251 of the *Bankruptcy and Insolvency Act,* the court must grant leave before an action may be commenced against the Superintendent, an official or interim Receiver or a Trustee.

> *Bankruptcy and Insolvency Act,* R.S.C. 1985, c. B.3, s. 215.

376. In the decision of *Mancini (Trustee of) v. Falconi*, Osborne J.A. considered the leave requirement under the *Bankruptcy and Insolvency Act*. Osborne J.A. wrote that "*the court is not required to make a final assessment of the merits of the claim before granting leave.*"

*Mancini (Trustee of)* v. *Falconi*, [1993] O.J. No. 146 at pp. 3 and 5 (C.A.).

377. Taking into account the legislative history of Part XXIII.1 and the judicial treatment of the words "*reasonable possibility*", the court should conclude that a plaintiff has satisfied s. 138.8(1)(b), if the plaintiff brings the action in good faith and if there is some evidence of the misconduct particularized in s. 138.3. There is an abundance of such evidence before the court.

378. The Defendants assert "due diligence." At trial, the onus of proof of due diligence is upon them. Therefore, the issue of due diligence should be left for the trial judge rather than determined on the motion for leave, unless the Defendants demonstrate that they are entitled to summary judgment on this issue.

Anisman Paper at p.13; Part XXIII.1, s. 138.4(6).

379. The Defendants have also asserted that the correction of the misrepresentation did not cause the Imax stock price to drop. There is conflicting expert evidence on this point. This conflicting evidence, in itself, is sufficient to satisfy the "reasonable possibility test." The resolution of this conflict should be left for the trial judge because a motions judge is not equipped to resolve conflicts in expert evidence and because Part XXIII.1, s. 138.5(3) also reverses the onus on the issue of causation.

380. It follows from a review of the authorities canvassed above that, in assessing whether a plaintiff has satisfied the test in s. 138.8(1)(b), the court should apply the following principles:

(a) Part XXIII.1 is drawn in broad terms, is remedial legislation and should therefore be given a liberal interpretation which favours the party seeking to satisfy the test;

(b) the purpose of the screening mechanism is to "weed out" unmeritorious actions and strike suits;

(c) the court is not called upon at the leave stage to determine questions of credibility or to resolve the issues in dispute, and ought not to do so as these are matters for the trial judge;

(d) the term "*reasonable possibility*" is a lower threshold than a "*probability*";

(e) the court is required to objectively determine whether there is a reasonable possibility that the action will be resolved at trial in favour of the plaintiffs; and

(f) in view of the reverse onus dealing with "due diligence" and damages caused by a misrepresentation, those issues should be left for trial, rather than determined on a motion for leave, unless the Defendants demonstrate that they are entitled to summary judgment on those issues.

381. The Plaintiffs bring the motion in good faith. There is before the Court evidence that establishes the misrepresentation. There is evidence that the correction of the misrepresentation caused the stock price to fall. The tests have been met and leave should be granted.

***Common Issue 4: Did some or all of Imax's February 17, 2006 Press Release, Annual Report for the year ending December 31, 2005 or its two March 9, 2006 press releases contain a misrepresentation within the meaning of the OSA?***

***Common Issue 5: If the answer to (4) is yes, are the Defendants, or some of them, liable to the Class Members pursuant to section 138.3 of the OSA?***

382. If leave is granted to assert a cause of action pursuant to s. 138.3, then it follows that common issues 4 and 5 are proper common issues. These common issues

are applicable to those Class Members who purchased Imax shares whether on the TSX or NASDAQ.

## PART IV—ORDER SOUGHT

383. The Plaintiffs seek an order:

(a) granting leave to plead the right of action in s.138.3 of the *OSA*;

(b) certifying this action as a class proceeding;

(c) appointing them as representative plaintiffs;

(d) stating that the causes of action are declarations, conspiracy, negligence, negligent misrepresentation and fraudulent misrepresentation and breach of s.138.3 of the *OSA*;

(e) stating that the Class is as described in paragraph 265;

(f) stating that the common issues are as particularized at paragraph 274;

(g) directing that the members of the Class be notified of the certification order in accordance with the litigation plan;

(h) directing that a member of the Class may only opt out by sending a written election to opt out to Howie & Partners before a date to be specified by the court;

(i) stating that the litigation plan is a workable method of advancing the proceeding on behalf of the Class;

(j) fixing the costs of the certification motion, payable forthwith, on a scale to be determined by the court after hearing submissions; and

(k) such further and other directions as are required.

ALL OF WHICH IS RESPECTFULLY SUBMITTED,

November 24, 2008

HARVEY T. STROSBERG, Q.C.

A. DIMITRI LASCARIS

644976

JAY STROSBERG