UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | x<br>:<br>:<br>:<br>:<br>:<br>x | 06 CIV. 6128 (NRB)<br><br>MEMORANDUM OF LAW IN SUPPORT OF SNOW CAPITAL INVESTMENT PARTNERS, L.P.'S MOTION FOR RECONSIDERATION OF THIS COURT'S JANUARY 17, 2007 ORDER APPOINTING WESTCHESTER CAPITAL MANAGEMENT, INC. AS LEAD PLAINTIFF |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ....................................................................................................1

II. PRELIMINARY STATEMENT ..........................................................................1

III. ARGUMENT.........................................................................................................4

A. The Court Should Reconsider Its Decision to Appoint Westchester Capital as Lead Plaintiff ..........................................................................................4

1. Legal Standards on a Motion for Reconsideration ....................................4

2. Reconsideration Here Is Warranted in Light of the Second Circuit's Recent Decision in *W.R. Huff* .....................................................5

B. Westchester Capital Is Not a Member of the Class and Cannot Serve as Lead Plaintiff in This Action ........................................................................6

1. Standard for Appointment of Lead Plaintiff Under the PSLRA..................6

2. Westchester Capital Lacked Standing When This Action Was Commenced and When It Sought Appointment as Lead Plaintiff..............7

3. The Assignments Obtained by Westchester Capital Do Not Cure Its Standing Defect.........................................................................................8

a. The Assignments Are Untimely Under the PSLRA ........................8

b. The Assignments Should Be Rendered Void Because They Are in Violation of New York Law ..............................................10

C. Snow Capital Should Be Appointed Lead Plaintiff ..............................................11

IV. CONCLUSION.........................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Berger v. Weinstein*,
No. 07-994, 2008 U.S. Dist. LEXIS 59948
(E.D. Pa. Aug. 6, 2008)....................10

*Blair-Naughton, L.L.C. v. Diner Concepts, Inc.*,
No. 06-1183-JTM, 2007 U.S. Dist. LEXIS 92882
(D. Kan. Dec. 17, 2007)....................7, 10

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
94 N.Y.2d 726 (2000)....................11

*Bonnie & Co. Fashions v. Bankers Trust Co.*,
955 F. Supp. 203 (S.D.N.Y. 1997)....................4

*CIBC Bank & Trust Co. v. Banco Cent. do Brasil*,
886 F. Supp. 1105, 1110 (S.D.N.Y. 1995)....................11

*Cole v. Merrick Realty, Inc.*,
139 Fed. Appx. 340 (2d Cir. 2005)....................4

*Devlin v. Transp. Commc'ns. Int'l Union*,
175 F.3d 121 (2d Cir. 1999)....................4

*Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*,
No. 01 Civ. 5518 (MBM), 2003 U.S. Dist. LEXIS 5145
(S.D.N.Y. Apr. 1, 2003)....................7

*Elliott Assocs., L.P. v. Banco de la Nacion*,
194 F.3d 363 (2d Cir. 1999)....................11

*Elliott Assocs., L.P. v. Republic of Panama*,
975 F. Supp. 332 (S.D.N.Y. 1997)....................11

*Enzo APA & Son, Inc. v. Geapag A.G.*,
134 F.3d 1090 (Fed. Cir. 1998)....................9

*Excess Ins. Co. v. Odyssey Am. Reinsurance Corp.*,
No. 05 Civ. 10884 (NRB), 2008 U.S. Dist. LEXIS 30585
(S.D.N.Y. Mar. 26, 2008)....................4

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002)....................11

**Page**

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) ....................6

*In re Microstrategy Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) ....................9

*In re NYSE Specialists Sec. Litig.*,
240 F.R.D. 128 (S.D.N.Y. 2007) ....................4, 8

*In re Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ....................9

*In re SLM Corporation Securities Litigation*,
No. 1:08-cv-01029-WHP, slip op.
(S.D.N.Y. Apr. 1, 2009) ....................2, 3

*In re Smith Barney Transfer Agent Litig.*,
No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728
(S.D.N.Y. Apr. 17, 2006) ....................6

*In re Telxon Corp. Sec. Litig.*,
67 F. Supp. 2d 803 (N.D. Ohio 1999) ....................9

*India.com, Inc. v. Dalal*,
No. 02 CIV. 111 (DLC), 2003 U.S. Dist. LEXIS 2305
(S.D.N.Y. Feb. 20, 2003) ....................4

*Jones v. Goord*,
435 F. Supp. 2d 221 (S.D.N.Y. 2006) ....................7

*LNC Invs., Inc. v. First Fid. Bank, N.A.*,
No. 92 Civ. 7584 (CSH), 2000 U.S. Dist. LEXIS 4617
(S.D.N.Y. Apr. 6, 2000) ....................11

*Martino v. Miller*,
341 F. Supp. 2d 256 (W.D.N.Y. 2004) ....................4

*Merial Ltd. v. Intervet Inc.*,
430 F. Supp. 2d 1357 (N.D. Ga. 2006) ....................9

*Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*,
534 F.2d 1012 (2d Cir. 1976) ....................10, 11

**Page**

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995)....................................................................................4

*Singer v. Nicor, Inc.*,
No. 02 Civ. 5168, 2002 U.S. Dist. LEXIS 19884
(N.D. Ill. Oct. 17, 2002)....................................................................................9

*Se. Mo. Hosp. v. C.R. Bard, Inc.*,
No. 1:07cv0031 TCM, 2008 U.S. Dist. LEXIS 71841
(E.D. Mo. Sept. 22, 2008)....................................................................................6

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008).................................................................... *passim*

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) ....................................................................................1

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4 .................................................................................................... *passim*

N.Y. Jud. Ct. Acts Law
§489(1)....................................................................................................3, 8, 10

Federal Rules of Civil Procedure
Rule 23....................................................................................................2, 6, 7

## I. INTRODUCTION

In accordance with the direction of the Court in its letter to counsel dated March 13, 2009, Snow Capital Investment Partners, L.P. ("Snow Capital") respectfully submits this memorandum of law in support of its motion for reconsideration of the Court's January 17, 2007 Memorandum and Order appointing Westchester Capital Management, Inc. ("Westchester Capital") as Lead Plaintiff (the "Order").

## II. PRELIMINARY STATEMENT

Westchester Capital, an investment advisor, is the sole Lead Plaintiff in this action. At the time that the Court appointed Westchester Capital as Lead Plaintiff in this case, the Second Circuit had not yet ruled on whether an investment advisor could serve as a lead plaintiff. At least one district court, though, had previously held that an investment advisor, who was also an attorney-in-fact for its clients and who had unrestricted decision-making authority, could establish standing for purposes of serving as lead plaintiff. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 254 (S.D.N.Y. 2003). This Court cited to the analysis in *Weinberg* in appointing Westchester Capital as Lead Plaintiff.

This past December, however, the Second Circuit weighed in on the issue and, in *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), explicitly held that an investment advisor lacks standing to assert claims under the federal securities laws on behalf of its investor clients, even if those clients have granted power-of-attorney and unrestricted decision-making authority to the investment advisor. *Id*. at 108.

In light of this ruling, Snow Capital requested leave of the Court to seek reconsideration of the Court's appointment of Westchester Capital as Lead Plaintiff, since *W.R. Huff* now makes clear that Westchester Capital lacks standing, is not a member of the Class, cannot satisfy the typicality

and adequacy requirements of Federal Rule of Civil Procedure 23, and *ipso facto*, cannot serve as Lead Plaintiff.[1]

As this Court recognized in its March 13, 2009 letter, "[t]he Second Circuit's decision in [*W.R. Huff*] seems to raise genuine issues regarding whether Westchester Capital lacks constitutional standing to bring this action, and, more broadly, whether it is the most adequate plaintiff to serve as lead plaintiff." *See* Rosenfeld Decl., Ex. A, at 2.[2] This past week, Honorable William H. Pauley III issued an opinion addressing both of those concerns – with regard to investment advisors, in general, and Westchester Capital, in particular. In *In re SLM Corporation Securities Litigation*, No. 1:08-cv-01029-WHP, slip op. (S.D.N.Y. Apr. 1, 2009), *see* Rosenfeld Decl., Ex. B, Judge Pauley held that, following the decision in *W.R. Huff*, Westchester Capital – who had also been serving as lead plaintiff in that case – lacked constitutional standing to bring an action and was not the most adequate plaintiff to serve as lead plaintiff. *In re SLM*, No. 1:08-cv-01029-WHP at *3 ("In light of *W.R. Huff* . . . Westchester Capital, as an investment advisor without a valid assignment of its clients' claims, did not have Article III standing at the time [it was appointed as] lead plaintiff.").

The situation here is exactly the same. As in *In re SLM*: (i) Westchester Capital was appointed as Lead Plaintiff in this action before the Second Circuit had ruled on the issue of whether or not an investment advisor has standing to assert claims on behalf of its clients; (ii) an investor whose original motion had been denied in favor of Westchester Capital requested relief from the

---

[1] Westchester Capital also lacked standing at the time this action was commenced and at the time it was appointed Lead Plaintiff.

[2] References to "Rosenfeld Decl. Ex. ___" are to the exhibits attached to the accompanying Declaration of David A. Rosenfeld in Support of Snow Capital's Motion for Reconsideration of this Court's January 17, 2007 Order Appointing Westchester Capital Management, Inc. as Lead Plaintiff, dated April 3, 2009.

order appointing Westchester Capital as Lead Plaintiff; and (iii) Westchester Capital attempted to cure the defect in its standing by belatedly obtaining an assignment of the claims from its clients.

Not only is this the same issue that Judge Pauley was confronted with, but it is also the same investment advisor, Westchester Capital, who received virtually identical assignments from its clients ***after*** *W.R. Huff* had been decided. *Compare, e.g.,* Rosenfeld Decl., Ex. C (assignments obtained by Westchester Capital in this action) with Rosenfeld Decl., Ex. D (assignments obtained by Westchester Capital in *In re SLM*). Standing must exist, however, at the outset of the litigation. Assignments that are made after an action has already been commenced do not cure a lack of Article III standing. This is especially so in a case governed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which imposes a strict deadline by which investors can seek appointment as lead plaintiff. An assignment at this juncture is simply too late. And, the assignment would subject Westchester Capital to a unique defense since, as Judge Pauley concluded, "[e]ven if this Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise. That uncertainty requires this Court to proceed with caution." *In re SLM*, No. 1:08-cv-01029-WHP, at *7. Lastly, the assignments obtained by Westchester Capital are in violation of New York's anti-champerty statute, N.Y. Jud. Ct. Acts Law §489(1), and would be void in any event. Thus, the assignments that Westchester Capital received do not cure its lack of Article III standing.

Accordingly, Snow Capital, the movant with the next largest financial interest who is also otherwise adequate and typical, *see* Memorandum of Points and Authorities in Support of Snow Capital Investment Partners, L.P.'s Motion for Appointment as Lead Plaintiff, Approval of its Selection of Lead Counsel and for Consolidation of Related Actions, filed October 10, 2006, Dkt. #14 ("Lead Plaintiff Memo"), respectfully requests that the Court reconsider the Order and appoint

Snow Capital as Lead Plaintiff in the place of Westchester Capital and approve of its selection of Coughlin Stoia Geller Rudman & Robbins LLP as Lead Counsel.

## III. ARGUMENT

### A. The Court Should Reconsider Its Decision to Appoint Westchester Capital as Lead Plaintiff

#### 1. Legal Standards on a Motion for Reconsideration

A party may seek reconsideration of a court's prior ruling based on the following grounds: "(1) an intervening change in controlling law; (2) the availability of newly discovered evidence; and (3) the need to correct clear error or to prevent manifest injustice." *Excess Ins. Co. v. Odyssey Am. Reinsurance Corp.*, No. 05 Civ. 10884 (NRB), 2008 U.S. Dist. LEXIS 30585, at *2 (S.D.N.Y. Mar. 26, 2008); *cf. Martino v. Miller*, 341 F. Supp. 2d 256 (W.D.N.Y. 2004). The decision to grant or deny a motion for reconsideration is a discretionary rule of practice. *See Devlin v. Transp. Commc'ns. Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999); *Bonnie & Co. Fashions v. Bankers Trust Co.*, 955 F. Supp. 203, 209 (S.D.N.Y. 1997) (noting that a court has the discretion "to reconsider an issue if the court deems such reconsideration appropriate"); *see also Cole v. Merrick Realty, Inc.*, 139 Fed. Appx. 340 (2d Cir. 2005).

Here, reconsideration is proper in order to allow this Court to consider an intervening change or clarification of controlling law by the Second Circuit which, as detailed herein, has a direct and substantial impact on the Order appointing Lead Plaintiff in the instant action. *See India.com, Inc. v. Dalal*, No. 02 CIV. 111 (DLC), 2003 U.S. Dist. LEXIS 2305 (S.D.N.Y. Feb. 20, 2003) ("In the exercise of its discretion, the district court may consider newly submitted legal authority."); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Moreover, since this case is governed by the PSLRA, reconsideration is also proper since courts have a "continuing duty to

monitor whether lead plaintiffs are capable of adequately protecting the interests of the class members." *In re NYSE Specialists Sec. Litig*., 240 F.R.D. 128, 133 (S.D.N.Y. 2007).

### 2. Reconsideration Here Is Warranted in Light of the Second Circuit's Recent Decision in *W.R. Huff*

On December 3, 2008, the United States Court of Appeals for the Second Circuit issued its ruling that an investment advisor does not have standing to bring a lawsuit on behalf of its investors for losses incurred by its investors. *W.R. Huff*, 549 F.3d at 111 . The Second Circuit specifically held that, even with a power-of-attorney to bring lawsuits relating to its investors' losses, an investment advisor still lacks standing under Article III of the Constitution. *Id*. at 109.

The *W.R. Huff* litigation stemmed from shareholder claims of violations of federal securities laws arising out of an alleged fraud by Adelphia Communications Corporation and other individuals. Plaintiff W.R. Huff Asset Management Co., LLC ("W.R. Huff"), an investment advisor for public employee pension funds, commenced the litigation on behalf of certain of its client investors. Defendants challenged the constitutional standing of W.R. Huff to commence a lawsuit on behalf of its investment clients and moved to dismiss the complaint on that basis. *W.R. Huff*, 549 F.3d at 100. The District Court denied defendants' motion to dismiss and defendants appealed that decision to the Second Circuit, *see W.R. Huff*, 549 F.3d at 105, asking the Court of Appeals to determine whether an investment advisor has constitutional standing to sue for violations of federal securities laws on behalf of its clients, when the clients – not the investment advisor – are the beneficial owners of the underlying securities. More specifically, defendants asked the Second Circuit to decide what impact, if any, the investment advisor's: (a) discretionary authority to make investment decisions for its clients; and (b) a power-of-attorney from its clients to bring this lawsuit, have on the question of Article III standing. *Id.* at 103.

The Second Circuit ultimately concluded that an investment advisor, even with the described discretionary authority and power-of-attorney, does not have Article III standing. The Second Circuit summarized its conclusions as follows:

> 1. Huff [as an investment advisor] lacks constitutional standing to bring suit for violations of the federal securities laws in its own name but on behalf of its clients, the beneficial owners of the relevant securities.
>
> 2. Huff has not demonstrated an "injury-in-fact" because it does not have legal title [to] or ownership of its clients' claims against Adelphia.
>
> 3. Huff's status as both an attorney-in-fact for litigation purposes and an investment advisor with unfettered discretion over its clients' investment decisions does not confer on Huff Article III standing to sue in a representative capacity on its clients' behalf.

*Id.* at 111.

Under *W.R. Huff*, Westchester Capital cannot serve as Lead Plaintiff since it lacks constitutional standing to pursue claims in its clients' names and it has not demonstrated an "injury in fact" here. Accordingly, Westchester Capital did not have standing when this action was commenced and did not have standing when it sought and obtained appointment as Lead Plaintiff.

### B. Westchester Capital Is Not a Member of the Class and Cannot Serve as Lead Plaintiff in This Action

#### 1. Standard for Appointment of Lead Plaintiff Under the PSLRA

It is axiomatic that an investor that seeks to be appointed lead plaintiff, pursuant to the PSLRA, must be a member of the plaintiff class,[3] as well as satisfy the typicality and adequacy requirements of Federal Rule of Civil Procedure 23.[4] *See, e.g., In re Fuwei Films Sec. Litig.*, 247

---

3 *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II) (providing that only members of the purported class may seek appointment as lead plaintiff).

4 *See* 15 U.S.C. §78u-4 (a)(3)(B)(iii)(I)(cc) (providing that a movant for lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure).

F.R.D. 432, 439 (S.D.N.Y. 2008); *see also In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728 (S.D.N.Y. Apr. 17, 2006); *Se. Mo. Hosp. v. C.R. Bard, Inc.*, No. 1:07cv0031 TCM, 2008 U.S. Dist. LEXIS 71841, at *15 (E.D. Mo. Sept. 22, 2008) (noting that "[a] plaintiff who lacks standing is not a member of the class" and, therefore cannot satisfy the typicality or adequacy requirements of Rule 23(b)(3) and (a)(4)).

### 2. Westchester Capital Lacked Standing When This Action Was Commenced and When It Sought Appointment as Lead Plaintiff

A party's standing in an action is established as of the commencement of an action. *See Jones v. Goord*, 435 F. Supp. 2d 221, 255 (S.D.N.Y. 2006) ("Standing is determined at the time a complaint is filed"); *see also Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518 (MBM), 2003 U.S. Dist. LEXIS 5145, at *20 (S.D.N.Y. Apr. 1, 2003) ("A plaintiff must have standing at the time a lawsuit is filed"); *Blair-Naughton, L.L.C. v. Diner Concepts, Inc.*, No. 06-1183-JTM, 2007 U.S. Dist. LEXIS 92882 (D. Kan. Dec. 17, 2007) ("Standing is determined at the time an action is commenced.").

Westchester Capital cannot reasonably contest – under the legal principle confirmed by *W.R. Huff* – that as an investment advisor who itself has not suffered an "injury in fact," it did not have standing to participate in the instant litigation at the time that it was commenced or at the time that it was appointed as Lead Plaintiff. Indeed, in its letters to this Court, dated February 26, 2009 and March 6, 2009, *see* Rosenfeld Decl., Ex. E-F, respectively, Westchester Capital acknowledged that it only recently obtained an assignment of its client investors' losses and that the reason that it did so was to attempt to cure its lack of standing following *W.R. Huff*.

It is, therefore, inherent and undisputed that Westchester Capital lacked Article III standing to participate in this action and act as Lead Plaintiff at all relevant times. Westchester Capital lacked standing to participate in this action when it was commenced; lacked standing to seek Lead Plaintiff

appointment on October 10, 2006; and lacked the standing to be named Lead Plaintiff on January 17, 2007.[5]

### 3. The Assignments Obtained by Westchester Capital Do Not Cure Its Standing Defect

In an effort to cure its standing defect, Westchester Capital sought and obtained assignments from its clients who were the actual purchasers of IMAX securities. *See, e.g.,* Rosenfeld Decl., Ex. C. Those assignments make clear, however, that Westchester Capital was not the proper party who sought to be appointed Lead Plaintiff in accordance with the strict deadlines imposed by the PSLRA. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II). To change that now would be well past the statutory deadline. Regardless, the assignments should be found to be void since they appear to have been made in violation of New York's anti-champerty statute, N.Y. Jud. Ct. Acts Law §489(1).

#### a. The Assignments Are Untimely Under the PSLRA

An investor's eligibility and standing to serve as lead plaintiff, under the PSLRA, must be determined based on the filings it made in support of its original motion for appointment. *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D. at 138. Pursuant to the PSLRA, within 60 days after the required publication of a notice informing class members of their right to file a motion for appointment as lead plaintiff, any member or members of the proposed class may apply to the court to be appointed. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).

---

5 Any effort by Westchester Capital to preserve its Lead Plaintiff appointment will inevitably prejudice the putative Class members here. Indeed, dismissal for lack of standing is a very real possibility since, in opposing Westchester Capital's motion for class certification, defendants specifically challenged Westchester Capital's Article III standing. *See* Memorandum of Law in Support of Defendants IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce and Kathryn A. Gamble's Opposition to Plaintiffs' Motion for Class Certification, filed on February 23, 2009, Dkt. #94, and Defendant PricewaterhouseCoopers LLP's, an Ontario Limited Liability Partnership, Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, filed February 23, 2009, Dkt. #95.

Once that 60-day deadline passes, however, courts have not only outright rejected new motions, but they also routinely reject any effort to remedy the position an investor took in making its motion to be appointed lead plaintiff by later "supplementing" that position. *See, e.g., In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818-19 (N.D. Ohio 1999) (reasoning that the PSLRA precludes consideration filed after the 60-day window closed); *see also Singer v. Nicor, Inc.*, No. 02 Civ. 5168, 2002 U.S. Dist. LEXIS 19884, at *3 (N.D. Ill. Oct. 17, 2002) (declining to consider movants' amendments of their lead plaintiff motions when the amendments were made after the 60-day filing deadline); *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 433 n.12 (E.D. Va. 2000) (noting that movants cannot supplement their motions to enhance their bases for lead plaintiff appointment after the expiration of the 60-day period). Moreover, in *In re Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395 (S.D.N.Y. 2004), the Court stated that supplementation of a movant's lead plaintiff argument "is not contemplated by the PSLRA" and that "supplementation after the expiration of the sixty (60) day period would not only be inconsistent with the language and purposes of the PSLRA, but would effectively nullify the time limits expressly provided therein." *Id*. at 410.

Here, it cannot legitimately be disputed that, during the pendency of the PSLRA's 60-day time period within which to move for Lead Plaintiff status, Westchester Capital had no standing to participate in this action. Westchester Capital, therefore, could not be appointed Lead Plaintiff as it was not a member of the Class it sought to represent. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II). Westchester Capital cannot now cure its inadequacy or ineligibility for Lead Plaintiff appointment by supplementing its motion for appointment through an assignment of its clients' rights. *See Merial Ltd. v. Intervet Inc.*, 430 F. Supp. 2d 1357, 1362 (N.D. Ga. 2006) (stating that "nunc pro tunc assignments" cannot be "sufficient to confer retroactive standing"); *Enzo APA & Son, Inc. v. Geapag*

*A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) (finding that "[a]s a general matter, parties should possess rights before seeking to have them vindicated in court" and that courts should not accept a "subsequent assignment to automatically cure a standing defect"); *see also Berger v. Weinstein*, No. 07-994, 2008 U.S. Dist. LEXIS 59948, at *20, n.4 (E.D. Pa. Aug. 6, 2008) (noting that "an assignment of legal rights which takes place after the commencement of litigation does not abdicate the constitutional requirement that standing 'must exist from the commencement of litigation.'"); *Blair-Naughton, L.L.C.*, 2007 U.S. Dist. LEXIS 92882, at *7 ("courts have rejected retroactive attempts to create standing by use of eleventh-hour assignments"). Accordingly, the belated assignments cannot cure Westchester Capital's lack of Article III standing at the outset of this litigation and during the Lead Plaintiff appointment process.

**b. The Assignments Should Be Rendered Void Because They Are in Violation of New York Law**

Westchester Capital cannot now accept the assignment of its clients' losses or claims for the purposes of attaining standing and for the sole purpose of participating in this lawsuit. *See Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1015-16 (2d Cir. 1976) (a corporation cannot take "an assignment of a claim for the purpose of suing thereon."). Indeed, any assignment of its clients' claims against IMAX by Westchester Capital would constitute a violation of New York's anti-champerty statute, N.Y. Jud. Ct. Acts Law §489(1). Section 489(1) provides, in pertinent part:

> No person or co-partnership, engaged directly or indirectly in the business of collection and adjustment of claims, and no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon.

*Id.*

Here, Westchester Capital obtained assignments of its clients' losses for the sole purpose and intent of pursuing this action against IMAX. Westchester Capital confirmed that the assignments were effectuated for that purposes in its counsel's letters to this Court, dated February 26, 2009 and March 6, 2009. *See* Rosenfeld Decl., Ex. E-F, respectively. This is in clear violation of §489. *See Poloron Prods.*, 534 F.2d at 1015-16 ("Section 489 specifically prohibits a corporation from taking an assignment of a claim for the purpose of suing thereon"); *Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363, 375 (2d Cir. 1999) (same); *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 94 N.Y.2d 726, 733-734 (2000) (same).

Since the assignments are in violation of a New York statute, and are void, Westchester Capital cannot be allowed to acquire standing through such violation. *See, e.g., Elliott Assocs., L.P. v. Republic of Panama*, 975 F. Supp. 332, 339 (S.D.N.Y. 1997) ("[A]ssignments made in violation of section 489 are void."); *CIBC Bank & Trust Co. v. Banco Cent. do Brasil*, 886 F. Supp. 1105, 1110 (S.D.N.Y. 1995) (same).[6] Indeed, the violation of the statute in and of itself should render Westchester Capital inadequate to represent the putative Class in this action.

### C. Snow Capital Should Be Appointed Lead Plaintiff

Once the Court finds that the presumption of the "most adequate plaintiff" has been rebutted, the Court then looks at the movant with the next largest financial interest and performs the same inquiry. *See In re Cavanaugh*, 306 F.3d 726, 728 (9th Cir. 2002). In this instance, that next movant is Snow Capital because it: (i) timely filed a motion seeking to be appointed Lead Plaintiff; (ii) represents the next largest financial interest; (iii) is otherwise adequate and typical; and (iv) can

---

[6] *See also LNC Invs., Inc. v. First Fid. Bank, N.A.*, No. 92 Civ. 7584 (CSH), 2000 U.S. Dist. LEXIS 4617 (S.D.N.Y. Apr. 6, 2000) (reasoning that the "juxtaposition of champerty and standing is logical" and that if a plaintiff's intention to take action for the purpose of maintaining the action is shown, that plaintiff shall have no standing to sue).

properly establish its Article III standing. *See* Lead Plaintiff Memo at 3-5. Importantly, despite the fact that seven investors had initially sought to be appointed lead plaintiff here, no opposition was ever filed questioning the size of Snow Capital's financial interest or its adequacy or typicality. Accordingly, Snow Capital is the "most adequate plaintiff" and its motion should be granted in full.

## IV. CONCLUSION

For the reasons set forth above, Snow Capital respectfully requests that the Court grant reconsideration of the Order, appoint it as Lead Plaintiff and approve of its selection of counsel.

DATED: April 3, 2009

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARK S. REICH

*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

*Counsel for Snow Capital Investment Partners, L.P.*

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on April 3, 2008, I caused a true and correct copy of the attached:

Notice of Motion for Reconsideration of this Court's January 17, 2007 Memorandum and Order Appointing Westchester Capital Management, Inc. as Lead Plaintiff;

Memorandum of Law in Support of Snow Capital Investment Partners, L.P.'s Motion for Reconsideration of this Court's January 17, 2007 Order Appointing Westchester Capital Management, Inc. as Lead Plaintiff; and

Declaration of David A. Rosenfeld in Support of Snow Capital's Motion for Reconsideration of this Court's January 17, 2007 Order Appointing Westchester Capital Management, Inc. as Lead Plaintiff

to be served electronically on all counsel registered for electronic service for this case.

/s/ *David A. Rosenfeld*
David A. Rosenfeld