# EXHIBIT E

ABBEY SPANIER RODD & ABRAMS, LLP
ATTORNEYS AT LAW

212 EAST 39TH STREET
NEW YORK, NEW YORK 10016
PHONE 212 889 3700
FAX 212 684 5191
www.abbeyspanier.com

JILL S. ABRAMS
jabrams@abbeyspanier.com

February 26, 2009

BY FACSIMILE

The Honorable Naomi Reice Buchwald
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 2270
New York, New York 10007-1312

**Re: In re IMAX Corp. Securities Litigation**
**Master File No. 06-CV-6128 (NRB)**

Dear Judge Buchwald:

We represent Lead Plaintiff Westchester Capital Management, Inc. ("Westchester") in the above-captioned action and write in response to the request by Snow Capital Investment Partners, L.P. ("Snow Capital) for a pre-motion conference concerning its anticipated motion for reconsideration of the Court's January 17, 2007 Order appointing Westchester as the Lead Plaintiff herein. For the reasons that follow, we believe that reconsideration is unwarranted.

Snow Capital seeks to unseat Westchester as Lead Plaintiff on the purported ground that such result is warranted by *W.R. Huff Asset Management Co. L.L.C. v. Deloitte & Touche LLP*, 549 F.3d 100, 2008 U.S. App. LEXIS 24490 (2d Cir. 2008). However, *Huff* does not require any change in the lead plaintiff here. *Huff* was decided nearly two years after this Court appointed Westchester as the Lead Plaintiff. This Court's appointment of Westchester was based on then-existing case law permitting the appointment of an investment advisor as Lead Plaintiff when the investment advisor was the attorney-in-fact with the power to sue on its funds' behalf. The *Huff* court determined that, while such a power of attorney was insufficient for standing purposes because it did not confer an ownership interest on the investment advisor, the standing issue could be cured by an assignment of the claim to the advisor. *Id.* at *17-20. After *Huff* was decided, Westchester Capital obtained, from the funds on whose behalf this action was brought, assignments of the type prescribed by the Second Circuit in *Huff*. *Id.* at *17-18(relying on the Supreme Court's decision in *Sprint Communications Co. L.P. v. APPCC Services, Inc.*, 128 S. Ct. 2531, 171 L. Ed. 2d 424, 2008 U.S. LEXIS 5034). An assignment of the

right to sue permits the plaintiff to maintain the lawsuit that was filed before that assignment was made. *Wade Williams Distribution, Inc. v. American Broadcasting Co., Inc.* , 00 Civ. 5002 (LMM) 2005 U.S. Dist. LEXIS 5730 (S.D.N.Y. April 5, 2005).

In *Northstar Financial Advisors, Inc. v. Schwab Investments, et al*, No. C-08-4119 SI, 2008 U.S. Dist. LEXIS (N.D. Cal. Feb. 19, 2009), which we believe to be the first decision rendered on the issue since *Huff*, the court confirmed that such an assignment is adequate to confer standing on an investment advisor in a class action. That decision is attached for Your Honor's ease of reference. With the Court's permission, we propose to follow the procedure approved in *Northstar*, i.e. to amend our complaint to reflect the assignment. *Id.* at *6-8.

To be clear, Westchester did not concede a "defect" in its standing in its submission to Judge Pauley in the *SLM* matter. For example, Westchester's *SLM* brief (attached to Snow Capital's letter Feb.18, 2009 letter) states, at page 2:

> The assignment was intended to correct any *perceived defect* in standing that resulted from the holding in *Huff* that, so long as the damages that resulted from the alleged securities law violations were suffered by the clients and not by the attorney-in-fact adviser Huff, it was the clients that had standing. Under controlling law, such an assignment remedies Article III standing by conferring real party in interest status on plaintiff.
> (emphasis supplied)

Westchester respectfully submits that Snow Capital's request for a pre-motion conference should be denied.

Respectfully submitted,

Jill S. Abrams

JSA:lk
cc w/attachment:
Lewis Liman
Byron Wilder
Jennifer Conn
David A. Rosenfeld

LexisNexis



**NORTHSTAR FINANCIAL ADVISORS, INC., Plaintiff, v. SCHWAB INVESTMENTS, et al., Defendants.**

**No. C 08-4119 SI**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**2009 U.S. Dist. LEXIS 12763**

**February 19, 2009, Decided**
**February 19, 2009, Filed**

**COUNSEL:** [*1] For Northstar Financial Advisors Inc., Plaintiff: Christopher T. Heffelfinger, James Christopher Magid, Lesley Ann Hale, LEAD ATTORNEYS, Berman DeValerio, San Francisco, CA; Marc J. Gross, LEAD ATTORNEY, Greenbaum Rowe Smith & Davis LLP, Roseland, NJ; Bryan D. Plocker, PRO HAC VICE, Greenbaum Rowe Smith & Davis LLP, Iselin, NJ; Robert C. Finkel, PRO HAC VICE, Wolf Popper LLP, New York, NY.

For Schwab Investments, Charles Schwab & Co. Inc., Charles Schwab Investment Management, Inc., Schwab Total Bond Market Fund, Defendants: Darryl Paul Rains, LEAD ATTORNEY, Morrison & Foerster LLP, Palo Alto, CA.

**JUDGES:** SUSAN ILLSTON, United States District Judge.

**OPINION BY:** SUSAN ILLSTON

**OPINION**

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND**

On January 23, 2009, the Court heard argument on defendants' motion to dismiss the complaint. For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART the motion and GRANTS leave to amend.

**BACKGROUND**

Plaintiff Northstar Financial Advisors, Inc. ("Northstar") filed this class action lawsuit on behalf of all persons who owned shares of the Schwab Total Bond Market Fund (the "Fund") at any time from August 31, 2007 to the present. Complaint P 1. [*2] Northstar is a registered investment advisory and financial planning firm serving both institutional and individual clients. *Id.* P 9. Northstar manages both discretionary and nondiscretionary accounts on behalf of investors in its role as an investment advisor. *Id.* Northstar trades through Charles Schwab's Institutional Advisor Platform, and purchased shares in the Fund for its clients. *Id.* PP 11-12.

Northstar alleges that defendants violated the Section 13(a) of the Investment Company Act of 1940 ("ICA") by deviating from the Fund's investment objective to track the Lehman Brothers U.S. Aggregate Bond Index (the "Index") in two ways. First, Northstar alleges that the Fund deviated from this objective by investing in high risk non-U.S. agency collateralized mortgage obligations ("CMOs") that were not part of the Lehman Index and were substantially more risky than the U.S. agency securities and other instruments that comprised the Index. *Id.* P 3. Second, Northstar alleges that the Fund deviated from its investment objectives which prohibited any concentration of investments greater than 25% in any industry by investing more than 25% of its total assets in U.S. agency and non-agency mortgage-backed [*3] securities and CMOs. *Id.* P 4.

Northstar alleges that defendants' deviation from the Fund's investment objective exposed the Fund and its shareholders to tens of millions of dollars in losses due to a sustained decline in the value of non-agency mortgage-backed securities. The Funds' deviation from its stated

investment objective caused it to incur a negative total return of 1.09% for the period September 4, 2007 through August 27, 2008, compared to a positive return of 5.92% for the Index over that period. *Id.* P 5.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). [*4] However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). While courts do not require "heightened fact pleading of specifics," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal [*5] quotation marks omitted).

**DISCUSSION**

**I. Standing**

Defendants contend that because Northstar is an investment advisor that only purchased shares for its clients and not for itself, Northstar lacks constitutional standing. Defendants note that although the complaint is brought as a class action on behalf of "persons who owned shares of the Schwab Total Bond Market Fund," Northstar never actually owned shares of the Fund and instead only purchased them on behalf of its clients. Defendants rely on *W.R. Huff Asset Management Company, LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), in which an investment advisor alleged it had constitutional standing to sue on behalf of its clients as both their investment advisor and "attorney-in-fact." *Id.* at 104. The investment advisor did not allege in the complaint that it suffered any direct injury; instead, all of the alleged injury was suffered by the advisor's clients. *Id.* at 107. The Second Circuit held that the investment advisor lacked standing as an investment advisor because "the investment advisor-client relationship is not the type of close relationship courts have recognized as creating a 'prudential exception' to the third-party [*6] standing rules" and because the advisor "failed to demonstrate that, absent a recognition of its standing claim, there is a 'hindrance' to the [clients'] ability to protect their own interests." *Id.* at 110. The court rejected the advisor's standing based on its status as "attorney-in-fact" because the advisor's "power-of-attorney permits it to serve as an agent of its clients and to conduct litigation on behalf of its clients as their attorney-in-fact, but . . . is not purported to be a valid assignment and does not confer a legal title to the claims Huff brings." *Id.* at 109.

In response, Northstar argues that *Huff* is distinguishable because Northstar has suffered a direct financial injury because "Northstar operates under a fee-based structure based on the total value of assets under management." Complaint P 12. Northstar also has obtained an assignment of claims from one of its clients, Finkel Decl. Ex. F, and states that it can amend the complaint to allege the assignment.

The Court finds that the complaint does not allege that Northstar has suffered an injury in fact sufficient to confer constitutional standing, but that Northstar could amend the complaint to cure these deficiencies. [*7] As defendants note, the complaint alleges that it is brought on behalf of a class of persons who owned shares of the Fund. Complaint P 1. Under *Huff*, which this Court finds persuasive, Northstar cannot bring claims on behalf of its clients simply by virtue of its status as an investment advisor. [1] The assignment of claims from one of Northstar's clients would, however, cure this deficiency. The Court also finds that Northstar would likely have standing to sue in its own right due to the direct financial injury it alleges that it suffered due to the decline in total value of assets under management. *See Miller v. Dyadic Int'l Inc.*, No. 07-80948-CIV, 2008 U.S. Dist. LEXIS 32271, 2008 WL 2465286, at *10 (S.D. Fla. Apr. 18, 2000) (investment advisor had alleged injury sufficient to meet the constitutional injury in fact requirement because it was compensated based on the performance and value of the portfolios under its management). However, the

complaint as currently framed is not brought on behalf of Northstar directly, but on behalf of Northstar's clients, and thus does not seek to redress Northstar's injuries.

> 1 In support of its contention that it has constitutional standing, plaintiff cites several cases in which [*8] investment advisors have been appointed "lead plaintiff" under the Private Securities Litigation Reform Act. *See Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920 (9th Cir. 2007); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129 (C.D. Cal. 1999). However, as the *Huff* court noted, the PSLRA's lead plaintiff standards "are separate and apart from the elements of constitutional standing . . . and cannot be used to avoid constitutional requirements." 549 F.3d at 106.

Accordingly, the Court GRANTS defendants' motion to dismiss for lack of standing, and GRANTS plaintiff leave to amend to cure the deficiencies noted above. Because the Court finds that Northstar can cure the standing deficiency by amendment, the Court addresses defendants' other arguments in favor of dismissal.

**II. Private right of action under Section 13(a)**

Section 13(a) of the ICA provides:

> (a) No registered investment company shall, unless authorized by a vote of a majority of its outstanding voting securities --
>
> (1) change its subclassification as defined in section 80a-5(a)(1) and (2) [*9] of this title or its subclassification from a diversified to a non-diversified company;
>
> (2) borrow money, issue senior securities, underwrite securities issued by other persons, purchase or sell real estate or commodities or make loans to other persons, except in each case in accordance with the recitals of policy contained in its registration statement in respect thereto;
>
> (3) deviate from its policy in respect of concentration of investments in any particular industry or group of industries as recited in its registration statement, deviate from any investment policy which is changeable only if authorized by shareholder vote, or deviate from any policy recited in its registration statement pursuant to section 80a-8(b)(3) of this title; or
>
> (4) change the nature of its business so as to cease to be an investment company.

15 U.S.C. § 80a-13(a). Section 13(a) does not explicitly provide for a private remedy, and the burden is on plaintiff to show that a private right of action may be implied under this section. *See Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 835 (9th Cir. 2004). Contrary to plaintiff's assertions, this question is unresolved in the Ninth Circuit; [*10] *Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000), did not hold that there is an implied private right of action under Section 13(a), and indeed found it unnecessary to reach that question: "The United States Supreme Court has expressly declined to address whether there exists an implied private right of action under the ICA. However, because the question whether a cause of action exists is not a question of jurisdiction, it may be assumed without being decided." *Id.* at 681 n.4 (internal citations and quotations omitted). The district court in *Lapidus* had dismissed the plaintiffs' Section 13(a) claim for lack of subject matter jurisdiction. On appeal, the Ninth Circuit reversed the jurisdictional holding and remanded for further proceedings. On remand, the district court dismissed the plaintiffs' claims for failure to state a claim. *Lapidus v. Hecht*, C 98-3130 MMC, 2002 U.S. Dist. LEXIS 14566, 2002 WL 1034042 (N.D. Cal. May 17, 2002). The district court did not address whether there was an implied private right of action under Section 13(a). [2]

> 2 Plaintiff's counsel here was also counsel of record in *Lapidus*.

"In determining whether a federal statute creates a private right of action, congressional intent is the cornerstone [*11] of the analysis." *Orkin v. Taylor*, 487 F.3d 734, 738 (9th Cir. 2007). Courts consider four factors to decide whether a statute creates a private right of action: "(1) whether the plaintiff is a member of a class that the statute especially intended to benefit, (2) whether the legislature explicitly or implicitly intended to create a private cause of action, (3) whether the general purpose of the statutory scheme would be served by creation of a private right of action, and (4) whether the cause of action is traditionally relegated to state law such that implication of a federal remedy would be inappropriate." *Id.* at 738-39 (citing *Cort v. Ash*, 422 U.S. 66, 78, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975)).

Defendants urge this Court to adopt the reasoning of *Olmsted v. Pruco Life Insurance Company*, 283 F.3d 429 (2d Cir. 2002), in which the Second Circuit held that there is no private right of action under Sections 26(f) and 27(i) of the ICA. [3] In *Olmsted*, the court found that

the Act's text created a "strong presumption" that Congress did not intend to create private rights of action under Sections 26(f) and 27(i). The court noted that the language of these sections only describes actions by insurance companies that are [*12] prohibited, and do not mention investors such as the plaintiffs. *Id.* at 433 ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Alexander v. Sandoval*, 532 U.S. 275, 289, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001)). The court also found it significant that Section 42 of the ICA explicitly provides for enforcement of all provisions of the Act, including Sections 26(f) and 27(i), by the SEC, and that Congress had explicitly provided for a private right of action in Section 26(f) for investors in regulated investment companies alleging that investment advisors breached certain fiduciary duties. *Id.* at 433.

> 3 Sections 26(f) and 27(i) state that it shall be unlawful for any account funding variable insurance contracts, or the sponsoring insurance company of such an account, to sell any such contract unless the fees and charges deducted under the contract are reasonable. *See* 15 U.S.C. § 80a-26(f); 15 U.S.C. § 80a-27(i)(2).

The Court directed the parties to submit supplemental briefing on the relevance, if any, of the amendment of Section 13 to add subsection (c), "Limitation on actions," to the question of whether [*13] there is a private right of action under Section 13(a). In December 2007, Congress amended Section 13 to restrict the rights of "persons" to bring actions with respect to investments in Sudan. Section 13(c) provides in relevant part:

> Notwithstanding any other provision of Federal or State law, no person may bring any civil, criminal, or administrative action against any registered investment company, or any employee, officer, director, or investment adviser thereof, based solely upon the investment company divesting from, or avoiding investing in, securities issued by persons that the investment company determines, using credible information that is available to the public, conduct or have direct investments in business operations in Sudan described in section 3(d) of the Sudan Accountability and Divestment Act of 2007.

15 U.S.C. § 80a-13(c)(1). Section 13(c)(2) further states that "Paragraph (1) does not prevent a person from bringing an action based on breach of fiduciary duty owed to that person with respect to a divestment or a non-investment decision, other than as described in paragraph (1)." *Id.* § 80a-13(c)(2).

Plaintiff contends that Section 13(c) demonstrates that actions under [*14] Section 13(a) are privately enforceable because 13(c) uses the word "person," which is defined in the ICA as a "natural person or company." 15 U.S.C. § 80a-2(a)(28); *see also* 15 U.S.C. § 80a-13(c)(3) (expanding definition of "person" to include "the Federal Government and any State or political subdivision of a State"). Plaintiff argues that by using the word "person" in a provision of the statute that explicitly addresses limitations on Section 13 actions, Congress recognized that the statute authorizes private actions. Defendants argue that Section 13(c), which was part of the Sudan Accountability and Divestment Act of 2007, does not create an express right of action under Section 13(a), and nothing in the text or legislative history of 13(c) evidences any Congressional intent to recognize an implied private right of action for Section 13(a).

The Court concludes that there is an implied private right of action under Section 13(a). The Court notes that many of the cases addressing claims under Section 13(a) do not address whether there is a private right of action, but rather solely discuss whether the plaintiff had stated a claim under that Section. *See, e.g., Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 731-32 (2d Cir. 1998); [*15] *Lapidus*, 2002 U.S. Dist. LEXIS 14566, 2002 WL 1034042, at *2-9. Plaintiff cites two cases which expressly hold that there is a private right of action under Section 13(a). *Potomac Capital Markets Corp. v. Prudential-Bache Corp. Dividend Fund, Inc.*, 726 F. Supp. 87 (S.D.N.Y. 1989); *Blatt v. Merrill Lynch*, 916 F. Supp. 1343 (D.N.J. 1996). However, both of these cases arose within the Second Circuit, and the *Olmsted* court cited both of these cases as belonging to an "ancien regime" of "[p]ast decisions reflecting judicial willingness to 'make effective [statutory] purpose in the context of implied rights of action.'" *Olmsted*, 283 F.3d at 434 & n.4 (*quoting Sandoval*, 532 U.S. at 289).

However, to the extent that *Olmsted* suggests that there is no private right of action under Section 13(a), the Court notes that *Olmsted* predated the amendment of Section 13. The Court finds it significant that Section 13(c) expressly limited the types of actions that a "person" could file under Section 13. If there were no private right of action under Section 13(a), there would be no need to restrict the actions that could be filed under Section 13. Defendants argue Section 13(c) cannot be read as referring to Section 13(a) or any other [*16] specific statutory provision, and they note that there is nothing in the legislative history suggesting that Section 13(c) was meant to imply a private right of action under Section 13(a). However, if Congress intended for Section 13(c)

to operate as a stand alone "safe harbor" provision, Congress easily could have added Section 13(c) as an entirely new provision of the ICA rather than amending Section 13, or could have stated that there was no private enforcement of Section 13 whatsoever. The fact that Congress only limited certain types of actions suggests that Congress intended that there be a private right of action under Section 13(a). *Cf. Marley v. United States*, 548 F.3d 1286, 1292 (9th Cir. 2008) ("[I]f Congress had intended to grant exceptions to the [Federal Tort Claims Act] limitations period, it would have done so expressly"); *Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").

**III.** [*17] **Stating a claim under Section 13(a)**

Section 80a-8 of the ICA requires an investment company [4] to list in its registration statement all investment policies which are changeable only if authorized by shareholder vote, as well as all policies that the registrant deems matters of fundamental policy. *See* 15 U.S.C. § 80a-8(b)(2) and (3). Section 80a-13 prohibits an investment company from deviating from any of these policies "unless authorized by the vote of a majority of its outstanding voting securities." 15 U.S.C. § 80a-13(a). Northstar alleges that defendants violated Section 13(a) by failing to track the Lehman Index Fund and by deviating from its concentration policy.

4 Plaintiff concedes that Schwab Investments is the only proper defendant named in the Section 13(a) claim because by its express terms Section 13(a) applies only to a "registered investment company." Accordingly, the other three defendants are dismissed from the Section 13(a) claim.

**A. Failing to track Lehman Index Fund**

The Fund's prospectus states that the Fund "seeks high current income by tracking the performance of the Lehman Brothers U.S. Aggregate Bond Index." Docket No. 60, Ex. A at 13 (July 13, 2007 Prospectus). [*18] According to the prospectus, the Lehman Brothers U.S. Aggregate Bond Index includes "investment-grade government, corporate, mortgage-, commercial mortgage- and asset-backed bonds that are denominated in U.S. dollars and have maturities longer than one year. Investment-grade securities are rated in the four highest rating categories (AAA to BBB-). Bonds are represented in the index in proportion to their market value." Prospectus at 13. The 1997 Proxy Statement stated that the Fund's strategy was "designed to maintain high credit-quality standards" because the Index was comprised primarily of "U.S. Treasuries, government agency securities and government agency mortgage-backed securities." *Id.* P 54. The 1997 Proxy Statement also stated that "U.S. Treasury and agency securities have the lowest credit risk compared to other types of fixed income securities," and "[t]he mortgage backed securities issued by Ginnie Mae, Fannie Mae, and Freddie Mac, and maintained in the Lehman Index, had the highest quality among mortgage-backed securities." *Id.* PP 41, 61.

Plaintiff alleges that the Fund deviated from its fundamental investment objective by making sizable investments [5] in non-agency CMOs [*19] that were significantly more risky than the agency-issued mortgage backed securities that were part of the Index. Plaintiff emphasizes the statement in the 1997 Proxy Statement that the Fund's investment's would be "managed" "through statistical sampling and other procedures" "to closely approximate [the] Index's characteristics," Complaint P 37, and the SAI's statement that the Fund would use an "indexing strategy" to "track the investment results" of the Index. Docket No. 56 (Sept. 1, 2006 SAI at *2). Plaintiff acknowledges that the prospectus and SAI both state that the Fund is not required to invest any percentage of its assets in the securities represented in the Index, and also that these documents disclose that the Fund may invest in CMOs. However, plaintiff alleges that by investing heavily in non-agency CMOs that are not part of the Index, the Fund violated its investment objective of using an "indexing strategy" to "track" and "closely approximate" the Index.

5 The complaint alleges that according to schedules appended to the February 28, 2008 Semi-Annual Report, the Fund had invested 27.3% of its assets as of February 28, 2007 in non-agency CMOs. Complaint P 72.

Defendants [*20] contend that failing to achieve an investment objective is not the same thing as violating it, and that the actual language of the Fund's investment objective makes this clear because the fund said only that it "seeks" and will "attempt" to track the index. Defendants note that the Fund tracked the returns of the Lehman Index for nearly ten years, and only fell short of the Index for several months. Defendants emphasize the prospectus' warning that "[t]here can be no guarantee that [the fund] will produce the desired results." Prospectus at 17. Defendants also argue that the investment in non-agency CMOs was not inconsistent with the Fund's investment objective to track the Index because the Fund's stated investment objective does not say anything about CMOs. Instead, the investment objective says only that the Fund will employ an indexing strategy. Defendants

emphasize that the prospectus informs investors that the Fund may invest in securities that are not part of the Index, including mortgage-backed securities and CMOs, Prospectus at 14, and that the SAI contains a four page discussion of mortgage-backed securities.

The Court concludes that Northstar's allegations are sufficient [*21] to state a claim that the Fund's significant investments in non-agency CMOs violated the Fund's investment objective. The prospectus and SAI informed investors that the Fund would "track" the performance of the Lehman Index, and that the "fund uses the index as a guide in structuring the fund's portfolio and selecting its investments." Prospectus at 14. Defendants are correct that the simple fact that the Fund invested in CMOs that were not part of the Index does not, on its own, violate the Fund's investment objective. However, plaintiff alleges not only that the Fund invested in non-agency CMOs that were not part of the Index, and which were significantly more risky than the agency CMOs that were part of the Index, but also that the Fund's investment in non-agency CMOs was sizable. Complaint P 72. Given the statements in the 1997 Proxy Statement, as well as the prospectus and SAI about the Fund's use of an "indexing strategy" to "track" the results of the Index, the Court finds that plaintiff has stated a claim under Section 13(a). Whether the Fund's investments in non-agency CMOs were, in fact, inconsistent with its investment objective of tracking the Index, is a factual matter [*22] that cannot be resolved on the pleadings.

**B. Concentration policy**

Northstar also alleges that defendants violated Section 13(a) by investing more than 25% of the Fund in mortgage-backed securities in violation of the Fund's concentration policy which limits the Fund's investments in any one industry to less than 25% of the Fund's assets. Neither the ICA nor any SEC regulation defines "industry." The SEC has published guidelines relating to registration statements for mutual funds, *Registration Form Used by Open-End Mgmt. Inv. Cos.; Guidelines*, SEC Release Nos. 33-6479, IC-13436 (August 12, 1983) (Finkel Decl. Ex. C). Guide 19, "Concentration of Investments in Particular Industries," states:

> In determining industry classifications . . . [a] registrant . . . may select its own industry classifications, but such classifications must be reasonable and should not be so broad that the primary economic characteristics of the companies in a single class are materially different. Registrants selecting their own industry classifications must be reasonable and should disclose them (a) in the prospectus in the case of policy to concentrate, or (b) in the Statement of Additional Information in the [*23] case of a policy not to concentrate.

*Id.* at *74. In 2006, the Fund changed its classification of non-agency mortgage-backed securities as constituting an "industry" to not constituting an "industry." The September 1, 2006 SAI states,

> **Concentration** means that substantial amounts of assets are invested in a particular industry or industries. Concentration increases investment exposure. For purposes of a fund's concentration policy, the fund will determine the industry classification of asset-backed securities based upon the investment adviser's evaluation of the risks associated with an investment in the underlying assets. For example, asset-backed securities whose underlying assets share similar economic characteristics because, for example, they are funded (or supported) primarily from a single or similar source or revenue stream will be classified in the same industry sector. In contrast, asset-backed securities whose underlying assets represent a diverse mix of industries, business sectors and/or revenue streams will be classified into distinct industries based on their underlying credit and liquidity structures. . . . *The funds have determined that mortgage-backed securities issued* [*24] *by private lenders do not have risk characteristics that are correlated to any industry and, therefore, the funds have determined that mortgage-backed securities issued by private lenders are not part of any industry for purposes of the funds' concentration policies.* This means that a fund may invest more than 25% of its total assets in privately-issued mortgage-backed securities, which may cause the fund to be more sensitive to adverse economic, business or political developments that affect privately-issued mortgage-backed securities. Such developments may include changes in interest rates, state or federal legislation affecting residential mortgages and their issuers, and changes in the overall economy.

SAI at *8 (emphasis added). Plaintiff alleges that by reclassifying mortgage-backed securities as not constituting an "industry," the Fund was able to increase its investments in mortgage-backed securities without seeking shareholder approval to modify the concentration policy.

Defendants agree that the Fund must obtain shareholder approval before changing its "concentration policy," but argue that changing an industry classification is not a change to a "concentration policy." Instead, [*25] defendants contend that the Fund's "concentration policy" is contained in the SAI, under "Investment Limitations," which states that the Fund may "[n]ot concentrate investments in a particular industry or group of industries, or within one state (except to the extent that the index which each fund seeks to track is also so concentrated) as concentration is defined under the Investment Company Act of 1940 or the rules or regulations thereunder, as such statute, rules or regulations may be amended from time to time." SAI at *39. Defendants argue that the Fund's reclassification of mortgage-backed securities was "reasonable" as required by SEC Rule 19. Defendants have submitted evidence that another large investment company manager, the Pacific Investment Management Company (PIMCO), likewise does not classify mortgage-backed securities as an "industry," and they assert that "no standard classification system of which we are aware defines 'mortgage-backed securities' as an industry." Motion at 11.

The Court finds that whether the Fund violated the concentration policy which prohibits investing more than 25% of the Fund's assets in a single industry turns on whether mortgage-backed securities [*26] are properly considered an "industry," a factual matter which the parties presently dispute. If, as plaintiff alleges, mortgage-backed securities constitute an "industry," the Fund bypassed - and effectively violated - the concentration policy by improperly reclassifying mortgage-backed securities. If, as defendants contend, the Fund's reclassification of mortgage-backed securities was reasonable, there was no violation of the concentration policy. This cannot be resolved at the current stage of the pleadings. [6]

6 The cases cited by defendants are factually distinguishable because the alleged violations did not implicate the concentration policies of the Funds. *See Phillips v. Morgan Stanley Dean Witter High Income Advantage*, No. 01 CIV.8139 DC, 2002 U.S. Dist. LEXIS 17988, 2002 WL 31119441 (S.D.N.Y. Sept. 25, 2002) (where policy only prohibited concentration of investments in specified "industries," no violation of implied policy not to concentrate investments in "group of industries"); *In re Alliance North American Government Income Trust, Inc. Securities Litigation*, No. 95 Civ 0330 (LMM), 1996 U.S. Dist. LEXIS 14209, 1996 WL 551732 (S.D.N.Y. Sept. 27, 1996) (no violation of policy that Fund "may not invest 25% or more of its total assets [*27] in securities of companies engaged principally in any one industry" when Fund "approved a change in the Fund's investment policies that increases to 25% from 10%, the percentage of the Fund's total assets that may be invested in debt securities issued by governmental entities of Argentina").

**C. Statute of limitations**

Defendants also contend that plaintiff's Section 13(a) claim is untimely because the Fund disclosed its investments in non-agency CMOs and its concentration percentage in mortgage-backed securities in SEC filings more than one year before Northstar filed this action. The limitations period begins once a plaintiff has either actual or inquiry notice of the facts giving rise to the claim. *See Betz v. Trainer Wortham & Co.*, 519 F.3d 863, 874 (9th Cir. 2008). Plaintiff argues that it was not on notice of its potential claims until late 2007 at the earliest. The Court finds that when plaintiff was on notice of its claims, and whether a reasonable investor would have discovered the facts underlying plaintiff's claims in 2005 or 2006 as defendants contend, raise factual issues that are inappropriate for resolution at this stage of the litigation. Defendants may renew the statute [*28] of limitations argument on a fuller factual record.

**IV. State law claims**

Plaintiff has also alleged three state law claims: breach of fiduciary duty, breach of contract, and breach of the covenant of good faith and fair dealing. The gravamen of each claim is that defendants breached their duties and contracts (the 1997 Proxy statement and subsequent prospectuses) by deviating from the Fund's stated investment objectives and fundamental policies. To the extent that defendants move to dismiss the state law claims on the same grounds discussed above - namely, that the Fund did not deviate from its stated investment objectives and fundamental policies - the Court rejects those arguments.

**A. Breach of fiduciary duty**

Defendants also contend that plaintiff's breach of fiduciary duty claim fails because pursuant to the "internal affairs" doctrine, that claim is governed by the law of the Trust's incorporation, Massachusetts, and Massachusetts law does not recognize such a claim by a shareholder against a corporation. Plaintiff asserts that the breach of fiduciary duty claim is governed by California law, and that under California law, plaintiff may state a claim

against each of the defendants [*29] for breach of fiduciary duty.

The Court has reviewed the cases cited by the parties, and finds that they are unhelpful to the questions presented. For example, none of defendants' "internal affairs" cases squarely addresses whether a breach of fiduciary duty claim such as the one alleged here - that investments were made in violation of stated investment objectives -- is subject to the narrowly applied doctrine. The internal affairs doctrine applies to matters "peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders" and include "steps taken in the course of the original incorporation, . . . the adoption of by-laws, the issuance of corporate shares, the holding of directors' and 'shareholders' meetings, . . . the declaration and payment of dividends and other distributions, charter amendments, mergers, consolidations, and reorganizations, the reclassification of shares and the purchase and redemption by the corporation of outstanding shares of its own stock." *Friese v. Superior Court*, 134 Cal. App. 4th 693, 706-07, 36 Cal. Rptr. 3d 558 (2005). In the absence of on point authority, [7] it is not clear that plaintiff's breach of fiduciary duty claim [*30] is subject to the "internal affairs" doctrine.

7 For example, in *Davis & Cox v. Summa Corporation*, 751 F.2d 1507, 1527 (9th Cir. 1985), a case involving the Howard Hughes estate, the Ninth Circuit held that corporate indemnification is subject to the internal affairs doctrine, and noted that it was "like the fiduciary obligations of corporate directors." In *Friese* the court held that an insider trading claim against a foreign corporation based on the California Corporations Code was not barred by the internal affairs doctrine. In rejecting the defendants' argument to the contrary, the court stated, "Rather [defendants] suggest section 25502.5 gives rise to no more than a derivative breach of fiduciary duty claim which they argue is, for that reason, subject to the internal affairs doctrine. For a number of reasons we do not accept defendants' characterization of section 25502.5 as merely a device for enforcing directors' and officers' fiduciary duties to shareholders." *See* 134 Cal. App. 4th at 710. Neither of these cases squarely holds that all breach of fiduciary duty claims are governed by the internal affairs doctrine.

However, even if defendants are correct that plaintiff's breach [*31] of fiduciary duty claim is governed by Massachusetts law, they concede that such a claim could be alleged against the "proper defendants." [8] Plaintiff, for its part, asserts without citation to any authority that Schwab Investments is a proper defendant under California law. Plaintiff also requests leave to amend the breach of fiduciary duty claim. Accordingly, the Court finds it prudent to GRANT plaintiff leave to amend the breach of fiduciary duty claim. Plaintiff is directed to carefully examine whether each of the defendants named in this claim can in fact be named in such a claim, and under which state's law such a claim is properly brought. After review of the amended complaint, defendants may renew their motion to dismiss this claim.

8 Defendants state that "[w]e do not argue that no person or entity owes a fiduciary duty to the fund's investors. But Northstar has not sued any of the proper defendants - it has instead sued the fund itself." Reply at 12.

**B. Breach of contract/breach of covenant of good faith and fair dealing**

Plaintiff alleges that "defendants violated the terms of the contract with the Fund's shareholders as set forth in the 1997 Proxy and subsequent prospectuses [*32] . . . by directing the purchases or allowing the Fund to direct the purchases, of the above referenced securities, that deviated from the composition of the Lehman Brothers U.S. Aggregate Bond Index." Complaint P 93. Defendants contend that, as a matter of law, the proxy statement and prospectuses cannot constitute contracts. However, the cases cited by defendants do not broadly hold that these documents can never constitute contracts. *See McKesson HBOC, Inc. v. N.Y. State Common Retirement Fund*, 339 F.3d 1087, 1092 (9th Cir. 2003) (prospectus seeking shareholder ratification of merger did not constitute contract between shareholders and corporation, separate merger agreement between corporations was contract at issue); *Cohen v. Stratosphere Corp.*, 115 F.3d 695, 701 (9th Cir. 1997) (prospectus stating "there can be no assurance that if the Minimum Offering is achieved that any additional Units will be sold," and reserving the "right to withdraw or cancel such offer and to reject any subscription in whole or in part" lacked mutual assent and intent to be bound that are required for the formation of a contract to sell securities).

Defendants also contend that the complaint does not specifically [*33] allege how the Proxy and the prospectuses are contracts, such as what language within each document shows that an investor can accept the terms and create a final and binding agreement. Defendants also note that while plaintiff purports to bring this claim against all defendants, plaintiff only specifically mentions Schwab Investments. Because plaintiff will be amending the complaint in various ways described *supra*, the Court finds it appropriate to GRANT plaintiff leave to amend the breach of contract claim to add more specific allegations regarding the language plaintiff relies

on to allege the formation of a contract, as well as each defendants' involvement.

Finally, defendants contend that plaintiff's breach of covenant of good faith and fair dealing claim fails because plaintiff has not alleged the type of egregious and willful conduct required to support this claim. The Court finds that the complaint is sufficient as a pleading matter, and accordingly DENIES defendants' motion to dismiss this claim.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part defendants' motion to dismiss. (Docket No. 33). Plaintiff shall file [*34] an amended complaint no later than **March 2, 2009**.

**IT IS SO ORDERED.**

Dated: February 19, 2009

/s/ Susan Illston

SUSAN ILLSTON

United States District Judge