# EXHIBIT F

ABBEY SPANIER RODD & ABRAMS, LLP
ATTORNEYS AT LAW

212 EAST 39TH STREET
NEW YORK, NEW YORK 10016
PHONE 212 889 3700
FAX 212 684 5191
www.abbeyspanier.com

JILL S. ABRAMS
jabrams@abbeyspanier.com

March 6, 2009

BY FACSIMILE

The Honorable Naomi Reice Buchwald
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 2270
New York, New York 10007-1312

**Re: In re IMAX Corp. Securities Litigation**
**Master File No. 06-CV-6128 (NRB)**

Dear Judge Buchwald:

We represent Lead Plaintiff Westchester Capital Management, Inc. ("Westchester") in the above-captioned action. We write in response to the March 4, 2009 letter submitted by Snow Capital Investment Partners, L.P. ("Snow Capital") in connection with its request for a pre-motion conference on its desired motion for reconsideration of the Court's January 17, 2007 Order appointing Westchester as the Lead Plaintiff herein. Once again, Snow Capital has failed to provide a basis for the relief it seeks.

Snow Capital argues that the Court should not consider *Northstar Financial Advisors, Inc. v. Schwab Investments*, et al., No. C-084119 SI, 2009 U.S. Dist. LEXIS 12763 (N.D. Cal. Feb. 19, 2009) because the *Northstar* plaintiff's claims arose under the Investment Company Act. But Snow Capital does not dispute, nor can it, that the *Northstar* court, citing *Huff* as precedent, approved the plaintiff investment advisor's assignment.

Snow Capital also contends that Westchester "cannot simply assign its rights at this point to another entity that never sought to be appointed as Lead Plaintiff…" But, as Westchester's February 26, 2009 letter states, Westchester is the assignee, not the assignor. The losses that have been assigned to Westchester are its advisees' losses. They are the very same losses reflected in Westchester's lead plaintiff submissions and described therein as the advisees' losses. The lead plaintiff has not changed and the assignment was simply made to conform with the Second Circuit's decision in *W.R. Huff*

*Asset Management Co. L.L.C. v. Deloitte & Touche LLP*, 549 F.3d 100, 2008 U.S. App. LEXIS 24490 (2d Cir. 2008), at *17-20 and the Supreme Court's decision in *Sprint Communications Co. L.P. v. APPCC Services, Inc.*, 554 U.S. __, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008).

Finally, Snow Capital contends that *Northstar*, a California case, is inapplicable here because Westchester's assignment violates New York's anti-champerty statute. That contention demonstrates a misunderstanding of the law of champerty. Historically, New York courts have narrowly interpreted the anti-champerty statute, limiting its application to "situations where the danger at which it was aimed" could arise. *Empresa Cubana Exportadora de Azucar y Sus Derivados v. Lamborn & Co., Inc.*, 652 F.2d 231, 236 (2d Cir. 1981). Here, however, Westchester Capital had a prior and ongoing contractual relationship with the Funds. It acted as their investment advisor with complete control over the funds invested. As noted in *Empresa*, "[w]here the relations between the assignor and the assignee are such as to eliminate the danger [of champerty], New York courts have refused to apply the statute." *Empresa*, 652 F.2d at 236. The notion that Westchester committed champetry, when it followed the law espoused by the Supreme Court in *Sprint* and the Second Circuit in *Huff*, is fanciful.

Westchester respectfully submits that Snow Capital's request for a pre-motion conference should be denied.

Respectfully submitted,

Jill S. Abrams

JSA:lk

cc: Lewis Liman
Byron Wilder
Jennifer Conn
David A. Rosenfeld