UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:
IMAX CORPORATION SECURITIES LITIGATION

06 Civ. 6128 (NRB)

------------------------------------------------------------x

**WESTCHESTER CAPITAL MANAGEMENT, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO SNOW CAPITAL INVESTMENT PARTNERS, L.P.'S MOTION FOR RECONSIDERATION OF THIS COURT'S JANUARY 17, 2007 ORDER APPOINTING WESTCHESTER CAPITAL MANAGEMENT, INC. AS LEAD PLAINTIFF**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

I. PRELIMINARY STATEMENT ........ 1

II. ARGUMENT ........ 5

A. The Second Circuit's Decision in *Huff* Does Not Mandate the Removal of Westchester Capital as Lead Plaintiff for Lack of Article III Standing ........ 5

B. Assignment is Permitted by Post-Huff Cases ........ 9

C. Courts and Commentators Predominantly Favor the Policy of FRCP 17(a) and 15(c) to Permit Assignment of Claims to Correct Defects in Real Party in Interest, Even Where the Named Plaintiff Would Not Have Satisfied Article III Standing at the Commencement of an Action ........ 14

D. The PSLRA Does Not Prohibit Westchester Capital From Continuing to Act as Lead Plaintiff After Assignment of the Funds' Claims ........ 17

E. The Assignment of Claims to Westchester Capital is Valid and Legal ........ 20

F. Snow Capital Should Not Be Appointed Lead Plaintiff ........ 22

III. CONCLUSION ........ 23

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11(2d Cir. 1997)........ passim

*Bellarno Int'l, Ltd. v. Irving Trust Co.*,
165 A.D.2d 809 (1st Dept. 1990)........ 21

*Berger v. Weinstein*,
No. 07-994, 2008 U.S. Dist. LEXIS 59948 (E.D. Pa. Aug. 6, 2008)........ 12

*Blair-Naughton L.L.C. v. Diner Concepts, Inc.*,
No. 06-1183-JTM, 2007 U.S. Dist. LEXIS 92882, at *7 (D. Kan. Dec. 17, 2007)........ 9

*Burch Slm Corp., No. 08 Civ. 1029 (WHP), 08 Civ. 2463 (WHP)*,
2008 U.S. Dist. LEXIS 55423 at *11-12 (S.D.N.Y. Jul. 23, 2008)........ 5

*CIBC Bank and Trust Co. v. Banco Cent. do. Brasil*,
886 F.Supp. 1105, 1111(S.D.N.Y. 1995)........ 21

*Crowder v. Gordons Transports, Inc.*,
387 F. 2d 413 (8th Cir. 1967)........ 15

*Elliot Associates,L.P. v. Banco De La Nacion*,
194 F.3d 363 (2d. Cir. 1999)........ 21

*Elliott Assocs. , L.P. v. Republic of Panama*,
975 F. Supp. 332,339( S.D.N.Y. 1997)........ 21

*Empresa Cubana Exportadora de Azucar y Sus Derivados v. Lamborn & Co., Inc.*,
652 F.2d 231 (2d Cir. 1981)........ 19, 20

*Enzo APA & Son, Inc. v. Geapag A.G.*,
134 F. 3d 1090 (Fed. Cir. 1998)........ 9

*Fahrenholz v. Sec. Mut. Ins. Co.*,
13 A.D.3d 1085 (4th Dept. 2004)........ 21

*Friends of the Earth, Inc. v Laidlaw Env'tl Servs (TOC), Inc.*,
528 U.S. 167 (2000)........ 12, 13, 14

*Holmes v. Pennsylvania New York Central Transportation Company*,
48 F.R.D. 449 (N.D. Ind. 1969)........ 15

*In re NYSE Specialists Securities Litigation*,
240 F.R.D. 128 (S.D.N.Y. 2007) ........................................................ 18, 19

*In re SLM Corp. Securities Litigation*,
No. 1:08-CV-01029-WHP (S.D.N.Y. Apr.1, 2009) ........................................ 3, 9, 12

*In re Telxon Corp. Sec. Litig.*,
67 F. Supp. 2d 803 (N.D. Ohio 1999)........................................................ 18

*In re Viviendi Universal, S.A. Securities Litigation*,
No. 02 Civ. 5571(RJH) (HBP) (S.D.N.Y. Mar. 31, 2009) ...... 3, 6, 9, 10, 11, 12, 13, 14

*Intimo, Inc. v. Briefly Stated, Inc.*,
948 F. Supp. 315 (S.D.N.Y. 1996) ........................................................ 16

*Kaplan v. Gelfond*,
240 F.R.D. 88, (S.D.N.Y. 2007) ........................................................ 9

*Merial Ltd. v. Intervet Inc.*,
430 F. Supp. 2d 1357, 1362 (N.D. Ga. 2006)........................................................ 9

*Northstar Fin. Advisors, Inc. v. Schwab Investments*,
No. C 08-4119 SI, 2009 U.S. Dist. LEXIS 12763
(N.D. Cal. Feb. 19, 2009)........................................................ 3, 11, 12, 14

*Perry v. Village of Arlington Heights*,
186 F.3d 826 (7th Cir. 1999) ........................................................ 13

*Pirelli Armstrong Tire Corp. Retiree Medical. Benefits Trust v. LaBranche & Co., Inc.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................ 18

*Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*,
534 F.2d 1012 ( 2d. Cir. 1975)........................................................ 21

*Rosenkrantz v. Berlin*,
65 Misc. 2d 320, 321 (N.Y. Supt. Ct. 1971)........................................................ 21

*Rx For Fleas, Inc. v. Zarro*,
93 Civ. 0233(SWK), 1994 U.S. Dist. LEXIS 11107 (S.D.N.Y. Aug. 9, 1994)............ 15

*Singer v. Nicor, Inc.*,
No. 02-Civ. 5168, 2002 U.S. Dist. LEXIS 19884 (N.D. Ill. Oct. 17, 2002)................ 18

*Sprint Communications Co. L.P. v. APPCC Services, Inc.*,
554 U.S. __128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008)........................................ passim

*Sygma Photo News, Inc. v. Globe Int'l, Inc.*,
616 F. Supp. 1153 (S.D.N.Y. 1985) .................... 20

*W.R. Huff Asset Management Co. L.L.C. v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008) .................... passim

*Wade Williams Distrib. Inc. v. ABC, Inc.*,
No. 00 Civ. 5002 (LMM), 2005 U.S. Dist. LEXIS 5730 (S.D.N.Y. Mar. 29, 2005) ... 16

*Weissman v. Weener*,
12 F.3d 84 (7th Cir. 1993) .................... 16

*Whelan v. Abell*,
953 F.2d 663 (D.C. Cir. 1992) .................... 16

**Rules**

Fed. R. Civ. P. 15 .................... 15

Fed. R. Civ. P. 17 .................... 7

Fed. R. Civ. P. 23 .................... 17

**Statutes**

NY Jud. Ct. Acts Law § 489 (2009) .................... 19, 20, 21

Private Securities Litigation Reform Act,
15 U.S.C. § 78u-4 .................... 1, 4

Report on the Private Securities Litigation Reform Act of 1995, S. Rep. No. 98, 104th Congress, 1st Sess. 6 (1995), *reprinted in* 1995 U.S.C.A.N.N. 679 .................... 19

**Other Authorities**

Fed. R. P. 15 Advisory Committee Note (1991) .................... 15

6A Charles Alan Wright et al.,
Federal Practice & Procedure, § 1501 (2009) .................... 15

6A Charles Alan Wright et al.,
Federal Practice and Procedure § 1542 (2d ed. 2008) .................... 16

Lead Plaintiff Westchester Capital Management, Inc. ("Westchester Capital") respectfully submits this memorandum of law in opposition to the motion by Snow Capital Investment Partners, L.P. ("Snow Capital") for reconsideration of the Court's January 17, 2007 ("Order") appointing Westchester Capital as Lead Plaintiff in this matter ("Motion").

## I. PRELIMINARY STATEMENT

On January 17, 2007, Westchester Capital was appointed Lead Plaintiff because it was properly deemed by this Court to satisfy the requirements of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "Order"). That appointment is as correct today as it was when the Order was issued.

Snow Capital's argument that Westchester Capital lacks Article III standing under *W.R. Huff Asset Mgmt. Co. L.L.C. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) ("*Huff*"), and that it is unable to correct any perceived deficiency with a post-filing assignment of claims is simply wrong. *Huff* and *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11(2d Cir. 1997)("*Advanced Magnetics*") are clear on this point. After searching for an assignments of rights as conceived by the U.S. Supreme Court in *Sprint Communications Co. L.P. v. APCC Services, Inc.* ("*Sprint*")554 U.S.__, 128 S.Ct. 2531(2008), the *Huff* court found that the plaintiff investment advisor lacked Article III standing. But it did not dismiss the action; it remanded the case for further proceedings. *Huff*, 549 F.3d at 111, as did *Advanced Magnetics*, upon finding a defect in the plaintiff's Article III standing. *Advanced Magnetics*, 106 F. 3d at 22. Thus, Snow Capital's argument that defects in Article III standing are incurable is plainly inconsistent with the Second Circuit's orders to remand rather than dismiss.

Any post-*Huff* defect in Westchester Capital's standing to sue for securities violations in connection with the IMAX shares it purchased for the funds on whose behalf it was acting (the "Funds") is curable and it is respectfully submitted that Westchester Capital and the Funds should be permitted, under Fed. R. Civ. P. 17(a) to correct any such defect by having it, as "the real party in interest," "ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). Rule 17(a) provides that "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." *Id.*[1] This opportunity to correct any defect in real party in interest status promptly after the defect has been identified has been liberally afforded, as the Rule itself provides. In this case, the real party in interest issues arose through no fault of Westchester Capital or the Funds, nor are Defendants prejudiced in any way by the application of Rule 17.

The relationship between Westchester Capital and the Funds is close. Westchester Capital is the sole investment adviser of the Funds and manages the day-to-day operations of the Funds. During the lead plaintiff motion proceedings, the Funds provided supporting documents that made it perfectly clear that the Funds intended unequivocally that Westchester Capital represent the Funds' interests in pursuing these claims. That intention has been confirmed by the assignment of the Funds' claims to Westchester Capital to conform to the intervening change in the law defining Article III standing for an investment advisor.

---

[1] In its February 26, 2009 letter to the Court, Westchester Capital said that, with the Court's permission, it sought to amend the complaint to reflect the assignment. Westchester is ready to immediately make such motion pursuant to Fed. R. Civ. P. 15 and 17 (a) (3), if allowed. Westchester Capital can easily satisfy the requirements thereof, as is discussed below.

The Funds' assignments of their claims to Westchester were the type prescribed by the Second Circuit in *Huff* and *Sprint*. The assignments were intended to correct any perceived defect in standing that resulted from the holding in *Huff* that, so long as the damages that resulted from the alleged securities law violations were suffered by the clients and not by the attorney-in-fact advisor, it was the clients that had standing. Under controlling law, such an assignment remedies the Article III standing issue by conferring real party in interest status on the plaintiff and the assignments obtained by Westchester Capital relate back to its lead plaintiff motion.[2]

While Snow Capital relies upon *In re SLM Corp. Securities Litigation*, No. 1:08-CV-01029-WHP, slip op. (S.D.N.Y. Apr.1, 2009) ("*SLM*"), annexed as Exhibit A to the Declaration of Jill S. Abrams ("Abrams Dec.") submitted herewith, to argue that Westchester Capital lacks constitutional standing, it fails to address a contrary (and respectfully, better-reasoned) decision in this District, *In re Viviendi Universal, S.A. Securities Litigation*, No. 02 Civ. 5571(RJH) (HBP), slip op. (S.D.N.Y. Mar. 31, 2009) ("*Vivendi*") (Abrams Dec., Ex. B), and a contrary decision in another federal court. *Northstar Fin. Advisors, Inc. v. Schwab Investments*, No. C 08-4119 SI, 2009 U.S. Dist. LEXIS 12763, (N.D. Cal. Feb. 19, 2009). In each of those cases, the courts ruled in keeping with the teachings of *Huff* and *Advanced Magnetics*, and permitted the plaintiff to correct an error by following long-established precedent pursuant to Rules 15 and 17 of the Federal Rules of Procedure.

---

[2] Lead Plaintiff Westchester Capital submits that the assignment of claims to it by the Funds is valid under federal and state law. In the event that the assignment of claims by the Funds to Westchester Capital is deemed insufficient for any reason, Westchester Capital and the Funds request that the Court provide them with an opportunity to address Article III by other means, including substitution or joinder of the Funds as parties plaintiff under Rule 15(c) or 17.

Nothing in the PSLRA provisions for the appointment of lead plaintiff in a securities class action, nor in the intent and purpose of the Private Securities Litigation Reform Act, 15 U.S.C. §78 u-4 ("PSLRA"), prohibits or militates against a post-complaint assignment of claims to the appointed lead plaintiff to cure a defect in standing. This is particularly true when it has been clear since Westchester Capital's motion for appointment that it was basing its qualification on the IMAX shares that it had purchased for the Funds under its complete investment discretion authority, and the unequivocal intent of the Funds that Westchester Capital pursue the claims for the Funds and other class members.[3]

This attack on Westchester Capital's Article III standing, from a disappointed lead plaintiff contender interested in replacing Westchester Capital, should be viewed with skepticism. The Court's appointment of Westchester Capital was, and continues to be correct under the law, both statutory and Constitutional, and in accordance with the clear intent of the PSLRA that an otherwise qualified institutional investor with losses that well exceed the other contenders will be the best plaintiff to conscientiously enforce the securities law claims of the class.

The instances cited by Snow Capital where a lead plaintiff was replaced involuntarily involved lead plaintiffs who had provided incorrect or untrue information to the court that, had it been revealed prior to appointment, would have compelled the court to appoint a different lead plaintiff. No such circumstances exist here.

---

[3] In its Memorandum and Order appointing Westchester Capital as Lead Plaintiff, this Court addressed decisional law in this District and elsewhere that found investment advisors could satisfy the constitutional standing requirements. *Kaplan v. Gelfond,* 240 F.R.D. 88, 94-95 (S.D.N.Y. 2007).

Given that Westchester Capital's assignments confer Article III standing which are deemed to relate back to the filing of its lead plaintiff motion, its lead plaintiff status is not imperiled and Snow Capital's motion for reconsideration should be denied.

## II. ARGUMENT

### A. The Second Circuit's Decision in *Huff* Does Not Mandate the Removal of Westchester Capital as Lead Plaintiff for Lack of Article III Standing

Snow Capital argues that *Huff* compels the conclusion that Westchester Capital cannot continue to serve as the Lead Plaintiff in this litigation. Snow Capital's conclusion is wrong. To the contrary, by following case law emphasizing the courts' discretion to permit remedies of perceived defects to Article III standing, and by outlining a specific course of action to affect such a remedy, the *Huff* opinion demonstrates that it did not intend its decision to bar continued litigation by every investment advisor that has commenced litigation in reliance on prior case law concerning investment advisor standing. Under *Huff*, an investment advisor's lack of standing is not incurable. And, because invoking Rule 17(a)(3) to cure Westchester Capital's standing would relate back, its Lead Plaintiff status should remain undisturbed.

Prior to *Huff*, a "majority of district courts" held that an investment advisor's discretionary authority over clients' investments and its possession of a power of attorney to act for the clients were sufficient to establish the advisor's standing to act as a lead plaintiff under the PSLRA even though they were not beneficial owners of the securities. *Burch Slm Corp., No. 08 Civ. 1029 (WHP), 08 Civ. 2463 (WHP)*, 2008 U.S. Dist. LEXIS 55423 at *11-12 (S.D.N.Y. Jul. 23, 2008). In *Huff*, the Second Circuit addressed the issue whether investment advisors lacked Article III standing because they did not suffer injury-in-fact, *Huff*, 549 F.3d at 106. The Second Circuit Court held that *Huff*'s

discretionary authority to make investment decisions for its clients, and its possession of a power of attorney to act for the clients with respect to those investments, could not satisfy the injury-in-fact requirement of Article III. *Id.* at 108-09.

*Huff* made it clear that Article III's standing requirements are distinct from statutory standing requirements.[4] However, it did not hold that the investment advisor's lack of Article III standing was immutably fatal and could not be cured. Had this been the Court's intent, the Second Circuit would have dismissed *Huff*'s claims outright rather than remanding the case to the district court. *Huff*, 549 F.3d at 111.

*Huff* prescribes the terms that are required to render an assignment sufficient to support Article III standing of the assignee plaintiff. It relied on the U.S. Supreme Court's decision in *Sprint* in which the Supreme Court found that an assignment of claims, even with a provision for remittance to the assignor of all proceeds of recovery on the claims, was sufficient to satisfy the injury-in-fact requirement of Article III. *Sprint*, 554 U.S. ___, 128 S. Ct. at 2533. The *Huff* court held:

> *Sprint* therefore implicitly supports the holding of *Advanced Magnetics* that a mere power-of-attorney--*i.e.*, an instrument that authorizes the grantee to act as an agent or an attorney-in-fact for the grantor, *see* Black's Law Dictionary 1209 (8th ed. 2004)--does not confer standing to sue in the holder's own right because a power-of-attorney does not confer an ownership interest in the claim. *By contrast, an assignment of claims confers legal title or ownership of those claims and thus fulfills the constitutional requirement of an "injury-in-fact."*

(citations omitted) (emphasis supplied). *Huff*, at 108-9.

In *Advanced Magnetics*, the corporation ("AMI") and certain of its shareholders were to sell stock in a secondary public offering. AMI brought a securities suit, partly in its own right and partly as assignee of the selling shareholders, against the defendant

---

[4] The *Vivendi* court observed that *Huff* "announced a new standard for constitutional standing to bring suit under the U.S. securities laws." *slip op.* at 3.

traders whose pre-offering manipulative short sales were alleged to have artificially depressed AMI's stock price. In asserting its right to pursue the selling shareholders' claims, AMI relied mainly on agreements by which, AMI argued, the selling shareholders had assigned it their claims. The agreements gave AMI the power to prosecute any "suits, actions or proceedings" on the selling shareholders' behalf. *Id.* at 14. The Second Circuit heard AMI's appeal from the district court's ruling that AMI "lacked standing to sue as assignee because the alleged assignment agreements were not sufficient for that purpose." *Advanced Magnetics*, 106 F.3d at 13. On appeal, AMI also argued that even if the assignments were ineffective to establish its standing, the district court erred in denying it leave to amend the complaint to bring in the purported assignors as plaintiffs in their own names. *Id.* at 13.

The Second Circuit agreed with AMI, finding that while the assignments were insufficient to give AMI standing to pursue the shareholders' claims, the district court should have granted AMI's request to amend the complaint to allow the shareholders to pursue their own claims. The Second Circuit vacated so much of the judgment as dismissed the claims and, like the *Huff* court, remanded to the district court. *Id.* at 13.

In AMI, the Second Circuit also addressed the relationship between Article III standing, which had been the question certified for interlocutory appeal by the district court, and Fed. R. Civ. P. 17:

> Rule 17 begins by providing that "every action shall be prosecuted in name of the real party in interest." Fed. R. Civ. P. 17(a). This provision, which we view as applying not only to entire actions but also to separate claims within an action, .... is applicable in the present case because if AMI has no standing to pursue the claims of the selling shareholders, it is precisely because the selling shareholders are, with respect to those claims, the real parties in interest. . . .Although the district court retains some discretion to dismiss an action where there was no semblance of any

> reasonable basis for the naming of an incorrect party, ....there plainly should be no dismissal where "substitution of the real party in interest is necessary to avoid injustice . . . .

*Id.* at 19-20 (internal citations omitted).

* * *

> Though defendants' challenge to the original complaint was styled a motion to dismiss for lack of standing, their unspoken premise was that AMI lacked standing because the selling shareholders remained, with respect to their own claims, the real parties in interest. . . . The form of the respective contentions should not have been allowed to obscure their substance.

*Id.* at 20.

*Huff* did not address the specific issue of whether plaintiff should be permitted to amend the complaint to substitute clients pursuant to Fed. R. Civ. P. 17(a) or otherwise conform to the requirements of Article III established in that decision. *Huff*, 549 F.3d at 104 n.3 (noting "the only issue on appeal is whether Huff lacked constitutional standing to sue."). However, the *Huff* decision itself and the Second Circuit's prior holding in *Advanced Magnetics* compel the conclusion that *Huff* does not stand for an absolute bar to the continued litigation of claims by plaintiff investment advisors like Westchester Capital. As in *Advanced Magnetics*, a plaintiff that may not have technically satisfied Article III standing, as it has now been defined by the Court in *Huff*, even at the commencement of the action, should be permitted to correct the defect in standing unless "there was no semblance of any reasonable basis for the naming of an incorrect party." *Advanced Magnetics*, 106 F.3d at 20. As in *Advanced Magnetics*, the *Huff* court remanded to the district court for proceedings consistent with its opinion.

In keeping with the *Huff* and *Sprint* decisions, and in order to remove any doubt as to Westchester Capital's Article III standing, in January 2009, Westchester Capital

obtained from the Funds assignments of all of their claims for damages and other relief in connection with their IMAX purchases. The assignments constituted the Funds' ratification of Westchester Capital's right to prosecute the securities claims against the IMAX defendants and to continue to serve as Lead Plaintiff, as contemplated by Rule 17(a)(3).

**B. Assignment is Permitted by Post-*Huff* Cases**

Snow Capital argues that the lack of a pre-commencement assignment is fatal to Westchester Capital's lead plaintiff status. [5] While three district courts have ruled on the Article III standing of an investment advisor since *Huff*, Snow Capital mentions only *SLM*. It is respectfully submitted that the *SLM* decision against the investment advisor appears to be largely as a result of its concern that the "Court of Appeals could hold otherwise". *SLM, slip op.* at 7. However, as the *Vivendi* court pointed out, the Second Circuit in "*Advanced Magnetics* stands for the proposition that a standing defect at the commencement of suit does not require dismissal of the action with prejudice." *Vivendi, slip op.* at 21.

In *SLM*, on which Snow Capital heavily relies, the court erred in interpreting *Huff*'s Article III requirements as absolute and fatal to any attempt by Westchester Capital to cure the lack of standing. But, as previously addressed, assignments for the

[5] The cases cited by Snow Capital for support, at pages 9-10, of its brief are inapposite. *Merial Ltd. v. Intervet Inc.*, 430 F. Supp. 2d 1357, 1362 (N.D. Ga. 2006) is cited by Snow for the proposition that *nunc pro tunc* assignments are insufficient to confer standing. However, the opinion makes clear that it does not relate to Article III standing, but rather statutory standing requirements in patent infringement actions. *Id.* at 1361-62. *Merial* relies on another statutory standing case, *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F. 3d 1090,1093 (Fed. Cir. 1998) (cited by Snow Capital for the same proposition as *Merial*) which draws a line between the statutory standing of an assignee of full patent rights (and thereby the patentee with statutory standing) and a mere licensee who has been assigned incomplete rights. In *Blair-Naughton L.L.C. v. Diner Concepts, Inc., No. 06-1183-JTM,*2007 U.S. Dist. LEXIS 92882, at *7 (D. Kan. Dec. 17, 2007), the court criticized the assignment in question as an "eleventh-hour assignment" because it was effectuated at the last moment to avoid liability on a breach of contract claims. No such facts exist here.

purpose and with the effect of conferring Article III standing on the assignee are discussed with approval by the Second Court in *Huff* and in *Advanced Magnetics,* 106 F.3d at 11, 20-21(*"Advanced Magnetics"*) and by the U.S. Supreme Court in *Sprint*, 554 U.S. at __, 128 S. Ct. at 2533 (noting that "[b]ecause history and precedent make clear that such an assignee has long been permitted to bring suit, we conclude that the assignee does have standing.").

*Vivendi*, which is presently pending in the Southern District of New York, involves a certified class of Vivendi securities purchasers, as well as numerous individual actions brought by investment advisors on behalf of shareholders who invested in managed funds that pooled Vivendi shares with other assets. The fund managers ("Individual Plaintiffs") brought suit on behalf of the funds via individual actions ("Individual Actions"). Because the Individual Plaintiffs purchased shares on behalf of their clients and it was the clients that suffered the losses, the defendants focused on the Article III requirement of injury-in-fact, arguing that the Individual Plaintiffs had no proprietary interest in the claims. The Individual Plaintiffs responded, *inter alia*, that the funds they represented had or would assign their claims to the Individual Plaintiffs. In *Vivendi*, Judge Holwell looked to "...whether the plaintiff has suffered the claimed injury or been assigned the claim..." *Vivendi, slip op.* at 8.

Judge Holwell carefully analyzed the basis for *Advanced Magnetics*'s determination that the "plaintiff's request 'to make the selling shareholders the named plaintiffs on their own claims should have been considered in light of Fed. R. Civ. P. 17 and the amendment should have been found to relate back pursuant to 17(a)'". *Vivendi, slip op.* at 20. Relying on the Advisory Committee Notes to Rule 15 commenting on

relation back and on *Advanced Magnetics*, Judge Holwell concluded that when the real parties in interest were "absent due to mere error" and the defendants were on notice of the claims, it would be unfair to allow the defendants to take advantage of that error. *Id.* at 21. Here, it is Snow Capital who is attempting to gain that advantage.

The *Vivendi* court rejected the defendants' arguments that, after *Huff*, a plaintiff must have had standing at the time an action was brought and consequently only assignments made prior to the commencement of the suit can possibly establish an assignee plaintiff's standing to sue. Judge Holwell opined that:

> *Advanced Magnetics* stands for the proposition that a standing defect at the commencement of the suit does not require dismissal of the action with prejudice. Should the real parties in interest, i.e., the persons or entities that had standing to bring plaintiff's claims at the commencement of the suit, *wish to ratify plaintiff's actions*, join the lawsuit, or substitute for the current plaintiffs, the court should allow those parties a reasonable time to do so.

*Vivendi*, 02 Civ. 5571, slip op. at 21 (emphasis supplied). Those *Vivendi* plaintiffs who already assigned their claims were deemed to have ratified the action. The court ruled that they should amend their complaints to reflect those assignments which would relate back to their original filing. *Id.* at 24. Since the Funds here have ratified Westchester Capital's actions, Westchester Capital seeks the Court's permission to amend the Complaint to reflect the ratified assignments which would relate back to the filing of its lead plaintiff motion.[6]

In *Northstar*, 2009 U.S. Dist. LEXIS at 12763 ("*Northstar*") (interpreting *Huff* even though the case is in the Northern District of California), a putative class action under the Investment Act of 1940, the Northern District of California court determined,

---

[6] The assignments provided to Westchester Capital by the Funds were provided to Defendants and Snow Capital and are appended to the Rosenfeld Declaration submitted by Snow Capital as Exs. C and D.

under the reasoning of *Huff*, that a plaintiff investment advisor did not have Article III standing to bring suit on behalf of its clients without an assignment. Nevertheless, the district court held that the advisor plaintiff (who had obtained such an assignment after filing suit and subsequent to *Huff* ) "could amend the complaint to cure these deficiencies." *Northstar*, 2009 U.S. Dist. LEXIS 12763, at *6. Like *Vivendi*, and consistent with *Advanced Magnetics* and *Huff*, the *Northstar* court dismissed plaintiff's claims without prejudice and granted leave to amend to allege an assignment of claims by at least one of plaintiff's clients. *Id.* at *7.

In stark contrast to the well-reasoned decisions in *Vivendi* and *Northstar*, in *SLM*, the court refused to permit assignment of the Funds' claims to Plaintiff, and revoked Westchester Capital's appointment as lead plaintiff for the putative class.[7] This removal of Westchester Capital was a direct consequence of the District Court's erroneous holding that Plaintiff's lack of Article III standing could never be cured. April 1 Order at 6-7.

In *SLM*, the plaintiff sought approval of the assignment of claims received by its advisee funds. While acknowledging that *Northstar*, 2009 U.S. Dist. LEXIS at 12763, permitted an investment advisor to cure its lack of standing by obtaining an assignment after the case commenced, the *SLM* court cited *Friends of the Earth, Inc. v Laidlaw Env'tl Servs (TOC), Inc.*, 528 U.S. 167 (2000) ("*Friends*") and *Berger v. Weinstein*, No. 07-994, 2008 U.S. Dist. LEXIS 59948 (E.D. Pa. Aug. 6, 2008) for the proposition that a post-commencement assignment is ineffective, but without analyzing those cases. *SLM*,

---

[7] Westchester Capital's petition for leave to appeal from that decision, filed with the Second Circuit on April 14, 2009, is appended as Ex. C to the Abrams Declaration.

*slip op.* at 4. On the other hand, the *Vivendi* court gave them careful consideration and its analysis is instructive here.

The *Vivendi* court first noted that both in *Advanced Magnetics*, and in a Seventh Circuit case cited by the *Vivendi* defendants, *Perry v. Village of Arlington Heights*, 186 F.3d 826 (7th Cir. 1999), the appellate courts refused to dismiss with prejudice so that the plaintiffs would have an opportunity to satisfy the injury-in-fact requirement. *Vivendi*, *slip op.*, at 22. *Vivendi* thus rejected what it described as the defendant's argument that it "should ignore this precedent" and follow *Berger* (which granted summary judgment for lack of standing after the plaintiffs's receipt of a post-filing assignment).

The *Vivendi* court noted that while *Berger*,[8] in a footnote, relied on *Friends* for the proposition that "standing 'must exist from the commencement of litigation'", the standing inquiry in *Friends* was made in a legally distinct situation involving government action.[9] *Id.* at 22-23 (citations omitted). In *Friends*, the Supreme Court, examining mootness in a citizen suit under the Clean Water Act, described it as "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " *Id.* at 23. "Because the mootness issue was whether there was "any continuing injury or threat of continuing injury to anyone, the Supreme Court was apparently commenting on the necessity that *some injury* exist at the commencement of the litigation," but questions about the existence of an injury in a public policy case like

[8] The district court in *Berger* also appears to treat the standing issue as a Rule 17(a) issue, analyzing plaintiffs' attempt to cure the defect in standing by assignments, which the court rejects as "eleventh hour" assignments made shortly before trial and which, had they been permitted, would have been prejudicial to the court and defendants. *Berger*, 2008 U.S. Dist. LEXIS at *27 n. 8.

[9] *Wright & Miller* cautions that Article III standing applied to dismiss claims is best suited to appropriate situations involving litigation asserting the illegality of governmental action rather than private wrongdoing. 13A Charles Alan Wright et al, Federal Practice and Procedure §3531 (3d ed. 2008).

*Friends* stand in contrast to a private damages action "where the existence of an injury is obvious from the claims." (emphasis in the original). *Id.*

In contrast with the "potentially unjust and inefficient result" in *Berger*, *Vivendi* cited the *Northstar* court's decision to permit the plaintiff to amend the complaint to reflect that it had cured the injury-in-fact deficiency with a post-filing assignment. *Id.* at 23-24.

**C. Courts and Commentators Favor the Policy of FRCP 17(a) and 15(c) to Permit Assignment of Claims to Correct Defects in Real Party in Interest, Even Where the Named Plaintiff Would Not Have Satisfied Article III Standing at the Commencement of an Action**

Westchester Capital respectfully submits that it should be permitted to amend its Complaint to reflect its assignments, consistent with the rulings addressed herein, and pursuant to Federal Rules 15(c) and/or 17(a)(3). Rule17(a)(3) provides that courts should allow a "reasonable time" following an objection for failure to prosecute in the name of the real party in interest to "ratify, join or be substituted into the action" and that the action "proceeds as if it had been originally commenced by the real party in interest." Thus, the claim "relates back" so long as the Rule's requirements are established. *Advanced Magnetics*, 106 F.3d at 20-21. The fact that relation back is mandated by Rule 17(a)(3) is strong evidence that a pre-commencement assignment is not required. Rule 15(c), which also applies, provides for relation back when its requirements are met, as they are here.

*Advanced Magnetics* evaluated the assignment before it under Federal Rules 15(c) and 17(a)(3) and observed that the assignment could have been deemed to relate back under either rule. It said:

> The goal of relation-back principles is to "prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." *Fed. R. P. 15 Advisory Committee Note* (1991).
>
> ....
>
> The history of the Rules make it clear not only that *Rule 15* was meant to be generally applicable to a proposed change of plaintiffs, but in this regard *Rule 17(a)* is implicated as well (citations omitted).

*See, Rx For Fleas, Inc. v. Zarro*, 93 Civ. 0233(SWK), 1994 U.S. Dist. LEXIS 11107 (S.D.N.Y. Aug. 9, 1994) (where this Court ruled that an addition of parties is subject to the relation back analysis of Rule 15(c) and permitted the movant to add four parties plaintiff to cure an alleged standing problem); *See also, 6A Charles Alan Wright et al., Federal Practice & Procedure*, § 1501 (2009) (Amendment substituting a new plaintiff has been held to relate back if the added plaintiff is the real party in interest.) As Wright & Miller points out, the Advisory Committee Note to the 1966 amendments to *Rule 15(c)* indicates liberal attitudes toward substitution of the real party in interest prescribed by both *Rule 17(a)* and *Rule 15(c)*). In *Crowder v. Gordons Transports, Inc.*, 387 F. 2d 413 (8th Cir. 1967) (cited by *Advanced Magnetics*, 106 F.3d at 20) and *Holmes v. Pennsylvania New York Central Transportation Company*, 48 F.R.D. (N.D. Ind. 1969) for example, the courts applied *Rules 15(c)* and *17(a)* in tandem to prevent both dismissal of the action and to allow an amendment substituting the real party in interest to relate back.[10] Those decisions refer to the Advisory Committee Notes to the 1966 Amendments to Rules 15(c) and 17(a) which make clear the intent of the Federal Rules to permit a change in plaintiff to relate back so long as the defendant is not prejudiced. *Crowder*, 387 F.2d at 417-418; *Holmes*, 48 F.R.D. at 451-452. *Crowder*, 387 F.2d at 418, looked,

[10] According to Wright & Miller, at § 1501, the same result could have been reached on the basis of *Rule 17(a)* without resort to *Rule 15(c)*.

*inter alia*, to the Advisory Comments on Rule 17(a) which say that "Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed."

Post-filing assignments are not strangers to the Southern District. *Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315, 317 (S.D.N.Y. 1996) (holding that "a party can cure a standing defect with a second assignment which explicitly transfers causes of action for infringements prior to the initial assignment"); *Wade Williams Distrib. Inc. v. ABC, Inc.*, No. 00 Civ. 5002 (LMM), 2005 U.S. Dist. LEXIS 5730 (S.D.N.Y. Mar. 29, 2005) (holding, "[a]n assignment of the right to sue permits a plaintiff to maintain a lawsuit filed before that assignment so long as 'the assignment [of the right to sue] occurs before trial', there is no dispute between assignor and assignee as to who may bring the claim, 'and the defendant suffers no prejudice from [the subsequent assignent's] recognition.'").

According to *Wright & Miller*, standing is similar to the real party in interest rule inasmuch as both terms are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits. 6A Charles Alan Wright *et al.*, Federal Practice and Procedure § 1542 (2d ed. 2008) ("Wright & Miller"); *see also Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993) (both standing and real party in interest operate to ensure that the plaintiff has a sufficient interest in the action); *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992) ("Standing and real-party-in-interest questions do overlap to the extent that both ask whether the plaintiff has a personal interest in the controversy").

In sum, the courts and the Federal Rules provide a simple and long-used framework into which Westchester's assignments fit, and which confer Article III standing.

**D. The PSLRA Does Not Prohibit Westchester Capital From Continuing to Act as Lead Plaintiff After Assignment of the Funds' Claims**

For the reasons set forth, *supra*, Westchester Capital respectfully submits that it must be permitted to cure any defect in standing related to its real party in interest status in this action, which defect resulted from no fault of Westchester Capital or its clients (the Funds) and which will cause no prejudice to Defendants. This Rule 17(a)(3) cure should be permitted regardless of the fact that the underlying action is a class action subject to the PSLRA. At the time it submitted its motion for appointment, Westchester Capital was, under the law and the express public policy of the PSLRA, presumptively the most adequate lead plaintiff candidate.[11] After extended review of the facts and law by this Court, using the discretion accorded it within the PSLRA, it appointed Westchester Capital as the Lead Plaintiff. That appointment was correct when made. As required by the PSLRA, the decision included findings that Westchester Capital was the party with the greatest losses in IMAX and that Westchester Capital satisfied a preliminary showing of typicality and adequacy under Fed. R. Civ. P. 23. *Kaplan v. Gelfond*, 240 F.R.D. 88, 93-95 (S.D.N.Y. 2007).

The assignment of claims to Westchester Capital by the Funds is proper under the PSLRA and does not trigger any requirement that the lead plaintiff proceedings be reopened or otherwise revisited. The losses on which Westchester Capital premised its motion for lead plaintiff have not changed. Indeed, the Consolidated Amended Class

---

[11] For the reasons previously discussed, any defect can alternately be corrected via Rule 15(c).

Action Complaint ("CAC") alleges that Westchester Capital Management, Inc. has brought the claims as the investment advisor for each of the specific funds and suffered damages as a result of the federal securities law violations alleged. (CAC ¶ 5). From inception, Westchester Capital has always been clear that it is the manager and investment adviser to the Funds and that the Funds were the beneficial owners of the shares on which the losses used to support Westchester Capital's lead plaintiff motion were based. The Court appointed Westchester Capital based on accurate facts and upon consideration of the applicable law which, although not unanimous, had supported the appointment of investment advisors as lead plaintiff in PSLRA cases in this district and many others, where the advisor had full investment discretion and attorney-in-fact authorization by the clients for whom the securities were purchased. The intervening decision by the Second Circuit in *Huff* does not require a change to Westchester Capital's lead plaintiff status. The class has benefited from the diligent pursuit of its claims by Westchester Capital and will be prejudiced by a change in lead plaintiff at this time.

Snow Capital points to cases which, it argues, support the assertion that Westchester Capital cannot, post-lead plaintiff motion, cure the alleged defect in its standing to serve as Lead Plaintiff. However, these cases are inapposite. For example, in *In re NYSE Specialists Securities Litigation*, 240 F.R.D. 128 (S.D.N.Y. 2007), *Pirelli Armstrong Tire Corp. Retiree Medical. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395 (S.D.N.Y. 2004), *Singer v. Nicor, Inc.*, No. 02-Civ. 5168, 02-Civ. 5239, 02-Civ. 5319, 02-Civ. 5558, 02-Civ. 6037, 2002 U.S. Dist. LEXIS 19884 (N.D. Ill. Oct. 17, 2002) and *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803 (N.D. Ohio 1999), plaintiffs belatedly attempted to supplement their financial losses. The *Pirelli* court noted that the

plaintiff had "not offered a satisfactory explanation as to why it failed to set out its purported portion of [its] losses in its original motion or, indeed why its belated attempt to increase the size of its losses is anything other than an attempt to manipulate the size of [its] losses based on information available to it at the time of its original lead plaintiff motion." *Pirelli*, 229 F.R.D. at 410 (internal citations and quotations omitted). Additionally, in *NYSE Specialists*, the court explained that "[c]ourts have refused to consider additional *financial losses* asserted by such movants for the first time outside of this sixty-day window." *NYSE Specialists*, 240 F.R.D. at 138 (emphasis added). Here, Westchester Capital is not supplementing its financial losses, but is attempting to resolve a potential real party in interest defect arising from a change in law well after it was appointed Lead Plaintiff.

It would be contrary to the policy underlying the PSLRA to remove Westchester Capital as Lead Plaintiff. Westchester Capital, an institutional investor, is the type of plaintiff Congress envisioned to lead securities class action lawsuits following the passage of the PSLRA. One of the primary goals behind the PSLRA was to cure perceived abuses in securities class action litigation. Congress chose to address these abuses by "increas[ing] the role of institutional investors in securities class actions" and declared that these institutional investors, as lead plaintiffs, should "actively represent the class" and "drive the litigation." Report on the Private Securities Litigation Reform Act of 1995, S. Rep. No. 98, 104th Congress, 1st Sess. 6 (1995), *reprinted in* 1995 U.S.C.A.N.N. 679, 685, 689.

Westchester Capital continues to be the best party to pursue the claims of the class members in this action. For the reasons set forth, Westchester Capital respectfully

submits that the Court may and should exercise its discretion to decline any change in lead plaintiff status in this case.

**E. The Assignment of Claims to Westchester Capital is Valid and Legal**

Courts have historically interpreted N.Y. Jud. Ct. Acts Law § 489 (2009), prohibiting champerty, narrowly. *Empresa Cubana Exportadora de Azucar y Sus Derivados v. Lamborn & Co., Inc.*, 652 F.2d 231, 235 (2d Cir. 1981). Champerty has been defined by the Second Circuit as "a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." *Sygma Photo News, Inc. v. Globe Int'l, Inc.*, 616 F. Supp. 1153, 1157 (S.D.N.Y. 1985). Codification of this ancient common law offense in N.Y. Jud. Ct. Acts Law § 489 (2009) reflects legislative interest in preventing the "strife, discord, and harassment which could result from permitting attorneys and corporations to purchase claims for the bringing of actions thereon." *Id.* (internal citation omitted). While Judiciary Law § 489 does not expressly limit the prohibition on assignment to strangers, such "is plainly the evil that the statute sought to prohibit." *Id.*

Prior dealings between the assignor and assignee and the interests of the assignee in the dealings underlying the action are factors in determining whether an assignment has been champertous. *Sygma,* 616 F. Supp. at 1157; *Empresa*, 652 F. 2d at 236. Here, Westchester Capital had a twenty-year relationship with the Funds, and acted as their investment advisor with complete control over the funds invested. As noted in *Empresa*, "[w]here the relations between the assignor and the assignee are such as to eliminate the danger [of champerty], New York courts have refused to apply the statute." *Empresa*, 652 F. 2d at 236. Westchester Capital, as the Funds' advisor, has a legitimate interest in this

litigation and its involvement in this litigation is not for the "mercenary reasons" as discussed in *Sygma*, therefore, the assignments at issue are not champertous.[12]

Westchester Capital took assignment of the action after commencement of the litigation which precludes "the mischief the statute seeks to avoid." *Sygma*, 616 F. Supp. at 1157. See also *Fahrenholz v. Sec. Mut. Ins. Co.*, 13 A.D.3d 1085, 1086 (4th Dept. 2004); *Bellarno Int'l, Ltd. v. Irving Trust Co.*, 165 A.D.2d 809 (1st Dept. 1990); *Rosenkrantz v. Berlin*, 65 Misc. 2d 320, 321 (N.Y. Supt. Ct. 1971). Additionally, the plain language of the statute prohibits assignment or purchase of an action "for the purpose of *bringing* an action or proceeding thereon." (emphasis added). N.Y. Jud. Ct. Acts Law § 489 (2009). Since the action in question had already been brought at the time of the assignment, its purpose could not have been the "bringing" of the action. And, as held in *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012 (2d. Cir. 1975) (a case which-remarkably- is the lead champerty case cited by Snow Capital for the proposition that a "corporation cannot take an assignment of a claim for the purpose of suing thereon", Snow Capital Mem. at 10), the assignment "does no violence" to the legislative concern that prompted enactment of §489 since the corporation, like Westchester Capital, "had its own significant interest in the litigation from the outset." *Id.* at 1016.[13] As a result of the foregoing, assignment of the action to Westchester

---

[12] Indeed, *Huff* sanctions such assignment. It cited *Sprint*, 554 U.S. __, 128 S.Ct. at 2533 for the proposition that an assignee has "standing to pursue [the] claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor." *Huff*, 549 F.3d at 105.

[13] Likewise, other cases cited by Snow Capital hold that the facts do not warrant a finding of champerty. Those are *Elliott Assocs. , L.P. v. Republic of Panama*, 975 F. Supp. 332,339( S.D.N.Y. 1997); *CIBC Bank and Trust Co. v. Banco Cent. do. Brasil*, 886 F.Supp. 1105, 1111(S.D.N.Y. 1995). *Elliot Associates,L.P. v. Banco De La Nacion*, 194 F.3d 363, 372 (2d. Cir. 1999) says that New York courts have "consistently interpreted the statute as proscribing something narrower than merely 'maintaining a suit in return for a financial interest in the outcome.'"(citations omitted)

Capital is not champertous and violates neither the spirit nor the letter of Judiciary Law § 489.

### F. Snow Capital Should Not Be Appointed Lead Plaintiff

If the Court decides that Westchester Capital should be replaced as Lead Plaintiff (which Westchester Capital obviously thinks would be the wrong result), we respectfully submit that Steelworker's Pension Trust ("Steelworkers"), a plaintiff and proposed class representative, is better suited than Snow Capital to become lead plaintiff. Given that the class would be deprived of a lead plaintiff and lead counsel who have litigated this case from its inception, prepared and successfully defended a detailed amended complaint which involved the development of the case's legal theories, gathered information from numerous confidential sources, worked toward certification of the class including document production and depositions, worked with the consultants and expert it retained and engaged in party and third party discovery, it would make little sense to introduce a total stranger to the litigation. Snow Capital is such a stranger. Steelworker's counsel, albeit not as intimately involved as Westchester Capital, assisted in the preparation of the Complaint, has been involved in the class certification proceedings, and Steelworkers and its investment advisor have both produced documents and been deposed. Steelworkers has a solid working knowledge of this case and it would be better prepared to enter the litigation at this time.

And, while Snow Capital states that "no opposition was ever filed questioning the size of Snow Capital's financial interest or its adequacy or typicality", that is likely due to the fact that Westchester Capital's PSLRA losses dwarfed those of the other proposed

lead plaintiffs.[14] The losses claimed by Snow Capital and Steelworkers of approximately $481,000 and $428,000, respectively, are not sufficiently different to compel the selection of Snow Capital under these facts.

## III. CONCLUSION

For all of the reasons set forth above, Lead Plaintiff Westchester Capital respectfully submits that Snow Capital's motion for reconsideration should be denied, Westchester's ratified assignments should be approved under Rule 15(c) and/or 17(a)(3) as relating back, and Westchester should be permitted to amend its Complaint to reflect those assignments.

DATED: April 24, 2009

Respectfully submitted,

ABBEY SPANIER RODD
& ABRAMS, LLP

By:______________________
Jill S. Abrams

Arthur N. Abbey (AA-8074)
Jill S. Abrams (JA-1578)
Richard M. Margolies (RM-9311)
212 East 39th Street
New York, New York 10016
Telephone: (212) 889-3700
Facsimile: (212) 654-5191

*Plaintiffs' Lead Counsel*

[14] At the time the final round of briefing on the lead plaintiff motion was submitted, all of the competing movants, except Snow Capital, withdrew their motions or did not submit opposition briefs or, in the case of the Steelworker's, withdrew in support of Westchester Capital. Reply Memorandum in Support of Westchester Capital's Motion to Be Appointed Lead Plaintiff and in Response to Snow Capital Investment Partners, L.P.'s Opposition, No-06-CV-06128 (NRB), Docket #37.