# EXHIBIT C

No. ________

# In The United States Court of Appeals
## FOR THE SECOND CIRCUIT

In re: SLM Corporation Securities Litigation

ON PETITION TO APPEAL FROM AN ORDER ENTERED ON APRIL 1, 2009
BY THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
08-CIV-1029 (WHP) (S.D.N.Y.)

**PETITION OF WESTCHESTER CAPITAL MANAGEMENT, INC.
FOR LEAVE TO APPEAL FROM THE DISTRICT COURT'S
APRIL 1, 2009 ORDER**

ABBEY SPANIER RODD & ABRAMS, LLP
Arthur N. Abbey
Stephen T. Rodd
Jill S. Abrams
Natalie S. Marcus
*Attorneys for Plaintiff Westchester Capital Management, Inc.*
212 East 39th Street
New York, New York 10016
(212) 889-3700

April 14, 2009

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

QUESTION PRESENTED ..... 3

II. STATEMENT OF THE CASE ..... 3

III. ARGUMENT ..... 10

A. LEAVE TO APPEAL SHOULD BE GRANTED UNDER THE COLLATERAL ORDER DOCTRINE ..... 10

1. The April 1 Order Conclusively Determined the Issue in Question ..... 11

2. The Post-filing Assignment of Claims is an Issue Separate From the Merits ..... 11

3. The April 1 Order is Unreviewable on Appeal from a Final Judgment ..... 13

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

## Cases

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997) .......... 5, 8, 12

*Burch v. SLM Corp.*,
Nos. 08 Civ. 1029 (WHP), 08 Civ. 2463 (WHP), 2008 U.S. Dist. LEXIS 55423 (S.D.N.Y. July 23, 2008) .......... 4

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949) .......... 1, 10

*Janneh v. GAF Corp.*,
887 F.2d 432 (2d Cir. 1989) .......... 11, 12, 14

*Lawson v. Abrams*,
863 F.2d 260 (2d Cir. 1988) .......... 12

*Midland Asphalt Corp. v. United States*,
489 U.S. 794, 109 S. Ct. 1491 (1989) .......... 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) .......... 11

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
No. C 08-4119 SI, 2009 U.S. Dist. LEXIS 12763 (N.D. Ca. Feb. 19, 2009) .......... 7, 8, 9, 12

*SEC v. Thestreet.com*,
273 F.3d 222 (2d Cir. 2001) .......... 10

*Sprint Communications Co., L.P., v. APCC Services, Inc.*,
554 U.S. ____, 128 S. Ct. 2531 (2008) .......... 2, 5, 6

*United States v. MacDonald*,
435 U.S. 850, 98 S. Ct. 1547 (1978) .......... 13

*W.R. Huff Asset Management Co. L.L.C. v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008) .......................................................... passim

*Wade Williams Distrib., Inc. v. ABC*,
No. 00 Civ. 5002 (LMM), 2005 U.S. Dist. LEXIS 5730,
(S.D.N.Y. Mar. 29, 2005) .......................................................... 8

*Whiting v. Lacara*,
187 F.3d 317 (2d Cir. 1999) .......................................................... 10

**Statutes**

Fed. R. Civ. P. 17(a) .......................................................... 3, 6, 13
Fed. R. Civ. P. 23 .......................................................... 4

Private Securities Litigation Reform Act,
15 U.S.C. §78u-4 .......................................................... 4

**Other Authorities**

Securities Litigation Reform,
H.R. Rep. No. 369, 104th Congress, 1st Sess. 31, *reprinted in* 1995
U.S.C.C.A.N. 730 .......................................................... 9, 12

## I. INTRODUCTION

Plaintiff-petitioner Westchester Capital Management, Inc. ("Westchester Capital" or "Plaintiff") respectfully submits this petition for leave to appeal pursuant to Rule 5 of the Federal Rules of Appellate Procedure and the collateral order doctrine, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949), on an expedited basis. Plaintiff seeks reversal of an April 1, 2009 order of the District Court ("the April 1 Order"), annexed as Exhibit 1, holding that Plaintiff, an investment advisor, lacks Article III constitutional standing and may not, regardless of the circumstances, cure that lack of standing.

The District Court's April 1 Order creates an inappropriate bright line rule to the effect that, *without exception*, no investment advisor plaintiff may be permitted, after commencing suit to recover investment losses suffered by its beneficial owner clients, to cure a lack of Article III standing by obtaining a valid assignment of claims from the clients to the advisor. The April 1 Order is in conflict with *W.R. Huff Asset Management Co. L.L.C. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) ("*Huff*"), which sanctions the assignment of claims by a plaintiff investment advisor's clients of the type which Westchester Capital has obtained from its clients, and with the U.S. Supreme Court's decision in *Sprint Communications Co., L.P., v. APCC Services, Inc.*, 554 U.S. ____, 128 S. Ct. 2531

(2008) ("*Sprint*"), on which *Huff* relied. It is also in conflict with the two other district courts that have recently addressed this issue in light of the *Huff* decision.

The April 1 Order deserves expedited review by this Court because it has immediate and serious implications for investment advisor plaintiffs in other current cases, including both individual actions and securities fraud class actions such as this one.[1] Moreover, a decision contrary to the April 1 Order was rendered two weeks ago in another Southern District of New York action, *In re Vivendi Universal, S.A. Sec. Litig.* No. 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y. Mar. 31, 2009) ("*Vivendi*"). In *Vivendi*, certain investment advisor plaintiffs' claims were conditionally dismissed pursuant to *Huff* for lack of Article III standing, but entry of judgment was delayed to give plaintiffs time to amend their complaint to allege,

1 In *Huff*, an individual securities fraud action arising from the Adelphia securities fraud, this Court remanded to the district court, which, *sua sponte*, entered judgments dismissing the action against all defendants. In response to Huff's request that the dismissal be vacated so that it could consider a Rule 17(a) motion by Huff, the District Court issued an order denying that request and setting a briefing schedule for any motions Huff or the beneficial owners deemed appropriate. In response, Huff moved for relief from judgment and for leave to amend its complaint. On February 4, 2009, Huff filed a Notice of Appeal as of right from the district court's judgments, citing error in dismissing that action without affording plaintiff an opportunity to substitute the beneficial owners as plaintiffs under Rule 17(a) of the Federal Rules of Civil ("Fed. R. Civ. P."). That appeal has not yet been briefed. Other district court actions directly affected by *Huff* are *Vivendi*, discussed in this section, and *In re Imax Corporation Securities Litigation*, 06-cv-6128 (NRB) (S.D.N.Y.), discussed at n. 8, *infra*.

*inter alia,* post-complaint assignments by their beneficial owner clients. The district court specifically held that the amendments, pursuant to Fed. R. Civ. P. 17(a)(3), "will relate back to the original filing of the complaints." *Vivendi,* slip op. at 24.

## QUESTION PRESENTED

Whether the lower court erred in holding that a plaintiff investment advisor's post-filing receipt of a valid assignment of its clients' claims, pursuant to Rule 17(a)(3) of the Federal Rules of Civil Procedure, based on an intervening decision of the Second Circuit, is sufficient to cure the advisor's lack of Article III standing.

## II. STATEMENT OF THE CASE

Westchester Capital is the sole investment advisor and manager for The Merger Fund and The Merger Fund VL (the "Funds"). Westchester Capital manages approximately $1.3 billion in assets beneficially owned by the Funds, which have approximately 100,000 shareholders. In its capacity as investment adviser and manager of the Funds, Westchester Capital purchased SLM common stock for the Funds during the putative class period. The Funds' investment in SLM shares resulted in market losses in excess of $35 million by the end of the class period. A substantial part of this loss was caused by SLM's alleged wrongdoing.

On July 23, 2008, the district court granted Westchester Capital's motion for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4 ("PSLRA"), finding the power of attorney granted to Westchester Capital by the Funds and the discretionary authority granted to Westchester Capital to make investments on the Funds' behalf was consistent with decisions by other district courts in the Circuit.[2] *Burch v. SLM Corp.*, Nos. 08 Civ. 1029 (WHP), 08 Civ. 2463 (WHP), 2008 U.S. Dist. LEXIS 55423 at * 11-12 (S.D.N.Y. July 23, 2008).

On December 19, 2009, SLM Venture, a contending lead plaintiff previously rejected by the District Court, sought removal of Westchester Capital as lead plaintiff and the substitution of itself as lead plaintiff on the grounds that *Huff* compelled a ruling that Westchester Capital lacked Article III standing and was therefore an inadequate lead plaintiff subject to a unique defense.

In *Huff*, the Second Circuit addressed the issue whether Huff, an investment advisor, lacked constitutional standing because it had purchased securities on its clients' behalf and did not have title to or a proprietary interest in its clients' securities. This Court held that *Huff*'s discretionary authority to make investment

---

2 The PSLRA requires the court to appoint as lead plaintiff the person with the largest loss in the security and who can satisfy the requirements of Fed. R. Civ. P. 23. The district court determined that Westchester Capital's loss, nearly 10 times the loss of the applicant with the next greatest loss, was the greatest and that Westchester Capital satisfied the Fed. R. Civ. P. 23 requirements. *Burch*, 2008 U.S. Dist. LEXIS 55423 at *16.

decisions for its clients and possession of a power of attorney to act for its clients with respect to those investments could not satisfy the injury-in-fact requirement of Article III because it was Huff's clients, the beneficial owners of the securities, that had suffered the injury. *Id.* at 107-109. However, a valid assignment to the investment advisor by the beneficial owners of their claims would satisfy the Article III standing requirement. *Id* at.108-109.

In the instant case, the District Court's fundamental error is in interpreting *Huff*'s Article III requirements as absolute and fatal to any attempt by Westchester Capital to cure the lack of standing. Assignments for the purpose and with the effect of conferring Article III standing on the assignee are discussed with approval by this Court in *Huff* and in *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20-21 (2d Cir. 1997) ("*Advanced Magnetics*") and by the U.S. Supreme Court in *Sprint Communications Co. L.P.*, 554 U.S. at __, 128 S. Ct. at 2533 (noting that "[b]ecause history and precedent make clear that such an assignee has long been permitted to bring suit, we conclude that the assignee does have standing."). *Huff* made it clear that Article III standing had requirements that were distinct from statutory requirements, but it did not hold that the investments advisor's lack of Article III standing was immutably fatal and could not be cured. Had this been the Court's intent, it would have dismissed Huff's claims outright rather than remanding the case to the district court. *Huff*, 549 F. 3d at 111.

In keeping with the *Huff* and *Sprint* decisions, and in order to remove any doubt as to Westchester Capital's Article III standing, on or about January 13, 2009, Westchester Capital obtained from the Funds assignments of all of their claims for damages and other relief in connection with purchases of SLM securities. Plaintiff opposed SLM Venture's motion and made its own motion pursuant to Fed. R. Civ. P. 17(a)(3), seeking the District Court's approval of the assignments and affirmation of Westchester Capital's standing and appointment as lead plaintiff for the putative class.

Westchester Capital argued that these assignments by the Funds as the real parties in interest were sufficient to confer Article III standing on Westchester Capital and that, under Fed. R. Civ. P. 17(a)(3), the assignments constituted ratification of Westchester Capital's right to prosecute the securities claims against the SLM defendants and to continue to serve as lead plaintiff. Plaintiff further argued that the standing conferred by the assignments under Fed. R. Civ. P. 17 (a)(3)[3] related back to Westchester Capital's initial filing.[4] The District Court,

[3] Rule 17(a)(3) provides: "*Joinder of the Real Party in Interest.* The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

[4] Westchester Capital did not initially file its own class action complaint, but rather, as permitted by the PSLRA, simply moved to be appointed lead plaintiff.

however, did not agree. On April 1, 2009, the District Court ruled:

> Westchester Capital no longer satisfies the adequacy or typicality requirement—it faces unique legal issues that other class members do not. Even if this Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals *could* hold otherwise. *That uncertainty requires this Court to proceed with caution.* Accordingly, this Court declines to approve the assignment of claims by Westchester Capital's two client funds.

April 1 Order at 6-7 (emphasis added).

Plaintiff is aware of only two other district courts that have ruled on the Article III standing of an investment advisor after *Huff*, and both reached the opposite conclusion from the District Court here. Those decisions are *Vivendi, supra*, in the Southern District of New York and *Northstar Financial Advisors, Inc. v. Schwab Investments*, No. C 08-4119 SI, 2009 U.S. Dist. LEXIS 12763 (N.D. Ca. Feb. 19, 2009) ("*Northstar*") (interpreting *Huff* even though the case is in the Northern District of California). The *Vivendi* court rejected defendants' arguments that, after *Huff*, a plaintiff must have had standing at the time an action was brought and consequently only assignments made prior to the commencement of the suit can possibly establish an assignee plaintiff's standing to sue. The same

---

After being appointed lead plaintiff, it filed a Consolidated Amended Class Action Complaint on behalf of itself and the class.

arguments were made in the instant case.[5] The *Vivendi* court, per Judge Holwell, citing this Court's decision in *Advanced Magnetics,* 106 F.3d at 20-21, opined:

> *Advanced Magnetics* stands for the proposition that a standing defect at the commencement of the suit does not require dismissal of the action with prejudice. Should the real parties in interest, i.e., the persons or entities that had standing to bring plaintiff's claims at the commencement of the suit, wish to ratify plaintiff's actions, join the lawsuit, or substitute for the current plaintiffs, the court should allow those parties a reasonable time to do so.

*Vivendi,* 02 Civ. 5571, slip op. at 21.

In *Northstar,* a putative class action under the Investment Act of 1940, the Northern District of California court determined under the reasoning of *Huff,* that a plaintiff investment advisor did not have Article III standing to bring suit on behalf of its clients without an assignment. Nevertheless, the district court held that the advisor plaintiff (who had obtained such an assignment after filing suit and subsequent to *Huff*) "could amend the complaint to cure these deficiencies." *Northstar*, 2009 U.S. Dist. LEXIS 12763 at *6. The *Northstar* court dismissed

---

5 SLM Venture has argued that *Advanced Magnetics* and other cases deciding Rule 17(a) disputes limit post-complaint assignments to cure a lack of standing to those situations where the original plaintiff had some standing of its own. This is not so. The *Advanced Magnetics* decision does not establish such a condition, nor did Judge Holwell limit his decision in *Vivendi* where he permitted scores of plaintiff investment advisors, who after *Huff* could not allege standing of their own, to cure that lack of standing by obtaining assignments of claims by their clients that had suffered the injury-in-fact from the alleged securities law violations by defendants. *See also Wade Williams Distrib., Inc. v. ABC,* No. 00 Civ. 5002 (LMM), 2005 U.S. Dist. LEXIS 5730, *10-11 (S.D.N.Y. Mar. 29, 2005).

plaintiff's claims without prejudice and granted leave to amend to allege an assignment of claims by at least one of plaintiff's clients. *Id.* at *7.

In stark contrast to the well-reasoned decisions in *Vivendi* and *Northstar*, in the instant action, the District Court not only refused to permit assignment of the Funds' claims to Plaintiff, but it also revoked Westchester Capital's appointment as lead plaintiff for the putative class.[6] This removal of Westchester Capital was a direct consequence of the District Court's erroneous holding that Plaintiff's lack of Article III standing could never be cured.[7] April 1 Order at 6-7. In practice, the best PSLRA lead plaintiff is a sophisticated institutional investor like Westchester Capital with a substantial stake in the outcome of the class action, Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th Congress, 1st Sess. 31, *reprinted in* 1995 U.S.C.C.A.N. 730, 731. The District Court's "uncertainty" about the import of this Court's decision in *Huff* has resulted in an erroneous and inequitable decision which, in addition to being wrong on the law, violates a primary purpose of the PSLRA and potentially prejudices the Class by

---

[6] Inexplicably, the District Court did not dismiss Westchester Capital's claims set forth in the Consolidated Amended Class Action Complaint, nor did it enter judgment dismissing Plaintiff from the case, which would seem mandatory given the Court's holding that Plaintiff's lack of Article III standing was incurable.

[7] That ruling by the lower court should be reversed.

depriving it of the leadership and efforts of the vastly more qualified Westchester Capital.[8]

## III. ARGUMENT

### A. LEAVE TO APPEAL SHOULD BE GRANTED UNDER THE COLLATERAL ORDER DOCTRINE

Generally, interlocutory orders are not appealable as a matter of right. The collateral order doctrine is an exception to this rule. *SEC v. Thestreet.com*, 273 F.3d 222, 228 (2d Cir. 2001). Under the collateral order doctrine, an appellate court has jurisdiction over an interlocutory order if the order (1) "'conclusively determined the disputed question'; (2) 'resolved an important issue completely separate from the merits of the action'; and (3) 'was effectively unreviewable on appeal from a final judgment.'" *Id.* at 228 (*quoting Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999)); *see also Cohen*, 337 U.S. 541, 69 S. Ct. 1221, 93 L. Ed. 1528. Westchester Capital submits that the April 1 Order meets these criteria and

---

[8] As noted above at n.1, the April 1 Order has implications beyond the case at bar. The same Article III standing and PSLRA concerns have been raised in *In re Imax Corporation Securities Litigation*, 06-cv-6128 (NRB) (S.D.N.Y.) ("*Imax*"), a securities class action where defendants' motions to dismiss were denied and discovery has been underway for months and in which Westchester Capital was also appointed lead plaintiff. Westchester Capital's motion for class certification was recently denied, without prejudice, pending the *Imax* court's determination whether the assignment of claims from Westchester Capital's clients permits Westchester Capital to continue to serve as lead plaintiff. *Imax*, 06-cv-6128 (NRB) (S.D.N.Y. Mar. 13, 2009).

leave to appeal should be granted to prevent an inequitable result to Westchester Capital and to protect the interests of the Class.

1. **The April 1 Order Conclusively Determined the Issue in Question**

The first prong of the collateral order doctrine requires that the order "conclusively determined the disputed question." *SEC*, 273 F.3d at 228. The April 1 Order conclusively determined the disputed question—whether a post-filing assignment of claims by the Funds was a ratification of Westchester Capital's action —and was rendered "with the expectation that it would be the 'final word on the subject addressed.'" *Janneh v. GAF Corp.*, 887 F.2d 432, 434 (2d Cir. 1989) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12-13 n.14, 103 S. Ct. 927, 935, 74 L. Ed. 2d 765, 778 (1983)). The District Court explicitly stated that it "decline[d] to approve the assignment of claims by Westchester Capital's two client funds." April 1 Order at 7.

2. **The Post-filing Assignment of Claims is an Issue Separate From the Merits**

The second prong of the collateral order doctrine mandates the resolution of an important issue completely separate from the merits of the action. *SEC*, 273 F.3d at 228. The standing issue before this Court is separate from the merits of the underlying alleged violations of the securities laws. *See id.* This prong only requires that "the appeal 'present a question that is substantial, *i.e.*, not doomed to

failure under controlling precedent.'" *Janneh*, 887 F.2d at 435 n.2 (*quoting Lawson v. Abrams*, 863 F.2d 260, 262 (2d Cir. 1988)).

The April 1 Order conflicts with *Huff* and with the post-*Huff* district court decisions in *Vivendi* and *Northstar*, both of which held that *Huff* did not preclude a post-filing assignment of claims by the real party in interest to ratify a plaintiff's lawsuit and cure the plaintiff's initial lack of Article III standing. The April 1 Order likewise contradicts the Second Circuit's ruling in *Advanced Magnetics*, 106 F.3d at 21, affirming that a post-filing assignment of claims pursuant to Rule 17(a)(3) can confer standing on a corporate plaintiff to pursue claims for injury to its shareholders, the real parties in interest but for the assignment.

Removal of Westchester Capital as lead plaintiff is also contrary to the policy underlying the PSLRA because Westchester Capital is the type of plaintiff Congress envisioned to lead securities class action lawsuits following the passage of the PSLRA. A primary goal of the PSLRA was to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, would participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th Congress, 1st Sess. 31, *reprinted in* 1995 U.S.C.C.A.N., at 731.

None of these issues relate directly to the merits of the claims against SLM and the individual defendants for violation of the securities laws. The prosecution of those claims will proceed regardless of the outcome of this petition. Nonetheless, the "collateral" issues raised by this petition — the relationship of Article III constitutional standing to the real party in interest provisions of Fed. R. Civ. P. 17(a) and the appropriate implementation of the intent of Congress expressed in the PSLRA — are substantial and important to the jurisprudence of the federal courts, and will have a direct bearing on other pending cases. The requested review clearly satisfies the second prong of the collateral order doctrine.

### 3. **The April 1 Order is Unreviewable on Appeal from a Final Judgment**

The final prong of the collateral order doctrine requires the order in question to be effectively unreviewable on appeal from a final judgment. *SEC*, 273 F.3d at 228. This prong is "satisfied only where the order at issue involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799, 109 S. Ct. 1491, 1498 (1989) (*quoting United States v. MacDonald*, 435 U.S. 850, 860, 98 S. Ct. 1547, 1553 (1978)). If this petition is rejected, the April 1 Order denying the standing of Westchester Capital to litigate the claims of its clients and to act as lead plaintiff for the putative class will never, as a practical matter, be appealable from any final judgment. Such a judgment will not be

rendered in this action until the claims of substitute lead plaintiff SLM Venture, pursued for itself and the class, are either dismissed with prejudice on motions addressed to the operative complaint in the action or dismissed on motions for summary judgment, or if those claims succeed and judgment for damages after trial or approving a settlement is rendered. In any case, an appeal by Westchester Capital from such a final judgment is effectively futile. Once the merits of the underlying dispute have been resolved, the propriety of the District Court's decision ousting Westchester Capital will be moot and no practical remedy for the error can be fashioned. Even if the April 1 Order were reversed after an appeal from a final judgment in this action, it "would be as effective as slamming the barn door after the horse has already bolted." *Janneh*, 887 F.2d at 436.

## CONCLUSION

For the foregoing reasons, Westchester Capital seeks leave to appeal the April 1, 2009 Order.

Dated: April 14, 2009

Respectfully submitted,

ABBEY SPANIER RODD & ABRAMS, LLP

By: ______________________
Jill S. Abrams (JA 1578)
jabrams@abbeyspanier.com
Stephen T. Rodd (SR 8228)
srodd@abbeyspanier.com
Arthur N. Abbey (AA 8074)
aabbey@abbeyspanier.com

Natalie Marcus (NM 7677)
nmarcus@abbeyspanier.com
Jeremy Nash (JN 3856)
jnash@abbeyspanier.com
212 East 39th Street
New York, New York 10016
Telephone: (212) 889-3700
Facsimile: (212) 654-5191

William C. Fredericks, Esq.
BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Additional Plaintiff's Counsel

# EXHIBIT 1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: 4/1/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
:
In re: SLM CORPORATION SECURITIES LITIGATION :
-------------------------------X

Master File No.
08 Civ. 1029 (WHP)

**MEMORANDUM AND ORDER**

WILLIAM H. PAULEY III, District Judge:

By Memorandum and Order dated July 23, 2008, this Court appointed Westchester Capital Management, Inc. ("Westchester Capital") lead plaintiff in this securities class action (the "July 2008 Order"). Westchester Capital is the investment advisor to two funds that invested in Defendant SLM Corporation ("SLM"). In its July 2008 Order, this Court noted that while district courts in this circuit had held that an investment advisor could serve as lead plaintiff, the Court of Appeals had not addressed that question. Moreover, this Court observed that two district courts outside this circuit had held that investment advisors lacked Article III standing because they did not suffer any injury-in-fact.

On December 3, 2008, the Court of Appeals addressed the issue, and reversed a district court's decision to denying a motion to dismiss for lack of standing in a securities action brought by an investment advisor. See W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP, 549 F.3d 100 (2d Cir. 2008). Lead Plaintiff Movant SLM Venture now moves for relief from the July 2008 Order and appointment as lead plaintiff. Westchester Capital moves for approval of an assignment of claims by the two funds it advises. For the following reasons, SLM Venture's motion is granted and Westchester Capital's motion is denied.

DISCUSSION

Courts have a "continuing duty to monitor whether lead plaintiffs are capable of adequately protecting the interests of the class members." In re NYSE Specialist Sec. Litig., 240 F.R.D. 128, 133 (S.D.N.Y. 2007). Accordingly, despite the absence of explicit authorization under the Private Securities Litigation Reform Act ("PSLRA") or Rule 23 of the Federal Rules of Civil Procedure, courts have the "ability to consider motions to disqualify, remove, withdraw, substitute, and add lead plaintiffs throughout the litigation of a securities class action." NYSE Specialist Sec. Litig., 240 F.R.D. at 132-33 (collecting cases).

I. W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP

Huff involved an investment advisor to institutional investors that brought a securities action on behalf of certain purchasers of securities issued by Adelphia Communications Corporation ("Adelphia"). See 549 F.3d 100. Defendant challenged Huff's Article III standing to sue on behalf of investment clients. The district court denied the motion.

On appeal, the Second Circuit held that because Huff had "not alleged in its complaint that it suffered any injury . . . the dispositive question is whether Huff as the named plaintiff, can demonstrate an 'injury-in-fact' through some other means, such as an assignment of claims." W.R. Huff, 549 F.3d at 107. While the Court of Appeals held that an "assignee who holds legal title to an injured party's claim has constitutional standing to pursue the claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor," Huff had not obtained legal title to its clients' claims through a valid assignment. W.R. Huff, 549 F.3d at 107.

Accordingly, the Court of Appeals reversed and remanded to the district court.[1] W.R. Huff, 549 F.3d at 108-11. Although the Court of Appeals did not decide whether "in the context of a class action under the PSLRA, an investment advisor could qualify as a suitable lead plaintiff," it stated that "courts should be mindful that named plaintiffs in a class action must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." W.R. Huff, 549 F.3d at 106 n.5 (internal quotation marks and citations omitted).

In light of W.R. Huff, this Court finds that Westchester Capital, as an investment advisor without a valid assignment of its clients' claims, did not have Article III standing at the time this Court appointed it lead plaintiff.

II. Post-Appointment Assignment of Claims

A court should not dismiss a claim for lack of standing where "substitution of the real party in interest is necessary to avoid injustice." Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997) (quoting 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1555 (2d ed. 1990)). Accordingly, Rule 17(a) of the Federal Rules of Civil Procedure provides that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." "Rule 17(a) is designed to avoid forfeitures of just claims." Advanced Magnetics, 106 F.3d at 20 (quoting Advisory Committee Notes (1966)).

[1] On remand, the district court dismissed the case, but allowed Huff to make a motion to substitute its clients as plaintiffs. In re Adelphia Commcn's. Corp. Secs. Litig., 03 MDL 1529 (LMM) (Slip Opin.) (S.D.N.Y. Jan. 16, 2009). That motion is sub judice.

Pursuant to Rule 17(a), Westchester Capital seeks approval of the assignment of claims by the two funds it advises. Since Huff, one district court has allowed an investment advisor plaintiff to cure its lack of standing by obtaining an assignment after the court granted the defendants' motion to dismiss. See Northstar Fin. Advisors, Inc. v. Schwab Investments, No. 08 Civ. 4119 (SI), 2009 WL 415616 (N.D. Cal. Feb. 19, 2009) (investment advisor plaintiff bringing claims under the Investment Company Act of 1940 lacked standing to bring claims on behalf of investors, but could amend complaint to allege an assignment it had received).

While Rule 17(a) allows for the substitution of a real party in interest, a plaintiff must have "Article III standing at the outset of the litigation." Friends of Earth, Inc. v. Laidlaw Env'tl Servs. (TOC) Inc., 528 U.S. 167, 189 (2000); see also Jones v. Goord, 435 F. Supp. 2d 221, 225 (S.D.N.Y. 2006) ("Standing is determined at the time a complaint is filed."); Berger v. Weinstein, No. 07-994, 2008 WL 3183404, at *3 n.4 (E.D. Pa. Aug. 6, 2008) ("an assignment of legal rights which takes place after the commencement of litigation does not abdicate the constitutional requirement that standing must exist from the commencement of litigation").

To the extent courts allow assignment of a claim after litigation commences, the plaintiff generally has Article III standing on at least one other claim at the time the action was filed. See, e.g., Advanced Magnetics, 106 F.3d at 14 (where plaintiff brought action on behalf of itself and certain of its shareholders, district court should have allowed substitution of shareholders with respect to their own claims because plaintiff did not have standing on those claims); Dubuque Stone Prod. Co. v. Fred L Gray Co., 356 F.2d 718, 724 (8th Cir. 1966) (allowing assignment to cure standing defect where plaintiff was real party in interest as to the amount that it had paid but not as to remaining claims); Blair-Naughton, L.L.C. v. Diner Concepts, Inc., No. 06-1183-JTM, 2007 WL 4463584 (D. Kan. Dec. 17, 2007) (party lacked

standing where assignment occurred only after motion to dismiss was filed because "standing is determined at the time an action is commenced"); In re Ditropan XL Antitrust Litig., M:06-CV-01761-JSW, MDL No. 1761, 2007 WL 2978329 (N.D. Cal. Oct. 11, 2007) (post-complaint assignment insufficient to confer standing in antitrust class action); Infodek, Inc. v. Meredith-Webb Printing Co., Inc., 830 F. Supp. 614, 620 (N.D. Ga. 1993) ("an assignment of interest should be recognized provided the assignment occurs before trial, the plaintiff is a real party in interest in at least one other claim, and the defendant suffers no prejudice from its recognition.").

In copyright infringement actions, two judges in this district have allowed assignments after the outset of the litigation even where the plaintiff did not have Article III standing on another claim. See Wade Williams Distrib., Inc. v. ABC Inc., No. 00 Civ. 5002 (LMM), 2005 WL 774275, at *4 (S.D.N.Y. Apr. 5, 2005) (plaintiff could pursue a copyright infringement lawsuit filed before an assignment if the assignment occurs before trial, there is no dispute between the assignee and assignor as to who may bring the claim and the defendant suffers no prejudice); Intimo, Inc. v. Briefly Stated, Inc., 948 F. Supp. 315, 317-19 (S.D.N.Y. 1996) (same); Godinger Silver Art Co. v. Int'l Silver Co., 95 Civ. 9199 (LMM), 1995 WL 702357, at *4 (S.D.N.Y. Nov. 28, 1995) (assignment was sufficient basis for continued maintenance of claim even though subsequent to commencement of the action). However, copyright infringement is an entirely different judicial landscape because an assignee has standing to sue for infringement that occurs after the assignment of rights to the copyright, but the assignor retains standing to sue for pre-assignment infringement unless the assignment explicitly "confer[s] the right to a claim for prior infringement." Intimo, 948 F. Supp. at 317. Thus, two of these decisions only allowed for amendment of an existing assignment to refer explicitly to claims for prior infringement. See Wade Willaims, 2005 WL 774275, at *4; Intimo,

948 F. Supp. at 317-19. And in at least one of the actions, the plaintiff had standing on post-assignment claims. Intimo, 948 F. Supp. at 319 (noting that if the court did not allow the amendment, plaintiff would litigate the post-assignment claims and then file another lawsuit for the remaining claims after obtaining a valid assignment explicitly conferring the right to claims for prior infringement).

However, none of the cases dealing with an assignment of a claim after litigation was commenced arise in the context of a lead plaintiff's standing in a PSLRA class action. Under the PSLRA, a proposed lead plaintiff must, inter alia, "make a preliminary showing that it satisfies the typicality and adequacy requirements of F.R.C.P. 23." In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 102 (S.D.N.Y. 2005). The typicality requirement is satisfied where a plaintiff has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). In considering the adequacy of a proposed lead plaintiff, a court must consider whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation. See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y. 2004). In contrast to a motion to dismiss, this Court's primary concern under Rule 17(a) is not whether just claims will be forfeited, but rather whether an assignment will affect Westchester Capital's ability to adequately represent the interests of the class.

Huff now makes clear that Westchester Capital did not have Article III standing at the time this Court appointed it lead plaintiff. In addition, the majority of courts to allow an assignment of claims after the onset of litigation do so only where plaintiff had constitutional standing on another claim. That is not the situation here. Therefore, Westchester Capital no

longer satisfies the adequacy or typicality requirement—it faces unique legal issues that other class members do not. Even if this Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise. That uncertainty requires this Court to proceed with caution. Accordingly, this Court declines to approve the assignment of claims by Westchester Capital's two client funds.

III. Appointment of a New Lead Plaintiff

Having determined that Westchester Capital cannot serve as lead plaintiff, the Court must appoint a new lead plaintiff. Pursuant to the PSLRA, the plaintiff that files the first action must publish notice of the action within 20 days, informing class members of the action and of their right to file a motion for appointment as lead plaintiff. The Court must consider all motions filed within sixty days after the publication of notice. See 15 U.S.C. §§ 78u-4(a)(3)(A) & (B).

The court must appoint as lead plaintiff the class member or members most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B)(i). A plaintiff is presumed to be the most adequate if it: (1) either filed the complaint or made a timely motion to be appointed lead plaintiff; (2) "has the largest financial interest in the relief sought by the class"; and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As discussed above, the typicality requirement is satisfied where a plaintiff has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues. See Drexel Burnham, 960 F.2d at 291. A court must consider whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation.

See Global Crossing, 225 F.R.D. at 453. The presumption of adequacy can be overcome with proof that plaintiff cannot fairly and adequately represent the class or is "subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

In this action, three parties moved for appointment within the sixty day period. Thus, this Court turns its analysis to the other two movants: (1) SLM Venture; and (2) Sheet Metal Workers' Local No. 80 Pension Trust Fund ("SMW").[2] SMW supports the appointment of SLM Venture because it has the larger financial interest. Therefore, the Court only considers SLM Venture.

SLM Venture is a joint venture involving several families that was established in September 2007 for the purpose of investing in SLM. SLM Venture is structured as a partnership under the California Uniform Partnership Act. (Declaration of Sam Sotoodeh dated Feb. 19, 2009 ("Sotoodeh Decl.") ¶¶ 3-4.) It purchased 929,963 shares of SLM stock and sold 870,973 shares during the class period, resulting in a net purchase of 58,990 shares. (Declaration of Jonathan K. Levine dated Mar. 31, 2008 ("Levine Decl") Ex. B: Certification of Sam Sotoodeh dated Mar. 22, 2008.) SLM Venture's net expenditure was $5,062,332 and its approximate loss is $3,910,847. (Levine Decl. Ex. D: Calculation of SLM Venture's loss.)

One of the partners, Sam Sotoodeh, manages the affairs of the partnership. (Sotoodeh Decl. ¶ 5.) He carries out those duties through Acquisition Group, Inc. ("Acquisition Group"), a California corporation for which he is the controlling shareholder, and AG Trading, LP, ("AG Trading") a California limited partnership. (Sotoodeh Decl. ¶ 5.) AmerEnterprise,

---

[2] Westchester Capital requests that if the Court denies its motion for approval of the assignment, the Court allow Westchester Capital to substitute or join its funds. However, Westchester Capital did not move for substitution or joinder. Moreover, under the PSLRA the Court can only consider those class members that filed a motion sixty days after the publication of notice as candidates for appointment as lead plaintiff.

Inc., a California corporation of which Sotoodeh is also the controlling shareholder, is the general partner of AG Trading. (Sotoodeh Decl. ¶ 5.) Sotoodeh carried out the trades in SLM securities using Acquisition Group in order to comply with regulatory requirements governing securities trading, as well as for administrative convenience. (Sotoodeh Decl. ¶ 12.) All trades in SLM stock were undertaken on behalf of SLM Venture and reported for tax purposes by SLM Venture. (Sotoodeh Decl. ¶ 12.) SLM Venture also invested in certain non-SLM securities to mitigate losses. (Sotoodeh Decl. ¶ 7.)

SLM Venture satisfies the typicality and adequacy requirements under Fed. R. Civ. P. 23. Its injuries stem from the alleged overvaluation of SLM stock resulting from Defendants' allegedly materially false and misleading statements and omissions. In addition, there is no reason to believe that SLM Venture's claims conflict with those of the class. Finally, it has retained Girard Gibbs & De Bartolomeo, LLP ("Girard Gibbs"), competent and experienced counsel. Accordingly, SLM Venture is a presumptively adequate plaintiff.

Westchester Capital argues that the presumption is rebutted by the fact that SLM Ventures fails to: (1) present evidence that SLM Ventures was the actual purchaser or holder of the SLM securities; (2) explain SLM Venture's relationship with Acquisition Group, AG Trading, or AmerEnterprise; and (3) explain its trades in non-SLM securities.

There is nothing unusual about an entity executing trades through another corporation. Moreover, SLM Venture has explained that the trades were made by Acquisition Group on SLM Venture's behalf for administrative and regulatory reasons. In addition, SLM Venture, not Acquisition Group, reported the trades for tax purpose. Finally, counsel for SLM Venture states that, by non-SLM securities, SLM Venture means securities that have no relationship to SLM. Thus, based on counsel's representation, this Court is satisfied that "non-

SLM securities" does not refer to options. (Further Reply Mem. of Law dated Mar. 12, 2009 at 5.) SLM Venture's investments in securities unrelated to SLM do not raise questions about its ability to serve as lead plaintiff. Accordingly, the Court appoints SLM Venture as lead plaintiff and approves the selection of Girard Gibbs as lead counsel.[3]

## CONCLUSION

For the foregoing reasons, SLM Venture's motion for relief from the July 2008 Order is granted and Westchester Capital's motion for approval of assignment is denied. SLM Venture is appointed lead plaintiff, and its counsel, Girard Gibbs & De Bartolomeo, LLP is approved as lead counsel.

Dated: April 1, 2009
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record*

[3] SLM Ventures seeks the appointment of Coughlin Stoia Geller Rudman & Robbins LLP, counsel for SMW as "Liaison Counsel." This Court finds that Girard Gibbs is more than qualified to handle this action without Liaison Counsel. Accordingly, it declines to approve the appointment of Liaison Counsel.

**ANTI-VIRUS CERTIFICATION FORM**

*See* Second Circuit Interim Local Rule 25(a)6.

CASE NAME: In re: SLM Corporation Securities Litigation

DOCKET NUMBER: 08-CIV-1029 (S.D.N.Y.)

I, (please print your name) Natalie Marcus, certify that I have scanned for viruses the PDF version of the attached document that was submitted in this case as an email attachment to

- [ ] <agencycases@ca2.uscourts.gov>.
- [ ] <criminalcases@ca2.uscourts.gov>.
- [ ] <civilcases@ca2.uscourts.gov>.
- [x] <newcases@ca2.uscourts.gov>.
- [ ] <prosecases@ca2.uscourts.gov>.

and that no viruses were detected.

Please print the name and the version of the anti-virus detector that you used McAfee Total Protection Service 4.7.0.538 Patch 003b

If you know, please print the version of revision and/or the anti-virus signature files 5575.0000

(Your Signature) Natalie Marcus

Date: 04/14/2009

**CERTIFICATE OF SERVICE**

I, Carolyn Davila, hereby certify that on April 14, 2009, I caused the following documents to be served upon counsel of record listed via electronic mail and via overnight mail in accordance with the method of service mandated by the Second Circuit Court of Appeals:

PETITION OF WESTCHESTER CAPITAL MANAGEMENT, INC. FOR LEAVE TO APPEAL FROM THE DISTRICT COURT'S APRIL 1, 2009 ORDER

ANTI-VIRUS CERTIFICATION FORM

Carolyn Davila

**SERVICE LIST**

**Counsel for Defendants**

LATHAM & WATKINS, LLP
Laurie B. Smilan
Abid R Qureshi
Two Freedom Square, Suite 500
11955 Freedom Drive,
Reston, Virginia 20190-5651
Tel: (703) 454-1000
Fax: (703) 456-1001
Email: laurie.smilan@lw.com

LATHAM & WATKINS, LLP
Peter A. Wald
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Tel (415) 391-0600
Fax: (415) 395-8095
Email: peter.wald@lw.com

LATHAM & WATKINS, LLP
Jeffrey G. Hammel
885 Third Avenue
New York, New York 10022-4834
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: Jeffrey.hammel@lw.com

**Counsel for Plaintiffs**

Samuel Howard Rudman
David Avi Rosenfeld
COUGHLIN, STOIA, GELLER, RUDMAN
& ROBBINS, LLP
58 South Service Road
Suite 200
Melville, NY 11747
631-367-7100
Fax: 631-367-1173
Email: srudman@csgrr.com
drosenfeld@csgrr.com

Jonathan K. Levine
Daniel C. Girard

GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, CA 94108
415-981-4500
Fax. 415-981-4846
Email: dcg@girardgibbs.com