# EXHIBIT A

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/1/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
:
In re: SLM CORPORATION
SECURITIES LITIGATION :
-------------------------------X

Master File No.
08 Civ. 1029 (WHP)

**MEMORANDUM AND ORDER**

WILLIAM H. PAULEY III, District Judge:

By Memorandum and Order dated July 23, 2008, this Court appointed Westchester Capital Management, Inc. ("Westchester Capital") lead plaintiff in this securities class action (the "July 2008 Order"). Westchester Capital is the investment advisor to two funds that invested in Defendant SLM Corporation ("SLM"). In its July 2008 Order, this Court noted that while district courts in this circuit had held that an investment advisor could serve as lead plaintiff, the Court of Appeals had not addressed that question. Moreover, this Court observed that two district courts outside this circuit had held that investment advisors lacked Article III standing because they did not suffer any injury-in-fact.

On December 3, 2008, the Court of Appeals addressed the issue, and reversed a district court's decision to denying a motion to dismiss for lack of standing in a securities action brought by an investment advisor. See W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP, 549 F.3d 100 (2d Cir. 2008). Lead Plaintiff Movant SLM Venture now moves for relief from the July 2008 Order and appointment as lead plaintiff. Westchester Capital moves for approval of an assignment of claims by the two funds it advises. For the following reasons, SLM Venture's motion is granted and Westchester Capital's motion is denied.

## DISCUSSION

Courts have a "continuing duty to monitor whether lead plaintiffs are capable of adequately protecting the interests of the class members." In re NYSE Specialist Sec. Litig., 240 F.R.D. 128, 133 (S.D.N.Y. 2007). Accordingly, despite the absence of explicit authorization under the Private Securities Litigation Reform Act ("PSLRA") or Rule 23 of the Federal Rules of Civil Procedure, courts have the "ability to consider motions to disqualify, remove, withdraw, substitute, and add lead plaintiffs throughout the litigation of a securities class action." NYSE Specialist Sec. Litig., 240 F.R.D. at 132-33 (collecting cases).

### I. W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP

Huff involved an investment advisor to institutional investors that brought a securities action on behalf of certain purchasers of securities issued by Adelphia Communications Corporation ("Adelphia"). See 549 F.3d 100. Defendant challenged Huff's Article III standing to sue on behalf of investment clients. The district court denied the motion.

On appeal, the Second Circuit held that because Huff had "not alleged in its complaint that it suffered any injury . . . the dispositive question is whether Huff as the named plaintiff, can demonstrate an 'injury-in-fact' through some other means, such as an assignment of claims." W.R. Huff, 549 F.3d at 107. While the Court of Appeals held that an "assignee who holds legal title to an injured party's claim has constitutional standing to pursue the claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor," Huff had not obtained legal title to its clients' claims through a valid assignment. W.R. Huff, 549 F.3d at 107.

Accordingly, the Court of Appeals reversed and remanded to the district court.[1] W.R. Huff, 549 F.3d at 108-11. Although the Court of Appeals did not decide whether "in the context of a class action under the PSLRA, an investment advisor could qualify as a suitable lead plaintiff," it stated that "courts should be mindful that named plaintiffs in a class action must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." W.R. Huff, 549 F.3d at 106 n.5 (internal quotation marks and citations omitted).

In light of W.R. Huff, this Court finds that Westchester Capital, as an investment advisor without a valid assignment of its clients' claims, did not have Article III standing at the time this Court appointed it lead plaintiff.

II. Post-Appointment Assignment of Claims

A court should not dismiss a claim for lack of standing where "substitution of the real party in interest is necessary to avoid injustice." Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997) (quoting 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1555 (2d ed. 1990)). Accordingly, Rule 17(a) of the Federal Rules of Civil Procedure provides that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." "Rule 17(a) is designed to avoid forfeitures of just claims." Advanced Magnetics, 106 F.3d at 20 (quoting Advisory Committee Notes (1966)).

---

[1] On remand, the district court dismissed the case, but allowed Huff to make a motion to substitute its clients as plaintiffs. In re Adelphia Commcn's. Corp. Secs. Litig., 03 MDL 1529 (LMM) (Slip Opin.) (S.D.N.Y. Jan. 16, 2009). That motion is sub judice.

Pursuant to Rule 17(a), Westchester Capital seeks approval of the assignment of claims by the two funds it advises. Since Huff, one district court has allowed an investment advisor plaintiff to cure its lack of standing by obtaining an assignment after the court granted the defendants' motion to dismiss. See Northstar Fin. Advisors, Inc. v. Schwab Investments, No. 08 Civ. 4119 (SI), 2009 WL 415616 (N.D. Cal. Feb. 19, 2009) (investment advisor plaintiff bringing claims under the Investment Company Act of 1940 lacked standing to bring claims on behalf of investors, but could amend complaint to allege an assignment it had received).

While Rule 17(a) allows for the substitution of a real party in interest, a plaintiff must have "Article III standing at the outset of the litigation." Friends of Earth, Inc. v. Laidlaw Env't'l Servs. (TOC) Inc., 528 U.S. 167, 189 (2000); see also Jones v. Goord, 435 F. Supp. 2d 221, 225 (S.D.N.Y. 2006) ("Standing is determined at the time a complaint is filed."); Berger v. Weinstein, No. 07-994, 2008 WL 3183404, at *3 n.4 (E.D. Pa. Aug. 6, 2008) ("an assignment of legal rights which takes place after the commencement of litigation does not abdicate the constitutional requirement that standing must exist from the commencement of litigation").

To the extent courts allow assignment of a claim after litigation commences, the plaintiff generally has Article III standing on at least one other claim at the time the action was filed. See, e.g., Advanced Magnetics, 106 F.3d at 14 (where plaintiff brought action on behalf of itself and certain of its shareholders, district court should have allowed substitution of shareholders with respect to their own claims because plaintiff did not have standing on those claims); Dubuque Stone Prod. Co. v. Fred L Gray Co., 356 F.2d 718, 724 (8th Cir. 1966) (allowing assignment to cure standing defect where plaintiff was real party in interest as to the amount that it had paid but not as to remaining claims); Blair-Naughton, L.L.C. v. Diner Concepts, Inc., No. 06-1183-JTM, 2007 WL 4463584 (D. Kan. Dec. 17, 2007) (party lacked

standing where assignment occurred only after motion to dismiss was filed because "standing is determined at the time an action is commenced"); In re Ditropan XL Antitrust Litig., M:06-CV-01761-JSW, MDL No. 1761, 2007 WL 2978329 (N.D. Cal. Oct. 11, 2007) (post-complaint assignment insufficient to confer standing in antitrust class action); Infodek, Inc. v. Meredith-Webb Printing Co., Inc., 830 F. Supp. 614, 620 (N.D. Ga. 1993) ("an assignment of interest should be recognized provided the assignment occurs before trial, the plaintiff is a real party in interest in at least one other claim, and the defendant suffers no prejudice from its recognition.").

In copyright infringement actions, two judges in this district have allowed assignments after the outset of the litigation even where the plaintiff did not have Article III standing on another claim. See Wade Williams Distrib., Inc. v. ABC Inc., No. 00 Civ. 5002 (LMM), 2005 WL 774275, at *4 (S.D.N.Y. Apr. 5, 2005) (plaintiff could pursue a copyright infringement lawsuit filed before an assignment if the assignment occurs before trial, there is no dispute between the assignee and assignor as to who may bring the claim and the defendant suffers no prejudice); Intimo, Inc. v. Briefly Stated, Inc., 948 F. Supp. 315, 317-19 (S.D.N.Y. 1996) (same); Godinger Silver Art Co. v. Int'l Silver Co., 95 Civ. 9199 (LMM), 1995 WL 702357, at *4 (S.D.N.Y. Nov. 28, 1995) (assignment was sufficient basis for continued maintenance of claim even though subsequent to commencement of the action). However, copyright infringement is an entirely different judicial landscape because an assignee has standing to sue for infringement that occurs after the assignment of rights to the copyright, but the assignor retains standing to sue for pre-assignment infringement unless the assignment explicitly "confer[s] the right to a claim for prior infringement." Intimo, 948 F. Supp. at 317. Thus, two of these decisions only allowed for amendment of an existing assignment to refer explicitly to claims for prior infringement. See Wade Willaims, 2005 WL 774275, at *4; Intimo,

948 F. Supp. at 317-19. And in at least one of the actions, the plaintiff had standing on post-assignment claims. Intimo, 948 F. Supp. at 319 (noting that if the court did not allow the amendment, plaintiff would litigate the post-assignment claims and then file another lawsuit for the remaining claims after obtaining a valid assignment explicitly conferring the right to claims for prior infringement).

However, none of the cases dealing with an assignment of a claim after litigation was commenced arise in the context of a lead plaintiff's standing in a PSLRA class action. Under the PSLRA, a proposed lead plaintiff must, inter alia, "make a preliminary showing that it satisfies the typicality and adequacy requirements of F.R.C.P. 23." In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 102 (S.D.N.Y. 2005). The typicality requirement is satisfied where a plaintiff has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). In considering the adequacy of a proposed lead plaintiff, a court must consider whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation. See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y. 2004). In contrast to a motion to dismiss, this Court's primary concern under Rule 17(a) is not whether just claims will be forfeited, but rather whether an assignment will affect Westchester Capital's ability to adequately represent the interests of the class.

Huff now makes clear that Westchester Capital did not have Article III standing at the time this Court appointed it lead plaintiff. In addition, the majority of courts to allow an assignment of claims after the onset of litigation do so only where plaintiff had constitutional standing on another claim. That is not the situation here. Therefore, Westchester Capital no

longer satisfies the adequacy or typicality requirement—it faces unique legal issues that other class members do not. Even if this Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise. That uncertainty requires this Court to proceed with caution. Accordingly, this Court declines to approve the assignment of claims by Westchester Capital's two client funds.

III. Appointment of a New Lead Plaintiff

Having determined that Westchester Capital cannot serve as lead plaintiff, the Court must appoint a new lead plaintiff. Pursuant to the PSLRA, the plaintiff that files the first action must publish notice of the action within 20 days, informing class members of the action and of their right to file a motion for appointment as lead plaintiff. The Court must consider all motions filed within sixty days after the publication of notice. See 15 U.S.C. §§ 78u-4(a)(3)(A) & (B).

The court must appoint as lead plaintiff the class member or members most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B)(i). A plaintiff is presumed to be the most adequate if it: (1) either filed the complaint or made a timely motion to be appointed lead plaintiff; (2) "has the largest financial interest in the relief sought by the class"; and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As discussed above, the typicality requirement is satisfied where a plaintiff has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues. See Drexel Burnham, 960 F.2d at 291. A court must consider whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation.

See Global Crossing, 225 F.R.D. at 453. The presumption of adequacy can be overcome with proof that plaintiff cannot fairly and adequately represent the class or is "subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

In this action, three parties moved for appointment within the sixty day period. Thus, this Court turns its analysis to the other two movants: (1) SLM Venture; and (2) Sheet Metal Workers' Local No. 80 Pension Trust Fund ("SMW").[2] SMW supports the appointment of SLM Venture because it has the larger financial interest. Therefore, the Court only considers SLM Venture.

SLM Venture is a joint venture involving several families that was established in September 2007 for the purpose of investing in SLM. SLM Venture is structured as a partnership under the California Uniform Partnership Act. (Declaration of Sam Sotoodeh dated Feb. 19, 2009 ("Sotoodeh Decl.") ¶¶ 3-4.) It purchased 929,963 shares of SLM stock and sold 870,973 shares during the class period, resulting in a net purchase of 58,990 shares. (Declaration of Jonathan K. Levine dated Mar. 31, 2008 ("Levine Decl") Ex. B: Certification of Sam Sotoodeh dated Mar. 22, 2008.) SLM Venture's net expenditure was $5,062,332 and its approximate loss is $3,910,847. (Levine Decl. Ex. D: Calculation of SLM Venture's loss.)

One of the partners, Sam Sotoodeh, manages the affairs of the partnership. (Sotoodeh Decl. ¶ 5.) He carries out those duties through Acquisition Group, Inc. ("Acquisition Group"), a California corporation for which he is the controlling shareholder, and AG Trading, LP, ("AG Trading") a California limited partnership. (Sotoodeh Decl. ¶ 5.) AmerEnterprise,

---

[2] Westchester Capital requests that if the Court denies its motion for approval of the assignment, the Court allow Westchester Capital to substitute or join its funds. However, Westchester Capital did not move for substitution or joinder. Moreover, under the PSLRA the Court can only consider those class members that filed a motion sixty days after the publication of notice as candidates for appointment as lead plaintiff.

Inc., a California corporation of which Sotoodeh is also the controlling shareholder, is the general partner of AG Trading. (Sotoodeh Decl. ¶ 5.) Sotoodeh carried out the trades in SLM securities using Acquisition Group in order to comply with regulatory requirements governing securities trading, as well as for administrative convenience. (Sotoodeh Decl. ¶ 12.) All trades in SLM stock were undertaken on behalf of SLM Venture and reported for tax purposes by SLM Venture. (Sotoodeh Decl. ¶ 12.) SLM Venture also invested in certain non-SLM securities to mitigate losses. (Sotoodeh Decl. ¶ 7.)

SLM Venture satisfies the typicality and adequacy requirements under Fed. R. Civ. P. 23. Its injuries stem from the alleged overvaluation of SLM stock resulting from Defendants' allegedly materially false and misleading statements and omissions. In addition, there is no reason to believe that SLM Venture's claims conflict with those of the class. Finally, it has retained Girard Gibbs & De Bartolomeo, LLP ("Girard Gibbs"), competent and experienced counsel. Accordingly, SLM Venture is a presumptively adequate plaintiff.

Westchester Capital argues that the presumption is rebutted by the fact that SLM Ventures fails to: (1) present evidence that SLM Ventures was the actual purchaser or holder of the SLM securities; (2) explain SLM Venture's relationship with Acquisition Group, AG Trading, or AmerEnterprise; and (3) explain its trades in non-SLM securities.

There is nothing unusual about an entity executing trades through another corporation. Moreover, SLM Venture has explained that the trades were made by Acquisition Group on SLM Venture's behalf for administrative and regulatory reasons. In addition, SLM Venture, not Acquisition Group, reported the trades for tax purpose. Finally, counsel for SLM Venture states that, by non-SLM securities, SLM Venture means securities that have no relationship to SLM. Thus, based on counsel's representation, this Court is satisfied that "non-

SLM securities" does not refer to options. (Further Reply Mem. of Law dated Mar. 12, 2009 at 5.) SLM Venture's investments in securities unrelated to SLM do not raise questions about its ability to serve as lead plaintiff. Accordingly, the Court appoints SLM Venture as lead plaintiff and approves the selection of Girard Gibbs as lead counsel.[3]

## CONCLUSION

For the foregoing reasons, SLM Venture's motion for relief from the July 2008 Order is granted and Westchester Capital's motion for approval of assignment is denied. SLM Venture is appointed lead plaintiff, and its counsel, Girard Gibbs & De Bartolomeo, LLP is approved as lead counsel.

Dated: April 1, 2009
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record*

[3] SLM Ventures seeks the appointment of Coughlin Stoia Geller Rudman & Robbins LLP, counsel for SMW as "Liaison Counsel." This Court finds that Girard Gibbs is more than qualified to handle this action without Liaison Counsel. Accordingly, it declines to approve the appointment of Liaison Counsel.