**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | Case No.: 06-cv-6128 (NRB) |

# RESPONSE OF STEELWORKERS PENSION TRUST TO SNOW CAPITAL MANAGEMENT'S MOTION FOR RECONSIDERATION OF THE COURT'S LEAD PLAINTIFF ORDER DATED JANUARY 17, 2007

**BERGER & MONTAGUE, P.C.**

Sherrie R. Savett
Phyllis M. Parker
Douglas M. Risen
Russell D. Paul
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

*Counsel for Plaintiff*
*Steelworkers Pension Trust*

## TABLE OF CONTENTS


I. INTRODUCTION ....................................................1

II. ARGUMENT ....................................................4

A. Steelworkers Agrees that Westchester has Standing to Remain Lead Plaintiff and that the 2007 Lead Plaintiff Order was Correctly Decided and Reconsideration of the Order is Not Warranted ....................................................4

B. If the Court Should Decide that Westchester Should Not be Lead Plaintiff, Steelworkers Should be Named Lead Plaintiff ....................................................4

1. The Class will Benefit Because Steelworkers Has Been Actively Involved in Representing the Class Since 2007 and Has Extensive Knowledge About the Case ....................................................5

2. There is No Evidence that Snow Capital has the Largest Financial Interest for the Operative Class Period February 27, 2003 through July 20, 2007 ....................................................7

3. Steelworkers Has a Substantial Financial Interest in the Litigation to Be Appointed Lead Plaintiff and has Further Expended Substantial Time, Energy and Effort in Litigating the Case on Behalf of the Class ....................................................9

C. That Snow Capital is Not an Adequate Lead Plaintiff is Also Demonstrated by its Selection of Counsel Unfamiliar with this Litigation ...........10

D. Substituting a New Lead Plaintiff would Severely Delay the Prosecution of this Action at the Expense of the Class Contrary to the Intent of the PSLRA ....................................................11

III. CONCLUSION ....................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Eichenholtz v. VeriFone Holdings, Inc.*,
2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008)........8

*In re IMAX Secs. Litig.*,
587 F. Supp. 2d 471 (S.D.N.Y. 2008)........1, 6

*In re Independent Energy Holdings PLC Secs. Litig.*,
210 F.R.D. 476 (S.D. N.Y. 2002)........11

*In re NYSE Specialists Secs. Litig.*,
240 F.R.D. 128 (S.D.N.Y. 2007)........11

*In re Oxford Health Plans, Inc. Secs. Litig.*,
191 F.R.D. 369 (S.D.N.Y. 2000)........12

*In re Oxford Health Plans, Inc., Secs. Litig.*,
199 F.R.D. 119 (S.D.N.Y. 2001)........12

*In re Party City Sec. Litig.*,
189 F.R.D. 91 (D.N.J. 1999)........8

*In re Veeco Instruments, Inc. Secs. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006)........10

*W.R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)........2, 5

**STATUTES**

15 U.S.C. §78u-4(a)(3)(B)(iii)........9

15 U.S.C. §78u-4(a)(3)(B)(i)........11

15 U.S.C. §78u-4(a)(3)(B)(ii)........11

**OTHER AUTHORITIES**

Rule 23........5, 12

Rule 30(b)(6)........2

# I. INTRODUCTION

Plaintiff Steelworkers Pension Trust ("Steelworkers") respectfully submits this response to the motion of Snow Capital Management ("Snow Capital") for reconsideration of the Court's Order of January 17, 2007 appointing Westchester Capital Management ("Westchester") as Lead Plaintiff in this *IMAX Securities Litigation* (the "2007 Lead Plaintiff Order").

The Court should reject this Motion for Reconsideration. While Snow Capital has been entirely absent from the litigation since the Court's 2007 Lead Plaintiff Order, this case has been litigated vigorously and successfully on behalf of the proposed Class by Lead Plaintiff Westchester, aided since 2007 by the additional named plaintiff, Steelworkers Pension Trust.

Indeed, on September 16, 2008, in a significant victory for the Class, this Court upheld the allegations in Westchester's and Steelworkers' Consolidated Amended Complaint against IMAX, the Individual Defendants *and* IMAX's outside auditor PriceWaterhouseCoopers ("PwC"). *See In re IMAX Secs. Litig.*, 587 F. Supp. 2d 471 (S.D.N.Y. 2008). Following that decision, the parties have been engaged in intensive discovery, including in connection with Plaintiffs' Motion for Class Certification, where Westchester and Steelworkers are Proposed Class Representatives.

Nevertheless, despite the efforts of Westchester and Steelworkers on behalf of the Class to date, Snow Capital now belatedly seeks reconsideration of the 2007 Lead Plaintiff Order, contending that Westchester (but not Steelworkers) faces a possible standing challenge in light of intervening Second Circuit law.

Steelworkers has been diligent in its efforts on behalf of the Class. Steelworkers, in its capacity as a proposed class representative, has responded to extensive discovery requests from all Defendants who oppose the motion for class certification; it has produced all responsive documents; its general counsel sat for a Rule 30(b)(6) deposition; its independent asset manager,

Penn Capital Management, a third party represented by other counsel, produced approximately 150,000 pages of documents, and also sat for a deposition to testify about its Class Period purchases and sales of IMAX stock on behalf of Steelworkers.

Steelworkers, with Westchester, was in the midst of preparing its reply to Defendants' class certification opposition when counsel for Snow Capital wrongfully perceived an opportunity to wrest the case from Lead Counsel in light of the Second Circuit's decision in *W.R. Huff Asset Mgmt. Co. LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) ("*Huff*"). Westchester's and Steelworkers' then pending Motion for Class Certification was taken off calendar when Snow Capital filed the instant motion for reconsideration – a motion which has no legitimate basis and in which Snow Capital actually sides with defendants. At best, Snow Capital's motion serves only to retard the case; at worst it is a blatant attempt by Snow Capital's ***counsel*** to place their own interests ahead of the Class' interests.

Steelworkers is an institutional pension fund, and, along with both Westchester, Snow Capital and others, was an original applicant for lead plaintiff in 2006 when the litigation was commenced. No defendant nor absent class member has suggested that Steelworkers faces a standing challenge. While Steelworkers believes that Westchester's recent assignments cure any standing concern raised by subsequent law and that reconsideration of the 2007 Lead Plaintiff Order is not warranted, Steelworkers respectfully submits that appointing Snow Capital as the lead plaintiff more than two years into the litigation would do a grave disservice to the Class.

Strangely, in its motion for reconsideration, Snow Capital makes no mention whatsoever of Steelworkers' presence as a named plaintiff and proposed class representative in the litigation. Snow Capital also wholly ignores Steelworkers' substantial efforts to date. While Steelworkers has spent considerable time acquiring an understanding of the merits of the case and has been

vigorous in its efforts on behalf of the Class, Snow Capital seems unable to even accurately identify the parties, having wholly failed to address Steelworkers' presence as a named plaintiff and proposed class representative. Indeed, Snow Capital's sole contact with the case was its lead plaintiff application of October 10, 2006.

Finally, the Court should consider that Snow Capital is inadequate because Snow Capital asks the Court to appoint Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin") as Lead Counsel, a law firm which, like Snow Capital itself, has been absent from this case for two and a half years. In contrast, Steelworkers is represented by Berger & Montague, P.C. and Westchester is represented by Abbey Spanier Rodd & Abrams, LLP, which firm was appointed as Lead Counsel by the Court's January 17, 2007 Order which appointed Westchester as Lead Plaintiff.[1] Snow Capital's inadequacy is demonstrated by its desire to wholly replace Lead Counsel, a decision which would inevitably lead to duplication of thousands of hours of legal work already incurred, fees for which would come from any recovery on behalf of the Class. Whether on behalf of both Westchester and Steelworkers, or solely on behalf of Steelworkers, the Abbey and Berger firms should be permitted to continue to represent the Class.

For all these reasons, set forth in more detail below, if the Court should decide to overrule its previous decision appointing Westchester as Lead Plaintiff, Steelworkers Pension Trust should be appointed Lead Plaintiff, not Snow Capital.

---

[1] At the time of the January 17, 2007 Order, the firm was known as Abby Spanier Rodd Abrams & Paradis, LLP.

## II. ARGUMENT

### A. Steelworkers Agrees that Westchester has Standing to Remain Lead Plaintiff and that the 2007 Lead Plaintiff Order was Correctly Decided and Reconsideration of the Order is Not Warranted

Steelworkers incorporates by reference the arguments set forth in Westchester Capital Management, Inc.'s Memorandum of Law in Opposition to Snow Capital Investment Partners, L.P.'s Motion for Reconsideration of this Court's January 17, 2007 Order Appointing Westchester Capital Management, Inc. as Lead Plaintiff, filed by Westchester on April 24, 2009.

### B. If the Court Should Decide that Westchester Should Not be Lead Plaintiff, Steelworkers Should be Named Lead Plaintiff

As a threshold matter, the Court should note that Steelworkers did not withdraw its original Motion for Appointment as Lead Plaintiff filed in October 2006. *See* Parker Dec. at Ex. A, Steelworkers Pension Trust's Response to Competing Motions for Appointment as Lead Plaintiff filed October 27, 2006, Docket No. 30.[2] Indeed, in its Response to Competing Motions, Steelworkers stated that it would not contest Westchester's appointment as Lead Plaintiff because Steelworkers recognized that Westchester had the greatest financial interest asserted by competing applicants and was the presumptive lead plaintiff under the PSLRA. Steelworkers stated that:

> Steelworkers is committed to the vigorous prosecution of this action. Should the need arise, Steelworkers stands ready, willing, and able to serve as either a class

[2] References to "Parker Decl. Ex. _" is to the exhibit attached to the accompanying Declaration of Phyllis M. Parker in Support of Response of Steelworkers Pension Trust to Snow Capital Management's Motion for Reconsideration of Lead Plaintiff Order of January 17, 2007.

representative or lead plaintiff, and believes the Class would benefit from the representation of a multi-employer Taft-Hartley fund such as Steelworkers.

*Id*. at p. 1.

Accordingly, Steelworkers now stands "ready, willing, and able to serve as either a class representative or lead plaintiff." Under the circumstances of this case, Steelworkers is the most adequate representative in the event that the Court decides Westchester must be replaced.

**1. The Class will Benefit Because Steelworkers Has Been Actively Involved in Representing the Class Since 2007 and Has Extensive Knowledge About the Case**

Although Snow Capital avoids any mention of Plaintiff Steelworkers in its motion and memorandum, the record of this litigation clearly shows that Steelworkers has been involved in litigating this case for over two years. First, Steelworkers timely filed a motion for lead plaintiff on October 10, 2006. As stated above, Steelworkers did not contest the application of Westchester because it appeared that Westchester's asserted multi-million dollar loss far exceeded the losses of all other applicants, including both Steelworkers' and Snow Capital's and that in all other respects Westchester satisfied the requirements of Rule 23.[3] *See* Parker Decl., Ex. A, at p. 1.

[3] Steelworkers did not contest Snow Capital's motion back in 2006 because at that time Snow Capital's purported loss was dwarfed by Westchester's and it was Westchester, not Snow Capital, that was entitled to the PSLRA's rebuttable presumption regarding the "most adequate plaintiff".

On October 2, 2007, Lead Plaintiff Westchester filed the Consolidated Amended Class Action Complaint (the "Amended Complaint") in which Steelworkers was specifically named as an additional Plaintiff, along with Westchester.[4]

On September 16, 2008, after extensive briefing and oral argument by the parties, the Court issued an Order denying the motions to dismiss filed by all IMAX defendants and defendant PwC, IMAX's outside auditor. *See In re IMAX Secs. Litig.*, 587 F. Supp. 2d 471 (S.D.N.Y. 2008). Following that decision sustaining the Amended Complaint, Plaintiffs filed a Motion for Class Certification on October 31, 2008 in which Westchester and Steelworkers sought to be appointed Class Representatives for the proposed Class alleged in the Amended Complaint.

Steelworkers spent months actively engaged in discovery related to Plaintiffs' motion for class certification, including responding and objecting to discovery requests propounded by the IMAX Defendants and PwC. Steelworkers' General Counsel, Richard S. Hoffmann, was deposed by all defendants, where he ably testified about the litigation and Steelworkers' role as a proposed class representative. In addition, Defendants subpoenaed Steelworkers' asset manager, Penn Capital Management, and received almost 150,000 documents in late January and early February 2009. Steelworkers participated in the review of those documents in preparation for the Penn Capital deposition. On February 12, 2009, Defendants took the 30(b)(6) deposition of Penn Capital Management's representative Eric Green, who testified regarding Steelworkers'

---

[4] The Amended Complaint extended the alleged Class Period to February 27, 2003 through and including July 20, 2007. To the extent the Court were to revisit the lead plaintiff motions, it is significant to note that the papers are now outdated, in light of subsequent developments in the case, and do not set forth all Class Period transactions in IMAX stock for the expanded operative Class Period.

purchases and sales of IMAX stock during the Class Period. On February 23, 2009, Defendants filed the opposition to class certification. Steelworkers had commenced working on a reply to Defendants' opposition at the time Snow Capital filed this belated motion for reconsideration.

In connection with its work on the Amended Complaint, the motions to dismiss, and the class certification proceedings, Steelworkers and its counsel became fully familiar with the legal theories and issues in this case, serving as further demonstration that Steelworkers is ready, willing and able to vigorously and effectively prosecute this litigation on behalf of the Class.

**2. There is No Evidence that Snow Capital has the Largest Financial Interest for the Operative Class Period February 27, 2003 through July 20, 2007**

The sole basis for Snow Capital's assertion that it should replace Westchester as Lead Plaintiff if the Court should determine that Westchester lacks standing, is that Snow Capital is "the movant with the next largest financial interest" after Westchester. Snow Capital Br. at 11. Snow Capital's assertion of its primacy over the other five original lead plaintiff applicants is based on its transactions in IMAX stock that Snow Capital submitted with its 2006 lead plaintiff memorandum. Snow Capital Br. at 12. The Court should reject this argument which is premised on determining the relative financial interests in the litigation during a shorter class period that has since been superseded by a substantially longer one.[5]

In the course of discovery in connection with the Class Certification Motion, Steelworkers has produced numerous documents and was deposed in connection with its purchases and sales of IMAX stock in the Class Period of the operative complaint -- February 27, 2003 through July 20, 2007. Thus, while Steelworkers' trades in IMAX stock for the longer Class

[5] Indeed, Snow Capital may even have a gain in the operative Class Period which would negate its own standing to pursue the Class' claims.

Period have been exhaustively discovered by the parties, Snow Capital's have not. Numerous courts have held that the most expansive class period is the appropriate period to consider in determining lead plaintiff. *See, e.g., Eichenholtz v. VeriFone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633, at *6 (N.D. Cal. Aug. 22, 2008) ("[T]he longest potential class period" is the "appropriate class period, for purposes of appointing lead plaintiff…Indeed, it is unclear why a plaintiff would argue for a shorter class period at this stage, which would have the effect of reducing the class size and limiting the potential amount of damages, unless it was in the best interest of that particular plaintiff only."); *see also In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) (where related actions allege different class periods, the class period used to calculate "the largest financial interest" is the longest one alleged in the actions filed against defendants).

Moreover, even if the Court were to consider the losses asserted by all seven competing applicants for the class period alleged back in October 2006, Snow Capital's purported losses are roughly comparable to Steelworkers'. *See* Parker Decl., Ex. A.[6] And that determination ignores the substantial time, energy and effort that Steelworkers and its counsel have put into the litigation over the last two and a half years.

Finally, Snow Capital's argument that no competing movant ever filed an opposition to Snow Capital's lead plaintiff motion questioning Snow Capital's losses or its adequacy or typicality (Snow Capital Br. at 12) is irrelevant and misses the mark entirely. Steelworkers understood that since Westchester's asserted losses far exceeded those asserted by all other

[6] In their respective motions for lead plaintiff filed October 2006, the three movants with the largest losses were are follows: Westchester asserted a loss of $3,623,551; Snow Capital asserted a loss of $481,327; and Steelworkers asserted a loss of $428,445 for the Class Period of October 28, 2004 through August 9, 2006. *See* Parker Decl., Ex. A, at p. 1.

competing claimants (*see* Parker Decl., Ex. A) Westchester was entitled to the "rebuttable presumption" that it was "the most adequate plaintiff" under the lead plaintiff provisions of the PSLRA. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). There was no need to question Snow Capital's adequacy at a time when the rebuttable presumption favored Westchester. Steelworkers can also claim that no competing movant challenged its adequacy at the time either.

### 3. Steelworkers Has a Substantial Financial Interest in the Litigation to Be Appointed Lead Plaintiff and has Further Expended Substantial Time, Energy, and Effort in Litigating the Case on Behalf of the Class

The Court should also consider the considerable outlay of time and effort already expended by Steelworkers in prosecuting this litigation in concluding that Steelworkers has the PSLRA-mandated "largest financial interest" in the litigation. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Steelworkers, as a named plaintiff and proposed class representative, has expended substantial time, energy, and effort on behalf of the Class to date, as set forth in detail above, while Snow Capital has been wholly absent from the litigation. While Steelworkers and Snow Capital asserted roughly equivalent investment losses at the lead plaintiff stage, Steelworkers respectfully suggests that its efforts to date further demonstrate its significant interest in this litigation. These considerations should also be taken into account in determining whether Steelworkers or Snow Capital has a greater interest in the litigation, and weigh in favor of the Court's selection of Steelworkers as Lead Plaintiff over Snow Capital.

Finally, Steelworkers is a Taft-Hartley Fund with experience serving as a lead plaintiff in this judicial district, and is precisely the type of institutional investor contemplated by Congress in the PSLRA. Indeed, a Court in this District previously appointed Steelworkers as the Lead Plaintiff in a securities class action, finding that Steelworkers was adequate, among other

reasons, because of its efforts on behalf of the Class. *See In re Veeco Instruments, Inc. Secs. Litig.*, 235 F.R.D. 220 (S.D.N.Y. 2006). In *Veeco,* Judge McMahon stated:

> [H]aving expended $941,269.75 on 40,000 shares of Veeco stock during the Class Period, Steelworkers has a significant interest in the outcome of this action. Steelworkers, in addition, has played and continues to play an integral role in the prosecution of this litigation.

*Id*. at 239.

### C. That Snow Capital is Not an Adequate Lead Plaintiff is Also Demonstrated by its Selection of Counsel Unfamiliar with this Litigation

The Coughlin firm, like its client Snow Capital, has been absent from this case since it filed a motion on behalf of Snow Capital in October 2006, and, since then, has never, to Steelworkers knowledge, inquired as to the progress of the case, nor had any dealings with Defendants nor the Court, prior to recently raising the standing issue against Westchester. The Coughlin firm, like Snow Capital, would need to learn the case from scratch, wasting thousands of hours and dollars that should ultimately be used for the benefit of the Class.[7] While it is certainly conceivable that the Coughlin firm could eventually gain an understanding of the claims and defenses in the case, and the many nuances of effectively litigating the action, the attorneys at the Berger and Abbey firms have lived with this case for over two years, have extensively researched and drafted the claims, have defended fact and expert witnesses, and have reviewed thousands of documents in discovery. Snow Capital's indication that it would retain counsel unfamiliar with the litigation, rather than the attorneys whose skill and perseverance

[7] It is unclear whether Snow Capital would need to file its own complaint, whether that complaint would be subject to renewed motions to dismiss and reinstatement of the PSLRA discovery stay. Undoubtedly, a new plaintiff would need to produce responsive documents, sit for depositions, and fulfill other possible obligations in this litigation. While every step of the litigation may not need to be re-litigated, it is indisputable that a newly appointed plaintiff retaining unfamiliar attorneys to represent the Class would create thousands of hours of duplicative work and greatly delay resolution of this action.

have already proven beneficial to the Class, demonstrates that Snow Capital's motion is simply not in the best interests of the Class.

**D. Substituting a New Lead Plaintiff would Severely Delay the Prosecution of this Action at the Expense of the Class Contrary to the Intent of the PSLRA**

The lead plaintiff provisions of the PSLRA contemplate that the court will make the lead plaintiff decision rapidly to enable the action to proceed as quickly as possible for the benefit of the Class, and, therefore, set forth strict guidelines for the lead plaintiff selection process. *See, e.g.*, 15 U.S.C. §78u-4(a)(3)(B)(i)("Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice…"); 15 U.S.C. §78u-4(a)(3)(B)(ii)("As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph.")

In analogous situations, where multiple lead plaintiffs are named in a securities class action, courts in this District have repeatedly held that the withdrawal or disqualification of one lead plaintiff does not call for the delay inherent in re-opening the lead plaintiff determination, since there are qualified class representatives present in the case and it would be against the class' interests to retard or re-litigate the proceedings. *See, e.g., In re NYSE Specialists Secs. Litig.*, 240 F.R.D. 128, 140, 143 (S.D.N.Y. 2007) (rejecting motions of plaintiffs to be appointed co-lead plaintiffs two years after the original lead plaintiff order as "unnecessary" since "there is already an adequate lead plaintiff in place to represent the purported class" - an institutional investor - and noting that "[i]n situations similar to the instant case where at least one adequate lead plaintiff remains in place, courts have chosen not to re-open the lead plaintiff process")(citing *In re Independent Energy Holdings PLC Secs. Litig.,* 210 F.R.D. 476, 485 n. 15 (S.D.N.Y. 2002) ("Because the class will be adequately represented by counsel, with or without

the inclusion of Becnel as a lead plaintiff, I decline to re-open the lead plaintiff process which would, under the circumstances, be an exercise in futility.”). *See also In re Oxford Health Plans, Inc., Secs. Litig*., 199 F.R.D. 119, 125 (S.D.N.Y. 2001) (declining to re-open the lead plaintiff process where the court found that remaining plaintiffs were adequate class representatives, stating that "the class representative is going to control the case. He is the Rule 23 fiduciary, not the lead plaintiffs.”). *In re Oxford Health Plans, Inc. Secs. Litig.*, 191 F.R.D. 369, 381 (S.D.N.Y. 2000)(“[T]he substitution of a new Lead Plaintiff at this stage of the litigation is likely to cause dislocation and delay. Designating another law firm as Lead Counsel either in addition to the existing Lead Counsel or in substitution of any of them, would seem to promise more delay and unjustifiable additional expense, which on the present record appears unwarranted.”)

Here too, the Class has Steelworkers “in place” as a proposed class representative – an institutional investor who is engaged in the litigation, has been deposed and will be able to prove its adequacy under Rule 23 - and the Court has no need to re-open the lead plaintiff process.

Given that the Class has Steelworkers as an adequate representative, it is not in the interest of the Class to delay the litigation by revisiting the Lead Plaintiff issue, since the sole basis of the motion for reconsideration is the issue of Westchester’s standing – an issue not applicable to Steelworkers. Snow Capital’s seeking to intervene now only helps *Defendants*, while it harms the Class by delaying and complicating the progress of this hard-fought litigation for no reason. The Class should be permitted to have its day in court without the extreme delay that would result if the Court should grant Snow Capital’s motion for reconsideration.

## III. CONCLUSION

For the foregoing reasons, Steelworkers respectfully requests that the Court deny the motion of Snow Capital Management to reconsider the Court’s January 17, 2007 Order, and that the Court permit Westchester to remain as Lead Plaintiff and Steelworkers as a Proposed Class

Representative. Alternatively, if the Court should decide to reconsider its Order, the Court should deny Snow Capital's motion to be appointed Lead Plaintiff and the Court should appoint Steelworkers as Lead Plaintiff.

Dated: May 1, 2009

BERGER & MONTAGUE, P.C.

By: */s/ Russell D. Paul*

Sherrie R. Savett
Phyllis M. Parker
Douglas M. Risen
Russell D. Paul (RP 2277)
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

*Counsel for Plaintiff*
*Steelworkers Pension Trust*

**CERTIFICATE OF SERVICE**

DOUGLAS M. RISEN, hereby certifies that on May 1, 2009, he caused a true and correct copy of the foregoing Response of Steelworkers Pension Trust to Motion of Snow Capital Management's Motion for Reconsideration of Lead Plaintiff Order of January 17, 2007, and Declaration of Phyllis M. Parker in Support with Exhibit, to be served electronically upon the following counsel:

Arthur N. Abbey, Esq.
Jill S. Abrams, Esq.
Richard M. Margolies, Esq.
Abbey Spanier Rodd & Abrams, LLP
212 East 39th Street
New York, NY 10016

Lewis Liman, Esq.
James D. Matthews, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006-1470

Jennifer L. Conn, Esq.
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 7th Floor
New York, NY 10166-0193

Byron M. Wilder, Esq.
Gibson, Dunn & Crutcher, LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201

Samuel H. Rudman, Esq.
David A. Rosenfeld, Esq.
Mark S. Reich, Esq.
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747

*/s/ Douglas M. Risen*
DOUGLAS M. RISEN

Malta 464118