UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | Civil Action No. 06 civ. 6128 (NRB) |
| | REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SNOW CAPITAL INVESTMENT PARTNERS, L.P.'S MOTION FOR RECONSIDERATION OF THIS COURT'S JANUARY 17, 2007 ORDER APPOINTING WESTCHESTER CAPITAL MANAGEMENT, INC. AS LEAD PLAINTIFF, AND IN RESPONSE TO THE OPPOSITION OF WESTCHESTER CAPITAL MANAGEMENT, INC. |

## TABLE OF CONTENTS


**Page**

I. PRELIMINARY STATEMENT ....................................................................... 1

II. ARGUMENT ....................................................................................... 3

A. An Investor Must Have Standing at the Time that it Seeks to Be Appointed as a Lead Plaintiff ....................................................... 3

B. Westchester Capital Cannot Belatedly Cure Its Lack of Standing ................ 5

C. At a Minimum, Westchester Capital Should Not Be Allowed to Serve as Lead Plaintiff Since it is Subject to Unique Defenses ................................ 7

D. Snow Capital Should Be Appointed Lead Plaintiff and its Choice of Counsel Should be Approved as Lead Counsel .................................... 9

III. CONCLUSION ................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997)....1

*In re NYSE Specialists Sec. Litig.*,
240 F.R.D. 128 (S.D.N.Y. 2007)....6

*In re SLM Corporation Securities Litigation*,
No. 08 Civ. 1029(WHP), 2009 U.S. Dist. LEXIS 35401
(S.D.N.Y. Apr. 1, 2009)....2, 5, 6

*Intimo, Inc. v. Briefly Stated, Inc.*,
948 F. Supp. 315 (S.D.N.Y. 1996)....6, 7

*Northstar Fin. Advisors, Inc. v. Schwab Invs., et al.*,
No. C-08-4119 SI, 2009 U.S. Dist. LEXIS 12763
(N.D. Cal. Feb. 19, 2009)....2, 4

*Rx for Fleas v. Zarro*,
No. 93 Civ. 0233 (SWK), 1994 U.S. Dist. LEXIS 11107
(S.D.N.Y. Aug. 9, 1994)....5, 6

*Wade Williams Distribution, Inc. v. ABC Inc.*,
No. 00 Civ. 5002 (LMM), 2005 U.S. Dist. LEXIS 5730
(S.D.N.Y. Apr. 5, 2005)....6, 7

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4(a)(3)(A)(i)(II)....4, 6
§78u-4(a)(3)(B)(i)....4
§78u-4(a)(3)(B)(iii)(I)(cc)....4
§78u-4(a)(3)(B)(iii)(II)(bb)....7

Federal Rules of Civil Procedure
Rule 15....6
Rule 15(c)....5, 6
Rule 17(a)....5
Rule 23....3, 4

N.Y. Jud. Ct. Acts Law
§489(1)....4, 8

Snow Capital Investment Partners, L.P. ("Snow Capital") respectfully submits this reply memorandum of law in further support of its motion for reconsideration of the Court's January 17, 2007 Memorandum and Order appointing Westchester Capital Management, Inc. ("Westchester Capital") as Lead Plaintiff (the "Order") and in response to the opposition filed by Westchester Capital.[1]

## I. PRELIMINARY STATEMENT

Westchester Capital cannot legitimately dispute that, at the time of the statutory deadline for the filing of motions for appointment as lead plaintiff in this case, it failed to satisfy the requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") in order to be designated the "most adequate plaintiff." Westchester Capital also cannot legitimately dispute that Snow Capital, who is now seeking to be appointed lead plaintiff in place of Westchester Capital, is the movant that had the largest financial interest at that time and that no challenge was made as to Snow Capital's adequacy or typicality.

Despite these irrefutable facts, Westchester Capital is insistent that the Court ignore the statutory framework set out in the PSLRA, ignore the PSLRA's strict deadlines, and, instead, allow Westchester Capital to belatedly obtain an assignment of the claims of its clients who were the actual purchasers of the relevant IMAX securities (and to whom Westchester Capital served as an investment advisor) and thereby "cure" the defect in its original motion for lead plaintiff.

To support its argument, Westchester Capital relies on a number of cases in which an investment advisor, such as itself, was allowed to belatedly cure the defect in its status as a ***plaintiff***. *See, e.g., Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997); *In re Vivendi Universal, S.A. Secs. Litig.*, No. 02 Civ. 5571 (RJH) (HBP), slip op. (S.D.N.Y. Mar. 31,

---

[1] "Westchester Capital Mem. at __" refers to pages of Westchester Capital's Memorandum of Law in Opposition to Snow Capital Investment Partners, L.P.'s Motion for Reconsideration of this Court's January 17, 2007 Order Appointing Westchester Capital Management, Inc. as Lead Plaintiff, dated April 24, 2009.

2009); *Northstar Fin. Advisors, Inc. v. Schwab Invs., et al.,* No. C-08-4119 SI, 2009 U.S. Dist. LEXIS 12763 (N.D. Cal. Feb. 19, 2009). While the courts in those cases allowed the ***plaintiff*** the opportunity to cure its standing defect, notably, none of those cases dealt with a ***lead plaintiff*** who must be appointed by the Court pursuant to certain statutory criteria. In fact, the one case that actually addressed the exact issue that this Court now faces –*In re SLM Corporation Securities Litigation*, No. 08 Civ. 1029(WHP), 2009 U.S. Dist. LEXIS 35401 (S.D.N.Y. Apr. 1, 2009) – is downplayed by Westchester Capital as simply being in error, *see* Westchester Capital Mem. at 9, and without analysis of the relevant caselaw. *See id.* at 12. Westchester Capital is wrong. Indeed, as Judge Pauley held in *In re SLM*, and as numerous other courts have held, the deadline for seeking appointment as lead plaintiff is strictly enforced and cannot simply be cured by an investor who was ineligible to be appointed as lead plaintiff at the time of the motion deadline set forth in the PSLRA.

Regardless, even assuming, *arguendo*, that the Court was to allow Westchester Capital to cure its standing defect, Westchester Capital would still be an inadequate lead plaintiff since it will be subject to a unique defense that it did not have any financial interest at the time of the filing of the motions for appointment as lead plaintiff and only now received an assignment of a financial interest – an assignment which appears to violate New York law. Indeed, this is not just a speculative argument, but, as the Court is aware, Defendants have already opposed Westchester Capital's motion for certification as a class representative based on its status as an investment advisor and its belated assignment. *See* IMAX Mem. at 12-14; *see also* PwC Mem. at 4-6.[2]

Recognizing the precarious state of its lead plaintiff title, and in a final effort to salvage a position for itself in this case, Westchester Capital requests that Steelworkers Pension Trust

---

[2] "IMAX Mem. at __" refers to pages of the Memorandum of Law in Support of Defendants IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce and Kathryn A. Gamble's Opposition to Plaintiffs' Motion for Class Certification, dated Febraury 23, 2009; "PwC's Mem. at __" refers to Defendant PricewaterhouseCooper LLP's ("PwC") Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Opposition to Class Certification"), dated February 23, 2009.

("Steelworkers"), a movant with an admitted smaller financial interest than Snow Capital, be appointed as the new lead plaintiff in the place of Westchester Capital. The PSLRA provides, however, that the Court shall appoint as lead plaintiff the movant that has the ***largest*** financial interest and otherwise satisfies the requirements of Rule 23, which is what Snow Capital represents, ***not the second largest*** financial interest, which is what Steelworkers represents. Moreover, Steelworkers' actions to date in this action do not lend any support to its appointment as a lead plaintiff. While Steelworkers may have been included in the amended complaint and had one of its representatives sit for a deposition, its failure to alert the Court to the standing concerns about Westchester Capital – both after the *W.R. Huff* decision by the Second Circuit and now – demonstrates that it is not actively litigating this action on behalf of the Class and is not acting in the best interests of the Class. Moreover, it appears that Steelworkers' representative at the deposition had little knowledge of, and involvement in, the class action and could not respond to "[e]ven the simplest questions" regarding this action. IMAX Mem. at 26. Thus, based on the current record, it appears that Steelworkers has not been acting as a proper advocate for the Class, as it should have been, and certainly has not been an active participant in prosecuting this action, as it claims to have been.

Accordingly, for these reasons, and as set forth in Snow Capital's prior submissions, it is respectfully submitted that the Court grant Snow Capital's motion for reconsideration, appoint it as lead plaintiff and approve of its selection of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as lead counsel.

## II. ARGUMENT

### A. An Investor Must Have Standing at the Time that it Seeks to Be Appointed as a Lead Plaintiff

Any investor seeking to be appointed as lead plaintiff must satisfy certain statutory criteria set forth in the PSLRA. Specifically, the PSLRA prescribes that a party seeking to be named lead plaintiff must timely move the court to be appointed, must have standing as a member of the

purported class, and must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II); 15 U.S.C. §78u-4(a)(3)(B)(i); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Any motion for lead plaintiff must be made "not later than 60 days after the date on which the notice [advising class members of the pendency of the action] is published." 15 U.S.C. §78u-4(a)(3)(A)(i)(II). Accordingly, a party's lack of standing at such time is fatal to its ability to be named lead plaintiff.

It cannot be disputed that Westchester Capital did not have standing to commence this action at the time that it sought and obtained appointment as lead plaintiff. This lack of standing cannot now be resuscitated through an after-the-fact assignment that purportedly confers on Westchester Capital the right to be a party to this action. Indeed, Westchester Capital cannot be retroactively granted standing that it indisputably did not have at the outset of this litigation.

Importantly, none of the cases relied on by Westchester Capital suggest otherwise. While Westchester Capital insists that two post-*W.R. Huff* decisions –*Vivendi*, No. 02 Civ. 5571, slip op.[3] and *Northstar*, 2009 U.S. Dist. LEXIS 12763[4] – have allowed a post-filing assignment to cure standing defects, those cases are inapposite. Significantly, those decisions involved ***plaintiffs*** who had standing defects, not ***lead plaintiffs*** who are required to satisfy the statutory requirements of the PSLRA in order to serve in that capacity. *See Vivendi*, No. 02 Civ. 5571 (RJH) (HBP) (complaint was filed on behalf of individual plaintiffs – not as a class action – and was therefore not subject to the lead plaintiff provisions of the PSLRA); *Northstar*, 2009 U.S. Dist. LEXIS 12763 (complaint alleged violations of the Investment Company Act of 1940, which is not governed by the PSLRA).[5]

---

[3] Westchester Capital Mem. at 3, 19, 13, and annexed as Exhibit B to the Declaration of Jill S. Abrams, submitted in conjunction therewith.

[4] Westchester Capital Mem. at 9-13.

[5] The *Northstar* case also did not concern an assignment in New York and therefore was not in violation of New York's anti-champerty statute, N.Y. Jud. Ct. Acts Law § 489(1).

Indeed, the one court that has had an opportunity to consider whether a post-filing assignment may cure a lead plaintiff's lack of standing in an action governed by the PSLRA held that the assignment did not resolve the lead plaintiff's lack of standing at the time of the filing of the lead plaintiff motions and that the lead plaintiff must be replaced. *See In re SLM*, 2009 U.S. Dist. LEXIS 35401, at *3 (finding that under *W.R. Huff*, investment advisor Westchester Capital did not have Article III standing at the time of its appointment as lead plaintiff and could not belatedly cure this defect).

The situation here is no different. In fact, the lead plaintiff that was replaced in *In re SLM* is the same lead plaintiff that is seeking to be replaced here, namely Westchester Capital. As such, Westchester Capital can no longer serve as lead plaintiff in this action and cannot be permitted to now cure its lack of standing.

**B. Westchester Capital Cannot Belatedly Cure Its Lack of Standing**

Westchester Capital argues that, notwithstanding the requirements of Article III and the PSLRA, Rules 17(a) and 15(c) of the Federal Rules of Civil Procedure allow it to cure the defects in its standing as lead plaintiff. *See* Westchester Capital Mem. at 14-17. In essence, Westchester Capital asks for this Court's endorsement of the assignment of its clients' claims that Westchester Capital did not have when this litigation commenced and when it sought appointment as lead plaintiff. Westchester Capital's argument and corresponding request must be rejected.

At the outset, and contrary to what Westchester Capital claims, Rules 17(a) and 15(c) simply do not afford such an approval procedure and the cases relied on by Westchester Capital are inapposite. For example, in *Rx for Fleas v. Zarro*, No. 93 Civ. 0233 (SWK), 1994 U.S. Dist. LEXIS 11107 (S.D.N.Y. Aug. 9, 1994), *see* Westchester Capital Mem. at 15, one of the individual defendants proposed counterclaims against the plaintiff corporation and two of its officers relating to distributorship agreements between the plaintiff and four non-party corporations established by the individual defendant and others. *See* 1994 U.S. Dist. LEXIS 11107, at *1, *5-*6. Plaintiff argued

that the individual defendant lacked standing to assert his counterclaims since the four corporate entities – not the individual defendant – were the proper plaintiffs to those claims. *See id.* at *6.

The court in *Rx* allowed the individual defendant to add the four corporations as parties to the counterclaims, subject to analysis as to whether the proposed counterclaims were timely under the applicable statutes of limitation or meet the prerequisites required for relation back under Rule 15(c). Ultimately, without the need of addressing the relation back analysis under Rule 15, the court determined that the counterclaims were timely asserted and, therefore, the four corporations could be added as parties to cure any possible standing issues. The decision in *Rx*, involving the amendment of a pleading and the addition of necessary parties, has no bearing on the issue before this Court. Here, Westchester Capital does not seek to add a party or remedy a statute of limitations problem. Rather, Westchester Capital seeks to retroactively present itself with standing for the period of time that the PSLRA allows for appointment of a lead plaintiff in this action. The PSLRA, however, is very clear about the strictness of its deadlines and does not allow for late-filed motions. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II); *see also In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 138 (S.D.N.Y. 2007).

Westchester Capital further argues that courts in this District have allowed for the post-filing assignment of claims for the purposes of curing a standing defect. *See* Westchester Capital Mem. at 16. However, both cases cited by Westchester Capital for this proposition –*Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315, 317-19 (S.D.N.Y. 1996) and *Wade Williams Distribution, Inc. v. ABC Inc.*, No. 00 Civ. 5002 (LMM), 2005 U.S. Dist. LEXIS 5730, at *4 (S.D.N.Y. Apr. 5, 2005) – are not only factually distinct, but they were also previously distinguished and found to be non-persuasive by Judge Pauley in *In re SLM*. *See In re SLM*, 2009 U.S. Dist. LEXIS 35401, at *8-*10. *Intimo* and *Wade Williams* are both copyright infringement cases and are unique in that regard. In *Wade Williams*, the court held that a plaintiff could pursue a copyright infringement lawsuit filed before an assignment, as long as the following conditions are met: (a) the assignment occurs before trial; (b) there is no dispute between the assignee and assignor as to who may bring the claim; and (c)

defendant suffers no prejudice. *See* 2005 U.S. Dist. LEXIS 5730, at *4; *see also Intimo*, 948 F. Supp. at 317-19 (same). Copyright infringement cases are unique in that an assignee retains standing to sue for infringement that is alleged to have occurred after the assignment of rights to the copyright. The assignor, conversely, maintains its standing to sue for infringement that is alleged to have occurred pre-assignment, unless the assignment explicitly confers the pre-assignment infringement claim. *See id.* at 317.

Clearly, the *Wade Williams* and *Intimo* decisions are limited to trademark infringement matters and, in particular, limited to facts which allow for the amendment of an existing assignment to refer explicitly to claims for prior infringement. *See Wade Williams*, 2005 U.S. Dist. LEXIS 5730, at *4; *Intimo*, 948 F. Supp. at 318-19 (reasoning that if the court did not allow the assignment it would lead to duplicative litigation as plaintiff would proceed with the post-filing assignment claims and then commence a separate litigation for the pre-assignment infringement claims). A decision as to whether a post-filing assignment can retroactively confer standing on a lead plaintiff, therefore, cannot be gleaned from the *Wade Williams* or *Intimo* cases. This is especially so in a case, such as here, in which the application of the PSLRA mandates that a plaintiff have standing at the time of the lead plaintiff appointment.

### C. At a Minimum, Westchester Capital Should Not Be Allowed to Serve as Lead Plaintiff Since it is Subject to Unique Defenses

Even assuming, *arguendo*, that Westchester Capital should be allowed to cure its standing defect, it would nonetheless still be an inadequate lead plaintiff since it is subject to unique defenses. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb) (stating that the presumption afforded to the "most adequate plaintiff" can be rebutted upon a showing that such plaintiff is "subject to unique defenses that render such plaintiff incapable of adequately representing the class"). Indeed, the issue here is not that Westchester Capital ***may*** be subject to a unique defense – it already is. In their Opposition to Class Certification, Defendants opposed the certification of Westchester Capital as a class representative on the basis that it cannot serve in a representative capacity under *W.R. Huff*. *See*

IMAX Mem. at 12; *see also* PwC Mem. at 5 (challenging the adequacy of Westchester Capital as a class representative on the grounds that, as an investment advisor, it did not have legal title to its clients claims ***at the time*** it was appointed as lead plaintiff). Defendants argued that Westchester Capital is an atypical plaintiff and that the unique defenses the investment advisor is subject to will have a prejudicial effect on remaining class members. *See* PwC Mem. at 4-8; *see also* IMAX Mem. at 11-16. Defendants further argued that any post-filing assignment was "too late" to form standing for Westchester Capital in this action. *See* PwC Mem. at 5-6; *see also* IMAX Mem. at 13-14.

While Westchester Capital tries to downplay these concerns by arguing that the standing issue that now subjects it to unique defenses arose through no fault its own, *see* Westchester Capital Mem. at 2, such an argument does not make the unique defense any less unique. Westchester Capital did not possess the requisite legal title over its clients' claims at the outset of this litigation and now, for the sole purposes of participating in this litigation, Westchester Capital sought an assignment of those claims – and it appears that it only did so after Defendants requested such information from it. *See* IMAX Mem. at 12. The timing of the assignment to Westchester Capital in this instance unequivocally substantiates Westchester Capital's intent to utilize the assignment for litigation purposes only, *see* Snow Capital Mem. at 10-11[6], which is in direct contravention of New York's anti-champerty statute, N.Y. Jud. Ct. Acts Law § 489(1).

Westchester Capital argues that since this litigation was already ongoing at the time of the assignment in question, it could not have been performed for the purposes of "bringing" this action and thus does not violate New York's anti-champerty statue. Westchester Capital Mem. at 21. Westchester Capital's argument misstates the language of the statute, as well as Snow Capital's

---

[6] "Snow Capital Mem. at __" refers to pages of the Memorandum of Law in Support of Snow Capital Investment Partners, L.P.'s Motion for Reconsideration of This Court's January 17, 2007 Order Appointing Westchester Capital Management, Inc. as Lead Plaintiff, dated April 3, 2009; "Rosenfeld Ex. __" refers to exhibits attached to the accompanying Declaration of David A. Rosenfeld.

position that the assignment was effectuated for the sole purpose of "participating in this lawsuit" and the sole intent of "pursuing this action against IMAX." Snow Capital Mem. at 10-11. Indeed, the full language of the anti-champerty statute prohibits the taking of an assignment "for the purpose of bringing an action ***or proceeding thereon***." *Id*. at 10 (emphasis added).

It is undisputed that Westchester Capital took the assignment for the purposes of attaining standing in this action. Indeed, Westchester Capital acknowledged that the assignment was necessary to allow it to proceed in this litigation against IMAX. *See* Rosenfeld Ex. E-F (Westchester Capital's February 26 and March 6, 2009 letters to this Court, respectively). The assignment only became necessary when Westchester Capital's lack of standing was challenged. Plainly, the assignment was taken to allow Westchester Capital to *proceed* herein against IMAX and, therefore, the assignment is in violation of New York law. Accordingly, this Court should render the assignment void.

Moreover, the circumstances surrounding the assignment of Westchester Capital's clients' claims to the investment advisor – *e.g.*, whether the post-filing assignment retroactively cures the standing issue or whether the assignment is even valid under New York law – raise significant adequacy and typicality questions regarding Westchester Capital's representation of the Class. The assignment likewise creates further unique defenses that Westchester Capital is (and has become) subject to. In light of these concerns, Westchester Capital should not be permitted to continue to serve as Lead Plaintiff in this action

### D. Snow Capital Should Be Appointed Lead Plaintiff and its Choice of Counsel Should be Approved as Lead Counsel

With the removal of Westchester Capital as Lead Plaintiff, Snow Capital is the movant with the largest financial interest and should immediately be appointed Lead Plaintiff and assume the role of representing the interests of the class.

Notwithstanding the irrefutable and unchallenged fact that Snow Capital is adequate to be Lead Plaintiff in this action and has the next largest financial interest, Westchester Capital asks this

Court to appoint Steelworkers, an investor with a financial interest that is smaller than Snow Capital, as lead plaintiff in the event that the Court is inclined to appoint a new lead plaintiff. Westchester Capital's request is highly unusual and suspect, particularly in light of the fact that seven investors had initially sought to be appointed lead plaintiff in this matter and not a single opposition questioned Snow Capital's adequacy or typicality as Lead Plaintiff.

To the contrary, the adequacy of Steelworkers – the investor Westchester Capital suggests as its replacement for lead plaintiff – ***has*** been called into question. In fact, most recently, Defendants challenged the adequacy of Steelworkers in opposing their motion for Class Certification by contending that, at Steelworkers' deposition, the representative had little knowledge of, and involvement in, the class action and that "[e]ven the simplest questions to Steelworkers elicited a string of 'I don't know' or 'I'm not sure.'" IMAX Mem. at 26. Thus, it is surprising that Westchester Capital now contends that "Steelworkers has a solid working knowledge of this case" while Snow Capital would be a "stranger" to this litigation. Based on the current record, and despite Westchester Capital's representations, it appears that Steelworkers is the one who is nothing more than a stranger. Moreover, neither Steelworkers nor its counsel has done anything to apprise the Court of the legitimate concerns regarding Westchester Capital's standing, thereby evidencing that they are not acting in the best interests of the Class, but rather in their own self interests.

Accordingly, Snow Capital, which has the largest financial interest in this litigation, and who is otherwise adequate and typical, is the "most adequate plaintiff" and its motion should be granted in full.

## III. CONCLUSION

For the reasons set forth above, Snow Capital respectfully requests that the Court grant reconsideration of the Order, appoint it as Lead Plaintiff and approve its selection of Coughlin Stoia as Lead Counsel.

DATED: May 1, 2009

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARK S. REICH

*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

*Counsel for Snow Capital Investment Partners, L.P.*

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on May 1, 2008, I caused a true and correct copy of the attached:

> Reply Memorandum of Law in Further Support of Snow Capital Investment Partners, L.P.'s Motion for Reconsideration of this Court's January 17, 2007 Order Appointing Westchester Capital Management, Inc. as Lead Plaintiff, and in Response to the Opposition of Westchester Capital Management, Inc.

to be served electronically on all counsel registered for electronic service for this case.

/s/ *David A. Rosenfeld*
David A. Rosenfeld