USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/29/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

In re IMAX SECURITIES LITIGATION

**MEMORANDUM AND ORDER**

Master File 06 Civ. 6128 (NRB)

-----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

By Memorandum and Order dated January 17, 2007 (the "January 2007 Order"), we appointed Westchester Capital Management, Inc. ("Westchester Capital") lead plaintiff in this securities class action. Plaintiff Snow Capital Investment Partners, L.P. ("Snow Capital"), which also sought to be lead plaintiff at that time, now moves for reconsideration of the January 2007 Order, arguing that under the Second Circuit's reasoning in its recent decision of W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP, 549 F.3d 100 (2d Cir. 2008), Westchester Capital lacks Article III standing because it did not suffer an injury-in-fact. For the reasons set forth below, Snow Capital's motion for reconsideration is granted and it is appointed lead plaintiff in this matter, and the law firm Coughlin Stoia Geller Rudman & Robbins LLP is designated as lead counsel.

**BACKGROUND**

This is a securities fraud class action under Sections 10(b) and 20(1) of the Securities Exchange Act, 15 U.S.C. §§ 78j and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5 brought on behalf of all persons who purchased or acquired common stock in IMAX Corporation ("IMAX") between February 27, 2003 and July 20, 2007. In essence, plaintiffs allege that IMAX, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble and PricewaterhouseCoopers LLP issued materially false and misleading statements concerning IMAX's accounting of revenue from the sale of movie theater systems.

The Private Securities Litigation Reform Act ("PSLRA") provides that a court "shall appoint as lead plaintiff the member . . . of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members" -- in other words, the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In our January 2007 Order, we appointed Westchester Capital as lead plaintiff and Abbey Spanier Rodd & Abrams, LLP as lead counsel after concluding that Westchester Capital -- suing as attorney-in-fact for five of its client investment funds -- had the largest financial interest in the case and that it satisfied the requirements for lead plaintiff set forth in Rule 23 of the Federal Rules of Civil Procedure. Kaplan v. Gelfond, 240 F.R.D. 88, 96 (S.D.N.Y. 2007). We also observed at that time that Snow Capital had the second

largest financial interest. Defendants then made a motion to dismiss, which we denied on September 16, 2008. The parties subsequently began discovery pertaining to plaintiffs' substantive claims and their pending motion for class certification, which was filed on November 3, 2008.

On December 3, 2008, the Second Circuit issued Huff, a federal securities fraud case in which an investment advisor to institutional investors sued on behalf of certain of its clients. The defendant in that case challenged Huff's Article III standing, and the district court denied the motion. On appeal, the Second Circuit explained that because Huff had "not alleged in its complaint that it suffered any injury . . . the dispositive question is whether Huff, as the named plaintiff, can demonstrate an 'injury-in-fact' through some other means, such as the assignment of claims." Huff, 549 F.3d at 107. The Court of Appeals determined that, under the Supreme Court's holding in Sprint Communications Co., L.P. v. APC Services, Inc., 128 S. Ct. 2531 (2008), "the minimum requirement for injury-in-fact is that the plaintiff have legal title to, or a property interest in, the claim." Huff, 549 F.3d at 108. As such, while an "assignee who holds legal title to an injured party's claim has constitutional standing to pursue the claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor," id. at 107, a "mere power-of-attorney . . . does not confer standing to

sue in the holder's own right because a power-of attorney does not confer an ownership interest in the claim," id. at 108.

Following the Second Circuit's decision in Huff, Westchester Capital executed assignments of claim with its client investment funds on whose behalf it is suing, assigning "all rights, legal title tender and interest in the Funds' claims for damages, demands, or causes of action relating to IMAX." (See April 3, 2009 Declaration of David A. Rosenfeld In Support of Snow Capital's Motion for Reconsideration of this Court's January 17, 2007 Order Appointing Westchester Capital Management, Inc. at Lead Plaintiff Ex. C.) In spite of these assignments, on February 18, 2009 Snow Capital submitted a pre-motion letter to the Court pursuant to the Court's individual practices arguing that Westchester Capital lacks Article III standing based on the Second Circuit's reasoning in Huff. Because Huff appeared to raise genuine questions about whether Westchester Capital is the most adequate class member to serve as lead plaintiff, we denied the pending motion for class certification without prejudice and set an expedited briefing schedule for Snow Capital's motion for reconsideration of our January 2007 Order.

## DISCUSSION

### I. Westchester Capital's Adequacy as Lead Plaintiff

Courts have a "continuing duty to monitor whether lead plaintiffs are capable of adequately protecting the interests of

the class members." In re NYSE Specialist Sec. Litig., 240 F.R.D. 128, 133 (S.D.N.Y. 2007) (internal quotation marks omitted). As such, despite the absence of explicit authorization under the PSLRA or Rule 23, courts have the "ability to consider motions to disqualify, remove, withdraw, substitute, and add lead plaintiffs throughout the litigation of a securities class action." Id.

In support of its motion for reconsideration here, Snow Capital refers us to In re SLM Corp. Securities Litigation, Master File No. 08 Civ. 1029(WHP), 2009 WL 969934 (S.D.N.Y. Apr. 1, 2009). In that securities class action, like in this case, Westchester Capital had been serving as lead plaintiff, suing on behalf of two of its client funds. Based on Huff, Judge Pauley selected a new lead plaintiff to replace Westchester Capital, despite Westchester Capital's attempt to cure its lack of standing by obtaining assignments of claim. In setting forth his decision, Judge Pauley explained:

> Huff now makes clear that Westchester Capital did not have Article III standing at the time this Court appointed it lead plaintiff. In addition, the majority of courts to allow an assignment of claims after the onset of litigation do so only where plaintiff had constitutional standing on another claim. That is not the situation here. Therefore, Westchester Capital no longer satisfies the adequacy or typicality requirement [of Rule 23] -- it faces unique legal issues that other class members do not. Even if this Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise. That

> uncertainty requires this Court to proceed with caution.

Id. at *4.[1]

Westchester Capital does not dispute that it lacked Article III standing at the time this litigation commenced, but instead argues -- as it did in In re SLM Corp. -- that any defect in its standing can be cured through the assignments of claim it subsequently executed with its client funds. However, as Judge Pauley noted, "[t]o the extent courts allow assignment of a claim after litigation commences, the plaintiff generally has Article III standing on at least one other claim at the time the action was filed." In re SLM Corp., 2009 WL 969934, at *3 (collecting cases); see also Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997) (holding that where plaintiff brought action on behalf of itself and certain of its shareholders, district court should have allowed substitution of shareholders with respect to their own claims because plaintiff did not have standing on those claims).[2]

---

[1] On April 16, 2009, Westchester Capital moved pursuant to Rule 5 of the Federal Rules of Appellate Procedure for leave to appeal Judge Pauley's order. On June 18, 2009, the Court of Appeals issued an order stating that it was construing Westchester Capital's motion as a petition for writ of mandamus and that the case would be assigned to a new panel in the ordinary course.

[2] Westchester Capital cites to two copyright infringement cases where the district court did permit assignments after the outset of the litigation even where the plaintiffs did not have Article III standing on another claim. (See Westchester Capital Management, Inc.'s Memorandum of Law in Opposition to Snow Capital Investment Partners, L.P.'s Motion for Reconsideration of this Court's January 17, 2007 Order Appointing Westchester Capital Management, Inc. as Lead Plaintiff ("Opp.") at 16 (citing Wade Williams Distribution, Inc. v. Am. Broad. Co., No. 00 Civ. 5002 (LMM), 2005 WL 774275, at *4 (S.D.N.Y. Apr. 5, 2005); Intimo, Inc. v. Briefly Stated, Inc., 948 F. Supp. 315, 317-19 (S.D.N.Y. 1996)).) However, we agree with Judge Pauley that "copyright infringement is an entirely different judicial landscape because an assignee

In any case, even were we to conclude that Westchester Capital's lack of standing has been addressed through the assignments of claim, we are still required to consider whether it satisfies the typicality and adequacy requirements of Rule 23. In evaluating a prospective lead plaintiff's typicality, we must consider whether that plaintiff has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). With respect to the adequacy prong, we must consider whether the lead plaintiff's claims conflict with those of the class and whether class counsel is qualified and able to conduct the litigation. See In re SLM, 2009 WL 969934, at *3.

We agree with Judge Pauley that irrespective of whether the assignments of claim cure Westchester Capital's deficient Article III standing, Westchester Capital now "faces unique legal issues that other class members do not." Id. at *4. Were we to permit it to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal.[3]

---

has standing to sue for infringement that occurs after the assignment of rights to the copyright, but the assignor retains standing to sue for pre-assignment infringement unless the assignment explicitly 'confer[s] the right to a claim for prior infringement.'" In re SLM, 2009 WL 969934, at *3 (quoting Intimo, 948 F. Supp. at 317). Moreover, neither of these cases was a class action.

[3] We note that defendants' oppositions to Westchester Capital's motion for class certification both attacked Westchester Capital for lack of standing in light of Huff. (See Memorandum of Law in Support of Defendants IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce and

There seems little reason for us to subject the class members to such a risk. Accordingly, Snow Capital's motion for reconsideration is granted, and we proceed to the question of which other class member should replace Westchester Capital as lead plaintiff.[4]

**II. Appointment of a New Lead Plaintiff**

Our January 2007 Order sets forth the general legal framework for selecting a lead plaintiff under the PSLRA. Essentially, a plaintiff is presumed to be the most adequate plaintiff if it: (1) has either filed a complaint or made a motion in response to the publication of notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). We concluded at that time that all prospective lead plaintiffs had satisfied the first of these requirements. Kaplan, 240 F.R.D. at 92-93.

---

Kathryn A. Gamble's Opposition to Plaintiffs' Motion for Class Certification ("IMAX Class Cert. Opp.") at 12-14; Defendant PricewaterhouseCoopers LLP's, An Ontario Limited Liability Partnership, Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification at 4-6.)

[4] Westchester Capital cites to three other post-Huff cases where courts have held that assignments of claim could cure Article III standing issues. See In re Adelphia Commc'ns Corp. Sec. Litig., No. 03 MDL 1529(LMM), 2009 WL 1490599, at *5 (May 21, 2009) (following the Second Circuit's remand in Huff, ordering that Huff's clients be substituted as plaintiffs pursuant to Rules 17(a) and 15); In re Vivendi Univ., S.A. Sec. Litig., No. 02 Civ. 5571(RJH), 605 F. Supp. 2d 570, 584-85 (S.D.N.Y. 2009) (permitting real parties in interest to ratify plaintiffs' lawsuit or substitute for plaintiffs pursuant to Rule 17(a)); Northstar Fin. Advisors, Inc. v. Schwab Invs., 609 F. Supp. 2d 938, 942 (N.D. Cal. 2009) (finding that assignment of claims would cure standing deficiency). However, as Snow Capital notes, none of these cases involves a lead plaintiff in a class action subject to the requirements of Rule 23.

With regard to the second prong, we determined that using the longest of the class periods alleged prior to consolidation (October 28, 2004 to August 9, 2006), Snow Capital had the largest financial interest in the case after Westchester Capital, and that Snow Capital (and Westchester Capital) "purchased significantly more shares of IMAX stock and sustained significantly greater losses than any of the other movants." Id. at 93 n.5. However, Steelworkers Pension Trust ("Steelworkers"), in its brief submitted in opposition to the instant motion, suggests that under the class period now alleged in the operative Consolidated Amended Class Action Complaint (February 27, 2003 to July 20, 2007, the "operative class period"), "Snow Capital may even have a gain in the operative Class Period which would negate its own standing to pursue the Class' claims." (Response of Steelworkers Pension Trust to Snow Capital Management's Motion for Reconsideration of the Court's Lead Plaintiff Order Dated January 17, 2007 at 7 n.5.)

When, in response to this suggestion, we asked Steelworkers and Snow Capital what each of their losses was during the operative class period, Snow Capital's counsel represented that Snow Capital's total loss was the same under the operative class period as it had originally asserted -- $481,327. (June 23, 2009 Letter from David A. Rosenfeld, Esq.) Steelworkers reported that its losses during the operative class period were $366,732 -- down from the $428,445 loss it claimed in its original motion to

be appointed lead plaintiff.[5] (June 23, 2009 Letter from Douglas M. Risen, Esq.) As such, it appears that both under the longest of the class periods alleged at the time of our January 2007 Order and under the operative class period, Snow Capital has suffered the greatest loss.

Finally, we reach the question of whether Snow Capital satisfies Rule 23's typicality and adequacy requirements, as set forth above. Both Westchester Capital and Steelworkers contend that (in the event we find that Westchester Capital cannot continue as lead plaintiff), Steelworkers -- and not Snow Capital -- should serve as lead plaintiff because Steelworkers' counsel "assisted in the preparation of the Complaint, has been involved in the class certification proceedings, and Steelworkers and its investment advisor have both produced documents and been deposed. Steelworkers has a solid working knowledge of this case and it would be better prepared to enter the litigation at this time." (Opp. at 22.)

We find this argument unpersuasive and see no reason to disregard the PSLRA's presumption that the class member with the largest financial interest should serve as lead plaintiff. Here, that class member is Snow Capital.[6] We likewise see no reason

---

[5] In a subsequent letter, counsel for Steelworkers argued that "Snow Capital has still not proffered an iota of evidence to support its assertion that its financial interest of $481,327 for the original class period 'remains unchanged.'" (June 24, 2009 Letter from Douglas M. Risen, Esq.) However, Steelworkers has given us no reason to disbelieve Snow Capital's counsel's representations to the Court on this point.

[6] Indeed, Steelworkers' adequacy is apparently a point of dispute. In their

why Snow Capital's experienced law firm, Coughlin Stoia Geller Rudman & Robbins LLP, should not represent the class.

**CONCLUSION**

For the reasons stated above, Snow Capital's motion for reconsideration is granted and it is appointed lead plaintiff in this matter, and the law firm Coughlin Stoia Geller Rudman & Robbins LLP is designated as lead counsel. Within ten (10) days, counsel for lead plaintiff and defendants should confer and submit a joint status letter setting forth how and on what schedule they intend to proceed with class certification and substantive discovery in this matter.

Dated: New York, New York
June 29, 2009

Naomi Reice Buchwald

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

class certification opposition, defendants argued that at Steelworkers' deposition, the representative was not knowledgeable about the class action and that "[e]ven the simplest questions to Steelworkers elicited a string of 'I don't know' or 'I'm not sure.'" (Reply Memorandum of Law in Further Support of Snow Capital Investment Partners, L.P.'s Motion for Reconsideration of This Court's January 17, 2007 Order Appointing Westchester Capital Management, Inc. as Lead Plaintiff, and in Response to the Opposition of Westchester Capital Management, Inc. at 10 (citing IMAX Class Cert. Opp. at 26).)

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for Westchester Capital Management, Inc.
Arthur N. Abbey, Esq.
Jill S. Abrams, Esq.
Richard B. Margolies, Esq.
Grace E. Parasmo, Esq.
Abbey Spanier Rodd & Abrams, LLP
212 E. 39th Street
New York, NY 10016

Counsel for Snow Capital Investment Partners, L.P.
David A. Rosenfeld, Esq.
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road
Suite 200
Melville, NY 11747

Counsel for Steelworkers Pension Trust
Sherrie R. Savett, Esq.
Phyllis M. Parker, Esq.
Douglas M. Risen, Esq.
Russell D. Paul, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

Counsel for IMAX Defendants
Lewis J. Liman, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

Counsel for PricewaterhouseCoopers LLP
Jennifer L. Conn, Esq.
M. Byron Wilder, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166