UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                  :

IN RE IMAX CORPORATION            :       Case No. 06 Civ. 6128
SECURITIES LITIGATION             :       (NRB)
                                    :       ECF Case
                                    :

-------------------------------------------------------------------- X

## Memorandum of Law in Support of Defendants IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce and Kathryn A. Gamble's Opposition to Snow Capital Investment Partners, L.P.'s Motion for Class Certification

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, and Kathryn A. Gamble

Of Counsel:
Lewis J. Liman

THIS MEMORANDUM CONTAINS CONFIDENTIAL INFORMATION.  PURSUANT TO ¶ 7 OF THE STIPLUATION AND ORDER GOVERNING CONFIDENTIAL MATERIAL, ENTERED NOVEMBER 3, 2008, PORTIONS OF THE ELECTRONICALLY-FILED MEMORANDUM HAVE BEEN REDACTED AND AN UNREDACTED COPY HAS BEEN FILED WITH THE COURT UNDER SEAL

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT.................................................................................................................... 4

I.    CLASS CERTIFICATION IS PROPERLY DENIED WHERE THE CLASS
      REPRESENTATIVE IS NOT TYPICAL OR ADEQUATE AND THE
      CLASS ACTION IS NOT SUPERIOR TO OTHER METHODS............................ 4

II.   SNOW LACKS STANDING AND IS NOT TYPICAL OR ADEQUATE.............. 4

      A.    Snow's Interests Are Antagonistic To Those Of The Class .......................... 7

      B.    Snow Has Failed To Vigorously Prosecute The Class Claims...................... 12

      C.    Snow Is An Atypical Investor....................................................................... 15

            1.    Snow Purchased Prior To The Central Alleged
                  Misrepresentations ............................................................................. 16

            2.    Snow Did Not Rely On The Alleged Misrepresentation ................... 17

            3.    Snow Did Not Rely On Market Efficiency......................................... 18

III.  SNOW'S CLASS ACTION IS NOT "SUPERIOR" TO THE ALREADY-
      CERTIFIED SECURITIES CLASS ACTION IN CANADA................................... 18

      A.    There Is Already A Certified Canadian Class Action.................................... 19

      B.    The U.S. Class Action Is Not Superior ......................................................... 20

      C.    U.S. Courts Have Found That Canada Provides An Adequate Forum For
            Relief............................................................................................................. 22

      D.    It Is Irrelevant That The U.S. Action Names PwC And Has A Longer
            Class Period .................................................................................................. 23

IV.   THE CLASS CAN NOT BE CERTIFIED AS PLED ............................................. 25

CONCLUSION............................................................................................................... 26

# TABLE OF AUTHORITIES

Page(s)

## Rules & Statutes

15 U.S.C. § 77z-1(B)(iii) (2010) ................................................................................. 9

Fed. R. Civ. P. 23(a) ................................................................................................. 4

Fed. R. Civ. P. 23(a)(3), (4) ..................................................................................... 4

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 4, 18

Fed. R. Civ. P. 23(b)(3)(A)-(D) ............................................................................... 19

Fed. R. Civ. P. 23(e) ................................................................................................. 22

## Cases

Amchem Prods., Inc. v. Windsor,
521 U.S. 591 (1997) ................................................................................................. 20-21

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,
222 F.3d 52 (2d Cir. 2000) ....................................................................................... 5, 15

Ballan v. Upjohn Co.,
159 F.R.D. 473 (W.D. Mich. 1993) .......................................................................... 10

Berger v. Compaq Computer Corp.,
257 F.3d 475 (5th Cir. 2001) .................................................................................... 5, 6

Canada Life Assurance Co. v. Converium Ruckversicherung,
No. 06 Civ. 3800 (GEB), 2007 WL 1726565 (D.N.J. June 13, 2007) ...................... 22

Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco
Managed Care, L.L.C.,
504 F.3d 229 (2d Cir. 2007) ..................................................................................... 4

Charron v. Pinnacle Group NY LLC,
No. 07 Civ. 6313 (CM), 2010 WL 1752501 (S.D.N.Y. Apr. 27, 2010) ................... 25

Court Awarded Attorney Fees,
108 F.R.D. 237 (Oct. 8, 1985) .................................................................................. 10

Darvin v. Int'l Harvester, Co.,
610 F. Supp. 255 (S.D.N.Y. 1985) ........................................................................... 15

DeYoung v. Beddome,
707 F. Supp. 132 (S.D.N.Y. 1989) ........................................................................... 20, 23

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

Dura Pharm., Inc. v. Broudo,
544 U.S. 336 (2005)..................................................................................................... 18

ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,
553 F.3d 187 (2d Cir. 2009)......................................................................................... 25

Eisen v. Carlisle & Jacquelin,
391 F.2d 555 (2d Cir. 1968).......................................................................................... 5, 20

Fleeger v. Clarkson Co. Ltd.,
86 F.R.D. 388 (N.D. Tex. 1980) ................................................................................... 23

Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
903 F.2d 176 (2d Cir. 1990).......................................................................................... 4-5

Glauser v. Evci Career Colleges Holding Corp.,
236 F.R.D 184 (S.D.N.Y 2006) ................................................................................... 21

Hevesi v. Citigroup Inc.,
366 F.3d 70 (2d Cir. 2003)............................................................................................ 6

Howe v. Goldcorp Invs. Ltd.,
946 F.2d 944 (1st Cir. 1991) ........................................................................................ 23

In re Alstom SA Sec. Litig.,
253 F.R.D. 266 (S.D.N.Y. 2008) ................................................................................. 4

In re Bank of Am. Corp. Sec. Deriv. & ERISA Litig.,
No. 09 MDL 2058 (DC), 2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010)....................... 23

In re Cendant Corp. Litig.,
264 F.3d 201 (3d Cir. 2001).......................................................................................... 6

In re Deutsche Bank AG Sec. Litig.,
No. 09 Civ. 1714 (DAB), 2009 WL 4277202 (S.D.N.Y. Nov. 23, 2009) ................... 6

In re Flag Telecom Holdings, Ltd. Sec. Litig.,
574 F.3d 29 (2d Cir. 2009)............................................................................................ 4

In re Harcourt Brace Jovanovich, Inc. Sec. Litig.,
838 F. Supp. 109 (S.D.N.Y. 1993) .............................................................................. 18

In re IMAX Sec. Litig.,
587 F. Supp. 2d 471 (S.D.N.Y. 2008)........................................................................... 24, 25

In re Initial Pub. Offering Sec. Litig.,
243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................................... 5

In re Initial Pub. Offering Sec. Litig.,
471 F.3d 24 (2d Cir. 2006)............................................................................................ 4

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

In re Lehman Bros. Sec. & ERISA Litig.,
No. 09 MDL 2017 (LAK), 2010 WL 1566860 (S.D.N.Y. Apr. 21, 2010) ............................... 23

In re Monster Worldwide, Inc. Sec. Litig.,
251 F.R.D. 132 (S.D.N.Y. 2008) .................................................................................. 12

In re Omnicom Group, Inc. Sec. Litig.,
597 F.3d 501 (2d Cir. 2010).......................................................................................... 18, 24

In re Prudential Ins. Co. of Am. Sales Practice Litig.,
261 F.3d 355 (3rd Cir. 2001) ....................................................................................... 21

In re Quintus Sec. Litig.,
201 F.R.D. 475 (N.D. Cal. 2001)................................................................................... 6, 7, 11

In re Royal Group Techs. Sec. Litig.,
No. 04 Civ. 9809 (HB), 2005 WL 3105341 (S.D.N.Y. Nov. 21, 2005)................................... 20

In re Safeguard Scientifics,
216 F.R.D. 577 (E.D. Pa. 2003)..................................................................................... 15, 18

Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and
Securitization,
616 F. Supp. 2d 461 (S.D.N.Y. 2009).............................................................................. *passim*

Jaroslawicz v. Safety Kleen Corp.,
151 F.R.D. 324 (N.D. Ill. 1993)..................................................................................... *passim*

Kaplan v. Gelfond,
240 F.R.D. 88 (S.D.N.Y. 2007) ..................................................................................... 24

Karnuth v. Rodale, Inc.,
No. Civ. A. 03-742, 2005 WL 747251 (E.D. Pa. Mar. 30, 2005)............................................ 9

Kline v. Wolf,
702 F.2d 400 (2d Cir. 1983).......................................................................................... 15, 17

Koos v. First Nat'l Bank,
496 F.2d 1162 (7th Cir. 1974) ...................................................................................... 15

Koppel v. 4987 Corp.,
Nos. 96 Civ. 7570, 97 Civ. 1754 (RLC), 1999 WL 608783 (S.D.N.Y. Aug. 11, 1999) .......... 6

Landis v. N. Am. Co.,
299 U.S. 248 (1936).................................................................................................... 22

Lentell v. Merrill Lynch & Co.,
396 F.3d 161 (2d Cir. 2005).......................................................................................... 18, 24

Lewis Tree Serv., Inc. v. Lucent Tech. Inc.,
211 F.R.D. 228 (S.D.N.Y. 2002) ................................................................................... 21

iv

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

Maywalt v. Parker & Parsley Petroleum Co.,
67 F.3d 1072 (2d Cir. 1995)..................................................................... 5, 12

MBA v. World Airways, Inc.,
No. 09-0008-Cv., 2010 WL 807724 (2d Cir. Mar. 10, 2010)...................... 11

Mitchell v. Metro. Life Ins. Co.,
No. 03-Civ-10294 (WHP), 2004 WL 2439704 (S.D.N.Y. Nov. 2, 2004) ............ 21

Mitchell v. Texas Gulf Sulphur Co.,
446 F.2d 90 (10th Cir. 1971) ................................................................. 21

Paraschos v. YBM Magnex Int'l,
130 F. Supp. 2d 642 (E.D. Pa. 2000) ...................................................... 22, 23

Piper Aircraft Co. v. Reyno,
454 U.S. 235 (1981)............................................................................... 20

Ramos v. Patrician Equities Corp.,
765 F. Supp. 1196 (S.D.N.Y. 1991)......................................................... 7

Reiter v. Sonotone Corp.,
442 U.S. 330 (1979)............................................................................... 4

Rocco v. Nam Tai Electronics, Inc.,
245 F.R.D. 131 (S.D.N.Y. 2007) ........................................................... 18

Rolex Employees Ret. Trust v. Mentor Graphics Corp.,
136 F.R.D. 658 (D. Or. 1991).............................................................. 5, 10, 15

Savino v. Computer Credit, Inc.,
164 F.3d 81 (2d Cir. 1998)................................................................... 9, 15, 17

Saylor v. Lindsley,
456 F.2d 896 (2d Cir. 1972).................................................................. 12

Shields v. Wash. BanCorp.,
Civ. A. No. 90-1101 (RCC), 1991 WL 221940 (D.D.C. Oct. 10, 1991)................ 9, 11

Shiring v. Tier Technologies Inc.,
244 F.R.D. 307 (E.D. Va. 2007) ........................................................... 6, 14, 15

Susman v. Lincoln Am. Corp.,
561 F.2d 86 (7th Cir. 1977). ................................................................. *passim*

Swergold v. Lifetime Corp,
No. 93 Civ. 4877 (RPP), 1993 WL 512905 (S.D.N.Y. Dec. 3, 1993) ................ 21

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Capital Inc.,
No. 05 Civ. 1898 (SAS), 2005 WL 2148919 (S.D.N.Y. Sept. 6, 2005).................. 7

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,
546 F.3d 196 (2d Cir. 2008)......................................................................... 4, 18-19

VictoriaTea.com, Inc. v. Cott Beverages, Canada,
239 F. Supp. 2d 377 (S.D.N.Y. 2003) .................................................... 23

Weisman v. Darneille,
78 F.R.D. 669 (S.D.N.Y. 1978........................................................................ 5, 8

Xianglin Shi v. Sina Corp.,
No. 05 Civ. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005)................... 5, 6

Zemel Family Trust v. Philips Int'l Realty Corp.,
205 F.R.D. 434 (S.D.N.Y. 2002) ................................................................. 16

Zylstra v. Safeway Stores, Inc.,
578 F.2d 102 (5th Cir. 1978) ..................................................................... 8

**Other Authorities**

7A Charles A. Wright & Arthur R. Miller,
Federal Practice and Procedure (3d ed. 2008) ............................................ 6, 17, 21

5 James WM Moore Et. Al.,
Moore's Federal Practice (3d ed. 2010).......................................................... 10

S. Rep. 104-98,
1995 U.S.C.C.A.N. 679 (June 19, 1995) ....................................................... 9

H.R. Conf. Rep. 104-369,
1995 U.S.C.C.A.N. 730 (Nov. 28, 1995)......................................................... 9

CONFIDENTIAL
FILED UNDER SEAL

IMAX Corporation ("IMAX" or the "Company"), Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, and Kathryn A. Gamble (together, the "IMAX Defendants"), by counsel, respectfully submit this Memorandum of Law in Opposition to the Motion for Class Certification filed by Snow Capital Investment Partners, L.P. ("Plaintiff" or "Snow").[1]

## PRELIMINARY STATEMENT

Snow's class certification motion presents the Court with two significant issues:

(1) should a class be certified where the proposed class representative (a) has without disclosure, hired                                    as counsel for the litigation; (b) has filed a series of false certifications with the Court; and (c) has interests antagonistic to those of the class; and

(2) whether, even assuming the other requirements of Rule 23 are satisfied, a class action in the United States – particularly prosecuted by such a class representative – "is superior to other available methods for fairly and efficiently adjudicating the controversy" when the purchasers of IMAX stock who have claims in this case are already represented by competent counsel in a global class action lawsuit that, over IMAX's objection, has already been certified in Canada (and where the testimony of a number of witnesses has already been taken).

The IMAX Defendants respectfully submit that the answer to both questions is no and that Snow's motion for class certification should be denied for those reasons, as well as the others set forth in this memorandum.

---

[1]     Richard A. Snow is the founder and President of Plaintiff's investment arm                , and its 30(b)(6) representative at deposition.                                For convenience, we refer to Mr. Snow and Plaintiff interchangeably (and as "he"). All exhibits referred to herein are identified in the June 10, 2010 Declaration of James D. Mathews, Esq.

CONFIDENTIAL
FILED UNDER SEAL

The facts relevant to the first question are as follows:

- At the time of Snow's motion in 2006, Snow represented that he "ha[d] selected [Robbins Geller Rudman & Dowd's predecessor] to serve as lead counsel to the class."

- 

- 

- 

- When he first (unsuccessfully) applied to be appointed lead plaintiff, Snow signed a certification that misrepresented the amount and prices of the IMAX stock he purchased and sold and the investment losses he suffered.

- Snow did not submit a corrected certification until April 29, 2010.

- Snow's second certification falsely stated that Snow had read and authorized the filing of the complaint.

- Although Snow represented to the Court in his Memorandum of Law dated June 23, 2009 that he was "monitoring" the litigation,

- 

- 

- 

- Snow did not purchase IMAX securities after, or in reliance on, the alleged misrepresentations that are at the heart of this case.

- 

2

CONFIDENTIAL
FILED UNDER SEAL

- Snow sold his IMAX stock before any curative statements were made regarding the alleged misrepresentations upon which Snow could have relied.

- 

It is difficult to see how Snow has his own claim for relief, much less that he should be

empowered to resolve the interests of other purchasers of IMAX stock.

> The facts relevant to the second issue are as follows:

- On September 20, 2006, IMAX shareholders filed a complaint in the Ontario Superior Court of Justice, alleging nearly identical claims of misrepresentations and fraud under the Ontario Securities Act ("OSA") and Canadian common law based on allegations substantially identical to those Snow makes here.[2]

- On December 14, 2009, over IMAX's objection, the Ontario Superior Court of Justice certified a global securities class action asserting claims on behalf of investors worldwide who purchased IMAX securities on or after February 17, 2006 and held some or all of those securities on August 9, 2006.

- The Ontario Superior Court explicitly found: "Certifying the class proceeding, including a global class, would serve judicial economy by permitting common issues to be determined on a single occasion, thereby avoiding duplication of fact-finding and legal analysis, as well as the potential for inconsistent results if litigation were pursued individually or by groups of investors in various jurisdictions." Ex. B (Reasons for Decision: Rule 21 Motion & Motion for Cert., Dec. 14, 2009) (the "Canada Decision") at ¶ 216.

Not only would two actions result in duplicative proceedings, with the same depositions being

taken on both sides of the border on the same issues before two different judges, the certification

of this second class action will result in U.S. lawyers unnecessarily charging additional fees that

decreases the recovery available to plaintiffs.

> These are just some of the defects in Snow's application.[3]

---

[2]    See Consolidated Am. Class Action Compl., dated Oct. 2, 2007 ("Compl.") ¶ 57 ("The most significant impact was in 2005, where revenue for 10 installations was moved to later years") (citing 2006 Form 10-K, at 32, 45, 90) (emphasis omitted).

[3]    The IMAX Defendants also join in the arguments set forth by codefendant PricewaterhouseCoopers LLP – Canada ("PwC") in its June 10, 2010 Opposition to Snow's Motion for Class Certification ("PwC Opp.").

## ARGUMENT

I.   **CLASS CERTIFICATION IS PROPERLY DENIED WHERE THE CLASS REPRESENTATIVE IS NOT TYPICAL OR ADEQUATE AND THE CLASS ACTION IS NOT SUPERIOR TO OTHER METHODS**

Plaintiff has a heavy burden to prevail on a motion for class certification. He must establish by a preponderance of the evidence each of the Rule 23 requirements of numerosity, commonality, typicality and adequacy, see Fed. R. Civ. P. 23(a), as well as that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3). See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201-02 (2d Cir. 2008) ("Teamsters II"); In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 30 (2d Cir. 2006) ("IPO I"). Failure to establish even one requirement must result in denial of the motion for class certification. See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 244 (2d Cir. 2007); In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 34-35 (2d Cir. 2009).

The Second Circuit has directed district courts to "assess all of the relevant evidence admitted at the class certification stage" when considering a Rule 23 motion for certification. Teamsters II, 546 F.3d at 202 (citing IPO I, 471 F.3d at 42). District courts have broad discretion to determine whether each of the Rule 23 factors has been met and, if not met, to decline to certify a class. See, e.g., Reiter v. Sonotone Corp., 442 U.S. 330, 345 (1979); IPO I, 471 F.3d at 32, 40-41; In re Alstom SA Sec. Litig., 253 F.R.D. 266, 274 (S.D.N.Y. 2008).

II.   **SNOW LACKS STANDING AND IS NOT TYPICAL OR ADEQUATE**

Rule 23(a) requires the named plaintiff to establish, inter alia, that his claims and defenses are typical of those of the entire class, and that the purported named plaintiff will fairly and adequately represent the interests of the class. See Fed. R. Civ. P. 23(a)(3)-(4). These two requirements reflect different sides of the same coin. The "typicality" requirement protects

4

against the risk that unique defenses against the class representative will "become the focus of the litigation" to the detriment of the class. <u>Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 903 F.2d 176, 180 (2d Cir. 1990); <u>see also</u> <u>In re Initial Pub. Offering Sec. Litig.</u>, 243 F.R.D. 79, 86 (S.D.N.Y. 2007).  To show that absent class members are adequately represented, the plaintiff must prove that (1) the class representative's interests are not antagonistic to those of the class; and (2) his attorneys are "qualified, experienced and able to conduct the litigation." <u>Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 52, 60 (2d Cir. 2000); <u>see</u> <u>Xianglin Shi v. Sina Corp.</u>, No. 05 Civ. 2154 (NRB), 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005).  A class also may not be certified if "the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to [fairly and adequately] protect the interests of the class against the possibly competing interests of the attorneys." <u>Maywalt v. Parker & Parsley Petroleum Co.</u>, 67 F.3d 1072, 1077-78 (2d Cir. 1995); <u>see</u> <u>Jaroslawicz v. Safety Kleen Corp.</u>, 151 F.R.D. 324, 328 (N.D. Ill. 1993) (class representative must "vigorously pursue the litigation").

"[B]ecause the judgment conclusively determines the rights of absent class members," <u>Eisen v. Carlisle & Jacquelin</u>, 391 F.2d 555, 562 (2d Cir. 1968), the Court must ensure that the class representative is an appropriate fiduciary with the incentive, knowledge, and ability to vigorously advocate and protect the interests of the class, ensuring that the class – and not his counsel – control the litigation, its costs, and its resolution. <u>See</u> <u>Maywalt</u>, 67 F.3d at 1077; <u>see also</u> <u>Weisman v. Darneille</u>, 78 F.R.D. 669, 671 (S.D.N.Y. 1978) (plaintiff must "check the otherwise unfettered discretion of counsel in prosecuting the suit"); <u>Rolex Employees Ret. Trust v. Mentor Graphics Corp.</u>, 136 F.R.D. 658, 666 (D. Or. 1991) ("<u>Rolex</u>"); <u>Berger v. Compaq Computer Corp.</u>, 257 F.3d 475, 484 (5th Cir. 2001).

5

These concerns are heightened in the context of securities class actions. The Private Securities Litigation Reform Act of 1995 ("PSLRA") has an "emphatic command" that "competent plaintiffs, rather than lawyers, direct [the litigation]." Berger, 257 F.3d at 484; see also Sina Corp., 2005 WL 1561438, at *1; Hevesi v. Citigroup Inc., 366 F.3d 70, 83 n.13 (2d Cir. 2003).[4] Congress perceived that "class counsel too frequently controlled securities class actions leading to various abuses" and the PSLRA was thus designed so that the court would "designate the best representative [who] should retain the class counsel, rather than the attorney selecting the plaintiff." 7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure ("WMK") § 1766 (3d ed. 2008). The PSLRA's theory is that a "sophisticated investor would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price." Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009) ("Iron Workers"); see also Shiring v. Tier Technologies, Inc., 244 F.R.D. 307, 316 (E.D. Va. 2007) (denying certification in part because plaintiff had "abdicated" his supervisory role in contravention of the PSLRA); In re Cendant Corp. Litig., 264 F.3d 201, 265 (3d Cir. 2001); In re Quintus Sec. Litig., 201 F.R.D. 475, 482 (N.D. Cal. 2001) ("plaintiff that does not negotiate a reasonable fee arrangement [not] adequate representative").

Snow's application violates the above precepts, each of which, individually, is sufficient to preclude class certification.

Further, Snow is unable to serve as class representative because he lacks standing. The face of the Complaint establishes that Snow has not suffered a loss as a result of an alleged

---

[4]    Defendants did not have standing to challenge Snow's adequacy and typicality at the lead plaintiff stage and, accordingly, the court's appointment of Snow as lead plaintiff "does not prejudice defendants' capacity to contest plaintiff's adequacy on a motion for class certification." See Koppel v. 4987 Corp., Nos. 96 Civ. 7570, 97 Civ. 1754 (RLC), 1999 WL 608783, at *8 (S.D.N.Y. Aug. 11, 1999); In re Deutsche Bank AG Sec. Litig., No. 09 Civ. 1714 (DAB), 2009 WL 4277202, at *3 (S.D.N.Y. Nov. 23, 2009).

misrepresentation. Snow sold all of his IMAX stock much prior to March 29, 2007, the only potential curative disclosure date alleged in the complaint for investors, like Snow, that purchased before February 17, 2006. See Compl. ¶ 127; infra at 17-18, 24. Thus, Snow lacks Article III standing. Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Capital Inc., No. 05 Civ. 1898 (SAS), 2005 WL 2148919, at *3 (S.D.N.Y. Sept. 06, 2005) ("A putative class representative lacks standing to bring a claim if it did not suffer the injury that gives rise to that claim."). Accordingly, this case may not be certified as a class action with Snow as representative. See id. at *4 ("If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim."); Ramos v. Patrician Equities Corp., 765 F. Supp. 1196, 1199 (S.D.N.Y. 1991).

### A.    Snow's Interests Are Antagonistic To Those Of The Class

"[T]he best way for the court to assess a potential lead plaintiff's adequacy is to consider the manner in which he has retained counsel and negotiated an attorney's fee for the class." In re Quintus, 201 F.R.D. at 482. In October 2006, Snow represented he "ha[d] selected [Robbins Geller's predecessor] to represent it and the class." See Mem. of Law, Oct. 10, 2006 at 3 ("Pl. 2006 Br."). At deposition, however,

.  There is apparently no separate engagement letter for Robbins Geller.

7

CONFIDENTIAL
FILED UNDER SEAL

Snow's reticence is telling.

Snow did not hire          as a result of any beauty contest or competitive bidding

contest.


See Weisman, 78 F.R.D. at 671.

---

5           participation in this litigation is also a component of this conflict.  As one court has recognized, "[an] attorney whose fees will depend upon the outcome of the case and who is also a class member or closely related to a class member cannot serve the interests of the class with the same unswerving devotion as an attorney who has no interest other than representing the class members."  Zylstra v. Safeway Stores, Inc., 578 F.2d 102, 104 (5th Cir. 1978).

.6

Snow's choice of _____ and his lack of candor with the Court either at the lead

plaintiff stage or at the class certification stage alone should disqualify Snow from acting as class

representative; only the IMAX Defendants' diligence uncovered this issue. See, e.g.,

Jaroslawicz, 151 F.R.D. at 330 n.2; Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir.

1998); see also Karnuth v. Rodale, Inc., No. Civ. A. 03-742, 2005 WL 747251 at *3 (E.D. Pa.

Mar. 30, 2005) (certification may be denied if credibility issues are "even arguably present").

Moreover, under the PSLRA, plaintiff's choice of class counsel is subject to court approval. See

15 U.S.C. § 77z-1(B)(iii) (2010).  Snow's deception thus usurped the "court's discretion . . . to

approve or disapprove [plaintiff's] choice of counsel when necessary to protect the interests of

the plaintiff class." H. Rep. at 734; S. Rep. at 690-91.

Even had he disclosed the issue to the Court, "the possibility that plaintiff may

benefit when his attorneys benefit – either directly by receiving future business from [class

counsel] or indirectly by helping a business associate at the expense of the class – casts doubt on

whether plaintiff will fairly and adequately protect the interests of the class" and is sufficient to

preclude certification.[7] Shields v. Wash. BanCorp., Civ. A. No. 90-1101 (RCC), 1991 WL

221940, at *2 (D.D.C. Oct. 10, 1991); Iron Workers, 616 F. Supp. 2d at 464 (holding that

---

[6]   Of course, it was precisely this concern that the PSLRA was enacted to address.  Congress specifically
targeted "[p]rofessional plaintiffs who . . . permit lawyers readily to file abusive securities class action lawsuits" and
who "often receive compensation in the form of bounty payments or bonuses." H.R. Conf. Rep. 104-369, 1995
U.S.C.C.A.N. 730, 731 (Nov. 28, 1995) ("H. Rep.").  The PSLRA was also directed against an environment in
which it is "easy for lawyers to find individuals willing to . . . fil[e] a class action lawsuit," S. Rep. 104-98, 1995
U.S.C.C.A.N. 679, 691 (June 19, 1995) (emphasis added), which is why Congress, with the PSLRA, "expect[ed]
that the plaintiff will choose counsel" rather than, as is the case here, "counsel choosing the plaintiff." H. Rep. at
734; see also Iron Workers, 616 F. Supp. 2d at 464 (PSLRA enacted to avoid "lawyer-driven" litigation).
[7]   The court cannot cure Snow's defect by directing that Snow not use _____ as his counsel.

The question is not _____ but Snow. See Iron Workers, 616 F. Supp. 2d at 466 (class representative must assure that
it receives disinterested advice).

putative lead plaintiff was inadequate based on its preexisting financial arrangement with

counsel); Jaroslawicz, 151 F.R.D. at 328-30 (denying certification where a plaintiff's "interest in

the goodwill of [his lawyers] creates a conflict of interest which disqualifies [him] from serving

as class representative"); 5 James W.M. Moore et al., Moore's Federal Practice § 23.25[2][b][vi]

(3d ed. 2010) ("a conflict . . . may exist if the class representative stands to benefit directly or

indirectly from the goodwill of class counsel created through the class action").

        Here, as in those cases, "the financial interests of [Snow] and of the class are not

coextensive." Susman v. Lincoln Am. Corp., 561 F.2d 86, 92 (7th Cir. 1977). The class'

interests are in the maximum recovery at the minimum cost. Because counsel fees and costs

would come from any fund generated by a judgment or settlement, everything else being equal,

the less money that the class has to pay for representation, the greater recovery it will receive.

See Court Awarded Attorney Fees, 108 F.R.D. 237, 241 (Oct. 8, 1985). As the representative of

the absent class members, Snow would be responsible for "carefully choosing counsel and

monitoring counsel's performance to make sure that adequate representation was delivered at a

reasonable price." Iron Workers, 616 F. Supp. 2d at 464 (citation omitted); see also Ballan v.

Upjohn Co., 159 F.R.D. 473, 486 (W.D. Mich. 1993) (representative should "consider[] the

potential cost to the class arising from [litigation decisions]"); Rolex, 136 F.R.D. at 664

(representative must "check the otherwise unfettered discretion of counsel . . . with respect to the

economic consequences of the suit.") (citation omitted).

                                        ., however, Snow has an interest in

"maximizing the 'return' to his counsel" even if that comes out of the pockets of the other class

members. Susman, 561 F.2d at 95;                              . Snow acknowledges that he

is one of "hundreds, if not thousands, of members of the proposed Class," Mem. of L., Apr. 22,

2010 ("Snow Br."), at 6. "[P]laintiff's potential recovery in this case is insignificant compared to
the likely amount of attorney's fees which would be generated if the case does go forward as a
class action." Shields, 1991 WL 221940, at *2; see also Susman, 561 F.2d at 92. The individual
charge to Snow himself would be minimal in absolute numbers, but Snow stands to gain in
reputation and "good will," factors the courts have found preclude certification. Jaroslawicz, 151
F.R.D. at 328. He also stands to gain in a more tangible way:

(revenue that would be at risk were Snow to take too adversarial a stance toward his
client) and

. Under these circumstances, a long line of cases holds that the representative is
not adequate. See Susman, 561 F.2d at 93; Shields, 1991 WL 221940, at *2; Iron Workers, 616
F. Supp. 2d at 464; Jaroslawicz,151 F.R.D. at 329-30; In re Quintus, 201 F.R.D. at 481-82.

. That is not a sufficient answer. The choices that
counsel make affect the likelihood and size of any recovery, the outcome of a trial or settlement,
and the cost of litigation. Even assuming a settlement, the Court's role will be limited to
determining post-hoc whether it is fair and adequate and whether plaintiff's counsel's application
for fees and costs "is reasonable under the circumstances." MBA v. World Airways, Inc., No.
09-0008-CV, 2010 WL 807724, at *3 (2d Cir. Mar. 10, 2010). Under Rule 23 and the PSLRA,
however, it is the class representative – and not the Court – that can and must continuously (and
not just at the conclusion) monitor the litigation to ensure that counsel's decisions achieve the

11

best recovery at the lowest cost. Iron Workers, 616 F. Supp. 2d at 464. If there exists any doubt

that the class representative has the interest or ability to discharge those duties, no class should

be certified. See, e.g., Susman, 561 F.2d at 95; see also Jaroslawicz, 151 F.R.D. at 329.[8]

### B.    Snow Has Failed To Vigorously Prosecute The Class Claims

Snow's motion is defective, even apart from his conflict of interest, because he

has shown neither the interest nor the ability to "monitor[] counsel's performance," Iron

Workers, 616 F. Supp. 2d at 464, "check the otherwise unfettered discretion of counsel in

prosecuting the suit," In re Monster Worldwide, Inc. Sec. Litig., 251 F.R.D. 132, 135 (S.D.N.Y.

2008), or "protect the interests of the class against the possibly competing interests of the

attorneys." Maywalt, 67 F.3d at 1078; see also Saylor v. Lindsley, 456 F.2d 896, 900 (2d Cir.

1972) (plaintiff must be more than the "key to the courthouse door dispensable once entry has

been effected"); Iron Workers, 616 F. Supp. 2d. at 463 (PSLRA was intended "to curtail the vice

of . . . lawsuits that . . . were initiated and controlled by the lawyers and appeared to be litigated

more for their benefit than for the benefit of the shareholders.").

Snow's first activities in this lawsuit have not been auspicious. He filed a false

certification with his first application to be lead plaintiff,[9] stating incorrectly that purchases of

IMAX stock on December 14, 2004, October 3, 2005, and November 3, 2005 and sales of that

stock (all for a loss) on August 10, 2006 constituted all of his "transaction(s) in [IMAX] during

the class period," Ex. D (Plaintiff's Corrected Certification of Named Plaintiff Pursuant to

---

[8]       Snow has not taken "precautions to ensure that [it] will not benefit from attorney's fees" nor would such precautions be sufficient. Susman, 561 F.2d at 93. "The factor mandating judicial inquiry is the appearance of impropriety inherent in plaintiff's role as representative of class members' interests vis-à-vis plaintiff's business associate's desire to maximize recovery of attorney's fees from an equitable fund . . . for the benefit of the class." Id.
[9]       Snow was not the Court's initial choice to be lead plaintiff. Eight individual plaintiffs filed complaints against the IMAX Defendants between August 11, 2006 and September 13, 2006. See Mem. and Order, Jan. 18, 2007, at 3. Snow did not file a complaint (indeed, he has never filed a complaint). This Court appointed Westchester Capital Management, Inc. ("Westchester Capital"), and not Snow, as lead plaintiff. On June 29, 2009, after Snow filed a motion for reconsideration, the Court appointed him lead plaintiff.

Federal Sec. L., Apr. 29, 2010), and then argued he had losses of $481,327, "the largest financial interest in the relief sought by the class." See Pl. 2006 Br. at 3-4. On this basis, Snow argued that he "satisfie[d] the PSLRA's prerequisite of having the largest financial interest and is presumptively the most adequate plaintiff to represent the class." Id. at 4. However, he omitted a purchase and sale within the class period (at a price that the Complaint alleges to be inflated) that netted Snow a profit of approximately $33,500; he also listed prices that were inaccurate, cumulatively overstating his losses by approximately $45,000 (almost 10% of his claim). See

[10]

Snow disclaimed any intent to deceive the Court but, by his own account, he was reckless. In preparing his certification, Snow simply looked at one document – a brokerage statement from the middle of the class period (dated December 30, 2005) – saw that there were transactions on three dates, and recorded those transactions. He did not look at any other brokerage statements (even though he knew that the December 30 statement would not reflect sales that occurred prior to that month) or even look at the trade confirmations for the three trades reflected on the December 30, 2005 statement – a glaring omission that would have required him only to                                              , and would have quickly revealed the missing trades. Even though Snow averages                   trades per day, and thus would have had fewer than a half-dozen confirmations to look at each day, Snow testified that

---

[10]     Snow's counsel highlighted the size of Snow's losses in his motion for reconsideration. They stated that Snow "represents the next largest financial interest" and "no opposition was ever filed questioning the size of Snow's financial interest." Mem. Supp. Snow's Mot. for Recons., Apr. 3, 2009, at 11-12. When Steelworkers Pension Trust did question the size of Snow's financial interest, counsel had the temerity to expressly reaffirm its claimed losses. See June 23, 2009 Rosenfeld letter to the Court; Reply Mem. Further Supp. Snow's Mot. for Recons., June 23, 2009, at 3 (accusing Steelworkers of "baseless speculation" and reaffirming that "Snow's financial interest ($481,327) remains unchanged"). Not once before the Court ruled did Snow mention that those figures, and the certification that supported them, were false.

CONFIDENTIAL
FILED UNDER SEAL

, Snow knew of the error by June 2009,                    , but did not submit a corrected certification until April 29, 2010, see Ex. D;                    .

Snow did not show any greater care in his second certification. In that one-page six-paragraph document, he incorrectly stated that he authorized the filing of the Complaint.[11]

. Even then, how could Snow have made this mistake? He must have just blindly and cavalierly relied on counsel.

Snow's false statements do not end there. He stated in his reply memorandum in opposition to Steelworkers' motion for appointment as lead plaintiff that "Snow Capital and its counsel have been closely monitoring this litigation," but

. Compare Reply Mem., June 23, 2009, at 4 with

. Only three weeks later, his counsel admitted that they were not in possession of such information. Ex. E (Mark S. Reich Letter). Snow also was directed by the Court to coordinate discovery with Westchester, but .                    .

The Court need not determine whether Snow acted with intent in making these misstatements and failing to disclose the role of          . A class representative is a fiduciary and thus must demonstrate honesty, "diligence," "conscientiousness and other . . . personal qualities." Shiring, 244 F.R.D. at 315. If Snow cannot spend the few minutes necessary to ensure the accuracy of his own representations about such basic matters as his trades and his authorization

---

[11]    In fact, the Complaint was filed on October 2, 2007, after the Court appointed Westchester Capital as lead plaintiff, and at a time when

of the Complaint, what is there to assure he will spend the time and exercise the care to ensure that he, "rather than [] counsel, is in control of the litigation" on behalf of the absent class members? Id. at 316; In re Safeguard Scientifics, 216 F.R.D. 577, 583 n.4 (E.D. Pa. 2003) (plaintiff's failure to include all trades in its certification had a "potential and likely adverse effect on the putative class' interests"); Iron Workers, 616 F. Supp. 2d. at 464.[12]

Indeed, it is evident that to date Snow has not monitored counsel. Even after he was appointed lead plaintiff, Snow still did not (a)

·; (b)

; (c)

; (d) ı

·; or

(e)

## C.    Snow Is An Atypical Investor

"[C]lass certification is inappropriate where a putative representative is subject to unique defense which threaten to become the focus of the litigation," and there is a "danger that absent class members will suffer if their representative is preoccupied with [such] defenses." Baffa, 222 F.3d at 59-60 (citations omitted) (cited in In re Flag Telecom, 574 F.3d at 40). See also Koos v. First Nat'l Bank, 496 F.2d 1162, 1164 (7th Cir. 1974) (plaintiff improper representative "[w]here it is predictable that a major focus of the litigation will be on an [issue] unique to [it]."); Rolex, 136 F.R.D. at 664.

---

[12]    See also Kline v. Wolf, 702 F.2d 400, 403 (2d Cir. 1983) (upholding denial of class certification because plaintiffs' testimony on a critical issue subject to attack); Darvin v. Int'l Harvester, Co., 610 F. Supp. 255, 257 (S.D.N.Y. 1985) (credibility issues arising from plaintiff's deposition "could become the focus [of] unique defenses at trial, to the detriment of the class"). Cf. Savino, 164 F.3d at 87.

Snow is an atypical class member because he purchased his IMAX shares prior to the representations at the heart of this case, did not rely on the alleged misrepresentations pled in the Complaint as to even the prior class period, and did not rely on the efficiency of the market. Any of these factors – without any of the questions regarding adequacy – precludes class certification. Together, they demonstrate the very danger to absent class members if a named plaintiff is "preoccupied with defenses unique [to him]." Zemel Family Trust v. Philips Int'l Realty Corp., 205 F.R.D. 434, 436 (S.D.N.Y. 2002).

        1.     Snow Purchased Prior To The Central Alleged Misrepresentations

The central allegation in this case is that, in Q4 2005, IMAX violated GAAP in its application of multiple element arrangement accounting ("MEA") to theater system installations, and recorded such revenue in its annual earnings release on February 17, 2006 and its Form 10-K on March 9, 2006. See, e.g., Compl. ¶¶ 100-03, 116-18. Plaintiff alleges that IMAX's stock price dropped dramatically on August 10, 2006 when IMAX announced that it faced an SEC investigation related to MEA application in Q4 2005. Compl. ¶ 115.[13]

However, Snow is atypical of the class. MEA-related issues dominate for the overwhelming majority of the class, i.e. purchasers of IMAX stock after February 17, 2006, Allen Rpt. at 30-32, but Snow's purchases predate February 17, 2006. In fact, few investors who held IMAX stock on August 9, 2006 – at the time of the alleged first corrective disclosure – purchased their stock prior to February 17. See id. (7% of the institutional investors that purchased IMAX stock in the fourth quarters of 2004 and 2005 – as Snow did – compared to 50% of those who purchased in the first quarter of 2006, held through the third quarter of 2006).

Snow's time of purchase also makes his interests diametrically opposed to those of most class members. It is in Snow's interest to establish that IMAX stock was inflated as

---

[13]    Attached to the Declaration of Lucy Allen, Ph.D, dated June 10, 2010.

much as possible by the pre-February 16, 2006 statements (when he made his purchases) and not

by the post-February 16, 2006 statements. The interests of the vast majority of the class are the

opposite since they purchased after February 17, 2006. See Allen Rpt. at 30-33;[14] see also WMK

§ 1768 (plaintiff "cannot adequately protect the class if [his] interests are antagonistic to or in

conflict with the objectives of those being represented"); Kline, 702 F.2d at 402 (even the

potential for a unique defense defeats class certification).

2.    Snow Did Not Rely On The Alleged Misrepresentation

The Complaint alleges that the "reasonable reader of the 2004 10-K is led to

believe that multiple element accounting was being applied in only . . . limited circumstances."

Compl. ¶ 52. Snow did not have that understanding – he testified that,

.[15] Such material contradictions between Snow's position and the allegations in the

complaint make him an inadequate representative. See Savino, 164 F.3d at 87 (upholding denial

of certification where plaintiff's deposition contradicted a significant complaint allegation).

Further, Snow seeks damages based on the stock price drop following the alleged

corrective disclosures beginning in August 2006 and continuing until July 2007. See Compl.

¶ 229. However, the August 9 disclosure only related to theater systems recognized in or after

the fourth quarter of 2005, Ex. F (IMAX Corp. Press Release Aug. 9, 2006), and thus cannot

have been a corrective disclosure for Snow and others who purchased stock before February 17,

2006, when the financials for the fourth quarter of 2005 were released. See also Allen Rpt. at

---

14    See also PwC Opp. at 6-7.
15    On examination by his counsel,

28-30. Thus, Snow is not a typical investor. See In re Omnicom Group, Inc. Sec. Litig., 597

F.3d 501, 513 (2d Cir. 2010) (appellant failed to show a price decline where the purported

corrective disclosure did not include any new information regarding the alleged fraud); Lentell v.

Merrill Lynch & Co., 396 F.3d 161, 175 (2d Cir. 2005). Snow also sold on August 10, 2006 –

prior to a corrective disclosure relating to any IMAX financials issued before it purchased and,

thus, cannot establish loss causation. See id.; Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342-43

(2005) (absence of corrective disclosure fatal to plaintiff's claim).

### 3.    Snow Did Not Rely On Market Efficiency

Snow is also atypical because he invests based on

, the central premise

upon which class reliance is based. Compare                                        with

Compl. ¶¶ 27-30.

.[16] This characteristic alone precludes certification. See Rocco v. Nam Tai Electronics,

Inc., 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (representative atypical who relied "not on the

market, but on his own assessment of the value of the stock.").[17]

## III.    SNOW'S CLASS ACTION IS NOT "SUPERIOR" TO THE ALREADY-CERTIFIED SECURITIES CLASS ACTION IN CANADA

Under Rule 23(b)(3), an opt-out class may only be certified where "a class action

is superior to other available methods for fairly and efficiently adjudicating the controversy."

Fed. R. Civ. P. 23(b)(3) (emphasis added). Where an opt-out class action would be either more

(1) unfair or (2) inefficient than some other method for adjudicating the dispute, class

---

[16]       On examination by his counsel, Snow testified that

[17]       See also Safeguard, 216 F.R.D. at 583 (rejecting class representative who did not rely on market efficiency); In re Harcourt Brace Jovanovich, Inc. Sec. Litig., 838 F. Supp. 109, 113 (S.D.N.Y. 1993) ("[a] named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3)."); PwC Opp. at 4-6, 11-13.

certification should be denied. See Teamsters II, 546 F.3d at 202. In determining whether the

superiority requirement is satisfied, the Court must consider, inter alia: (i) the extent to which

class members have an interest in prosecuting their claims individually; (ii) litigation already

pending by or against members of the class; (iii) the desirability of concentrating the claim in a

particular forum; and (iv) potential difficulties in the management of a class. Fed. R. Civ. P.

23(b)(3)(A)-(D). Snow expressly concedes that "[i]t is unquestionable that the parties (and this

Court) have an interest in this litigation proceeding in a single forum." Snow Br. at 25. If his

motion were granted, however, that interest would be undermined.

## A.    There Is Already A Certified Canadian Class Action

On September 20, 2006, long before a motion for class certification was filed

here, two Canadian shareholders who purchased after February 17, 2006 sued IMAX and its

officers and directors, in Ontario Superior Court, on behalf of purchasers of IMAX stock from

February 17 to August 9, 2006, alleging nearly identical claims of misrepresentations and fraud

pursuant to the Ontario Securities Act ("OSA") and Canadian common law. Ex. H (Silver v.

IMAX Corp., No. CV-06 3257-00, [2009] O.J. No. 5585 (S.C.J.), Statement of Claim, Sept. 20,

2006). See Report of Professor Poonam Puri, Feb. 23, 2009 ("Puri Rpt.") ¶¶ 145-46, 166-73,

182, 189, 191, 194, 199, 203 (describing claims and allegations in that action).[18]

On December 14, 2009, over IMAX's objection, the Ontario Superior Court

certified a global class of investors who purchased IMAX stock between February 17, 2006 and

August 9, 2006. See Canada Decision. The Court noted: "a global class, would serve judicial

economy by permitting common issues to be determined on a single occasion, thereby avoiding

duplication of fact-finding and legal analysis, as well as the potential for inconsistent results if

---

[18]     Attached to the Declaration of Professor Poonam Puri, dated June ___, 2010.

litigation were pursued ... in various jurisdictions." Id. at ¶ 216 (emphasis added).[19] The IMAX

Defendants disagree with that decision, and have taken all necessary steps to appeal it. As long

as there is a global class action pending in Canada, however, no class should be certified here.

## B.    The U.S. Class Action Is Not Superior

Snow does not even attempt to show that a United States class action is "superior"

to the Canadian global class action "for fairly and efficiently adjudicating the controversy."

There could be no claim that Canadian action is "inferior." Courts in this District

have expressly concluded that "Ontario, Canada is an adequate forum to try class actions based

on violations of federal securities laws." In re Royal Group Techs. Sec. Litig., No. 04 Civ. 9809

(HB), 2005 WL 3105341, at *2 (S.D.N.Y. Nov. 21, 2005); see also DeYoung v. Beddome, 707

F. Supp. 132, 137 (S.D.N.Y. 1989). Canadian plaintiffs seek relief similar to that sought here

and will have to satisfy a standard lesser than the scienter required here. See Puri Rpt. ¶¶ 145-

206 (overview of Canadian securities laws). The plaintiffs representing the absent members

there have been prosecuting their lawsuit aggressively; they have received documents and taken

the testimony of ten witnesses (including IMAX's two co-CEOs, its then CFO, the head of its

Audit Committee, and the relevant PwC audit partner). And, unlike this Court, see PwC Opp. at

20-22, the Ontario Superior Court has held that it can grant full relief to a global class.[20] See

Canada Decision.

Class actions are warranted because they "eliminate[] the possibility of repetitious

litigation." Eisen, 391 F.2d at 560. Where "litigation concerning the controversy [has] already

---

[19]    Although IMAX has sought leave to appeal this decision, the Canadian plaintiffs have opposed that
application and the appellate court has not yet ruled. See Puri Rpt. at n. 219. Should their motion for leave to
appeal be granted, the IMAX Defendants would be prepared to provide the Court with all papers associated with the
appeal.
[20]    In any event, the possibility that less favorable substantive law will be applied in the foreign forum is
relevant only when the "remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is
no remedy at all." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981).

[been] commenced by . . . members of the class," that justification no longer is present. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 616 (1997); see also Lewis Tree Serv., Inc. v. Lucent Tech. Inc., 211 F.R.D. 228, 230 n.2 (S.D.N.Y. 2002) (class action not superior where class has already been certified in another case); Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90, 107 (10th Cir. 1971); Swergold v. Lifetime Corp, No. 93 Civ. 4877 (RPP), 1993 WL 512905, at *4 (S.D.N.Y. Dec. 3, 1993) (court has discretion to "promote judicial efficiency" by refusing to permit two litigants to "engage in needless duplicative efforts"). Cf. In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 370 (3rd Cir. 2001) (upholding district court's prohibition of class members from pursuing duplicative class actions). Certification of a second class would create the problems Rule 23 was designed to avoid: "unnecessary litigation and duplicative fees,[21] . . . delay, . . . complicated problems of judicial coordination . . ., disparate verdicts . . ., and . . . unequal distribution of [recovery] funds." WMK § 1798.1.

To identify only a few of the issues created by dual overlapping certified classes:

- Discovery limitations. This Court has the authority and responsibility under Fed. R. Civ. P. 23(d), 26(b)(iii) to "prescribe measures to prevent undue repetition or complication in presenting evidence or argument" and to enter a protective order to prevent "undue burden or expense." Canadian law has similar provisions but applies them differently. Puri Rpt. ¶¶ 84, 102. Dual class actions would undermine those rules, as the losing party in one jurisdiction would have the right (and duty) to seek discovery denied to it in the first.

- Overlapping judgments. A judgment in a Rule 23(b)(3) class action is binding on all except those who opt out. See, e.g., Mitchell v. Metro. Life Ins. Co., No. 03-Civ-10294 (WHP), 2004 WL 2439704, at *1 (S.D.N.Y. Nov. 2, 2004). Canada has a similar rule. Puri Rpt. ¶ 27. The courts would need to coordinate notices of the class action (with additional expense and burden). If, as is customary, there are few opt outs in each jurisdiction, then the certification of a second class action would give rise to the risk of an unseemly manipulation of court schedules – as each set of plaintiffs' lawyers presumably would try to get to judgment first (thereby precluding the second action).[22]

---

[21]    See Glauser v. Evci Career Colleges Holding Corp., 236 F.R.D. 184, 190 (S.D.N.Y. 2006) ("[T]he class is best served by having one Lead Plaintiff and one Lead Counsel to minimize legal fees.").

[22]    If a court rules in favor of defendants, the plaintiffs seemingly would have the opposite interest – to delay entry of judgment to avoid preclusion. In either event, there would be a duplication of judicial effort.

- Settlement. Once a class is certified in the United States, the "claims, issues [and] defenses" of class members "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Canada applies a similar rule – though it has a different standard of fairness. Puri Rpt. ¶¶ 109-14. Thus, even if the Canadian plaintiffs, the judge, and the defendants all believe that a settlement is fair under Canadian standards, those parties could not settle without obtaining the additional approval of the U.S. court. By the same token and seemingly contrary to Rule 23, this Court could not effectively approve a settlement of the class claims here without making it conditional upon the approval of the Canadian court (after satisfaction of all appeals).

These issues might be managed with enough judicial ingenuity and resources. Defendants are not aware, however, of any other case in which courts in two countries have certified overlapping global classes on the same claim. And, there is no reason to do so here. Cf. Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) (holding that courts may stay proceedings in deference to foreign action even if parties and issues are not identical). If Snow does not desire to participate in the Canadian class, he can opt out. If he participates and then objects to a settlement, he can make his objection there. This court should not now enter an order the only effect of which may be to delay resolution by creating two competing sets of litigation.

## C.    U.S. Courts Have Found That Canada Provides An Adequate Forum For Relief

Courts in two related contexts have held that Canadian courts provide an adequate forum for resolution of securities claims. Those precedents support denial of the motion here.

First, courts have stayed or dismissed litigation filed in U.S. courts in deference to parallel "previously filed Canad[ian] action[s]." See Canada Life Assurance Co. v. Converium Ruckversicherung, No. 06-Civ-3800 (GEB), 2007 WL 1726565, at * 6 (D.N.J. June 13, 2007) (stay granted to avoid duplicative litigation, in light of Canadian suit being filed first and the substantive similarities between U.S. and Canadian law); Paraschos v. YBM Magnex Int'l, 130 F. Supp. 2d 642, 646 (E.D. Pa. 2000) (dismissing on comity grounds U.S. class action which "mirror[ed] the same securities fraud . . . by virtually the same proposed class" in Canada).

22

Second, courts have not hesitated to stay or dismiss an action based on forum non conveniens where – as here – there is related litigation in Canada, the parties and issues are virtually identical, the relief is adequate, the Canadian action is further along, and the defendant is a Canadian corporation. See VictoriaTea.com, Inc. v. Cott Beverages, Canada, 239 F. Supp. 2d 377 (S.D.N.Y. 2003). Courts have recognized that "Canadian law provides causes of action that are the same in all significant respects as those available under [U.S.] law." DeYoung, 707 F. Supp. at 137; Paraschos, 130 F. Supp. 2d at 647; Fleeger v. Clarkson Co. Ltd., 86 F.R.D. 388, 392-93 (N.D. Tex. 1980).[23] None of the absent class members have chosen the U.S. as a forum – at least two would rather litigate in Canada. This Court should not presume that the remainder wish to litigate in the U.S. in a class action where they will be represented by Snow.

## D.    It Is Irrelevant That The U.S. Action Names PwC And Has A Longer Class Period

There are two differences between this action and the Canadian action: the Canadian plaintiffs chose not to name PwC and to allege a different class period. A U.S. lead plaintiff has the prerogative under the PSLRA to "decide what claims to assert" on the class' behalf and what not to assert. In re Bank of Am. Corp. Sec. Deriv. & ERISA Litig., No. 09 MDL 2058 (DC), 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010); In re Lehman Bros. Sec. & ERISA Litig., No. 09 MD 2017 (LAK), 2010 WL 1566860, at *1 (S.D.N.Y. Apr. 21, 2010) (rejecting plaintiffs' attempt to assert additional claims as undermining lead plaintiff's authority). The fact that a Canadian plaintiff has exercised this prerogative does not make its action inferior.

First, there are ample reasons why the Canadian plaintiffs would have chosen not to allege a class period earlier than February 17, 2006 or later than August 9, 2006. There is no reason to believe any substantial number of persons who purchased prior to February 2006 still

---

[23]    Moreover, the Canadian court can apply U.S. law. Howe v. Goldcorp Invs. Ltd., 946 F.2d 944, 952 (1st Cir. 1991); see Canada Decision at ¶ 220.

held after August 9. See Allen Rpt. at 30-33.[24] There is also significant reason to doubt that any

pre-February 2006 purchaser who did hold would have suffered damages and thus have a claim

for relief. IMAX's August 9, 2006 release announced that the Company was responding to an

informal SEC inquiry regarding revenue recognized for theater systems in the fourth quarter of

2005 and was followed by a 40.4% drop in stock price. On that basis, this Court found sufficient

allegations of loss causation – with respect to purchasers who relied on the statements that were

the subject of the corrective disclosures. In re IMAX Sec. Litig., 587 F. Supp. 2d 471, 482-83

(S.D.N.Y. 2008) ("IMAX"). The August 9 release, however, did not make any statements with

respect to pre-2005 financials. Indeed, it stated the "Company believes its application of the

above accounting policy is, and has historically been, in accordance with GAAP, and the

Company's position is supported by its auditors [PwC]." Ex. F; see In re Omnicom, 597 F. 3d at

513 (purported disclosure did not include any new information regarding the alleged fraud);

Lentell, 396 F.3d at 175 (neither the alleged fraudulent statement nor corrective disclosure

caused the loss).

Further, Snow faces substantial questions regarding market efficiency prior to

February 2006. Plaintiff's expert relied on aggregate data including the period from February

2006 through July 2007 but admitted that the fact that a market may have been efficient at one

point does not mean that it was efficient earlier. See Ex. I (Marek Dep. Tr.) at 219:16-21.

Notably, Marek's event study – perhaps the most important test of market efficiency – did not

look at whether the market was efficient during the earlier part of the class period. Id. at 181:4-

5. Finally, the allegations related to the 2002-2004 IMAX 10-Ks are significantly different from

the allegations related to the 2005 10-K. See IMAX, 587 F. Supp. 2d at 482-83 (drawing a

---

24      Canadian plaintiffs' decision to plead a class period ending on August 9, 2006 was sound. Indeed,
originally, all plaintiffs and movants for lead plaintiff in the U.S. action "agree[d] that the relevant class period
ended on August 9, 2006." Kaplan v. Gelfond, 240 F.R.D. 88, 91 (S.D.N.Y. 2007).

distinction between 2002–2004 and 2005–2006 financial statements).[25] Snow cannot satisfy Rule 23 even with respect to the pre-February 2006 class. The fact that he has tacked those claims on to a class already certified in Canada does not permit him to represent such purchasers.

Second, this Court has already recognized the exceedingly high burden the plaintiffs face in a case against PwC. See IMAX, 587 F. Supp. 2d at 483-85. The Canadian plaintiffs did not need to take on that burden to avoid being labeled inferior. Under both Canadian statutory and common law, each defendant can be jointly and severally liable for proven losses, regardless of the presence of PwC. See Puri Rpt. ¶¶ 183-87, 203-06. The case law clearly holds that relief available in Canada is adequate. See supra at pp. 20, 23. It is irrelevant that the U.S. plaintiff would spread that relief by naming PwC whereas the Canadian plaintiffs have focused their fire on the IMAX Defendants.

## IV.    THE CLASS CAN NOT BE CERTIFIED AS PLED

Even assuming that Snow satisfied the other elements of Rule 23, common issues do not predominate between the persons who purchased prior to February 17, 2006 and those who purchased between February 17, 2006 and August 9, 2006. Thus, Snow cannot bring this action on behalf of those who purchased after February 17, 2006. See, e.g., Charron v. Pinnacle Group NY LLC, No. 07 Civ. 6313 (CM), 2010 WL 1752501 (S.D.N.Y. Apr. 27, 2010).[26]

---

[25]    E.g., this Court recognized that the scienter allegation with respect to the two periods are distinct. See id.
[26]    Plaintiff acknowledges – as he must – that the majority of the revenue restated came from 2005. See Compl. ¶¶ 144, 146, 147; see also Snow Tr. at 76:12-24 (conceding that misstatements on or after February 17, 2006 are irrelevant to the issues faced by him and others who purchased before that date). For 2002, the Restatement shifted only one theater (out of 16 originally recognized) into a later period; thus, an investor who purchased before IMAX's 2003 10-K was filed must show that this single installation was material. No theater system revenue was shifted in 2003 and thus an investor who purchased before the 2004 10-K was filed in March 2005 (the period that includes Snows' initial purchase of 50,000 shares) must show that this same single installation in 2002 was material out of the total mix of information. For 2004, the only allegation is that the 2004 10-K was misleading in "fail[ing] to disclose that it was actually applying [MEA] inappropriately." Compl. ¶ 52. Given that no installation revenue from 2002-2004 was restated because of MEA errors, see MacNeil Aff. ¶ 47, materiality would be a significant part of any case regarding the pre-2005 financial statements. See ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009) (materiality is "a fact-specific inquiry").

## CONCLUSION

For the foregoing reasons and those in PwC's opposition, the IMAX Defendants

respectfully request that this Court deny Plaintiff's Motion for Class Certification or, in the

alternative, limit the class period to February 17, 2006 through August 9, 2006.

Dated: New York, New York
      June 10, 2010

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
Lewis J. Liman

One Liberty Plaza, New York, New York 10006
(212) 225-2000
Attorneys for IMAX Corporation, Richard L. Gelfond,
Bradley J. Wechsler, Francis T. Joyce, and Kathryn A.
Gamble

26