# EXHIBIT 9

**COURT FILE NO.:** CV-06-3257-00
**DATE:** 20091214

**ONTARIO**

**SUPERIOR COURT OF JUSTICE**

| | | |
|---|---|---|
| **BETWEEN:** | ) | |
| MARVIN NEIL SILVER and CLIFF COHEN | ) | A.D. Lascaris, W. Sasso, M. Robb and J. Strosberg, for the Plaintiffs |
| Plaintiffs | ) | |
| **- and -** | ) | |
| IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER and FRANCIS T. JOYCE | ) | R.P. Steep and D.M. Peebles for the Defendants and Proposed Defendants |
| Defendants | ) | |

Proceeding under the *Class Proceedings Act, 1992*

**REASONS FOR DECISION:**
**Rule 21 Motion and Motion for Certification**

**TABLE OF CONTENTS**


**The Motions and The Proceedings**

A. The Test for Certification
B. The Principal Issues on the Certification Motion
C. Section 5(1)(a) of the CPA: Do the Pleadings Disclose a Cause of Action?

1. The Misrepresentation Claims
    (a) Negligent Misrepresentation and the Duty of Care
    (b) Reliance as an Element of Misrepresentation
    (c) "Reckless" Misrepresentation

2. Negligence *Simpliciter*
3. Conspiracy
4. Vicarious Liability

D. Section 5(1)(b) of the CPA: Is there an Identifiable Class Represented by the Representative Plaintiffs?

1. The Proposed Class Definition
2. The "Identifiable Class" Requirement
3. Is the Proposed Class Over-Inclusive as Including Claims of Persons Who May Have No Claims?
4. Certification of a Global Class
    (a) Positions of the Parties
    (b) The Court's Authority to Certify National and International Classes
    (c) Considerations of "Order and Fairness" – Should a Global Class be Certified in this Case?
        (i) The Relevance of the U.S. Proceedings
        (ii) Conflict of Laws and Complexity

E. Section 5(1)(c) of the CPA: Do the Claims of the Class Members Raise Common Issues?

1. General Principles
2. The Proposed Common Issues
3. Proposed Common Issues – Common Law and Statutory Misrepresentation
4. Proposed Common Issues – Negligence *Simpliciter*
5. Proposed Common Issue – Conspiracy
6. Proposed Common Issues – Damages
7. Other Proposed Common Issues

F. Section 5(1)(d) of the CPA: Is a Class Proceeding the Preferable Procedure for the Resolution of the Common Issues?

G. Section 5(1)(e) of the CPA: Are the Representative Plaintiffs Appropriate? Have they Produced a Workable Litigation Plan?

**Conclusion**

(*Bywater v. Toronto Transit Commission*, [1998] O.J. No. 4913 (Gen. Div.), at paras. 10-11; *Boulanger v. Johnson & Johnson Corp.*, [2007] O.J. No. 179 (S.C.), at para. 22, leave to appeal to the Divisional Court refused [2007] O.J. No. 1991 (S.C.)).

[107] The submission by the defendants in this case that the class is overbroad because some of the class members may not have claims depends on their contention that there will be individual issues (such as reliance and damages) to be decided after the common issues have been determined. While the plaintiffs assert that reliance (based on the efficient market theory) and damages (contending that an aggregate assessment will be appropriate) will not be individual issues in this case, even if they are wrong and individual issues remain after the determination of the common issues, this is not an impediment to certification. As Cullity J. noted in *Heward v. Eli Lilly & Co.*, [2007] O.J. No. 404 (S.C.), at para. 69, "whenever, because of the existence of individual issues, a judgment on the common issues in favour of the plaintiffs will not determine a defendant's liability, it will always be possible - and invariably likely - that an acceptable class will include persons who will not have valid claims".

**4. Certification of a Global Class**

[108] The principal challenge by the defendants to the proposed class definition is that it is overbroad because it includes non-residents of Canada, the resolution of whose claims may depend on the application of the laws of other jurisdictions. The question of whether a global class should be certified raises issues of the jurisdiction that may be exercised by an Ontario court over non-resident class members, and whether, as a matter of discretion, such jurisdiction should be exercised by certifying a global class. The defendants argued the question as part of the "preferable procedure" analysis[10], and indeed the discussion that follows addresses the considerations relevant to both ss. 5(1)(a) and (d) of the CPA. For convenience, the issue of whether a global class can and should be certified will be addressed at this point in these reasons.

**(a) Positions of the Parties**

[109] The plaintiffs assert that the Ontario court has clear jurisdiction over the subject matter of the litigation. IMAX is a Canadian corporation with its registered office in Mississauga. The alleged misconduct relates to the accuracy of the Company's financial statements which were prepared and audited in Ontario. The claims of all class members are related to claims that are properly asserted by the representative plaintiffs in Ontario. The class proceedings objectives of judicial economy, access to justice and behaviour modification

would best be met by certifying a class defined to include all persons, including non-residents, who acquired IMAX securities on the TSX and NASDAQ and held such securities during the class period.

[110] The defendants, while acknowledging the authority of the court to certify a class with non-resident members, submit that it would be wrong to certify a global class in the present case. According to IMAX's records as of February 14, 2005, there were 39,511,959 shares outstanding. Approximately 10-15% of the shareholders were Canadian residents, with the balance of outstanding common shares held by American or other non-Canadian residents.[11] From this, the defendants infer that the proposed global class would contain a similar percentage of non-Canadian resident shareholders. The defendants suggest that it would be extraordinary for the court to recognize a class where most members are from outside the jurisdiction.

[111] The defendants propose that if a class is certified, it should consist of TSX purchasers of IMAX shares resident in Canada, and that it would be premature to certify a worldwide class, particularly where there is an existing proceeding in the U.S. They argue that it would be better to certify the Canadian class only, with leave to the plaintiffs to return to the court, depending on what may occur in the U.S. Proceedings (presumably if the U.S. court refuses certification).

[112] The final argument of the defendants in opposition to the certification of a global class is based on anticipated conflict of laws concerns. A worldwide class would include class members who individually would have received and relied upon the misrepresentation, and suffered the consequences of the misrepresentation, in places other than Ontario. Their claims may be subject to the laws of various jurisdictions, adding complexity to the proceedings. As a result, a class proceeding including U.S. residents would not be the "preferable procedure".

[113] The position taken by the defendants in this motion with respect to certification of a global class contradicts their arguments made in opposition to certification in the U.S. Proceedings.[12] (IMAX's brief and other documents in the U.S. Proceedings were filed on consent in these proceedings, and were the subject of argument in April 2009).

[114] Relying on the fact that IMAX is a Canadian corporation organized under the laws of Canada with its principal place of business in Canada, IMAX asserted in the U.S. Proceedings that the Ontario court would have jurisdiction over the claims of a global class, and that the connection between the dispute

and this jurisdiction is at least as strong as the connection between the dispute and the United States.[13] IMAX argued that it would be preferable to litigate the issues in dispute in the pending Ontario proceedings. IMAX asserted, "only the Canadian court is in a position to grant full relief to all purchasers of IMAX stock", implying that the statutory claim under the OSA, which does not require proof of reliance, would be available to all class members.[14]

[115] IMAX appended to its argument against certification in the U.S. Proceedings the expert report of Professor Poonam Puri, of Osgoode Hall Law School[15], that addressed among other things, the inherent authority of the Ontario court to certify a global class, and cited examples of cases where Ontario courts had exercised such jurisdiction to certify class actions comprising international class members. Professor Puri's report also detailed the statutory claim available to plaintiffs under the OSA, without discussion of whether the remedy would be available to class members resident outside Ontario or those who had purchased their shares on NASDAQ.[16]

[116] While the contradiction in the positions taken by IMAX in responding to the certification motions in the two jurisdictions is not determinative of whether this court should certify a global class in these proceedings, it is nonetheless revealing. If IMAX is successful in the position it has taken in the U.S. Proceedings, the U.S. court may decide not to certify a global class or may decline certification altogether on the basis that a more effective remedy is available to the class in the Ontario proceedings. The inconsistency in the defendants' submissions in the two jurisdictions suggests that their opposition to certification of a global class in Ontario is not in fact based on *bona fide* concerns about the appropriateness of this court determining the claims of non-residents. Rather, their objective appears to be to limit the size of the class and so reduce their potential liability for damages.

**(b) The Court's Authority to Certify National and International Classes**

[117] When national or international classes are proposed in class actions, the certifying court must consider whether it has jurisdiction *simpliciter* and whether it would be appropriate to assume jurisdiction over the claims of class members who reside outside the province. This issue has attracted significant attention in recent years and remains contentious. In a recent decision of the Supreme Court of Canada, *Canada Post Corporation v. Lépine*, [2009], 1 S.C.R. 549 (at para. 57), LeBel J. urged the provinces to address through legislation the jurisdictional issues raised by national and international class actions[17].

[118] Class proceedings involving non-resident class members present challenges for both the assumption of jurisdiction (that is the decision to certify a class that includes non-residents) and the recognition and enforcement of judgments of other courts where jurisdiction over non-resident class members has been assumed. The issue has been described by Craig Jones and Angela Baxter as follows:

> The unique aspect of opt-out class actions is that courts purport to take jurisdiction over absent *plaintiffs*. A certification binds a class of such persons to a decision of the court, or a settlement approved by the court, and it does it according to provincial law. In an opt-out action, it does so without their active consent, and in many cases without their actual knowledge that a proceeding affecting their rights is underway.[18] (Emphasis in original.)

[119] The decision to certify a class with non-residents does not of course determine whether a settlement or other disposition within Ontario will be recognized outside the jurisdiction to bind non-resident class members. As Brockenshire J. noted at first instance in *Nantais v. Teletronics Proprietary (Canada) Ltd.* (1995), 25 O.R. (3d) 331 (Gen. Div.), in certifying a class proceeding against a pacemaker manufacturer on behalf of a national class, the "potential problem" of recognition was "something to be resolved in another action [by a non-resident class member] before another court in another jurisdiction": at p. 346. In dismissing the application for leave to appeal, at 25 O.R. (3d) 347 (Div. Ct.), Zuber J. noted at p. 350: "whether the result reached in an Ontario court in a class proceeding will bind members of the class in other provinces who remained passive and simply did not opt out, remains to be seen".

[120] Nevertheless, as recent decisions in Ontario demonstrate, the issues of certification and recognition of class proceedings including non-resident members involve consideration of the same factors. The court must have jurisdiction over the class members (through a "real and substantial connection" between the jurisdiction and their claims) and the court must find that the assertion of jurisdiction is consistent with the principles of "order and fairness".

[121] Numerous national classes have been certified in Ontario. In *Carom v. Bre-X Minerals Ltd.* (1999), 44 O.R. (3d) 173 (S.C.) ("*Carom [Certification]*"), aff'd 46 O.R. (3d) 315 (Div. Ct.), rev'd on other grounds 51 O.R. (3d) 236 (C.A.)., Winkler J. certified a national class consisting of shareholders and former shareholders of various corporate defendants whose investment value had declined after it was revealed that the defendants had disseminated false information. The Court applied the "real and substantial connection" test from *Morguard Investments Ltd. v. DeSavoye*, [1990] 3 S.C.R. 1077, finding that such

a connection to Ontario existed on the basis of the incorporation and/or operation of the various corporate defendants in Ontario, the trading of their shares on the TSE, and the generation, public dissemination, and allegedly negligent verification of the false information in Ontario. Winkler J. also found that the notice requirements and opt-out provisions of the CPA prevented any prejudice to non-resident class members, thus making the assumption of jurisdiction consistent with the principles of order and fairness.

[122] In *Wilson v. Servier Canada Inc. et al.* (2000), 50 O.R. (3d) 219, Cumming J. certified a national class of patients who suffered from heart disease after being prescribed a weight loss drug. He cited, at para. 92, Professor Castel's *Canadian Conflict of Laws*, 4th ed.:[19]

> [T]he test for determining whether a real and substantial connection exists is not demanding or rigid. The court needs to find only a real and substantial connection, not the *most* real and substantial connection, to assume jurisdiction." [Emphasis in original].

[123] Even in cases where the only connection between a non-resident class member and the jurisdiction is the sharing of common issues with resident class members, jurisdiction may be assumed. In *McCutcheon v. The Cash Store Inc.*, (2006), 80 O.R. (3d) 644 (S.C.), Cullity J. certified a national class of claimants in a payday loan class action, after conducting a comprehensive review of the authorities. Cullity J. observed that Ontario courts (in contrast to the courts of Saskatchewan and Québec) have taken an expansive approach to jurisdiction, even in cases where non-resident class members had no connection to the jurisdiction except their sharing of common issues with resident class members. His decision was consistent with a number of Ontario authorities, including *Baxter v. Canada (Attorney General)*, [2005] O.J. No. 2165 (S.C.), where Winkler J. observed that where a class action involving intra-provincial plaintiffs could be certified, and the common issues forming the basis for the certification are shared by both the resident class and extra-provincial non-residents against the defendant, the existence of such common issues provides a "real and substantial connection" of the non-residents to the forum in relation to the action.

[124] Classes including international members have been certified by Ontario courts without any detailed consideration of the jurisdictional issues in *Bendall v. McGhan Medical Corp.* (1993), 14 O.R. (3d) 734 (Gen. Div.) (breast implant case – no territorial limitation on class members); *Robertson v. Thomson Corp.* (1999), 43 O.R. (3d) 161 (S.C.) (class comprised of creators and/or owners of copyright in and to certain works published in Canada in print media); *Cheung v. Kings Land Development Inc.* (2002), 55 O.R. (3d) 747 (S.C.), leave to appeal refused [2002]

O.J. No. 336 (Div. Ct.) (class included Hong Kong residents); *Brimner v. Via Rail Canada Inc.* (2002), 50 O.R. (3d) 1145 (S.C.) (class comprised of all persons traveling on a Windsor-Toronto train). International classes have been certified for settlement purposes in *Nutech Brands Inc. v. Air Canada*, [2008] O.J. No. 1065 (S.C.) and *Mondor [Settlement].*

[125] While there are no reported Ontario appeal court decisions reviewing a decision to certify a global class, the issue of when a domestic court can assert jurisdiction over the claims of non-residents was addressed by the Court of Appeal in the context of the recognition and enforcement in Ontario of a foreign judgment incorporating a settlement of a class action: *Currie v. McDonald's Restaurants of Canada Ltd.* (2005), 75 O.R. (3d) 321 (C.A.).

[126] *Currie* involved the enforcement in Ontario of a settlement of an international class proceeding from Illinois. The defendants moved to stay parallel class proceedings in Ontario based on the settlement that included Ontario residents. Sharpe J.A. affirmed the importance of national and international classes at paras. 14 and 15:

> Ontario residents frequently engage in cross-border activities that may become the subject of class action litigation in Ontario, in another province or in a foreign jurisdiction. Several Ontario trial courts have authorized national and international classes: *Robertson v. Thomson Corp.* (1999), 43 O.R. (3d) 161 (S.C.J.) (international class), *Carom v. Bre-X Minerals Ltd.* (1999), 44 O.R. (3d) 173 (S.C.J.) (national class) and *Wilson v. Servier* (2000), 50 O.R. (3d) 219 (S.C.J.) (national class). In *Mondor v. Fisherman; CC & L Dedicated Enterprise Fund (Trustee of) v. Fisherman*, [2002] O.T.C. 317, Cumming J. approved a settlement in a class action where the class included American and other foreign plaintiffs. Legislation in several provinces specifically contemplates the inclusion of non-resident class members: *Class Proceedings Act*, S.A. 2003, c. C-16.5, ss. 7(1)(3) and 17(1)(b); *Class Proceedings Act*, R.S.B.C. 1996, c. 50, ss. 6(2) and 16(2); *Class Proceedings Act,* C.C.S.M., c. C130, s. 6(3); Newfoundland and Labrador Class Actions Act, S.N.L 2001, c. C-18.1, ss. 7(2) and 17(2)-(5); *Class Actions Act*, S.S. 2001, c. C-12.01, ss. 8(2) and 18(2).
>
> There are strong policy reasons favouring the fair and efficient resolution of interprovincial and international class action litigation: *Vitapharm Canada Ltd. v. F. Hoffman-LaRoche Ltd.* (2001), 6 C.P.C. (5th) 245 at para. 27 (Ont. S.C.J.), aff'd (2002), 20 C.P.C. (5th) 65 (Ont. Div. Ct.), aff'd (2003), 30 C.P.C. (5th) 107 (Ont. C.A.); *Wilson v. Servier Canada Inc.*, above at 243-4 (S.C.J.); *Wilson v. Servier Canada Inc.* (2002), 59 O.R. (3d) 656 (S.C.J.) at 664-670. Conflict of law rules should recognize, in appropriate cases, the importance of having claims finally resolved in one jurisdiction. In some cases, Ontario courts will render

> judgments affecting the rights of non-residents and in other cases, Ontario residents will be affected by class action proceedings elsewhere. Ontario expects its judgments to be recognized and enforced, provided its courts assert jurisdiction in a proper manner and comity requires that, in appropriate cases, Ontario law should give effect to foreign class action judgments.

[127] Sharpe J.A. went on to recognize three pre-conditions for the recognition of a judgment binding an unnamed plaintiff who has not opted out of an international class: (a) the existence of a real and substantial connection linking the cause of action to the foreign jurisdiction, (b) adequate representation of the rights of non-resident class members, and (c) procedural fairness to non-resident class members, including adequate notice (at para. 30).

[128] The Court found that a "real and substantial connection" to the Illinois jurisdiction existed by reason of the facts that the defendant's head office was located in that state and that the alleged wrongful conduct, the manipulation of the random selection of winners of high-value prizes to ensure that no such prizes would be awarded to contestants in Canada, had occurred there. Recognition of the Illinois judgment failed however on the third part of the test, procedural fairness, by reason of inadequacies in the notice given to the Canadian resident class members.

[129] There is accordingly no doubt that this court has the authority to certify an international class if there is a "real and substantial connection" between the claims asserted on behalf of the foreign class members and this jurisdiction.

[130] Such connection exists in this case. IMAX is a CBCA corporation with its head office in Ontario. It is a reporting issuer under the OSA and its shares are traded on the TSX. The alleged Representation was made in Ontario through the issuance of the Company's Form 10-K and press releases from IMAX's Mississauga head office (although arguably it may have been made in IMAX's offices in New York as well). The alleged wrongful actions of the Individual Defendants in connection with the preparation and reporting of IMAX's financial statements are alleged to have taken place in Ontario as well as New York. The proposed common issues respecting liability that concern the conduct of the defendants accordingly have a substantial connection to this jurisdiction.

**(c) Considerations of "Order and Fairness" – Should a global class be certified in this case?**

[131] The next question is whether the principles of "order and fairness" would weigh against the certification of a global class in the present case. These

factors are also relevant to the question of whether certification of a global class would be the "preferable procedure", that is "a fair, efficient and manageable method of advancing the claim" that is "preferable to other reasonably available means of resolving the claims of class members" (*Markson v. MBNA Canada Bank* (2007), 85 O.R. (3d) 321 (C.A.), at para. 69, leave to appeal to S.C.C. refused [2007] S.C.C.A. No. 346).

[132] The defendants assert in opposition to certification of a global class: (1) that a comprehensive proceeding has been commenced in the U.S. that would be more appropriate for the pursuit of claims by U.S. residents and (2) that a global class should not be certified because of the likelihood that different laws will apply to the claims of class members depending on where they acquired their shares and where they reside, which will make the proceedings unduly complex and inefficient.

**(i) The Relevance of the U.S. Proceedings**

[133] The fact that there is a pending application for certification in another jurisdiction is not an obstacle to certification of a class that includes non-resident members. It is not unusual for class proceedings to be commenced contemporaneously in different jurisdictions. Even where a class proceeding has been certified elsewhere, parallel proceedings may be permitted to continue. In *Mignacca et al. v. Merck Frosst Canada Ltd. et al.* (2009), 95 O.R. (3d) 269 the Divisional Court dismissed an appeal from an order of Cullity J. refusing to stay a class action that had been certified in Ontario, where an action involving the same claims and the same class had been certified in Saskatchewan. The Court concluded that it would not be an abuse of process to permit two multi-jurisdictional class actions to proceed. The Court recognized that certification orders are not final judgments, but "interlocutory procedural orders that may be amended at any time as the cases proceed" (at para. 39).

[134] There has been no determination to date of the certification issue in the U.S. Proceedings, and if the defendants are successful in their opposition, the U.S. Proceedings may never be certified. At this stage, the prospect that a similar proceeding might be certified in another jurisdiction is not sufficient to prevent the court from certifying a global class in Ontario.

**(ii) Conflict of Laws and Complexity**

[135] The defendants argue that the claims of the various non-resident class members may be subject to the laws of various jurisdictions, and as such a global class proceeding will be unduly complex. In their Certification Factum, the

defendants identify the problems that may arise in the following terms at paras. 16 and 17:

> The Plaintiffs' common law claims, as pleaded, fail to note the multi-jurisdictional nature of the tortious misconduct of which the Defendants are accused. If established, this misconduct will almost certainly be found to have occurred partially (and perhaps primarily) in New York, and partially in Ontario, with the tort in question being directed towards, or "completed" in, each and every jurisdiction (that is, in each province, state or foreign country) where an individual investor felt the consequences of the Defendants' alleged misconduct.
>
> These realities underline a fundamental complication which the Plaintiffs have entirely ignored in asserting common law tort claims on behalf of this proposed worldwide investor class. This complication is the necessity for this Court -- ***following*** the certification of any of the Plaintiffs' tort-based "common issues," but ***before*** any common issue trial can be held -- to undertake individual determinations of which body of substantive law (*i.e.*, the laws of which province, state or foreign county) properly governs each of the causes of action (*i.e.*, negligence *simpliciter*, negligent misrepresentation, fraudulent misrepresentation, conspiracy, vicarious liability, *etc.*) being asserted on behalf of each putative class member, or on behalf of each of the numerous geographically-defined sub-classes which will need to be established. [Emphasis in original.]

[136] The defendants are correct in observing that the plaintiffs at the certification stage have not addressed the potential for conflict of laws issues. Indeed the defendants ignored such issues in their own submissions on certification in the U.S. Proceedings, and all parties appear to have proceeded on the assumption that the OSA statutory claim will be available to all class members in the Ontario proceedings.

[137] There is authority that a court may refuse to certify a class containing non-resident members where the resolution of their claims would clearly involve the application of the statutory laws of multiple jurisdictions.

[138] *McNaughton Automotive Ltd. v. Co-Operators General Insurance Co.* (2003), 66 O.R. (3d) 466 (S.C.) involved a proposed class proceeding by the plaintiff insureds against defendant insurers alleging breach of a statutory condition in their policies of automobile insurance concerning the calculation of salvage costs. In refusing certification, Haines J. observed that the claims of the proposed members of the class would entail the consideration of statutory provisions that differed between provinces, including different processes prescribed thereunder for the resolution of claims. While acknowledging that it would be open to an Ontario court to interpret and apply the laws of other