UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re IMAX SECURITIES LITIGATION | Case No.: 06-cv-06128 (NRB) |

# MEMORANDUM OF LAW IN SUPPORT OF THE MERGER FUND'S MOTION TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL

Arthur N. Abbey
Jill S. Abrams
Nancy Kaboolian
Richard B. Margolies
ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, New York 10016
Tel: (212) 889-3700
Fax: (212) 684-5191

*Proposed Lead Counsel*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

FACTUAL BACKGROUND .......... 3

ARGUMENT .......... 5

I. THE FUND SHOULD BE APPOINTED LEAD PLAINTIFF .......... 5

A. The Fund Satisfies the Lead Plaintiff Provisions of the PSLRA .......... 5

B. The Fund Has Complied With the PSLRA and the Order .......... 5

C. The Fund Has the Largest Financial Interest in the Relief Sought .......... 6

D. The Fund Otherwise Satisfies Fed. R.Civ.P. 23 .......... 7

(a) The Fund's Claims Are Typical of the Claims of the Class .......... 8

(b) The Fund and its Counsel Will Fairly and Adequately Represent the Interests of the Class .......... 8

II. THIS COURT SHOULD APPROVE THE FUND'S CHOICE OF LEAD COUNSEL .... 9

CONCLUSION .......... 9

# TABLE OF AUTHORITIES

## Cases

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285(2d Cir. 1992) ........ 8,9

*In re IMAX Securities Litig.*, No. 06-CIV. 6128 (NRB),
2010 U.S. Dist. LEXIS 135341 (S.D.N.Y. Dec. 20, 2010) ........ passim

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ........ 7

*In re Vivendi Universal, S.A. Sec. Litigation*,
02 Civ. 5571 (RJH)(HNP)(S.D.N.Y.) ........ 9

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ........ 3, 9

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
549 F. 3d 100 (2d Cir. 2008) ........ 1, 4

## Statutes

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ........ 5

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ........ 2, 7

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) ........ 7

15 U.S.C. 78u-4(a)(3)(B)(iii)(II) ........ 7

§21D(a)(3)(B)(v) ........ 9

## Other Authorities

H.R. Conf. Rep No. 104-369 (1995) ........ 2

## Rules

Fed. R. Civ. P. 23 ........ passim

**PRELIMINARY STATEMENT**

The Merger Fund (hereinafter "the Fund" or "Movant") respectfully submits this motion in response to the Court's December 20, 2010 Memorandum and Order denying Snow Capital Investment Partners, L.P.'s ("Snow") motion for class certification and directing that lead plaintiff applications be filed within 21 days, *In re IMAX Securities Litig.*, No. 06-CIV. 6128 (NRB), 2010 U.S. Dist. LEXIS 135341 (S.D.N.Y. Dec. 20, 2010) ("Order"), and pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for entry of an order: (i) appointing the Fund as the lead plaintiff herein and (ii) approving its selection of Abbey Spanier Rodd & Abrams, LLP ("Abbey Spanier") as lead counsel for the Class.

Movant is a mutual fund and an advisee of the original lead plaintiff in this action, Westchester Capital Management, Inc. (now known as Westchester Capital Management, LLC) ("Westchester"). It is an investment company organized as a trust under the laws of the Commonwealth of Massachusetts and is registered under the Investment Company Act of 1940. As a result of its purchases of IMAX common stock during the Class Period, the Fund suffered losses of over $3 million.

While Westchester's motion for class certification was pending, and after the Second Circuit's decision in *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP* ("*Huff*"), 549 F. 3d 100 (2d Cir. 2008), Snow moved for reconsideration of this Court's order appointing Westchester as the lead plaintiff. Snow argued that under *Huff*, an investment advisor lacked standing to bring a securities class action because it did not suffer the requisite injury in fact, and that Westchester, which had sued in its capacity as the investment advisor to five fund clients

who had purchased IMAX securities, must be replaced as lead plaintiff. The Court granted Snow's motion and appointed it as the lead plaintiff.

The Fund, which suffered injury in fact by reason of its purchase of, and related losses in, IMAX common stock, now seeks appointment as the lead plaintiff. The Fund believes that it has sustained the largest loss of any qualified investor seeking to be appointed lead plaintiff. The Fund is familiar with the applicable provisions governing the appointment of the lead plaintiff in securities class actions, understands its responsibilities to the class, and is willing and able to oversee the prosecution of this action.

As an institutional investor, the Fund is exactly the type of plaintiff Congress envisioned to lead securities class action lawsuits following the passage of the PSLRA. The PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because among other reasons, institutional investors and other class members with large amounts at stake "will represent the interest of the plaintiff class more effectively than class members with small amounts at stake." H.R. Conf. Rep No. 104-369 (1995), reprinted at 1995 U.S.C.A.A.N. 730. The PSLRA directs the Court to appoint the "most adequate plaintiff" to serve as lead plaintiff and, in making this determination, to presume that this is the entity that, among other things, has "the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

The Fund will ensure that the litigation is conducted in the best interests of the members of the Class and is not subject to any unique defenses that would render it incapable of adequately representing the Class. Therefore, it respectfully requests that the Court grant its motion to be appointed lead plaintiff and approve its selection of Abbey Spanier as lead counsel.

## FACTUAL BACKGROUND[1]

On February 17, 2006, IMAX issued a press release in which it announced its fiscal year 2005 financial results and reported that it had completed 14 theater system installations during the 2005 fourth quarter. *IMAX*, 2010 U.S. Dist. LEXIS 135341, at *6. Its Form 10-K for fiscal year 2005, filed with the Securities and Exchange Commission ("SEC") on March 9, 2006, described a "record" 14 theater system installations and $35.1 million in fourth quarter revenue. *Id.* at *6-7. On August 9, 2006, IMAX issued a press release which, *inter alia*, announced that it was responding to an informal inquiry from the SEC concerning the timing of its revenue recognition, including its application of multiple element accounting ("MEA") to its theater systems sales and leases, and addressed revenue that was recognized for theater system installations in the fourth quarter of 2005 and second quarter of 2006. *Id.* at *6-7. Subsequent IMAX announcements related to the pending SEC revenue recognition inquiries, including the application of MEA, and the expansion of the SEC's investigation to time periods before the 2005 fourth quarter. Ultimately, on July 20, 2007, IMAX filed its 2006 Form 10-K which included the Company's restated financial results for fiscal year 2002 through the first three quarters of 2006. *Id.* at *9-10.

On January 17, 2007, the Court appointed Westchester as lead plaintiff, and approved Abbey Spanier as lead counsel. *Kaplan v. Gelfond*, 240 F.R.D. 88, 96 (S.D.N.Y. 2007); (Docket Entry No. 41). Plaintiffs' Consolidated Amended Complaint ("Complaint") was filed on October 2, 2007 (Docket Entry No. 46). It was brought on behalf of a class of persons who purchased or acquired IMAX stock during the period from February 27, 2003 to July 20, 2007 ("Class Period"). IMAX, the Individual Defendants and defendant PricewaterhouseCoopers

[1] Given the Court's familiarity with this case, Movant has limited its references to the background facts and procedural history necessary to provide context.

LLP each moved to dismiss the Complaint on December 10, 2007 (Docket Entry No. 54). After briefing and oral argument, those motions were denied by the Court in its September 15, 2008 Order (Docket Entry No. 75), and discovery commenced.

During the pendency of Westchester's motion for class certification, the Second Circuit decided *Huff*, 549 F.3d 100, and held that an investment advisor lacked standing to bring a securities fraud claim on behalf of its clients because it did not suffer an injury in fact. Relying on *Huff*, Snow Capital moved for reconsideration of Westchester's appointment as lead plaintiff. On June 29, 2009, this Court granted Snow Capital's motion for reconsideration and appointed it lead plaintiff. *In re IMAX Sec. Litig.*, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29, 2009).

In its Order, this Court found that it could not certify a class with Snow as the class representative because Snow, which purchased its IMAX shares before the Company's release of its fourth quarter 2005 financial results, and sold those shares prior to an August 9, 2006 curative disclosure of misrepresentation associated therewith, could not establish loss causation. *IMAX*, 2010 U.S. Dist. LEXIS 135341, at *22-32 (Order at 18-25). This Court opined that the August 9, 2006 announcement was not a corrective disclosure for misstatements "beyond those that fall within both the temporal (4Q2005 and later) and topical (the application of MEA accounting described in the announcement) limitations of the disclosure itself.", *Id.* at *30, and thus could not be a corrective disclosure for Snow Capital which bought its shares before the announcement of the 2005 fourth quarter results and had sold all of its stock by August 10, 2006. *Id.* at *49. This Court found that Snow Capital was unable to establish loss causation--

> and at a minimum, is subject to unique defenses which may threaten to become the focus of the litigation (and which would not be the focus of the litigation for class members who either purchased shares after February 17, 2006, or who purchased prior to February 17, 2006 and held through a subsequent alleged

> corrective disclosure)...

*Id.* at *51 (Order at 40).

The Fund, which purchased its shares after the February 17, 2006 announcement of IMAX's 2005 fourth quarter and full year results, and continued to hold shares after August 9, 2006, is not subject to any unique defenses and, as is discussed more fully below, satisfies all of the lead plaintiff requirements.

## ARGUMENT

## I. THE FUND SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The Fund Satisfies the Lead Plaintiff Provisions of the PSLRA

Under Section 21D(a)(3)(B) of the Exchange Act, courts are to consider any motion made by a class member and appoint as the lead plaintiff the member or members that the court determines to be most capable of adequately representing the interests of class members.

In determining the "most adequate plaintiff" the PSLRA provides that:

> [T]he Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§21D(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

### B. The Fund Has Complied With the PSLRA and the Order

Pursuant to the PSLRA and within the twenty-one day deadline set by this Court, the Fund has timely moved for appointment as the lead plaintiff. Through its authorized agent, Roy

Behren, Movant signed a certification stating that it has reviewed the Complaint and is willing to serve as a representative party on behalf of the Class. *See* Margolies Dec., Ex. A. The Fund has suffered losses of between $3,254,827.20 and $3,633,937 in connection with the acquisition of IMAX securities, depending upon the methodology applied to its transactions in IMAX common stock.[2] *See* Margolies Dec. Ex. B, C, D and E. In addition, the Fund has selected and retained Abbey Spanier to represent it and the Class. Abbey Spanier is extremely competent and experienced in securities class actions. *See* Margolies Dec. Ex. F.

**C. The Fund Has the Largest Financial Interest in the Relief Sought**

The most adequate plaintiff is the person or group of persons that in the determination of the Court has the largest financial interest in the relief sought by the class. The Fund's certification demonstrates that, during the Class Period, it purchased and sold 1,284,005 shares of IMAX common stock at prices artificially inflated by the defendants' false and misleading statements.

The Fund's losses were calculated by applying the traditional LIFO ("last in, first out") and FIFO ("first in, first out") methodologies to the shares purchased and sold. Because Movant did not hold any IMAX shares prior to the beginning of the Class Period[3] its losses are $3,633,937 under either the LIFO or FIFO basis. *See* Margolies Dec., Ex. B and C.

Movant's losses were also calculated based on this Court's determination that there is no loss causation for shares purchased after IMAX's 2005 fourth quarter and sold before IMAX's

---

2 The losses suffered by the Fund, as detailed herein, are not the same as legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the executed certification required under Section 21D of the Exchange Act and based upon reference to information concerning the market for IMAX's common stock.

3 The Fund began purchasing its shares on March 14, 2006, after the issuance of IMAX's February 27, 2006 press release addressing its fourth quarter and fiscal year 2005 results and its March 9, 2006 Form 10-K.

August 9, 2010 corrective disclosure. The Fund sold some of its shares prior to the August 9, 2006 disclosure. Any losses it suffered for the pre-disclosure period were eliminated from the calculation, resulting in $3,585,669.41 in LIFO losses and $3,254,827.20 in FIFO losses. *See* Margolies Dec., Ex. D at p.5 and E at p.5, respectively.

To the best of its knowledge, the Fund has the largest financial interest in the relief sought by the Class under either methodology and is presumptively the most adequate Lead Plaintiff pursuant to the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

**D. The Fund Otherwise Satisfies Fed. R. Civ. P. 23**

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of the class representative, Rule 23(a) requires that the claims be typical of the claims of the class and that the representative will fairly and adequately protect the interests of the class. At this stage of the action, the Fund "need only make a preliminary showing that it satisfy the typicality and adequacy requirements of Rule 23." *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009).

Moreover, the PSLRA provides that the presumption in favor of the most adequate plaintiff may be rebutted only upon proof that the individuals or the group "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. 78u-4(a)(3)(B)(iii)(II). Thus, in deciding a lead plaintiff motion, the Court may limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.

As detailed below, the Fund satisfies the typicality and adequacy requirements of Rule 23.

**(a) The Fund's Claims Are Typical of the Claims of the Class**

The typicality requirement of Rule 23(a)(3) is satisfied when a named plaintiff has: (a) suffered the same injuries as the absent class members; (b) as a result of the same course of conduct by defendants; (c) and its claims are based on the same legal issues. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). This Court has already determined that there are multiple common questions of law and fact in this case. *IMAX*, 2010 U.S. Dist. LEXIS 135341, at *21 (Order at 16). Like the Class members, Movant claims that the defendants violated the Exchange Act by publicly disseminating materially false and misleading statements which failed to disclose material adverse facts about IMAX during the Class Period, that it acquired IMAX stock at prices inflated by the defendants' misrepresentations and omissions and that it was damaged thereby. The typicality requirement is satisfied here because the claims asserted by the Fund are based on the same legal theory and arise "from the same course of events, and each class member makes similar legal arguments to prove defendant's liability." *Drexel Burnham*, 960 F.2d at 291.

The Fund can establish loss causation given its post-fourth quarter 2005 IMAX share purchases and post-August 9, 2006 sales. It does not suffer from the infirmities suffered by Snow, or from any other infirmity, and is not subject to any unique defenses which threaten to become the focus of the litigation.

**(b) The Fund and its Counsel Will Fairly and Adequately Represent the Interests of the Class**

In deciding whether the adequacy requirement of Rule 23 has been met, courts consider

whether the plaintiff's interests are antagonistic to the interest of other class members and whether plaintiff's counsel is "qualified, experienced and able to conduct the litigation." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). The Fund has no interest that is antagonistic to the interests of the other members of the Class. Roy Behren, who was Westchester's Chief Compliance Officer, a portfolio manager for the Fund and provided deposition testimony in connection with Westchester's motion for class certification, is now Co-President and Chairman of the Board of the Fund. The Fund is represented by Abbey Spanier, whose lead plaintiff application was previously approved by the Court in this case. *Kaplan,* 240 F.R.D. at 96. The Class will undoubtedly benefit from the knowledge of the case possessed by Mr. Behren and his counsel, Abbey Spanier.

## II. THIS COURT SHOULD APPROVE THE FUND'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval. *See* §21D(a)(3)(B)(v). The Fund has selected the law firm of Abbey Spanier to serve as lead counsel. In addition to having served as lead counsel for Westchester in this matter, Abbey Spanier has extensive experience in the area of securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. For example, Abbey Spanier is lead counsel in *In re Vivendi Universal, S.A. Sec. Litigation*, 02 Civ. 5571 (RJH)(HNP)(S.D.N.Y.) which culminated in a January 2010 jury verdict finding Vivendi liable on 57 material misstatements after a three month trial. *See* Margolies Dec . Ex. F.

## CONCLUSION

For the foregoing reasons, the Fund respectfully requests that the Court: (i) appoint the

Fund as lead plaintiff; and (ii) approve its choice of Abbey Spanier Rodd & Abrams, LLP as lead counsel.

Dated: January 10, 2011

Respectfully Submitted,

**ABBEY SPANIER RODD & ABRAMS, LLP**

By: ______________________

Arthur N. Abbey
Jill S. Abrams
Nancy Kaboolian
Richard B. Margolies
212 East 39th Street
New York, New York 10016
Tel: (212) 889-3700
Fax: (212) 684-5191

*Proposed Lead Counsel*