UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re IMAX CORPORATION SECURITIES LITIGATION | : | Civil Action No. 1:06-cv-06128-NRB |
| | : | CLASS ACTION |
| This Document Relates To: | : | MEMORANDUM OF LAW IN SUPPORT OF IRONWORKERS ST. LOUIS DISTRICT COUNSEL PENSION FUND'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL |
| ALL ACTIONS. | x | |

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ....... 1

II. FACTUAL BACKGROUND ....... 2

III. PROCEDURAL HISTORY ....... 4

IV. DISCOVERY COMPLETED TO DATE ....... 5

V. ARGUMENT ....... 5

A. St. Louis Ironworkers Should Be Appointed Lead Plaintiff ....... 5

1. St. Louis Ironworkers Satisfies the Requirement of the PSLRA. ....... 5

2. St. Louis Ironworkers Has Complied with the Exchange Act and the Order ....... 6

B. The Court Should Approve St. Louis Ironworkers' Choice of Counsel ....... 9

C. Even if the Court Fails to Appoint St. Louis Ironworkers as Lead Plaintiff, Robbins Geller Should Continue to Serve as Counsel for the Class in the Action ....... 10

1. Selection or Removal of Lead Class Counsel Requires Court Approval ....... 10

2. The Class Will Incur Substantial Expense and Delay if the Court Does Not Permit Robbins Geller to Continue as Counsel in the Action ....... 11

VI. CONCLUSION ....... 14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ferrari v. Impath, Inc.*,
No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898
(S.D.N.Y. July 20, 2004) ........................................ 1, 8

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) ........................................ 6

*In re Cendant Corp. Litig.*,
182 F.R.D. 144 (D.N.J. 1998) ........................................ 10

*In re Cree, Inc., Sec. Litig.*,
219 F.R.D. 369 (M.D.N.C. 2003) ........................................ 11, 12

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) ........................................ 10

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................ 9

*In re Lucent Tech. Inc. Sec. Litig*,
221 F. Supp. 2d 472 (D.N.J. 2001) ........................................ 11

*In re Merck & Co. Inc. Sec. Litig.*,
432 F.3d 261 (3d Cir. 2005) ........................................ 13

*In re Milestone Sci. Sec. Litig.*,
183 F.R.D. 404 (D.N.J. 1998) ........................................ 11

*Lax v. First Merchs. Acceptance Corp.*,
No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866
(N.D. Ill. Aug. 11, 1997) ........................................ 8

*Maywalt v. Parker & Parsley Petroleum Co.*,
155 F.R.D. 494 (S.D.N.Y. 1994) ........................................ 12

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995) ........................................ 12

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986) ........................................ 8

## TABLE OF AUTHORITIES

**Page**

*Sofran v. LaBranche & Co.*,
220 F.R.D. 398 (S.D.N.Y. 2004) ....................8

*Stewart v. General Motors Corp.*,
756 F.2d 1285 (7th Cir. 1985) ....................12, 13

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)....................4

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(3)(B)....................5, 6, 7
§78u-4(a)(3)(B)(iii)....................6
§78u-4(a)(3)(B)(v) ....................9, 10

Rule 23 of the Federal Rules of Civil Procedure
Rule 23 ....................2, 5, 7, 8
Rule 23(a)....................7, 8
Rule 23(a)(3) ....................8
Rule 23(a)(4) ....................9

**LEGISLATIVE HISTORY**

H.R. Conf. Rep. No. 104-369 (1995),
reprinted in 1995 U.S.C.C.A.N. 679....................6

## I. PRELIMINARY STATEMENT

Ironworkers St. Louis District Council Pension Fund ("St. Louis Ironworkers" or the "Fund") respectfully submits this motion in response to the Court's Memorandum and Order, docketed and entered on December 22, 2010 (the "Order"),[1] requesting that applications to be appointed lead plaintiff be filed within twenty-one days thereof. *See In re IMAX Sec. Litig.*, No. 06-CIV-6128 (NRB) [Docket Entry 148].

St. Louis Ironworkers requests that the Court issue an Order pursuant to Section 21(D)(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"): (i) appointing the Fund as lead plaintiff herein; and (ii) regardless of whether St. Louis Ironworkers is appointed lead plaintiff, permitting Robbins Geller to continue as counsel in this action.

St. Louis Ironworkers is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc*., No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 20, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs). Moreover, as an institutional investor, the Fund is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the class. During the Class Period (defined below), St. Louis Ironworkers incurred a substantial loss on its transactions in IMAX

---

[1] A draft of an order was originally docketed on December 20, 2010. Almost immediately thereafter, that draft was deleted from the docket with a notation that it was filed in error. The actual Order was not docketed and entered until December 22, 2010. This motion is made within 21 days from that date.

common stock. *See* Rothman Decl., Ex. B.[2] In addition, the Fund adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

Regardless of whether the Court appoints St. Louis Ironworkers as the substitute lead plaintiff, Robbins Geller should continue its role as counsel in the action. Robbins Geller has spent thousands of hours and incurred hundreds of thousands of dollars in expenses completing document discovery with Defendants. Along with its forensic accountant and experts, Robbins Geller has analyzed approximately 500,000 pages of highly technical accounting documentation. Through the knowledge that it has obtained, Robbins Geller is uniquely positioned to bring this matter, filed in 2006, to expeditious resolution that is favorable to the class, without the unnecessary delay and duplication of effort that would be associated with a newly appointed lead counsel.

## II. FACTUAL BACKGROUND[3]

This lawsuit arises out of admittedly improper accounting practices at IMAX Corporation ("IMAX" or the "Company") and Defendants' materially false and misleading statements from February 27, 2003 through July 20, 2007, inclusive (the "Class Period") relating thereto.

IMAX's primary revenue generator during the Class Period was its theater systems business, and the number of theater systems installed for customers on a quarterly basis was publicly reported by Defendants as a key metric of IMAX's financial performance. Yet, IMAX prematurely recognized revenue on theater system sales and sales-type leases by circumventing the applicable

---

[2] References to the "Rothman Decl., Ex. __" are to the exhibits attached to the accompanying Declaration of Robert M. Rothman, dated January 12, 2011, and submitted herewith.

[3] These facts are drawn from the discovery produced by Defendants in this action and reviewed by Robbins Geller.

accounting principles and its own accounting policies, thereby materially overstating the Company's publicly reported quarterly and annual earnings and revenue.

On August 9, 2006, IMAX shocked investors when it announced that it was under investigation by the U.S. Securities and Exchange Commission ("SEC") regarding the timing of IMAX's revenue recognition, including its application of multiple element arrangement accounting to its theater systems. Following the Company's partial disclosure of its improper accounting practices and SEC inquiry, on August 9, 2006, the price of IMAX shares crashed, falling by 40.4%, or $3.90, from $9.63 per share to a closing price of $5.73 per share on the following trading day.

Thereafter, the Ontario Securities Commission ("OSC") began its own investigation into IMAX's revenue recognition policies. On March 16, 2007, after finding errors in its accounting for certain expenses and that it misclassified certain costs as capital expenditures rather than expensing them as they were incurred, IMAX announced a delay in the filing of its 2006 Form 10-K. On March 29, 2007, IMAX announced that it had delayed filing its 2006 Form 10-K for a second time. The stated purpose for the delay was to allow IMAX to review its accounting for revenue from theater system installations. IMAX further stated that in the course of completing its previously announced restatement and year-end audit and reviewing the comments it had received from the SEC and the OSC, the Company determined to broaden its review to address certain issues related to these comments "primarily in connection with its revenue recognition for certain theater system installations in previous periods, including the fourth quarter of 2005." Between April 12 and July 19, 2007, the Company provided various updates to the public on the status of its accounting review.

Finally, on July 20, 2007, IMAX filed its Form 10-K for the fiscal year ended December 31, 2006, which included the restatement of its financial results for fiscal years 2002 through the first three quarters of 2006 (the "Restatement"). The Restatement ultimately disclosed that a total of 16

theater systems installation transactions, with a total revenue impact of $25.4 million and margin impact of $14.1 million, shifted between reported quarters in their originally reported years (*i.e.*, were recognized too early). In addition, 14 of the theater installation transactions, with a total revenue and margin impact of $27.1 million and $14 million, respectively, shifted between fiscal years (*i.e.*, were recognized too early).

## III. PROCEDURAL HISTORY

This case was filed on August 11, 2006. Seven other cases were filed shortly thereafter. On January 18, 2007, the Court consolidated the eight pending actions and appointed Westchester Capital Management, Inc. ("Westchester Capital") as lead plaintiff. On October 2, 2007, Westchester Capital filed the Consolidated Amended Class Action Complaint (the "Complaint"). On September 16, 2008, the Court issued a Memorandum and Order denying Defendants' motions to dismiss the Complaint.

On April 3, 2009, Snow Capital Management ("Snow Capital") moved for reconsideration of the Court's January 18, 2007 Order appointing Westchester Capital as lead plaintiff. Snow Capital based its motion on the Second Circuit's holding in *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) that an investment advisor such as Westchester Capital lacked standing to bring a securities fraud claim on behalf of its clients because it did not suffer injury in fact. On June 29, 2009, the Court removed Westchester Capital and appointed Snow Capital as lead plaintiff and Robbins Geller as lead counsel.

Snow Capital thereafter moved for class certification. In its Order docketed and entered on December 22, 2010, the Court denied Snow Capital's motion for class certification and requested that new applications to be appointed lead plaintiffs be filed within 21 days thereof.

## IV. DISCOVERY COMPLETED TO DATE

As of the time of the Court's Order, document discovery between the parties was complete. Robbins Geller reviewed approximately 500,000 pages of documents. Assisted by a forensic accountant and economic experts, attorneys from Robbins Geller thoroughly analyzed those documents. Robbins Geller also served subpoenas on more than ten non-parties to obtain additional documentations concerning plaintiffs' allegations. As a result of its efforts, Robbins Geller developed substantial support for the allegations of the Complaint. Accordingly, Robbins Geller is uniquely situated to bring this matter to a favorable and expeditious resolution for the class.

## V. ARGUMENT[4]

### A. St. Louis Ironworkers Should Be Appointed Lead Plaintiff

#### 1. St. Louis Ironworkers Satisfies the Requirement of the PSLRA.

Pursuant to Section 21D(a)(3)(B) of the Exchange Act, courts should consider motions made by class members and appoint the member or members that the court determines to be most capable of adequately representing the interests of class members. In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice. . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

---

4 Except as otherwise noted, all emphasis is added and citations are omitted.

15 U.S.C. §78u-4(a)(3)(B)(iii). *See generally Greebel v. FTP Software,* 939 F. Supp. 57, 64 (D. Mass. 1996).

**2. St. Louis Ironworkers Has Complied with the Exchange Act and the Order**

In the Order, the Court directed that potential lead plaintiffs file applications with the Court within 21 days. A redlined draft of an order was originally posted on the docket on December 20, 2010. However, almost immediately thereafter, that document was deleted from the docket and replaced with an entry stating: "DELETED DOCUMENT. Deleted document number (148) MEMORANDUM AND ORDER. The document was incorrectly filed in this case." Then, on December 22, 2010, the actual Order was placed on the docket and entered. This motion is made within 21 days of the Order and is therefore timely.

St. Louis Ironworkers has duly signed and filed a certification stating that it is willing to serve as a representative party on behalf of the class. *See* Rothman Decl., Ex. A. In addition, St. Louis Ironworkers has selected and retained competent counsel to represent itself and the class. *See* Rothman Decl., Ex. C. Accordingly, St. Louis Ironworkers has satisfied the individual requirements of 15 U.S.C. §78u4(a)(3)(B) and is entitled to have its application for appointment as lead plaintiff and approval of selection of lead counsel as set forth herein, considered and approved by the Court.

**a. St. Louis Ironworkers Is Precisely the Type of Lead Plaintiff Congress Envisioned When it Passed the PSLRA**

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately

benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. St. Louis Ironworkers, as an institutional investor, is precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA. *See id.*

**b. St. Louis Ironworkers Has the Requisite Financial Interest in the Relief Sought by the Class**

St. Louis Ironworkers has a significant financial interest in this case. During the Class Period, as evidenced by, among other things, the accompanying signed certification, *see* Rothman Decl., Ex. A, St. Louis Ironworkers incurred a substantial $65,297.21 loss on its transactions in IMAX stock. *See* Rothman Decl., Ex. B. Therefore, St. Louis Ironworkers satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action and should be appointed lead plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

**c. St. Louis Ironworkers Otherwise Satisfies Rule 23**

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing a financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Lax v. First Merchs. Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 11, 1997). St. Louis Ironworkers satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact"). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *18.

St. Louis Ironworkers satisfies this requirement because, just like all other class members, it: (1) purchased IMAX stock on the NASDAQ during the Class Period; (2) was adversely affected by Defendants' false and misleading statements; and (3) suffered damages as a result thereof. St. Louis

Ironworkers' claims are thus typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of St. Louis Ironworkers to represent the class to the existence of any conflicts between the interest of St. Louis Ironworkers and the members of the class. The Court must evaluate adequacy of representation by considering: (i) whether the class representatives' claims conflict with those of the class; and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004).

Here, St. Louis Ironworkers is an adequate representative of the class. As evidenced by the injuries suffered by St. Louis Ironworkers and the class, the interests of St. Louis Ironworkers are clearly aligned with the members of the class, and there is no evidence of any antagonism between St. Louis Ironworkers' interests and those of the other members of the class. Further, St. Louis Ironworkers has taken significant steps that demonstrate it will protect the interests of the class: it has retained competent and experienced counsel to prosecute these claims. In addition, St. Louis Ironworkers' proposed lead counsel is highly qualified, experienced and, though its efforts to date, possesses an unmatched understanding of the documents underlying the claims in this action. Thus, they are uniquely qualified to conduct this complex litigation in a professional manner.

### B. The Court Should Approve St. Louis Ironworkers' Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. In that regard, St. Louis Ironworkers has selected the law firm of Robbins Geller as lead counsel. Robbins Geller has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Securities Litigation*, No. H-01-3624 (S.D. Tex.), in

which Robbins Geller obtained recoveries which represent the largest recovery ever obtained in a shareholder class action. *See* Rothman Decl., Ex. C. Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

### C. Even if the Court Fails to Appoint St. Louis Ironworkers as Lead Plaintiff, Robbins Geller Should Continue to Serve as Counsel for the Class in the Action

Robbins Geller has been prosecuting this action for more than 18 months. During that time, Robbins Geller has devoted millions of dollars in time and incurred hundreds of thousands of dollars in expenses toward the prosecution of this case. In so doing, Robbins Geller has developed an unparalleled understanding of the facts and circumstances supporting plaintiffs' claims. Replacing Robbins Geller at this juncture would result in unnecessary delay, duplication of effort and extra fees and expenses, all to the detriment of the class.

#### 1. Selection or Removal of Lead Class Counsel Requires Court Approval

Lead plaintiff does not come "inextricably tied to its counsel." *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J. 1998). Rather, the PSLRA requires court approval for selection of lead counsel.[5] Therefore, it requires approval for discharge of previously appointed lead counsel and the appointment of new lead counsel. Specifically, the PSLRA Conference Report states:

---

[5] "The [lead] plaintiff shall, ***subject to the approval of the court***, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v).

> [Congress] does not intend to disturb the Court's discretion under existing law to approve or disapprove the lead plaintiff's choice of counsel when necessary to protect the interests of the plaintiff class.

H.R. Conf. Rpt. No. 104-369, 104th Cong., 1st Sess., at 685 (1995).

A lead plaintiff does not have a unilateral right to appoint a new lead counsel or to oust a previously designated and court-appointed lead counsel merely because it wants to do so. *See In re Lucent Tech. Inc. Sec. Litig*, 221 F. Supp. 2d 472 (D.N.J. 2001). To the contrary, "[t]he judgment of a lead plaintiff is not dispositive in the appointment of lead counsel. Approval of lead counsel necessarily requires an independent evaluation of, among other considerations, the effectiveness of proposed class counsel to ensure the protection of the class." *Id*. at 489. Accordingly, the "court has the discretion to decline to appoint lead counsel that lead plaintiff chooses." *In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 372 (M.D.N.C. 2003). Ultimately, "[t]he selection of lead counsel. . . is 'subject to [the court's] discretionary judgment that lead plaintiff's choice of representative ***best suits*** the needs of the class.'" *See In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 418 (D.N.J. 1998).

### 2. The Class Will Incur Substantial Expense and Delay if the Court Does Not Permit Robbins Geller to Continue as Counsel in the Action

As a result of all that Robbins Geller has learned through prosecuting this action for more than a year and a half, there can be no serious dispute that the needs of the class will be best suited if Robbins Geller is permitted to continue as counsel. Indeed, if Robbins Geller is replaced by the Court, the class will incur substantial additional expenses and the resolution of the case will be unduly delayed.

After more than 18 months of litigation and the investment of huge amounts of attorney time and expenses – generating significant and virtually impossible to duplicate case-specific experience by Robbins Geller – any discretion of a newly appointed lead plaintiff to replace Court-appointed counsel is necessarily reduced. *See Lucent*, 221 F. Supp. 2d at 489 (D.N.J. 2001) ("Approval of lead

counsel necessarily requires an independent evaluation of, among other considerations, the effectiveness of proposed class counsel to ensure the protection of the class."); *Cree*, 219 F.R.D. at 373 ("A court in the exercise of this discretion should consider both the quality and the cost of the legal representation.").

The Second Circuit has refused to permit class plaintiffs to substitute counsel. For instance, in *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995), the Court noted that the "fact that the named plaintiffs in a certified class action have been found to be adequate representatives of the class does not, however, mean that they have the right to replace class counsel at will." Rather, the "ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court." *Id*. On that basis, the Second Circuit affirmed Judge Sweet's refusal to permit the class representative from replacing counsel. *See id.*

As Judge Sweet noted in the underlying decision, discharging class counsel is a "drastic remedy" which the court refused to exercise absent "concretely alleged acts of impropriety by the duly certified Class Counsel, or a showing abridgment of a significant minority of the Class' rights." *Maywalt v. Parker & Parsley Petroleum Co*., 155 F.R.D. 494, 497 (S.D.N.Y. 1994).

Similarly, in *Stewart v. General Motors Corp.*, 756 F.2d 1285 (7th Cir. 1985), the Seventh Circuit affirmed the refusal of the district court to grant a class representative's motion to replace court-appointed lead counsel and substitute new lawyers. The district court denied the request:

> "I do not intend at this late date to permit the members of the class to come in and ask me to substitute counsel. I am going to refuse that – if ***the individual plaintiffs desire individual counsel personally, that's up to them, but so far as the class is concerned, the Court controls who is appointed as an attorney for the members of the class, and I intend to make no further appointment in this connection*** . . . ." tr. June 10, 1982 p. 5.

*Id*. at 1290. The Seventh Circuit affirmed:

> Appellant argues that the class was deprived of making a "fundamental litigation decision" in this case by the district court's denial of the second motion to substitute counsel. It is, of course, within the discretion of the district court whether to permit such a substitution. . . . ***Furthermore, in a class action suit the district court has a fiduciary duty to protect the class members and thus motions to substitute counsel must be carefully scrutinized.***

*Id*. at 1293-94.

According to the Seventh Circuit, the "duplication of effort and delay which would be caused by a substitution were certainly relevant factors for the district judge to consider." *Id.* Those relevant factors of duplication of effort and delay weigh heavily in favor of Robbins Geller continuing as counsel in this litigation. Even assuming that newly proposed replacement lead counsel is a highly competent and experienced plaintiffs' firm in this type of complex litigation, it would take months (if not years) of effort and hundreds of thousands of dollars of expense for them to "get up to speed" on this case. Just reviewing a litigation file the size of this file would be a major undertaking. How does one replicate the countless hours of work and analysis of the hundreds of thousands of pages of documents produced by Defendants? How do you replace the nuanced understanding of how the documents fit together that only such an undertaking can produce? Can this all be done? Well, perhaps it can – but at what cost, what effort, and over how much time?

The class should not be burdened with the type of delay, duplication of effort, excessive legal fees and expenses involved in this kind of counsel replacement effort unless there is a very good and compelling reason for it. And here there is no such reason. Indeed, the delay, duplication of effort, excess legal fees and expenses can all be avoided if Robbins Geller is permitted to continue as counsel.

"Although Congress was confident that the lead plaintiff would select the best counsel, it relied on the courts' power to 'approve or disapprove of the lead plaintiff's choice of counsel when necessary to protect the interests of the plaintiff class.'" *In re Merck & Co. Inc. Sec. Litig.*, 432 F.3d

261, 266 (3d Cir. 2005). Here, if the Court were not to appoint St. Louis Ironworkers, the Court should disapprove any effort by a substitute lead plaintiff to harm the interests of the class and permit Robbins Geller continue as counsel to the class.

## VI. CONCLUSION

For all the foregoing reasons, St. Louis Ironworkers respectfully requests that the Court: (i) appoint St. Louis Ironworkers as lead plaintiff in the action; (ii) permit Robbins Geller to continue as counsel in this action regardless of the identity of the lead plaintiff; and (iii) grant such other relief as the Court may deem just and proper.

DATED: January 12, 2011

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
DAVID A. ROSENFELD
MARIO ALBA JR.

/s/ *ROBERT M. ROTHMAN*
ROBERT M. ROTHMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Lead Counsel

CAVANAGH & O'HARA
PATRICK O'HARA
407 E. Adams Street
Springfield, IL 62701

Additional Plaintiffs' Counsel

CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 12, 2011.

s/ *ROBERT M. ROTHMAN*
ROBERT M. ROTHMAN

ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

E-mail:rrothman@rgrdlaw.com

# Mailing Information for a Case 1:06-cv-06128-NRB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Arthur N. Abbey**
  aabbey@abbeyspanier.com
- **Jill Sharyn Abrams**
  jabrams@abbeyspanier.com
- **Jennifer Laurie Conn**
  jconn@gibsondunn.com,aarias@gibsondunn.com
- **Nancy Kaboolian**
  nkaboolian@abbeyspanier.com
- **Christopher J. Keller**
  ckeller@labaton.com,ElectronicCaseFiling@labaton.com
- **Jonathan K. Levine**
  jkl@girardgibbs.com,ams@girardgibbs.com,chc@girardgibbs.com,amv@girardgibbs.com,cme@girardgibbs.com,ajd@girardgibbs.com
- **Lewis J. Liman**
  lliman@cgsh.com,maofiling@cgsh.com,doliwenstein@cgsh.com,jmathews@cgsh.com
- **Richard Barry Margolies**
  rmargolies@abbeyspanier.com
- **Phyllis Maza Parker**
  pparker@bm.net,emagnus@bm.net
- **Russell David Paul**
  rpaul@bm.net,lbauer@bm.net
- **Mark Samuel Reich**
  mreich@rgrdlaw.com,e_file_ny@rgrdlaw.com
- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com
- **Ronen Sarraf**
  ronen@sarrafgentile.com
- **Evan J. Smith**
  esmith@brodsky-smith.com
- **Catherine A. Torell**
  ctorell@cohenmilstein.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**John Franklin Guild**
Gibson, Dunn & Crutcher LLP
2100 McKinney Ave, Suite 1100
Dallas, TX 75201

**Robert Lieblang**
c/o Girard Gibbs LLP
601 California Street
14th Floor
San Francisco, CA 94108

**Snow Capital Investment Partners, L.P.**
655 West Broadway, Suite 1900
San Diego, CA 92101