**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re IMAX SECURITIES LITIGATION | Case No.: 06-cv-06128 (NRB) |

# THE MERGER FUND'S MEMORANDUM OF LAW IN OPPOSITION TO IRONWORKERS ST. LOUIS DISTRICT COUNSEL PENSION FUND'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

Arthur N. Abbey
Jill S. Abrams
Nancy Kaboolian
Richard B. Margolies
ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, New York 10016
Tel: (212) 889-3700
Fax: (212) 684-5191

*Proposed Lead Counsel*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..................... ii

I. INTRODUCTION ..................... 1

II. ARGUMENT ..................... 1

A. The Merger Fund is the Most Adequate Lead Plaintiff Because it Has the Largest Financial Interest in the Relief Sought by the Class and Otherwise Satisfies Rule 23 ..................... 1

B. The Court Should Not Permit Robbins Geller to Continue as Counsel for the Class in Any Capacity ..................... 4

1. The PSLRA Vests Authority With the Lead Plaintiff to Select and Retain Its Counsel ..................... 4

III. CONCLUSION ..................... 7

# TABLE OF AUTHORITIES

**Cases** **Page**

*Baughman v. Pall Corp.*,
250 F.R.D. 121 (E.D.N.Y. 2008) ........ 3

*Chilton v. Smith Barney Fund Mgmt. LLC,*
365 Fed. Appx. 298 (2d Cir. 2010) ........ 1

*Fitzgerald v. Citigroup, Inc.*,
No. 03 Civ. 4305 (DAB), 2004 U.S. Dist. LEXIS 5066 (S.D.N.Y. March 26, 2004) .... 5

*In re Cavanaugh*,
306 F.3d 726, 732 (9th Cir. 2002) ........ 3

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ........ 3, 5

*In re Cree, Inc., Sec. Litig.*,
219 F.R.D. 369 (M.D.N.C. 2003) ........ 5

*In re IMAX Secs. Litig.*,
No. 06 CIV. 6128 (NRB), 2010 U.S. Dist. LEXIS 135341
(S.D.N.Y. Dec. 22, 2010) ........ 1, 2, 4

*In re Leapfrog Enters. Secs. Litig.*,
No. C-03-05421 RMW, 2005 U.S. Dist. LEXIS 40994 (N.D. Cal. Nov. 23, 2005) ....... 7

*In re Luxottica Group, S.p.A. Sec. Litig.*,
No. 01-CV-3285, 2004 U.S. Dist. LEXIS 21130 (E.D.N.Y. Oct. 22, 2004) ........ 5

*In re Merck & Co. Inc. Securities Litigation.*,
432 F.3d 261 (3d Cir. 2005) ........ 6

*In re Milestone Scientific Sec. Litig.*,
183 F.R.D. 404 (D.N.J. 1998) ........ 5

*In re Smith Barney Transfer Agent Litig.*,
No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728
(S.D.N.Y. Apr. 17, 2006) ........ 5

*In re Telxon Corp. Sec., Litig.*,
67 F. Supp. 2d 803 (N.D. Ohio 1999) ........ 3

*Kapur v. USANA Health Scis., Inc.*,
No. 2:07CV177DAK, 2007 U.S. Dist. LEXIS 77258 (D. Utah Oct. 17, 2007)............. 2

*Maine State Retirement System v. Countrywide Financial Corporation*,
No. 10 Civ. 00302 (C.D. Cal. May 14, 2010) ........................................................ 6

*Maywalt v. Parker & Parsley Petroleum Co.*,
155 F.R.D. 494 (S.D.N.Y. 1994)......................................................................... 6

Maywalt v. Parker & Parsley Petroleum Co.,
67 F.3d 1072 (2d Cir. N.Y. 1995) ...................................................................... 6

*Mohanty v. Bigband Networks, Inc.*,
No. C 07-5101 SBA, 2008 U.S. Dist. LEXIS 32764 (N.D. Cal. Feb. 13, 2008) ........... 2

*Stewart v. General Motors Corp.*,
756 F.2d 1285 (7th Cir. 1985)............................................................................ 6

**Statutes**

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)....................................................................... 1

15 U.S.C. §78u-4(a)(3)(B)(v) ........................................................................... 4

**Rules**

Fed. R. Civ. P. 23................................................................................................ 1, 2

The Merger Fund (the "Fund") respectfully submits this memorandum of law in opposition to the Ironworkers St. Louis District Counsel Pension Fund's ("St Louis") motion for appointment as lead plaintiff and for its choice of lead counsel, and in further support of the Fund's appointment as the lead plaintiff and for approval of Abbey Spanier Rodd & Abrams, LLP ("Abbey Spanier") as lead counsel.

## I. INTRODUCTION

Because the Fund suffered far greater losses than St. Louis and also meets the Rule 23 criteria required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), it should be appointed lead plaintiff and its lead counsel selection should be approved. While St. Louis's counsel, Robbins Geller, posits that it should continue to represent the Class, that motion must be denied given that this Court already rejected its appointment as Class counsel, the Fund has not selected it as lead counsel and there is no other valid reason for its continuation in this litigation.

## II. ARGUMENT

### A. The Merger Fund is the Most Adequate Lead Plaintiff Because it Has the Largest Financial Interest in the Relief Sought by the Class and Otherwise Satisfies Rule 23

The PSLRA and the cases which have applied it are clear and unequivocal that the "plaintiff with the 'largest financial interest in the relief sought by the class' and who 'otherwise satisfies the requirements of [Fed. R. Civ. P.] 23' is presumptively the most adequate plaintiff." *Chilton v. Smith Barney Fund Mgmt. LLC,* 365 Fed. Appx. 298, 299 (2d Cir. 2010); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

After reviewing St. Louis's competing motion, it is clear that the Fund, which suffered losses of between $3,254,827.20 and $3,633,937 in connection with its Class

Period acquisition of IMAX Corporation ("IMAX") stock (over 50 times St. Louis's claimed losses of $65,297.21)[1] and otherwise satisfies Fed. R. Civ. P. 23, is presumptively the most adequate plaintiff.

Despite having the benefit of the Fund's lead plaintiff submission for two days before filing its lead plaintiff motion[2], St. Louis does not even address the Fund's far larger losses or the presumption afforded the Fund as a result. St. Louis simply states that it has a "significant interest in this case", and contends that it should be appointed as the lead plaintiff because it is an institution. St. Louis Mem. at 7.

St. Louis' argument fails for two reasons. First, it ignores the fact that the Fund is also an institution. Second, even if the Fund was not an institution, the very same argument that an institution should be appointed regardless of the size of its loss has previously been made and rejected. *See Mohanty v. Bigband Networks, Inc.*, No. C 07-5101 SBA, 2008 U.S. Dist. LEXIS 32764, at *17-19 (N.D. Cal. Feb. 13, 2008) ("However, a plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead plaintiff than an individual investor with a larger financial interest."(citations omitted)); *Kapur v. USANA Health Scis., Inc.*, No. 2:07CV177DAK, 2007 U.S. Dist. LEXIS 77258, at *6-7 (D. Utah

---

[1] Under this Court's decision denying class certification, there is no loss causation for shares purchased after IMAX's February 17, 2006 announcement of its 2005 financial results and sold before August 9, 2006, or for shares purchased before February 17, 2006 and sold before a corrective disclosure. *In re IMAX Secs. Litig.*, No. 06 CIV. 6128 (NRB), 2010 U.S. Dist. LEXIS 135341 at *51 (S.D.N.Y. Dec. 22, 2010) ("Order"). St. Louis's claimed $65,297.21 loss must be substantially reduced to reflect that determination. While its submission reflects the purchase of 46,946 IMAX shares, only 11,317 of those shares were purchased after February 16, 2006 and sold after August 9, 2006 and thereby includable in the loss calculation. A significant portion of its remaining 35,629 shares were purchased before February 17, 2006 and sold before disclosure of the relevant information identified by the Court, and should be excluded from the loss calculation. *Id.* at *34-36; Rothman Dec., Exs. A and B.

[2] The Court decided the class certification motion herein on December 20, 2010 and directed that lead plaintiff motions be filed within 21 days. It was thereafter replaced and re-docketed on December 22, 2010. The Fund filed its lead plaintiff application on January 10, 2011. St. Louis filed its motion on January 12, 2011, 21 days after the Order was re-docketed.

Oct. 17, 2007); *In re Telxon Corp. Sec., Litig.,* 67 F. Supp. 2d 803, 821-22 (N.D. Ohio 1999); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 128 (E.D.N.Y. 2008).[3] The *Telxon* court explained why St. Louis's argument lacks merit:

> The institutional investor is not presumptively the most adequate plaintiff solely by virtue of its status as an institutional investor, however. If that were the case, Congress would have simply provided that institutional investors are presumptively the most adequate plaintiffs, regardless of the size of financial loss, and saved the Court from the need to engage in the very analysis it undertakes here. Instead Congress chose to use the size of financial loss as the initial proxy for determining whether a particular plaintiff would be the "most adequate plaintiff."

*Telxon*, 67 F. Supp. 2d at 821-22.

The Fund has greater losses, by far, and St. Louis is unable to rebut the presumption that the Fund is the most adequate lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("the Reform Act provides in categorical terms that the only basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy. Once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job. We . . . stress that the inquiry is not a relative one.").

For the foregoing reasons, the Fund should be appointed as lead plaintiff.

---

[3] Robins Geller is aware of this line of cases since its predecessor firm was appointed lead counsel in *Baughman*. The *Baughman* court cited *Telxon* in its reasoning for the appointment of Robbins Geller's client as lead plaintiff.

**B. The Court Should Not Permit Robbins Geller to Continue as Counsel for the Class in Any Capacity**

With the benefit of an early read of the Fund's submission and undoubtedly recognizing that St. Louis would not be selected as the lead plaintiff (and would therefore be unable to choose lead counsel), and having already been rejected as class counsel by this Court[4], Robbins Geller argues that it should be permitted to serve as counsel for the Class in some capacity.[5] Citing a collection of inapposite cases, Robbins Geller argues that its work in the case to date is sufficient to insure its permanent position as class counsel. If a considerable effort by lead counsel were a guarantee of ongoing representation, then Abbey Spanier's discovery work, class certification efforts and defeat of the motions to dismiss should have secured its position and precluded its replacement by Robbins Geller in June 2009.

**1. The PSLRA Vests Authority With the Lead Plaintiff to Select and Retain Its Counsel**

The PSLRA explicitly vests authority in the lead plaintiff to select and retain lead counsel to represent the class it seeks to represent, subject to court approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Fund has chosen Abbey Spanier to serve as lead counsel in this action. Permitting Robbins Geller to serve as counsel to the Class would violate the authority given to a lead plaintiff to select its counsel since "[g]iving the lead plaintiff primary control for the selection of counsel was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors." *Fitzgerald v.*

---

[4] *In re IMAX Secs. Litig.*, No. 06-CIV. 6128 (NRB), 2010 U.S. Dist. LEXIS 135341 at *5.

[5] At different places in its brief, Robbins Geller uses different terminology to describe the role it should play; "counsel in the action" (p. 2),"counsel for the class" (p. 10), "lead class counsel" (p. 10), "lead counsel" (p. 10, 12), "counsel" (p. 11,12), and "class counsel" (p. 12), but none of them has support in the law.

*Citigroup, Inc.*, No. 03 Civ. 4305 (DAB), 2004 U.S. Dist. LEXIS 5066, at *12 (S.D.N.Y. March 26, 2004). The "court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728, at *16 (S.D.N.Y. Apr. 17, 2006), citing *Cendant,* 264 F.3d at 274.

Robbins Geller argues that its knowledge of the case has "reduced" the "discretion of a newly appointed lead plaintiff to replace Court-appointed counsel." St. Louis Mem. at 11. However, a lead counsel appointment is "not irreversible" and "[s]ubsequently-discovered or new facts may warrant modification of prior approval of counsel". *In re Luxottica Group, S.p.A. Sec. Litig.*, No. 01-CV-3285, 2004 U.S. Dist. LEXIS 21130, at *10-11 (E.D.N.Y. Oct. 22, 2004). Courts recognize that the lead counsel appointment usually comes early in the case and "complications" may necessitate replacement. *Id.* The cases cited by St. Louis provide no support for Robbins Geller's application to remain as counsel to the Class. Instead, the quotes included in its brief consist of sound bites that, read in context, belie their application to the situation at hand. Most of those cases involve courts' use of discretion to reject applications for the appointment of multiple lead counsel. *See In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 372 (M.D.N.C. 2003) (the court "... [has not] determined, any reason why co-lead plaintiffs [or co-lead counsel] would be helpful or appropriate or why the presumptive lead plaintiff alone should not be appointed. . . ."); *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 419 (D.N.J. 1998) ("At this stage, the [lead plaintiff] has not demonstrated sufficient need justifying the approval of multiple lead counsel.)); *In re Cendant Corp. Litig.*, 182 F.R.D. 144 (D.N.J. 1998) (the court appointed the lead plaintiff

movant with the largest financial loss and its choice of counsel, and determined that appointment of liaison counsel was unnecessary).

Robbins Geller's assertion that replacing it with other counsel at this stage of the litigation would be detrimental to the class due to delay, duplication of effort and extra fees and expenses was recently rejected by the judge in *Maine State Retirement System v. Countrywide Financial Corporation*, No. 10 Civ. 00302 (C.D. Cal. May 14, 2010). Margolies Dec. Ex. A.[6]

In *Countrywide*, Robbins Geller represented a group of institutional investors seeking lead plaintiff appointment in a federal class action. Prior to its district court application, Robbins Geller litigated against Countrywide in a California state court for two and one-half years. After the state action was dismissed for lack of subject matter jurisdiction, Robbins Geller re-filed claims in federal court. Its clients' motion for lead plaintiff appointment was denied because it was not the movant with the largest financial stake in the litigation. Robbins Geller argued, as it does here, that even though its clients did not have the largest losses, its experience litigating the state action for over two years made it best suited to continue as counsel. The court disagreed:

---

[6] St. Louis cites cases for the proposition that the Second Circuit and other courts have "refused to permit class plaintiffs to substitute counsel." St. Louis Mem. at 12. However, each of those cases turned on their own rather unusual facts. For example, in *Maywalt v. Parker & Parsley Petroleum Co.*, 155 F.R.D. 494 (S.D.N.Y. 1994) (a pre-PSLRA case), four class representatives asked the Court to discharge class counsel due to a purported failure to adequately communicate the parameters of a proposed settlement. Judge Sweet's denial of the class representatives' "hasty application…to replace Class Counsel on the eve of the Settlement Hearing" was affirmed by the Second Circuit. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1076-77 (2d Cir. 1995). *See also Stewart v. General Motors Corp.*, 756 F.2d 1285 (7th Cir. 1985) (pre-PSRA case) (a racial discrimination case in which the district court granted one motion to substitute counsel based on "irreconcilable conflicts" and a subsequent request was denied because it was improperly made). In *In re Merck & Co. Inc. Securities Litigation.*, 432 F.3d 261 (3d Cir. 2005), the defendants objected to the use of separate appellate counsel because the plaintiffs failed to seek court approval, as required by the PSLRA. The court permitted the new appellate counsel to prosecute the appeal, but ordered that court approval for any future counsel changes would be required.

> It is undisputed that IIG and its counsel [Robbins Geller] have more knowledge than any other plaintiff of the claims, defenses and threshold issues in this case. Furthermore, IIG has knowledge of settlement discussions in which no other plaintiff participated. The Court also concedes that a considerable number of attorney hours have been expended by counsel for IIG. Nevertheless, the PSLRA and the Ninth Circuit are clear that the Court cannot engage in the sort of comparative analysis suggested by IIG. *See In re Leapfrog Enters. Secs. Litig.*, [No. C-03-05421 RMW, 2005 U.S. Dist. LEXIS 40994 (N.D. Cal. Nov. 23, 2005)] (finding two years of actively prosecuting the case and an intimate knowledge of the case were "peripheral issues" that could not be the basis for elevating a particular plaintiff or its counsel to lead status). The Court must appoint as lead plaintiff the plaintiff with the greatest financial stake, unless the other plaintiffs can prove it atypical or inadequate.

*Countrywide*, Slip Op. at 11; Margolies Decl. Ex. A.

Here, Abbey Spanier, the original court-appointed lead counsel, has a well-developed understanding of the facts and issues in the case, devoted considerable resources to the litigation during the preparation of the complaint, document review, expert work and through a motion for class certification, and stands ready to continue the prosecution of the litigation. Since June 29, 2009, when this Court granted Snow Capital's motion for reconsideration and appointed it lead plaintiff and Robbins Geller as lead counsel, the class has not been certified and no depositions have been conducted.

Finally, any concern that Robbins Geller has about depriving the class of its work product can be addressed by providing memoranda or other appropriate communications to the new lead counsel. If the case concludes successfully for the Class, Robbins Geller will have the opportunity to make an appropriate fee application and the Court will determine to what, if any, compensation it is entitled.

## III. CONCLUSION

For the reasons stated herein and in its prior submission, the Fund respectfully

requests that the Court appoint it as lead plaintiff and approve its selection of Abbey Spanier as lead counsel, and deny the motion of St. Louis and its counsel.

Dated: January 19, 2011

Respectfully Submitted,

**ABBEY SPANIER RODD & ABRAMS, LLP**

By: ______________________________
Arthur N. Abbey
Jill S. Abrams
Nancy Kaboolian
Richard B. Margolies
212 East 39th Street
New York, New York 10016
Tel: (212) 889-3700
Fax: (212) 684-5191

*Proposed Lead Counsel*