UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re IMAX CORPORATION SECURITIES LITIGATION | : | Civil Action No. 1:06-cv-06128-NRB |
| | : | CLASS ACTION |
| This Document Relates To: | : | MEMORANDUM OF LAW IN OPPOSITION TO THE MERGER FUND'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL |
| ALL ACTIONS. | : | |

REDACTED VERSION – UNREDACTED VERSION FILED UNDER SEAL

Ironworkers St. Louis District Council Pension Fund ("St. Louis Ironworkers" or "Ironworkers") respectfully submits this memorandum of law in opposition to The Merger Fund's motion for appointment as lead plaintiff and its choice of Abbey Spanier Rodd & Abrams, LLP ("Abbey Spanier") as lead counsel, and in further support of Ironworkers' appointment as lead plaintiff and its choice of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel.

## I. PRELIMINARY STATEMENT

Although the losses incurred by St. Louis Ironworkers as a result of the fraud alleged in this lawsuit are less than those claimed by The Merger Fund,[1] The Merger Fund is subject to two unique defenses, either of which disqualifies it from acting as lead plaintiff. First, The Merger Fund assigned its causes of action against IMAX Corp. and the individual defendants (together, "IMAX") to Westchester Capital Management, Inc. ("Westchester"), which was its investment advisor and the original lead plaintiff in this action, on January 16, 2009. Therefore, The Merger Fund is not even entitled to assert claims against IMAX on its own behalf, much less to act as lead plaintiff on behalf of a proposed class of investors. Second, The Merger Fund's purchases and sales of IMAX common stock were timed pursuant to a merger arbitrage investment strategy, and were not influenced by the misleading statements at the heart of this action. For either or both of these reasons, The Merger Fund's ability to serve as lead plaintiff is impaired and its application should be denied.

St. Louis Ironworkers submits that, in light of The Merger Funds' inability to serve as lead plaintiff, Ironworkers should be appointed as lead plaintiff and its selection of Robbins Geller as lead counsel should be approved. Even if the Court declines to appoint Ironworkers to serve as lead

---

[1] St. Louis Ironworkers incurred a substantial loss of $65,297.21. *See* Exh. B to the Declaration of Robert M. Rothman in Support of St. Louis Ironworkers' Motion for Appointment as Lead Plaintiff and Lead Counsel (dated Jan. 12, 2011; Dkt. 157) ("1/12/11 Rothman Decl.").

plaintiff, however, Ironworkers requests that the Court permit Robbins Geller to continue as lead or co-lead counsel.

## II. ARGUMENT

"The presumption [that the party with the largest financial interest in the litigation should be named lead plaintiff] . . . may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb). Although The Merger Fund contends it is not subject to any unique defenses (*see* Merger Fund Mem. at 2, 8),[2] it fails to consider the assignment and investment strategy issues discussed herein, either of which is sufficient to disqualify it from acting as lead plaintiff.

### A. The Merger Fund is Subject to a Unique Defense Because It Assigned Its Legal Interest in This Action to Westchester and Therefore Does Not Have a Cause of Action Against IMAX

The Merger Fund lacks standing to pursue the claims against IMAX arising out of the purchase of IMAX stock at issue in this litigation. On January 16, 2009, The Merger Fund and Westchester entered into the Assignment Agreement, which provided that "[t]he Funds hereby assign, convey, transfer and set over unto Westchester . . . all rights, legal title and interest in the Funds' claims for damages, demands, or causes of action relating to IMAX Corporation securities (the 'IMAX Claims')." *See* Exh. A to the Declaration of Robert M. Rothman, dated January 27, 2011 ("1/27/11 Rothman Decl."). This assignment was Westchester's attempt to cure its lack of Article III standing in response to the Second Circuit's ruling in *W.R. Huff Asset Management v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008). *See In re IMAX Secs. Litig.*, No. 06 Civ. 6128,

[2] "Merger Fund Mem." refers to the Memorandum of Law in Support of The Merger Fund's Motion to be Appointed Lead Plaintiff and for Approval of Lead Counsel (dated Jan. 10, 2011; Dkt. 153).

2009 WL 1905033, at *3-4 (S.D.N.Y. June 29, 2009) (Buchwald, J.). In appointing Snow Capital Investment Partners, L.P. ("Snow Capital") to be lead plaintiff, this Court declined to address whether the assignment cured Westchester's deficiencies under *W.R. Huff*, instead ruling that Westchester was subject to a unique defense. *See id.*

Although the Court did not address the Assignment Agreement, Westchester itself took the position that it was valid and legal. *See* 1/27/11 Rothman Decl. Exh. B at 20-22; *see also id.* Exh. C at 29:17-30:12; 64:4-65:8. Thus, the entity with legal title to The Merger Fund's causes of action against IMAX appears to be Westchester, ***not*** The Merger Fund. *See In re Herley Indus. Inc. Sec. Litig.*, No. 06-2596, 2009 WL 3169888, at *9 & n.10 (E.D. Pa. Sept. 30, 2009) (holding that an assignment of all legal claims by two mutual funds to their investment advisor was valid, and that, for purposes of the litigation, the investment advisor "has now become the real party in interest, and ***the funds no longer have legal title to their claims***") (emphasis added). Notably, The Merger Fund has failed to produce any documentation indicating that the Assignment Agreement is invalid, or that it has regained legal title to its claims against IMAX.

Because The Merger Fund is not the real party in interest and lacks legal title to any cause of action against IMAX, it is subject to a unique defense that would only distract from the litigation against IMAX. As this Court has written, "[t]here seems little reason . . . to subject the class members to such a risk." *IMAX*, 2009 WL 1905033, at *3. Thus, The Merger Fund is not an appropriate candidate for lead plaintiff, and its application should be denied. *See Baydale v. American Exp. Co.*, No. 09 Civ. 3016, 2009 WL 2603140, at *2-3 (S.D.N.Y. Aug. 14, 2009) (holding that a foreign investment advisor should not be named lead plaintiff because the question of standing was uncertain, and "'it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal'") (quoting *IMAX*, 2009

WL 1905033, at *3).[3] *Accord In re Bally Total Fitness Secs. Litig.*, No. 04-C-3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) ("Our concern is that the time and attention [the proposed lead plaintiff] would be required to devote [to its unique defense] . . . would distract it from the claims of the rest of the class."); *see also Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff . . . then the named plaintiff is not a proper class representative.").

### B. Any Reassignment of the Legal Claims by Westchester to The Merger Fund Would Violate New York's Anti-Champerty Statute

Even if The Merger Fund were able to produce evidence that its legal claims against IMAX had been reassigned to it, The Merger Fund would still be subject to a unique defense because such an assignment would violate New York's anti-champerty statute, N.Y. Jud. Ct. Acts Law §489(1).[4] Section 489(1) provides, in pertinent part:

> [N]o corporation or association . . . shall . . . take an assignment of . . . a . . . thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon . . . . Any corporation or association violating the provisions of this section shall be liable to a fine of not more than five thousand dollars; any person or co-partnership, violating the provisions of this section, and any officer, trustee, director, agent or employee of any . . . co-partnership, corporation or association violating this section who, directly or indirectly, engages or assists in such violation, is guilty of a misdemeanor.

---

[3] *See also South Ferry L.P. No. 2 v. Killinger*, --- F.R.D. ---, No. C04-1599, 2011 WL 43725, at *6 (W.D. Wash. Jan. 6, 2011) (holding that since the question of a proposed lead plaintiff's standing was uncertain, it was an "atypical class representative," and therefore "not a proper class representative"); *In re Razorfish, Inc. Secs. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) (denying proposed lead plaintiff's motion for appointment because she was subject to several unique defenses, among them the issue of standing).

[4] The Assignment Agreement expressly provides that it "shall be construed in accordance with and governed by the law of the State of New York." *See* 1/27/11 Rothman Decl. Exh. A at 2.

It is undisputed that The Merger Fund is a corporation or association.[5] It is further undisputed that if Westchester has reassigned the legal claims against IMAX to The Merger Fund, it did so with the intent and for the purpose of permitting The Merger Fund to pursue this action.

If The Merger Fund has taken a reassignment of the legal claims against IMAX from Westchester, it appears to have done so in violation of §489. *See Poloron Prods., Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1015-16 (2d Cir. 1976) ("Section 489 specifically prohibits a corporation from taking an assignment of a claim for the purpose of suing thereon."); *Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363, 375 (2d Cir. 1999) (same); *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 731 N.E.2d 581, 585-86 (N.Y. 2000) (same). As a result, The Merger Fund could be subject to misdemeanor criminal liability under the statute – as could all persons who engaged in or assisted in the violation. *See* N.Y. Jud. Ct. Acts Law §489(1).

Thus, The Merger Fund is subject to a unique defense even if it can prove that it has – in a game of hot potato with Westchester – regained legal title to its cause of action against IMAX. *See Bally Total Fitness*, 2005 WL 627960, at *6 ("The PSLRA . . . provides that we ask simply whether [the proposed lead plaintiff] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."); *see also In re SLM Corp. Secs. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) ("Even if [the] Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise.").

---

[5] The Assignment Agreement states that The Merger Fund is a Massachusetts business trust. *See* 1/27/11 Rothman Decl. Exh. A at 1. As courts in Massachusetts have acknowledged in construing tax statutes, there is "no intrinsic difference between a corporate business trust and a corporation." *Minkin v. Comm'r of Revenue*, 680 N.E.2d 27, 31 (Mass. 1997) (citing *Comm'r of Revenue v. Northeast Petroleum Corp.*, 514 N.E.2d 359, 361 (Mass. 1987)).

### C. The Merger Fund's Investment Strategy Involved Purchases and Sales of IMAX Stock Irrespective of the Misleading Statements at the Core of This Action, Thereby Subjecting The Merger Fund to a Unique Defense

According to The Merger Fund's prospectus dated January 27, 2010, The Merger Fund utilizes a merger arbitrage strategy that is "a highly specialized investment approach generally designed to profit from the successful completion of proposed mergers, takeovers, tender offers, leveraged buyouts, spin-offs, liquidations and other types of corporate reorganizations." 1/27/11 Rothman Decl. Exh. D at 4; *see also id.* Exh. C at 98:5-100:18; 140:12-141:17. As Roy Behren, a portfolio manager for The Merger Fund, explained during his deposition taken in connection with Westchester's original motion for class certification,[6] [redacted] *See id.* at 135:6-11; 137:9-19; 138:22-139:13. Mr. Behren explained that [redacted] (*see id.* at 101:3-7; 147:19-148:12), and that [redacted] *Id.* at 128:21-23.

Because courts are reluctant to certify classes where the proposed class representative has not relied on market efficiency, or has utilized an atypical investment strategy, this merger arbitrage investment strategy subjects The Merger Fund to a unique defense that threatens to become the focus of the litigation. *See Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476-77 (S.D.N.Y. 1989) (stating that a proposed class representative will be faced with a unique defense

---

[6] Mr. Behren is employed by both The Merger Fund and Westchester, and has testified that [redacted] *See* 1/27/11 Rothman Decl. Exh. C at 51:15-23.

when he has not relied on the integrity of the market in purchasing his shares); *Weintraub v. Texasgulf, Inc.*, 564 F. Supp. 1466, 1471 (S.D.N.Y. 1983) (rejecting a proposed class representative who was "a sophisticated speculative trader whose unusual trading activities . . . [gave] rise to [a] unique defense[]"). The class is not well served by a lead plaintiff who will face such a unique and complicated defense. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[T]here is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.") (citations omitted).

### D. St. Louis Ironworkers, the Only Proposed Lead Plaintiff that Satisfies the PSLRA, Should Be Appointed Lead Plaintiff, and Robbins Geller Should Be Appointed Lead Counsel

Under the PSLRA, the "most adequate plaintiff" is presumed to be the movant with the "largest financial interest in the relief sought by the class," 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb), ***unless*** that movant is subject to a unique defense rendering it "incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb). Given the unique defenses described above to which The Merger Fund is subject, St. Louis Ironworkers is the ***only*** movant for lead plaintiff status untainted by unique defenses.

As more fully explained in its motion to be appointed lead plaintiff, St. Louis Ironworkers has substantial losses of $65,297.21, is not subject to any individual defenses, purchased its IMAX securities throughout the Class Period, and, as the Merger Fund concedes,[7] fully satisfies the loss causation requirement set out in *In re IMAX Securities Litigation*, --- F.R.D. ---, No. 06 Civ. 6128, 2010 WL 5185076, at *10-14 (S.D.N.Y. Dec. 22, 2010). Indeed, unlike The Merger Fund, which

---

[7] *See* Memorandum of Law in Opposition to St. Louis Ironworkers' Motion for Lead Plaintiff (dated Jan. 19, 2011; Dkt. 158) at 2 n.1.

purchased all its shares after IMAX's February 17, 2006 announcement of its 2005 financial results,[8] Ironworkers purchased its shares both before and after that date, qualifying it to represent ***all*** the members of the proposed class, not just a subset. *See IMAX*, 2010 WL 5185076, at *14 (recognizing distinction between those shareholders who purchased before February 17, 2006 and those who purchased afterward). Therefore, St. Louis Ironworkers has incurred the largest losses of those class members who have moved to be lead plaintiff and who are not subject to any unique defenses, and is best placed to represent the ***entire*** class.[9] It should be appointed lead plaintiff, and its choice of Robbins Geller should be appointed lead counsel.[10]

## III. CONCLUSION

For all the foregoing reasons, St. Louis Ironworkers respectfully requests that the Court: (i) deny The Merger Fund's motion to be appointed lead plaintiff and to appoint Abbey Spanier as lead counsel; (ii) grant St. Louis Ironworkers' motion to be appointed lead plaintiff and to appoint Robbins Geller as lead counsel; (iii) allow Robbins Geller to continue as counsel in the event the Court decides to appoint The Merger Fund as lead plaintiff; and (iv) grant such other relief as the Court may deem just and proper.

---

[8] *See* 1/12/11 Rothman Decl. Exh. B.

[9] As St. Louis Ironworkers will explain more fully in its reply memorandum in further support of its own motion to be appointed lead plaintiff, which will be filed on January 31, 2011, The Merger Fund's sole ground for opposing St. Louis Ironworkers' motion to be appointed lead plaintiff is its assertion that The Merger Fund suffered larger losses. Because The Merger Fund is subject to unique defenses, however, that argument will not defeat St. Louis Ironworkers' motion for lead plaintiff status.

[10] Furthermore, for all the reasons set forth in Ironworkers' motion for lead plaintiff status, including the reply papers to be filed on January 31, 2011, Robbins Geller should be appointed lead counsel or co-lead counsel even if The Merger Fund is appointed lead plaintiff.

DATED: January 27, 2011

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
DAVID A. ROSENFELD
MARK T. MILLKEY

*/s/ Robert M. Rothman*

ROBERT M. ROTHMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com
mmillkey@rgrdlaw.com

Lead Counsel

CAVANAGH & O'HARA
PATRICK O'HARA
407 E. Adams Street
Springfield, IL 62701
Telephone: 217/544-1771
patrick@cavanagh-ohara.com

Additional Plaintiffs' Counsel

## CERTIFICATE OF SERVICE

I, Robert M. Rothman, hereby certify that on January 27, 2011, I caused redacted versions of the attached:

> Memorandum of Law in Opposition to The Merger Fund's Motion for Appointment of Lead Plaintiff and Lead Counsel; and
>
> Declaration of Robert M. Rothman

to be served electronically on all counsel registered for electronic service for this case. Unredacted versions will be delivered to the following counsel via email and FedEx:

Jill S. Abrams
ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, NY 10016
jabrams@abbeyspanier.com

Lewis J. Liman
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
lliman@cgsh.com

M. Byron Wilder
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201
bwilder@gibsondunn.com

*/s/ Robert M. Rothman*
Robert M. Rothman