UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

In re: : 06 Civ. 6128 (NRB)
IMAX CORPORATION SECURITIES :
LITIGATION :
:
----------------------------------------------------------x

**WESTCHESTER CAPITAL MANAGEMENT, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO SNOW CAPITAL INVESTMENT PARTNERS, L.P.'S MOTION FOR RECONSIDERATION OF THIS COURT'S JANUARY 17, 2007 ORDER APPOINTING WESTCHESTER CAPITAL MANAGEMENT, INC. AS LEAD PLAINTIFF**

submits that the Court may and should exercise its discretion to decline any change in lead plaintiff status in this case.

**E. The Assignment of Claims to Westchester Capital is Valid and Legal**

Courts have historically interpreted N.Y. Jud. Ct. Acts Law § 489 (2009), prohibiting champerty, narrowly. *Empresa Cubana Exportadora de Azucar y Sus Derivados v. Lamborn & Co., Inc.*, 652 F.2d 231, 235 (2d Cir. 1981). Champerty has been defined by the Second Circuit as "a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." *Sygma Photo News, Inc. v. Globe Int'l, Inc.*, 616 F. Supp. 1153, 1157 (S.D.N.Y. 1985). Codification of this ancient common law offense in N.Y. Jud. Ct. Acts Law § 489 (2009) reflects legislative interest in preventing the "strife, discord, and harassment which could result from permitting attorneys and corporations to purchase claims for the bringing of actions thereon." *Id.* (internal citation omitted). While Judiciary Law § 489 does not expressly limit the prohibition on assignment to strangers, such "is plainly the evil that the statute sought to prohibit." *Id.*

Prior dealings between the assignor and assignee and the interests of the assignee in the dealings underlying the action are factors in determining whether an assignment has been champertous. *Sygma,* 616 F. Supp. at 1157; *Empresa*, 652 F. 2d at 236. Here, Westchester Capital had a twenty-year relationship with the Funds, and acted as their investment advisor with complete control over the funds invested. As noted in *Empresa*, "[w]here the relations between the assignor and the assignee are such as to eliminate the danger [of champerty], New York courts have refused to apply the statute." *Empresa*, 652 F. 2d at 236. Westchester Capital, as the Funds' advisor, has a legitimate interest in this

litigation and its involvement in this litigation is not for the "mercenary reasons" as discussed in *Sygma*, therefore, the assignments at issue are not champertous.[12]

Westchester Capital took assignment of the action after commencement of the litigation which precludes "the mischief the statute seeks to avoid." *Sygma*, 616 F. Supp. at 1157. See also *Fahrenholz v. Sec. Mut. Ins. Co.*, 13 A.D.3d 1085, 1086 (4th Dept. 2004); *Bellarno Int'l, Ltd. v. Irving Trust Co.*, 165 A.D.2d 809 (1st Dept. 1990); *Rosenkrantz v. Berlin*, 65 Misc. 2d 320, 321 (N.Y. Supt. Ct. 1971). Additionally, the plain language of the statute prohibits assignment or purchase of an action "for the purpose of *bringing* an action or proceeding thereon." (emphasis added). N.Y. Jud. Ct. Acts Law § 489 (2009). Since the action in question had already been brought at the time of the assignment, its purpose could not have been the "bringing" of the action. And, as held in *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012 (2d. Cir. 1975) (a case which-remarkably- is the lead champerty case cited by Snow Capital for the proposition that a "corporation cannot take an assignment of a claim for the purpose of suing thereon", Snow Capital Mem. at 10), the assignment "does no violence" to the legislative concern that prompted enactment of §489 since the corporation, like Westchester Capital, "had its own significant interest in the litigation from the outset." *Id.* at 1016.[13] As a result of the foregoing, assignment of the action to Westchester

---

[12] Indeed, *Huff* sanctions such assignment. It cited *Sprint*, 554 U.S. __, 128 S.Ct. at 2533 for the proposition that an assignee has "standing to pursue [the] claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor." *Huff*, 549 F.3d at 105.

[13] Likewise, other cases cited by Snow Capital hold that the facts do not warrant a finding of champerty. Those are *Elliott Assocs. , L.P. v. Republic of Panama*, 975 F. Supp. 332,339( S.D.N.Y. 1997); *CIBC Bank and Trust Co. v. Banco Cent. do. Brasil*, 886 F.Supp. 1105, 1111(S.D.N.Y. 1995). *Elliot Associates,L.P. v. Banco De La Nacion*, 194 F.3d 363, 372 (2d. Cir. 1999) says that New York courts have "consistently interpreted the statute as proscribing something narrower than merely 'maintaining a suit in return for a financial interest in the outcome.'"(citations omitted)

Capital is not champertous and violates neither the spirit nor the letter of Judiciary Law § 489.

F. **Snow Capital Should Not Be Appointed Lead Plaintiff**

If the Court decides that Westchester Capital should be replaced as Lead Plaintiff (which Westchester Capital obviously thinks would be the wrong result), we respectfully submit that Steelworker's Pension Trust ("Steelworkers"), a plaintiff and proposed class representative, is better suited than Snow Capital to become lead plaintiff. Given that the class would be deprived of a lead plaintiff and lead counsel who have litigated this case from its inception, prepared and successfully defended a detailed amended complaint which involved the development of the case's legal theories, gathered information from numerous confidential sources, worked toward certification of the class including document production and depositions, worked with the consultants and expert it retained and engaged in party and third party discovery, it would make little sense to introduce a total stranger to the litigation. Snow Capital is such a stranger. Steelworker's counsel, albeit not as intimately involved as Westchester Capital, assisted in the preparation of the Complaint, has been involved in the class certification proceedings, and Steelworkers and its investment advisor have both produced documents and been deposed. Steelworkers has a solid working knowledge of this case and it would be better prepared to enter the litigation at this time.

And, while Snow Capital states that "no opposition was ever filed questioning the size of Snow Capital's financial interest or its adequacy or typicality", that is likely due to the fact that Westchester Capital's PSLRA losses dwarfed those of the other proposed

lead plaintiffs.[14] The losses claimed by Snow Capital and Steelworkers of approximately $481,000 and $428,000, respectively, are not sufficiently different to compel the selection of Snow Capital under these facts.

## III. CONCLUSION

For all of the reasons set forth above, Lead Plaintiff Westchester Capital respectfully submits that Snow Capital's motion for reconsideration should be denied, Westchester's ratified assignments should be approved under Rule 15(c) and/or 17(a)(3) as relating back, and Westchester should be permitted to amend its Complaint to reflect those assignments.

DATED: April 24, 2009

Respectfully submitted,

ABBEY SPANIER RODD
& ABRAMS, LLP

By: ____________________
Jill S. Abrams

Arthur N. Abbey (AA-8074)
Jill S. Abrams (JA-1578)
Richard M. Margolies (RM-9311)
212 East 39th Street
New York, New York 10016
Telephone: (212) 889-3700
Facsimile: (212) 654-5191

*Plaintiffs' Lead Counsel*

---

[14] At the time the final round of briefing on the lead plaintiff motion was submitted, all of the competing movants, except Snow Capital, withdrew their motions or did not submit opposition briefs or, in the case of the Steelworker's, withdrew in support of Westchester Capital. Reply Memorandum in Support of Westchester Capital's Motion to Be Appointed Lead Plaintiff and in Response to Snow Capital Investment Partners, L.P.'s Opposition, No-06-CV-06128 (NRB), Docket #37.