UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re IMAX CORPORATION SECURITIES LITIGATION | Civil Action No. 1:06-cv-06128-NRB<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ST. LOUIS IRONWORKERS' MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL |

Ironworkers St. Louis District Council Pension Fund ("St. Louis Ironworkers" or "Ironworkers") respectfully submits this reply memorandum of law in further support of its motion for appointment as lead plaintiff, and for the appointment of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel.

## I. PRELIMINARY STATEMENT

Five years into this case, after the lengthy review and analysis of hundreds of thousands of pages of discovery by Robbins Geller and its forensic accountant, as well as its retention of expert witnesses, circumstances now require the Court to choose a lead plaintiff and lead counsel for a third time. Although one of the two movants – The Merger Fund – has the larger loss, it is also subject to two known unique defenses that could, if it is appointed lead plaintiff, ultimately require its disqualification and a ***fourth*** lead plaintiff selection process. The other movant – St. Louis Ironworkers – has a smaller loss but is subject to no known unique defenses, as The Merger Fund has effectively conceded by its silence on that point. Because the PSLRA forbids movants that are subject to a unique defense from acting as lead plaintiff, *see* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb), Ironworkers respectfully submits that it, and not The Merger Fund, should be selected as lead plaintiff.

Even if the Court is inclined, despite the known unique defenses to which The Merger Fund is subject, to appoint The Merger Fund as lead plaintiff, Ironworkers respectfully submits that it should be appointed co-lead plaintiff to avoid yet another lead plaintiff selection process – and even further delay in this already aging litigation – if The Merger Fund is ultimately disqualified from continuing in that role (either because of a known unique defenses or for some other, as yet unknown reason). At a minimum, Robbins Geller, which has reviewed and extensively analyzed the half million pages produced by Defendants to date, should be appointed co-lead counsel, whether or not the Court gives Ironworkers a leadership role.

## II. ARGUMENT

### A. St. Louis Ironworkers Should Be Appointed Sole Lead Plaintiff, and Robbins Geller Sole Lead Counsel

#### 1. Unlike The Merger Fund, St. Louis Ironworkers Is Not Subject to Any Unique Defense

As discussed more fully in its opening memorandum of law on this motion, St. Louis Ironworkers has suffered a substantial loss and meets all the Rule 23 criteria imposed by the PSLRA for the appointment of lead plaintiff. *See* Memorandum of Law in Support of Ironworkers St. Louis District Counsel Pension Fund's Motion for Appointment of Lead Plaintiff and Lead Counsel ("Ironworkers Opening Mem.") at 5-9. Additionally, Ironworkers is not subject to any unique defense that would impair its ability to adequately represent the class. *Id.* The other movant, The Merger Fund, does not dispute these facts.

Instead, The Merger Fund makes a different argument – that it suffered greater losses than Ironworkers, and is therefore presumed to be the most adequate plaintiff. Although The Merger Fund appears to have suffered greater losses, that is not the end of the story. The presumption is undercut by proof that the presumed lead plaintiff is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb). As Ironworkers demonstrated in its opposition to The Merger Fund's lead plaintiff motion, The Merger Fund is subject to ***two*** unique defenses, either of which precludes it from acting as lead plaintiff.

First, The Merger Fund lacks standing to bring the claims in question because it previously assigned those claims to another party; and second, The Merger Fund engaged in a unique trading strategy that presumes the inefficiency of the market. *See* Memorandum of Law in Opposition to the Merger Fund's Motion for Appointment of Lead Plaintiff and Lead Counsel ("Ironworkers Opp.

Mem.") at 2-4, 6-7.[1] Moreover, if The Merger Fund takes the position in reply (on its own motion for appointment) that the claims in question were reassigned to it, it is subject to another unique defense: champerty. As discussed in Ironworkers' opposition to The Merger Fund's lead plaintiff motion, no corporation or association may accept an assignment of a claim "with the intent and for the purpose of bringing an action or proceeding thereon." N.Y. Jud. Ct. Acts Law §489(1). *See* Ironworkers Opp. Mem. at 4-5.

The issue is ***not*** whether either of these unique defenses is likely to succeed, but whether The Merger Fund is likely to be subject to such a defense. *See In re Bally Total Fitness Sec. Litig.*, No. 04C3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) ("The PSLRA . . . provides that we ask simply whether [the proposed lead plaintiff] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."). Such a defense threatens to distract attention away from the substance of the litigation. As this Court has written, "[t]here seems little reason . . . to subject the class members to such a risk." *In re IMAX Secs. Litig.*, No. 06 Civ. 6128, 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009); *see also Baydale v. American Exp. Co.*, No. 09 Civ. 3016(WHP), 2009 WL 2603140, at *2-3 (S.D.N.Y. Aug. 14, 2009) (foreign investment advisor should not be named lead plaintiff because the question of standing was uncertain, and "'it is

---

[1] After Ironworkers served and filed its opposition to The Merger Fund's lead plaintiff motion via the Court's ECF system on January 27, 2011, counsel for The Merger Fund took the position that Ironworkers had done so three days late. In fact, the opposition was timely served and filed under both Local Rule 6.1(b) and Fed. R. Civ. P. 6(d) [formerly Fed. R. Civ. P. 6(e)], which permit three additional days upon electronic service, including service by ECF filing. *See Sembler v. Advanta Bank Corp.*, No. 07 CV 2493(RJD), 2008 WL 2965661, at *1 (E.D.N.Y. Aug. 1, 2008) (holding that three days are added to the time that a plaintiff has to file an objection when it is served notice by email via the court's ECF system); *see also In re OSI Pharmaceuticals, Inc. Securities Litig.*, No. 04-CV-5505(JS)(ETB), 2005 U.S. Dist. LEXIS 46653, at *6 (E.D.N.Y. Sept. 21, 2005) ("Rule 6(e) provides that where, as here, a party is required to respond to papers that have been served via electronic means, three days are added to the time otherwise allotted for that party to respond"); *Crust v. Barnhart, Comm'r Soc. Sec.*, No. 02-2555-CM, 2004 U.S. Dist. LEXIS 7855, at *2-3 (D. Kan. Jan. 23, 2004) (Rule 6(e) "provides parties an additional 3 days in which to respond when service is by electronic means").

possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal'") (quoting *IMAX*, 2009 WL 1905033, at *3).

Because Ironworkers remains the only movant untainted by a unique defense, it should be appointed lead plaintiff, and its choice of Robbins Geller as lead counsel approved.

### 2. Ironworkers Is Better Able To Represent the Entire Class than The Merger Fund

In its order denying the class certification motion of the previous lead plaintiff, Snow Capital Investment Partners, L.P. ("Snow Capital"), the Court distinguished between those class members who purchased their IMAX stock before February 17, 2006, when Defendants announced their 2005 financial results, and those who bought their shares afterwards. *In re IMAX Securities Litigation*, --- F.R.D. ---, No. 06 Civ. 6128, 2010 WL 5185076, at *14 (S.D.N.Y. Dec. 22, 2010). The Court recognized this distinction because different corrective disclosures applied to the misrepresentations in the two different periods. *Id.* Unlike The Merger Fund, which purchased all of its shares after February 17, 2006, Ironworkers purchased its shares both before ***and*** after that date. *See* Exh. B to Declaration of Robert M. Rothman dated January 12, 2011. Therefore, unlike The Merger Fund, Ironworkers has an incentive to maximize the recovery of ***all*** shareholders, not just those who purchased their shares after February 17, 2006, and is a more adequate lead plaintiff for representing the entire class.

## B. In the Alternative, Ironworkers and The Merger Fund Should Be Appointed Co-Lead Plaintiffs, with Robbins Geller and Abbey Spanier Co-Lead Counsel

If the Court declines to appoint St. Louis Ironworkers as sole lead plaintiff (and Robbins Geller as sole lead counsel), it should, in the interests of avoiding further disruption in this already five-year-old action, appoint Ironworkers and The Merger Fund to be co-lead plaintiffs and Robbins Geller and Abbey Spanier to be co-lead counsel. Whether because of one or both of the unique

defenses described above to which The Merger Fund is subject, or because of some as yet unanticipated defense, the possibility remains that The Merger Fund, like Westchester Capital Management, Inc. and Snow Capital before it, may become disqualified from acting as lead plaintiff. To avoid the necessity of undertaking the lead plaintiff process yet again, the Court should require the two entities to work together as co-lead plaintiffs.[2]

There is abundant precedent for such a move. In *Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*, 409 F. Supp. 2d 482 (S.D.N.Y. 2006) ("*First Bancorp*"), for example, Judge Rakoff recognized that each of three candidates for lead plaintiff suffered from some weakness, and therefore appointed all three as co-lead plaintiffs. The movant with the largest loss ($169,200) had "very little investment expertise and virtually no prior experience with litigation of this kind," and her holdings were limited to preferred stock. *Id.* at 483. The investment of her co-movant, another individual investor who had $30,045 in losses, "occurred under circumstances that may give rise to 'special defenses' in this case." *Id.* The other movant was an institutional investor, and therefore the type of investor Congress had in mind in enacting the PSLRA, but had only $2,000 in losses and was also subject to "special defenses" that were different from those to which the other two movants were subject. *Id.* In these "unusual circumstances," the court concluded it was appropriate to appoint co-lead plaintiffs: "The Court has no doubt . . . that the combination of Fox, McLaughlin, and the Pension Fund could collectively fulfill the functions of lead plaintiff in a fair, adequate, and effective manner." *Id.* It therefore appointed the three to act as co-lead plaintiffs. *Id.*

---

[2] Because, as The Merger Fund has effectively conceded through its silence on the question, Ironworkers is not subject to any known unique defenses, it is far less important for Ironworkers to have a co-lead plaintiff than it is for The Merger Fund, which is subject to at least two obvious unique defenses.

The circumstances here are at least as unusual as those Judge Rakoff found compelling in *First Bancorp*. As there, the entity with the largest loss here, The Merger Fund, is subject to unique defenses. More significant, however, is the length of time this case has been pending: five years, during which time two previous lead plaintiffs have already been disqualified. In these circumstances, the appointment of co-lead plaintiffs who can, together, fulfill the functions of lead plaintiff in a fair, adequate, and effective manner – while minimizing the likelihood of any need to revisit the lead plaintiff process ***yet again*** – is even more compelling than in *First Bancorp. See also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004) ("creating a co-lead structure here will have the salutary effect of providing greater stability in the prosecution of these consolidation actions, should a decision be reached at some later stage in the litigation that either co-lead plaintiff will not adequately represent the class or that the financial interest of one of the co-lead plaintiffs demonstrably eclipses that of the other co-lead plaintiff.").

Thus, should the Court determine not to appoint Ironworkers sole lead plaintiff, it should, in the interests of "stability" and the avoidance of further delay, appoint Ironworkers and The Merger Fund to be co-lead plaintiffs.

### C. At a Minimum, the Court Should Appoint Robbins Geller to Be Lead Counsel or Co-Lead Counsel

#### 1. Robbins Geller Should Be Appointed Lead Counsel

In its opening memorandum of law on this motion, Ironworkers cited numerous cases holding that the choice of lead counsel is ultimately the decision of the Court, to be guided by the best interests of the class. *See* Ironworkers Opening Mem. at 10-14; *see also* 15 U.S.C. §78u-4(a)(3)(B)(v) ("most adequate plaintiff shall, ***subject to the approval of the court***, select and retain counsel to represent the class") (emphasis added); *Foley v. Transocean Ltd.*, --- F.R.D. ---, No. 10

Civ. 5233(NRB), 2011 WL 103960, at *7 (S.D.N.Y. Jan. 3, 2011) (Buchwald, J.) ("the Court has discretion to decline to appoint the candidate proposed by lead plaintiff when warranted ***to protect the interests of the class***") (emphasis added); *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp.*, 269 F.R.D. 291, 297 (S.D.N.Y. 2010) (Buchwald, J.) ("*Hartford*") (same); *Fitzgerald v. Citigroup, Inc.*, No. 03 Civ. 4305(DAB), 2004 WL 613107, at *4 (S.D.N.Y. Mar. 26, 2004) (same).

Although Defendants contend that the cases Ironworkers cites are "inapposite,"[3] they cannot dispute the fundamental principle that the Court ultimately makes the lead counsel determination with the best interests of the class in mind. *See Foley*, 2011 WL 103960, at *7; *Hartford*, 269 F.R.D. at 297; *Fitzgerald*, 2004 WL 613107, at *4. Here, the best interests of the class weigh heavily in favor of appointing as lead counsel the firm that has already reviewed and analyzed the approximately half million pages of documents produced by Defendants to date – Robbins Geller. By contrast, counsel for The Merger Fund has not engaged in any document review or discovery analysis since June 29, 2009, when the Court appointed Snow Capital (represented by Robbins Geller) as lead plaintiff. In the subsequent eighteen months, Robbins Geller has engaged in document review, consulted with a forensic accountant and two experts, and served subpoenas on pertinent non-parties to obtain additional information. *See* Ironworkers Opening Mem. at 5.

Through the process of reviewing the documents, preparing numerous reports, and consulting with experts, Robbins Geller has achieved an unparalleled understanding of IMAX's accounting fraud. Although Robbins Geller can, as The Merger Fund suggests, provide copies of its work product to Abbey Spanier (*see* Merger Fund Opp. Mem. at 7), a simple review of that work product cannot convey the level of understanding achieved through the actual process of reviewing and

---

[3] *See* The Merger Fund's Memorandum of Law in Opposition to Ironworkers St. Louis District Counsel Pension Fund's Motion for Appointment of Lead Plaintiff and Lead Counsel ("Merger Fund Opp. Mem.") at 4, 5-6.

analyzing the documents themselves. Because Abbey Spanier would inevitably have to go through some of the same process that Robbins Geller has already undertaken, replacing Robbins Geller would have the obvious drawback of burdening the class with increased expense and delay.

*Maine State Retirement System v. Countrywide Financial Corp.*, No. 10 Civ. 00302, slip op. (C.D. Cal. May 14, 2010) ("*Countrywide*"), on which The Merger Fund relies, is not to the contrary. In *Countrywide*, the court rejected an argument that no party is making here – that the presumption enjoyed by the movant with the largest loss is rebutted by virtue of another movant having litigated the same issues in state court for the previous two and a half years (before it was determined that there was no subject matter jurisdiction). *See id.* at 3-4, 11.[4] Here, Ironworkers ***does*** argue that the presumption has been rebutted, but not because of its counsel's representation of the previous lead plaintiff, Snow Capital. Rather, Ironworkers argues that the presumption has been rebutted by the two unique defenses, discussed above, to which The Merger Fund is subject. Separately, Ironworkers argues that, in light of Robbins Geller's substantial experience gleaned through discovery, it would be in the best interests of the proposed class to appoint Robbins Geller to be lead counsel. That is an argument that the *Countrywide* court did not address.

### 2. In the Alternative, Robbins Geller Should Be Appointed Co-Lead Counsel

Robbins Geller submits that, given the unique nature of the work it has performed thus far, the Court's appointment of it as lead counsel is necessary to protect the interests of the class. If, however, the Court is inclined to appoint Abbey Spanier as lead counsel, Robbins Geller submits that the Court should appoint it to be co-lead counsel, as that appointment would also protect the

[4] The Merger Fund attached the *Countrywide* slip opinion as Exhibit A to the Declaration of Richard B. Margolies, dated January 19, 2011.

interests of the class by retaining the lawyers with the best understanding of the evidence gleaned through discovery. *See In re Bank of America Corp. Securities, Derivative and ERISA Litig.*, 258 F.R.D. 260, 271 (S.D.N.Y. 2009) (appointing three law firms to serve as co-lead counsel).

## III. CONCLUSION

For all the foregoing reasons, St. Louis Ironworkers respectfully requests that the Court: (i) grant St. Louis Ironworkers' motion to be appointed lead plaintiff and to appoint Robbins Geller as lead counsel; and (ii) deny The Merger Fund's motion to be appointed lead plaintiff and to appoint Abbey Spanier as lead counsel. In the alternative, Ironworkers respectfully requests that the Court either: (i) appoint Ironworkers and The Merger Fund co-lead plaintiffs and Robbins Geller and Abbey Spanier co-lead counsel; or (ii) at a minimum, appoint Robbins Geller and Abbey Spanier to be co-lead counsel, even if Ironworkers is not appointed co-lead plaintiff. Finally, Ironworkers requests that the Court grant such other relief as it may deem just and proper.

DATED: January 31, 2011

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
DAVID A. ROSENFELD
MARK T. MILLKEY

*/s/ Robert M. Rothman*
ROBERT M. ROTHMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
rrothman@rgrdlaw.com
drosenfeld@rgrdlaw.com
mmillkey@rgrdlaw.com

Proposed Lead Counsel

CAVANAGH & O'HARA
PATRICK O'HARA
407 E. Adams Street
Springfield, IL 62701
Telephone: 217/544-1771
patrick@cavanagh-ohara.com

Additional Plaintiffs' Counsel

CERTIFICATE OF SERVICE

I, Robert M. Rothman, hereby certify that on January 31, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Robert M. Rothman*
ROBERT M. ROTHMAN