**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re IMAX SECURITIES LITIGATION | Case No.: 06-cv-06128 (NRB) |

**THE MERGER FUND'S REPLY MEMORANDUM OF LAW TO IRONWORKERS ST. LOUIS DISTRICT COUNSEL PENSION FUND'S OPPOSTION TO ITS MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL**

REDACTED VERSION
UNREDACTED VERSION FILED UNDER SEAL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. The Fund is Not Subject to Any Unique Defense ..... 1

1. The Fund Has Standing to Pursue the Claims Herein ..... 1

2. No Violation of the Anti-Champerty Statute Exists ..... 2

3. The Fund's Trading Strategies Do Not Subject it to Any Unique Defenses ..... 4

B. Appointment of St. Louis Offers No Benefit to the Class ..... 7

C. The Timing of St. Louis's Share Purchases Does Not Improve Its Suitability to Be Lead Plaintiff ..... 8

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Cases**

*Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*,
315 F. Supp. 2d 666 (E.D. Pa. 2004) .......... 5

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .......... 6

*Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*,
731 N.E.2d 581 (N.Y. Ct. App. 2000) .......... 3

*Burch v. SLM Corp.*,
No. 08 Civ. 1029 (WHP), 08 Civ. 2463 (WHP), 2008 U.S. Dist. LEXIS 55423
(S.D.N.Y. July 23, 2008) .......... 5

*Elliott Associates, L.P. v. Banco de la Nacion*,
194 F.3d 363 (2d Cir. 1999) .......... 3

*Empresa Cubana Exportatdora de Azucary Sus Derivados v. Lamborn & Co., Inc.*,
652 F. 2d 231 (2d Cir. 1981) .......... 2, 3

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990) .......... 6

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004) .......... 8, 9

*In re DaimlerChrylser AG Sec. Litig.*,
216 F.R.D. 291 .......... 5

*In re Global Crossing, Ltd. Sec. Litig.*,
313 F. Supp. 2d 189 (S.D.N.Y. 2003) .......... 9

*In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2010 U.S. Dist. LEXIS 135341
(S.D.N.Y. Dec. 22, 2010) .......... 10

*In re Initial Pub. Offering Sec. Litig.*,
227 F.R.D. 65 (S.D.N.Y. 2004) .......... 4

*In re NYSE Specialists Sec. Litig.*,
240 F.R.D. 128, 141 n.17 (S.D.N.Y. 2007) .......... 8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
199 F.R.D. 119 (S.D.N.Y. 2001) .......... 5

*In re Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. La Branche & Co. Inc.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ........ 8

*In re Select Comfort Corp. Sec. Litig.*,
202 F.R.D. 598, 607 n.12 (D. Minn. 2001) ........ 5

*In re Sepracor Inc. Sec. Litig.*,
233 F.R.D. 52 (D. Mass. 2005) ........ 5

*In re Tyson Foods, Inc Sec. Litig.*,
C.A. No. 01-425-SLR, 2003 U.S. Dist. LEXIS 17904 (D. Del. Oct. 6, 2003) ........ 5

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ........ 1

*Landry v. Price Waterhouse Chartered Accountants*,
123 F.R.D. 474 (S.D.N.Y. 1989) ........ 5

*Moskowitz v. Lopp*,
128 F.R.D. 624 (E.D. Pa. 1989) ........ 4, 5

*Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*,
409 F. Supp. 2d 482 (S.D.N.Y. 2006) ........ 8

*Poloron Products., Inc. v. Lybrand Ross Bros. & Montgonery*,
534 F.2d 1012 (2d Cir. 1976) ........ 3

*Sprint Communications Company, L.P. v. APCC Services, Inc.*,
554 U.S269 (2008) ........ 4

*Sygma Photo News, Inc. v. Globe Int'l Inc.*,
616 F. Supp. 1153 (S.D.N.Y. 1985) ........ 3, 4

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d. Cir. 2008) ........ 2, 3, 4

*Weintraub v. Texasgulf, Inc.*,
564 F. Supp. 1466,(S.D.N.Y. 1983) ........ 6

**Statutes**

N.Y. Judiciary Law §489 ........ 3, 4

The Merger Fund (the "Fund") respectfully submits this reply memorandum of law to the Ironworkers St. Louis District Counsel Pension Fund's ("St Louis") opposition to its motion for appointment as lead plaintiff and for approval of Abbey Spanier Rodd & Abrams, LLP ("Abbey Spanier") as lead counsel.

## I. INTRODUCTION

Making unsupportable assertions about possible unique defenses to which the Fund may be subjected, St. Louis contends that it should be appointed lead plaintiff or co-lead plaintiff, and that no matter who is appointed lead plaintiff, its counsel, Robbins Geller[1], should be appointed lead counsel. For the reasons discussed below, St. Louis' arguments should be rejected.

## II. ARGUMENT

### A. The Fund is Not Subject to Any Unique Defense

#### 1. The Fund Has Standing to Pursue the Claims Herein

Because the Fund wished to continue to pursue its claims against Defendants, it reversed its rights assignment to Westchester following this Court's December 20, 2010 decision permitting new lead plaintiff applications. *See* Declaration of Richard B. Margolies submitted herewith ("Margolies Dec."), Ex. A. Thus, it is the real party in interest with legal title to the causes of action asserted in this case.

This Court previously appointed Westchester as the original lead plaintiff based on the then-existing law with respect to an investment advisor's standing to bring a lawsuit. *Kaplan v. Gelfond,* 240 F.R.D. 88 (S.D.N.Y. 2007). The Fund assigned its

[1] It is unclear to the Fund whether St. Louis is also seeking the appointment of Cavanah & O'Hara as counsel for the class. Cavanah & O'Hara has signed St. Louis's moving papers as "Additional Plaintiffs' Counsel."

**REDACTED**

rights to its investment advisor, Westchester, solely to comply with the Second Circuit's decision in *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP,* 549 F.3d 100 (2d. Cir. 2008) that an investment advisor without a valid assignment lacked standing to sue. Margolies Dec., Ex. B (Behren Tr. 23:8-24:16, 37:4-24). As Mr. Behren testified, [redacted]. Margolies Dec., Ex. B (Behren Tr. 23:8-24:6; 62:14-22).

### 2. No Violation of the Anti-Champerty Statute Exists

Anticipating that Westchester had assigned back the Fund's rights, St. Louis now takes the unsupportable position that the assignment violates N.Y. Jud. Law §489, New York's anti-champerty statute. Given the history and circumstances of this case, such a claim is truly outrageous. It was clear from the time Westchester made its initial lead plaintiff application that it was acting on behalf of the clients it advised. For example, the opening paragraph of the initial lead plaintiff certification, signed by Roy Behren in October 2006, states that he was signing on behalf of Westchester and the Fund. Margolies Dec., Ex. C. Mr. Behren's deposition testimony and November 2, 2006 lead plaintiff reply declaration likewise demonstrate that, with its clients' authority, Westchester was acting on their behalf. Margolies Dec., Ex. B (Behren Tr. 21:19-22:7) and Ex. D. The Fund's assignment of its rights to Westchester was solely as a result of the *Huff* decision. Margolies Dec., Ex. B (Behren Tr. 44:9-46:23).

Historically, courts have interpreted N.Y. Judiciary Law §489 very narrowly. *Empresa Cubana Exportatdora de Azucary Sus Derivados v. Lamborn & Co., Inc.*, 652 F. 2d 231, 235 (2d Cir. 1981). The Second Circuit has defined champerty as a "bargain

between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." *Sygma Photo News, Inc. v. Globe Int'l Inc.*, 616 F. Supp. 1153, 1157 (S.D.N.Y. 1985). Codification of this very old common law offense in N.Y. Jud. Law §489 reflects legislative interest in preventing the "strife, discord and harassment which could result from permitting attorneys and corporations to purchase claims for the bringing of actions thereon." *Id.*

Prior dealings between the assignor and assignees and the interest of the assignee in the dealings underlying the action are factors in determining whether an assignment has been champertous. *Id.*; *Empresa,* 652 F.2d at 236.[2] Here, the Fund had a previous ongoing relationship with Westchester which acted as its investment advisor and had complete control over the funds invested. In light thereof, the Fund initially assigned its rights to Westchester so that Westchester could, under the change in the law after *Huff*, continue to act on the Fund's behalf and pursue this litigation. Because this Court ruled that the assignment was insufficient to confer standing on Westchester such that it could continue in its lead plaintiff role, and because the Fund wishes to continue to pursue its claims in this action, it could only do so as the real party in interest if its rights were assigned back by Westchester. This is hardly the stuff of champerty. As noted in *Empresa*, "[w]here the relations between the assignor and the assignee are such as to eliminate the danger [of champerty], New York courts have refused to apply the statute."

[2] St. Louis cites *Poloron Products., Inc. v. Lybrand Ross Bros. & Montgonery*, 534 F.2d 1012, 1015-16 (2d Cir. 1976) for the proposition that N.Y. Jud. Law §489 "prohibits a corporation from taking an assignment of a claim for the purpose if suing thereon." But *Polon* does not support St. Louis's position. In fact, the Second Circuit found the subject assignment to be valid because it "does no violence to the legislative concern as expressed by the New York courts" given that the litigant had its own significant interest in the litigation from the outset." *Id.* at 1016. In each of the other cases St. Louis cites for this same proposition, *Elliott Associates, L.P. v. Banco de la Nacion*, 194 F.3d 363 (2d Cir. 1999) and *Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*, 731 N.E.2d 581 (N.Y. Ct. App. 2000), the courts deemed the assignments valid.

*Empresa*, 652 F.2d at 236. The Fund has a legitimate interest in the case and the subject assignment was not entered into for the kind of "mercenary reasons" discussed in *Sygma.*[3] St. Louis' frivolous argument that the assignment from Westchester to the Fund constituted champerty must be rejected.

### 3. The Fund's Trading Strategies Do Not Subject it to Any Unique Defenses

St. Louis argues that the Fund should be disqualified from acting as a lead plaintiff because its merger arbitrage investing strategy subjects it to a unique defense. St. Louis Opp. Br. at 6-7. That argument has been repeatedly rejected as courts universally recognize that investors who utilize sophisticated trading strategies, like merger arbitrage, rely on the integrity of the market and are entitled to a presumption of reliance in the same manner as all other investors. As several courts have noted:

> It can be stated without fear of gainsay that the shareholders of every large, publicly traded corporation includes institutional investors, short-sellers, ***arbitragers***, etc. The fact that [those] traders have divergent motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price played no part whatsoever in their decision making. (emphasis added).

*In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65 (S.D.N.Y. 2004) (citing *Moskowitz v. Lopp*, 128 F.R.D. 624, 630-31 (E.D. Pa. 1989) (specifically rejecting argument that plaintiff involved in "takeover arbitrage" is atypical)).

The fact that the Fund had a distinctive trading strategy, or had a different motive than some other class members to purchase IMAX stock, does not preclude it from

---

[3] Indeed, *Huff* sanctions such an assignment, citing *Sprint Communications Company, L.P. v. APCC Services, Inc.*, 554 U.S. 269, 271 (2008), for the proposition that an assignee has "standing to pursue [the] claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor." *Huff*, 549 F.3d at 105.

relying on the efficiency of the market.[4] *See Burch v. SLM Corp.*, No. 08 Civ. 1029 (WHP), 08 Civ. 2463 (WHP), 2008 U.S. Dist. LEXIS 55423 (S.D.N.Y. July 23, 2008) (rejecting competing lead plaintiff movant's argument that merger arbitrage strategy is subject to unique defenses); *In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 607 n.12 (D. Minn. 2001) (finding that "distinctive trading strategies" do not render class members "atypical"); *In re DaimlerChrylser AG Sec. Litig.*, 216 F.R.D. 291, 198-99 (rejecting claim that investment strategies render a plaintiff atypical for purposes of class certification); *In re Tyson Foods, Inc Sec. Litig.*, C.A. No. 01-425-SLR, 2003 U.S. Dist. LEXIS 17904 (D. Del. Oct. 6, 2003) (appointing group of arbitragers as class representatives in securities fraud litigation); *Moskowitz*, 128 F.R.D. at 631 ("simply because an investor is engaging in takeover speculation does not necessarily mean that the fraud-on-the-market presumption does not obtain").[5]

None of the cases cited by St. Louis rejects a proposed lead plaintiff solely because it purchased shares in anticipation of a merger transaction. For example, in *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474 (S.D.N.Y. 1989), the defendant opposed class certification because each of the seven named class members purchased stock based on non-public information and recommendations from friends and associates, rather than statements by the defendant or based on the integrity of the market, rendering them atypical and subject to unique defenses. In *Gary Plastic Packaging Corp.*

---

[4] St. Louis's certification and trading information indicate that it also sought to profit from short-term movements in IMAX's stock price and from the merger speculation.

[5] *See also, In re Sepracor Inc. Sec. Litig.*, 233 F.R.D. 52, 54 (D. Mass. 2005) ("Convertible arbitrage is not inconsistent with reliance on the integrity of the market"); *Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 676 (E.D. Pa. 2004) (holding that an investor who engaged in short sales to hedge against a decline in its investment may benefit from the fraud on the market presumption.); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001) (holding that options traders were typical and adequate class representatives).

**REDACTED**

*v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179-80 (2d Cir. 1990), the court rejected the proposed class representative who purchased the subject securities despite having notice of the alleged fraud, and having investigated it. *Weintraub v. Texasgulf, Inc.*, 564 F. Supp. 1466, 1471 (S.D.N.Y. 1983) in which the proposed class representative was rejected because he was a "sophisticated speculative trader," represents the courts' thinking prior to the adoption of the fraud-on-the-market theory in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and before sophisticated investors became preferred lead plaintiffs under the PSLRA.

Because it does not have a single case to support its argument that the Fund is subject to a unique defense, St. Louis resorts to misrepresenting Mr. Behren's deposition testimony. St. Louis claims that he testified that the Fund's strategy was "reliant upon the proposition that the market is ***inefficient***." St. Louis Opp. Br. at 6. But, Mr. Behren never said that. In fact, when asked whether the Fund's strategy depended on the market being inefficient, his response was as follows:

> Q. [redacted]
>
> A. [redacted]

Margolies Dec., Ex. B (Behren Tr. 116:24-117:13).

Contrary to the argument made by St. Louis, Mr. Behren's deposition testimony clearly confirms that the Fund, like other investors, relied on the integrity of the market when purchasing IMAX stock. For example, Mr. Behren testified [redacted]

**REDACTED**

[redacted] (i) [redacted] (Margolies Dec., Ex. B (Behren Tr. 104:7-111:10; 141:22-142:2; 149:12-21; 257:4-259:18)); (ii) [redacted] (Behren Tr. 111:20-112:2); (iii) [redacted] (Behren Tr. 119:6-17); (iv) [redacted] (Behren Tr. 125:3-126:25); and (v) [redacted] (Behren Tr. 127:10-25; 144:13).

Accordingly, the Fund's merger arbitrage trading strategy does not render it to any unique defense.

**B. Appointment of St. Louis Offers No Benefit to the Class**

As the Fund's opposition brief makes clear, the law does not support St. Louis' appointment as the lead plaintiff. It is unable to meet the PSLRA's financial interest requirement because its losses are so much smaller than the Fund's losses. And, while its appointment may benefit St. Louis's counsel, there is no obvious benefit to the class. St. Louis possesses no knowledge of the case and, as discussed below, the timing of its IMAX purchases do not put it in a superior position to the Fund. In both its opposition and reply briefs, St. Louis has focused on the amount of time expended on this matter by its counsel, but that is not a sufficient ground for the appointment of St. Louis or its counsel.[6]

---

[6] Because this point was briefed in the Fund's prior submission, it will not be repeated here. *See* The Merger Fund's Memorandum of Law in Opposition to the Ironworkers St. Louis District Counsel Pension Fund's Motion for Appointment of Lead Plaintiff and Lead Counsel dated January 19, 2011. Dkt. No. 158.

Neither *Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*, 409 F. Supp. 2d 482 (S.D.N.Y. 2006), nor *In re Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. La Branche & Co. Inc.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004), the two cases St. Louis offers to support a co-lead plaintiff structure, are applicable here. In *Pirelli*, the court was concerned that a presumptive lead plaintiff did not have the resources or sophistication to pursue the litigation and named an institutional investor as co-lead plaintiff. In *First Bancorp*, each of the three movants had serious deficiencies which made their lead plaintiff appointment particularly problematic. The Fund and its counsel are perfectly capable of litigating this case without the assistance of St. Louis and its counsel. Roy Behren and Abbey Spanier are knowledgeable about the facts and law given that they developed the case and its theories. St. Louis has offered no persuasive argument why the Fund, a well-suited, knowledgeable and willing proposed lead plaintiff that meets all the PSLRA's requirements, should not be appointed sole lead plaintiff.

### C. The Timing of St. Louis's Share Purchases Does Not Improve Its Suitability to Be Lead Plaintiff

St. Louis purchased some shares earlier in the Class Period than the Fund, but that does not change its suitability to be the lead plaintiff. The fact that a lead plaintiff has not purchased shares throughout the class period is not a barrier to appointment. "It is the well established law of this Circuit that a district court need not choose a lead plaintiff with standing to bring all claims in a securities class action. *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 141 n.17 (S.D.N.Y. 2007); *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the

largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204-05 (S.D.N.Y. 2003)("[N]othing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case.").

Considering that the role of the lead plaintiff is "to empower investors so that they-not their lawyers-exercise primary control over private securities litigation,...any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff-namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Hevesi*, 366 F.3d at 83, n.13. If the lead plaintiff deems it appropriate for a successful class motion, class representatives can be proposed whose IMAX trades cover any portion of the class period necessary. *Id.*

St. Louis also argues that it is better suited than the Fund to be the lead plaintiff because it purchased IMAX shares both before and after IMAX's February 17, 2006 announcement, while the Fund's purchases occurred after that date. St. Louis Opp. Br. 7-8. However, because St. Louis did not continue to hold those shares through the time of relevant disclosure (March 2007), it can not establish loss causation for those purchases pursuant to this Court's decision denying class certification. *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2010 U.S. Dist. LEXIS 135341 (S.D.N.Y. Dec. 22, 2010).[7] Thus,

---

[7] *See also* The Merger Fund's Memorandum of Law in Opposition to the Ironworkers St. Louis District Counsel Pension Fund's Motion for Appointment of Lead Plaintiff and Lead Counsel, dated January 19, 2011 at p. 2, fn 1. Dkt. No. 158.

its pre-February 17, 2006 purchases put it in no different position than the Fund.

## III. CONCLUSION

For the reasons stated herein and in its prior submission, the Fund respectfully requests that the Court appoint it as lead plaintiff and approve its selection of Abbey Spanier as lead counsel, and deny the motion by St. Louis.

Dated: February 3, 2011

Respectfully Submitted,

**ABBEY SPANIER RODD & ABRAMS, LLP**

By: ______________________

Arthur N. Abbey
Jill S. Abrams
Nancy Kaboolian
Richard B. Margolies
212 East 39th Street
New York, New York 10016
Tel: (212) 889-3700
Fax: (212) 684-5191

*Proposed Lead Counsel*