# EXHIBIT J

Court File No.: CV-06-3257-00

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

B E T W E E N:

MARVIN NEIL SILVER and CLIFF COHEN

Plaintiffs

- and -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, NEIL S. BRAUN, KENNETH G. COPLAND, GARTH M. GIRVAN, DAVID W. LEEBRON and KATHRYN A. GAMBLE

Defendants

Proceeding under the *Class Proceedings Act, 1992*

**AFFIDAVIT OF JILL S. ABRAMS**
**(sworn May 12, 2011)**

I, JILL S. ABRAMS, of the city of New York, New York make oath and say as follows:

## **1. Introduction**

1. I am an attorney and a partner in the law firm of Abbey Spanier Rodd & Abrams, LLP ("Abbey Spanier"), which was recently re-appointed as lead counsel in the securities class action *In re IMAX Securities Litigation*, Civil Action No.1:06-cv-06128, commenced in the United States District Court for the Southern District of New York (the "U.S. Action"). Abbey Spanier currently represents The Merger Fund, the lead plaintiff in the U.S. Action. As a result, I have direct knowledge of the matters to which I hereinafter depose, except where I have indicated that

my knowledge is based on information provided to me by others and where so indicated I believe such information to be true.

2. Nothing in this affidavit should be taken as a waiver of any claim of privilege of any type, or as a disclosure of any information over which privilege is claimed. For the avoidance of doubt, The Merger Fund does not waive any attorney-client privilege that attaches to its communications with me and other members of Abbey Spanier, or any litigation privilege that attaches or applies to file materials in its possession or that of Abbey Spanier.

**2. The Canadian and U.S. Actions**

3. The claims in the U.S. Action relate to alleged material misrepresentations made in the secondary market disclosure of IMAX Corporation ("IMAX") beginning February 27, 2003 and ending July 20, 2007 (the "U.S. Class Period"). On February 27, 2003, IMAX reported its fourth quarter and year-end results for the year ending December 31, 2002. On July 20, 2007, IMAX announced that it had restated its financial results for 2002 through 2005, and the first three quarters of 2006, and was filing its previously unfiled 2006 Forms 10-K and 10-Q for the quarter ended March 31, 2007.

4. In particular, it is alleged that IMAX improperly accelerated the recognition of revenue from theatres that were not yet open or operational. Attached as **Exhibit "A"** to this affidavit is a copy of the Consolidated Amended Class Action Complaint, filed October 2, 2007 in the U.S. Action (the "U.S. Complaint").

5. The defendants in the U.S. Action are IMAX, IMAX corporate executives Richard L. Gelfond, Bradley L. Wechsler, Francis T. Joyce and Kathryn A. Gamble, and IMAX's auditor, PricewaterhouseCoopers LLP ("PwC").

6. I have reviewed the decision of Justice van Rensburg, dated December 14, 2009, certifying this action (the "Canadian Action") as a class proceeding pursuant to the *Class Proceedings Act, 1992* (Ontario) (the "Certification Decision"). Based upon my review of the Certification Decision, I believe that the underlying allegations in the Canadian Action are substantially similar to those underlying the U.S. Action. However, the certified class period in the Canadian Action, which runs from February 17, 2006 to August 9, 2006 (the "Canadian Class Period"), is shorter than the U.S. Class Period.

7. The majority of the defendants to the Canadian Action are also defendants to the U.S. Action. In particular, IMAX, Gelfond, Wechsler, Joyce and Gamble are defendants in both actions. The Canadian Action has also been certified against Neil S. Braun, Kenneth G. Copland, Garth M. Girvan and David W. Leebron as defendants. PwC, which is a defendant in the U.S. Action, has not been named as a defendant in the Canadian Action.

**3. The Merger Fund is a Member of the Canadian Class**

8. In the Canadian Action, the Certification Decision certified a global class that includes all persons, other than Excluded Persons, who acquired securities of IMAX on the TSX or the NASDAQ on or after February 17, 2006 and held some or all of those securities at the close of trading on August 9, 2006 (the "Canadian Class").

9. Abbey Spanier has conducted an investigation and determined that The Merger Fund, a mutual fund, acquired more than a million shares of IMAX common stock through the NASDAQ between February 17, 2006 and August 9, 2006, and continued to hold hundreds of thousands of shares of IMAX common stock at the close of trading on August 9, 2006. The Merger Fund filed evidence of its trades in IMAX securities in the U.S. Action in support of its motion to be appointed as lead plaintiff. Attached as **Exhibit "B"** to this affidavit is a copy of the Certification of Lead Plaintiff Pursuant to Federal Securities Laws, dated January 6, 2011, which attaches a Transaction Summary of The Merger Fund's trades in IMAX securities during the U.S. Class Period.

10. The Merger Fund is a member of the Canadian Class.

## 4. The Procedural History of the U.S. Action

11. To date, the U.S. Action has had a complicated procedural history, particularly in relation to the appointment of the lead plaintiff and lead counsel, as set out below.

### (a) Westchester Capital and Abbey Spanier are Appointed

12. The U.S. Action began with eight proposed class actions against IMAX and other defendants, which were all commenced in the United States District Court for the Southern District of New York between August 16, 2006 and September 19, 2006.

13. In U.S. securities class actions, motions to appoint the lead plaintiff and lead counsel are made shortly after the initial complaint is filed. Such motions may be made by persons or entities that have filed complaints and by those who have not. All moving parties must submit a certification that sets forth their trading in the subject security for the relevant time period.

14. In the U.S. proceedings, seven groups of IMAX investors brought motions, each group seeking to consolidate the eight separate actions, to be appointed as lead plaintiff and to designate its lawyers as lead counsel. Abbey Spanier brought one of these motions on behalf of Westchester Capital Management, Inc. ("Westchester Capital"), the investment advisor for five different investment funds, including The Merger Fund, that had acquired IMAX securities.

15. These motions were all brought pursuant to the procedure set forth under the *Private Securities Litigation Reform Act* (U.S.) ("*PSLRA*"). Under the *PSLRA*, the lead plaintiff must be the moving party with the largest financial interest in the security that is the subject of the action and must otherwise satisfy the requirements of Rule 23 of the *Federal Rules of Civil Procedure*, which govern U.S. class actions. Adequacy and typicality are the provisions of Rule 23 considered relevant to the *PSLRA* lead plaintiff requirement.

16. By Memorandum and Order dated January 17, 2007, Judge Buchwald consolidated the eight separate actions and appointed Westchester Capital as the lead plaintiff. Notwithstanding the opposition by another proposed lead plaintiff, Snow Capital Investment Partners, L.P. ("Snow Capital"), Judge Buchwald found that Westchester Capital had been appointed as attorney-in-fact by the five funds, with the capacity to sue on their behalf to recover the losses that its investors allegedly sustained due to IMAX's misrepresentations. Abbey Spanier was appointed as lead counsel based on its competence and experience. Attached as **Exhibit "C"** to this affidavit is a copy of the Memorandum and Order dated January 17, 2007.

<u>(b) Westchester Capital and Abbey Spanier Act as Lead Plaintiff and Lead Counsel</u>

17. On behalf of Westchester Capital and the proposed class of plaintiffs, Abbey Spanier prepared and filed the U.S. Complaint on October 2, 2007.

18. The defendants brought motions to dismiss the U.S. Complaint on the basis that, among other things, it failed to state a claim upon which relief can be granted. After full written submissions and oral argument, Judge Buchwald dismissed the defendants' motions and ordered the defendants to answer the complaint. Attached as **Exhibit "D"** to this affidavit is a copy of Judge Buchwald's Memorandum and Order, dated September 15, 2008.

19. Thereafter, Westchester Capital began its discovery of the defendants. On October 31, 2008, Abbey Spanier moved for class certification on behalf of Westchester Capital and the proposed class of plaintiffs. The defendants subsequently discovered Westchester Capital's market efficiency expert, and opposed the certification motion on February 23, 2009.

(c) Westchester Capital and Abbey Spanier are Replaced

20. On December 3, 2008, the United States Court of Appeals for the Second Circuit issued its decision in *W.R. Huff Asset Management LLC v. Deloitte & Touche LLP* ("*Huff*"), which was not a class action. The Court in *Huff* held that an investment advisor lacks standing under Article III of the United States Constitution to assert claims on behalf of its investor clients under the federal securities laws, even where it is its clients' attorney-in-fact for litigation purposes and has unfettered discretion over its clients' investment decisions. The Court did hold, however, that an assignment of claims could be a sufficient basis to confer Article III standing upon an investment advisor. Attached as **Exhibit "E"** to this affidavit is a copy of the decision of the United States Court of Appeals for the Second Circuit in *Huff*, released December 3, 2008.

21. Westchester Capital was attorney-in-fact for the five investment funds it represented, including The Merger Fund, and had decision-making authority over those funds' investments.

However, it did not have an assignment of claims. Following *Huff*, on January 17, 2009, Westchester Capital obtained assignments of claims from the five investment funds.

22. On April 3, 2009, Snow Capital sought reconsideration of Judge Buchwald's appointment of Westchester Capital as lead plaintiff on the basis that the assignments of claims obtained by Westchester Capital did not relate back to the time when the lead plaintiff motions were made.

23. By Memorandum and Order dated June 29, 2009, Judge Buchwald granted Snow Capital's motion and appointed Snow Capital as the new lead plaintiff. Snow Capital's lawyers were also appointed to replace Abbey Spanier as lead counsel. Attached as **Exhibit "F"** to this affidavit is a copy of the Memorandum and Order dated June 29, 2009.

24. Westchester Capital filed a petition for a writ of mandamus, which was denied by the United States Court of Appeals for the Second Circuit on October 1, 2009. Attached as **Exhibit "G"** to this affidavit is a copy of the Order of United States Court of Appeals for the Second Circuit, dated October 1, 2009.

(d) The Merger Fund and Abbey Spanier are Appointed

25. Based on my discussions with counsel for Snow Capital and the court filings, it is my understanding that Snow Capital thereafter began its discoveries and moved for class certification.

26. By Memorandum and Order dated December 20, 2010, Judge Buchwald denied Snow Capital's motion for certification solely on the basis that Snow Capital could not be named as class representative. Judge Buchwald found that its claims were not typical of the proposed

class as there was evidence that it sold all of its IMAX securities before any curative statements were made by IMAX in relation to the alleged misrepresentations upon which Snow Capital claimed it had relied. Judge Buchwald also took issue with Snow Capital's adequacy given its pre-existing relationship with one of its lawyers. Attached as **Exhibit "H"** to this affidavit is a copy of the Memorandum and Order dated December 20, 2010.

27. As part of her December 20, 2010 Memorandum and Order, Judge Buchwald invited applications by persons or entities wishing to be appointed as the new lead plaintiff. At the time Judge Buchwald issued her December 20, 2010 Memorandum and Order, she was aware of and, as noted below, commented on the Certification Decision.

28. On January 5, 2011, Westchester Capital re-assigned its interest in The Merger Fund's claims against the defendants to The Merger Fund. On January 10, 2011, The Merger Fund, represented by Abbey Spanier, moved for appointment as lead plaintiff. On January 12, 2011, Ironworkers St. Louis District Counsel Pension Fund brought a competing motion to be appointed as lead plaintiff.

29. By Memorandum and Order dated April 14, 2011, Judge Buchwald named The Merger Fund as lead plaintiff. Abbey Spanier was re-appointed as lead counsel, with Judge Buchwald noting that Abbey Spanier's familiarity with the proceedings would benefit class members. Attached as **Exhibit "I"** to this affidavit is a copy of the Memorandum and Order dated April 14, 2011.

**5. The Form of Notice in the Canadian Action**

(a) The Merger Fund Seeks to Participate in the Motion to Approve the Form of Notice

30. As noted above, The Merger Fund was only appointed as lead plaintiff in the U.S. Action on April 14, 2011.

31. Though Abbey Spanier was previously appointed as lead counsel in the U.S. Action, it was replaced as lead counsel on June 29, 2009, a process that began with the release of *Huff* on December 3, 2008.

32. Accordingly, from the time that Justice van Rensburg's Certification Decision was released on December 14, 2009 until Abbey Spanier was re-appointed as lead counsel on April 14, 2011, there was no proper basis upon which The Merger Fund (as a proposed class member in the U.S. Action) or Abbey Spanier (as a law firm not appointed as lead counsel) could have sought to become involved in the Canadian Action on behalf of the proposed class members in the U.S. Action.

33. Shortly after being re-appointed as lead counsel, on the morning of May 2, 2011 Abbey Spanier became aware that, in a teleconference to be held on May 3, 2011, Justice van Rensburg would be considering the form of notice of certification to be made in the Canadian Action.

34. In its capacity as counsel to The Merger Fund, Abbey Spanier immediately wrote a letter to Justice van Rensburg on May 2, 2011 advising of its concerns regarding the form of notice of certification proposed by the plaintiffs in the Canadian Action. In particular, Abbey Spanier suggested that the issuance of the notice of certification in the Canadian Action be deferred until

certification is decided upon in the U.S. Action. Attached as **Exhibit "J"** to this affidavit is a copy of Abbey Spanier's May 2, 2011 letter.

35. Abbey Spanier's May 2, 2011 letter was copied to Judge Buchwald and the counsel to the parties in the Canadian Action.

36. On May 3, 2011, Siskinds LLP ("Siskinds"), co-counsel to the plaintiffs in the Canadian Action, wrote a letter to Justice van Rensburg disputing the position set out in Abbey Spanier's letter. In particular, Siskinds argued that The Merger Fund had not yet sought intervenor status in the Canadian Action, and so its basis to claim standing had not been established. Attached as **Exhibit "K"** to this affidavit is a copy of Siskinds' May 3, 2011 letter.

37. On the same day, Abbey Spanier wrote to Justice van Rensburg to confirm that The Merger Fund would be seeking to intervene in the Canadian Action within 10 days. Abbey Spanier's letter was copied to Judge Buchwald and the counsel to the parties to the Canadian Action. Attached as **Exhibit "L"** to this affidavit is a copy of Abbey Spanier's May 3, 2011 letter.

38. Siskinds subsequently sent a second letter on May 3, 2011, to Abbey Spanier, advising that Justice van Rensburg had adjourned the motion for the approval of the notice of certification to allow The Merger Fund to bring its motion to participate in the Canadian Action. Attached as **Exhibit "M"** to this affidavit is a copy of Siskinds' May 3, 2011 letter.

(b) The Merger Fund's Position on the Form of Notice

39. On this issue, it is The Merger Fund's position that the only viable means of fairly managing the parallel class proceedings in the U.S. and Canada is to defer the approval, issuance

and distribution of the notice of certification in the Canadian Action until a certification decision has been reached in the U.S. Action.

40. The certification motion in the U.S. Action must be delivered by The Merger Fund by June 10, 2011, although our present expectation is that the motion may be filed as early as May 27, 2011. Depending upon how long the defendants require to deliver responding materials, and depending on whether Judge Buchwald requires oral argument, the certification motion could be completed by September 2011.

41. Though Abbey Spanier's May 2, 2011 letter indicates that the notice of certification might be approved and issued with certain modifications, having had the opportunity to fully consider all of the issues at play, counsel for The Merger Fund has been unable to identify any form of notice that would satisfactorily address its concerns.

42. Both the content of the notice of certification sent to the global class in the Canadian Action and its issuance at this pre-certification stage of the U.S. Action have a very real potential to significantly prejudice the ability of class members who purchased their IMAX securities through the NASDAQ to make an informed decision about whether to opt out of the Canadian Action.

43. 85% to 90% of the securities purchased by class members in the Canadian Action were purchased in the U.S. through the NASDAQ and therefore fall within the proposed class in respect of which certification is being sought in the U.S. Action. In the Certification Decision, this Honourable Court found that "[a]pproximately 10-15% of the [IMAX] shareholders were Canadian residents, with the balance of outstanding common shares held by American or other non-Canadian residents." This is consistent with my understanding, based in part on the work of

The Merger Fund's market efficiency expert, Michael A. Marek, which was submitted in support of class certification in the U.S. Action, that approximately 90% of the trading in IMAX securities was carried out on the NASDAQ (see paragraph 16). Attached as **Exhibit "N"** to this affidavit is a copy of the Declaration of Michael A. Marek, without exhibits, sworn October 30, 2008.

44. By issuing a notice of certification in the Canadian Action before Judge Buchwald decides the U.S. certification motion, U.S. class members will be forced to elect whether or not to opt out of the Canadian Action before it is clear that there is a viable alternative class proceeding. Compelling U.S. class members to make this choice without knowing whether there are in fact two real possibilities to choose between has the potential to create unfairness and prejudice for those class members.

45. The issuance of the notice of certification before a decision is reached on certification in the U.S Action would also raise complex and difficult questions without clear answers. In particular, if a U.S. class member does not opt out of the Canadian Action, there will be an issue as to whether or not that class member would then be precluded from participating in the U.S. Action, if it is subsequently certified. Even if not precluded from participating in the U.S. Action, if a U.S. class member is required to opt out of the Canadian Action as a precondition of participating in the U.S. Action, there will be an issue as to whether this requires U.S. class members to effectively "opt in" to the U.S. Action, a requirement that would be contrary to U.S. law. Unless U.S. class members are provided a full and fair opportunity to participate as class members in the U.S. Action, once certified, the issuance of the notice of certification in the Canadian Action could potentially cause significant prejudice to those class members' claims.

46. Further, while this Honourable Court has found that it is capable of applying U.S. law to the claims of U.S. class members, there are significant differences between Canadian law and U.S. law, including in relation to limitations on damages, reliance and fraud on the market. A number of procedural and substantive issues arise from these differences, and the U.S. class members must be apprised, through notice that complies with U.S. law, of the implications of all relevant factors in order to make a fair and informed decision about whether to opt out of the Canadian Action and have their claims adjudicated in the U.S.

47. The general practice in the U.S. is to have notice made by published notice, by internet notice and by first class mail to all class members, either directly or through their brokers, who are required to forward the notice to their clients.

48. It is The Merger Fund's preference to have its rights adjudicated under U.S. law in the U.S. Action, if certified. The Merger Fund is of the view that it would be unfairly prejudiced by being forced to make an election regarding participation in the Canadian Action before a certification decision is rendered in the U.S. Action.

49. In a case conference held in the U.S. Action on April 26, 2011, Judge Buchwald raised the issue of the most appropriate manner in which to move the parallel proceedings in the U.S. and Canada forward. Judge Buchwald also recognized that the comity issues raised in the U.S. and Canadian Actions are likely issues of first impression.

50. Judge Buchwald has also indicated that she is not likely to refuse certification of the U.S. Action on the basis that the Canadian Action is preferable. In her Memorandum and Order, dated December 20, 2010, Judge Buchwald found that the U.S. Action was the "superior" mechanism for dealing with the claims of the proposed U.S. Action class members because:

> amongst other reasons, PWC is not a named defendant in the Canadian class action, the consolidated complaint here alleges a significantly longer class period, the class as currently defined only includes purchasers on the NASDAQ (and thus excludes purchases of IMAX stock on the Toronto Stock Exchange), and the IMAX defendants have requested leave to appeal the certification of the global class in Canada – an issue that is the subject of conflicting decisions in Ontario. At bottom, a class action in a foreign jurisdiction, applying that jurisdiction's securities laws, to which a named defendant in the United States action is not a party, in which the first complaint in the foreign jurisdiction was filed after the first complaint in this case, is not a "superior" way of adjudicating plaintiffs' claims against that party for alleged violations of U.S. securities laws – claims which we already have upheld against defendants' motions to dismiss. (pp. 51-52)

Judge Buchwald's Memorandum and Order, dated December 20, 2010, was previously attached as Exhibit "H" to this affidavit.

51. In light of Justice van Rensburg's comments in the Certification Decision regarding the need to adopt a "wait and see" approach in dealing with conflict of laws issues, The Merger Fund's position is that these issues are best resolved through deferral, rather than an amended notice. The former approach is preferable given that the latter would have to confront a myriad of complex issues in advance of a definitive ruling on certification in the U.S. Action.

52. As counsel for The Merger Fund I do want to make it clear that neither The Merger Fund nor Abbey Spanier has any desire to impede the progress of the Canadian Action. Deferring the notice of certification in the Canadian Action, at least in respect of the U.S. class members, will not prevent the parties to the Canadian Action from taking other steps to advance the proceedings, such as completing pleadings or conducting discovery.

53. Further, as lawyers for the lead plaintiff, and as lead counsel in the U.S. Action, Abbey Spanier is committed to moving ahead with the certification motion in the U.S. Action at the earliest possible date. Judge Buchwald has also indicated a desire to move the certification

motion forward expeditiously. Abbey Spanier is prepared to undertake to report back to this Honourable Court as often as it is deemed necessary or appropriate to keep this Honourable Court apprised of any matter that may affect the timing of the certification determination by Judge Buchwald or any other matter relevant to the issues before this Honourable Court.

SWORN BEFORE ME at the City of New York, in the State of New York this 12th day of May, 2011. )

A Notary Public in and for the State of New York, U.S.A.

JILL S. ABRAMS

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

| MARVIN NEIL SILVER and others<br>Plaintiffs | -and- | IMAX CORPORATION and others<br>Defendants | Court File No. CV-06-3257-00 |
|---|---|---|---|

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Brampton

**AFFIDAVIT OF JILL S. ABRAMS**
**(sworn May 12, 2011)**

**BENNETT JONES LLP**
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario
M5X 1A4

**Jeffrey S. Leon** (LSUC No. 18855L)
**Eric R. Hoaken** (LSUC No. 35502S)

Telephone: (416) 863-1200
Facsimile: (416) 863-1716
Email: hoakene@bennettjones.com
leonj@bennettjones.com

Lawyers for the class member, The Merger Fund

6826721v4

This is Exhibit "A"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

Yvonne Gadsden

A Notary Public
in and for the State of New York, USA

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

RECEIVED
OCT 02 2007
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB)<br><br>JURY TRIAL DEMANDED |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs, by their undersigned attorneys, on behalf of themselves and the class they seek to represent, for their Consolidated Class Action Complaint (the "Complaint"), allege the following upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon the investigation made by Plaintiffs' counsel, which included the review and analysis of information obtained from numerous public sources including, inter alia: Securities and Exchange Commission ("SEC") filings by IMAX Corporation ("IMAX" or the "Company"), securities analysts reports about the Company, Company press releases, periodic Earnings Conference Calls held by the Company, media reports about the Company, interviews with former IMAX and PricewaterhouseCoopers LLP employees, and documents from Neil v. IMAX Corporation, et al., CV-06-3257-00, Ontario, Canada, Superior Court of Justice.

## JURISDICTION AND VENUE

1. The claims asserted herein arise under Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§78j and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder by the SEC, 17 C.F.R. § 240.10b.5.

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §§1331. Venue is proper in this

Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391(b) and (c).

3. Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District and the Company's U.S. headquarters is located in this Judicial District at 110 East 59th Street, Suite 2100, New York, New York.

4. In connection with the acts, transactions and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of a national securities exchange.

## THE PARTIES

### A. Plaintiffs

5. Lead Plaintiff Westchester Capital Management, Inc. ("WCMI"), as the investment advisor for GS Master Trust, MSS Merger Arbitrage Fund, The Merger Fund, The Merger Fund VL and SphinX Merger Arbitrage Fund ("Lead Plaintiff"), purchased IMAX common stock during the Class Period and suffered damages as a result of the federal securities law violations alleged herein.

6. By order dated January 17, 2007, WCMI was appointed Lead Plaintiff in accordance with the provisions of the Private Securities Litigation Reform Act of 1995. WCMI's certification was previously filed with the Court.

7. Plaintiff The Steelworkers Pension Trust ("TSPT") purchased IMAX common stock during the Class Period and suffered damages as a result of the federal securities law violations and false and misleading statements and material omissions alleged herein. TSPT's certification was previously filed with the Court.

**B. <u>Defendants</u>**

8. Defendant IMAX is a corporation registered under the laws of the Country of Canada. The Company's United States headquarters is located at 110 East 59th Street, Suite 2100, New York, New York and its Canadian headquarters is located at 2525 Speakman Drive, Mississauga, Ontario, Canada, L5K 1B1. IMAX, together with its wholly-owned subsidiaries, is an entertainment technology company which specializes in large-format and three-dimensional ("3D") motion-picture systems. It is also engaged in the production, digital re-mastering and distribution of IMAX films, the operation of IMAX theaters and the provision of support for IMAX theaters and the IMAX theater network.

9. Defendant Richard L. Gelfond ("Gelfond") has been Co-Chairman of IMAX since June 1999 and Co-Chief Executive Officer since May 1996. He has been a director of the Company since 1994. From March 1994 to June 1999, Gelfond served as Vice Chairman of the Company. According to the Company's Form 14A filed with the SEC on August 10, 2007, Gelfond owns 2,722,900 IMAX shares, or 6.6% of the Company's outstanding common stock. He signed the Company's Forms 10-K for the years ended December 31, 2002 through 2006.

10. Defendant Bradley J. Wechsler ("Wechsler") has been Co-Chief Executive Officer of IMAX with Mr. Gelfond since May 1996. From March 1994 to June 1999, Wechsler served as Chairman of the Company and has served as IMAX's Co-Chairman with Mr. Gelfond since June 1999. He has been a director of the Company since 1994 and was a member of the Audit Committee of its Board of Directors between 2002 and 2003. According to the Company's Form 14A filed with the SEC on August 10. 2007, Wechsler owns 2,682,800 IMAX shares, or 6.5% of the Company's common stock. He signed the Company's Forms 10-K for the years ended December 31, 2002 through 2006.

This is Exhibit "B"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

A Notary Public
in and for the State of New York, USA

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

**CERTIFICATION OF LEAD PLAINTIFF**
**PURSUANT TO FEDERAL SECURITIES LAWS**

I, Roy Behren, on behalf of The Merger Fund, declare as follows:

1. I have reviewed the Consolidated Amended Complaint filed in this action.

2. The Merger Fund did not purchase Imax Corporation securities at the direction of counsel or in order to participate in any private action arising under the Private Securities Litigation Reform Act (the "PSLRA").

3. The Merger Fund is willing to serve as a representative party on behalf of a class and to testify at deposition and trial, if necessary.

4. The Merger Fund's transactions in IMAX securities during the class period identified in the Consolidated Amended Complaint are set forth in the document attached hereto.

5. The Merger Fund has not served or sought to serve as a representative party on behalf of a class in any federal securities action during the last three years.

6. The Merger Fund will not accept any payment for serving as a representative party, except to receive its pro rata share of any recovery or as ordered or approved by the court or any award to it by the Court of reasonable costs and expenses (including lost wages) directly relating to its representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 1/06/11 Signed: [signature]

This is Exhibit "C"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

A Notary Public
in and for the State of New York, USA

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

DATE FILED: 1/18/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

MOTTI KAPLAN, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, and IMAX CORPORATION,

Defendants.

----------------------------------X

**MEMORANDUM AND ORDER**

06 Civ. 6128 (NRB)

SANTIAGO GUZMAN, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

----------------------------------X

**MEMORANDUM AND ORDER**

06 Civ. 6235 (NRB)

ERIC S. BERGEN, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, and IMAX CORPORATION,

Defendants.

----------------------------------X

**MEMORANDUM AND ORDER**

06 Civ. 6313 (NRB)

MICROFILM JAN 22 2007 -12 PM

----------------------------------X

MICHAEL J. LAROSA, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

**MEMORANDUM AND ORDER**

06 Civ. 6349 (NRB)

----------------------------------X

ROBERT FEENEY, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

**MEMORANDUM AND ORDER**

06 Civ. 6449 (NRB)

----------------------------------X

FLOYD REYNOLDS, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

**MEMORANDUM AND ORDER**

06 Civ. 6693 (NRB)

----------------------------------X

----------------------------------X

ANTHONY CAIAFA, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

**MEMORANDUM AND ORDER**

06 Civ. 7057 (NRB)

----------------------------------X

ROBERT B. GRAY, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, and FRANCIS T. JOYCE,

Defendants.

**MEMORANDUM AND ORDER**

06 Civ. 7162 (NRB)

----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This matter involves eight related cases brought against the IMAX Corporation ("IMAX"), a Canadian company, and three of its high level executives,[1] on behalf of a purported class of

[1] Richard Gelfond has served as co-chief executive officer since May of 1996, and co-chairman of IMAX since June of 1996. Bradley J. Wechsler has served as co-chief executive officer with Gelfond since May of 1996. Francis T. Joyce has served as IMAX's chief financial officer since 2001.

investors who purchased IMAX stock during the class period.[2] Seven sets of investors each filed motions to consolidate the actions, to be appointed as lead plaintiff, and to designate their lawyers as lead counsel. These include: (1) Westchester Capital Management, Inc. ("Westchester Capital"), acting as the investment advisor for five different investment funds[3] ("five funds"); (2) Snow Capital Investment Partners, L.P. ("Snow Capital"); (3) the Steelworkers Pension Trust ("Steelworkers Pension"); (4) Y Lu; (5) Paul Witt, Gerald Nash, Michael Pemberton, and Stacey Shehorn (collectively, the "IMAX Investor Group"); and (7) Jay M. Spritzler.[4] For the reasons set forth below, we consolidate the above-captioned actions pursuant to Fed. R. Civ. Proc. 42(a), appoint Westchester Capital as lead plaintiff, and designate the law firm of Abbey Spanier Rodd Abrams & Paradis, LLP, as lead counsel.

---

[2] Seven of the eight plaintiffs (Eric Bergen, Robert Gray, Santiago Guzman, Robert Feeney, Motti Kaplan, Michael LaRosa, and Floyd Reynolds), along with movants Westchester Capital Management, Y Lu, and Jay Spritzler, specify the class period to begin on February 17, 2006 and end on August 9, 2006. Plaintiff Anthony Caiafa and movants Snow Capital Investments, Robert Lieblang, Steelworkers Pension, Gary and Marlene Creagh, and IMAX Investor Group specify the class period to begin on October 28, 2004 and end on August 9, 2006. We will address the issue of differing class periods below.

[3] These five funds are GS Master Trust, MSS Merger Arbitrage Fund, *The Merger Fund*, *The Merger Fund VL*, and *SphinX Merger Arbitrage* Fund. See Declaration of Roy Behren (Nov. 2, 2006) ("Behren Decl.") ¶ 2

[4] We note that Gary and Marlene Creagh have since withdrawn their motion.

This is Exhibit "D"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

A Notary Public
in and for the State of New York, USA

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

LexisNexis®

**In re IMAX SECURITIES LITIGATION**

**Master File 06 Civ. 6128 (NRB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**587 F. Supp. 2d 471; 2008 U.S. Dist. LEXIS 74460**

**September 15, 2008, Decided**
**September 16, 2008, Filed**

**SUBSEQUENT HISTORY:** Motion granted by In re Imax Secs. Litig., 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y., June 29, 2009)

**PRIOR HISTORY:** Kaplan v. Gelfond, 240 F.R.D. 88, 2007 U.S. Dist. LEXIS 4446 (S.D.N.Y., 2007)

**CORE TERMS:** theater, accounting, installation, scienter, motive, lease, fiscal year, delivery, recklessness, recorded, auditor, fiscal, installs, restatement, accountant, year ending, net earnings, customer's, pleaded, sound system, sales-type, fraud claims, acquisition, requisite, conscious, informal, revised, undelivered, screen, film

**COUNSEL:** [**1] For Plaintiff: Arthur N. Abbey, Jill S. Abrams, Richard B. Margolies, Grace E. Parasmo, ABBEY SPANIER RODD & ABRAMS, LLP, New York, NY.

For IMAX, Defendants: Lewis J. Liman, CLEARY GOTTLIEB STEEN & HAMILTON LLP, New York, NY.

For PricewaterhouseCoopers LLP: Jennifer L. Conn, M. Byron Wilder, GIBSON, DUNN & CRUTCHER LLP, New York, NY.

**JUDGES:** NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** NAOMI REICE BUCHWALD

**OPINION**

[*473] **MEMORANDUM AND ORDER**

**NAOMI REICE BUCHWALD**

**UNITED STATES DISTRICT JUDGE**

Plaintiffs brought this securities fraud class action under Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5, on behalf of all persons and entities who purchased or acquired common stock in IMAX Corporation ("IMAX" or the "Company") between February 27, 2003 and July 20, 2007 (the "class period"). The consolidated amended class action complaint (the "complaint") alleges that the defendants, IMAX, Richard L. Gelfond ("Gelfond"), Bradley J. Wechsler ("Wechsler"), [*474] Francis T. Joyce ("Joyce"), Kathryn A. Gamble ("Gamble" and collectively, the "IMAX defendants"), and Pricewaterhouse [**2] Coopers LLP ("PWC"), issued materially false and misleading statements concerning IMAX's accounting of theater system revenue. This opinion addresses the IMAX defendants' and PWC's motions to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, both motions are DENIED.

**BACKGROUND**

1

1 The following facts have been drawn from the Consolidated Amended Class Action Complaint ("Compl."), the declarations of James C. Clark ("Clark Decl.") and Jennifer L. Conn ("Conn Decl.") in support of defendants' motions to dismiss the complaint.

IMAX is an entertainment technology company specializing in the design and manufacture of large-format, two- and three-dimensional theater systems. [2] An IMAX theater system traditionally consists of: an advanced, high-resolution projection system, a digital sound system, a screen with proprietary coating technology, a digital theater control system, and extensive theater planning, design and installation services. [3]

2 Clark Ex. C at 5-6.
3 Clark Ex. C at 6.

Although IMAX marketed several product and service lines during the class period, such as the production and distribution of films and film products and the operation and management [**3] of IMAX theaters, the majority of IMAX's revenue was derived from the sale and lease of theater systems to third-party owners of large-format theaters. [4] Throughout the class period, IMAX reported relatively strong, upward-trending financial results: 16 theater system installations ("installs") and $ 71 million revenue for fiscal year 2002; 21 installs and $ 75.8 million revenue for 2003; 22 installs and $ 86.6 million revenue for 2004; and 39 installs and $ 97.7 million revenue for 2005. [5] On March 9, 2006, IMAX filed its Form 10-K for the fiscal year, ending December 31, 2005 ("2005 10-K"), which described a "record" 14 theater system installations and $ 35.1 million revenue in the fourth quarter. [6] A press release issued on the same day revealed that IMAX's Board of Directors was exploring several avenues for maximizing shareholder value, including such strategic alternatives as a sale of the company or a merger with another entity. [7]

4 Clark Ex. C at 6; Compl. P 62.
5 Compl. PP 71, 79, 87, 107.
6 Compl. PP 102, 107.
7 Compl. P 104.

On August 9, 2006, IMAX announced that it was in the process of responding to an informal inquiry from the SEC concerning the timing of revenue recognition, [**4] and specifically, its application of multiple element arrangement accounting to revenue derived from theater system sales and leases. [8] Management also disclosed that discussions with potential buyers and strategic partners had faltered. [9] By the time of the closing bell on the following day, the price of IMAX shares had fallen from $ 9.63 to $ 5.73. [10]

8 Compl. PP 115-116.
9 Compl. PP 121-122.
10 Compl. PP 115, 119.

Eleven months later, on July 20, 2007, IMAX filed its Form 10-K for the fiscal year ending December 31, 2006 ("2006 10-K"), which included a restatement of its financial results for fiscal years 2002 through the first three quarters of 2006. As disclosed in the 2006 Form 10-K:

> [*475] . . . the Company revised its policy to require that (i) the projector, sound system and screen system be installed and are in full working condition, the 3D glasses machine, if applicable, be delivered and projectionist training be completed, and (ii) written customer acceptance thereon received, or the public opening of the theater take place, before revenue can be recognized. [11]

Acknowledging that "errors had occurred in its prior accounting for theatre systems," IMAX "revised its policy with regard to [**5] revenue recognition for theatre systems" and "restated its financial results in accordance with the revised policy." [12] The restatement of IMAX's theater systems revenue had the effect of shifting revenue from the period in which it had been originally reported to subsequent periods. In total, 16 installation transactions representing $ 25.4 million in revenue shifted between quarters in their originally reported years, and 14 installation transactions representing $ 27.1 million in revenue shifted between fiscal years. [13] The first of these consolidated actions followed shortly after IMAX released its restated financial results.

11 Compl. P 145.
12 Compl. P 139.
13 Compl. P 139. According to the 2006 10-K: "Two transactions which were originally recorded in 2004 (revenue and net earnings impact of $ 3.0 million and $ 1.6 million, respectively) were moved to 2005 and 2006. Eight transactions which were originally recorded in 2005 (revenue and net earnings impact of $ 14.1 million and $ 7.5 million, respectively) were moved to 2006 and two transactions which were originally recorded in 2005 were moved to 2007 (revenue and net earnings impact of $ 3.4 million and $ 2.2 million, respectively). [**6] In addition, one transaction recorded in 2002 was moved to 2005 (revenue and net earnings impact of $ 4.9 million and $ 2.1 million, respectively) and one transaction recorded in 2006 was moved to 2007 (revenue and net earnings impact of $ 1.7 million and $ 0.6 million, respectively)." 2006 10-K at 91.

The complaint alleges that, "beginning in fiscal year 2002, and continuing throughout the Class Period, the Company improperly segregated the individual components of the [theater system] and recognized revenue on

This is Exhibit "E"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

A Notary Public
in and for the State of New York, USA

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

LexisNexis®

**W. R. HUFF ASSET MANAGEMENT CO., LLC, Plaintiff-Appellee, v. Deloitte & Touche LLP, Credit Suisse Securities (USA) LLC, Credit Suisse, New York Branch, The Royal Bank of Scotland plc, The Bank of Nova Scotia, Toronto Dominion Texas, LLC (f/k/a Toronto Dominion Texas, Inc.), Mizuho International PLC, ABN AMRO Inc., Banc of America, N.A., Fleet Securities, Inc. (n/k/a Bank of America, N.A.), Banc of America Securities LLC, Barclays Capital Inc., Barclays Bank PLC, BNY Capital Markets, Inc., The Bank of New York Company, Inc., CIBC World Markets Corp., CIBC, Inc., Citibank, N.A., Citigroup Inc., Citicorp USA, Inc., Citigroup Global Markets, Inc., Salomon Smith Barney Inc. (n/k/a Citigroup Global Markets, Inc.), Calyon Securities (USA), Inc. (f/k/a Credit Lyonnais Securities (USA) Inc.), Calyon New York Branch (successor by operation of law to Credit Lyonnais New York Branch), Deutsche Bank Alex. Brown, Inc., Deutsche Bank AG, Harris Nesbitt Corp., JPMorgan Chase & Co., Morgan Stanley & Co., Inc., JPMorgan Securities Inc., Scotia Capital (USA), Inc., Cowen & Co., LLC (f/k/a SG Cowen Securities Corporation), Societe Generale, also known as a French Banking Institution, Suntrust Capital Markets, Inc., SunTrust Bank, TD Securities (USA), Inc., ABN AMRO Bank N.V., BMO Nesbitt Burns Corp. (n/k/a Harris Nesbitt Burns Corp.); Credit Lyonnais Securities (USA) Inc., SG Cowen Securities Corp., and Buchanan Ingersoll & Rooney Professional Corporation, Defendants-Appellants.**

**Docket Nos. 06-1664-cv(L), 06-1749 (con)**

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**549 F.3d 100; 2008 U.S. App. LEXIS 24490**

**November 7, 2007, Argued**
**December 3, 2008, Decided**

**SUBSEQUENT HISTORY:** On remand at, Complaint dismissed at In re Adelphia Communs. Corp. Sec. & Derivative Litig., 2009 U.S. Dist. LEXIS 3577 (S.D.N.Y., Jan. 6, 2009)
US Supreme Court certiorari denied by W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche, LLP, 2009 U.S. LEXIS 3055 (U.S., Apr. 20, 2009)

**PRIOR HISTORY:** [**1]
Defendants-appellants filed this interlocutory appeal from two orders of the United States District Court for the Southern District of New York (Lawrence M. McKenna, Judge), denying their motion to dismiss plaintiff-appellee's complaint for lack of standing, and adhering to that decision upon reconsideration. We reverse on the ground that plaintiff, an investment advisor that has (a) the discretionary authority to make investment decisions on its clients' behalf, and (b) the power of attorney to file suit on its clients' behalf, but does not have ownership or title of the claim itself, lacks constitutional standing to bring a securities action in a representative capacity on behalf of its clients.
In re Adelphia Communs. Corp. Sec. & Derivative Litig., 2005 U.S. Dist. LEXIS 24038 (S.D.N.Y., Oct. 19, 2005)
In re Adelphia Communs. Corp. Secs. & Derivative Litig., 2005 U.S. Dist. LEXIS 18554 (S.D.N.Y., Aug. 29, 2005)

**DISPOSITION:** Reversed and remanded.

**COUNSEL:** LOUIS R. COHEN (Paul R.Q. Wolfson, on the brief), Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, for Defendants-Appellants Credit Suisse Securities (USA) LLC; Credit Suisse, New York Branch; The Royal Bank of Scotland plc; and Mizuho International plc.

This is Exhibit "F"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

Yvonne Gadsden

A Notary Public
in and for the State of New York, USA

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

LexisNexis®



**In re IMAX SECURITIES LITIGATION**

**Master File 06 Civ. 6128 (NRB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2009 U.S. Dist. LEXIS 58219**

**June 29, 2009, Decided**
**June 29, 2009, Filed**

**SUBSEQUENT HISTORY:** Class certification denied by In re IMAX Sec. Litig., 2010 U.S. Dist. LEXIS 135341 (S.D.N.Y., Dec. 20, 2010)

**PRIOR HISTORY:** In re IMAX Sec. Litig., 587 F. Supp. 2d 471, 2008 U.S. Dist. LEXIS 74460 (S.D.N.Y., 2008)

**CORE TERMS:** class members, reconsideration, class certification, assignment of claims, class action, financial interest, appointed, adequacy, largest, cure, Memorandum of Law, typicality, confer, lead counsel, standing to sue, legal issues, injury-in-fact, infringement, assignee, law firm, securities fraud, investment advisor, client funds, setting forth, copyright infringement, shareholders, designated, discovery, assignor, replace

**COUNSEL:** [*1] For Westchester Capital Management Inc., Lead Plaintiff: Jill Sharyn Abrams, Richard Barry Margolies, LEAD ATTORNEY, Arthur N. Abbey, Abbey Spanier Rodd Abrams & Paradis, LLP, New York, NY.

For Motti Kaplan, Individually, Motti Kaplan, and on behalf of all others similarly situated, Plaintiffs: Nancy Kaboolian, LEAD ATTORNEY, Arthur N. Abbey, Abbey Spanier Rodd Abrams & Paradis, LLP, New York, NY.

For Santiago Guzman, individually and on behalf of all others similarly situated, Eric S. Bergen, individually and on behalf of all others similarly situated, Michael LaRosa, individually and on behalf of all others similarly situated, Robert Feeney, Floyd Reynolds, individually and on behalf of all others similarly situated, Anthony Caiafa, individually and on behalf of all others similarly situated, Robert B. Gray, individually and on behalf of all others similarly situated, Consolidated Plaintiffs: Arthur N. Abbey, Abbey Spanier Rodd Abrams & Paradis, LLP, New York, NY.

For Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Imax Corporation, Kathryn A. Gamble, Defendants: Lewis J. Liman, LEAD ATTORNEY, Cleary Gottlieb Steen & Hamilton, LLP(NYC), New York, NY.

For PricewaterhouseCoopers [*2] LLP, Defendant: Jennifer Laurie Conn, Gibson, Dunn & Crutcher LLP (NYC), New York, NY; M. Cory Nelson, M. Byron Wilder, Samantha Ferris, PRO HAC VICE, Gibson, Dunn & Crutcher LLP, Dallas, TX.

For Gary Creagh, Marlene Creagh, Movants: Catherine A. Torell, Cohen, Milstein, Sellers & Toll, P.L.L.C., New York, NY.

For IMAX Investor Group, Movant: Evan J. Smith, LEAD ATTORNEY, Brodsky & Smith, L.L.C., Mineola, NY.

For Snow Capital Investment Partners, L.P., Movant: David Avi Rosenfeld, Mark Samuel Reich, Coughlin Stoia Geller Rudman & Robbins, LLP (LI), Melville, NY.

For Steelworkers Pension Trust, Movant: Christopher J. Keller, LEAD ATTORNEY, Labaton Sucharow, LLP,

This is Exhibit "G"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

A Notary Public
in and for the State of New York, USA

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

MANDATE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: OCT 0 5 2009

S.D.N.Y.-N.Y.C.
08-cv-1029
Pauley, J.
06-cv-6128
Buchwald, J.

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

---

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 1st day of October, two thousand nine,

Present:

Robert D. Sack,
Debra Ann Livingston,
Gerard E. Lynch,
*Circuit Judges*.

01 2009

---

In re SLM Corporation Securities Litigation,

09-1602-op (L)
09-2997-op (Con)

---

Petitioner, Westchester Capital Management, Inc., through counsel, has filed two petitions for a writ of mandamus. Upon due consideration, it is hereby ORDERED that the mandamus petitions are DENIED because Petitioner has not demonstrated that it lacks an adequate, alternative means of obtaining relief. *See In re von Bulow*, 828 F.2d 94, 98 (2d Cir. 1987).

A TRUE COPY
Catherine O'Hagan Wolfe, Clerk
by ____
DEPUTY CLERK

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: ____

SAO-SH

ISSUED AS MANDATE: Oct. 1, 2009 MG

This is Exhibit "H"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

A Notary Public
in and for the State of New York, USA

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

In re IMAX SECURITIES LITIGATION

**MEMORANDUM AND ORDER**

----------------------------------X 06 Civ. 6128 (NRB)

**NAOMI REICE BUCHWALD**

**UNITED STATES DISTRICT JUDGE**

This is a securities fraud class action under Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, brought on behalf of all persons who purchased or acquired common stock in IMAX Corporation ("IMAX" or "the Company") on the NASDAQ between February 27, 2003 and July 27, 2007 ("the Class Period").[1]

---

[1] In its motion for class certification, filed on April 22, 2010, Lead Plaintiff Snow Capital Investment Partners, L.P. ("Snow Capital" or "Lead Plaintiff") proposed a Class that included all those who acquired IMAX stock during the proposed Class Period (i.e., not just those who acquired IMAX stock on the NASDAQ). See Memorandum of Law in Support of Plaintiff's Motion for Class Certification ("Pl. Mem.") at 1 n.1. On June 24, 2010, the U.S. Supreme Court decided Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869 (2010), adopting a "transactional" test for determining whether a plaintiff has a claim under § 10(b).

Plaintiffs allege that the defendants, IMAX, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, and Kathryn A. Gamble (collectively, the "IMAX defendants"), and PricewaterhouseCoopers LLP ("PWC") (collectively, the "defendants"), issued materially false and misleading statements concerning IMAX's accounting of theater system revenue. On September 16, 2008, we denied defendants' motions to dismiss plaintiffs' Consolidated Class Action Complaint ("Complaint"). In re IMAX Sec. Litig., 587 F.Supp.2d 471 (S.D.N.Y. 2008). Familiarity with that opinion is assumed.

By Memorandum and Order dated June 29, 2009, we appointed Snow Capital lead plaintiff in this class action.[2] Snow Capital

---

Under Morrison, the relevant question is "whether the purchase or sale [of the security] is made in the United States, or involves a security listed on a domestic exchange . . . ." Id. at 2886. In light of Morrison, Snow submitted a revised definition of the proposed Class that only includes those who purchased IMAX shares on the NASDAQ, and thus excludes those who purchased IMAX securities on the Toronto Stock Exchange. Reply Memorandum of Law in Further Support of Plaintiff's Motion for Class Certification ("Pl. Reply Mem.") at 1 n.3.

[2] Snow Capital is the second lead plaintiff in this case. After we originally appointed Westchester Capital Management, Inc. ("Westchester Capital") lead plaintiff on January 17, 2007, the Second Circuit decided W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100 (2d Cir. 2008), holding that an investment advisor lacked standing to bring a securities fraud claim on behalf of its clients because it did not suffer an injury in fact. Relying on Huff, Snow Capital moved for reconsideration of our Order appointing Westchester Capital lead plaintiff. On June 29, 2009, we granted Snow Capital's motion for reconsideration, appointed it lead plaintiff, and designated

This is Exhibit "I"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

Yvonne Gadsden
A Notary Public
in and for the State of New York, USA

**YVONNE GADSDEN**
**NOTARY PUBLIC STATE OF NEW YORK**
**NEW YORK COUNTY**
**LIC. #01GA6133370**
**COMM. EXP: SEPTEMBER 2013**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

In re IMAX SECURITIES LITIGATION

**MEMORANDUM AND ORDER**

----------------------------------X 06 Civ. 6128 (NRB)

**NAOMI REICE BUCHWALD**

**UNITED STATES DISTRICT JUDGE**

By Memorandum and Order dated December 20, 2010, we denied former lead plaintiff Snow Capital Investment Partners, L.P.'s ("Snow Capital") motion for class certification and directed the filing of motions by any entity seeking to be named new lead plaintiff in this securities class action. Presently before the Court are motions from The Merger Fund and Ironworkers St. Louis District Counsel Pension Fund ("Ironworkers") to be named lead plaintiff. For the reasons set forth below, The Merger Fund is named lead plaintiff and its counsel, Abbey Spanier Rodd & Abrams LLP ("Abbey Spanier"), is named lead counsel.

**BACKGROUND**

This is the third time that this Court has been presented with a motion to select a lead plaintiff in this five-year old securities class action. Familiarity with this Court's prior orders and opinions in this case are assumed, and we do not repeat them here. The procedural background relevant for the present motions is as follows:

- On January 17, 2007 we named Westchester Capital Management, Inc. ("Westchester") lead plaintiff, and its counsel, Abbey Spanier, lead counsel.

- On December 3, 2008, the Second Circuit decided W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100 (2d Cir. 2008), holding that an investment adviser lacked standing to bring a securities fraud claim on behalf of its clients because it did not suffer an injury in fact.

- On January 17, 2009, Westchester entered into an Assignment Agreement with The Merger Fund (and other funds for which Westchester served as an investment advisor), under which The Merger Fund assigned to Westchester "all rights, legal title and interest in its claims relating to IMAX securities." See Dkt. No. 109, Ex. C.

- Relying on the Second Circuit's decision in Huff, on April 3, 2009, Snow Capital moved for reconsideration of our January 17, 2007 Order appointing Westchester lead plaintiff.

- On June 29, 2009, we granted Snow Capital's motion for reconsideration and appointed it lead plaintiff and it is counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") lead counsel.

- On December 20, 2010 we denied Snow Capital's motion for class certification, held that this case could not proceed with Snow Capital as class representative, and directed that new applications to be named lead plaintiff be filed within twenty-one days.

This is Exhibit "J"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

Yvonne Gadsden

A Notary Public
in and for the State of New York, USA

**YVONNE GADSDEN**
**NOTARY PUBLIC STATE OF NEW YORK**
**NEW YORK COUNTY**
**LIC. #01GA6133370**
**COMM. EXP: SEPTEMBER 2013**

ABBEY
SPANIER
RODD
&
ABRAMS,
LLP
ATTORNEYS AT LAW

212 EAST 39TH STREET
NEW YORK, NEW YORK 10016
PHONE 212 889 3700
FAX 212 684 5191
www.abbeyspanier.com

JILL S. ABRAMS
jabrams@abbeyspanier.com

May 2, 2011

**VIA TELECOPIER AND FEDERAL EXPRESS**

Honourable Justice K.van Rensburg
Ontario Superior Court of Justice
7755 Hurontario Street
Suite 100
Brampton, Ontario L6W4T6

Re: *Silver v. IMAX*, CV-06-3257-00

Dear Justice van Rensburg,

My firm, Abbey Spanier Rodd & Abrams, LLP, is Lead Counsel for plaintiffs in *In re IMAX Corp. Securities Litigation*, Master File No. 06-CV-6128 (NRB), the United States class action presently pending before the Honorable Naomi Reice Buchwald in the United States District Court for the Southern District of New York (the "IMAX U.S. Class Action"). Abbey Spanier was recently appointed as lead counsel in the IMAX U.S. Class Action and plaintiffs' motion for class certification will be filed on or before June 6, 2011. Early this morning we were notified that tomorrow, during a teleconference, Your Honor will be addressing the form of notice to be provided to the class in the above-captioned action. We respectfully wish to express our concerns about the proposed notice and our suggestions for addressing those concerns.

As your Honor is aware, in *Silver,* the plaintiffs named IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler and Francis T. Joyce as defendants. In the IMAX U.S. Class Action, Judge Buchwald sustained our action against those same defendants, as well as Katherine A. Gamble (IMAX's former Vice President of Finance, Controller and Principal Accounting Officer) and IMAX's auditor, PriceWaterhouseCoopers LLP. The proposed Class Period in the IMAX U.S. Class Action is February 27, 2003 through July 20, 2007, versus February 16, 2006 to August 9, 2006 in *Silver*. Persons who purchased their IMAX stock on the Toronto Stock Exchange will be excluded from the proposed class in the IMAX U.S. Class Action.

We have reviewed the proposed Notice of Certification appended to the Motion Record in the *Silver* action. Given the procedural posture of the Canadian and U.S. cases, we believe that it would be in the best interests of the class members to delay issuing notice in *Silver* until after the U.S. court has decided the IMAX class certification

motion.[1] At paragraph 164 of Your Honor's Reasons for Decision: Rule 21 motion and Motion for Certification, dated December 14, 2009 ("Certification Decision"), you noted that the Court would use a "wait and see" approach in dealing with the conflict of laws issues and, at paragraphs 64 and 65 of his February 14, 2011 Decision on Motion for Leave to Appeal to the Divisional Court, Justice Corbett observed that the implementation of the Certification Decision, "in a manner harmonious with proper respect for the exercise of jurisdiction by the American courts will, no doubt, unfold over time as the two cases proceed" and recognized the two courts' "autonomous jurisdictions." Delaying the *Silver* class notice until after the United States IMAX class certification decision would enable this Court to determine how to address the conflict of laws issues and apprise the class members of this Court's determination.

In the event Your Honor decides to approve the issuance of the *Silver* class notice as proposed, we believe that it is imperative that the notice advise the class members of the pending IMAX U.S. Class Action, and that U.S. class members may or may not be bound by the terms of any judgment or settlement in *Silver*. We also have due process concerns given that the Notice Program set forth in paragraph 20 of the Affidavit of Jay Strosberg in support of the *Silver* plaintiffs' motion for final approval of the form and manner of dissemination of the notice of certification notice: (i) does not require that notice be mailed to the class members as is generally required by the U.S. courts in securities class actions; and (ii) is "asking" rather than "requiring" U.S. brokers to provide the notice to their clients(¶20(f)).

We are most appreciative of the Court's consideration of this letter. If Your Honor has any questions, we will gladly make ourselves available to answer them.

Respectfully Submitted,

Jill S. Abrams

cc: Honorable Naomi Reice Buchwald (Via Federal Express)

Jay Strosberg (Via Email and Telecopier)
William V. Sasso
Dimitri Lascaris
Michael G. Robb
R. Paul Steep
Dana Peebles
Lewis Liman
Byron Wilder
Jennifer Conn

[1] Given the fact that these cases were filed in 2006, a relatively short delay will not prejudice any of the parties.

This is Exhibit "K"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

Yvonne Gadsden

A Notary Public
in and for the State of New York, USA

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

680 Waterloo Street, London, ON N6A 3V8

SISKINDS | THE LAW FIRM

EMAIL michael.robb@siskinds.com

May 3, 2011

The Honourable Justice K. van Rensburg
Superior Court of Justice
7755 Hurontario Street
Brampton, ON
L6W 4T6

Dear Justice van Rensburg:

**Re: Silver v. Imax Corporation et al.**

We are writing in response to correspondence delivered to you late yesterday by Jill Abrams of Abbey Spanier Rodd & Abrams LLP, a New York law firm who, we learned only yesterday, represents an Imax investor who was appointed lead plaintiff on April 14, 2011 in the parallel securities class action pending in the United States District Court for the Southern District of New York ("SDNY").

Preliminarily, we were not contacted by that firm and were not advised of their new status, or their firm's interest in the motion to be heard on May 3, 2011, until we received Ms. Abrams' letter at approximately 5:30 pm on May 2.

In any case, we do not agree with the approach proposed in Ms. Abrams' letter, nor with the concerns she voices with respect to the relief sought on our pending motion for the following reasons:

1. Both the form and method of dissemination of the notice have been agreed upon by the parties to this action, conform with Your Honour's certification order, and comply with the law and practice of Ontario.

2. The status of the U.S. Action is virtually identical to what it was when the certification order was issued in 2009. The SDNY has not granted a motion for certification in the action pending there, and there is no specific indication as to when it might do so. As such, the factual basis upon which you granted your certification order is essentially unchanged today.

3. Because no class action has been certified in the action pending in the SDNY , Ms. Abrams currently represents a single client, and it is not even clear that Ms. Abrams' client is a class member in this Action. Further, Ms. Abrams' client has not sought intervenor status in

This is Exhibit "L"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

Yvone Gadsden

A Notary Public
in and for the State of New York, USA

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

ABBEY SPANIER RODD & ABRAMS, LLP
ATTORNEYS AT LAW

212 EAST 39TH STREET
NEW YORK, NEW YORK 10016
PHONE 212 889 3700
FAX 212 684 5191
www.abbeyspanier.com

JILL S. ABRAMS
jabrams@abbeyspanier.com

May 3, 2011

**VIA TELECOPIER AND FEDERAL EXPRESS**

The Honourable Justice K. van Rensburg
Superior Court of Justice
7755 Hurontario Street
Brampton, ON
L6W4T6

Re: *Silver v. Imax Corporation, et al.*

Dear Justice van Rensburg,

We write in response to the letter sent to you this morning by Michael G. Robb, on behalf of the plaintiffs in the above-captioned matter, and to advise Your Honor that The Merger Fund, the Lead Plaintiff in *In re IMAX Securities Litigation*, presently pending in the Southern District of New York, intends to seek intervenor status before this Court within the next 10 days.

We apologize for the short notice but, as stated in my letter of May 2, 2011, we were unaware that Your Honor was conducting a hearing on the *Silver* class notice until yesterday.

Respectfully submitted,

Jill S. Abrams

JSA:lk

cc: Honorable Naomi Reice Buchwald (Via Federal Express)

Jay Strosberg (Via Email and Telecopier)
William V. Sasso
Dimitri Lascaris
Michael G. Robb
R. Paul Steep
Dana Peebles
Lewis Liman
Byron Wilder
Jennifer Conn

This is Exhibit "M"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

Yvone Gadsden

A Notary Public
in and for the State of New York, USA

**YVONNE GADSDEN**
**NOTARY PUBLIC STATE OF NEW YORK**
**NEW YORK COUNTY**
**LIC. #01GA6133370**
**COMM. EXP: SEPTEMBER 2013**

680 Waterloo Street, London, ON N6A 3V8

SISKINDS THE LAW FIRM

EMAIL michael.robb@siskinds.com

May 3, 2011

Ms. Jill S. Abrams
Abbey Spanier Rodd & Abrams LLP
212 East 39th Street
New York, New York 10016

Dear Ms. Abrams:

Re: *Silver v. Imax Corp et al.*

This morning we appeared before Justice van Rensburg by telephone to deal with our pending motion for the approval of the notice of certification in our action. She had before her your letter of last evening and my response from this morning. In addition, we advised her of your additional correspondence from this morning indicating your client's intention to intervene in our action.

Justice van Rensburg has adjourned our motion. We undertook to advise you that she has scheduled a telephone case conference for Wednesday, May 18, 2011 at 9:30 am. At that time, it is anticipated that the Court will set a schedule for the hearing together of your client's motion to intervene and, if intervenor status is granted, your client's substantive submissions on the form or method of dissemination of the notice. The call was scheduled for that date to give you time to retain counsel and deliver your client's motion to intervene, and it is anticipated that your client's counsel would appear on that conference call.

We will be seeking an abbreviated schedule for the hearing of that motion, with a view to having those motions resolved in time to publish notice of certification by June 30, 2011, as originally planned. As such, we would ask that you have your client's counsel contact us as soon as possible to make arrangements for the orderly scheduling of these matters.

This is Exhibit "N"
to the Affidavit of
Jill S. Abrams, sworn May 12, 2011

Yvonne Gadsden

A Notary Public
in and for the State of New York, USA

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB)<br><br>JURY TRIAL DEMANDED |

**DECLARATION OF MICHAEL A. MAREK**

## I. Background and Qualifications

1. I have been retained in connection with this matter by Plaintiff's Lead Counsel. In particular, Plaintiff's Lead Counsel requested that I review and discuss the efficiency of the market for IMAX Corporation ("IMAX" or the "Company") common stock between February 27, 2003 and July 20, 2007, inclusive (the "Class Period").

2. I am a founding member of Financial Markets Analysis, LLC ("FMA"). FMA is a securities analysis firm with offices in Princeton, New Jersey and San Diego, California. FMA provides financial analysis and related consulting to its clients. FMA personnel have frequently been called upon to prepare reports and to testify as securities valuation experts in class actions under Federal and State securities laws. Such testimony has included testifying to matters including: (1) market efficiency; (2) the materiality of information; (3) loss and damage causation; (4) the valuation of publicly traded securities based upon the hypothetical absence of alleged misstatements and the disclosure of alleged omissions and misrepresentations; and (5) damage calculations.

3. I have achieved the professional designation of Chartered Financial Analyst (CFA) and am a member in good standing of the CFA Institute (formerly the Association for Investment

Management and Research (AIMR)). The CFA program is a globally recognized standard for measuring the competence and integrity of financial analysts. Its curriculum develops and reinforces a fundamental knowledge of investment principles. The curriculum includes Ethical and Professional Standards, Quantitative Methods, Economics, Financial Statement Analysis, Corporate Finance, Analysis of Debt Investments, Analysis of Equity Investments, Analysis of Derivatives, Analysis of Alternative Investments, Portfolio Management and Performance Measurement and Attribution. A candidate's ability to apply these principles at a professional level is measured through three levels of examination which must be passed in succession. I passed each examination on my first effort. I participate in the CFA Institute's continuing education program and I am a member of the New York Society of Securities Analysts (NYSSA). A copy of my curriculum vitae is attached as Exhibit A.

4. My opinions and testimony regarding the subject matters listed above have been accepted in numerous United Stated Federal District Court matters, including: (1) *In Re: Ross Cosmetics Securities Litigation*, United States District Court, District of South Carolina, Spartanburg Division; Master File No. 7-92-1706-3; (2) *In Re Envoy Corporation Securities Litigation*, United States District Court, Middle District of Tennessee, Nashville Division; C.A. No. 3-98-0760; (3) *In Re: Nice Systems Ltd. Securities Litigation*, United States District Court, District of New Jersey; Civil Action No. 01-737; and (4) *In Re: Pozen Securities Litigation*, United States District Court, Middle District of North Carolina; Master File No. 1:04CV00505. In addition, I was determined at trial to be qualified as an expert with regard to these issues in *In Re Cystive, Inc. Shareholders Litigation*, Delaware Chancery Court; Consolidated Civil Action No. 20341-NC. I was retained as the plaintiffs' expert in *In re Executive Telecard, Ltd. Secs. Litig.*, 979 F. Supp. 1021, 1026-26 (S.D.N.Y. 1997), after plaintiffs' original expert was precluded from