# EXHIBIT C

8

Court File No.: CV-06-3257-00

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

BETWEEN:

MARVIN NEIL SILVER and CLIFF COHEN

Plaintiffs

- and -

IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, NEIL S. BRAUN, KENNETH G. COPLAND, GARTH M. GIRVAN, DAVID W. LEEBRON and KATHRYN A. GAMBLE

Defendants

Proceeding under the *Class Proceedings Act, 1992*

**AFFIDAVIT OF JILL S. ABRAMS**
**(sworn May 12, 2011)**

I, JILL S. ABRAMS, of the city of New York, New York make oath and say as follows:

**1. Introduction**

1. I am an attorney and a partner in the law firm of Abbey Spanier Rodd & Abrams, LLP ("Abbey Spanier"), which was recently re-appointed as lead counsel in the securities class action *In re IMAX Securities Litigation*, Civil Action No.1:06-cv-06128, commenced in the United States District Court for the Southern District of New York (the "U.S. Action"). Abbey Spanier currently represents The Merger Fund, the lead plaintiff in the U.S. Action. As a result, I have direct knowledge of the matters to which I hereinafter depose, except where I have indicated that

my knowledge is based on information provided to me by others and where so indicated I believe such information to be true.

2. Nothing in this affidavit should be taken as a waiver of any claim of privilege of any type, or as a disclosure of any information over which privilege is claimed. For the avoidance of doubt, The Merger Fund does not waive any attorney-client privilege that attaches to its communications with me and other members of Abbey Spanier, or any litigation privilege that attaches or applies to file materials in its possession or that of Abbey Spanier.

**2. The Canadian and U.S. Actions**

3. The claims in the U.S. Action relate to alleged material misrepresentations made in the secondary market disclosure of IMAX Corporation ("IMAX") beginning February 27, 2003 and ending July 20, 2007 (the "U.S. Class Period"). On February 27, 2003, IMAX reported its fourth quarter and year-end results for the year ending December 31, 2002. On July 20, 2007, IMAX announced that it had restated its financial results for 2002 through 2005, and the first three quarters of 2006, and was filing its previously unfiled 2006 Forms 10-K and 10-Q for the quarter ended March 31, 2007.

4. In particular, it is alleged that IMAX improperly accelerated the recognition of revenue from theatres that were not yet open or operational. Attached as **Exhibit "A"** to this affidavit is a copy of the Consolidated Amended Class Action Complaint, filed October 2, 2007 in the U.S. Action (the "U.S. Complaint").

5. The defendants in the U.S. Action are IMAX, IMAX corporate executives Richard L. Gelfond, Bradley L. Wechsler, Francis T. Joyce and Kathryn A. Gamble, and IMAX's auditor, PricewaterhouseCoopers LLP ("PwC").

6. I have reviewed the decision of Justice van Rensburg, dated December 14, 2009, certifying this action (the "Canadian Action") as a class proceeding pursuant to the *Class Proceedings Act, 1992* (Ontario) (the "Certification Decision"). Based upon my review of the Certification Decision, I believe that the underlying allegations in the Canadian Action are substantially similar to those underlying the U.S. Action. However, the certified class period in the Canadian Action, which runs from February 17, 2006 to August 9, 2006 (the "Canadian Class Period"), is shorter than the U.S. Class Period.

7. The majority of the defendants to the Canadian Action are also defendants to the U.S. Action. In particular, IMAX, Gelfond, Wechsler, Joyce and Gamble are defendants in both actions. The Canadian Action has also been certified against Neil S. Braun, Kenneth G. Copland, Garth M. Girvan and David W. Leebron as defendants. PwC, which is a defendant in the U.S. Action, has not been named as a defendant in the Canadian Action.

**3. The Merger Fund is a Member of the Canadian Class**

8. In the Canadian Action, the Certification Decision certified a global class that includes all persons, other than Excluded Persons, who acquired securities of IMAX on the TSX or the NASDAQ on or after February 17, 2006 and held some or all of those securities at the close of trading on August 9, 2006 (the "Canadian Class").

9. Abbey Spanier has conducted an investigation and determined that The Merger Fund, a mutual fund, acquired more than a million shares of IMAX common stock through the NASDAQ between February 17, 2006 and August 9, 2006, and continued to hold hundreds of thousands of shares of IMAX common stock at the close of trading on August 9, 2006. The Merger Fund filed evidence of its trades in IMAX securities in the U.S. Action in support of its motion to be appointed as lead plaintiff. Attached as **Exhibit "B"** to this affidavit is a copy of the Certification of Lead Plaintiff Pursuant to Federal Securities Laws, dated January 6, 2011, which attaches a Transaction Summary of The Merger Fund's trades in IMAX securities during the U.S. Class Period.

10. The Merger Fund is a member of the Canadian Class.

**4. The Procedural History of the U.S. Action**

11. To date, the U.S. Action has had a complicated procedural history, particularly in relation to the appointment of the lead plaintiff and lead counsel, as set out below.

(a) Westchester Capital and Abbey Spanier are Appointed

12. The U.S. Action began with eight proposed class actions against IMAX and other defendants, which were all commenced in the United States District Court for the Southern District of New York between August 16, 2006 and September 19, 2006.

13. In U.S. securities class actions, motions to appoint the lead plaintiff and lead counsel are made shortly after the initial complaint is filed. Such motions may be made by persons or entities that have filed complaints and by those who have not. All moving parties must submit a certification that sets forth their trading in the subject security for the relevant time period.

14. In the U.S. proceedings, seven groups of IMAX investors brought motions, each group seeking to consolidate the eight separate actions, to be appointed as lead plaintiff and to designate its lawyers as lead counsel. Abbey Spanier brought one of these motions on behalf of Westchester Capital Management, Inc. ("Westchester Capital"), the investment advisor for five different investment funds, including The Merger Fund, that had acquired IMAX securities.

15. These motions were all brought pursuant to the procedure set forth under the *Private Securities Litigation Reform Act* (U.S.) ("*PSLRA*"). Under the *PSLRA*, the lead plaintiff must be the moving party with the largest financial interest in the security that is the subject of the action and must otherwise satisfy the requirements of Rule 23 of the *Federal Rules of Civil Procedure*, which govern U.S. class actions. Adequacy and typicality are the provisions of Rule 23 considered relevant to the *PSLRA* lead plaintiff requirement.

16. By Memorandum and Order dated January 17, 2007, Judge Buchwald consolidated the eight separate actions and appointed Westchester Capital as the lead plaintiff. Notwithstanding the opposition by another proposed lead plaintiff, Snow Capital Investment Partners, L.P. ("Snow Capital"), Judge Buchwald found that Westchester Capital had been appointed as attorney-in-fact by the five funds, with the capacity to sue on their behalf to recover the losses that its investors allegedly sustained due to IMAX's misrepresentations. Abbey Spanier was appointed as lead counsel based on its competence and experience. Attached as **Exhibit "C"** to this affidavit is a copy of the Memorandum and Order dated January 17, 2007.

<u>(b) Westchester Capital and Abbey Spanier Act as Lead Plaintiff and Lead Counsel</u>

17. On behalf of Westchester Capital and the proposed class of plaintiffs, Abbey Spanier prepared and filed the U.S. Complaint on October 2, 2007.

18. The defendants brought motions to dismiss the U.S. Complaint on the basis that, among other things, it failed to state a claim upon which relief can be granted. After full written submissions and oral argument, Judge Buchwald dismissed the defendants' motions and ordered the defendants to answer the complaint. Attached as **Exhibit "D"** to this affidavit is a copy of Judge Buchwald's Memorandum and Order, dated September 15, 2008.

19. Thereafter, Westchester Capital began its discovery of the defendants. On October 31, 2008, Abbey Spanier moved for class certification on behalf of Westchester Capital and the proposed class of plaintiffs. The defendants subsequently discovered Westchester Capital's market efficiency expert, and opposed the certification motion on February 23, 2009.

(c) Westchester Capital and Abbey Spanier are Replaced

20. On December 3, 2008, the United States Court of Appeals for the Second Circuit issued its decision in *W.R. Huff Asset Management LLC v. Deloitte & Touche LLP* ("*Huff*"), which was not a class action. The Court in *Huff* held that an investment advisor lacks standing under Article III of the United States Constitution to assert claims on behalf of its investor clients under the federal securities laws, even where it is its clients' attorney-in-fact for litigation purposes and has unfettered discretion over its clients' investment decisions. The Court did hold, however, that an assignment of claims could be a sufficient basis to confer Article III standing upon an investment advisor. Attached as **Exhibit "E"** to this affidavit is a copy of the decision of the United States Court of Appeals for the Second Circuit in *Huff*, released December 3, 2008.

21. Westchester Capital was attorney-in-fact for the five investment funds it represented, including The Merger Fund, and had decision-making authority over those funds' investments.

However, it did not have an assignment of claims. Following *Huff*, on January 17, 2009, Westchester Capital obtained assignments of claims from the five investment funds.

22. On April 3, 2009, Snow Capital sought reconsideration of Judge Buchwald's appointment of Westchester Capital as lead plaintiff on the basis that the assignments of claims obtained by Westchester Capital did not relate back to the time when the lead plaintiff motions were made.

23. By Memorandum and Order dated June 29, 2009, Judge Buchwald granted Snow Capital's motion and appointed Snow Capital as the new lead plaintiff. Snow Capital's lawyers were also appointed to replace Abbey Spanier as lead counsel. Attached as **Exhibit "F"** to this affidavit is a copy of the Memorandum and Order dated June 29, 2009.

24. Westchester Capital filed a petition for a writ of mandamus, which was denied by the United States Court of Appeals for the Second Circuit on October 1, 2009. Attached as **Exhibit "G"** to this affidavit is a copy of the Order of United States Court of Appeals for the Second Circuit, dated October 1, 2009.

(d) The Merger Fund and Abbey Spanier are Appointed

25. Based on my discussions with counsel for Snow Capital and the court filings, it is my understanding that Snow Capital thereafter began its discoveries and moved for class certification.

26. By Memorandum and Order dated December 20, 2010, Judge Buchwald denied Snow Capital's motion for certification solely on the basis that Snow Capital could not be named as class representative. Judge Buchwald found that its claims were not typical of the proposed

class as there was evidence that it sold all of its IMAX securities before any curative statements were made by IMAX in relation to the alleged misrepresentations upon which Snow Capital claimed it had relied. Judge Buchwald also took issue with Snow Capital's adequacy given its pre-existing relationship with one of its lawyers. Attached as **Exhibit "H"** to this affidavit is a copy of the Memorandum and Order dated December 20, 2010.

27. As part of her December 20, 2010 Memorandum and Order, Judge Buchwald invited applications by persons or entities wishing to be appointed as the new lead plaintiff. At the time Judge Buchwald issued her December 20, 2010 Memorandum and Order, she was aware of and, as noted below, commented on the Certification Decision.

28. On January 5, 2011, Westchester Capital re-assigned its interest in The Merger Fund's claims against the defendants to The Merger Fund. On January 10, 2011, The Merger Fund, represented by Abbey Spanier, moved for appointment as lead plaintiff. On January 12, 2011, Ironworkers St. Louis District Counsel Pension Fund brought a competing motion to be appointed as lead plaintiff.

29. By Memorandum and Order dated April 14, 2011, Judge Buchwald named The Merger Fund as lead plaintiff. Abbey Spanier was re-appointed as lead counsel, with Judge Buchwald noting that Abbey Spanier's familiarity with the proceedings would benefit class members. Attached as **Exhibit "I"** to this affidavit is a copy of the Memorandum and Order dated April 14, 2011.

**5. The Form of Notice in the Canadian Action**

(a) The Merger Fund Seeks to Participate in the Motion to Approve the Form of Notice

30. As noted above, The Merger Fund was only appointed as lead plaintiff in the U.S. Action on April 14, 2011.

31. Though Abbey Spanier was previously appointed as lead counsel in the U.S. Action, it was replaced as lead counsel on June 29, 2009, a process that began with the release of *Huff* on December 3, 2008.

32. Accordingly, from the time that Justice van Rensburg's Certification Decision was released on December 14, 2009 until Abbey Spanier was re-appointed as lead counsel on April 14, 2011, there was no proper basis upon which The Merger Fund (as a proposed class member in the U.S. Action) or Abbey Spanier (as a law firm not appointed as lead counsel) could have sought to become involved in the Canadian Action on behalf of the proposed class members in the U.S. Action.

33. Shortly after being re-appointed as lead counsel, on the morning of May 2, 2011 Abbey Spanier became aware that, in a teleconference to be held on May 3, 2011, Justice van Rensburg would be considering the form of notice of certification to be made in the Canadian Action.

34. In its capacity as counsel to The Merger Fund, Abbey Spanier immediately wrote a letter to Justice van Rensburg on May 2, 2011 advising of its concerns regarding the form of notice of certification proposed by the plaintiffs in the Canadian Action. In particular, Abbey Spanier suggested that the issuance of the notice of certification in the Canadian Action be deferred until

certification is decided upon in the U.S. Action. Attached as **Exhibit "J"** to this affidavit is a copy of Abbey Spanier's May 2, 2011 letter.

35. Abbey Spanier's May 2, 2011 letter was copied to Judge Buchwald and the counsel to the parties in the Canadian Action.

36. On May 3, 2011, Siskinds LLP ("Siskinds"), co-counsel to the plaintiffs in the Canadian Action, wrote a letter to Justice van Rensburg disputing the position set out in Abbey Spanier's letter. In particular, Siskinds argued that The Merger Fund had not yet sought intervenor status in the Canadian Action, and so its basis to claim standing had not been established. Attached as **Exhibit "K"** to this affidavit is a copy of Siskinds' May 3, 2011 letter.

37. On the same day, Abbey Spanier wrote to Justice van Rensburg to confirm that The Merger Fund would be seeking to intervene in the Canadian Action within 10 days. Abbey Spanier's letter was copied to Judge Buchwald and the counsel to the parties to the Canadian Action. Attached as **Exhibit "L"** to this affidavit is a copy of Abbey Spanier's May 3, 2011 letter.

38. Siskinds subsequently sent a second letter on May 3, 2011, to Abbey Spanier, advising that Justice van Rensburg had adjourned the motion for the approval of the notice of certification to allow The Merger Fund to bring its motion to participate in the Canadian Action. Attached as **Exhibit "M"** to this affidavit is a copy of Siskinds' May 3, 2011 letter.

(b) The Merger Fund's Position on the Form of Notice

39. On this issue, it is The Merger Fund's position that the only viable means of fairly managing the parallel class proceedings in the U.S. and Canada is to defer the approval, issuance

and distribution of the notice of certification in the Canadian Action until a certification decision has been reached in the U.S. Action.

40. The certification motion in the U.S. Action must be delivered by The Merger Fund by June 10, 2011, although our present expectation is that the motion may be filed as early as May 27, 2011. Depending upon how long the defendants require to deliver responding materials, and depending on whether Judge Buchwald requires oral argument, the certification motion could be completed by September 2011.

41. Though Abbey Spanier's May 2, 2011 letter indicates that the notice of certification might be approved and issued with certain modifications, having had the opportunity to fully consider all of the issues at play, counsel for The Merger Fund has been unable to identify any form of notice that would satisfactorily address its concerns.

42. Both the content of the notice of certification sent to the global class in the Canadian Action and its issuance at this pre-certification stage of the U.S. Action have a very real potential to significantly prejudice the ability of class members who purchased their IMAX securities through the NASDAQ to make an informed decision about whether to opt out of the Canadian Action.

43. 85% to 90% of the securities purchased by class members in the Canadian Action were purchased in the U.S. through the NASDAQ and therefore fall within the proposed class in respect of which certification is being sought in the U.S. Action. In the Certification Decision, this Honourable Court found that "[a]pproximately 10-15% of the [IMAX] shareholders were Canadian residents, with the balance of outstanding common shares held by American or other non-Canadian residents." This is consistent with my understanding, based in part on the work of

The Merger Fund's market efficiency expert, Michael A. Marek, which was submitted in support of class certification in the U.S. Action, that approximately 90% of the trading in IMAX securities was carried out on the NASDAQ (see paragraph 16). Attached as **Exhibit "N"** to this affidavit is a copy of the Declaration of Michael A. Marek, without exhibits, sworn October 30, 2008.

44. By issuing a notice of certification in the Canadian Action before Judge Buchwald decides the U.S. certification motion, U.S. class members will be forced to elect whether or not to opt out of the Canadian Action before it is clear that there is a viable alternative class proceeding. Compelling U.S. class members to make this choice without knowing whether there are in fact two real possibilities to choose between has the potential to create unfairness and prejudice for those class members.

45. The issuance of the notice of certification before a decision is reached on certification in the U.S Action would also raise complex and difficult questions without clear answers. In particular, if a U.S. class member does not opt out of the Canadian Action, there will be an issue as to whether or not that class member would then be precluded from participating in the U.S. Action, if it is subsequently certified. Even if not precluded from participating in the U.S. Action, if a U.S. class member is required to opt out of the Canadian Action as a precondition of participating in the U.S. Action, there will be an issue as to whether this requires U.S. class members to effectively "opt in" to the U.S. Action, a requirement that would be contrary to U.S. law. Unless U.S. class members are provided a full and fair opportunity to participate as class members in the U.S. Action, once certified, the issuance of the notice of certification in the Canadian Action could potentially cause significant prejudice to those class members' claims.

46. Further, while this Honourable Court has found that it is capable of applying U.S. law to the claims of U.S. class members, there are significant differences between Canadian law and U.S. law, including in relation to limitations on damages, reliance and fraud on the market. A number of procedural and substantive issues arise from these differences, and the U.S. class members must be apprised, through notice that complies with U.S. law, of the implications of all relevant factors in order to make a fair and informed decision about whether to opt out of the Canadian Action and have their claims adjudicated in the U.S.

47. The general practice in the U.S. is to have notice made by published notice, by internet notice and by first class mail to all class members, either directly or through their brokers, who are required to forward the notice to their clients.

48. It is The Merger Fund's preference to have its rights adjudicated under U.S. law in the U.S. Action, if certified. The Merger Fund is of the view that it would be unfairly prejudiced by being forced to make an election regarding participation in the Canadian Action before a certification decision is rendered in the U.S. Action.

49. In a case conference held in the U.S. Action on April 26, 2011, Judge Buchwald raised the issue of the most appropriate manner in which to move the parallel proceedings in the U.S. and Canada forward. Judge Buchwald also recognized that the comity issues raised in the U.S. and Canadian Actions are likely issues of first impression.

50. Judge Buchwald has also indicated that she is not likely to refuse certification of the U.S. Action on the basis that the Canadian Action is preferable. In her Memorandum and Order, dated December 20, 2010, Judge Buchwald found that the U.S. Action was the "superior" mechanism for dealing with the claims of the proposed U.S. Action class members because:

> amongst other reasons, PWC is not a named defendant in the Canadian class action, the consolidated complaint here alleges a significantly longer class period, the class as currently defined only includes purchasers on the NASDAQ (and thus excludes purchases of IMAX stock on the Toronto Stock Exchange), and the IMAX defendants have requested leave to appeal the certification of the global class in Canada – an issue that is the subject of conflicting decisions in Ontario. At bottom, a class action in a foreign jurisdiction, applying that jurisdiction's securities laws, to which a named defendant in the United States action is not a party, in which the first complaint in the foreign jurisdiction was filed after the first complaint in this case, is not a "superior" way of adjudicating plaintiffs' claims against that party for alleged violations of U.S. securities laws – claims which we already have upheld against defendants' motions to dismiss. (pp. 51-52)

Judge Buchwald's Memorandum and Order, dated December 20, 2010, was previously attached as Exhibit "H" to this affidavit.

51. In light of Justice van Rensburg's comments in the Certification Decision regarding the need to adopt a "wait and see" approach in dealing with conflict of laws issues, The Merger Fund's position is that these issues are best resolved through deferral, rather than an amended notice. The former approach is preferable given that the latter would have to confront a myriad of complex issues in advance of a definitive ruling on certification in the U.S. Action.

52. As counsel for The Merger Fund I do want to make it clear that neither The Merger Fund nor Abbey Spanier has any desire to impede the progress of the Canadian Action. Deferring the notice of certification in the Canadian Action, at least in respect of the U.S. class members, will not prevent the parties to the Canadian Action from taking other steps to advance the proceedings, such as completing pleadings or conducting discovery.

53. Further, as lawyers for the lead plaintiff, and as lead counsel in the U.S. Action, Abbey Spanier is committed to moving ahead with the certification motion in the U.S. Action at the earliest possible date. Judge Buchwald has also indicated a desire to move the certification

motion forward expeditiously. Abbey Spanier is prepared to undertake to report back to this Honourable Court as often as it is deemed necessary or appropriate to keep this Honourable Court apprised of any matter that may affect the timing of the certification determination by Judge Buchwald or any other matter relevant to the issues before this Honourable Court.

SWORN BEFORE ME at the City of New York, in the State of New York this 12th day of May, 2011. )

A Notary Public in and for the State of New York, U.S.A.

JILL S. ABRAMS

YVONNE GADSDEN
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01GA6133370
COMM. EXP: SEPTEMBER 2013

MARVIN NEIL SILVER and others
Plaintiffs

-and-

IMAX CORPORATION and others
Defendants

Court File No. CV-06-3257-00

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Brampton

**AFFIDAVIT OF JILL S. ABRAMS**
**(sworn May 12, 2011)**

**BENNETT JONES LLP**
3400 One First Canadian Place
P.O. Box 130
Toronto, Ontario
M5X 1A4

**Jeffrey S. Leon** (LSUC No. 18855L)
**Eric R. Hoaken** (LSUC No. 35502S)

Telephone: (416) 863-1200
Facsimile: (416) 863-1716
Email: hoakene@bennettjones.com
leonj@bennettjones.com

Lawyers for the class member, The Merger Fund

6826721v4