UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | Case No. 06 Civ. 6128 (NRB)<br>ECF Case |

# Memorandum of Law in Support of Defendants IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce and Kathryn A. Gamble's Opposition to The Merger Fund's Motion for Class Certification

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, and Kathryn A. Gamble

Of Counsel:
Lewis J. Liman
David Oliwenstein

**THIS MEMORANDUM CONTAINS CONFIDENTIAL INFORMATION. PURSUANT TO ¶ 7 OF THE STIPULATION AND ORDER GOVERNING CONFIDENTIAL MATERIAL, ENTERED NOVEMBER 3, 2008, PORTIONS OF THE ELECTRONICALLY-FILED MEMORANDUM, INCLUDING EXHIBITS G, H, I AND J HAVE BEEN FILED WITH THE COURT UNDER SEAL.**

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. A CLASS ACTION IS NOT "SUPERIOR" TO THE PREVIOUSLY CERTIFIED GLOBAL CLASS ACTION IN CANADA .......... 3

A. The Canadian Action Provides A Forum For U.S. Shareholders .......... 4

B. The Canadian Action Is Not Inferior .......... 5

C. Certification Of A Second Class Action Contravenes The Efficiency Rationale Of Class Actions .......... 7

D. The Differences Between The U.S. And Canadian Actions Do Not Render The Canadian Action Inferior .......... 9

E. Case Law Precludes Certification Of A Class .......... 11

II. DEFENDANTS HAVE REBUTTED THE PRESUMPTION OF RELIANCE .......... 12

A. A Class May Not Be Certified If The Alleged Misrepresentations Do Not Impact Market Price .......... 12

B. There Is No Evidence Of Price Impact .......... 14

III. THE CLASS SHOULD NOT INCLUDE ANY SHAREHOLDERS WHO PURCHASED PRIOR TO FEBRUARY 17, 2006 .......... 17

A. A Class Containing Both Pre-February And Post-February 2006 Purchasers Fails The Commonality And Predominance Requirements .......... 17

B. The Merger Fund Is Neither A Typical Nor An Adequate Representative Of Pre-February 2006 Purchasers .......... 21

IV. THE CLASS SHOULD EXCLUDE IN-AND-OUT SHAREHOLDERS .......... 23

V. THE CLASS PERIOD SHOULD END ON AUGUST 11, 2006 .......... 23

CONCLUSION .......... 24

# TABLE OF AUTHORITIES

Page(s)

## Rules and Statutes


Fed. R. Civ. P. 23(b)(2)(C)(iii) .... 8

Fed. R. Civ. P. 23(b)(3).... 1, 12

Fed. R. Civ. P. 23(b)(3)(B) .... 4

Fed. R. Civ. P. 23(d)(1).... 8

Fed. R. Civ. P. 23(e) .... 8

Fed. R. Evid. 404(b).... 19


## Cases


Amchem Prods., Inc. v. Windsor,
521 U.S. 591 (1997).... 3, 7

Avritt v. Reliastar Life Ins. Co.,
Civ. No. 07-1817 (JNE/JJG), 2009 WL 455808 (D. Minn. Feb. 23, 2009) .... 11

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,
222 F.3d 52 (2d Cir. 2000).... 22

Basic Inc. v. Levinson,
485 U.S. 224 (1988).... 13, 20

Becker v. Schenley,
557 F.2d 346 (2d Cir. 1977).... 11

Benner v. Becton Dickinson & Co.,
214 F.R.D. 157 (S.D.N.Y. 2003) .... 3

Blessing v. Sirius XM Radio Inc.,
No. 09 Cv. 10035 (HB), 2011 WL 1194707 (S.D.N.Y. Mar. 29, 2011) .... 23

Boucher v. Syracuse Univ.,
164 F.3d 113 (2d Cir. 1999) .... 22

Brinco Mining Ltd. v. Fed. Ins. Co.,
552 F. Supp. 1233 (D.D.C. 1982).... 6

Brown v. Blue Cross & Blue Shield of Mich., Inc.,
167 F.R.D. 40 (E.D. Mich. 1996) .... 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Cammer v. Bloom,
711 F. Supp. 1264 (D.N.J. 1989) .......... 20

Can. Life Assurance Co. v. Converium Ruckversicherung,
No. 06-Civ-3800 (GEB), 2007 WL 1726565 (D.N.J. June 13, 2007) .......... 5-6, 7

Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,
502 F.3d 91 (2d Cir. 2007) .......... 3

Deposit Guar. Nat'l Bank v. Roper,
445 U.S. 326 (1980) .......... 3

DeYoung v. Beddome,
707 F. Supp. 132 (S.D.N.Y. 1989) .......... 6

Eisen v. Carlisle & Jacquelin,
391 F.2d 555 (2d Cir. 1968) .......... 7-8

Erica P. John Fund, Inc. v. Halliburton Co.,
563 U.S. __, No. 09-1403, 2011 WL 2175208 (June 6, 2011) .......... 14

Fleeger v. Clarkson Co.,
86 F.R.D. 388 (N.D. Tex. 1980) .......... 6

Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
903 F.2d 176 (2d Cir. 1990) .......... 21

Howe v. Goldcorp Invs. Ltd.,
946 F.2d 944 (1st Cir. 1991) .......... 10

In re Am. Express Merchs.' Litig.,
634 F.3d 187 (2d Cir. 2011) .......... 3

In re Am. Int'l Grp., Inc. Sec. Litig.,
265 F.R.D. 157 (S.D.N.Y. 2010) .......... 14

In re Am. Med. Sys., Inc.,
75 F.3d 1069, 1088 (6th Cir. 1996) .......... 11

In re Flag Telecom Holdings, Ltd. Sec. Litig.,
574 F.3d 29 (2d Cir. 2009) .......... 21

In re IMAX Sec. Litig.,
272 F.R.D. 138 (S.D.N.Y. 2010) .......... *passim*

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

In re IMAX Sec. Litig.,
587 F. Supp. 2d 471 (S.D.N.Y. 2008)........................................................................18

In re Initial Pub. Offerings Sec. Litig.,
243 F.R.D. 79 (S.D.N.Y. 2007)........................................................................21

In re Initial Pub. Offerings Sec. Litig.,
471 F.3d 24 (2d Cir. 2006)........................................................................2

In re Montgomery Cnty. Real Estate Antitrust Litig.,
No. B-77-513, 1988 WL 125789 (D. Md. July 17, 1988)........................................12

In re Omnicom Grp., Inc. Sec. Litig.,
597 F.3d 501 (2d Cir. 2010)........................................................................16

In re Royal Grp. Techs. Sec. Litig.,
No. 04 Civ. 9809 (HB), 2005 WL 3105341 (S.D.N.Y. Nov. 21, 2005)........................6

In re Salomon Analyst Metromedia Litig.,
544 F.3d 474 (2d Cir. 2008)........................................................................1, 2, 13-14

In re Zyprexa Prods. Liab. Litig.,
253 F.R.D. 69 (E.D.N.Y. 2008)........................................................................23

J & R Ice Cream Corp. v. Cal. Smoothie Licensing Corp.,
31 F.3d 1259 (3d Cir. 1994)........................................................................19

Kamm v. Cal. City Dev. Co.,
509 F.2d 205 (9th Cir. 1975)........................................................................11, 12

Lentell v. Merrill Lynch & Co., Inc.,
396 F.3d 161 (2d Cir. 2005)........................................................................16

Lewis Tree Serv., Inc. v. Lucent Techs. Inc.,
211 F.R.D. 228 (S.D.N.Y. 2002)........................................................................12

Mitchell v. Metro. Life Ins. Co.,
No. 03-Civ-10294 (WHP), 2004 WL 2439704 (S.D.N.Y. Nov. 2, 2004)........................8

Paraschos v. YBM Magnex Int'l, Inc.,
130 F. Supp. 2d 642 (E.D. Pa. 2000)........................................................................6

Pennsylvania v. Budget Fuel Co.,
122 F.R.D. 184 (E.D. Pa. 1988)........................................................................12

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Smith v. Bayer Corp.,
563 U.S. __ , No. 09-1205, 2011 WL 2369357 (June 16, 2011) .... 7

Stoneridge Inv. Partners, LLC v. Scientific-Atl., Inc.,
552 U.S. 148 (2008) .... 12-13

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,
No. 05 Civ. 1898 (SAS), 2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006) .... 19, 20

Teamsters Local 445 Freight Div. Pension, Fund v. Bombardier Inc.,
546 F.3d 196 (2d Cir. 2008) .... 2, 7

VictoriaTea.com, Inc. v. Cott Beverages Canada,
239 F. Supp. 2d 377 (S.D.N.Y. 2003) .... 6

Wal-Mart Stores, Inc. v. Dukes,
563 U.S. ___, No. 10-277, 2011 WL 2437013 (June 20, 2011) .... *passim*

Xianglin Shi v. Sina Corp.,
No. 05 Civ. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005) .... 22

**Other Authorities**

7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure
§ 1798.1 (3d ed. 2008) .... 8

IMAX Corporation ("IMAX" or the "Company"), Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, and Kathryn A. Gamble (together, the "IMAX Defendants") respectfully submit this Memorandum of Law in Opposition to the Motion for Class Certification (the "Motion") filed by The Merger Fund ("Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff's Motion should be denied or limited on three central grounds: First, Plaintiff has failed to satisfy the "superiority" requirement of Rule 23(b)(3). Virtually every member of the putative class is already pursuing an identical claim in a case that will adjudicate the controversy regardless of what this Court does. Certification of a second action is not a superior method "for fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3).

Second, Plaintiff cannot satisfy Rule 23(b)(3)'s "predominance" requirement because Defendants have rebutted Basic Inc. v. Levinson's fraud-on-the-market presumption by offering evidence that the alleged misrepresentations had no impact on the price of IMAX stock. Plaintiff's claim rests on the allegation that IMAX prematurely recognized revenue. Plaintiff does not claim that IMAX recorded revenue it did not receive or that its accounting error had any impact on cash flows. And Plaintiff and Defendants' experts are united in the view that a misapplication of an accounting principle – with no actual or perceived impact on cash flow or operations – can have no impact on stock price. Accordingly, class certification should be denied under governing Supreme Court and Second Circuit precedent, which permits defendants to rebut the Basic presumption at the class certification stage by making "[a]ny showing that severs the link between the alleged misrepresentation and . . . the price." See In re Salomon Analyst Metromedia Litig., 544 F.3d 474, 484 (2d Cir. 2008) (emphasis and second alteration in original) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 248 (1988)).

Third, even if a U.S. class action could be certified for some members of the proposed class, it should not include individuals who purchased IMAX stock before February 17, 2006, or after August 11, 2006. Under the Wal-Mart Stores, Inc. v. Dukes commonality analysis, a class containing both pre-February 2006 purchasers and post-February 2006 purchasers should not be certified, because determination of the validity of the allegations of one group will not resolve any issue central to the claims of the other. Finally, the claims of these two periods are atypical of each other and fail the predominance test.

**ARGUMENT**

The Supreme Court has emphasized over and over again that the class action is "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" Wal-Mart Stores, Inc. v. Dukes, 563 U.S. ___, No. 10-277, 2011 WL 2437013, at *6 (June 20, 2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)), and that, accordingly, "Rule 23 does not set forth a mere pleading standard," Dukes, 2011 WL 2437013, at *7. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id. (emphasis in original); see also In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 40 (2d Cir. 2006) ("In re IPO") ("[A] district court may not grant class certification without making a determination that all of the Rule 23 requirements are met."); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201-02 (2d Cir. 2008) ("Teamsters II"); Metromedia, 544 F.3d at 486 (quoting In re IPO, 471 F.3d at 41). As the Supreme Court has recently reiterated, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,'" an analysis that "[f]requently . . . will entail some overlap with the merits

of the plaintiff's underlying claim." Dukes, 2011 WL 2437013, at *7 (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982)).

## I. A CLASS ACTION IS NOT "SUPERIOR" TO THE PREVIOUSLY CERTIFIED GLOBAL CLASS ACTION IN CANADA

Plaintiff's motion fails for a threshold legal reason: it flunks the superiority test. Rule 23(b)(3) is based on the notion that absent the certification of a class action, persons whose claims individually would be too small to justify filing a lawsuit would have no vehicle for the vindication of their rights.[1] That notion informs the requirement that a plaintiff prove "predominance" and "superiority" before any class is certified.[2] It also informs the requirement that members of a Rule 23(b)(3) class be given notice and the right to opt out.[3] In cases where plaintiffs fail to satisfy the superiority and predominance requirements, opt-out class actions would raise serious due process issues.[4]

---

1 See In re Am. Express Merchs.' Litig., 634 F.3d 187, 194 (2d Cir. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997)) ("'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"); see also Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338 (1980) ("[A class action] may motivate [plaintiffs] to bring cases that for economic reasons might not be brought otherwise [thereby] . . . vindicating the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost.").

2 See Amchem, 521 U.S. at 617 (noting that the predominance and superiority requirements were intended to open the courts to "groups of people who individually would be without effective strength to bring their opponents into court at all") (quoting Kaplan, A Prefatory Note, 10 B.C. Ind. & Com. L. Rev. 497, 497 (1969)) (internal quotation mark omitted); Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007) (Superiority and predominance requirements "ensure[] that the class will be certified only when it would 'achieve economies of time, effort, and expense . . . .'") (quoting Amchem, 521 U.S. at 615); Benner v. Becton Dickinson & Co., 214 F.R.D. 157, 173 (S.D.N.Y. 2003) ("The most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit . . . where the costs of individually litigating the action exceeds [sic] the potential recovery.") (citation omitted).

3 Dukes, 2011 WL 2437013, at *13 ("In the context of a class action predominantly for money damages we have held that absence of notice and opt-out violates due process.") (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985)).

4 See, e.g., Dukes, 2011 WL 2437013, at *13 ("The procedural protections attending the (b)(3) class – predominance, superiority, mandatory notice, and the right to opt out – are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary to a (b)(2) class . . . . [For (b)(2) class actions] [p]redominance and superiority are self-evident. But with respect to each class member's individualized claim for money, that is not so – which is precisely why (b)(3) requires the judge to make findings about predominance and superiority before allowing the class.") (emphasis in original).

### A. The Canadian Action Provides A Forum For U.S. Shareholders

The distinctive element of Plaintiff's Motion is that there already exists a vehicle by which members of the putative class are pursuing their claim – thus, a second action would not present a "superior method for resolving the controversy." See Fed. R. Civ. P. 23(b)(3)(B) (noting that one factor weighing against superiority is whether "litigation [is] already [pending] by or against [members of the class.]"). The "controversy" will be "resolv[ed]" in a manner that ensures adequate procedural protections to U.S. shareholders regardless of whether a class is certified here.

Over eighteen months ago, the Ontario Superior Court (the "Canadian Court") certified a global class of investors who purchased IMAX stock between February 17, 2006, and August 9, 2006. See Ex. A ¶¶ 98, 102 (Reasons for Decision: Rule 21 Motion and Motion for Certification, dated Dec. 14, 2009, filed in Silver v. Imax Corp., Court File No. CV-06-3257-00, Ontario Superior Court of Justice, Canada).[5] The Canadian action asserts claims against IMAX and its officers and directors of misrepresentation and fraud, in connection with IMAX's revenue recognition accounting, on behalf of a global class of purchasers of IMAX stock from February 17 to August 9, 2006 (the "Canadian Action"). See Ex. B (Statement of Claim, dated Sept. 20, 2006, filed in Silver v. Imax Corp., Court File No. CV-06-3257-00, Ontario Superior Court of Justice, Canada); see also Report of Professor Poonam Puri, July 1, 2011 ¶¶ 149-50, 170-77, 186, 193, 195, 198, 203, 207 ("Puri Rpt.") (describing claims and allegations in that action). As counsel for The Merger Fund correctly noted in an affidavit filed with the Canadian Court, "the underlying allegations in the Canadian Action are substantially similar to those underlying the U.S. Action." Ex. C ¶ 6 (Affidavit of Jill S. Abrams, May 12, 2011).

---

[5] All exhibits referred to herein are identified in the July 1, 2011, Declaration of David Oliwenstein.

The Canadian Court has already found – in a ruling no longer subject to interlocutory review – that the class representatives will adequately represent the interests of U.S. plaintiffs. See Ex. A ¶ 217. In reaching its decision, the Canadian Court further expressly concluded that principles of order and fairness weigh in favor of certifying a global class. See Ex. A ¶¶ 131-65; see also Puri Rpt. ¶ 49 ("Judicial economy is also a factor in determining whether a class action is the preferable procedure, because the courts wish to prevent separate actions from covering the same ground and/or achieving inconsistent results.").

**B. The Canadian Action Is Not Inferior**

There can be no claim that the Canadian action is inferior. Members of the class in Canada will have the same rights as they would in this Court. In particular, they will have the right to: (a) opt out of that class; (b) object to any settlement; (c) participate in any settlement hearing; (d) have their claims adjudicated by a Court that affords similar procedural protections as U.S. courts; (e) have their claims adjudicated under either U.S. law or substantively similar Canadian law; and (f) recover their full damages if the IMAX Defendants are found liable. See Puri Rpt. ¶¶ 149-210 (overview of Canadian securities laws). As an added measure, Canadian law provides that U.S. purchasers may intervene in the Canadian action to ensure that their interests are protected, see Puri Rpt. ¶ 148, **a right The Merger Fund has exercised**. See Ex. D (Notice of Motion to Participate and for Leave to Intervene, dated May 13, 2011, filed in Silver v. Imax Corp., Court File No. CV-06-3257-00, Ontario Superior Court of Justice, Canada).

Based on these similarities between Canadian and U.S. procedural protections and substantive laws, U.S. courts in three related contexts have held that Canadian courts provide an adequate forum for resolution of securities claims. Those cases support denial of this Motion.

First, U.S. courts have stayed or dismissed litigation on comity grounds in

deference to "pending . . . parallel Canad[ian] action[s]." See Can. Life Assurance Co. v. Converium Ruckversicherung, No. 06-Civ-3800 (GEB), 2007 WL 1726565, at *6 (D.N.J. June 13, 2007); Fleeger v. Clarkson Co., 86 F.R.D. 388, 393 (N.D. Tex. 1980) ("[I]f this Court cannot extend comity to Canada, the comity principle has little vitality in our jurisprudence. Indeed, the Court is aware of no case in which an American court has refused to defer to Canada."); Paraschos v. YBM Magnex Int'l, Inc., 130 F. Supp. 2d 642, 646 (E.D. Pa. 2000) (dismissing on comity grounds U.S. class action which "mirror[ed] the same securities fraud . . . by virtually the same proposed class" in Canada); DeYoung v. Beddome, 707 F. Supp. 132, 137 (S.D.N.Y. 1989) (recognizing that "Canadian law provides causes of action that are the same in all significant respects as those available under [U.S.] law"). Second, courts have not hesitated to stay or dismiss an action based on forum non conveniens where – as here – there is related litigation in Canada, the parties and issues are similar, the relief is adequate, and the defendant is a Canadian corporation. See VictoriaTea.com, Inc. v. Cott Beverages Can., 239 F. Supp. 2d 377, 387 (S.D.N.Y. 2003). Third, courts have relied on their "inherent power . . . to dismiss duplicative, inconvenient, or inefficient litigation" in favor of previously filed Canadian litigation. See Brinco Mining Ltd. v. Fed. Ins. Co., 552 F. Supp. 1233, 1238 (D.D.C. 1982).

These cases, in which U.S. courts refused to allow duplicative U.S. proceedings in light of pending Canadian actions based on comity, forum non conveniens, and their inherent powers, are all animated by a simple premise: U.S. courts should not expend their scarce judicial resources adjudicating disputes that are already pending in a forum that courts in this district have held to be "adequate . . . to try class actions based on violations of federal securities laws." See In re Royal Grp. Techs. Sec. Litig., No. 04 Civ. 9809 (HB), 2005 WL 3105341, at *2 (S.D.N.Y. Nov. 21, 2005). There is no reason to depart from this bedrock principle here.

### C. Certification Of A Second Class Action Contravenes The Efficiency Rationale Of Class Actions

Only the Canadian Court can provide full relief to all purchasers of IMAX stock. Certification of a second class action thus would only ensure duplication and inefficiency. The Canadian Court has already ruled – in a decision entitled to comity – that "a global class [certified in Canada], would serve judicial economy by permitting common issues to be determined on a single occasion, thereby avoiding duplication of fact-finding and legal analysis, as well as the potential for inconsistent results if litigation were pursued . . . in various jurisdictions." Ex. A ¶ 216 (emphasis added);[6] see also Smith v. Bayer Corp., 563 U.S. __ , No. 09-1205, 2011 WL 2369357, at *11 (June 16, 2011) ("[W]e would expect federal courts to apply principles of comity to each other's class certification decisions when addressing a common dispute."); Converium Ruckversicherung, 2007 WL 1726565, at *7 (granting comity to Canadian action).

Plaintiff cannot "affirmatively demonstrate" its compliance with the requirements of Rule 23, Dukes, 2011 WL 2437013, at *7, including that a U.S. "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Id. at *12 (quoting Fed. R. Civ. P. 23(b)(3)) (internal quotation mark omitted). This is a prerequisite for class certification, and Plaintiff's failure to make this showing is fatal to its Motion. Teamsters II, 546 F.3d at 202; see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 616 (1997) (explaining that where "litigation concerning the controversy [has] already [been] commenced by . . . members of the class," the efficiency justification is no longer present) (quoting Fed. R. Civ. P. 23(b)(3)(B)); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 560 (2d Cir. 1968) (class

---

6 There is no question that the Canadian plaintiffs are vigorously prosecuting this action on behalf of the global class. The plaintiffs in that action have received documents and taken the testimony of ten witnesses (including IMAX's co-CEOs, its former CFO, the head of its Audit Committee, and the relevant PwC audit partner).

actions warranted because they "eliminate[] the possibility of repetitious litigation").

Indeed, far from creating an efficient mechanism to adjudicate the controversy, certification of a second class here would create the very problems Rule 23 was designed to avoid, including: "unnecessary litigation and duplicative fees, . . . delay, . . . complicated problems of judicial coordination . . ., disparate verdicts . . ., and . . . unequal distribution of [recovery] funds." 7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1798.1 (3d ed. 2008). To identify only a few issues:

- Discovery limitations. This Court has the authority and responsibility under the federal rules to "prescribe measures to prevent undue repetition or complication in presenting evidence or argument," Fed. R. Civ. P. 23(d)(1), and to enter a protective order to prevent undue "burden or expense." Id. 26(b)(2)(C)(iii). Canadian law has similar provisions but applies them differently. Puri Rpt. ¶¶ 91-103. Dual class actions would undermine those rules, as the losing party in one jurisdiction would have the right (and perhaps duty) to seek discovery denied to it in the first.

- Overlapping judgments and race to the courthouse. A judgment in a Rule 23(b)(3) class action is binding on all except those who opt out. See, e.g., Mitchell v. Metro. Life Ins. Co., No. 03-Civ-10294 (WHP), 2004 WL 2439704, at *1 (S.D.N.Y. Nov. 2, 2004). Canada has a similar rule. Puri Rpt. ¶ 79. The courts would need to coordinate notices of the class action (with additional expense and burden). If, as is customary, there are few opt-outs in each jurisdiction, then the certification of a second class action would give rise to the risk of an unseemly manipulation of court schedules – as each set of plaintiffs' lawyers presumably would try to get to judgment first (thereby precluding the second action). As the plaintiffs in the Canadian action have noted, "winning the race allows preclusion of the claims of overlapping class members and the lawyers bringing [the] first case to judgment are able to collect fees." See Ex. E ¶ 23 (Affidavit of Patrick J. Borchers, May 31, 2011) (citing Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 282-83 (7th Cir. 2002)). Of course, as the plaintiffs in Canada correctly point out, "[a]ll of this worry about, and reform concerning, 'dueling' class actions would be entirely unnecessary if it were impossible for overlapping class members to be members of more than one action." Id.[7]

- Settlement. Once a class is certified in the United States, the "claims, issues [and] defenses" of class members "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Canada applies a similar rule – though

[7] As counsel for The Merger Fund appears to acknowledge (although not before this Court), parallel class actions "raise complex and difficult questions without clear answers. In particular, if a U.S. class member does not opt out of the Canadian Action, there will be an issue as to whether or not that class member would then be precluded from participating in the U.S. Action, if it is subsequently certified." Ex. C ¶ 45.

> it has a different standard of fairness. Puri Rpt. ¶¶ 110-14. Thus, even if the Canadian plaintiffs, the judge, and the defendants all believe that a settlement is fair under Canadian standards, those parties could not settle without obtaining the additional approval of the U.S. court. The same might be said about the approval of a U.S. settlement.

These issues might be managed with enough judicial ingenuity and resources – but the point is they need not be. Defendants are not aware of – and Plaintiff fails to point to – any other case in which courts in two countries have certified overlapping global classes on the same claim. There is no reason to do so here. If The Merger Fund does not desire to participate in the Canadian class (of which it is already a member), it can opt out. If it participates and then objects to a settlement, it can make its objection there. This Court should not now enter an order, the only effect of which may be to delay resolution by creating two competing sets of litigation.

**D. The Differences Between The U.S. And Canadian Actions Do Not Render The Canadian Action Inferior**

In its previous opinion, the Court stated that it "decline[s] to deny certification on [superiority] grounds." See In re IMAX Sec. Litig., 272 F.R.D. 138, 158 (S.D.N.Y. 2010). Many of the bases for that opinion no longer apply, and Defendants respectfully submit that class certification should now be denied on superiority grounds.

First, and most important, there is no longer any question that, absent certification here, U.S. purchasers of IMAX stock will have a remedy through a class action lawsuit. On February 14, 2011, the Ontario Court of Appeals denied IMAX's motion for leave to appeal from the decision certifying a Canadian global class. See Ex. F ¶¶ 13-14 (Decision on Motion for Leave to Appeal to the Divisional Court, dated Feb. 14, 2011, filed in Silver v. Imax Corp., Court File No. CV-06-3257-00, Ontario Superior Court of Justice, Canada); see also Puri Rpt. ¶ 142 n.213. Plaintiffs' assertion that the Canadian Court "left open the possibility of revisiting [its decision to certify a global class]" is flat wrong. See Memorandum of Law in Support of The

Merger Fund's Motion for Class Certification, June 3, 2011, at 21 ("Plaintiff Br."). Nowhere in its opinion did the Canadian Court indicate that it would de-certify any portion of the class. On the contrary, the Canadian Court explicitly held that "it [is] appropriate to certify the global class as proposed by the plaintiffs" and to adopt a "'wait and see'" approach in determining how the conflict of law issues develop. Ex. A ¶ 164. Thus, as Professor Puri indicates, the Canadian case "now proceeds to trial." Puri Rpt. ¶ 142 n.213.

Second, the Canadian Court has indicated that it could apply U.S. law to the claims of U.S. class members. See Ex. A ¶ 164 ("The prospect that the claims of nonresident class members may be subject to different laws adds complexity to the litigation, but does not weigh against certification. The appropriate approach in this litigation is to "wait and see" how the conflict of law issues may develop, and . . . deal with any differences in the law that might arise by adjusting the common issues or recognizing subclasses as appropriate."); see also Puri Rpt. ¶¶ 143, 147; Howe v. Goldcorp Invs. Ltd., 946 F.2d 944, 952 (1st Cir. 1991) ("Canadian courts will either apply American law . . . or they will apply Canadian laws that offer shareholders somewhat similar protections . . . .").

Third, the Canadian plaintiffs' strategic decision not to name PwC as a defendant will not affect the quantum of damages that plaintiffs receive (and thus the "fairness" of the Canadian action), but only from whom they receive damages. Under both Canadian statutory and common law, each defendant can be jointly and severally liable for proven losses. See Puri Rpt. ¶ 189. Plaintiff can thus obtain complete recovery in the Canadian action. It is irrelevant that the U.S. plaintiffs would spread that relief by naming PwC, whereas the Canadian plaintiffs have focused their fire on the IMAX Defendants. And, as the Canadian plaintiffs noted in an affidavit recently filed with the Canadian Court, "[t]he differences in the grouping of the

defendants in the two actions present[s] no significant risk of unfairness. The most notable difference is that IMAX's auditor [PwC] is not a party to this action but is in the U.S. action. However, should this Court render a judgment against IMAX and its agents, they would be able to pursue a separate U.S. action for contribution or indemnity against [PwC] . . . ." See Ex. E ¶ 9 n.5.[8]

Fourth, Plaintiff's attempt to include pre-February 2006 purchasers in this class does not render the Canadian action inferior. For the reasons discussed infra at 17-23, this earlier class period fails the commonality, predominance, and typicality tests.

**E. Case Law Precludes Certification Of A Class**

Courts recognize that a class action should not be certified where members of the class can receive adequate relief through another vehicle that will resolve the dispute.

First, the Second Circuit has recognized that it is inappropriate to certify a class action when a similar class action is already pending. See Becker v. Schenley, 557 F.2d 346, 348 (2d Cir. 1977) ("The trial court's discretion has continually been upheld where, as here, it has been exercised so as to avoid duplicative class actions, or where the plaintiff has other, less burdensome methods available by which to resolve the controversy."); see also In re Am. Med. Sys., Inc., 75 F.3d 1069, 1088 (6th Cir. 1996) (reversing district court's grant of class certification in light of previously pending action and noting that "the general principle is to avoid duplicative litigation"); Avritt v. Reliastar Life Ins. Co., Civil No. 07-1817 (JNE/JJG), 2009 WL 455808, at *8 (D. Minn. Feb. 23, 2009) (noting that "the existence of [a previously filed class action indicates that proceeding with class litigation in this case is not warranted");

8 Courts have found that a second action is not superior even though every defendant was not named in the first action. See Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211-13 (9th Cir. 1975) (affirming the district court's finding that class action was not superior even though the first action "did not include five of the defendants named in [the second] action").

Lewis Tree Serv., Inc. v. Lucent Techs. Inc., 211 F.R.D. 228, 230 n.2 (S.D.N.Y. 2002).

Second, even where putative class members are represented indirectly through a parens patriae action (and not as a class member), courts often find class actions to be inferior. In Kamm, the Ninth Circuit affirmed the district court's decision to deny class certification in light of a similar parens patriae action instituted by the state of California in state court. See Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211-13 (9th Cir. 1975). In that case, the Ninth Circuit noted that not all members of the putative class will be able to obtain relief from the parens patriae action and that "the class [will not] recover an amount that is even close to that sought in the class action." Id. at 211. Nonetheless, the court concluded that certifying a class action was not superior. Id. at 212. Other federal courts have reached identical conclusions – despite the fact that the government's interests may not be perfectly aligned with those of the putative class.[9] This case is a fortiori.

## II. DEFENDANTS HAVE REBUTTED THE PRESUMPTION OF RELIANCE

### A. A Class May Not Be Certified If The Alleged Misrepresentations Do Not Impact Market Price

Rule 23(b)(3) requires plaintiffs to demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Prior to the Supreme Court's decision in Basic Inc. v. Levinson, 485 U.S. 224 (1988), to satisfy the predominance requirement, securities fraud plaintiffs had to show that they individually relied on the alleged misrepresentations. Stoneridge Inv. Partners, LLC v.

---

9 See, e.g., Brown v. Blue Cross & Blue Shield of Mich., Inc., 167 F.R.D. 40, 47 (E.D. Mich. 1996) (denying certification of class action because government-negotiated settlement was superior, even though "the State agreement may not be perfect or may not be how plaintiffs' counsel would have advocated a settlement"); Pennsylvania v. Budget Fuel Co., 122 F.R.D. 184, 186 (E.D. Pa. 1988); In re Montgomery Cnty. Real Estate Antitrust Litig., No. B-77-513, 1988 WL 125789, at *2 (D. Md. July 17, 1988) ("The result [of extending the membership of a certified class to include claims already brought in a parens patriae action] would be utter chaos combined with the unseemly prospect of two distinct representatives vying for members to join their respective groups. Such a result would . . . be an affront to justice and a wasteful exercise in duplicity.").

Scientific-Atl., Inc., 552 U.S. 148, 159-60 (2008). This requirement was often fatal to class certification motions. Basic, 485 U.S. at 242 ("Requiring proof of individualized reliance . . . effectively . . . would have prevented [plaintiffs] from proceeding with a class action.").

To address this issue, the Basic Court created a rebuttable presumption that securities purchasers rely "on the integrity of the market price," which, in turn, is presumed to incorporate all public, material misrepresentations. Id. at 247. This presumption dispensed with the need for each plaintiff to prove individual reliance. See id. But the Basic presumption does not apply automatically. Plaintiffs must prove that (1) the defendant "made public, material misrepresentations"; (2) the defendant's shares were traded in an "efficient market"; and (3) "the plaintiff traded the shares between the time the misrepresentations were made and the time the truth was revealed." Id. at 248 & n.27. If Plaintiffs are able to make this showing, defendants "may rebut proof of the elements giving rise to the presumption, or show that the misrepresentation in fact did not lead to a distortion of price or that an individual plaintiff traded or would have traded despite his knowing the statement was false." Id. at 248. As the Basic Court explained, a successful rebuttal precludes certification by defeating Rule 23(b)(3)'s predominance requirement.

One method of rebutting the Basic presumption is to demonstrate that the alleged misrepresentations did not impact the price of the securities at issue. See Metromedia, 544 F.3d at 484. This is because "[a]ny showing that severs the link between the alleged misrepresentation and . . . the price . . . will be sufficient to rebut the presumption of reliance." Id. (emphasis in original) (quoting Basic, 485 U.S. at 248). Thus, in Metromedia, the Second Circuit vacated an order certifying a class and remanded to the district court "to permit defendants the opportunity to rebut the Basic presumption prior to class certification."

Metromedia, 544 F.3d at 486. The court noted that defendants should have the "opportunity to attempt to rebut the fraud-on-the-market presumption by arguing, for example, that the market price was not affected by the alleged misstatements, other statements in the 'sea of voices' of market commentary were responsible for price discrepancies, or particular plaintiffs may not have relied on market price."[10] Id. at 485.

The Court's opinion in Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. __, No. 09-1403, 2011 WL 2175208 (June 6, 2011), reinforces that principle. There, in the course of holding that plaintiffs need not establish loss causation at the class certification stage, the Court went out of its way to reiterate that Basic's presumption is "just that, and could be rebutted by appropriate evidence." Id. at *5. In particular, the Court held that, under Basic, "if the investor purchased the stock at a distorted price, [she] thereby presumptively relied on the misrepresentation reflected in that price." Id. at *6. It thus expressly distinguished the Fifth Circuit rule (which it reversed) from the rule in the Second Circuit (which it left in place) holding that the presumption of reliance cannot stand in the absence of price impact. Id. at *4 (distinguishing Metromedia). It is precisely price impact that cannot be shown here.

**B. There Is No Evidence Of Price Impact**

The evidence demonstrates that the price of IMAX stock was not affected by any of the alleged misstatements.[11] IMAX's restatement was based purely on a change in accounting

---

[10] Although one of the issues before the Second Circuit in Metromedia was whether the fraud-on-the-market presumption applies to suits by research analysts, the court made clear that its analysis did not turn on the identity of the defendant. See Metromedia, 544 F.3d at 481 ("It thus does not matter, for purposes of establishing entitlement to the presumption, whether the misinformation was transmitted by an issuer, an analyst, or anyone else."); see also In re Am. Int'l Grp., Inc. Sec. Litig., 265 F.R.D. 157, 187 (S.D.N.Y. 2010) (finding that the predominance requirement was not satisfied against issuer defendants since defendants demonstrated that certain misrepresentations did not have a price impact).

policy. With respect to Multiple Element Accounting ("MEA") applied to theater system installations in 2005-06, IMAX determined that it "should have treated the entire theater system as a single unit rather than as multiple units, and recognized revenue with respect to any component of the system only when the earnings process was complete for the system as a whole." Affidavit of Edward MacNeil, February 23, 2009 ¶ 30 ("MacNeil Aff."). With respect to installations beginning in 2002, IMAX adopted a new internal accounting policy, which deferred revenue recognition of theater system installations until receipt of a written customer certificate of acceptance or the theater opening, if the documentation could not be found. MacNeil Aff. ¶ 33. The retroactive application of the new policy resulted in the movement of revenue recognition for three theaters from 2002-04 (one in 2002 and two in 2004). MacNeil Aff. ¶ 42. It also resulted in the movement of revenue recognition of seven theaters for the fourth quarter of 2005. MacNeil Aff. ¶¶ 29, 39. The change did not affect IMAX's cash flow. Report of Lucy Allen, July 1, 2011 ¶¶ 27-29 ("Allen Rpt.").[12] IMAX accurately reported the cash that it received and paid during each of the years in question. Allen Rpt. ¶¶ 27-29. Nor did the change affect IMAX's report of signings or theater openings. There is no evidence that the change in policy acted as a signaling mechanism or had any other operational impact – on IMAX's tax liabilities, debt covenants, employee compensation, etc.

CONFIDENTIAL
FILED UNDER SEAL

---

CONFIDENTIAL
FILED UNDER SEAL

[12] Ms. Allen is a Senior Vice President of NERA Economic Consulting. See Allen Rpt. ¶ 2. She received her B.A. from Stanford University and her M.B.A. with a concentration in Finance and Accounting, as well as an M.A. and M. Phil. in Economics, from Yale University. Allen Rpt. ¶ 3. Ms. Allen served under Presidents George H.W. Bush and Clinton, she has analyzed the effect of information on the stock prices of over 100 companies, and has authored or co-authored a variety of articles on securities and financial economics. Allen Rpt. ¶ 3, App'x A.

CONFIDENTIAL
FILED UNDER SEAL

This follows from basic finance theory, which provides that the value of a stock is measured by its current and future cash flows. Allen Rpt. ¶ 25. The determination of whether revenue should be recognized for the screen element of the theater system separately may have significance from an accounting perspective, but it has none from a cash flow perspective. Allen Rpt. ¶¶ 20-23.

CONFIDENTIAL
FILED UNDER SEAL

Rather, analysts ignored the magnitude of any revenue shifted by the restatement due to the lack of cash flow impact. See Allen Rpt. ¶¶ 30-34.

CONFIDENTIAL
FILED UNDER SEAL

Thus, there is no evidence that there would have been any impact on IMAX stock price if the revised methods for revenue recognition had been used during the class period. See Allen Rpt. ¶ 9.[13]

Finally, there is no evidence that any portion of the stock price movements on August 9, 2006, March 29, 2007, or July 20, 2007, was negatively affected by the restatement of

---

[13] There is evidence that the announcement of the SEC investigation – and corresponding market fear that it would expand to other issues – was a negative factor affecting IMAX stock price, but the SEC investigation was not something "concealed . . . from the market that, when disclosed, negatively affected the value of the security." Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 173 (2d Cir. 2005). Plaintiff alleges that revenue recognition was concealed. And the Second Circuit has made clear that investors cannot recover for stock drop loss caused when announcement of an accounting issue gives rise to concern of problems "lurking in [the issuer's] past." See In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501, 514 (2d Cir. 2010). That is particularly true here. The market concern thus appears to have been unfounded.

CONFIDENTIAL
FILED UNDER SEAL

2005 revenues – much less to the far more distant and far less significant 2002-04 restatements. See Allen Rpt. ¶¶ 8-11, 73-74. The fact that these disclosures, which cured IMAX's alleged misrepresentations regarding revenue recognition, did not cause IMAX's price to drop is further evidence that the alleged misrepresentations had no price impact. See Allen Rpt. ¶¶ 8-11, 29, 74.

## III. THE CLASS SHOULD NOT INCLUDE ANY SHAREHOLDERS WHO PURCHASED PRIOR TO FEBRUARY 17, 2006

Even if the Court certifies a class action, it should not include purchasers of IMAX stock prior to the February 2006 announcement of IMAX's 2005 results.

### A. A Class Containing Both Pre-February And Post-February 2006 Purchasers Fails The Commonality And Predominance Requirements

The two groups of purchasers that The Merger Fund seeks to represent differ in every material respect. Specifically, pre- and post-February 2006 purchasers: (1) face distinct questions of price impact and loss causation; (2) require distinct and mutually prejudicial evidence to prove their claims; (3) have antagonistic interests in proving price inflation and scienter; and (4) must prove market efficiency for entirely distinct periods of time.

The Court has recognized that the allegations related to IMAX's 10-K's for the years ended December 31, 2002 through December 31, 2004, are different from the allegations related to IMAX's 10-K for the year ended December 31, 2005 ("2005 10-K"). See In re IMAX, 272 F.R.D. at 158; see also id. at 149; MacNeil Aff. ¶¶ 29, 41, 44-46. For post-February 2006 purchasers (including The Merger Fund) the central allegation is that in Q4 2005, IMAX violated Generally Accepted Accounting Principles by applying MEA to theater system installations. These purchasers claim to have relied on IMAX's February 17, 2006, earnings release and its 2005 10-K, released on March 9, 2006. See, e.g., Consolidated Amended Class Action Complaint, Oct. 2, 2007 ¶¶ 100-03, 116-18 ("Compl."). In contrast, pre-February 2006

purchasers claim to have relied on IMAX's 2002-04 financial statements. As this Court recognized, these financial statements do not involve MEA. Instead this group claims that IMAX mis-described its policies in its public filings. See In re IMAX Sec. Litig., 587 F. Supp. 2d 471, 482-83 (S.D.N.Y. 2008) (drawing a distinction between 2002-04 financial statements and 2005-06 statements); MacNeil Aff. ¶¶ 44-46.

The Court has also noted that loss causation issues – in particular, the extent to which the alleged curative disclosures are actually corrective – differ between these two groups of purchasers. See In re IMAX, 272 F.R.D. at 154-55. The post-February 2006 group alleges that IMAX's stock price dropped as a consequence of its August 9, 2006, announcement that the SEC was investigating its application of MEA in Q4 2005. Compl. ¶ 115. The pre-February 2006 purchasers, however, must prove that IMAX's stock price dropped as a consequence of the restatement of its 2002-04 financials.

Based on these substantial differences, Plaintiff cannot show commonality or predominance. Under Rule 23(a)'s commonality test "the plaintiff [must] demonstrate that the class members 'have suffered the same injury.'" Dukes, 2011 WL 2437013, at *7 (quoting Falcon, 457 U.S. at 157). As the Supreme Court recently explained, "[t]his does not mean merely that they have all suffered a violation of the same provision of law." Dukes, 2011 WL 2437013, at *7. Rather, "[t]heir claims must depend upon a common contention." Id. This common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

The Merger Fund has not affirmatively demonstrated that the claims of both groups rest on a "common contention." This is not surprising. Indeed, even if a jury determines

that IMAX's 2005 financials were knowingly misstated and that post-February 2006 purchasers relied on those financials and suffered losses as a result, those determinations will not resolve any issue that is "central to the validity," id., of any of the claims of pre-February 2006 purchasers. The pre-February 2006 purchasers would still need to prove that IMAX's financial statements from 2002-04 were materially false, that they were made with scienter, that they relied on them, and that the disclosure of the statements' alleged falsity caused their losses.

Plaintiff also has not affirmatively demonstrated that any common issues "predominate over those issues that are subject only to individualized proof." Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., No. 05 Civ. 1898 (SAS), 2006 WL 2161887, at *4 n.57 (S.D.N.Y. Aug. 1, 2006) ("Teamsters I"), aff'd Teamsters II, 546 F.3d at 202 (quoting In re Visa Check / MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001)). Instead, Plaintiff offers the bare assertion that "the four prerequisites of Rule 23(a) [including] commonality, are met here." Plaintiff Br. at 5. This argument fails as a matter of simple logic – because Plaintiff has not proven that there any common issues between pre- and post-February 2006 purchasers, see infra at 21-23, it follows that common issues cannot possibly "predominate." Cf. Dukes, 2011 WL 2437013, at *11 ("We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions predominate, but in order to determine (as Rule 23(a)(2) requires) whether there is "[e]ven a single [common] question.") (emphasis in original).[14]

Additionally, pre-February 2006 purchasers have failed to prove that the market

---

[14] Moreover, proof related to the 2002-04 installations would be entirely irrelevant and prejudicial in relation to the 2005 installations, just as proof regarding the 2005 installations would be irrelevant and prejudicial with respect to the 2002-04 installations. Thus, certifying a class with both pre- and post-February 2006 purchasers would allow Plaintiffs to introduce in a single case evidence that would be inadmissible in separate cases. See Fed. R. Evid. 404(b); J & R Ice Cream Corp. v. Cal. Smoothie Licensing Corp., 31 F.3d 1259, 1269 (3d Cir. 1994) (holding that admission of evidence of prior misrepresentations that were not charged in complaint was abuse of discretion).

was efficient during the period in which they purchased IMAX securities, and are therefore unable to invoke the Basic presumption. See supra at 12-13 (overview of the requirements for invoking the Basic presumption); Basic 485 U.S. at 248 (noting that plaintiff must prove that defendant's shares were traded in an "efficient market" to invoke presumption of reliance). Although Plaintiff offers evidence that the market was efficient after February 2006, Plaintiff has not submitted any evidence with respect to the so-called Cammer factors, see Cammer v. Bloom, 711 F. Supp. 1264, 1285-87 (D.N.J. 1989), for the period prior to February 2006.

CONFIDENTIAL
FILED UNDER SEAL

Plaintiff is thus asking the Court simply to assume that the market was efficient for the earlier period. The Court should decline this invitation based on Mr. Marek's testimony alone:

CONFIDENTIAL
FILED UNDER SEAL

---

CONFIDENTIAL
FILED UNDER SEAL

CONFIDENTIAL
FILED UNDER SEAL

### B. The Merger Fund Is Neither A Typical Nor An Adequate Representative Of Pre-February 2006 Purchasers

Since the Court's December 2010 order denying class certification, not a single person or entity who purchased prior to February 2006 and held until the first announcement regarding IMAX's 2002-04 financials has stepped forward to be a class representative.[17] Under these circumstances, certification of a class including purchasers prior to February 2006 would flunk the adequacy and typicality tests.

First, purchasers prior to February 17, 2006, cannot "conceivably" demonstrate loss causation, see In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 40 (2d Cir. 2009), and thus there is a significant risk that issues regarding loss causation will "become the focus of the litigation" to the detriment of the remainder of the class. Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990); see also In re Initial Pub. Offerings Sec. Litig., 243 F.R.D. 79, 86 (S.D.N.Y. 2007). In particular, this Court

16

17

CONFIDENTIAL
FILED UNDER SEAL

has already held that the August 9, 2006, announcement was not a corrective disclosure for those individuals who purchased IMAX securities prior to February 17, 2006. See In re IMAX, 272 F.R.D. at 154-55. This holding was plainly correct. As the Court acknowledged, the August 9 disclosure only related to theater systems recognized in or after the fourth quarter of 2005, Ex. K (IMAX Corp. Press Release Aug. 9, 2006), and thus could not have been a corrective disclosure for those who purchased stock before February 17, 2006, when the financials for the fourth quarter of 2005 were released. See In re IMAX, 272 F.R.D. at 154-55; see also Allen Rpt. ¶¶ 68-

CONFIDENTIAL
FILED UNDER SEAL

Second, even if the pre-February 2006 purchasers could show loss causation, their interests would be antagonistic to those of the class representative. Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000); see Xianglin Shi v. Sina Corp., No. 05 Civ. 2154 (NRB), 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005).[18] It is in The Merger Fund's interests to establish that IMAX stock was inflated as much as possible by the February

[18] In cases where there is a conflict between members of a putative class "the proper solution is to create subclasses of persons whose interests are in accord." Boucher v. Syracuse Univ., 164 F.3d 113, 119 (2d Cir. 1999) (quoting Payne v. Travenol Labs., Inc., 673 F.2d 798, 812 (5th Cir. 1982)). The fact that there is no person here who is able to represent such a subclass is a further reason why the class cannot be defined to include pre-February 2006 investors.

17, 2006, statements (on which it claims to have relied). Their interests thus conflict directly with the interests of the pre-February 2006 purchasers, who must prove that the stock was inflated by misstatements regarding IMAX's 2002-04 financials. Because The Merger Fund does not have the "incentive to prove all the elements of the cause of action" of the pre-February 2006 purchasers, the Court should not permit it to represent them. See Blessing v. Sirius XM Radio Inc., No. 09 Cv. 10035 (HB), 2011 WL 1194707, at *4 (S.D.N.Y. Mar. 29, 2011) (quoting In re Oxford Health Plans, Inc., 191 F.R.D. 369, 375 (S.D.N.Y. 2000)).

## IV. THE CLASS SHOULD EXCLUDE IN-AND-OUT SHAREHOLDERS

This Court has already noted that "with regard to in and out shareholders who purchased prior to August 9, 2006, the Complaint does not allege that any information available prior to the August 9, 2006 disclosure 'exposed the public to the truth about [defendants'] misstatements.'" See In re IMAX, 272 F.R.D. at 160 n.99 (quoting In re Flag Telecom, 574 F.3d at 41); see also In re IMAX, 272 F.R.D. at 155 n.73 ("Purchasers of the 88% of pre-February 17, 2006 shares that were sold prior to the August 9, 2006, disclosure are 'in and out' shareholders who sold prior to an alleged corrective disclosure."). Thus, even if a class is certified, purchasers who sold prior to August 9, 2006, must be excluded from the class.

## V. THE CLASS PERIOD SHOULD END ON AUGUST 11, 2006

Even if a class is certified, the class period should end on August 11, 2006, the date that the first complaint was filed. See In re Zyprexa Prods. Liab. Litig., 253 F.R.D. 69, 196 (E.D.N.Y. 2008) ("At the latest, once the suit was first commenced on June 20, 2005, all members of the class (or their representatives and advisors) knew or should have known of the claimed overcharge. No damages can be recovered for any purchases after that date.").

**CONCLUSION**

For the foregoing reasons and those in PwC's brief which IMAX explicitly adopts, the IMAX Defendants respectfully request that this Court deny Plaintiff's Motion for Class Certification. In the alternative, the IMAX Defendants respectfully request that this Court limit the class period to February 17, 2006 through August 11, 2006.

Dated: New York, New York
July 1, 2011

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: ______________________
Lewis J. Liman

One Liberty Plaza
New York, New York 10006
(212) 225-2000
Attorneys for IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, and Kathryn A. Gamble

Of Counsel:
David Oliwenstein