# EXHIBIT A

**18th International Congress on Comparative Law**
**Washington 2010**

**Report for Session II-C—Civil Procedure**

# Class Proceedings in Canada

**Professor Janet Walker**
**Osgoode Hall Law School**
**jwalker@yorku.ca**
**http://research.osgoode.yorku.ca/walker**

# Class Proceedings in Canada

**Janet Walker**


**I. General Issues ........ 1**

1. Does a specific class actions procedure exist? ........ 1
2. How do class proceedings rules fit with the general rules of civil procedure? ........ 2
3. What were the legal, social or economic considerations in introducing class proceedings? 2
4. Do the rules for class proceedings apply to all areas of law or to certain sectors only? ........ 4
5. How many class proceedings are brought each year? ........ 5
6. Does the decision on one claim bind all claims of the same class? ........ 6
7. Is the procedure structured as "opt-in" or "opt-out"? ........ 6
8. Is there a minimum required number or amount of claims? ........ 6
9. How similar must the claims be? ........ 8
10. Who can bring a class action? ........ 8
11. Who are the defendants? ........ 10
12. May a class action be brought for civil liability in criminal proceedings? ........ 10
13. May a class proceeding be brought by foreigners or non residents? ........ 10
14. Are there rules to discourage "forum shopping"? ........ 12
15. Must potential claimants be informed of the action? If so, how? ........ 13
16. Is advertising the class action permitted? Are there requirements or restrictions? ........ 15
17. What remedies are available (injunctions, declaratory relief, monetary compensation)?. 15
18. May public authorities, ombudsmen, and organizations start a class proceeding? ........ 15
19. In which areas of law or under which circumstances is this allowed? ........ 16
20. What remedies are available to a representative body? ........ 16

**II. Procedural Issues ........ 16**

21. Are there time limits to bring a class/group action? ........ 16
22. Do the proceedings involve a trial by jury? ........ 16
23. Are the proceedings dealt with by a special court? ........ 17
24. How is the class or group certified? Is there a deadline to join the proceedings? ........ 17
25. Do the courts select "test" or "model" cases to be tried? ........ 18
26. Do the courts determine issues of law or fact to be preliminarily decided? ........ 19
27. Are there case management procedures? ........ 19
28. May the parties submit expert evidence? May the Court appoint its own expert? ........ 19
29. What discovery obligations exist? ........ 20
30. Who is bound by the result? ........ 20
31. How and when is the judicial decision enforceable? ........ 20
32. What kind of appeal is allowed against such a decision? ........ 20
33. What kind of damages are recoverable? ........ 21
34. How are damages quantified? ........ 21
35. Can the court order punitive damages? ........ 21
36. Is there cost-shifting? ........ 22
37. Can the court fix a cap on the amount of costs recoverable? ........ 23
38. Are contingent fees allowed? ........ 24
39. Is legal aid available? ........ 25
40. How are damages divided among the members of a class? ........ 25
41. Are there special rules for settlement? Is court approval required? ........ 26
42. Are statutory compensation schemes available for small claims? ........ 28
43. Are alternative methods of dispute resolution (ADR) provided for class actions? ........ 28

18th International Congress on Comparative Law

# Class Proceedings in Canada

Janet Walker*

## I. General Issues

This report on class proceedings in Canada has been prepared for the 18th International Congress of the International Academy of Comparative Law to be held in Washington, DC in August 2010. It is based on a questionnaire circulated to national reporters in 2009.

### 1. Does a specific class actions procedure exist?[1]

Class Proceedings regimes exist in the legislation of every Canadian province, except Prince Edward Island, and in the rules of the Federal Court of Canada.[2] Class proceedings legislation has been adopted in each of these various jurisdictions because Canada is a federation with separately administered courts in the ten provinces, the three territories and the federal government. The rules for civil proceedings in each of the fourteen courts are broadly similar. However, since Canada's Constitution allocates exclusive authority to the provinces to make laws in relation to civil procedure,[3] class proceedings legislation has been introduced independently in each of the various jurisdictions.[4]

The sequential introduction of legislation into the various Canadian jurisdictions has enabled the provincial legislators to learn from the experience in other provinces and to refine the existing models for their own legislation. In 1978, Québec became the first Canadian province to introduce class proceedings,[5] based on US Federal Rule 23. In 1993, Ontario followed with legislation[6] that modified the Québec scheme in certain respects; and in 1996, British Columbia continued this trend with legislation that incorporated further modifications.[7] In 2002, the Saskatchewan legislation and the Newfoundland and Labrador

---

* Professor, Osgoode Hall Law School. http://research.osgoode.yorku.ca/walker

[1] "Does a specific procedure exist in your legal system for dealing with a series or a group of homogeneous and/or related claims?"

[2] These proceedings are described as "class proceedings" rather than "class actions" because, just as in named party litigation ("ordinary litigation") in Canada, there are two ways of proceeding. The usual means of pursuing a claim is by way of an "action." However, claimants may choose to use a special procedure called an "application" where it is anticipated that it will be possible to decide the case without a trial involving live testimony. In Canada, actions and applications are collectively described as "proceedings".

[3] Section 92.14 of the *Constitution Act,* provides that "In each Province the Legislature may exclusively make Laws in relation to Matters coming within the Classes of Subjects next hereinafter enumerated; that is to say, — The Administration of Justice in the Province, including the Constitution, Maintenance and Organization of Provincial Courts, both of Civil and Criminal Jurisdiction, and including Procedure in Civil Matters in those Courts."

[4] In Canada, the evolving law relating to class actions is described in two loosleaf volumes: W Branch, *Class Actions in Canada* (1998+), and M. Eizenga, M. Peerless and C. Wright, *Class Actions Law and Practice* (1999+).

[5] Québec: An Act Respecting the Class Action, RSQ c. R-2, and Code of Civil Procedure, RSQ 1977, C-25, arts 999-1051, available at http://www.canlii.org/qc/laws/sta/r-2.1/20060412/whole.html

[6] Ontario: Class Proceedings Act, SO 1992, c 6, available at http://www.e-laws.gov.on.ca/DBLaws/Statutes/English/ 92c06_e.htm ; Law Society Amendment Act (Class Proceedings Funding), SO 1992, c. 7, see M Cochrane, *Class Actions: A Guide to the Class Proceedings Act, 1992* (1993).

[7] British Columbia: Class Proceedings Act, RSBC 1996, c 50, available at http://www.qp.gov.bc.ca/statreg/stat/C/9605001. htm see R. Sullivan, *A Guide to the British Columbia Class Proceedings Act* (1997).

legislation came into effect;[8] and the Federal Court amended its rules to permit class proceedings.[9] In 2003, the Manitoba legislation[10] and the Alberta legislation came into effect.[11] In 2007, Nova Scotia passed legislation but it has yet to be proclaimed in effect.[12] The Uniform Law Conference of Canada has adopted a model statute.[13] Many of the statutory references in this Report are drawn from the Ontario legislation. Except where otherwise indicated, the legislation of the other provinces and the rules of the Federal Court are similar to them.

### 2. How do class proceedings rules fit with the general rules of civil procedure?[14]

The procedure in class proceedings is based on the principles and rules of civil procedure for ordinary litigation with the necessary adjustments for the aggregation of claims.[15]

In 2000, the Supreme Court of Canada held that class proceedings could be conducted pursuant to certain guidelines even in the absence of legislation.[16] To be certified, a class proceeding would need to meet four common conditions: the class must be capable of clear definition; there must be issues of fact or law common to all class members to the extent that certification will avoid duplication of fact-finding or legal analysis; there must be no conflicting interests between class members; and the proposed representative must be able to prosecute the interests of the class vigorously and capably. All the provinces except Prince Edward Island,[17] have now enacted class proceedings legislation.

### 3. What were the legal, social or economic considerations in introducing class proceedings?[18]

The introduction of class proceedings based on the American model marked a dramatic change in the options for "group" litigation in Canada. Under the previous rules of civil procedure,[19] it had been possible to commence representative actions. However, this was

---

[8] Saskatchewan: Class Actions Act, S.S. 2001, c. 12.01, available at http://www.qp.gov.sk.ca/documents/english/statutes/statutes/c12-01.pdf ; Newfoundland and Labrador: Class Actions Act, S.N.L. 2001, c. C-18.1, available at http://www.canlii.org/nl/laws/sta/c-18.1/20040706/whole.html

[9] Federal Court: Rules Amending the Federal Court Rules, 1998, amending the Federal Court Rules, 1998, SOR 98-106, available at http://canadagazette.gc.ca/partII/2002/20021204/html/ sor417-e.html

[10] Manitoba: The Class Proceedings Act, C.C.S.M., c. C130.

[11] Following a recommendation by the Alberta Law Reform Institute in 2000, Class Actions (Final Report No. 85) (Alberta Law Reform Institute, December 2000), "Alberta Law Reform Institute–Work in Progress–Current Projects–Class Actions" available at http://www.law.ualberta.ca/alri/crrntproj/ classaction.html, the legislature enacted the Class Proceedings Act, S.A. 2003, c. C-16.5, available at http://www.canlii.org/ab/laws/sta/c-16.5/index.html

[12] Nova Scotia: Class Proceedings Act, S.N.S. 2007 c. 28.

[13] Uniform Law Conference of Canada, "Uniform Statutes", available at http://www.ulcc.ca/en/us/

[14] "If such a procedure exists, how do its rules fit with the principles and general rules of civil procedure in your system?"

[15] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 3 provides that "The rules of court apply to class proceedings."

[16] Western Canadian Shopping Centres v. Dutton, [2001] 2 S.C.R. 534.

[17] Prince Edward Island is Canada's smallest province, with a population of about 140,000.

[18] "If such a procedure does not exist, has its introduction ever been discussed? What are the legal, social or economic considerations in favour or against its introduction?"

[19] For example, in Ontario, former rule 12.01 permitted a person to bring or defend a proceeding on behalf of

rarely a viable option. The Supreme Court of Canada had ruled in a leading products liability claim against a car manufacturer that the claim could not proceed as a representative action because the cars were purchased under individual contracts and the damages required individual assessment.[20] Subsequent review of the situation in which cases could arise[21] confirmed that the adjudication of mass tort claims under existing procedures was cumbersome and that the regime of representative proceedings would need to be expanded by legislation.[22]

Legislators in Canada responded, drawing on the model of US Federal Rule 23 to establish a regime in Ontario for class proceedings in which: each claim is based on a different contract; class members seek resolution of both common and individual issues; not all members of the class can be identified; each class member's damages require individual assessment; there is no predefined fund for the payment of a judgment; class members seek different remedies; and classes include sub-classes with separate common issues.[23]

The distinctiveness of the Canadian class proceeding from the US model was underscored by a provision in the legislation that lists the features of a case that should *not* prevent it from being certified as a class proceeding:[24]

1. The relief claimed includes a claim for damages that would require individual assessment after determination of the common issues.
2. The relief claimed relates to separate contracts involving different class members.
3. Different remedies are sought for different class members.
4. The number of class members or the identity of each class member is not known.
5. The class includes a subclass whose members have claims or defences that raise common issues not shared by all class members.

The legislation in Canada also provides for defendants' class proceedings[25] and it provides for the consolidation of similar actions against them to benefit from the enhanced efficiency

---

numerous persons with the same interest. This method of proceeding had remained relatively constant since its introduction in 1881.

[20] General Motors of Canada Ltd v. Naken, [1983] 1 S.C.R. 72.

[21] In its report, The Ontario Law Reform Commission reviewed several examples of claims or potential claims that illustrated the inadequacy of the existing procedures for prosecuting them, Ontario Law Reform Commission, "Report on Class Actions" (Ontario: Ministry of the Attorney General,1982) at 90-100.

[22] Nevertheless, the development was not without controversy. Outspoken detractors expressed concern that class proceedings involved unwarranted expansion of the judicial function into the legislative sphere: T. Cromwell "An Examination of the Ontario Law Reform Commission Report on Class Actions" (1983) 15 Ottawa L Rev. 587; H.P. Glenn, "Class Actions in Ontario and Quebec" (1984) 62 Can Bar Rev. 247; H.P. Glenn "Class Actions and the Theory of Tort and Delict" (1985) 35 U.T.L.J. 287; H.P. Glenn "The Dilemma of Class Action Reform" (1986) 6 Oxford J Leg Studies 262; and see W.A. Bogart, "Ambiguity" in A. Prujiner and J. Roy (eds*) Class Actions in Ontario and Quebec* (1991).

[23] S.J. Simpson (now Justice Simpson of the Federal Court), "Class Action Reform: A New Accountability" (1991) 10 Advocates' Society J 19.

[24] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 6.

[25] Which on rare occasion has been sought for the purpose of determining title to land, in a proceeding that replicated an *in rem* determination. See *Chippewas of Sarnia Band v. Canada (Attorney General)* [1999] O.J. No. 1406 (Gen. Div.).

of class proceedings.[26] However, in practice, it has almost always been plaintiff's counsel who have taken the initiative to certify a class proceeding.

The introduction of class proceedings regimes in the 1990s was foreshadowed by the three-volume Report on Class Actions of the Ontario Law Reform Commission in 1982.[27] The Ontario Law Reform Commission Report identified three objectives for class proceedings: judicial economy, access to justice, and behaviour modification.[28] Although these objectives were not explicitly incorporated into the test for certification in the legislation, they have served as factors in considering whether a class proceeding is the preferable means of resolving the common issues. The Supreme Court of Canada has described these three objectives as follows:

> Class actions offer three important advantages over a multiplicity of individual suits. First, by aggregating similar individual actions, class actions serve *judicial economy* by avoiding unnecessary duplication in fact-finding and legal analysis. The efficiencies thus generated free judicial resources that can be directed at resolving other conflicts, and can also reduce the costs of litigation both for plaintiffs (who can share litigation costs) and for defendants (who need litigate the disputed issue only once, rather than numerous times).
>
> Second, by allowing fixed litigation costs to be divided over a large number of plaintiffs, class actions improve *access to justice* by making economical the prosecution of claims that would otherwise be too costly to prosecute individually. Without class actions, the doors of justice remain closed to some plaintiffs, however strong their legal claims. Sharing costs ensures that injuries are not left unremedied.
>
> Third, class actions serve efficiency and justice by ensuring that actual and potential wrongdoers do not ignore their obligations to the public. Without class actions, those who cause widespread but individually minimal harm might not take into account the full costs of their conduct, because for any one plaintiff the expense of bringing suit would far exceed the likely recovery. Cost-sharing decreases the expense of pursuing legal recourse and accordingly *deters potential defendants* who might otherwise assume that minor wrongs would not result in litigation ....[29]

### 4. Do the rules for class proceedings apply to all areas of law or to certain sectors only?[30]

In principle, the rules for class proceedings apply to all areas of law. This is because class proceedings are an adaptation of the rules of the civil procedure, which are "transubstantive"

---

[26] Section 3 of the Ontario Act provides, "A defendant to two or more proceedings may, at any stage of one of the proceedings, make a motion to a judge of the court for an order certifying the proceedings as a class proceeding and appointing a representative plaintiff." This option was not included in the Québec legislation but it is contained in s. 3 of the British Columbia Act.

[27] Ontario, Law Reform Commission Report on Class Actions, *supra* note 21.

[28] *Ibid.* at 117.

[29] *Western Canadian Shopping Centres v. Dutton, supra* note 16 at paras. 27-29 (emphasis added and sources omitted).

[30] "Do the rules on class / groups actions apply to all areas of law or to certain sectors only (e.g. banking and financial services, product liability, competition, etc)? In the latter case outline the specific rules pertaining to such sectors."

in that they apply to all matters brought in the ordinary courts, which are courts of general jurisdiction.

Nevertheless, class proceedings are more prevalent in some areas of law than they are in other areas. The areas in which claims affecting large groups of consumers and other members of the public are otherwise likely to be brought in the courts are areas in which class proceedings are more prevalent. For example, class proceedings are often commenced in product liability claims for defective products that have caused harm to members of the public, such as pharmaceuticals and automobiles. They may also be commenced in claims against governments in relation to improper taxes. They are also often commenced in relation to public health and safety issues, and against institutions, such as banks, for illegal services charges. Class proceedings have also been brought in connection with securities misrepresentations, price-fixing, anti-competitive conduct, and even in cases of systemic discrimination and abuse in residential schools.[31]

On the other hand, class proceedings are less prevalent in some areas, particularly where there is a specialized procedure in place for resolving claims. One of the requirements for certifying a class proceeding is that the class proceeding must be the preferable means for resolving the common issues. The British Columbia legislation elaborates on the considerations as to whether a class proceeding is the preferable means of resolving the common issues. These include "whether the class proceeding would involve claims that are or have been the subject of any other proceedings", "whether other means of resolving the claims are less practical or less efficient" and "whether the administration of the class proceeding would create greater difficulties than those likely to be experienced if relief were sought by other means."[32]

Where a regulatory regime includes some administrative means of resolving claims, it may be difficult to show that a class proceeding is a preferable means of resolving the dispute.[33] Similarly, in situations in which the common issues may be resolved by way of application,[34] as in cases of constitutional challenges, the courts have shown some reluctance to regard a class proceeding as the preferable means of resolving a dispute.[35] As a result, there are areas or sectors in which class proceedings are less likely to be available.

### 5. How many class proceedings are brought each year?[36]

It is difficult to make an accurate assessment of the number of class proceedings brought each year because there is no comprehensive record kept of claims commenced in Canadian courts. However, pursuant to a recommendation by a Uniform Law Conference of Canada's Working Group on Multi-Jurisdictional Class Actions,[37] the Canadian Bar Association created the National Class Action Database to list all class actions filed in Canada. The

---

[31] Jasminka Kalajdzic, "Access to Justice for the Masses? A Critical Analysis of Class Actions in Ontario" (Toronto, University of Toronto LLM Thesis, 2009).

[32] Class Proceedings Act (British Columbia) *supra* note 7, s. 4(2). See the answer to Question 24.

[33] *Hollick v. Toronto (City)*, 2001 SCC 68, [2001] 3 S.C.R. 158.

[34] For the differences between actions and applications, see *supra* note 2.

[35] *S.R. Gent (Canada) Inc. v. Ontario (Workplace Safety and Insurance Board)*, [1999] O.J. No. 3362 at para 15 (S.C.J.) (applications); *Guimond v. Québec (Attorney General)*, [1996] 3 S.C.R. 347, rev'g (1995), 123 D.L.R. (4th) 236 (Q. C.A.) (constitutional challenges).

[36] "How many class / group actions are brought each year in each area of law they are allowed?"

[37] Uniform Law Conference of Canada, Working Group on Multi-jurisdictional Class Actions (2006).

Database serves as "a repository for information about the existence and status of class actions across Canada so that the public, counsel, and courts need only look to one source for this information, and without cost to them."[38] A number of jurisdictions have issued practice directions requiring counsel to provide the relevant information and documentation to include their claims in the database, but the process remains largely voluntary. Nevertheless, the database records some 142 class proceedings filed during 2007 and 97 filed in 2008.

### 6. Does the decision on one claim bind all claims of the same class?[39]

A judgment on the common issues of a class or subclass binds every class member who has not opted out of the class proceeding.[40]

### 7. Is the procedure structured as "opt-in" or "opt-out"?

Class proceedings in Canada are usually structured as an "opt-out" procedure. As was indicated in the previous answer, the judgment on the common issues of a class or subclass binds every class member who has not opted out.

However, in some provinces, the legislation includes a special provision requiring non-residents to opt-in as follows:

> ...a person who is not a resident of British Columbia may, in the manner and within the time specified in the certification order made in respect of a class proceeding, opt in to that class proceeding if the person would be, but for not being a resident of British Columbia, a member of the class involved in the class proceeding.[41]

This provision seeks to overcome any uncertainty about whether non-residents would be bound by the decision in the class proceeding.[42] For example, in class proceedings certified in British Columbia, a British Columbia resident may commence an action on behalf of a class of other residents[43] who will be bound unless they opt-out. However, non-residents must opt-in and join a sub-class to participate in the proceeding.[44] In this way, they will be regarded as having accepted the jurisdiction of the court to grant a judgment that will bind them.

### 8. Is there a minimum required number or amount of claims?[45]

The legislation requires an identifiable class of two or more persons that would be represented by the representative plaintiff or defendant. Thus, the threshold is far lower than would likely be needed to make it economically desirable to seek certification of a proceeding as a class proceeding.

---

[38] See National Class Actions Database at http://www.cba.org/classactions/main/gate/index/about.aspx

[39] "Does the procedure provide for (a) a class action, in the sense that the decision on one claim is binding for all claims of the same class or (b) a group action ("action collective") where related claims may be managed together, but the decision on such claims does not create a binding precedent for other claims?"

[40] Class Proceedings Act (Ontario), *supra* note 6, s. 27(3).

[41] Class Proceedings Act (British Columbia), *supra* note 7, s. 16(2).

[42] British Columbia Ministry of the Attorney General, *Class Action Legislation for British Columbia; Consultation Document* (1994), c. 12 "Interjurisdictional Issues" at 22.

[43] Class Proceedings Act (British Columbia) *supra* note 7, s. 2.

[44] *Ibid.* ss. 6 and 16. See, for example, *Hoy v. Meditronic,* (2001) 94 BCLR (3d) 169 (SC).

[45] "Is there a minimum of claims (in number or amount) that can be managed under the procedure?"

However, the requirement of two or more persons does create a minimum standard necessitating that the plaintiff demonstrate that there are others who have suffered similar harm. On some occasions this can be relevant. For example, in a claim by a resident in an apartment for damages in connection with the harmful effects of mould found in the apartment, the court held that there was no evidence that "the harm complained of by the representative plaintiff is the subject of concern on the part of anyone else. The nature of the harm disclosed by the plaintiff's affidavit is not of a kind that makes it at all obvious that it would have affected anyone else."[46] As a result, the court denied the motion for certification for failure to meet the requirement of an identifiable class of two or more persons.

A related question that has been raised is whether it is necessary to show "that there are other individuals who both share the same complaint as that of the plaintiff *and* wish to have the complaint litigated through the mechanism of a class proceeding."[47] In one case, the dispute resolution program implemented by the defendant in settling a related class action in the United States had attracted very few claims by potential participants. This suggested that the class had not been interested in seeking relief for the harm they had suffered. As a result, the court in Ontario held that evidence of a *litigious* class was an important requirement because "the scale and complexity of the class action process ought not to be invoked at the behest, and for the benefit, of a single complainant."[48]

The concern to show that there is an identifiable class that desires to have its claim advanced by way of a class proceeding has since been criticized.[49] The legislation does not contain a suggestion "that certification motions are somehow determined through a referendum of the class members"[50] or that "the suitability of a class proceeding is to be determined by a polling of the class prior to the certification motion."[51]

There is no minimum size of claim required for the certification of a class proceeding. One of the recognized objectives of class proceedings is behaviour modification. As noted above, the Supreme Court of Canada has endorsed the role of class proceedings in deterring potential defendants from wrongdoing where they might otherwise assume that minor wrongs would not result in litigation because the expense of bringing suit would far exceed the likely recovery.[52]

---

[46] *Taub v. The Manufacturers Life Insurance Co.* (1998), 40 O.R. (3d) 379 (Gen. Div). At 380 Sharpe J. explained, "It is by no means self-evident that the presence of mould in one bathroom in one apartment indicates that there will be a similar problem in other areas of the building. As noted, in her affidavit, Ms. Taub gives no indication of the nature of harm caused by the mould, no indication how it might spread to other parts of the building, and no indication that the mould has in fact been the subject of concern or complaint by anyone else other than herself."

[47] *Bellaire v. Independent Order of Foresters* (2004), 5 C.P.C. (6th) 68 (S.C.J.) at para 27 (emphasis added).

[48] *Ibid.* at para 33. Although it was observed by some that the explanation for the low claims may have lain with nature of the dispute resolution program and not with the lack of desire for compensation.

[49] 1176560 Ontario Ltd. v. The Great Atlantic & Pacific Company of Canada Ltd. (2002), 62 O.R. (3d) 535 (S.C.J.)

[50] *Ibid.* at para 32.

[51] *Ibid.* at para 32.

[52] *Western Canadian Shopping Centres v. Dutton, supra* note 16 at para 29.

### 9. How similar must the claims be?[53]

There is no formal equivalent in Canada to the "commonality" requirement of class actions under US Federal Rule 23. However, the claims must be sufficiently similar to enable the class to be defined so as to determine its size. This can have a significant impact on the progress of the resolution of the claim, whether this is through negotiations or litigation.

In class proceedings in Canada, it is not necessary for the members of the class to have the same claims as one another against the defendant or defendants, but their interests in the outcome of the common issues must not be in conflict with on another. Where the claims of some of the members of the class may differ from others, provisions are available for certifying sub-classes each with its own representative party. As the Supreme Court of Canada explained,

> [T]he class must be capable of clear definition. Class definition is critical because it identifies the individuals entitled to notice, entitled to relief (if relief is awarded), and bound by the judgment. It is essential, therefore, that the class be defined clearly at the outset of the litigation. The definition should state objective criteria by which members of the class can be identified. While the criteria should bear a rational relationship to the common issues asserted by all class members, the criteria should not depend on the outcome of the litigation. It is not necessary that every class member be named or known. It is necessary, however, that any particular person's claim to membership in the class be determinable by stated, objective criteria.[54]

The Supreme Court of Canada has also indicated the importance of the class being identifiable so as to prevent the definition from becoming unnecessarily broad. In determining whether there is an identifiable class, the court should consider whether it could "be defined more narrowly without arbitrarily excluding some people who share the same interest in the resolution of the common issue. Where the class could be defined more narrowly, the court should either disallow certification or allow certification on condition that the definition of the class be amended."[55] In one class proceeding for wrongful dismissal it was determined that the class definition was overly broad because it included those who could be proven to have been terminated for just cause,[56] and in another class proceeding for misrepresentations about whether graduates were assured jobs, the class definition was held to be overbroad because it included students who had found work after graduation.[57]

### 10. Who can bring a class action?[58]

In principle, anyone who has standing to commence ordinary litigation also has standing to seek certification of a proceeding as a class proceeding. However, one of the requirements for certification is that there must be a representative plaintiff or defendant who would fairly and adequately represent the interests of the class. In addition, the representative plaintiff must have produced a plan for the proceeding that sets out a workable method of advancing the

---

[53] "How homogeneous or similar must the claims be in order to be included in a class action or in a group action?"

[54] *Western Canadian Shopping Centres v. Dutton, supra* note 16 at para 38 (sources omitted).

[55] *Hollick v. Toronto (City), supra* note 33 at para 21.

[56] *Webb v. K-Mart Canada Ltd.* (1999), 45 O.R. (3d) 389 (S.C.J.).

[57] *Mouhteros v. DeVry Canada Inc.* (1998), 41 O.R. (3d) 63 (Gen. Div.).

[58] "Which subjects are entitled to bring a class action or a group action (e.g. individuals, groups or other representative bodies)?"

proceeding on behalf of the class and of notifying class members of the proceeding. Finally, the representative plaintive must not have, on the common issues for the class, an interest in conflict with the interests of other class members.[59]

Unlike US Federal Rule 23, there is no fixed requirement that the claims of the representative plaintiff be typical of those of the members of the proposed class. Instead, the Supreme Court has described the need to consider the adequacy of the proposed class representative as follows:

> In assessing whether the proposed representative is adequate, the court may look to the motivation of the representative, the competence of the representative's counsel, and the capacity of the representative to bear any costs that may be incurred by the representative in particular (as opposed to by counsel or by the class members generally). The proposed representative need not be "typical" of the class, nor the "best" possible representative. The court should be satisfied, however, that the proposed representative will vigorously and capably prosecute the interests of the class.[60]

In some cases, this requirement could make it necessary to define the class so as to exclude those whose differences in interest would undermine the representative plaintiff's ability to represent them. In other cases, this could require the creation of sub-classes within the action so as to identify an appropriate representative plaintiff for each sub-class.

This requirement also enables the court to assess the capacity of class counsel to ensure that the class is fairly and adequately represented. In ordinary litigation, this requirement would be regarded as an interference in the principle of party autonomy. However, it is an appropriate requirement in class proceedings because once the class proceeding has been certified, the representative plaintiff and his or her counsel are authorized to represent the interests of those who will not participate in the preparation and presentation of the case and, in this way, to ensure that their interests are protected.

The court's assessment of class counsel in the certification motion usually occurs in the course of reviewing the litigation plan to determine whether it is a workable method of advancing the proceeding on behalf of the class and of notifying class members of the proceeding. In producing and presenting a plan for the litigation, counsel is able to demonstrate that they have the capacity to administer the process of preparing and publishing the notices to class members and to make the many other logistical arrangements that are necessary for the successful pursuit of a class proceeding.

The ability to assess the capacity of class counsel has proved useful in determining "carriage motions", which are brought to decide who should have carriage of an action where motions to certify more than one class proceeding are brought in respect of the same common issues. Moreover, with the establishment of contingency fee arrangements as the most common method of financing class proceedings, it is important to know that the firm representing the class will be in a position throughout the litigation or settlement process to be able to finance the litigation on a contingency fee arrangement.

---

[59] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 5(1)(e).

[60] *Western Canadian Shopping Centres v. Dutton, supra* note 16 at para 41.

### 11. Who are the defendants?[61]

Any person who can be named a defendant in ordinary litigation can be named a defendant in a class proceeding. However, the three objectives of class proceedings—access to justice, judicial economy and behaviour modification—suggest that certain defendants are more likely to become defendants in class proceedings than others.

It is clear that manufacturers and suppliers of consumer goods and services are likely to become defendants in class proceedings when the goods and services that they provide to the public prove defective and cause harm. In addition, banks, governments and other institutional defendants must also now account for deficiencies in the goods and services that they provide to the public in class proceedings. On some occasions, it appears that such defendants welcome the opportunity to have a court determine comprehensively the extent of their obligations to members of the public. Where there are competing obligations to shareholders and taxpayers it can be desirable to have a neutral third party, such as the courts, decide whether compensation is due and, if so, how much.

### 12. May a class action be brought for civil liability in criminal proceedings?[62]

Civil litigation in the ordinary courts in Canada rarely combines civil remedies, such as those appropriate for breaches of civil obligations, either voluntary or non-voluntary, with criminal remedies, *per se*. However, there is a tendency in Canadian law to distinguish criminal matters, involving personal violence and other similar harms, from regulatory matters, such as those resulting from securities misrepresentations or environmental damage. In criminal matters, it would be rare for a class proceeding to be warranted or fruitful, but in regulatory matters, the breach of the regulatory standard may well serve as evidence of liability for harm giving rise to a class proceeding.[63]

For example, in a claim for harm caused by misrepresentations in respect of securities sold to the public under an initial public offering, securities legislation could be relied upon to set the standards for the various disclosures that ought to have been made and, in this way, to determine whether there was a misrepresentation. However, the claim in the class proceeding would be brought by a representative of purchasers of the securities and not by the regulator, even though the regulator might bring separate proceedings at the same time.[64] In other situations, too, where there has been some form of mass harm in an area of regulated activity, regulatory proceedings and class proceedings may both be commenced. In general, though, the class proceedings for compensation or other redress will be pursued by a representative plaintiff and class counsel, and they will seek the kind of relief ordinarily available in civil actions.

### 13. May a class proceeding be brought by foreigners or non residents?[65]

As with ordinary proceedings, there is no restriction on the commencement of class proceedings by foreigners or non-residents. However, this is not a common occurrence.

---

[61] "Which subjects are the defendants in a class / group action?"

[62] "May a class / group action be brought in the context of a criminal proceedings concerning facts which involve also a civil liability?"

[63] Tracy v. Instaloans Financial Solutions Centres (B.C.) Ltd., 2007 BCCA 481, (2007) 285 D.L.R. (4th) 413.

[64] Mondor v. Fisherman; CC&L Dedicated Enterprise Fund (Trustee of) v. Fisherman [2002] O.J. No. 1855, 22 C.P.C. (5th) 346 (S.C.J.).

[65] "May a class / group action be brought by foreigners or non residents?"

In recent years there has been considerable debate among academics and practitioners over questions of jurisdiction and the recognition and enforcement of judgments in multi-jurisdiction class proceedings—that is, class proceedings with plaintiff classes that are defined to include non-residents and other persons who might otherwise ordinarily be expected to seek relief in some other court. If such persons are presumptively included in the class, will their claims be regarded as *res judicata* in other courts, and if not, should they be excluded from the class?

Until recently, the issue did not have significant practical implications within Canada because only three provinces (Québec, Ontario and British Columbia) had class proceedings regimes and, as a result of the differences in the regimes, Ontario was the only forum in which it was likely that counsel would seek to certify on an opt-out basis a plaintiff class that included residents outside Ontario who had suffered harm outside Ontario. Class counsel in the three provinces cooperated to prevent instances of competing class proceedings.

The situation has changed in the last few years with the enactment of class proceedings regimes in more provinces and the breakdown of the cooperation among class counsel. To seek ways to address the situation, the Uniform Law Conference of Canada established a Working Group on Multi-Jurisdictional Class Proceedings.[66] The Working Group proposed a series of measures that would assist courts in identifying potential situations of competing class proceedings and to define the class in such a way as to avoid overlap. Some of these recommendations, were implemented the Saskatchewan Class Actions Act, which now provides guidance to courts in determining when to certify a multijurisdiction class action in circumstances in which there is a competing multijurisdiction class action. The legislation provides as follows:

> 6(2) If a multi-jurisdictional class action, or a proposed multi-jurisdictional class action, has been commenced elsewhere in Canada that involves the subject-matter that is the same as or similar to that of the action being considered pursuant to this section, the court shall determine whether it would be preferable for some or all of the claims or common issues raised by those claims of the proposed class members to be resolved in that class action.
>
> (3) For the purposes of making a determination pursuant to subsection (2), the court shall:
>
> (a) be guided by the following objectives:
>
> (i) ensuring that the interests of all of the parties in each of the relevant jurisdictions are given due consideration;
>
> (ii) ensuring that the ends of justice are served;
>
> (iii) avoiding, where possible, the risk of irreconcilable judgments;
>
> (iv) promoting judicial economy; and
>
> (b) consider all relevant factors, including the following:
>
> (i) the alleged basis of liability, including the applicable laws;
>
> (ii) the stage each of the actions has reached;

[66] Initially called the "Working Group on National Class Actions", *supra* note 37. See Janet Walker, "Coordinating Multijurisdiction Class Actions through Existing Certification Processes" (2005) 41 Canadian Business LJ 112.

(iii) the plan for the proposed multi-jurisdictional class action, including the viability of the plan and the capacity and resources for advancing the action on behalf of the proposed class;

(iv) the location of the representative plaintiffs and class members in the various actions, including the ability of representative plaintiffs to participate in the actions and to represent the interests of the class members;

(v) the location of evidence and witnesses.[67]

To date, these measures have not succeeded in addressing the concerns raised by competing class proceedings.[68] Consideration has since been given to the possibility of creating a Canadian equivalent to the Multidistrict Litigation Panel as exists in the United States.[69] However, in Canada the vast majority of claims in both ordinary litigation and class proceedings are commenced in the superior courts of the provinces, which are independently administered courts of general jurisdiction. Most class proceedings could not be commenced in the Federal Court, as many are in the United States, because the Federal Court of Canada is a court of specialized statutory jurisdiction.[70] Accordingly, the model of the Multidistrict Litigation Panel would have to be adapted to operate in a system of courts of coordinate but independent jurisdiction.[71]

### 14. Are there rules to discourage "forum shopping"?[72]

Courts in Canada show little tolerance for forum shopping,[73] and the approach taken to establish forum neutral choice of law rules have the effect of eliminating much of the incentive to do so.[74] However, it may be possible to choose between fora within Canada for the pursuit of a multijurisdiction class proceeding, and there remain differences between the class proceedings regimes, such as those relating to the risk of costs awards against plaintiffs. Under these circumstances, there may be a tendency for class counsel to commence their class proceedings in the most favourable forum for the resolution of the dispute from their perspective; and there may be a similar tendency for defendant's counsel to encourage the bringing of a motion for certification for the purposes of settlement in the most favourable forum for the resolution of the dispute from their perspective. There is not yet an established means of ensuring that the matter is determined in the most favourable forum from the perspective of the class in multi-jurisdiction class proceedings.[75]

Regardless of where in Canada the class proceeding is commenced, the courts will be concerned to apply the appropriate legal standards. In determining whether to approve a

---

[67] Class Actions Act (Saskatchewan), *supra* note 8.

[68] Janet Walker, "Recognizing Multijurisdiction Class Action Judgments Within Canada: Key Questions—Suggested Answers" (2008) 46 Canadian Business LJ 450.

[69] *Ibid.* at 467-469.

[70] "Coordinating Multijurisdiction Class Actions..." *supra* note 66 at 113.

[71] *Supra* note 68 at 467-469

[72] "Are there rules to discipline possible 'forum shopping'?"

[73] Janet Walker, "A Tale of Two Fora: Fresh Challenges in Defending Multijurisdictional Claims" (1996) 33 Osgoode Hall LJ 549.

[74] Janet Walker, "Are we there yet?: Towards a New Rule for Choice of Law in Tort" (2000) 38 Osgoode Hall LJ 331.

[75] *Supra* note 68.

motion for certification, a court will be attentive to objections by the defendant or defendants that the claims of certain groups within the proposed class should be separated into sub-classes where the law governing their claims would be different from the law governing the claims of other groups. For example, in a multi-province securities class proceeding, claims on behalf of persons who had purchased securities in provinces with different statutory entitlements were placed in sub-classes to ensure that they would be resolved in accordance with the laws that applied to them.[76]

In determining whether to approve a proposed settlement, the concern will shift from one of prejudice to the defendant to one of prejudice that might be suffered by class members who might otherwise have sought relief in a different forum. Where class members might suffer prejudice, the judgment in the class proceeding may be denied recognition in the other forum and a separate class proceeding might not be precluded. This occurred in a class proceeding in which the settlement was approved in Ontario and the judgment was sought to be recognized in Québec. The Québec court refused to recognize the Ontario judgment because it held that the claims of the local persons before it had no connection with Ontario, the representative plaintiff in the Québec action had not been permitted to participate in the negotiations between the parties to the Ontario action, the members of the class would not receive any compensation, and they were denied an opportunity to participate in the Ontario proceeding when their motion to intervene was rejected.[77]

### 15. Must potential claimants be informed of the action? If so, how?[78]

Once a claim is certified, the representative plaintiff is usually required to notify the members of the class and to give them an opportunity to opt out. In determining the appropriate method of notice, the court will consider the cost of giving notice, the nature of the relief sought, the size of the individual claims, the number of class members, the places of their residence and other relevant factors.[79] The court may order notice to be given personally, by mail, by posting, advertising, publishing or leafleting, by individual notice to a sample group or by any means or combination of means appropriate.[80] The court may order different means to be used for different class members,[81] and it may even, having regard to the factors relating to the method of notice, dispense with it where appropriate unless members will be required to participate in individual assessments.[82]

There are also a number of requirements for the content of the notice. Typically, the notice must:

(a) describe the proceeding, including the names and addresses of the representative parties and the relief sought;

(b) state the manner by which and time within which the class members may opt out of the proceeding;

---

[76] *Pearson v. Boliden Ltd.*, 2002 BCCA 624, [2002] 222 D.L.R. (4th) 453.

[77] *Hocking c. Haziza*, 2008 QCCA 800, [2008] J.Q. no 3423.

[78] "Where a class / group action is filed with or approved by the Court, must potential claimants be informed of the action? If so, in which way (formal notification, advertising)?"

[79] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 17(3).

[80] *Ibid.*, s. 17(4).

[81] *Ibid.*, s. 17(5).

[82] *Ibid.*, s. 17(2).

(c) describe the possible financial consequences of the proceeding to class members;

(d) summarize any agreements between representative parties and their solicitors respecting fees and disbursements;

(e) describe any counterclaim being asserted by or against the class, including the relief sought in the counterclaim;

(f) state that the judgment, whether favourable or not, will bind all class members who do not opt out of the proceeding;

(g) describe the right of any class member to participate in the proceeding;

(h) give an address to which class members may direct inquiries about the proceeding; and

(i) give any other information the court considers appropriate.[83]

In addition, notice of the need for individual proceedings following a determination of the common issues may be required in cases in which the extent of damages varies from one member of the class to another. This notice must describe the steps to be taken to establish an individual claim and it must warn that the failure to do so will preclude the assertion of an individual claim without leave.[84]

Finally, an order may be made at any time in the proceedings for notice to be given to the class members where it is necessary to protect their interests or to ensure the fair conduct of the proceeding. Settlement offers, motions to decertify, and proposals to change the representative party or counsel all could result in the need to give notice of this sort. In each of these situations, where the court deems it necessary to notify the class, the court will make orders that will ensure that it is delivered effectively.[85]

The adequacy of notice has not given rise to much controversy in local class proceedings in Canada because it must be approved by the court in every instance. However, the adequacy of notice has arisen as an issue in the course of seeking recognition of determination in multijurisdiction class proceedings involving persons who the extra-provincial judgment would preclude from bringing a separate claim.

In one situation in which a US class action judgment was sought to be recognized in Ontario, recognition was denied because the notice to potential class members in Ontario was inadequate.[86] Similarly, in another situation in which recognition of an Ontario judgment in a class proceeding was sought for the purpose of precluding a similar class proceeding in Québec, recognition was denied because the notice to the potential class members was inadequate. As the Supreme Court of Canada explained:

> ...adequate information is necessary to satisfy the requirement that individual rights be safeguarded in a class proceeding. The notice procedure is indispensable in that it informs members about how the judgment authorizing the class action or certifying the class proceeding affects them, about the rights — in particular the possibility of opting out of the class action....

[83] *Ibid.*, s. 17(6).

[84] *Ibid.*, s. 18.

[85] *Ibid.*, s. 19.

[86] Currie v. McDonald's Restaurants of Canada Ltd.; Parsons v. McDonald's Restaurants of Canada Ltd (2005), 74 O.R. (3d) 321, 250 D.L.R. (4th) 224 (C.A.).

> ... Although it does not have to be shown that each member was actually informed, the way the notice procedure is designed must make it likely that the information will reach the intended recipients. The wording of the notice must take account of the context in which it will be published and, in particular, the situation of the recipients.[87]

### 16. Is advertising the class action permitted? Are there requirements or restrictions?[88]

The structure of class proceedings in Canada does not create much incentive for advertising for the purposes of seeking support for the proceeding or encouraging participation in it. Once class counsel have been retained by a representative plaintiff, they commence preparations for the initiation of the claim, the certification of the proceeding as a class proceeding and the process of obtaining agreement on the resolution of the claim. This is generally done on the basis of a contingency fee arrangement, possibly with assistance for disbursements from the Class Proceedings Fund,[89] and not on the basis of the support of potential class members. Accordingly, there is not much need or justification for advertising.[90]

However, notifying potential class members of the certification of the proceeding and of the manner in which they may exclude themselves if they choose to do so, and of the means by which they may make a claim on the award is an important feature of class proceedings in Canada. The question of providing the class with notice of the certification of the proceeding was discussed above in response to Question 15.

### 17. What remedies are available (injunctions, declaratory relief, monetary compensation)?[91]

In principle, the remedies available in class proceedings are the same as those available in ordinary litigation. Once a class proceeding has been certified, it may be discontinued or abandoned only with the approval of the court, on such terms as the court considers appropriate; and a settlement of a class proceeding is not binding unless approved by the court.[92] Accordingly, any remedy sought in a class proceeding is subject to the approval of the court.

### 18. May public authorities, ombudsmen, and organizations start a class proceeding?[93]

There is no prohibition on the commencement of class proceedings by public authorities, ombudsmen, and organizations, but the manner in which the procedure is structured makes

---

[87] *Canada Post Corp. v. Lépine*, 2009 SCC 16, [2009] 1 S.C.R. 549 at para 42.

[88] "Is advertising the class / group action permitted? Are there particulars requirements or restrictions?"

[89] Law Society Amendment Act (Class Proceedings Funding), 1992, S.O. 1992, c. 7. See the answer to Question 39.

[90] In one early case, efforts to solicit participation in a class proceeding in which claimants were promised more compensation than the harm they had suffered, was subject to sanction: *Smith v. Canadian Tire Acceptance Ltd.* [1995] O.J. No. 3380, 26 O.R. (3d) 94 (Gen. Div.)

[91] What remedies are available to claimants (injunctions, declaratory relief, monetary compensation)?"

[92] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 29.

[93] "Are representative bodies (public authorities, ombudsmen, organisations) entitled to start a class / group action?"

this unlikely. As was discussed above,[94] the requirement of fair and adequate representation has two components. The first component is a plaintiff whose claim is representative of those of the class members. Under the rules for standing in ordinary litigation in Canada, it will be unlikely for an organization to be regarded as the best person to bring litigation where there is a natural person who has suffered the harm at issue and who is in a position to commence a claim for relief.[95] The second component is counsel competent to litigate the matter. As mentioned above, the financial context in which class proceedings currently operate in Canada (*i.e.,* on a contingency fee basis) is such that significant resources are needed to finance a class proceeding through to its successful completion. Public authorities, ombudsmen, and organizations are unlikely to be able to devote the necessary resources to this process.

### 19. In which areas of law or under which circumstances is this allowed?[96]

See the response to Question 18 above.

### 20. What remedies are available to a representative body?[97]

See the response to Question 18 above.

## II. Procedural Issues

### 21. Are there time limits to bring a class/group action?

The limitations periods that apply to ordinary litigation also apply to class proceedings. Once a proceeding has been commenced, there are time periods within which the party seeking certification of the proceeding as a class proceeding may bring the motion for certification, and the court may set deadlines for persons who fall within the definition of the class to exclude themselves from the class.[98] Finally, there may be deadlines for members of the class to claim relief awarded in the judgment.

### 22. Do the proceedings involve a trial by jury?

Jury trials in civil matters are not a right for litigants in Canada, and they rarely occur. Moreover, it is rare for a class proceeding to go to trial. Accordingly, it would be very unlikely that there would be a jury trial in a class proceeding. Furthermore, one of the reasons that requests for jury trials may be denied is that the matters in issue are too complex to be determined by a jury.[99] In view of the complexity of the evidence in many class proceedings, this would seem likely to be a reason for refusing a request for a jury trial, should a request be made.

---

[94] See the answer above to Question 10.

[95] Canadian Council of Churches v. The Queen, [1992] 1 S.C.R. 236.

[96] "In which areas of law and/or under which circumstances is the class / group action of representative bodies allowed?"

[97] "In which areas of law and/or under which circumstances is the class / group action of representative bodies allowed?"

[98] See the answer to Question 24 below.

[99] Eg. *Kotai v. Queen of the North (The),* 2008 BCSC 1398, [2008] B.C.J. No. 1973.

**23. Are the proceedings dealt with by a special court?**

Class proceedings are decided in the ordinary courts, which are courts of general jurisdiction. However, in Ontario, there has been a practice of assigning class proceedings to specially designated judges. The rationale for this is explained in the following practice direction:

> To promote the goals of the *Class Proceeding Act, 1992*, including judicial economy and access to the courts, each Regional Senior Justice has assigned one or more judges to coordinate all class proceedings in that region. To increase efficiency and provide a degree of consistency, in keeping with the case management approach ascribed to the court by the Act, the Class Proceedings Judge will preside over the majority of pre-trial class proceedings motions and certifications in that region.[100]

A similar practice exists in a number of the other common law provinces.[101]

**24. How is the class or group certified? Is there a deadline to join the proceedings?**

A class proceeding is commenced in the same way as other litigation, with the issuing of a statement of claim or other originating process. The legislation provides that "one or more members of a class of persons may commence a proceeding in the court on behalf of the members of the class."[102] Then, within 90 days of the date when the last statement of defence is delivered or the time for it has passed, the person who commenced the proceeding makes a motion for an order certifying the proceeding as a class proceeding and appointing that person the representative plaintiff.[103]

If the court grants certification, the representative party pursues relief on behalf of all persons who fit within the class defined in the notice of certification other than those who exclude themselves from the class in the method prescribed in the certification order. When the matter has been decided, all the class members benefit from the order of the court, and all the class members are bound by the result.

The certification process provides a means for threshold judicial scrutiny of a proposed action to ensure that proceeding as a class furthers the objects for which the procedure was established. The requirements for certification contained in the Ontario Class Proceedings Act are typical of the requirements found in the legislation of the various Canadian jurisdictions. A court must grant a motion certifying a class proceeding where:

(a) the pleadings or the notice of application discloses a cause of action;

(b) there is an identifiable class of two or more persons that would be represented by the representative plaintiff or defendant;

(c) the claims or defences of the class members raise common issues;

(d) a class proceeding would be the preferable procedure for the resolution of the common issues; and

---

[100] Proceedings under the Class Proceedings Act, 1992 (Ontario), Practice Direction. available at www.ontariocourts.on.ca/scj/en/notices/pd/classproceedings.htm,

[101] *Eg.* in Québec pursuant to articles 1001 and 1045 of the Code of Civil Procedure

[102] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s.2(1).

[103] *Ibid.* s.2(2). The time limits may vary from province to province. Furthermore, in British Columbia, the Court may has discretion to dispense with the requirement that the defendant file its defence before the motion for certification: *Maclean* v. *Telus Corp.*, 2005 BCCA 338.

> (e) there is a representative plaintiff or defendant who,
>
> > (i) would fairly and adequately represent the interests of the class,
> >
> > (ii) has produced a plan for the proceeding that sets out a workable method of advancing the proceeding on behalf of the class and of notifying class members of the proceeding, and
> >
> > (iii) does not have, on the common issues for the class, an interest in conflict with the interests of other class members.[104]

Although there is no requirement that the common issues predominate, there is a requirement that a class proceeding would be the preferable procedure for the fair and efficient resolution of the common issues. The British Columbia legislation contains a further section describing the relevant considerations for determining whether a class proceeding would be the preferable procedure for the resolution of the common issues:

> (a) whether questions of fact or law common to the members of the class predominate over any questions affecting only individual members;
>
> (b) whether a significant number of the members of the class have a valid interest in individually controlling the prosecution of separate actions;
>
> (c) whether the class proceeding would involve claims that are or have been the subject of any other proceedings;
>
> (d) whether other means of resolving the claims are less practical or less efficient;
>
> (e) whether the administration of the class proceeding would create greater difficulties than those likely to be experienced if relief were sought by other means.[105]

The order certifying a proceeding as a class proceeding must contain a number key elements. In particular, it must:

> (a) describe the class;
>
> (b) state the names of the representative parties;
>
> (c) state the nature of the claims or defences asserted on behalf of the class;
>
> (d) state the relief sought by or from the class;
>
> (e) set out the common issues for the class; and
>
> (f) specify the manner in which class members may opt out of the class proceeding and a date after which class members may not opt out.[106]

Since class proceedings are usually certified on an opt-out basis, there is generally no need for persons who fall within the definition of the class to join the proceedings. Rather, the notice of certification may specify a time within which they are permitted to opt out, after which they will be treated as part of the class and will be bound by the result.

**25. Do the courts select "test" or "model" cases to be tried?**

The claim of the representative party serves as a model set of facts against which to test the merits of the class claim. However, on occasion, it is determined by the court that a test case

---

[104] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 5.

[105] Class Proceedings Act (British Columbia) *supra* note 7, s. 4(2).

[106] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 8.

would be a preferable means of resolving the common issues of the class proceeding and, as a result, the class proceeding is not certified as a class proceeding.[107]

**26. Do the courts determine issues of law or fact to be preliminarily decided?**

As mentioned in the answer to Question 24 above, in addition to other matters, the certification order must set out the common issues. The legislation describes the various stages of a typical class proceeding as follows:

(a) common issues for a class shall be determined together;

(b) common issues for a subclass shall be determined together; and

(c) individual issues that require the participation of individual class members shall be determined individually.[108]

The legislation also authorizes the court to give judgment in respect of the common issues and separate judgments in respect of other issues and, on motion of a party or class member, to make any order it considers appropriate respecting the conduct of a class proceeding to ensure its fair and expeditious determination. For that purpose, the court may impose such terms on the parties as it considers appropriate.[109]

**27. Are there case management procedures?**

In many of the provinces case management applies to all class proceedings and the same judge hears all motions before the trial of the common issues.[110] Should that judge become unavailable another judge is assigned for that purpose. Unless the parties agree otherwise, a judge other than the judge who hears the motions and case manages the proceeding will preside at the trial of the common issues.[111]

**28. May the parties submit expert evidence? May the Court appoint its own expert?**

The parties may submit expert evidence. In fact, it is often the cost of the expert evidence in comparison with the size of the claim that makes an individual claim economically unviable, thereby giving rise to the need to seek certification of the matter as a class proceeding.

In theory, the Court is also entitled under the rules of most Canadian provinces to appoint its own expert or assessor, just as it is entitled to do so in ordinary litigation. However, in practice, this is rarely, if ever, done. The practice of courts appointing their own experts fits awkwardly with the adversary system because it is the parties who shape the record by deciding what evidence needs to be put before the court to support their claims or defences. Where, in the course of a proceeding, a discrete issue arises, such as a question of accounting, it may be appropriate for the court to appoint an expert or for the parties to appoint a single joint expert. However, in view of the prevalence of court approved settlements in class proceedings, it would be rare for a matter such as this not to be addressed by counsel in advance of trial.

---

[107] Ruffolo v. Sun Life Assurance Co. of Canada, [2009] O.J. No. 1322 (C.A.).

[108] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 11(1).

[109] *Ibid*, s. 12.

[110] As described in the Practice Direction referred to above under Question 23

[111] *Ibid*, s. 34. However, in British Columbia, the judge who has case managed the class proceeding may also preside over the trial of the matter: Class Proceedings Act, 1992 (British Columbia), *supra* note 7, s. 14(3).

**29. What discovery obligations exist?**[112]

Parties to a class proceeding have the same rights of discovery against one another as they would have in ordinary litigation under the rules of court. This includes the right to disclosure and production of relevant documents and to the examination of parties adverse in interest.[113]

In class proceedings, after discovery of the representative party, a party may also seek permission of the court for discovery of other class members. In deciding whether to grant leave to discover other class members, the court must consider,

(a) the stage of the class proceeding and the issues to be determined at that stage;

(b) the presence of subclasses;

(c) whether the discovery is necessary in view of the claims or defences of the party seeking leave;

(d) the approximate monetary value of individual claims, if any;

(e) whether discovery would result in oppression or in undue annoyance, burden or expense for the class members sought to be discovered; and

(f) any other matter the court considers relevant.[114]

**30. Who is bound by the result?**[115]

The named parties are bound by the result of a class proceeding just as they would be in ordinary litigation and, pursuant to the class proceedings legislation, a judgment on the common issues of a class or subclass binds every class member who has not opted out of the class proceeding.[116]

**31. How and when is the judicial decision enforceable?**

As with ordinary litigation, the judgment is final and enforceable upon pronouncement, however, it may be subject to a stay pending an appeal (either automatically, or upon request) where the matter is being appealed. Where the nature of the order requires it, the court, in supervising the execution of the judgment and the distribution of the award, may stay execution or distribution as is appropriate under the circumstances.[117]

**32. What kind of appeal is allowed against such a decision?**

In general, the rules for appeals in ordinary litigation apply to class proceedings. Special provisions are made for the procedure for appeals of decisions to grant or to refuse certification, for appeals of judgments on common issues and aggregate awards, for appeals of individual awards, and for appeals either by representative parties or by members of the class on behalf of the class.[118]

---

[112] "What obligations of disclosing evidence ("discovery") may be imposed to a party?"

[113] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 15.

[114] *Ibid.* s. 15(3).

[115] "Towards whom has the decision the effect of *res iudicata*?"

[116] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 27(3).

[117] *Ibid.* s. 26(7).

[118] *Ibid.* s. 30.

### 33. What kind of damages are recoverable?[119]

The kinds of damages available in class proceedings are, in principle, the same as those available in ordinary litigation.

### 34. How are damages quantified?

In principle, the damages are quantified on the same basis as they would be in ordinary litigation. However, to assist in determining issues relating to the amount or distribution of a monetary award, the court is authorized to admit as evidence statistical information that would not otherwise be admissible as evidence, including information derived from sampling, if the information was compiled in accordance with principles that are generally accepted by experts in the field of statistics.[120]

In determining whether an award is fair and reasonable, a court in a settlement approval hearing will consider all the circumstances including the inherent risks of litigation. The legislation provides that the court may determine the aggregate or a part of a defendant's liability to class members and give judgment accordingly where,

> (a) monetary relief is claimed on behalf of some or all class members;
>
> (b) no questions of fact or law other than those relating to the assessment of monetary relief remain to be determined in order to establish the amount of the defendant's monetary liability; and
>
> (c) the aggregate or a part of the defendant's liability to some or all class members can reasonably be determined without proof by individual class members.

The court may order that some or all individual class members share in the award on an average or proportional basis, particularly where it would be impractical or inefficient to identify the class members entitled to share in the award or to determine the exact shares that should be allocated to individual class members.[121]

In cases where it is impossible or impractical to identify with precision those individuals entitled to claim an award, the court may order *cy-pres* distribution of the award. For example, the supplier of goods may be ordered to reduce the price charged for the goods or services until the amount of the award had been distributed to the supplier's current customers, or to donate a sum of money to a charitable cause.[122]

### 35. Can the court order punitive damages?[123]

Punitive damages are available in class proceedings just as they are in ordinary litigation and there are instances in which class proceedings seeking punitive damages have been certified.[124] However, issues that might arise about the appropriateness of awards of punitive

---

[119] "What kind of damages are recoverable (bodily injuries, psychological damages, economic loss)?"

[120] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 23.

[121] *Ibid.* s. 24.

[122] As was done in cases of improper foreign exchange charges on credit card purchases in cases such as *Gilbert v. Canadian Imperial Bank of Commerce* (2004), 3 C.P.C. (6th) 35 (S.C.J.); and *Cassano v. Toronto-Dominion Bank*, [2009] O.J. No. 2922 (S.C.J.).

[123] "May a party be condemned to punitive damages?"

[124] *Heward v. Eli Lilly & Co.* (2007), 295 D.L.R. (4th) 175, 91 O.R. (3d) 691 (Div. Ct.); *Gould v. BMO Nesbitt Burns Inc.*, [2007] O.J. No. 1095, 45 C.P.C. (6th) 360 (S.C.J.).

damages tend to be obscured in the outcomes of class proceedings. By far the most common means by which class proceedings are resolved is by settlement, and the settlement proposed to the court is unlikely to specify whether a portion of the damages to be distributed or claimed by class members should be considered punitive damages.

**36. Is there cost-shifting?**[125]

There is cost-shifting in some provinces and not in others. With the enormous expense involved in bringing and defending class proceedings this plays a very significant role in the decisions of counsel and parties on whether and where to commence an action. In its 1982 Report on Class Actions, the Ontario Law Reform Commission observed that "the question of costs is the single most important issue this Commission has considered in designing an expanded class action procedure for Ontario. ...the matter of costs will not merely affect the efficacy of class actions, but in fact will determine whether this procedure will be utilized at all."[126]

The Ontario Law Reform Commission warned that if the representative plaintiff was personally at risk of being liable to pay the defendant's costs in an unsuccessful action, people would be unlikely to agree to serve as representative plaintiffs. It was unlikely that they would be willing to risk the costs associated with a claim brought on behalf of the entire class even though they could recover only their own damages. As a result, the Ontario Law Reform Commission proposed dispensing with cost-shifting once an action had been certified and the Commission proposed making available awards of costs in favour of the defendant upon a failure to certify the claim only where there had been vexatious, frivolous, or abusive conduct on the part of a party.

Ontario legislators did not follow this recommendation. Instead, the legislation in Ontario provides that the court, in exercising its discretion to dispense with a costs award, the court may consider whether the class proceeding "was a test case, raised a novel point of law, or involved a matter of public interest."[127] A representative plaintiff can, however, avoid exposure to costs by making an application for financial assistance from the Class Proceedings Fund. If funding is approved, the Law Foundation finances certain disbursements and is responsible for paying any adverse costs awards.[128]

By contrast, British Columbia and most of the other jurisdictions in Canada adopted the Ontario Law Reform Commission recommendation that no costs should be awarded to any party to a certification application for a class proceeding or to an appeal arising from a class proceeding. However, in British Columbia, and elsewhere, the court retains a residual discretion to award costs if the court considers that:

1. there has been vexatious, frivolous, or abusive conduct on the part of any party;

2. an improper or unnecessary application or other step has been made or taken for the purpose of delay or increasing costs or for any other improper purpose; or

3. there are exceptional circumstances that make it unjust to deprive the successful party of costs.

---

[125] "Can costs and expenses be recovered by the successful party? Does the "loser pay" rule apply.?"

[126] Ontario Law Reform Commission, *supra* note 21 at 647.

[127] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 31(1).

[128] See *supra* note 89.

In one case, the plaintiff was ultimately successful in the Court of Appeal for Ontario in certifying a class proceeding, but the certification was of a much narrower class than originally sought. Despite this, conventional costs principles were applied and the plaintiff received a costs award for the appeal and the proceedings in the courts below.[129] However, in another case, the Court of Appeal for Ontario upheld an award of $215,000 in costs to the defendant in a case that the parties agreed to proceed with as a test case rather than by way of a class proceeding.[130] The Class Proceedings Fund was liable for costs pursuant to the funding agreement with the plaintiff and the Fund argued that the presence of all three s. 31(1) criteria militated against any award of costs to the defendant. However, the Court of Appeal held that

> ...the general rule that costs follow the event applies in class proceedings in this province, just as it does in other forms of litigation. ...Even if the presence of one or more of the s. 31(1) criteria is found to exist, a court need not refrain from awarding costs to a successful defendant in a class action. Otherwise, the continuing application of the 'costs follow the event' regime to class proceedings would be rendered meaningless. Whether a 'no costs' order, or some adjustment to the costs as claimed, is appropriate to reflect the s. 31(1) factors will depend on the circumstances of each case.[131]

Accordingly, costs determinations are not influenced by the fact that the Class Proceedings Fund is ultimately liable for costs awarded against a plaintiff.

In cases where the representative plaintiff may bear the burden of a costs award, the Supreme Court has held that costs may nevertheless be awarded where the plaintiff has failed to succeed in certifying a class proceeding. In one case the Supreme Court observed that "protracted litigation has become the sport of kings in the sense that only kings or equivalent can afford it. Those who inflict it on others in the hope of significant personal gain and fail can generally expect adverse cost consequences." [132] It should be noted, however, that the case in which this observation was made was a "a commercial dispute between sophisticated commercial actors who are well resourced" brought "in the hope of significant personal gain."[133]

In other situations, commentators have cautioned that "significant adverse costs awards at each and every stage of the proceeding will greatly discourage potential plaintiffs from pursuing claims through the avenue of class actions, and will generally stifle access to justice."[134] As a result, proposals to revise the British Columbia legislation to make cost-shifting the basic rule have not been implemented.

**37. Can the court fix a cap on the amount of costs recoverable?**

In approving the fee to be paid to class counsel Canadian courts assess with care the work done and the fee sought. The courts are mindful of the considerable risk involved in the

---

[129] *Pearson v. Inco Ltd.*, (2006) 79 O.R. (3d) 427 (C.A.)

[130] *Ruffolo v. Sun Life Assurance Co. of Canada*, *supra* note 107, aff'g (2007), 56 C.C.L.I. (4th) 116 (S.C.J.) (trial) and (2008), 90 O.R. (3d) 59 (S.C.J.) (costs).

[131] *Ibid.* at para 35.

[132] *Kerr v. Danier Leather Inc.*, 2007 SCC 44, [2007] 3 S.C.R. 331 at para 63.

[133] *Ibid.* at para 63.

[134] Ward Branch "If it ain't broke, don't fix it!" at www.branmac.com/go/download/civil_lit_nference.pdf

practice of financing the litigation on a contingent fee basis but they are also mindful of the potential for large fees to affect the integrity of the process. Accordingly, courts will generally require counsel to provide as much evidence of the work done as they would for an assessment made for the purposes of a costs award in ordinary litigation, and the courts will consider a number of factors, including:

- the extent and character of the services rendered;
- the labour, time and trouble involved;
- the character and importance of the litigation;
- the amount of money involved;
- the professional skills and experience called for;
- the character and standing of counsel;
- the ability of clients to pay;
- the results achieved;
- the risk of no recovery;
- the expectation of a larger fee than in a non-contingency case;
- the contribution of counsel to the result; and
- the integrity of the legal profession.[135]

In determining the appropriate award of costs, there has been some debate over whether the assessment should be made on the basis of a multiplier of the hourly rates charged or on a percentage of the award. As the Court of Appeal for Ontario has observed in considering which of these methods was most likely to yield a fair and reasonable measure of compensation for class counsel,

> One yardstick by which this can be tested is the percentage of gross recovery that would be represented by the multiplied base fee. If the base fee as multiplied constitutes an excessive proportion of the total recovery, the multiplier might well be too high. A second way of testing whether the ultimate compensation is fair and reasonable is to see whether the multiplier is appropriately placed in a range that might run from slightly greater than one to three or four in the most deserving case. Thirdly, regard can be had to the retainer agreement in determining what is fair and reasonable. Finally, fair and reasonable compensation must be sufficient to provide a real economic incentive to solicitors in the future to take on this sort of ease and to do it well.[136]

### 38. Are contingent fees allowed?

When class proceedings were introduced in Ontario, the laws regarding champerty did not permit contingent fee arrangements. Accordingly, the class proceedings legislation needed to be create an exception to the existing legislation to permit contingency fees in class proceedings in order to permit the litigation to be financed by class counsel, pending the

---

[135] *White v. Canada (Attorney General),* 2006 BCSC 561, [2006] B.C.J. No. 760 at para 27.

[136] *Gagne v. Silcorp Limited* (1998), 41 OR (3d) 417 (C.A.).

outcome of the matter.[137] Nowadays, the most common method of financing class actions is through contingency fee arrangements.

**39. Is legal aid available?**

The financial challenges posed by the prosecution of a class proceedings are not eliminated by the availability of contingency fees. As a result, when the Ontario class proceedings legislation was passed, further legislation[138] and regulations[139] were passed to establish a Class Proceedings Fund. Successful applicants to the fund receive funding for disbursements and they are indemnified against adverse costs awards.

In the first decade of its operation, the Fund was underfinanced and it operated with caution in granting applications. In addition, funding was not often sought by actions that seemed likely to succeed because there was a levy of ten percent on the awards in successful actions and class counsel found it more prudent to seek financial support elsewhere for disbursements. A major medical malpractice suit in 2003 increased the balance in the Fund and this has improved the situation, but questions remain as to whether the operation of the Fund be structured differently to provide better support for class proceedings. In Québec there is also a "Fonds" under which there may be an agreement to indemnify representative plaintiffs for adverse costs awards.[140]

**40. How are damages divided among the members of a class?**

Where all or a part of the award must be divided among individual class members, the court approves the procedure for make individual claims. In specifying the procedure the Court will seek to minimize the burden on class members in various ways including by providing for the use of standardized proof of claim forms, the receipt of affidavit or other documentary evidence, and the auditing of claims on a sampling or other basis.[141] Where the entitlement of class members to recover depends upon the determination of individual issues, the court may,

(a) determine the issues in further hearings presided over by the judge who determined the common issues or by another judge of the court;

(b) appoint one or more persons to conduct a reference under the rules of court and report back to the court; and

(c) with the consent of the parties, direct that the issues be determined in any other manner.

The court may give any necessary directions relating to the procedures to be followed in conducting hearings, inquiries and determinations, choosing always the least expensive and most expeditious method of determining the issues that is consistent with justice to class members and the parties. In so doing, the court may dispense with any procedural step that it considers unnecessary, and it may authorize any special procedural steps that it considers

---

[137] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 33(1) provides: "Despite the *Solicitors Act* and *An Act Respecting Champerty*, being chapter 327 of Revised Statutes of Ontario, 1897, a solicitor and a representative party may enter into a written agreement providing for payment of fees and disbursements only in the event of success in a class proceeding."

[138] Law Society Amendment Act (Class Proceedings Funding), 1992, S.O. 1992, c. 7.

[139] Law Society Amendment Act, O. Reg. 771/92.

[140] An Act Respecting the Class Action (LRQ, c. R-2.1), s. 29

[141] Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 24.

appropriate, including steps relating to discovery, and any special rules, including rules relating to admission of evidence and means of proof.[142] It is not uncommon for a court to approve the distribution of the award through a professional claims administrator.

### 41. Are there special rules for settlement? Is court approval required?[143]

In the common law system, almost all cases are resolved before trial. In this regard, class proceedings are no different from other litigation. However, there are important differences between the way that named party cases may be settled from the way that class proceedings may be settled. Named plaintiffs in a system of party prosecution are in a position to determine at any given point in the litigation whether their interests are best served by continuing the litigation or by resolving the matter in some other way. By contrast, the members of the class in a class proceeding are not. Accordingly, under the legislation, class proceedings, once certified, may be discontinued, abandoned or settled only with the approval of the Court.[144]

Even with the safeguard of court approval, it may be difficult to verify that the interests of the class members are adequately served by a settlement. As with most civil claims, negotiated results usually require claimants to compromise on the result to which they would be entitled if the matter were ultimately decided in their favour at trial. In the circumstances of a class proceeding, this is all the more so where it is likely that the claim would not have been economically viable to litigate and, accordingly, the alternative of litigating the claim and achieving a truer measure of its value is somewhat notional. In addition, the individual claims of the representative plaintiff and of other class members are usually small by comparison with the fees that class counsel stand to receive upon successful resolution of the dispute. Under these circumstances, it is necessary to ensure that the compromise reached is as favourable to class members as might reasonably be expected and that class counsel has not been induced to make any inappropriate compromise in order to maximize the fees to be received.

The Ontario Law Reform Commission anticipated the concerns raised by the potential for collusion between class counsel and counsel for the defendants.

> [T]here is a real possibility that, without the benefit of appropriate safeguards, parties and their counsel might be tempted to abuse the class action procedure in reaching a settlement. For example,....class members' interests could be sacrificed for lawyers' fees... in the context of a settlement negotiated on behalf of the entire class, the agreement reached could be inadequate or unfair to the class members.
>
> … [I]t has also been suggested that the interests of the class lawyer and the class members might diverge; this would occur where the lawyer negotiates a settlement that maximizes the lawyer's compensation at the expense of the ultimate recovery achieved for class members. The most obvious manner in which such a result might occur is where the defendant offers to absorb the fees of the class lawyer, calculated at a premium rate, in return for the acceptance of an inadequate class award and discontinuance of the class action. Such a result might also occur,

---

[142] *Ibid.* s. 25.

[143] "Are there special rules for the settlement of claims? Is the approval of the Court required?"

[144] *Eg.* Class Proceedings Act, 1992 (Ontario), *supra* note 6, s. 29.

> however, through indirect financial pressures, without any conscious misbehaviour on the part of the lawyer.[145]

To safeguard the interests of class members, court approval for settlement is considered in a "fairness hearing". In the hearing, which is often joined with the motion for certification, counsel present the court with a proposal for a class definition and a description of the claims being resolved, and a proposal for the amount of the settlement being offered to resolve the claims and cover the costs of the litigation. The proposed settlement will also set out the mechanism for distributing the award to the members of the class, including the notice to be given to potential claimants and, where necessary, the means by which their entitlement will be determined. The proposal will sometimes include fees and disbursements sought by class counsel.

To ensure that the "fairness hearing" serves its purpose, it is sometimes necessary to present the proposed settlement to the court twice—first in a preliminary way as a basis for obtaining approval to circulate a notice to potential class members, and then in a more thoroughgoing way at a hearing in which potential claimants may appear and voice any objections that they may have. Potential class members receiving the notice of the proposed settlement may be given an opportunity to forward written objections or to appear at the hearing and express their objections at that time. In addition, lawyers who may have wished to serve as class counsel may intervene to object, and so too may consumer and other public organizations concerned with the welfare of groups, such as those likely to fall within the plaintiff class.

These intervenor objectors serve a valuable role in assisting the court in determining whether the settlement is fair, reasonable, and adequate. They may not be in the same position as counsel to ensure that the settlement is fair, reasonable, and adequate because they have not been parties to the settlement negotiations. However, without them, the court must rely upon submissions made by counsel whose independent judgment may be affected by class counsel's relatively strong interest in settling in relation to the representative plaintiff's interest in achieving a small incremental increase in his or her individual recovery. In view of the factors that could compromise counsel's interest in reflecting directly the parties' adversity of interest, the court must carefully assess counsel's submissions to ensure that the negotiations yielded a result that is fair, reasonable, and adequate to the class. The court is not in a position to re-write the agreement and, accordingly, if serious concerns emerge, the parties are required to reappear on another occasion with a fresh proposal for consideration.

Circumstances in which class certification and the settlement approval are sought at the same time require particular vigilance on the part of the courts because there is a concern that defendant's counsel could choose the class counsel with whom it would present the settlement offer to the court on the basis of the offer counsel was prepared to accept—the class counsel willing to accept the lowest offer is the counsel with whom defence counsel chooses to appear. Described as a "reverse auction", this situation can be avoided only through diligent review of the proposed settlement by the court. However, as one court explained,

> There is a strong initial presumption of fairness when the proposed class settlement is negotiated at arm's length. To reject the terms of the settlement, the judge must conclude that the settlement does not fall within the range of reasonable outcomes.

[145] Ontario Law Reform Commission, "Report on Class Actions", *supra* note 21 at 163-168.

Some of the criteria a court may take into account when determining whether to approve the settlement include:

- the likelihood of recovery or likelihood of success;
- the amount and nature of discovery, evidence or investigation;
- the proposed settlement terms and conditions;
- the recommendation and experience of counsel;
- the future expense and likely duration of litigation;
- the recommendation of neutral parties, if any;
- the number of objectors and nature of objections;
- the presence of arm's length bargaining and the absence of collusion;
- the information regarding the dynamics of, and the positions taken by, the parties during negotiations; and
- the degree and nature of communications by counsel and the representative plaintiffs with class members during the litigation.

The court's power to approve or reject a settlement does not permit it to modify the terms of a negotiated settlement. It can, however, indicate areas of concern and afford the parties an opportunity to answer those concerns with changes to the settlement.[146]

The court will bear in mind that "it is not the court's function to substitute its judgment for that of the parties who negotiate the settlement. Nor is it the court's function to litigate the merits of the action. [However,]...it is not the function of the court [to] simply rubber-stamp the proposal."[147] In recognizing that "settlements are by their very nature compromises, which need not and usually do not satisfy every single concern of all parties affected. Acceptable settlements may fall within a broad range of upper and lower limits."[148]

**42. Are statutory compensation schemes available for small claims?**

There are a variety of statutory compensation schemes in Canada for claims arising from occurrences such as workplace injuries, employment matters and automobile accidents. The existence of these compensation schemes can have a bearing on whether a class proceeding will be considered the most preferable means of resolving the common issues and, in fact, may be a reason for denying certification on this basis.

**43. Are alternative methods of dispute resolution (ADR) provided for class actions?**

At present there are no "class arbitrations" or other alternative methods of claims that have been certified as class proceedings, nor is there evidence of a practice of aggregating in class proceedings individual claims that are brought in arbitrations mandated by clauses in, for example, consumer contracts.

---

[146] *Bellaire v. Daya*, (2007) 49 C.P.C. (6th) 110 (S.C.J.); and see *Dabbs v. Sun Life, Assurance Company of Canada*, [1998] O.J. No. 1598 (Gen. Div.).

[147] *Sparling v. Southam Inc.* (1988), 66 O.R. (2d) 225 (H.C.J.) at 230-231.

[148] Ibid.