# EXHIBIT B

# IN THE SUPREME COURT OF BRITISH COLUMBIA

Citation: ***Collette v. Cartier Partners Securities Inc.*** **,**
2005 BCSC 501

Date: 20050406
Docket: A993104
Registry: Vancouver

2005 BCSC 501 (CanLII)

Between:

**Guy J. Collette**

Plaintiff

And:

**Cartier Partners Securities Inc.**
**Valeurs Mobilieres Partenairs Cartier Inc.**

Defendant

And:

**Multimetro Mortgage Corporation and Ken Megale**

Third Parties

Before: The Honourable Mr. Justice Macaulay

## Reasons for Judgment

## (In Chambers)

| | |
|---|---|
| Counsel for the Plaintiff: | D.G. Fredricksen |
| Counsel for the Defendant: | N. Campbell and D.E. Gruber |
| Counsel for the Third Parties: | No one appeared |
| Date and Place of Trial/Hearing: | 20050126<br>Victoria, B.C. |

2005 BCSC 501 (CanLII)

[1] In March 2004, the Court of Appeal certified common issues in this class proceeding in which the plaintiff claims damages for breach of contract, negligence and negligent misrepresentation, all arising out of the defendant's sale of investment units in two Multimetro Syndicate Mortgages ("Multimetro Mortgages"). On December 1, 2004, the plaintiff filed a Notice Requiring Trial by Jury pursuant to Rule 39(26).

[2] The trial of the common issues is scheduled for five weeks, commencing January 23, 2006. The determination of the common issues will not end the proceedings as it is anticipated that individual issues will have to be resolved in separate proceedings.

[3] The defendant applies pursuant to Rule 39(25), or alternatively (27), for an order that the trial be conducted without a jury. As far as counsel are aware, the right to trial by jury has not yet been considered in the context of a class proceeding.

[4] The *Class Proceedings Act*, R.S.B.C. 1996, c. 50 (the "CPA"), governs the conduct of a class proceeding. Neither the CPA, nor the class action legislation in any other Canadian province, expressly prohibits or limits the use of juries in class actions. Although the CPA governs the procedures peculiar to class proceedings, there is no reference at all to juries. I will later discuss the practical implications of trial by jury in class proceedings, but the absence of any statutory bar is a significant factor. For the most part, apart from the references to the CPA that follow, the present application must be decided under the Rules of Court.

2005 BCSC 501 (CanLII)

[5] The CPA incorporates the Rules of Court. Section 40 states that the "Rules of Court apply to class proceedings to the extent that those rules are not in conflict with this Act". Section 12 of the CPA grants a general discretion to make procedural orders for the "fair and expeditious determination" of the class proceeding. Other sections, to which I later refer, apply to the means of determining common and individual issues.

[6] The applicable Rules of Court long predate the enactment of the CPA and do not limit the use of jury trials in class proceedings. Subject only to the exceptions set out, Rule 39 permits trial by jury in any action as of right so long as the party seeking trial by jury files and delivers the requisite notice in time pursuant to Rule 39(26). There is no issue respecting the filing and delivery of the jury notice here. Upon receiving the notice, the opposing party must apply within seven days, pursuant to Rule 39(27), for an order that "the trial or part of it be heard by the court without a jury". The defendant complied with that requirement.

[7] Rule 39(27) reads:

> (27) Except in cases of defamation, false imprisonment and malicious prosecution, a party to whom a notice under subrule (26) has been delivered may apply
>
> (a) within 7 days for an order that the trial or part of it be heard by the court without a jury on the ground that
>
> (i) the issues require prolonged examination of documents or accounts or a scientific or local investigation which cannot be made conveniently with a jury, or
>
> (ii) the issues are of an intricate or complex character, or

(b) at any time for an order that the trial be heard by the court without a jury on the ground that it relates to one of the matters referred to in subrule (25).

[8] Rule 39(25) provides that a trial shall be heard by the court without a jury where it relates to any matter listed, including "(j) a matter referred to in Rule 10(1)". Rule 10(1) lists applications that may be made by originating application including sub-rule (1)(b) where "the sole or principal question at issue is alleged to be one of construction of an enactment, will, deed, oral or written contract, or other document". The defendant asserts that the principal question at issue in this class proceeding is one of construction of a contract.

[9] Unlike Rule 39(27) which is discretionary, Rule 39(25) is mandatory. Accordingly, if the defendant's assertion is correct, the trial must be heard without a jury. I will address this question first. I do not agree that contractual interpretation is the principal question at issue, although it is certainly a key one.

[10] The defendant contends that the principal question for decision is whether there was an implied term in the contract between the defendant and each of its clients that the defendant would exercise due diligence to determine whether the particular Multimetro Mortgage units were suitable to be offered for sale to the defendant's clients. The defendant says that this principal question flows from the pleadings and the common issues certified by the Court of Appeal. It is common ground that there was no express term in any of the contracts to that effect and, accordingly, the plaintiff must establish an implied contractual term that the

2005 BCSC 501 (CanLII)

defendant would exercise due diligence to determine whether the units were suitable to be offered for sale.

[11] The question of construing the contract to determine whether there were implied terms as alleged is important but it is not "the sole or principal question at issue" such as would permit the plaintiff to proceed by petition under Rule 10(1). To fit within the exclusion set out in Rule 39(25) on the basis that the trial relates to a matter referred to in Rule 10(1), the defendant must demonstrate that "in reality, [the] main or central issue to be tried" squarely falls within one of the subject matters enumerated in Rule 39(25). See *Leffler v. Flanagan*, [1993] B.C.J. No. 1568 (S.C.) at para. 4.

[12] The defendant further argues that the question of construing the contract to determine if it includes the implied terms is a legal rather than a factual issue. A decision to imply a contractual term imposing the alleged duty would not depend on the parties' intentions. In *Nelson Marketing International Inc. v. Royal & Sun Alliance Insurance Co. of Canada* (2003), 31 C.P.C. (5th) 105 (B.C.S.C.), the court held that while Rule 39(25) should not be applied if the findings of fact substantially dispose of the issues to be tried, if after the facts have been found a "genuine question remains as to the significance of those facts within a Rule 10(b) issue," this will be the principal question in issue within the meaning of the rule (at para. 20). The defendant meets that test in the sense that the final determination whether to impose a contractual duty cannot be made until after the necessary factual underpinnings have been determined.

2005 BCSC 501 (CanLII)

2005 BCSC 501 (CanLII)

[13] The defendant relies on *McNarland v. Yada*, 2003 BCSC 1404, for the proposition that where the construction of the contract itself is in dispute, the fact that there are other claims that a jury is not barred from hearing is of no moment. Apart from breach of contract, the only other claim referred to in *McNarland* was for breach of fiduciary duty. Both claims apparently arose out of the same circumstances. It follows that the court must have concluded that both the claim for breach of contract and breach of fiduciary duty depended on the construction of the contract that was at issue. Otherwise, it is difficult to see how the question of construing the contract could be, in reality, the main or central issue to be tried.

[14] According to the plaintiff, the construction of the contract is only one of the issues to be decided at trial and not a principal one. Counsel for the plaintiff says that the remainder of the issues relates primarily to determining the facts. In particular, he stresses that the facts will have to be determined with respect to the tort claim.

[15] A similar dispute arose in *Manley v. Chilliwack Hospital et al.*, 2000 BCSC 649, respecting the plaintiff's jury notice. There the plaintiff alleged negligence against the hospital and doctor and, in addition, sued for breach of contract. The plaintiff alleged that, in consideration of her MSP premium payments, the defendants contracted:

> "to provide competent and prudent medical care of the plaintiff at a standard at least equivalent to the standards of medical care other persons in British Columbia would expect to receive in the circumstances." (at para. 8)

2005 BCSC 501 (CanLII)

[16] In *Manley*, the court concluded that the issue was not principally one of construction and, instead, revolved around the question of whether there was a contract at all and, if so, whether it had been breached, "the latter being the same question a jury would answer in tort in the context of the duty of care" (at para. 34). To the extent that there were interpretation issues, they were not the sole or principal issues and Rule 39(25) did not apply.

[17] In *Nelson Marketing*, the court distinguished *Manley* on the basis that the findings of fact at trial would substantially dispose of the issues to be tried. According to the defendant's written submission, the real issue in the present case is whether the contract includes the implied terms as alleged. Absent an express contractual term imposing a standard of due diligence, implying such a term necessarily involves construing the contract. In other words, there may be relatively little conflict about the existence and terms of the contracts between the parties except in relation to the implied term.

[18] If the plaintiff's claim was limited to breach of contract, I would accede to the defendant's submissions respecting Rule 39(25). I am unable to do so because the plaintiff alleges that a duty arises in both contract and tort. The exact nature and extent of the duty will have to be determined as a matter of law in each case. While the duties may be concurrent, it is possible that they will not be. If the plaintiff is unsuccessful in establishing an implied term of the contract imposing a higher duty, there will still be important issues relating to the alleged standard of care and breach in relation to the tort claim. The existence of important issues relating to the tort claim precludes a conclusion that the principal question at issue in this class

proceeding is one of construction of contract and distinguishes the present case from *McNarland*.

[19] Significant issues arise in relation to the tort claim that do not fall within Rule 10(1), nor is the tort claim otherwise enumerated in Rule 39(25). As a result, there is no mandatory bar to a jury trial.

2005 BCSC 501 (CanLII)

[20] The outcome of the present application falls to be determined instead, in my opinion, on the question whether the issues are too complex or intricate for a jury trial. I next turn to the discussion of the plaintiff's claims by the Court of Appeal which illustrates both the duality and nature of the claims. The claims are novel in that the plaintiff seeks to fix liability on the defendant for offering the particular investment for sale to any of its clients. As I previously described:

> The underlying theme of the plaintiff's case, whether presented in negligence or contract, is that the particular mortgage investments were so bad that they should not have been offered for sale to anyone. (2003 BCSC 332 at para.18)

[21] The Court of Appeal (2004 BCCA 110) described the plaintiff's claim, as it arises concurrently in tort and contract, at para. 20, as follows:

> The [plaintiff] contends that the due diligence responsibility of the specialty investment departments at stage one [the due diligence review] is a common duty to all clients and that the [defendant] breached that duty in passing the units for sale. That obligation is an implied term of the contractual relationship and is otherwise an obligation assumed in this context by a professional advisory firm dealing with specialty products which are not exchanged, traded or otherwise readily marketable.

Insofar as the plaintiff argued for certification based, in part, on an alleged duty of care arising independently of the contract, an issue arises whether that duty differs or may differ from the contractual duty. It is only after the extent of the duty owed for the purpose of the tort analysis has it been legally determined that the question arises as to whether the defendant failed to meet the appropriate standard of care, thereby breaching the duty.

2005 BCSC 501 (CanLII)

[22] The Court of Appeal referred (at paras. 30 and 31) to the plaintiff's assertion that the defendant "assumed a due diligence duty of care to all their clients" and, after referring briefly to some of the proposed evidence, continued (at para. 32):

> ... there is little evidence of the particulars of the due diligence standards that the [defendant] applied, or reasonably should have applied, in assessing the investment quality of the mortgage units and whether they should have been approved to be offered for sale by the [defendant's] financial advisers. The reasonable standard may involve expert evidence and, in any event, it is an issue for trial. If the [defendant] had a due diligence duty of care to clients then the determination of a standard of care follows necessarily to reach the question of whether there has been a breach of duty. Assuming a duty, standard of care is a triable issue.

The Court of Appeal then certified the common issues as follows:

(a) Did the Defendants, or any of them, owe, to the class members with whom they dealt, a duty in contract, tort, or both, to evaluate the Multimetro Mortgages by a standard of due diligence and not to offer units in the mortgages for sale to class members if the investments did not meet the standard of due diligence?

(b) If the answer to question 1 is "yes", did the Defendants, or any of them, breach that duty?

(c) If the answers to questions 1 and 2 are "yes", did the breach of duty cause damage to the class members? (2004 BCCA 110 at para. 38)

The Court of Appeal added the caveat that the common issues "remain to be defined" and may be modified or added to by the trial judge. By certifying the common issues in both tort and contract, the Court of Appeal appeared to recognise the possibility that the duty analysis in tort and contract might differ significantly.

[23] The plaintiff now suggests amending the first common issue to clarify the difference between the alleged duty of care and the standard of care allegedly breached, as follows:

(1) Did the defendant owe a duty of care?

(2) In the circumstances, did that duty of care require the defendant to:

(a) carry out a reasonable assessment of the investment merits and the investment risks associated with a purchase of the Multimetro units, and

(b) based upon its assessment, reasonably determine that its clients (the class members) had a reasonable prospect of recovering their investment capital and earning some return on

2005 BCSC 501 (CanLII)

their investment, given the investment risk involved, before promoting the sale of the Multimetro units to its clients?

[24] According to the plaintiff, these amendments are necessary because the first common issue stated by the Court of Appeal may conflate questions relating to the existence of a duty of care with the standard of care which the defendant must meet, assuming the duty exists. In my view, the proposed amendments are of little assistance, although they highlight the complexity and novelty of the plaintiff's theory of liability. I do not agree that the questions are so readily divisible given the assertions by plaintiff that led to the common issues certified by the Court of Appeal. The alleged duty, at least in contract, if not also in tort, was framed by the plaintiff so as to include the due diligence standard. The proposed first question misses that distinction and is, in any event, insufficient as it does not define the duty.

[25] The formulation of the plaintiff's argument before the Court of Appeal and the settling of the common issues suggests that the plaintiff's case will ultimately depend on proving the existence of a duty to exercise due diligence, whether it is to be an implied part of the contractual duties owed by the defendant or a duty that the defendant assumed in the particular context.

[26] The extent of the legal duty that arises in the context is entirely a question of law. The question of whether the alleged duty arises from an implied term in the contract is largely, if not entirely, a question of law. The trial judge must decide whether to imply a contractual term imposing a duty in agreements made between an investment dealer and its clients, notwithstanding the intention of the parties,

2005 BCSC 501 (CanLII)

requiring the dealer to exercise due diligence and not offer any units of the particular type for sale that did not meet the standard. See G.H. Treitel, *The Law of Contract*, 10th ed. (London: Sweet & Maxwell, 1999), at pp. 183-195; *Machtinger v. HOJ Industries Ltd.* (1992), 91 D.L.R. (4th) 491 (S.C.C.) at 494.

2005 BCSC 501 (CanLII)

[27] Counsel for the plaintiff argues that the evidence he proposes to rely on to demonstrate the need for an implied term is also evidence of the applicable standard of care. As the determination of the appropriate standard of care and whether there has been any breach are solely within the province of the jury, he contends that this is not a complicated case. I disagree. It is exactly the differences between the contractual and tortious duty analyses and the differing results that may flow from each that render the issues complex.

[28] Viewed overall and having regard to the common issues as certified, I consider it likely that the most significant decisions will relate to issues of law rather than fact. I seriously doubt that these legal issues can be readily and properly determined in the context of a jury trial.

[29] Rule 39(27) permits a discretionary order that the trial be heard by the court without a jury either where the issues require prolonged examination of documents or accounts or a scientific or local investigation which cannot be made conveniently with a jury, or where the issues are of an intricate or complex character. There is no question of scientific investigation but the defendant contended that there will be a prolonged examination of documents which a jury cannot conveniently do. A jury has the capacity to absorb and understand the documents in this case, particularly

those prepared for review by clients of the defendant. A jury also has the capacity to absorb and understand the proposed evidence respecting industry practices and dealings. I do not underestimate the capacity of the modern jury and do not accede to this argument.

2005 BCSC 501 (CanLII)

[30] The more problematic question in the present case arises from the nature of the issues. I have already identified the legal issues which are, in my view, intricate and complex. It follows that the presentation of legal arguments and the decision-making process are likely to be time-consuming. The presence of a jury places added pressures on both counsel and the Court.

[31] Depending on the outcome of the legal issues, the charge to the jury may itself be complex. This gives rise to a concern that the jury may not properly understand the charge and apply that understanding to the facts as found. As the common issues are mixed fact and law, it may be exceedingly difficult to frame questions for the jury, the answers to which will permit final determination of the common issues.

[32] The role of the jury is largely a passive one. The jury does not have the valuable opportunity, available to a judge sitting without a jury, for interchanges with counsel that may clarify, ensure understanding or test the arguments being advanced. If, as appears likely, alternative questions would have to be put to the jury, there is a risk that the answers will be externally inconsistent. I appreciate that all these factors may be overcome with the assistance of counsel and careful attention to the charging process. Nonetheless, they contribute to the risk that

proceeding by trial with a jury may both lengthen the proceeding and render it unfair. It is particularly appropriate to consider these factors in a class proceeding in spite of the plaintiff's presumptive right to a jury trial.

2005 BCSC 501 (CanLII)

[33] Typically, the focus under Rule 39(27)(a)(ii) is on the character of the issues to be determined by the jury rather than by the judge and whether those issues are too intricate or complex. A useful catalogue of factors may be found in *Andersen v. Porter* (2000), 27 C.P.C. (5th) 289 (B.C.S.C.), at para. 14. The list is not exhaustive and I would add to it, in the context of class proceedings, the need to consider the interplay between the common issues as certified and the role of the jury.

[34] The plaintiff emphasizes the important role that a jury may play in setting appropriate standards for the conduct of professional bodies or municipal bodies (see *World Wide Treasure Adventures Ltd. v. Ralph*, [1995] B.C.J. No. 579 (S.C.), and *Esposito v. City of Abbotsford*, 2003 BCSC 1787) and contends that it is equally desirable that citizens set the standard here. If the plaintiff prevails in asserting the implied term of contract sought here, it will be the court, not the jury, that will effectively set the standard.

[35] The question of whether the issues are too intricate and complex may also extend to the relative weighting of the legal issues requiring judicial determination against the factual issues to be decided by the jury. In *Harwood Industries Ltd. v. Surrey (District)*, [1993] B.C.J. 2217 (B.C.C.A.), the plaintiffs brought an action against the respondent district for its refusal to approve a development permit for a seniors' housing complex. The respondents applied successfully to strike the jury

2005 BCSC 501 (CanLII)

notice on the basis that the legal issues were intricate and complex and there were few findings of fact for the jury to make. The chambers judge found that the fundamental issues needed to be decided by a judge on mature consideration and not in the context of a jury trial. The Court of Appeal refused leave to appeal. The predominance of legal over factual issues in *Harwood* is closer to the present case than in *Esposito*, where the right to trial by jury was upheld.

[36] In refusing leave in *Harwood*, Proudfoot J.A. referred with apparent approval to earlier authority, *Holland v. Hallonquist* (1968), 63 W.W.R. 207 (B.C.C.A.), at 219 for the proposition that the issues may be either of fact or law. This was because:

> [i]t is easy to imagine a cause or matter in which the issues of law were so intricate or complex that it would be well nigh impossible to frame questions for a jury that would settle the facts to which the judge would have to apply the law in all their possible permutations and combinations.

[37] Proudfoot J.A. went on to state that, in the case before her, the jury had only minimal facts to determine and the judge was going to have to address serious, time-consuming issues of law. This raised the possibility of difficult jury instructions and the potential for misunderstanding. She concluded at 568:

> In my view the trial cannot be conveniently tried by a jury with these multiple legal issues and rules to be made, which need to be done by a judge on a mature consideration of the matters, and not in the arena of a jury trial where quick judgments have to be made. Accordingly, it is my view, that it would not be appropriate for the matter to be tried by a jury.

[38] Convenience in the limited sense referred to above was also a factor in *Lew v. Mount Saint Joseph Hospital* (1998), 55 B.C.L.R. (3d) 394 (S.C.), a case involving a novel point of law.

[39] I conclude that the nature of the legal issues in the present case is a proper factor to consider in deciding whether the case is too intricate and complex for a jury. Where the legal issues are novel or complex, necessarily time-consuming to resolve, and render the charging process impracticable, the issues may be considered too complex and intricate for trial by jury in spite of the right to jury trial. Those complexities are present in this case and are further exacerbated by the fact that it is a class proceeding requiring the determination of common issues.

[40] I conclude that it is appropriate to consider the factors just outlined because of the overriding need to achieve a fair and just result on the merits in a reasonably expeditious manner. An absolute right to trial by jury in the face of such obstacles based on a more literal interpretation of Rule 39(27)(a)(ii) would conflict with the object of the rules set out in Rule 1(5), namely "to secure the just, speedy and inexpensive determination of every proceeding on its merits".

[41] I also take into account that the plaintiff proposes that the jury try only the common issues. As is apparent from the decision of the Court of Appeal to certify, the trial of the common issues is just the first stage. The second stage will relate to the process used to sell the investment to individual clients. All issues relating to the second stage are to be severed from the class proceeding, as these issues depend on the individual factual circumstances of each investor. This leads to a further

2005 BCSC 501 (CanLII)

consideration unique to class proceedings which I posed to counsel as a question and on which I received supplemental submissions.

[42] Assuming the jury finds in favour of the plaintiff on the common issues, the question arises whether it is open to the court, with or without the consent of the parties, to determine the balance of the issues that remain without a jury.

[43] There are obvious practical problems associated with extending the obligation of the jury that hears the common issues to return later to deal with individual issues. It is difficult to see how determining individual issues by extending the obligation could meet the statutory goal of providing the least expensive and most expeditious method of determining the issues. I view this as a compelling factor against extending the role of the jury, but I do not think it precludes a jury hearing the common issues.

[44] The plaintiff contends that the court can determine the individual issues as it chooses because s. 11 of the CPA mandates severance of common and individual issues. Section 11 reads:

> 11 (1) Unless the court otherwise orders under section 12, in a class proceeding,
>
> (a) common issues for a class must be determined together,
>
> (b) common issues for a subclass must be determined together, and

2005 BCSC 501 (CanLII)

(c) individual issues that require the participation of individual class members must be determined individually in accordance with sections 27 and 28.

Sections 27 and 28 provide a great deal of flexibility for the determination of individual issues even though there is no reference to jury hearings except possibly by consent of the parties.

[45] Section 27 sets out the following alternatives. The judge who decides the common issues may determine the individual issues or direct that another judge hear them (s. 27(1)(a)). One or more persons may be appointed to conduct an inquiry into individual issues and report back to the court (s. 27(1)(b)). With the consent of the parties, the court may direct that individual issues "be determined in any other manner" (s. 27(1)(c)). In giving directions for any of the procedures under s. 27(1), the court is required to choose "the least expensive and most expeditious method of determining the individual issues that is consistent with justice" (s. 27(3)). Section 12, referred to earlier in my reasons, employs similar language and grants to the court a discretionary power to "make any order it considers appropriate respecting the conduct of a class proceeding to ensure its fair and expeditious determination". Pursuant to s. 28, after the determination of common issues, the court may also direct that s. 27 applies to determining the defendant's liability to individual class members where proof by individual class members is reasonably required.

[46] The plaintiff also contends that Rule 39(30) permits an order that different questions of fact arising in an action be tried by different modes of trial. The

2005 BCSC 501 (CanLII)

defendant took no issue with that submission. In *Lord v. Royal Columbian Hospital* (1980), 27 B.C.L.R. 123 (C.A.), and again in *Chong v. Good Taste Meat Supply Ltd.*, [1992] B.C.J. No. 791 (C.A.), the Court of Appeal confirmed that the discretion exists in other actions. In *Lord*, the court specifically ordered the trial of liability with a jury and damages by a judge alone. Both decisions predate the enactment of the CPA and I find them of minimal assistance.

[47] At the end, I am persuaded that the test for striking a jury notice and requiring that a class proceeding be heard by a judge without a jury can be addressed on the existing case law relating to the applicable Rules of Court, subject to the added considerations that underpin all procedural steps in a class proceeding, namely that the mode of conduct of the proceeding ensure the fair and expeditious determination of the issues. This provides additional latitude to strike the jury notice where the common issues give rise to complex, intricate and novel issues which significantly outbalance the factual issues for the jury. I exercise my discretion to strike the jury notice. I also conclude that it would not be fair and expeditious to have a jury determine the common issues here.

[48] The defendant seeks costs of the application but s. 37 of the CPA bars any award of costs unless one of the enumerated exceptions applies. Given the plaintiff's presumptive right to a jury trial and that the application before me was an important one of apparent first instance, none of the exceptions listed in subsections (a) or (b) applies. Subsection (c) permits costs if there are "exceptional circumstances" in which it would be unjust to deprive a party of its costs. The defendant did not set out any basis for awarding costs under that subsection and I

2005 BCSC 501 (CanLII)

assume that there is none. The defendant will have leave to apply if I have misunderstood but otherwise I make no order as to costs.

"M.D. Macaulay, J."
The Honourable Mr. Justice M.D. Macaulay

2005 BCSC 501 (CanLII)