UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CLASS CERTIFICATION AND APPROVAL OF NOTICE PLAN**

ABBEY SPANIER RODD & ABRAMS, LLP
Arthur N. Abbey
aabbey@abbeyspanier.com
Karin E. Fisch
kfisch@abbeyspanier.com
Richard B. Margolies
rmargolies@abbeyspanier.com
212 East 39th Street
New York, NY 10016
(212) 889-3700

*Counsel for Lead Plaintiff*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .......... II

I. INTRODUCTION .......... 1

II. BACKGROUND OF THE LITIGATION .......... 2

III. THE PROPOSED SETTLEMENT .......... 6

IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .......... 8

V. THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED .......... 10

A. THE REQUIREMENT OF NUMEROSITY IS SATISFIED .......... 11

B. THE REQUIREMENT OF COMMONALITY IS SATISFIED .......... 12

C. THE REQUIREMENT OF TYPICALITY IS SATISFIED .......... 14

D. THE REQUIREMENT OF ADEQUATE REPRESENTATION IS SATISFIED .......... 15

E. THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED .......... 16

VI. THE NOTICE PROGRAM IS APPROPRIATE .......... 17

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997)....................10, 11, 16

*Bano v. Union Carbide Corp.*,
273 F.3d 120 (2d Cir. 2001)....................10

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975)....................14

*Central States Se. and Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
504 F.3d 229 (2d Cir. 2007)....................11

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)....................11

*Cromer Fin. Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001)....................16

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)....................8

*Darquea v. Jarden Corp.*,
06 Civ. 722 (CLB), 2008 U.S. Dist. LEXIS 17747 (S.D.N.Y. Mar. 6, 2008)....................16

*Denney v. Jenkens & Gilchrist*,
230 F.R.D. 317 (S.D.N.Y. 2005)....................10

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999)....................17

*In re Deutsche Telekom AG Sec. Litig.*,
229 F. Supp. 2d 277 (S.D.N.Y. 2002)....................8, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
245 F.R.D. 147 (S.D.N.Y. 2007)....................16

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004)....................9

*In re Holocaust Victim Assets Litig.*,
105 F. Supp. 2d 139 (E.D.N.Y. 2000)....................8

*In re IGI Sec. Litig.*,
122 F.R.D. 451 (D.N.J. 1988) .......... 14

*In re IMAX Sec. Litig.*,
272 F.R.D. 138 (S.D.N.Y. 2010) .......... 12, 13

*In re Initial Pub. Offering Sec. Litig.*,
226 F.R.D. 186 (S.D.N.Y. 2005) .......... 8, 9

*In re Livent Inc. Noteholders Sec. Litig.*,
210 F.R.D. 512 (S.D.N.Y. 2002) .......... 15

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) .......... 8, 9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
191 F.R.D. 369 (S.D.N.Y. 2000) .......... 13

*In re Scor Holding (Switz.) AG Litig.*,
537 F. Supp. 2d 556 (S.D.N.Y. 2008) .......... 14

*In re Stock Exchs. Options Trading Antitrust Litig.*,
99 Civ. 0962 (RCC), 2005 U.S. Dist. LEXIS 13734 (S.D.N.Y. July 8, 2005) .......... 10

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) .......... 16

*In re Vivendi Universal, S.A. Sec. Litig.*,
242 F.R.D. 76 (S.D.N.Y. 2007) .......... 11, 12

*In re Warner Comms. Sec. Litig.*,
798 F.2d 35 (2d Cir. 1986) .......... 8

*Labbate-D'Alauro v. GC Servs. Ltd. P'ship*,
168 F.R.D. 451 (E.D.N.Y. 1996) .......... 12

*Metge v. Baehler*,
77 F.R.D. 470 (S.D. Iowa 1978) .......... 13

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
226 F.R.D. 456 (S.D.N.Y. 2005) .......... 12

*Read-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) .......... 8

*Reade-Alvarez*, 2006 U.S. Dist. LEXIS 31130, at *23 .......... 17

*Robinson v. Metro-North Commuter R.R. Co.*,
267 F.3d 147 (2d Cir. 2001) .......... 12, 14

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*,
No. 01 Civ. 11814 (LAP), 2004 U.S. Dist. LEXIS 25927, 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) .......... 12

*Wagner v. Barrick Gold Corp.*,
251 F.R.D. 112 (S.D.N.Y. 2008) .......... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) .......... 17

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) .......... 17

## **STATUTES**

Securities Exchange Act of 1934:

Section 10(b) .......... 3, 14
Section 20(a) .......... 3
Rule 10b-5 .......... 3

## **RULES**

Federal Rules of Civil Procedure:

Rule 23 .......... passim

## **OTHER AUTHORITIES**

1 Newberg On Class Actions 2d, § 3.05 (1985 ed.) .......... 11

MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632 (2004) .......... 9

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff The Merger Fund ("Lead Plaintiff"), by and through its counsel, respectfully submits this memorandum of law in support of its motion for an order preliminarily approving the proposed settlement (the "Proposed Settlement") between Lead Plaintiff and Defendants IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble (collectively, the "IMAX Defendants") and PricewaterhouseCoopers LLP ("PwC-Canada") conditionally certifying a settlement class, setting a date for a fairness hearing, and approving the notice program agreed to by the parties. This motion is also supported by the Stipulation of Settlement, dated January 26, 2012 with exhibits attached thereto, and filed simultaneously herewith (the "Stipulation"),[1] and the Declaration of Richard B. Margolies in Support of Preliminary Approval of Proposed Settlement dated January 26, 2012, with exhibits attached thereto.

## I. INTRODUCTION

Lead Plaintiff submits this memorandum of law in support of preliminary approval of the Proposed Settlement with all Defendants in this securities class action brought on behalf of a class consisting of all persons and entities who purchase of otherwise acquired IMAX shares on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive, excluding Defendants in this action as well as the parallel action pending in Ontario Superior Court of Justice in Canada, and members of those Defendants' immediate families, all individuals who are either current officers and/or directors of any Defendant, or who served as officers or directors of any Defendant at any time during the Class Period (the "Settlement Class").

---

[1] The Stipulation, together with all attachments thereto, is submitted herewith as Exh. A to the Declaration of Richard B. Margolies in Support of Lead Plaintiff's Motion for Preliminary Approval of Proposed Settlements ("Margolies Decl."). All cited provisions of the Stipulation shall hereinafter be referenced as "Stipulation ¶ __".

The Proposed Settlement provides for a $12 million monetary recovery for the Settlement Class which will be distributed to members of the Settlement Class who are eligible to receive such distribution from the proceeds and who shall release their claims as provided by the Proposed Settlement (the "Settlement Fund"). If finally approved, the Proposed Settlement will resolve all claims asserted in this litigation.

Lead Plaintiff move this Courts to enter a Preliminary Approval Order, submitted herewith as Exhibit B to the Stipulation: (1) granting preliminary approval of the Proposed Settlement; (2) certifying the proposed class pursuant to Rule 23(b)(3) for purposes of the Settlement; (3) directing that the Settlement Class be given notice of the Proposed Settlement, the Plan of Allocation, Lead Counsel's request for fees and reimbursement of expenses; and (4) scheduling a hearing at which the Court will consider the parties' motion for final approval of the Proposed Settlement. As detailed herein, the Proposed Settlement is fair, reasonable, and adequate.

## II. BACKGROUND OF THE LITIGATION

From August 11, 2006 through September 18, 2006, eight lawsuits were filed (the "Actions") against all or certain of the Defendants in the United States District Court for the Southern District of New York alleging that IMAX made material misrepresentations and omissions regarding revenue recognition for theater systems in violation of the federal securities laws. On September 20, 2006, following the filings of the Actions, a lawsuit was filed in the Canadian Court against the IMAX Defendants alleging, based on substantially identical facts to those alleged in the Actions, that, during the time period from February 17, 2006 through August 9, 2006, IMAX made material misrepresentations and omissions regarding revenue recognition for theater systems.

Pursuant to a January 17, 2007 Order of the Court, the Actions were consolidated, the Court appointed Westchester Capital Management, Inc. ("Westchester")(the investment advisor for GS Master Trust, MSS Merger Arbitrage Fund, The Merger Fund, The Merger Fund VL and SphinX Merger Arbitrage Fund) as lead plaintiff and further approved the appointment of the law firm of Abbey Spanier Rodd & Abrams, LLP as lead counsel for the class. On October 2, 2007, Westchester filed a Consolidated Amended Class Action Complaint alleging that Defendants had violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5, promulgated thereunder by the Securities and Exchange Commission. The Complaint asserted claims on behalf of all persons who purchased IMAX securities on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive, against the IMAX Defendants and PwC-Canada.

On December 10, 2007, the IMAX Defendants and PwC-Canada each filed motions to dismiss the Complaint on numerous grounds. After full briefing and oral argument, the Court requested that the parties file supplemental submissions on the pending motions to dismiss the Complaint. Defendants and Westchester submitted supplemental briefing on August 18, 2008.

On September 15, 2008, the Defendants' motions to dismiss were denied by the Court. Thereafter, Westchester commenced discovery.

On October 31, 2008, Westchester filed Plaintiff's first motion for class certification. Shortly thereafter, on December 2, 2008, Lead Counsel, on behalf of Westchester, and counsel for the IMAX Defendants attempted to resolve this litigation through mediation. The Honorable E. Leo Milonas presided over the mediation which concluded without resolution. The next day, December 3, 2008, the Second Circuit decided *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), in which the Circuit held that an

investment adviser that did not actually purchase the securities at issue lacked standing to bring a securities fraud claim on behalf of its clients because it did not suffer an injury in fact. Relying on the Second Circuit's decision in *Huff*, on February 18, 2009, Snow Capital Investment Partners, L.P. ("Snow Capital") requested a pre-motion conference in connection with its anticipated motion for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff.

On March 13, 2009, the Court denied without prejudice Westchester's motion for class certification pending resolution of Snow Capital's anticipated motion for reconsideration of the Court's January 17, 2007 Order. On April 3, 2009, Snow Capital moved for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff. After the issue was fully briefed, on June 29, 2009, the Court determined that under *Huff*, Westchester, an investment advisor, lacked Article III standing and granted Snow Capital's motion and appointed it lead plaintiff and its counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), as lead counsel.

On December 14, 2009, the Canadian Court certified the Canadian Action as a class action on behalf of investors worldwide who purchased IMAX securities on or after February 17, 2006 and held some or all of those securities on August 9, 2006. *See Silver v. IMAX Corporation*, [2009] O.J. No. 5585, 2009 ON.C. LEXIS 4847 (December 14, 2009, Sup. Ct. J.).

On April 22, 2010, Snow Capital filed its motion for class certification which was denied by the Court in December 2010. The Court held that this case could not proceed with Snow Capital as class representative, and directed that new applications for lead plaintiff be filed. On April 14, 2011, the Court issued an Order naming The Merger Fund as lead plaintiff and re-appointing Abbey Spanier Rodd & Abrams, LLP as lead counsel for the Class.

Soon after being reappointed, on May 2, 2011, Lead Counsel was informed by the IMAX Defendants that the Canadian Court would address the form of notice to be provided to the class in the Canadian Action. That day, Lead Counsel sent a letter to the Canadian Court expressing concerns about the form of notice. Lead Counsel suggested that the issuance of the notice in the Canadian Action be deferred until class certification was decided in this action. The next day, Lead Counsel advised the Canadian Court of its intention to move to intervene in the Canadian Action. On May 13, 2011, Lead Counsel moved to intervene in the Canadian Action and submitted an affidavit to the Canadian Court expressing its opinions regarding the proposed notice to be disseminated in the Canadian Action. On May 31, 2011, counsel for the plaintiffs in the Canadian Action submitted its motion record in response to Lead Plaintiff's motion to intervene. On June 3, 2011, Lead Plaintiff filed another motion for class certification in this Court.

From time to time throughout the course of this litigation, both Lead Plaintiff's Counsel and, as represented to Lead Plaintiff's Counsel, Canadian Lead Counsel, have made demands on Defendants, separately or globally, to settle the actions. Following the appointment of Lead Plaintiff and the reappointment of Abbey Spanier Rodd & Abrams, LLP as Lead Counsel, the parties re-commenced settlement discussions through their respective counsel. Between April 2011 and November 2011, the parties met numerous times, both in person and via conference call in an effort to negotiate a settlement. Those efforts resulted in the parties executing a Memorandum of Understanding on November 2, 2011 (the "MOU") to settle the litigation.

On December 6, 2011, the Parties entered into a stipulation in which Lead Plaintiff agreed to withdraw its motion for class certification motion in light of the proposed settlement of

this action. The Parties subsequently entered into the Stipulation, submitted herewith, that details the terms of the Proposed Settlement.

Lead Counsel have conducted an extensive investigation relating to the allegations pertaining to each defendant in the Class Action, the alleged damages suffered by the Class and the defenses asserted by the Defendants in the Class Action. In connection therewith, Lead Counsel reviewed and analyzed hundreds of thousands of pages of documents produced by Defendants, reviewed the transcripts of the testimony of the Individual Defendants and 11 other individuals conducted by the Securities and Exchange Commission and 11 transcripts of depositions conducted by the plaintiffs in the Canadian Action which included the testimony of a member of defendant PwC-Canada; conducted confirmatory discovery and consulted extensively with experts retained to advise on the issues pertinent to Lead Plaintiff's claims in the Class Action, including accounting issues and the damages that Lead Plaintiff would seek to prove at a trial. Lead Plaintiff and Lead Counsel believe that the proceedings described above provide an adequate and satisfactory basis for the Settlement described herein.

## III. THE PROPOSED SETTLEMENT

Defendants have collectively agreed to pay $12,000,000.00 in full and complete Settlement of this action . Lead Counsel may use up to $250,000.00 of that amount to pay the costs of notifying the Class, facilitating the filing of Proofs of Claim by Class Members, assisting Settlement Class Members in making their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class prior to the entry of Judgment. Assuming the approval of the Court for payment of this sum to Lead Counsel for purposes of the Notice and Administration Fund, the Defendants shall advance the $250,000.00 for deposit into the Notice and Administration Fund, in an account identified in writing by Lead Counsel, within the later of ten

(10) business days of entry of the Preliminary Approval Order or the identification of the account by Lead Counsel. The $250,000.00 in the Notice and Administration Fund is part of, and not in addition to, the Settlement Amount to be paid by the Defendants.

Should the Court enter the Preliminary Approval Order, the Settlement Fund shall be deposited into an interest-earning Class Settlement Account designated by Lead Plaintiff. A Settlement Class Member's actual recovery will be a proportion of the Settlement Fund determined by that Claimant's Recognized Claim as compared to the total Recognized Claims (defined below) of all Settlement Class Members who submit valid Proofs of Claim. An individual Settlement Class Member's payment may vary depending on the number of shares represented by the claims submitted, the purchase price for common stock purchased by the Settlement Class Member, and whether that stock was held at the end of the Settlement Class Period or sold during the Settlement Class Period. The terms of the Proposed Settlement are set forth in the Stipulation. The Plan of Allocation of the Settlement Fund provides the manner whereby the Settlement Fund shall in the future be distributed to Authorized Claimants.

Further, following this Court's preliminary approval of the Settlement, the IMAX Defendants shall seek the an Order amending the definition of the Canadian class to exclude from the Canadian class all Class Members who have not opted out of this Settlement. This Settlement is conditioned on the entry of such an order amending the definition of the Canadian class and that order becoming final and unappealable. In the event the Canadian Order is not entered or the Canadian Order is reversed on final appeal, the Parties shall revert to their litigation positions immediately prior to the execution of the MOU including, but not limited to, with respect to class certification.

## IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Lead Plaintiff respectfully submits that the Proposed Settlement achieves a result that is fair, reasonable, and adequate and readily meets the criteria applicable at preliminary approval. The Proposed Settlement was the result of months of arm's-length negotiations among experienced counsel for numerous parties. There is also no preferential treatment for any class representative or segment of the Settlement Class.

Under Fed. R. Civ. P. 23(e), a class action cannot be settled without the approval of the Court. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Approval of a proposed settlement is a matter within the broad discretion of the district court. *See In re Warner Comms. Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986). The procedure for approving a class action settlement consists of two steps: (1) a preliminary fairness evaluation; and (2) a final approval order issued after notice of the settlement is disseminated and a hearing to consider the fairness of the proposed settlement has been held. *See e.g. In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005); *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 143-44 (E.D.N.Y. 2000).

"In terms of the overall fairness, adequacy and reasonableness of the settlement, a full fairness analysis is unnecessary at this [preliminary approval] stage." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). Rather, "preliminary approval is appropriate where the proposed settlement is merely within the range of possible approval." *Id.* "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to

class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted. *In re NASDAQ*, 176 F.R.D. at 102.

"If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *In re Initial Pub. Offering*, 226 F.R.D. at 191. Class members may then present arguments and evidence for and against the terms of the settlement before the court decide whether the settlement are fair, reasonable and adequate. *Id.*

The Proposed Settlement bears all of the marks of an arm's length transaction. No special consideration was given to the Lead Plaintiff, nor is any group within the Settlement Class obtaining any special benefit. In addition, there is no suggestion that the integrity of the negotiating process might have been compromised by any expectation of excessive compensation to Counsel for Lead Plaintiff. In sum, nothing in the course of the negotiations or the substance of the agreement indicates that the Proposed Settlement is outside the range of possible approval.

Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004). Counsel for Lead Plaintiff support the Proposed Settlement on the grounds, among other things, that acceptance of the cash settlement consideration is the best interest of Lead Plaintiff and Settlement Class, after considering (i) the benefits that Lead Plaintiff and the Settlement Class will receive from the Proposed Settlement; (ii) the attendant risks of litigation; and (iii) the desirability of permitting the Proposed Settlement to be consummated as provided by the terms of the Stipulation. The arm's length nature of the negotiations, the participation of experienced advocates throughout the process, and

no obvious deficiencies in the settlement terms, such as unduly preferential treatment to certain members of the class, all support the conclusion that the Proposed Settlement is fair, reasonable and adequate to the Settlement Class.

The Proposed Settlement achieves a result that is fair, reasonable, adequate, and worthy of judicial approval. Counsel for Lead Plaintiff urge preliminary approval of the Proposed Settlement based upon its experience, its knowledge of the strengths and weaknesses of the case, the likely recovery at trial, and all other factors considered in evaluating proposed class action settlements. Counsel for Lead Plaintiff also requests preliminary approval of the settlement in light of the fact that public interest favors settling litigation, particularly class actions such as this. *See Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001).

## V. THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED

Prior to granting preliminary approval of a settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632 (2004). Courts often provisionally certify the class along with preliminary approval of the settlement. *See In re Stock Exchs. Options Trading Antitrust Litig.*, 99 Civ. 0962 (RCC), 2005 U.S. Dist. LEXIS 13734, at *16 (S.D.N.Y. July 8, 2005); *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 347 (S.D.N.Y. 2005).

Lead Plaintiff seeks to certify a class solely for purposes of the Proposed Settlement. The Class is defined as all persons and entities who purchased or otherwise acquired IMAX shares on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive. Excluded from the Class are the Defendants in the U.S. Action and Canadian Action, members of those Defendants' immediate families, all individuals who are either current officers and/or director of any

Defendant, or who served as officers and directors of any Defendant at any time during the Class Period.

Federal Rule of Civil Procedure 23(a) sets forth the requirements for class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, for a class action to be maintainable, it must satisfy one of the subsections of the Federal Rules of Civil Procedure 23(b). In the present Action, Rule 23(b)(3) is applicable. Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement is readily met in securities fraud cases. *See Amchem Prods.*, 521 U.S. at 625.

### A. <u>The Requirement of Numerosity is Satisfied</u>

In order to satisfy the numerosity requirement of Rule 23(a)(1), the class must be so large that joinder of all members would be impracticable. The numerosity requirement does not mandate that joinder of all parties be impossible -- only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate. *Central States Se. and Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is generally presumed when the proposed class would have at least 40 members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (*citing* 1 Newberg On Class Actions 2d, § 3.05 (1985 ed.)); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226

F.R.D. 456, 466 (S.D.N.Y. 2005). Moreover, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *Vivendi*, 242 F.R.D. at 84 (*quoting Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 U.S. Dist. LEXIS 25927, 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004)); *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 280-81 (S.D.N.Y. 2002) (*citing PaineWebber*, 171 F.R.D. at 123)); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 115 (S.D.N.Y. 2008).

This Court has already determined that the requirements of numerosity have been satisfied in this action. *See In re IMAX Sec. Litig.*, 272 F.R.D. 138, 146 (S.D.N.Y. 2010). Throughout the Class Period, IMAX's common stock was actively traded on the NASDAQ in a well-developed and efficient market. Lead Plaintiff believes there are, at a minimum, thousands of members of the Class. There are over 40 million shares of IMAX common stock issued and outstanding and, during the Class Period, there were hundreds of millions of shares of IMAX common stock traded. Approximately 84 percent of those shares were traded on the NASDAQ.

**B. <u>The Requirement of Commonality is Satisfied</u>**

A single common question can satisfy the commonality element of Fed. R. Civ. P. 23(a)(2). *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). The commonality requirement is generally considered a low hurdle that "has been applied permissively" by courts in the context of securities fraud litigation. *See Vivendi*, 242 F.R.D. at 84. "The critical inquiry is whether the common questions are at the core of the cause of action alleged." *Labbate-D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996). Here, this Court has already determined that the requirements of commonality have been

satisfied. *IMAX*, 272 F.R.D. at 147. Among these questions are: a) whether the federal securities laws were violated by Defendants' acts as alleged herein; (b) whether the SEC filings, press releases, reports and other public statements made by Defendants and disseminated to the investing public during the Class Period contained material misstatements or omitted to state material information; (c) whether and to what extent the Company's financial statements failed to comply with accounting principles during the Class Period; (d) whether PwC's audits of the Company's financial statements during the Class Period were conducted in accordance with generally accepted auditing standards ("GAAS") and the standards of the Public Company Accounting Oversight Board ("PCAOB"); (e) whether the market price of the Company's common stock during the Class Period was artificially inflated due to the materially misleading statements issued by Defendants; (f) whether Defendants acted with scienter in failing to inform investors of material facts and in issuing false and misleading financial statements; (g) whether reliance may be presumed pursuant to the fraud-on-the-market rule; and (h) whether the members of the Class have sustained damages as a result of the misconduct complained of herein, and if so, what is the proper measure of damages.

Courts have held that repeated misrepresentations of the sort alleged here satisfy the commonality requirement. *See e.g. In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374-75 (S.D.N.Y. 2000). Indeed the commonality of shareholder claims in a securities fraud class action is self-evident. *Metge v. Baehler*, 77 F.R.D. 470, 474-75 (S.D. Iowa 1978) ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the

issue may profitably be tried in one suit.") (*quoting Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)). Accordingly, there are common questions of law and fact sufficient to satisfy Rule 23(a)(2).

### C. The Requirement of Typicality is Satisfied

Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson*, 267 F.3d at 155; *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, No. CV-04-2195, 2006 U.S. Dist. LEXIS 31130, at *14 (E.D.N.Y. May 18, 2006). The focus of the typicality inquiry in a securities class action is the defendants' behavior. *See In re IGI Sec. Litig.*, 122 F.R.D. 451, 456 (D.N.J. 1988) ("it is the defendants' course of conduct . . . upon which the court must focus in determining typicality.") (emphasis in original). Lead Plaintiff stands in the same position as do other investors who acquired IMAX common shares during the Class period. The market prices of IMAX stock reflected uniform, public statements, made in press releases and SEC filings that Lead Plaintiff has alleged contained material misrepresentations concerning IMAX's revenue recognition practices. Lead Plaintiff's claims and the claims of the Class members arise out of the same conduct by Defendants, are based on the same legal theories and focus on precisely the same misstatements and omissions from the same documents. *In re Scor Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 570-71 (S.D.N.Y. 2008) (plaintiffs' securities fraud claims were typical where all claims arose from "the same course of events, namely, the alleged series of misleading or fraudulent statements made by the Defendants, and the subsequent effect of those statements on the market for" the company's stock, and all potential class members' claims were

based on the same legal theories under Sections 10(b) of the Exchange Act). Lead Plaintiff's claims are thus typical of those of the Settlement Class.

### D. The Requirement of Adequate Representation is Satisfied

The final requirement of Rule 23(a) is adequacy of representation. To meet the adequacy requirement, "the representatives' interests must not conflict with the class members' interests, and . . . the representatives and their attorney must be able to prosecute the action vigorously." *In re Livent Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Both requirements are met here.

First, the interests of Lead Plaintiff are not antagonistic to those of the Class. Lead Plaintiff, like the other Class members, has been damaged as a result of the purchase of IMAX share at prices alleged to have been affected by alleged false and misleading statements made by Defendants and has been committed to vigorously prosecuting the claims asserted. There are no unique defenses which apply only to Lead Plaintiff. The interests of the other members of the Class, therefore, have been and will continue to be protected by Lead Plaintiff. Moreover, the respective claims of Lead Plaintiff and the Class arise from the same wrongful conduct, involve the same legal theories, and require the same proof. See *Livent*, 210 F.R.D. at 516-17 ("The commonality and typicality requirements blend together in determining whether the representative plaintiffs' claims are typical enough of the classwide claims that the representatives will adequately represent the class.") (citations and quotation marks omitted).

Second, the requirement of adequacy of representation is met by the qualifications of Counsel for Lead Plaintiff herein. Lead Counsel are experienced in securities litigation and have successfully prosecuted numerous securities class actions in courts throughout the United States

and in this Circuit. Counsel for Lead Plaintiff have vigorously pursued this action to a favorable resolution.

### E. The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied

To certify a class under Rule 23(b)(3), a court must find that the common issues of fact and law predominate over individual issues. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). To satisfy this requirement, it must be shown that the issues subject to generalized proof predominate over the issues subject to only individualized proof. *Id.* at 136. The predominance requirement is "readily met" in many securities fraud actions. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 171 (S.D.N.Y. 2007); In *re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 288 (S.D.N.Y. 2003) (*quoting Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). As discussed above, Lead Plaintiff alleged that Defendants engaged in a common course of fraudulent conduct to artificially inflate the price of IMAX stock. Because liability can be determined on a class-wide basis, and therefore, the issues common to the Class predominate over any individual issues, the predominance requirement of Rule 23(b)(3) is satisfied. *See In re Visa Check/MasterMoney*, 280 F.3d at 139; *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 127 (S.D.N.Y. 2001).

Rule 23(b)(3) also requires that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Courts have held that "[s]ecurities suits easily satisfy the superiority requirement." *Darquea v. Jarden Corp.*, 06 Civ. 722 (CLB), 2008 U.S. Dist. LEXIS 17747, at *14 (S.D.N.Y. Mar. 6, 2008).

> Most violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient. Moreover, although a large number of individuals

> may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*Id.* (internal citation omitted). Here, potential Class Members may number in the thousands and are dispersed throughout the country. In addition, most of those injured have not been damaged to a degree where it would be cost-effective for them to seek recovery of their own. *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999). Accordingly, certification of the Settlement Class for purposes of the Proposed Settlement is appropriate.

## VI. THE NOTICE PROGRAM IS APPROPRIATE

Under Rule 23(c)(2)(B), this Court is to direct to the members of the Class, "the best notice practicable under the circumstances, including individual notice to all members who can be identified though reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The form of notice must fairly apprise the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982); *Reade-Alvarez*, 2006 U.S. Dist. LEXIS 31130, at *23. The standard for the adequacy of settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005).

Here, the proposed notice program has been specifically geared to reaching all members of the Settlement Class, including all Canadian citizens who purchased IMAX shares on the NASDAQ. As set forth in the Stipulation, notice to the Class shall be given by mailing a notice to all Settlement Class Members who can be identified with reasonable effort (the "Mailed Notice"). That effort will include a direct mailing to shareholders and brokers or other nominees who purchased IMAX shares on behalf of others. A summary notice will be published (the

"Summary Notice"), substantially in the forms of Exhibits B to the Stipulation, in *The Wall Street Journal* and the *New York Times*, as well as in three Canadian newspapers selected in an effort to reach as many Canadian purchasers as possible. One of the summary notices will be in French and all notices will indicate that a French translation is available on the settlement website. The notice program also encompasses a dedicated website which will contain the Complaint, the Stipulation, the Notice and other publicly filed documents. Similar documents will be available on IMAX's and Lead Counsel's websites. Class counsel will also issue press release over a national newswire in a form substantially similar to the Summary Notice. Both the Mailed Notice and Summary Notice include the general terms of the Proposed Settlement set forth in the Stipulation, the definition of the class certified, the procedure by which persons who otherwise would be Members of the Settlement Class may request to be excluded from the Settlement Class, and the binding effect of any judgment rendered in the Action with respect to Defendants. The date and time of the Settlement Hearing will be added to the Mailed Notice and Summary Notice before they are sent to the Settlement Class Members. Importantly, the Mailed Notice also describes the Canadian Action and the effect of a Class Member's decision to exclude oneself from the Proposed Settlement.

Lead Plaintiff believes that this notice program is reasonable and the best notice practicable under the circumstances to provide due, adequate, and sufficient notice to all persons entitled to be provided with notice, and as meeting the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution.

## CONCLUSION

For the reasons set forth above, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Proposed Settlement and enter the proposed Preliminary Order, submitted herewith as Exhibit A to the Stipulation.

Dated: January 26, 2012

Respectfully submitted,

ABBEY SPANIER RODD & ABRAMS, LLP

By: _/s/ Richard B. Margolies

Arthur N. Abbey
aabbey@abbeyspanier.com
Karin E. Fisch
kfisch@abbeyspanier.com
Richard B. Margolies
rmargolies@abbeyspanier.com
212 East 39th Street
New York, NY 10016
(212) 889-3700

*Counsel for Lead Plaintiff*