# EXHIBIT A
(Part 2)

# EXHIBIT E

**EXHIBIT E**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**[PROPOSED] FINAL SETTLEMENT APPROVAL ORDER**

BUCHWALD, D. J.,

This matter having come before the Court for hearing on June 14, 2012, pursuant to the Court's Amended Preliminary Approval Order dated _____, 2012, on the application of the Parties for approval of the Settlement set forth in the Stipulation and Agreement of Settlement Between Class Members and IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble and PricewaterhouseCoopers LLP, an Ontario Limited Liability Partnership, dated January 26, 2012, as amended on March 20, 2012 (the "Amended Stipulation"), and due and adequate notice having been given to the Class as required in the Amended Preliminary Approval Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed and good cause appearing therefore;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Amended Stipulation, and, except where stated otherwise, all capitalized terms used herein have the same meanings as set forth in the Amended Stipulation.

2. This Court has jurisdiction over the subject matter of the Class Action and over all members of the Class.

3. The notice given to the Class of the proposed Settlement and the other matters set forth in the Amended Stipulation was the best notice practicable under the circumstances, including individual notice to all members of the Class who could be identified through reasonable effort. Said notice provided due and adequate notice of these proceedings and of the matters set forth in the Amended Stipulation, including the proposed Settlement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and due process. Members of the class have been offered a full opportunity to object to the proposed Settlement and to participate in the hearing thereon. Thus, it is hereby determined that all members of the Class who did not elect to exclude themselves by proper written communication postmarked or delivered by hand to the Administrator on or before ____________, 2012, as required per the Notice, Summary Notice (each as defined in the Amended Preliminary Approval Order), and the Amended Preliminary Approval Order, will be bound upon entry of final judgment.

4. The Settlement is approved as fair, reasonable and adequate, within the meaning of Rule 23, and in the best interests of the Class. The Parties are directed to consummate the Settlement in accordance with the terms and provisions of the Amended Stipulation.

5. The Court finds that the Complaint, and the complaints filed by Plaintiffs in the Actions, were filed on a good faith basis in accordance with the Private Securities Litigation Reform Act of 1995 and Rule 11 of the Federal Rules of Civil Procedure.

6. The Court reaffirms, solely for the purposes of the Amended Stipulation and Settlement, that all elements for maintenance of the Class Action as a Rule 23 class action have been met, and the Court confirms certification of the Class solely for the purposes of the Amended Stipulation and Settlement. Specifically: the Class is ascertainable; the Class satisfies

the numerosity requirement of Rule 23(a)(1); there are common issues of fact and law sufficient to satisfy Rule 23(a)(2); the claims of the Lead Plaintiff are typical of the claims of absent members of the Class, satisfying Rule 23(a)(3); the Lead Plaintiff is an adequate representative of the Class, satisfying Rule 23(a)(4); common issues predominate over individual issues, satisfying Rule 23(b)(3); and the settlement is a superior method of proceeding in this matter, satisfying Rule 23(b)(3).

7. The Class Action will be dismissed upon entry of final judgment, which pursuant to the Amended Stipulation will occur after the Canadian Order becomes final and unappealable.

SO ORDERED:

Dated: ____________ ___, 2012
New York, New York

______________________________
Naomi R. Buchwald
United States District Judge

# EXHIBIT F

**EXHIBIT F**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

# [PROPOSED] JUDGMENT DISMISSING CLAIMS AGAINST IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, KATHRYN A. GAMBLE AND PRICEWATERHOUSECOOPERS LLP

WHEREAS, a putative class action (the "Class Action") is pending in this Court as part of a consolidated action styled *In re IMAX Corporation Securities Litigation*, Civil Action No. 06 CIV. 6128 (NRB); and

WHEREAS, the Parties, in accordance with a Stipulation and Agreement of Settlement dated as of January 26, 2012, and amended as of March __, 2012 (the "Amended Stipulation"), which, together with the Exhibits annexed thereto and the First Supplemental Agreement and the Second Supplemental Agreement identified to the Court pursuant to of the Federal Rule of Civil Procedure Rule 23(e)(2), sets forth the terms and conditions for a proposed Settlement of the Class Action and for dismissal of the Class Action and the Released Claims against IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble and PricewaterhouseCoopers LLP, an Ontario Limited Liability Partnership (the "Defendants") with prejudice and without costs upon the terms and conditions set forth therein;

WHEREAS, all defined terms contained herein shall have the same meanings as set forth in the Amended Stipulation;

WHEREAS, the Court entered a Final Settlement Approval Order on _____, 2012; and

WHEREAS, the Canadian Order is now final and unappealable and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed and good cause appearing therefore;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Court finds that the Complaint was filed, and the actions in support thereof were taken, on a good faith basis in accordance with Section 21D(c)(1) of the Private Securities Litigation Reform Act of 1995 and Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information.

2. The Class Action, the Complaint, and the claims asserted therein by Class Members are hereby dismissed as against the Defendants in their entirety on the merits and with prejudice, in full and final discharge of any and all claims which were or could have been asserted under the laws of any jurisdiction, as against the Defendants, without fees or costs.

3. The Lead Plaintiff and other Class Members are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, in this Class Action or any other action or proceeding, including in any federal or state court, or in any other court, arbitration proceeding, administrative proceeding, or other tribunal or forum in the United States or elsewhere, any Released Claim against any of the Defendant Released Parties, regardless of whether any such Lead Plaintiff and/or other Class Member ever seeks or obtains any distribution from the Settlement Fund by any means..

4. The Defendants are hereby permanently barred and enjoined from instituting, commencing or prosecuting, in this Class Action or any other action or proceeding, including in any federal or state court, or in any other court, arbitration proceeding, administrative

proceeding, or other tribunal or forum in the United States or elsewhere, any claims against the Plaintiff Releasees relating to the institution or prosecution of the Class Action.

5. The Released Claims against each and all of the Released Parties shall be fully, finally and forever released, relinquished, discharged and dismissed with prejudice and on the merits, without costs to any party, upon entry of this Judgment. In addition, upon entry of this Judgment, any and all claims for contribution and/or indemnity (whether direct, implied, or equitable) by any Released Party against any other Released Party relating to any Released Claim or to any claim by Settlement Class Members under federal, state or other law that has been or could have been asserted relating to transactions in IMAX securities during the Class Period shall be barred.

6. Neither the Stipulation, Amended Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation, Amended Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim or of any wrongdoing or liability of the Defendants; or (ii) is or may be deemed to be or may be used as an admission or evidence of the truth of any fact alleged or of any liability, fault or omission of the Defendants in any civil, criminal or administrative proceeding in any court, arbitration proceeding, administrative agency or other forum or tribunal, other than in such proceedings as may be necessary to consummate or enforce the Amended Stipulation, the Settlement or the Judgment.

7. Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over the Parties for all matters relating to this Class Action, including: (a) the implementation of the Settlement; (b) any award of the Settlement Fund,

including interest earned thereon; and (c) all further proceedings concerning the administration, consummation and enforcement of the Amended Stipulation, the Settlement and this Judgment.

8. The finality of this Judgment shall not be affected, in any manner, by rulings the Court may make concerning the Plan of Allocation and/or Lead Counsel's application for an award of attorneys' fees and expenses. There shall be no distribution of any of the Net Settlement Fund to any Class Member until a Plan of Allocation is finally approved and is affirmed on appeal and/or is no longer subject to review by appeal or certiorari, and the time for any petition for rehearing, appeal, or review, by certiorari or otherwise, has expired.

9. In the event that the Effective Date does not occur, this Judgment shall be rendered null and void and shall be vacated *nunc pro tunc*.

10. The Court finds that Lead Plaintiff and Lead Counsel adequately represented the Class for purposes of negotiating, entering into, and implementing the Settlement.

11. This Judgment is a final judgment in the Class Action as to all claims among the Parties. This Court finds that there is no just reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

12. Nothing in this Judgment shall preclude any action to enforce the terms of the Amended Stipulation or this Judgment.

13. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Amended Stipulation.

SO ORDERED:

Dated: _________ ___, 2012
New York, New York

______________________________
Naomi R. Buchwald
United States District Judge

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**STIPULATION AND AGREEMENT OF SETTLEMENT BETWEEN SETTLEMENT CLASS MEMBERS AND IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, KATHRYN A. GAMBLE AND PRICEWATERHOUSECOOPERS LLP**

This Stipulation and Agreement of Settlement (the "Stipulation") is entered into between: (i) the Lead Plaintiff,[1] the Class and (ii) the Defendants, all by and through the undersigned attorneys.

The Settlement and compromise of the Class Action provided herein is intended by the Parties to fully and finally compromise, resolve, discharge and settle the Released Claims subject to the terms and conditions set forth below.

**WHEREAS:**

**The Litigation**

A. From August 11, 2006 through September 18, 2006, eight lawsuits were filed (the "Actions")[2] against all or certain of the Defendants in the United States District Court for the Southern District of New York alleging that IMAX made material misrepresentations and omissions regarding revenue recognition for theater systems in violation of the federal securities laws.

[1] Except where stated otherwise, all capitalized terms are defined in Section 1 of this Stipulation.

[2] The docket numbers of the Actions are as follows: 06 Civ. 6128 (NRB), 06 Civ. 6235 (NRB), 06 Civ. 6313 (NRB), 06 Civ. 6349 (NRB), 06 Civ. 6449 (NRB), 06 Civ. 6693 (NRB), 06 Civ. 7057 (NRB) and 06 Civ. 7162 (NRB).

B. On September 20, 2006, following the filings of the Actions, a lawsuit was filed in the Canadian Court against the IMAX Defendants (and other individuals) alleging, based on substantially identical facts to those alleged in the Actions, that, during the time period from February 17, 2006 through August 9, 2006 (the "Canadian Class Period"), IMAX made material misrepresentations and omissions regarding revenue recognition for theater systems.

C. The IMAX Defendants estimate that approximately 83.9 percent of the shares of IMAX securities at issue in the Canadian Action were purchased on the NASDAQ and those members of the Canadian Class (as defined in paragraph S) who purchased IMAX securities on the NASDAQ are also members of the U.S. Class. In addition, the U.S. Class includes persons who purchased IMAX securities on the NASDAQ from February 27, 2003 to February 17, 2006 (prior to the beginning of the Canadian Class Period), and after August 9, 2006, (after the Canadian Class Period) and are thus not members of the Canadian Class.

D. Pursuant to a January 17, 2007 Order of the Court, the Actions were consolidated, the Court appointed Westchester (the investment advisor for GS Master Trust, MSS Merger Arbitrage Fund, The Merger Fund, The Merger Fund VL and SphinX Merger Arbitrage Fund) as lead plaintiff and further approved the appointment of the law firm of Abbey Spanier Rodd & Abrams, LLP as lead counsel for the class.

E. On October 2, 2007, Westchester filed a Consolidated Amended Class Action Complaint against the Defendants in the United States District Court for the Southern District of New York. The Complaint alleged that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5, promulgated thereunder by the Securities and Exchange Commission. The Complaint asserted claims on behalf of all persons who purchased IMAX securities on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive, against the IMAX Defendants and PwC-Canada.

F. On December 10, 2007, the IMAX Defendants and PwC-Canada each filed motions to dismiss the Complaint on numerous grounds. On January 22, 2008, Westchester filed its opposition to Defendants' motions to dismiss. Defendants filed their reply briefing on February 11, 2008.

G. On August 5, 2008, the Court heard oral argument on the Defendants' motions to dismiss the Complaint.

H. On August 12, 2008, the Court requested that the parties file supplemental submissions on the pending motions to dismiss the Complaint. The Defendants and Westchester submitted supplemental briefing on August 18, 2008.

I. On September 15, 2008, the Defendants' motions to dismiss were denied by the Court. Thereafter, Westchester commenced discovery, which included the production and review of hundreds of thousands of pages of documents and transcripts of depositions.

J. On October 31, 2008, Westchester filed plaintiffs' first motion for class certification.

K. On December 2, 2008, Lead Counsel, on behalf of Westchester, and counsel for the IMAX Defendants attempted to resolve this litigation through mediation. The Honorable E. Leo Milonas presided over the mediation which concluded without resolution.

L. On December 3, 2008, the Second Circuit decided *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), holding that an investment adviser that did not actually purchase the securities at issue lacked standing to bring a securities fraud claim on behalf of its clients because it did not suffer an injury in fact.

M. Relying on the Second Circuit's decision in *Huff*, on February 18, 2009, Snow Capital Investment Partners, L.P. ("Snow Capital") requested a pre-motion conference in

connection with its anticipated motion for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff.

N. On February 23, 2009, Defendants filed oppositions to Westchester's motion for class certification.

O. On March 13, 2009, the Court denied without prejudice Westchester's motion for class certification pending resolution of Snow Capital's anticipated motion for reconsideration of the Court's January 17, 2007 Order.

P. On April 3, 2009, Snow Capital moved for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff. Westchester filed its opposition on April 24, 2009 and Snow Capital replied on May 1, 2009.

Q. On June 29, 2009, the Court determined that under *Huff*, Westchester, an investment advisor, lacked Article III standing and granted Snow Capital's motion and appointed it lead plaintiff and its counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), as lead counsel.

R. On July 14, 2009, Westchester filed a Petition for Writ of Mandamus with the United States Court of Appeals for the Second Circuit seeking reversal of the Court's June 29, 2009 Order. Robbins Geller filed an answer to Westchester's Petition on July 31, 2009. Westchester filed a reply brief in support of its Petition on August 14, 2009. Westchester's Petition was denied by the Second Circuit on October 1, 2009.

S. On December 14, 2009, the Canadian Court certified the Canadian Action on behalf of investors worldwide who purchased IMAX securities on or after February 17, 2006 and held some or all of those securities on August 9, 2006 (the "Canadian Class"). *See Silver v. IMAX Corporation*, [2009] O.J. No. 5585, 2009 ON.C. LEXIS 4847 (December 14, 2009, Sup. Ct. J.).

T. On April 22, 2010, Snow Capital filed its motion for class certification. On June 10, 2010, the Defendants filed oppositions to Snow Capital's class certification motion. Snow Capital filed its reply in further support of the motion on July 30, 2010. The Court did not hear oral argument on the motion.

U. On December 20, 2010, this Court issued a Memorandum and Order that denied Snow's motion for class certification, held that this case could not proceed with Snow Capital as class representative, and directed that new applications for lead plaintiff be filed.

V. On January 10, 2011, the Merger Fund moved to be appointed lead plaintiff for the class. On January 12, 2011, Ironworkers St. Louis District Counsel Pension Fund also moved to be appointed lead plaintiff for the class.

W. On April 14, 2011, the Court issued an Order naming the Merger Fund as lead plaintiff and re-appointing Abbey Spanier Rodd & Abrams, LLP as lead counsel.

X. On May 2, 2011, Lead Counsel was informed by the IMAX Defendants that the Canadian Court would address the form of notice to be provided to the class in the Canadian Action. That day, Lead Counsel sent a letter to the Canadian Court expressing concerns about the form of notice. Lead Counsel suggested that the issuance of the notice in the Canadian Action be deferred until class certification was decided in the U.S. Action. The next day, Lead Counsel advised the Canadian Court of its intention to move to intervene in the Canadian Action.

Y. On May 13, 2011, Lead Counsel moved to intervene in the Canadian Action and submitted an affidavit to the Canadian Court expressing its opinions regarding the proposed notice to be disseminated in the Canadian Action. On May 31, 2011, counsel for the plaintiffs in the Canadian Action submitted its motion record in response to Lead Plaintiff's motion to intervene. Further motion materials continued to be served and filed thereafter. The

intervention motion and the motion to approve the proposed notice were argued before the Canadian Court on September 9 and 13, 2011, and further requests were made by the Canadian Court on January 12, 2012. The motions remain outstanding.

Z. On June 3, 2011, Lead Plaintiff filed its motion for class certification. On July 1, 2011, IMAX and PwC-Canada each filed an opposition to Lead Plaintiff's motion. On August 3, 2011, Lead Plaintiff filed its reply in further support of its motion.

AA. The IMAX Defendants, while expressing their willingness to agree to a global settlement of both the U.S. Action and the Canadian Action, have also expressed to Lead Counsel and Robbins Geller in the U.S. Action and counsel to the lead plaintiffs in the Canadian Action, that they would be willing to entertain a settlement demand in either action, while continuing to dispute vigorously the claims of the remaining shareholders in the other action.

BB. From time to time, Lead Counsel, Robbins Geller, and Canadian Lead Counsel have made demands on Defendants, separately or globally, to settle the actions.

CC. Following the appointment of Lead Plaintiff, Lead Counsel and Defendants' Counsel re-commenced settlement discussions. Between April 2011 and November 2011, the parties met numerous times, both in person and via conference call, in an effort to negotiate a settlement. Those efforts resulted in the parties executing a Memorandum of Understanding on November 2, 2011 (the "MOU") to settle the litigation.

DD. On December 6, 2011, the Parties entered into a stipulation in which Lead Plaintiff agreed to withdraw its motion for class certification in light of the proposed settlement of the U.S. Action. The Parties agreed that if any condition to the settlement is not satisfied, Lead Plaintiff would have the right to refile its motion upon five days written notice to Defendants and that consistent with Judge Buchwald's ruling, Defendants would be permitted to

take the deposition of Dr. John Finnerty regarding his class certification reply declaration and file a sur-reply brief with respect thereto.

EE. Lead Counsel have conducted an extensive investigation relating to the allegations pertaining to each defendant in the U.S. Action, the alleged damages suffered by the Class and the defenses asserted by the Defendants in the U.S. Action. In connection therewith, Lead Counsel reviewed and analyzed hundreds of thousands of pages of documents produced by Defendants, reviewed the transcripts of the testimony of the Individual Defendants and 11 other individuals conducted by the Securities and Exchange Commission and 11 transcripts of depositions conducted by the plaintiffs in the Canadian Action which included the testimony of a member of defendant PwC-Canada; conducted confirmatory discovery and consulted extensively with experts retained to advise on the issues pertinent to Lead Plaintiff's claims in the U.S. Action, including accounting issues and the damages that Lead Plaintiff would seek to prove at a trial.

FF. In the absence of a settlement demand from Canadian lead counsel on substantially the same terms as the Settlement which provides substantially the same compensation for those members of the Canadian Class who do not participate in the Settlement, the IMAX Defendants have expressed their intention to continue to vigorously defend the Canadian Action up through to trial.

GG. Lead Plaintiff and Lead Counsel believe that the proceedings described above provide an adequate and satisfactory basis for the Settlement described herein.

**Benefits of the Settlement to the Class**

HH. Lead Plaintiff and Lead Counsel believe that the Settlement provides an excellent monetary recovery for the Class Members based on the claims asserted, the evidence

developed, the defenses asserted, and the damages that might be proven against the Defendants in the U.S. Action.

II. Lead Plaintiff and Lead Counsel further recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the U.S. Action against the Defendants through discovery, summary judgment, trial and appeals. They have also considered the uncertain outcome and the risk of any litigation, especially in complex litigation such as this U.S. Action, as well as the delay in recovery that would result from prosecuting this case through trial and appeals. They are further mindful of the inherent problems of proving their claims and addressing Defendants' possible defenses to the alleged federal securities law violations and therefore believe that it is desirable that the Released Claims be fully and finally compromised, settled and resolved with prejudice and enjoined as set forth herein. Based upon their evaluation, Lead Plaintiff and Lead Counsel have determined that the Settlement set forth in this Stipulation is fair, reasonable and adequate and in the best interests of the Lead Plaintiff and the Class Members, and that it confers substantial benefits upon the Class Members.

JJ. The Defendants have denied that they have committed any act or omission giving rise to any liability and/or violation of law, in any jurisdiction, and state that they are entering into this Settlement solely to eliminate the uncertainties, burden and expense of further protracted litigation. The Parties further agree that neither the Stipulation, nor the Settlement, nor any of their terms, nor any press release or other statement or report by the Parties or by others concerning this Stipulation or the Settlement or their terms, shall constitute an admission or finding of wrongful conduct, acts or omissions on the part of any Released Party, or be admissible as evidence of any such wrongful act or omission in any proceeding, including but not limited to arbitrations, other than a proceeding to enforce the terms of the Stipulation, for any purpose whatsoever.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED**, by (i) Lead Plaintiff, for itself and on behalf of the Class Members, and (ii) the Defendants, that subject to the approval of the Court, the U.S. Action shall be settled, compromised and dismissed as to the Parties, on the merits and with prejudice and the Released Claims shall be finally and fully compromised, settled, released and dismissed as to the Released Parties, in the manner and upon the terms and conditions hereafter set forth:

**Definitions**

1. The following capitalized terms, used in this Stipulation, shall have the meanings specified below:

(a) "Administrator" means the Court-appointed notice and claims administrator.

(b) "Authorized Claimant" means any Class Member who submits a Proof of Claim that is allowed pursuant to the terms of this Stipulation.

(c) "Canadian Action" means the lawsuit filed by plaintiffs in the Canadian Court in *Silver v. IMAX Corp.*, Court File No. CV-06-3257-00. (Ontario Superior Court of Justice, Canada).

(d) "Canadian Court" means the Ontario Superior Court.

(e) "Canadian Order" means a final Order from a Canadian court that excludes, from the definition of the Canadian Class, all persons who do not opt out of this Settlement, if and when the Settlement is approved by final Order of the U.S. Court.

(f) "Class" or "Settlement Class" means all persons and entities who purchased or otherwise acquired IMAX shares on the NASDAQ from February 27, 2003 through July 20, 2007 (the "Class Period"), inclusive, excluding the Defendants in the U.S. Action and Canadian Action, members of those Defendants' immediate families, all individuals who are

either current officers and/or directors of any Defendant, or who served as officers and directors of any Defendant at any time during the Class Period.

(g) "Class Action" or "U.S. Action" means the Actions, consolidated by Order of the Court dated January 17, 2007.

(h) "Class Member" means a member of the Class who does not submit a timely and valid request for exclusion, substantially in the form required by the Notice attached hereto as Exhibit B or as otherwise approved by the Court, thereby opting out of the U.S Action.

(i) "Class Settlement Account" means the bank account maintained by Lead Counsel into which the Settlement Fund shall be deposited.

(j) "Complaint" means the October 2, 2007 Consolidated Amended Class Action Complaint filed by Westchester against the Defendants in the United States District Court for the Southern District of New York.

(k) "Counsel for the IMAX Defendants" means Cleary Gottlieb Steen & Hamilton LLP.

(l) "Counsel for defendant PwC-Canada" means Gibson, Dunn & Crutcher LLP.

(m) "Court" or "U.S. Court" means the United States District Court for the Southern District of New York.

(n) "Defendants" means the IMAX Defendants and PwC-Canada

(o) "Defendants' Counsel" means Counsel for the IMAX Defendants and Counsel for defendant PwC-Canada.

(p) "Effective Date" means the first day following the date on which the Judgment is finally affirmed on appeal and/or is no longer subject to appeal or certiorari, and the time for any petition for reargument, appeal, or review, by certiorari or otherwise, has expired.

For these purposes, an "appeal" shall not include an appeal of an order concerning only attorney's fees and/or expenses.

(q) "Escrow Agent" means Lead Counsel.

(r) "Fairness Hearing" is as defined in paragraph 5(c).

(s) "First Supplemental Agreement" is as defined in paragraph 14.

(t) "IMAX" means IMAX Corporation, and its respective present and former parents, subsidiaries, divisions and affiliates.

(u) "IMAX Defendants" mean defendants IMAX, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce and Kathryn A. Gamble.

(v) "Individual Defendants" means Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce and Kathryn A. Gamble.

(w) "Judgment" means the judgment to be entered in the Class Action pursuant to paragraph 7, below, of this Stipulation.

(x) "Lead Counsel" means Abbey Spanier Rodd & Abrams, LLP.

(y) "Lead Plaintiff" means The Merger Fund.

(z) "Net Settlement Fund" means the Settlement Fund less any applicable taxes, attorneys' fees, expert fees, costs and expenses, including those associated with notice to the Class and administration of the Settlement, approved by the Court.

(aa) "Notice and Administration Fund" means the fund consisting of a maximum of $250,000 from the Settlement Amount that may be used by Lead Counsel to pay the costs of notifying the Class, facilitating the filing of Proofs of Claim by Class Members, assisting Class Members in making their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class.

(bb) "Parties" means the Plaintiffs and the Defendants.

(cc) "Person" means any individual, corporation, partnership, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, government and any political subdivision thereof or any other type of business or legal entity, and the predecessors, heirs, successors and assigns of each of them.

(dd) "Plaintiff Releasees" is as defined in (mm)(ii).

(ee) "Plaintiffs" means the Lead Plaintiff and the Class, collectively.

(ff) "Plan of Allocation" means any plan or formula of allocation of the Net Settlement Fund, which plan or formula shall be proposed by Lead Plaintiff to be approved by the Court upon notice to the Class, or such other Plan of Allocation as the Court shall approve, whereby the Net Settlement Fund shall in the future be distributed to Authorized Claimants.

(gg) "Preliminary Approval Order" means the Order that Lead Plaintiff and Defendants will seek from the Court, as described in paragraph 4, below.

(hh) "Proof of Claim" means the submission to be made by Class Members, on the Proof of Claim and Release form, which shall be agreed upon by the Parties or as may be required by the Court.

(ii) "PwC-Canada" means defendant PricewaterhouseCoopers LLP, an Ontario Limited Liability Partnership.

(jj) "Released Parties" is as defined in (mm).

(kk) "Recognized Claim" is as defined in the Plan of Allocation, as set forth in Appendix I to Exhibit B.

(ll) "Released Claims" means:

(i) with respect to the Released Parties, the release by Lead Plaintiff and all Class Members of all claims that were alleged in the U.S. Action, or the Canadian Action, or that could have been alleged in the U.S. Action, the Canadian Action, or any

other proceeding, manner of action, actions, causes of action, suits, claims for sums of money, contracts, controversies, agreements, costs, damages, judgments and demands in law, contract, trust or equity, domestic or foreign, including claims under U.S. securities laws, U.S. federal laws, U.S. state laws, U.S. common law, Canadian securities laws, Canadian federal and provincial laws, and Canadian common law, and the laws of any other jurisdiction relating to transactions in IMAX securities during the Settlement Class Period or the subject matter and facts relating to the U.S. Action, including any acts, failures to act, omissions, misrepresentations, statements, misstatements, facts, events, transactions, occurrences or other subject matter set forth, alleged, embraced, encompassed or otherwise referred to in or related to the U.S. Action.

(ii) the claims that are to be released also include Unknown Claims and claims arising under the laws of any jurisdiction, including, without limitation, in the United States and in Canada, and Lead Plaintiff and all Class Members will waive and relinquish to the fullest extent possible any state, federal or foreign law defenses concerning the release of Unknown Claims. Defendants shall release Lead Plaintiff, all Class Members, and Lead Counsel, from any claims relating to the institution, prosecution, and settlement of the U.S. Action.

(mm) "Released Parties" means:

(i) with respect to the Defendants: the Defendants, their respective present and former parents, subsidiaries, divisions, affiliates and any PricewaterhouseCoopers member firm, the present and former employees, members, partners, principals, managers, officers and directors of each of them, the present and former attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers and agents of each of them, and the predecessors,

heirs, successors and assigns of each (together, the "Defendant Releasees"), and any Person or entity which is or was related to or affiliated with any Defendant Releasee or in which any Defendant Releasee has or had a controlling interest and the present and former employees, members, partners, principals, managers, officers, directors, attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers and agents of each of them (all, with the Defendant Releasees, the "Defendant Released Parties").

(ii) with respect to Plaintiffs: the Lead Plaintiff and all other Class Members, their respective present and former parents, subsidiaries, divisions and affiliates, the present and former employees, officers and directors of each of them, the present and former attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers and agents of each of them, and the predecessors, heirs, successors and assigns of each (together, the "Plaintiff Releasees"), and any Person or entity in which any Plaintiff Releasee has or had a controlling interest or which is or was related to or affiliated with any Plaintiff Releasee.

(nn) "Second Supplemental Agreement" is as defined in paragraph 10.

(oo) "Settlement" means the settlement of the Class Action between and among Lead Plaintiff (on behalf of itself and the Class Members) and the Defendants, as set forth in this Stipulation.

(pp) "Settlement Class Member" or "Member of the Settlement Class" means a Person who falls within the definition of the Settlement Class.

(qq) "Settlement Class Period" means the period beginning February 27, 2003 through July 20, 2007, inclusive.

(rr) "Settlement Amount" means twelve million dollars ($12,000,000.00) in cash.

(ss) "Settlement Fund" means the Settlement Amount less the Notice and Administration Fund.

(tt) "Tax Expenses" is as defined in paragraph 12.

(uu) "Taxes" is as defined in paragraph 11.

(vv) "Unknown Claims" means any Released Claims that Lead Plaintiff or any Class Member does not know of or suspect to exist in his, her or its favor at the time of the release of the Defendant Released Parties which, if known by him, her or it might have affected his, her or its Settlement with and release of the Defendant Released Parties, or might have affected his, her or its decision not to object to this Settlement or not to exclude himself, herself or itself from the Class. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Lead Plaintiff shall expressly waive, and each of the Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

Lead Plaintiff and Class Members may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff shall expressly, and each Class Member, upon the Effective Date,

shall be deemed to have, and by operation of the Judgment shall have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff acknowledges, and the Class Members shall be deemed to have acknowledged, and by operation of the Judgment shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

(ww) "Westchester" means Westchester Capital Management, Inc.

**Submission of the Settlement to Court for Approval**

2. After execution of the Stipulation, Lead Plaintiff and the Defendants shall apply to the Court for preliminary approval of the Settlement and for the scheduling of a hearing for consideration of final approval of the Settlement, approval of the Plan of Allocation and in Lead Counsel and Lead Plaintiff's discretion, an application for an award of attorneys' fees and expenses. The Parties and their counsel shall use their best efforts to obtain final Court approval of the Settlement.

3. Following the U.S. Court's preliminary approval of the Settlement, the IMAX Defendants shall seek the Canadian Order amending the definition of the Canadian Class, as defined above. The Settlement is conditioned on the entry of the Canadian Order and upon the Canadian Order becoming final and unappealable. The Fairness Hearing shall be conducted approximately ninety (90) days after Notice of the Settlement is disseminated, on a date and time to be determined by the U.S. Court. In the event the Canadian Order is not entered or the

Canadian Order is reversed on final appeal, the Parties shall revert to their litigation positions immediately prior to the execution of the MOU including, but not limited to, with respect to class certification. Notice of the Settlement of the U.S. Action shall be disseminated within seventy-five (75) days after the Canadian Court issues the Canadian Order.

4. The Parties have agreed upon the following documents to be submitted to the Court for its consideration along with this Stipulation: Proposed Preliminary Approval Order (Exhibit A); Notice of Pendency and Proposed Settlement of Class Action (Exhibit B); Proof of Claim and Release (Exhibit C); Summary Notice of Proposed Settlement of Class Action (Exhibit D); and Proposed Judgment Dismissing Claims Against the Defendants (Exhibit E).

5. The Parties shall jointly apply to the Court for entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A:

(a) preliminarily certifying the Class for settlement purposes;

(b) preliminarily approving the Settlement;

(c) setting a date for a hearing (the "Fairness Hearing"), upon notice to the Class, to: (i) consider whether the Settlement should be approved as fair, reasonable and adequate to the Class Members, and dismissing the claims of Lead Plaintiff and all Class Members against Defendants, as set forth in this Stipulation, on the merits and with prejudice; (ii) consider whether the Plan of Allocation is fair and reasonable and should be approved; and (iii) consider Lead Counsel's application, if any, for an award of attorneys' fees and payment of costs and expenses;

(d) setting the method of giving notice of the Settlement to the Class;

(e) approving the form of notice attached hereto as Exhibit B;

(f) approving the Proof of Claim and Release form attached hereto as Exhibit C;

(g) approving the summary form of notice attached hereto as Exhibit D;

(h) setting a period of time during which members of the Class may serve written objections to the Settlement or to the application for attorneys' fees and expenses;

(i) enjoining the prosecution of any action or claims that are subject to the release and dismissal contemplated by this Settlement by any Class Member, other than those actions (apart from the Class Action) now pending before the Court as part of *In re IMAX Corporation Securities Litigation*, 06 CIV. 6128 (NRB); and

(j) setting a period of time during which Class Members must file Proofs of Claim in order to participate in the distribution of the Net Settlement Fund.

6. The Parties hereby stipulate to certification of the Class, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, solely for the purposes of this Stipulation and Settlement.

7. At the Fairness Hearing, the Parties shall jointly request entry of a Judgment, substantially in the form attached hereto as Exhibit E, the entry of which is a condition of this Stipulation and Settlement:

(a) approving finally the Settlement as fair, reasonable and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

(b) confirming certification of the Class solely for purposes of this Stipulation and the Settlement, and finding that each element for certification of the Class is met, for these limited purposes;

(c) dismissing the U.S. Action and all of the claims asserted by Lead Plaintiff and all Class Members in the Complaint as to the Defendants without costs and with prejudice, and releasing the Released Claims as against each of the Released Parties;

(d) finding that the Complaint, and the complaints filed by Plaintiffs in the Actions, were filed on a good faith basis in accordance with the Private Securities Litigation Reform Act of 1995 and Rule 11 of the Federal Rules of Civil Procedure;

(e) permanently barring and enjoining the institution and prosecution, by Lead Plaintiff and other Class Members, of any action, suit, claim, or other proceeding, including arbitration, against the Released Parties in any federal or state court, the courts of Canada, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere asserting any Released Claims;

(f) reserving jurisdiction over the U.S. Action, including all further proceedings concerning the administration, consummation and enforcement of this Settlement;

(g) permanently barring, enjoining and finally discharging all claims as provided for in this Stipulation; and

(h) containing such other and further provisions consistent with the terms of this Settlement to which the Parties hereto expressly consent in writing.

8. At the Fairness Hearing, Lead Plaintiff may also request entry of an Order approving the Plan of Allocation. The Plan of Allocation proposed, or to be proposed, by Lead Plaintiff is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement. The Plan of Allocation is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular Plan of Allocation be approved. Any decision by the Court concerning the Plan of Allocation shall not affect the validity, enforceability or finality of this Stipulation and Settlement, and any modification of the Plan of Allocation by the Court shall not provide any of the Parties with the right to terminate the Settlement or impose an obligation on the Defendants to increase the consideration paid in connection with the Settlement. Any order

or proceedings relating to a request for approval of the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect or delay the effectiveness or finality of the Judgment and the release of the Released Claims.

9. At the Fairness Hearing, Lead Counsel may also request entry of an Order approving Lead Counsel's application for an award of attorneys' fees and expenses, consistent with the notice sent to members of the Class in connection with this Settlement. Any award of attorneys' fees and expenses to Lead Counsel shall be paid exclusively from the Settlement Fund. In no event shall Defendants otherwise be obligated to pay for such attorneys' fees and expenses. The attorneys' fees, expenses and costs, including the fees of experts and consultants, as awarded by the Court, shall be payable to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses, even if there is an appeal thereof, subject to the joint and several obligation of Lead Counsel to make appropriate refund repayments to the Settlement Fund as more particularly set forth below. In the event that the Effective Date does not occur, or the Judgment or the order making the fee and expense award is reversed or modified, or the Settlement is terminated, and in the event that any fee and expense award has been paid to any extent, then Lead Counsel shall, within ten (10) business days from receiving notice from the Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund, any fees, expenses and costs previously paid or otherwise transferred to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund, (a) in the full amount if the Effective Date does not occur or the Settlement is terminated, or (b) in such other amount corresponding to that portion of any fee and expense award that is reversed or modified. Lead Counsel, as a condition of receiving such fees and expenses, agrees that Lead Counsel is subject to the jurisdiction of the Court for the purpose

of enforcing the provisions of this paragraph. The disposition of Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses is not a material term of this Stipulation and it is not a condition of this Stipulation that such application be granted. Any disapproval or modification of the application for an award of attorneys' fees and reimbursement of expenses by the Court shall not affect the enforceability of the Stipulation, provide any of the Parties with the right to terminate the Settlement, or impose an obligation on the Defendants to increase the compensation paid in connection with the Settlement. The Defendants take no position as to the reasonableness of any application for attorneys' fees and costs made by Lead Counsel.

**Settlement Consideration**

10. In full and complete settlement of the U.S. Action and the Released Claims, the Defendants shall pay to Lead Plaintiff, for the benefit of the Class, the Settlement Amount as follows:

(a) The Defendants agree to collectively pay a total of $12,000,000.00 (the "Settlement Amount"), severally and not jointly, as apportioned in the amounts as set forth in a second supplemental agreement dated January 26, 2012 (the "Second Supplemental Agreement"), with no Party or Person having responsibility or liability whatsoever for any portion of the Settlement Amount attributed to any other Party or Person. Lead Counsel may use up to two hundred and fifty thousand dollars ($250,000.00) of that amount to pay the costs of notifying the Class, facilitating the filing of Proofs of Claim by Class Members, assisting Class Members in making their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class prior to the entry of Judgment. Assuming the approval of the Court for payment of this sum to Lead Counsel for purposes of the Notice and Administration Fund, the Defendants shall collectively advance the $250,000.00 for deposit into the Notice and Administration Fund,

severally and not jointly, as apportioned in the amounts as set forth in the Second Supplemental Agreement, in an account identified in writing by Lead Counsel, within the later of ten (10) business days of entry of the Preliminary Approval Order or the identification of the account by Lead Counsel. The $250,000.00 in the Notice and Administration Fund is part of, and not in addition to, the Settlement Amount to be paid by the Defendants.

(b) Within twenty (20) business days after the Court grants the Preliminary Approval Order, the Defendants shall pay into the Class Settlement Account the Settlement Fund.

11. The Settlement Fund shall be deposited into an interest-earning Class Settlement Account designated by Lead Plaintiff. The parties agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 and the Administrator shall be responsible for filing tax returns for the Class Settlement Account and paying from the Class Settlement Account any taxes, including any interest or penalties thereon (the "Taxes"), owed with respect to such Class Settlement Account. In addition, the Administrator, as required, shall do all things that are necessary or advisable to carry out the provisions of this paragraph.

12. All Taxes arising with respect to the income earned by the Settlement Fund, including any Taxes or tax consequences that may be imposed upon the Defendants with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes and any expenses and costs incurred in connection with the payment of Taxes pursuant to this paragraph (including without limitation, expenses of tax attorneys and/or accountants and mailing, administration and distribution costs, expenses relating to the filing or the failure to file all necessary or advisable tax returns and Taxes imposed on amounts payable to or on behalf of

the Defendants pursuant to this paragraph 11 (the "Tax Expenses"), shall be paid out of the Settlement Fund. The Defendants shall not have any liability or responsibility for the Taxes or the Tax Expenses. The Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the distributions and payments therefrom, including, without limitation, the tax returns described in Treas. Reg. § 1.468B-2(k), and to the extent applicable, Treas. Reg., § 1.468B-2(l). Such tax returns shall be consistent with the terms herein and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. The Administrator shall also timely pay Taxes and Tax Expenses out of the Settlement Fund, and is authorized to withdraw, without prior order of the Court, from the Class Settlement Account amounts necessary to pay Taxes and Tax Expenses. The Defendants shall not have any responsibility or liability for the acts or omissions of Lead Counsel, the Administrator, or their agents, as described herein.

13. This is not a claims-made settlement. As of the Effective Date, the Defendants shall not have any right to the return of the Settlement Fund or any portion thereof irrespective of the number of Proofs of Claim filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Settlement Fund. Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his or her Recognized Claim compared to the total Recognized Claims of all Authorized Claimants. The Defendants shall have no involvement in reviewing or challenging claims. If any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, then, after the Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed, after payment

of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution, to Class Members who have cashed their checks and who would receive at least ten dollars ($10.00) from such re-distribution. If after six months after such re-distribution any funds shall remain in the Net Settlement Fund, then such balance shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Lead Counsel.

14. Each of the Defendants shall have the option to terminate the Settlement in its entirety in the event that Settlement Class members beneficially owning more than a certain percentage of the total publicly-traded stock of IMAX traded on the NASDAQ during the Class Period opt out of the Settlement, as set forth in the parties' agreement dated January 26, 2012, (the "First Supplemental Agreement").

15. In order to effectuate the provisions of paragraphs 14, the schedule reflected in the Preliminary Approval Order submitted to the Court pursuant to paragraph 5 shall provide that any requests for exclusion must be postmarked (or hand delivered) at least ten (10) days prior to the Fairness Hearing and that within three (3) business days of receipt by the Administrator of any requests for exclusion, copies of all such requests shall be provided to Defendants' Counsel. The Parties acknowledge that the Defendants' option to terminate the Settlement and the calculations provided for in the First Supplemental Agreement constitute material terms of this Stipulation and Settlement. Accordingly, the Parties will confer in good faith to perform the calculations required by such agreement. Lead Counsel and Defendants' Counsel shall confer to perform any necessary calculations in advance of the Fairness Hearing. If no agreement can be reached concerning the calculations within thirty (30) days prior to the date set for the Fairness Hearing, Lead Counsel and Defendants' Counsel shall submit their respective positions to a settlement mediator for mediation. In the event they are not able to resolve their dispute through mediation, Lead Counsel and Defendants' Counsel will submit their

respective positions to the Court for resolution concurrent with the Fairness Hearing, which resolution shall be final and not appealable.

16. Under no circumstances will any Party or Person be required to pay more than the portion of the Settlement Amount attributed to it in the Second Supplemental Agreement.

**The Notice and Administration Fund**

17. Notice of the proposed Settlement of the U.S. Action shall not be disseminated until after the entry of the Canadian Order.

18. The Notice and Administration Fund consisting of $250,000.00 advanced by the Defendants shall be used by Lead Counsel to pay the costs of notifying the Class, facilitating the filing of Proofs of Claim by Class Members, assisting Class Members in submitting their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class. The $250,000.00 in the Notice and Administration Fund is part of, and not in addition to, the Settlement Amount to be paid by the Defendants.

19. As of the Effective Date, any balance, including interest, then remaining in the Notice and Administration Fund, less expenses incurred but not yet paid, shall be deposited into the Settlement Fund.

20. If the Effective Date does not occur, the balance of the Notice and Administration Fund which has not been expended pursuant to paragraph 18 above, including all accrued interest, shall be returned to Defendants. All monies already spent and monies not yet spent but attributable to expenses which have been incurred, need not be repaid to Defendants.

**Releases**

21. The Released Claims against each and all of the Released Parties shall be fully, finally and forever released, relinquished, discharged and dismissed with prejudice and on the merits, without costs to any party, upon entry of the Judgment.

22. Upon entry of the Judgment, any and all claims for contribution and/or indemnity (whether direct, implied, or equitable) by any Released Party against any other Released Party relating to any Released Claim or to any claim by Settlement Class Members under federal, state or other law that has been or could have been asserted relating to transactions in IMAX securities during the Class Period shall be barred.

**Administration and Distribution of the Settlement Fund**

23. Lead Counsel, the Administrator or their authorized agents, subject to the supervision, direction and approval of the Court, shall administer and calculate the Proofs of Claim submitted by Class Members and shall oversee distribution of the Settlement Fund. As part of the Preliminary Approval Order, Lead Plaintiff shall seek appointment of the Administrator.

24. The Settlement Fund shall be applied as follows:

(a) to pay the costs of notifying the Class, facilitating the filing of Proofs of Claim by Class Members, assisting Class Members in making their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class, and to pay Class Settlement Account fees and costs, if any.

(b) subject to the approval and further order(s) of the Court, to pay to Lead Counsel the amount awarded by the Court as attorneys' fees, plus interest, and to pay Lead Counsel the amount awarded as costs and expenses, including fees of experts and consultants, plus interest, which fee and expense award shall be allocated at the discretion of Lead Counsel.

(c) to pay Taxes and Tax Expenses owed by the Settlement Fund.

(d) subject to the approval and further order(s) of the Court, to distribute the balance of the Net Settlement Fund to Authorized Claimants as provided in the Plan of Allocation, to be submitted by Lead Plaintiff to the Court for approval and upon notice to the Class, or as otherwise ordered by the Court.

(e) in order for a member of the Class to participate in such distribution of the Net Settlement Fund:

(i) that member of the Class must be an Authorized Claimant.

(ii) to qualify as an Authorized Claimant, a member of the Class must timely submit a separate Proof of Claim and Release, signed, subject to penalties of perjury, substantially in the form attached as Exhibit C and supported by proof of all purchases or acquisitions and sales of IMAX shares during the Class Period.

(iii) unless otherwise ordered by this Court, any Class Member who fails to submit a Proof of Claim and Release within such period as may be established by this Court shall be forever barred from receiving any payments pursuant to this Stipulation, but in all other respects will be subject to and bound by the provisions of this Stipulation and the Judgment.

(f) The Defendants shall bear no responsibility for the costs, fees or expenses described in this paragraph 24. Neither the Defendants nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to the Settlement Fund, any Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of taxes, the distribution of the Net Settlement Fund, or any losses incurred in connection with any such matters.

25. Prior to the distribution of the Net Settlement Fund, Lead Counsel shall present for the approval of the Court a final accounting of the receipts to and disbursements from the Settlement Fund and the proposed distribution of the Net Settlement Fund to Authorized Claimants. No such distribution shall be made in the absence of an order approving the accounting and the proposed distribution.

26. Payment from the Net Settlement Fund made pursuant to and in the manner set forth above shall be deemed conclusive of compliance with this Stipulation as to all Authorized Claimants.

27. No Authorized Claimant shall have any claim against Lead Plaintiff, the Defendant Released Parties, the Administrator, or any of their counsel, based on the distributions made substantially in accordance with this Stipulation and/or orders of the Court.

**Effect of Disapproval, Cancellation or Termination of Agreement**

28. If the Court does not enter the Judgment substantially in the form provided for in paragraph 7 or if the Court enters the Judgment and appellate review is sought and on such review, the entry of Judgment is vacated, modified or reversed, then this Stipulation shall be cancelled and terminated, unless all parties who are adversely affected thereby, in their sole discretion within thirty (30) days from the date of the mailing of such ruling to such parties, provide written notice to all other parties hereto of their intent to proceed with the Settlement under the terms of the Judgment as it may be modified by the Court. Such notice may be provided on behalf of Lead Plaintiff and the Class Members by Lead Counsel. No party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein. If any party hereto engages in a material breach of the terms hereof, any other party, provided that it is in substantial compliance with the terms of this

Stipulation, may terminate this agreement on notice to the breaching party or sue for enforcement.

29. In the event this Settlement is terminated or cancelled or fails to become effective for any reason, then within ten (10) business days after Lead Counsel gives written notice to Defendants' Counsel, or Defendants' Counsel gives written notice to Lead Counsel, the balance of the Notice and Administration Fund, less any funds paid therefrom or funds attributable to expenses incurred but not yet paid, any cash deposited by the Defendants, or any of them, into the Class Settlement Account, and any funds received by Lead Counsel, shall be refunded as directed by Defendants' Counsel, including interest accrued. In such event, the Parties shall be deemed to have reverted *nunc pro tunc* to their respective status as of the date and time immediately before the execution of this Stipulation, including with respect to class certification, and they shall proceed in all respects as if this Stipulation and related orders had not been executed and without prejudice in any way from the negotiation, fact or terms of this Settlement.

**Miscellaneous Provisions**

30. All of the exhibits attached hereto are incorporated by reference as though fully set forth herein.

31. Lead Plaintiff acknowledges that, given the amount of discovery taken of the Defendants and others to date, including extensive document discovery and the review of 26 deposition transcripts as well as confirmatory discovery, Lead Plaintiff is satisfied that an adequate factual record has been established that supports the Settlement.

32. This Stipulation may be amended or modified only by a written instrument signed by counsel for the Parties.

33. Neither the Stipulation nor the Settlement, whether or not consummated, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim or of any wrongdoing or liability of the Defendants; or (ii) is or may be deemed to be or may be used as an admission or evidence of the truth of any fact alleged or of any liability, fault or omission of the Defendants in any civil, criminal or administrative proceeding in any court, arbitration proceeding, administrative agency or other forum or tribunal in which the Defendants are or become parties, other than in such proceedings as may be necessary to consummate or enforce the Stipulation, the Settlement or the Judgment. Notwithstanding the foregoing, the Defendants and/or the Released Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion, issue preclusion or similar defense or counterclaim.

34. The Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Lead Plaintiff or Class Members against the Released Parties with respect to the Released Claims. The Defendants agree not to assert any claim under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the U.S. Action was brought in bad faith or without a reasonable basis. The Parties to the Stipulation agree that the amount paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

35. The Parties agree that the Settlement set forth herein constitutes a fair, reasonable and adequate resolution of the claims that Plaintiffs asserted against the Defendants in the U.S. Action, and the Released Claims and that it promotes the public interest.

36. Except as Lead Counsel and Defendants' Counsel may otherwise in writing agree, to the extent permitted by law, all agreements made and orders entered during the course of the U.S. Action relating to the confidentiality of information shall survive this Stipulation.

37. The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

38. This Stipulation, the exhibits attached hereto, the First Supplemental Agreement and the Second Supplemental Agreement (which will not be filed, unless otherwise required by this Court) constitute the entire agreement among these Parties, and no representations, warranties or inducements have been made to the Parties, other than the representations, warranties and covenants contained and memorialized in such documents.

39. In the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit to be attached hereto, the terms of this Stipulation shall prevail.

40. This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties shall exchange among themselves original signed counterparts.

41. The Parties hereto and their respective counsel of record agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Stipulation.

42. Each counsel signing this Stipulation represents that such counsel has authority to sign this Stipulation on behalf of his or her identified clients.

43. This Stipulation, the exhibits attached hereto, the First Supplemental Agreement and the Second Supplemental Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any party hereto may merge, consolidate or reorganize.

44. Notices required by this Stipulation shall be submitted either by any form of overnight mail or in person to:

**ABBEY SPANIER RODD & ABRAMS, LLP**
Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
212 East 39th Street
New York, New York 10016
Tel.: 212-889-3700
Fax: 212-684-5191

**COUNSEL FOR LEAD PLAINTIFF AND THE CLASS**

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Lewis J. Liman
One Liberty Plaza
New York, New York 10006
Tel: 212-225-2000
Fax: 212-225-3999

**COUNSEL FOR THE IMAX DEFENDANTS**

**GIBSON DUNN & CRUTCHER, LLP**
M. Byron Wilder
Jason C. McKenney
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201
Tel: 214-698-3100
Fax: 214-571-2900

Jennifer L. Conn
200 Park Avenue
New York, New York 10166
Tel: 212-351-4000
Fax: 212-351-4035

**COUNSEL FOR PwC-CANADA**

45. Except for attorney notes, pleadings and other Court submissions, Lead Counsel agrees to destroy all discovery obtained from Defendants within thirty (30) days after all the claims in the U.S. Action have been settled, tried to final judgment, or otherwise resolved against all Defendants.

46. This Stipulation, the exhibits attached hereto, the First Supplemental Agreement and the Second Supplemental Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to choice of law principles, to the extent that federal law does not apply. The Court shall retain jurisdiction over actions or proceedings based upon, including the enforcement of, this Stipulation or any of its terms. All parties to this Stipulation shall be subject to the jurisdiction of the Court for all purposes related to this Stipulation.

Dated: January 26, 2012

**ABBEY SPANIER RODD & ABRAMS, LLP**

Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
212 East 39th Street
New York, New York 10016
Tel.: 212-889-3700
Fax: 212-684-5191

*Counsel for Lead Plaintiff and the Class*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

Lewis J. Liman
David Oliwenstein
One Liberty Plaza
New York, New York 10006
Tel: 212-225-2000
Fax: 212-225-3999

*Counsel for the IMAX Defendants*

**GIBSON DUNN & CRUTCHER, LLP**

M. Byron Wilder
Jason C. McKenney
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201-6912
Tel: 214-698-3100
Fax: 214-571-2900

Jennifer L. Conn
200 Park Avenue
New York, New York 10166
Tel: 212-351-4000
Fax: 212-351-4035

*Counsel for PwC-Canada*

**ABBEY SPANIER RODD & ABRAMS, LLP**

______________________

Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
212 East 39th Street
New York, NY 10016
Tel.: 212-889-3700
Fax: 212-684-5191

*Counsel for Lead Plaintiff and the Class*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

______________________

Lewis J. Liman
David Oliwenstein
One Liberty Plaza
New York, NY 10006
Tel: 212-225-2000
Fax: 212-225-3999

*Counsel for the IMAX Defendants*

**GIBSON DUNN & CRUTCHER, LLP**

______________________

M. Byron Wilder
Jason C. McKenney
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201-6912
Tel: 214-698-3100
Fax: 214-571-2900

Jennifer L. Conn
200 Park Avenue
New York, New York 10166
Tel: 212-351-4000
Fax: 212-351-4035

*Counsel for PwC-Canada*

**ABBEY SPANIER RODD & ABRAMS, LLP**

______________________________
Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
212 East 39th Street
New York, New York 10016
Tel.: 212-889-3700
Fax: 212-684-5191

*Counsel for Lead Plaintiff and the Class*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

______________________________
Lewis J. Liman
David Oliwenstein
One Liberty Plaza
New York, New York 10006
Tel: 212-225-2000
Fax: 212-225-3999

*Counsel for the IMAX Defendants*

**GIBSON DUNN & CRUTCHER, LLP**

______________________________
M. Byron Wilder
Jason C. McKenney
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201-6912
Tel: 214-698-3100
Fax: 214-571-2900

Jennifer L. Conn
200 Park Avenue
New York, New York 10166
Tel: 212-351-4000
Fax: 212-351-4035

*Counsel for PwC-Canada*

# EXHIBIT A

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

## [PROPOSED] ORDER PRELIMINARILY APPROVING FINAL SETTLEMENT AND PROVIDING FOR NOTICE

WHEREAS, a putative class action (the "Class Action") is pending in this Court as part of a consolidated action styled *In re IMAX Corporation Securities Litigation*, Civil Action No. 06 CIV. 6128 (NRB); and

WHEREAS, the Parties, having made an application pursuant to Rule 23 of the Federal Rules of Civil Procedure for an Order approving Settlement of the Class Action, in accordance with a Stipulation and Agreement of Settlement dated as of January 26, 2012 (the "Stipulation"), which, together with the Exhibits annexed thereto and the First Supplemental Agreement and the Second Supplemental Agreement identified to the Court pursuant to Rule 23(e)(2), sets forth the terms and conditions for a proposed Settlement of the Class Action and for dismissal of the Class Action and the Released Claims against IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble and PricewaterhouseCoopers LLP, an Ontario Limited Liability Partnership (the "Defendants") with prejudice and without costs upon the terms and conditions set forth therein;

WHEREAS, all defined terms contained herein shall have the same meanings as set forth in the Stipulation;

WHEREAS, the Court has read and considered the Stipulation and the Exhibits annexed thereto.

NOW THEREFORE, IT IS HEREBY ORDERED:

1. The Court preliminarily certifies the Settlement Class for settlement purposes only. The Court finds that the prerequisites to a class action under Rule 23 of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class Members is so numerous that joinder of all Settlement Class Members is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the proposed Lead Plaintiff are typical of the claims of the Settlement Class it seeks to represent; (d) the proposed Lead Plaintiff will fairly and adequately represent the interests of the Settlement Class; (e) Lead Counsel has fairly and adequately represented the interests of the Settlement Class; (f) questions of law and fact common to Settlement Class Members predominate over any questions affecting only individual Settlement Class Members; and (g) a class action settlement is superior to other available methods for the fair and efficient adjudication of the controversy.

2. The Court preliminarily approves the Stipulation and the Settlement set forth therein as being fair, just, reasonable and adequate as to Settlement Class Members and in the best interests of the Class, subject to notice to the Settlement Class and further consideration at the Fairness Hearing described below.

3. A hearing (the "Fairness Hearing") shall be held before this Court on ______ __, 2012, at __:__ ___.m. or, alternatively, approximately 90 days after the mailing of Notice (on a date to be determined by the Court) at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, 10007-1312, to determine: (a) whether the proposed Settlement of the Class Action on the terms and conditions provided for in the

Stipulation is fair, reasonable and adequate as to the Class and should be approved by the Court; (b) whether a Judgment as provided for in the Stipulation should be entered herein; (c) the amount of fees and expenses that should be awarded to Lead Counsel; (d) whether the Plan of Allocation proposed by Lead Plaintiff should be approved by the Court; and (e) whether the Class Action should be dismissed on its merits with prejudice and without costs as against the Defendants and the Defendant Released Parties as provided in the Stipulation. The Court may adjourn the Fairness Hearing without further notice to Class Members.

4. The Court approves, as to form and content, the Notice of Pendency and Settlement of Class Action (the "Notice"), the Proof of Claim and Release Form ("Proof of Claim and Release"), and Summary Notice annexed as Exhibits A-1, A-2 and A-3 hereto, and finds that the mailing and distribution of the Notice and publishing of the Summary Notice substantially in the manner and form set forth in paragraphs 5 and 6 of this Order meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

5. Lead Counsel are hereby authorized to retain the firm of Strategic Claims Services ("Administrator") to supervise and administer the notice procedure, file tax returns and process claims as more fully set forth below:

(a) As soon as practical following the date of this Order, the IMAX Defendants will make a motion in the Canadian Court to exclude the members of the U.S. Settlement Class who do not opt out of the U.S. Action;

(b) Within seventy-five (75) days after the Canadian Court issues an order amending the class definition in the Canadian Action, (the "Notice Date"), Lead Counsel shall cause a copy

of the Notice and the Proof of Claim and Release, substantially in the forms annexed as Exhibits A-1 and A-2 hereto, to be mailed by first class mail to all Settlement Class Members who can be identified with reasonable effort by Lead Counsel;

(c) After the Notice Date, the Administrator shall launch a settlement website available to the public containing the Complaint, the Stipulation, the Notice (in English and in French) and any other publicly filed documents Lead Counsel shall deem appropriate;

(d) After the Notice Date, Lead Counsel shall also post on their website the Complaint, the Stipulation, the Notice (in English and in French) and any other publicly filed documents that they shall deem appropriate;

(e) After the Notice Date, Lead Counsel shall cause the Summary Notice to be published once in the national edition of the Wall Street Journal, once in the New York Times and once in the The National Post (in one quarter page size), the national edition of The Globe and Mail (in one quarter page size), and La Presse (in French in one quarter page size);

(f) After the Notice Date, Lead Counsel shall provide a copy of the Notice to any person who requests it;

(g) After the Notice Date, Lead Counsel shall disseminate the Notice through a newswire in Canada and a newswire in the U.S.;

(h) After the Notice Date, the IMAX Defendants shall post the Notice prominently on their website at www.IMAX.com; and

(i) At least seven (7) calendar days prior to the Fairness Hearing, Lead Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of the mailing and publishing of the Notice required herein.

6. Nominees who purchased or otherwise acquired IMAX shares on the NASDAQ for the benefit of another Person during the period February 27, 2003 through July 20, 2007, inclusive, shall be requested to send the Notice and the Proof of Claim and Release to all such beneficial owners and within ten (10) business days after receipt thereof, either (1) send a list of the names and addresses of such beneficial owners to the Administrator, or (2) request from the Administrator additional copies of the Notice and Proof of Claim and Release and within seven (7) days mail the Notice and Proof of Claim and Release to such beneficial owners. If a nominee chooses to follow alternative procedure (2), such nominee shall send a statement to the Administrator confirming that the mailing was made as directed.

7. Any Person falling within the definition of the Class who desires to request exclusion from the Class shall do so by mailing or delivering by hand a written notice of exclusion in the form set forth in the Notice to the Administrator no later than ten (10) days before the Fairness Hearing. Within three (3) business days of receipt by the Administrator of any request for exclusion, the Administrator shall provide copies of such request to Lead Counsel and Defendants' Counsel. Unless the Court orders otherwise, no request for exclusion shall be valid unless it is made within the time set forth herein and in the manner described in the Notice.

8. Class Members who wish to participate in the Settlement shall complete and submit Proof of Claim and Release forms in accordance with the instructions contained therein. Unless the Court orders otherwise, all Proof of Claim and Release forms must be postmarked or delivered by hand no later than one hundred and twenty (120) days after the Fairness Hearing. Any Class Member who does not submit a Proof of Claim and Release within the time provided shall be forever barred from sharing in the distribution of the proceeds of the Settlement Fund,

unless otherwise ordered by the Court, but shall be bound by all of the terms of the Stipulation and Settlement, including the terms of the Judgment to be entered and the releases provided for therein, and shall be deemed to have and by operation of the Judgment shall have fully, finally and forever released, relinquished and discharged, and thereby be barred and enjoined from asserting any Released Claims (including, for some Class Members, the Canadian Action) against the Defendant Released Parties or bringing any actions against the Defendant Released Parties concerning the Released Claims.

9. All Class Members shall be bound by all determinations and judgments in the Class Action concerning the Stipulation and the Settlement, including, but not limited to, the terms of the Judgment to be entered and the releases provided for therein, whether favorable or unfavorable to the Class.

10. Any Class Member may enter an appearance in the Class Action, at their own expense, individually or through counsel of their own choice. If they do not enter an appearance, they will be represented by Lead Counsel.

11. All proceedings against Defendants in the Class Action are stayed until further order of the Court, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation. Pending final determination of whether the Settlement should be approved, neither the Lead Plaintiff nor any Class Member, either directly, representatively or in any other capacity, shall commence or prosecute against any of the Released Parties, any action or proceeding in any court or tribunal asserting any of the Released Claims.

12. Any Class Member may appear and show cause, if he, she or it has any reason why the Stipulation and Settlement (and the releases contained therein) should or should not be approved or a judgment entered thereon; why the proposed Plan of Allocation should or should not be adopted or why the attorneys' fees and the reimbursement of expenses should or should not be awarded to Lead Counsel; provided, however, that no Class Member or any other Person shall be heard or entitled to contest any of the above enumerated matters unless such Class Member follows the procedures set forth in the Notice. No later than ten (10) days prior to the Fairness Hearing, written objections, papers and briefs must be filed with the Clerk of the United States District Court for the Southern District of New York, with copies postmarked or delivered by hand to:

Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, New York 10016

***Counsel for Lead Plaintiff***

-and-

Lewis J. Liman
David Oliwenstein
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

***Counsel for the IMAX Defendants***

M. Byron Wilder
Jason C. McKenney
Gibson Dunn & Crutcher, LLP
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201

Jennifer L. Conn
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

***Counsel for defendant PwC-Canada***

13. Any Class Member who does not make his, her or its objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness or adequacy of the Stipulation and proposed Settlement, the Plan of Allocation, the award of attorneys' fees and expenses to Lead Counsel, the Judgment to be entered and the releases provided therein unless otherwise ordered by the Court.

14. Any Plan of Allocation of the Settlement Fund including, but not limited to, any adjustments to any Authorized Claimant's claim or application for Lead Counsel's fees and expenses is not a part of the Stipulation of Settlement or this Preliminary Order and will be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation or Lead Counsel's fees and expenses shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the Settlement herein or any other order entered pursuant to the Stipulation. Further, the Plan of Allocation was drafted, created and negotiated after the Defendants agreed to the Settlement, and neither the Defendants nor the Defendant Released Parties participated in drafting, creating or negotiating the Plan of Allocation. Any order or proceedings relating to the Plan of Allocation or application for Lead Counsel's fees and expenses, or any appeal therefrom or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation or affect or delay the finality of the Judgment and the Settlement of the Class Action.

15. Neither the Defendants nor the other Defendant Released Parties nor their counsel shall have any responsibility for, interest in or liability whatsoever to any Person, including, without limitation, to any Settlement Class Members, Authorized Claimants, Lead Plaintiff or Lead Counsel with respect to the Settlement Amount (except to the extent that the Defendants shall retain its interest in the Settlement Amount in the event the Effective Date does not occur as provided in the Stipulation or the Settlement is terminated), any investment or distribution of the Settlement Fund, the proposed or actual Plan of Allocation, the determination, administration or calculation of claims, final awards and supervision and distribution of the Settlement Fund as set forth in the Stipulation or any application for attorneys' fees and reimbursement of expenses, the payment or withholding of taxes or any losses incurred in connection with any such matters; and no Person, including, without limitation, the Settlement Class Members, Authorized Claimants, Lead Plaintiff and Lead Counsel, shall have any claims against the Defendant Released Parties or their counsel in connection therewith. The Defendant Released Parties shall have no responsibility for and no liability whatsoever with respect to the Settlement. In no event will the Defendants be responsible for payment of any amount except the Settlement Amount that it agreed to pay in the Stipulation.

16. In the event that the Stipulation should terminate, or be cancelled, or otherwise fail to become effective for any reason, or the Effective Date does not occur as provided in the Stipulation, including without limitation in the event that the Judgment is reversed, modified or vacated following any appeal taken therefrom, then the parties to the Stipulation shall be deemed to have reverted to their respective status in the Class Action as of November 2, 2011, including with respect to class certification, and, except as otherwise expressly provided, the parties shall proceed in all respects as if this Stipulation and any related orders had not been entered, and any

portion of the Settlement Amount previously paid by the Defendants, together with any interest earned thereon, less any taxes due with respect to such interest earned, and less reasonable costs of Administration and Notice actually incurred pursuant to the terms of this Stipulation or as to which a legal obligation to pay has been incurred as of the date of such termination, shall be returned to the Defendants within ten (10) days after written notification of such event by the Defendants to the Escrow Agent. The parties shall abide by any summary orders of the Court with respect to the return of funds to the Defendants. Neither Lead Plaintiff nor Lead Counsel shall oppose or object to the return of the Net Settlement Fund to the Defendants pursuant to the terms of the Stipulation or to entry or an order, if necessary, to return the Net Settlement Fund to the Defendants.

17. The transfer of the Settlement Amount to the Escrow Agent in accordance with the terms and obligations of the Stipulation is approved. No Person that is not a Class Member or Lead Counsel shall have any right to any portion of, or in the distribution of, the Settlement Fund or Notice and Administration Fund unless otherwise ordered by the Court or otherwise provided in the Stipulation.

18. All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further Order(s) of the Court.

19. The Defendants shall not have any responsibility for any application for attorneys' fees or reimbursement of expenses submitted by Lead Counsel, and such matters will be considered separately from the fairness, reasonableness and adequacy of the settlement.

20. At or after the Fairness Hearing, the Court shall determine whether any application for attorneys' fees or reimbursement of expenses shall be approved.

21. All reasonable costs incurred in identifying and notifying Settlement Class Members, as well as in administering the Net Settlement Fund, shall be paid as set forth in the Stipulation. In particular, counsel may use up to $250,000.00 to pay the costs of notifying the Settlement Class, facilitating the filing of Proofs of Claim by Class Members, assisting Class Members in making their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class prior to the entry of Judgment. In the event the Settlement is not approved by the Court or otherwise fails to become effective, neither the Lead Plaintiff nor Lead Counsel shall have any obligation to repay to the Defendants the reasonable and actual costs of class notice and of administration.

22. The Court reserves the right to adjourn the date of the Fairness Hearing without further notice to Class Members and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Class.

23. Papers in support of the Settlement, any proposed plan of allocation submitted to the Court for approval and Lead Counsel's application, if any, for attorneys' fees and payment of expenses shall be submitted on or before five (5) business days before the Fairness Hearing.

IT IS SO ORDERED.

________________________________________
THE HONORABLE NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

________________________________________
DATE

# EXHIBIT A-1

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

## NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF U.S. CLASS ACTION

This Notice has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York (the "U.S. Court").

This Notice provides you with important information in connection with the resolution (the "Settlement") of certain claims in a class action lawsuit, brought in the United States, by a Class of purchasers ("Plaintiffs" or the "Class", as described in further detail below) of securities issued by IMAX Corporation ("IMAX" or the "Company"). The Settlement resolves Plaintiffs' claims against IMAX, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble and PricewaterhouseCoopers LLP, an Ontario Limited Liability Partnership ("PwC-Canada") (the "Settling Defendants"). This U.S. class action is known as *In re IMAX Securities Litigation*, Civil Action No. 1:06-cv-06128 (the "U.S. Action"). Your rights will be affected by this Notice and the Settlement that it describes, so you should read this Notice carefully.

> If you purchased or otherwise acquired IMAX shares on the NASDAQ between February 27, 2003 and July 20, 2007, inclusive (the "Class Period"), you may be entitled to receive a payment from this Settlement.
>
> **The U.S. Court will hold a Fairness Hearing at ___:___ ___.m. on ____________, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, 10007-1312. At this hearing the U.S. Court will consider whether the Settlement is fair, reasonable and adequate and in the best interests of the Class.**

*A United States federal court authorized this Notice. This is not a solicitation from a lawyer.*

- The Settlement resolves certain claims asserted pursuant to the United States federal securities laws in a class action against the Defendants for damages incurred by the Class in connection with their transactions in IMAX shares. The Settlement consists of twelve million dollars ($12,000,000) in cash (the "Settlement Fund"). The recovery is explained in greater detail below.

**Cet Avis vous a été envoyé car vous avez possiblement droit à une indemnisation en vertu du règlement d'un recours collectif intenté aux États-Unis par un Groupe constitué d'acheteurs d'actions émises par IMAX Corporation. Vous pourriez aussi être un membre du groupe dans une action similaire contre IMAX Corporation intentée au Canada. Vous pouvez obtenir une traduction anglaise du présent Avis en contactant le "Strategic Claims Services" dont les informations sont à la p. 17 de cet Avis.**

- The law firm of Abbey Spanier Rodd & Abrams, LLP ("Lead Counsel") will apply to the Court for an award of attorneys' fees from the Settlement Fund not to exceed twenty-five percent (25%) thereof, and reimbursement of expenses of no greater than $__ million (plus interest on such amounts at the same rate earned by the Settlement Fund) or an average of $__ per share of stock. Lead Counsel and other plaintiffs' counsel have litigated the U.S. Action for five years on a contingent fee basis, and have advanced all the expenses of litigation without reimbursement, with the expectation that if they were successful in recovering money for the Class, they would receive fees and be reimbursed for their expenses from the Settlement Fund, as is customary in this type of litigation.

- If you purchased IMAX securities on the NASDAQ on or after February 17, 2006 and held some or all of those securities on August 9, 2006 (the "Canadian Class Period"), then you are a member of the certified class (the "Canadian Class") in another class action based on substantially similar allegations to those alleged in this case against the IMAX Defendants and others in Ontario Canada (the "Canadian Action" - as described further below). You will not be permitted to recover in both cases and if you do not exclude yourself from the U.S. Action, you will automatically be deemed to be a member of the Class in the U.S. Action, and therefore excluded from the Canadian Class in the Canadian Action. For members of the Canadian Class, a detailed description of the Canadian Action as well as details regarding how to exclude yourself from this action (and thereby participate in the Canadian Action) are contained below.

- Your legal rights are affected whether you act or don't act, so please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A PROOF OF CLAIM AND RELEASE FORM** | This is the only way to be eligible to receive any portion of the Settlement Fund. If you are a member of the Canadian Class, you cannot participate in that lawsuit if you submit a Proof of Claim and Release Form in the U.S. Action (or if you do not opt out of the U.S. Action). |
| **EXCLUDE YOURSELF** | This is the only option that allows you to ever file or be part of another lawsuit against the Defendants about the Released Claims. You will not receive any portion of the recovery from the Settlement Fund if you select this option. The requirements to exclude yourself are described below. If you exclude yourself from the U.S. Action and you purchased and held IMAX securities during the Canadian Class Period, you will remain a member of the class in the Canadian Action, as described below. |
| **OBJECT BUT REMAIN IN THE SETTLEMENT** | Write to the U.S. Court about why you don't like the Settlement. You may object to the Settlement. The requirements to object are described below. |
| **GO TO A FAIRNESS HEARING** | The Fairness Hearing is open to the public. You may ask in writing to speak to the U.S. Court at the hearing about the fairness of the Settlement. If the Court approves the Settlement, you will be bound by the U.S. Court's Judgment (as it applies to your claim) whether or not you submit a Proof of Claim and Release form or receive any money from the Settlement. |
| **DO NOTHING** | Receive no payment. Give up your right to file your own or participate in any other lawsuit (including the Canadian Action) against the Defendants concerning the claims asserted by the Class. |

| | |
|---|---|
| | If you are a member of the Canadian Class, you must affirmatively exclude yourself from the U.S. Action to be eligible to recover in the Canadian Action. |

- Your rights and options as well as the deadlines to exercise them are explained further in this Notice.

- The U.S. Court in charge of this case still has to decide whether to approve the Settlement. Payments to eligible claimants in the Settlement will be made only if and when the Canadian Order (defined below) becomes final and unappealable, the U.S. Court approves the Settlement, after any and all U.S. appeals are resolved, and after the claims processing procedure is complete.

**Statement of Plaintiffs' Recovery**

Lead Plaintiff (defined in question __ on page __) estimates that approximately ___ million shares of IMAX stock were purchased and/or acquired during the period from February 27, 2003 and July 20, 2007, inclusive, and that purchasers of those shares were damaged as a result of the purported acts or omissions alleged in the Consolidated Amended Class Action Complaint dated October 2, 2007 (the "Complaint"). Lead Plaintiff estimates that the average recovery per share of IMAX common stock under the Settlement will be $___ per share before the deduction of attorneys' fees, costs and expenses, as approved by the Court. The actual recovery per damaged share will depend on a variety of factors, including: (1) the number of claims filed; (2) when members of the Class ("Settlement Class Members") purchased or acquired their shares during the Class Period; (3) whether Settlement Class Members sold their IMAX shares during the Class Period or held their shares past the end of the Class Period; (4) administrative costs, including the costs of notice; (5) the number of Settlement Class Members who decide to exclude themselves from the Settlement; and (6) the amount awarded by the U.S. Court for attorneys' fees, costs and expenses. Distributions to Class Members will be made based on the Plan of Allocation set forth at the end of this Notice.

**Background of the U.S. Action and the Parallel Canadian Class Action**

The Judge presiding over this case is the Honorable Naomi Reice Buchwald of the United States District Court for the Southern District of New York. From August 11, 2006 through September 18, 2006, eight lawsuits were filed against all or certain of the Defendants in the United States District Court for the Southern District of New York, alleging that IMAX made material misrepresentations and omissions regarding revenue recognition for theater systems in violation of the federal securities laws between February 27, 2003 through July 20, 2007 (the "U.S. Class Period"). The people who brought the lawsuits are called plaintiffs, and the persons and entities they sued are called defendants.

On September 20, 2006, a lawsuit was filed in the Ontario Superior Court of Justice in Canada (the "Canadian Court") alleging, based on substantially identical facts to those alleged in the eight U.S. actions, that IMAX improperly recognized revenue on theater systems (the "Canadian Action"). The Canadian Action is known as *Silver v. IMAX Corp.*, Court File No. CV-06-3257-00. (Ontario Superior Court of Justice, Canada). The Judge presiding over this case is the Honourable Madam Justice van Rensburg of the Canadian Court. The IMAX Defendants estimate that approximately 83.9 percent of the shares of IMAX securities at issue in the Canadian Action were purchased on the NASDAQ and those members of the Canadian Class who purchased IMAX securities on the NASDAQ are also members of the U.S. Class.

There are differences between the U.S. Action and the Canadian Action. For example, while the Class Period in this U.S. Action runs from February 27, 2003, through July 20, 2007 (more than four

years) the class period in the Canadian Action runs from February 17, 2006, through August 9, 2006 (less than six months). The U.S. Action includes PwC-Canada as a defendant, but the Canadian Action does not. The Canadian Action includes four Directors of IMAX (Neil S. Braun, Kenneth G. Copland, Garth M. Girvan and David W. Leebron) who are not Defendants in the U.S. Action. The U.S. Action seeks relief for violations of the U.S. securities laws. The Canadian Action asserts claims under the Canadian securities laws.

Pursuant to a January 17, 2007 Order of the U.S. Court, the eight U.S. actions were consolidated, and the U.S. Court appointed Westchester Capital Management, Inc. (the investment advisor for GS Master Trust, MSS Merger Arbitrage Fund, The Merger Fund, The Merger Fund VL and SphinX Merger Arbitrage Fund) as lead plaintiff and further approved the appointment of the law firm of Abbey Spanier Rodd & Abrams, LLP as lead counsel for the class.

On October 2, 2007, Westchester filed a Consolidated Amended Class Action Complaint against Defendants in the U.S. Court In their Complaint, plaintiffs alleged that Defendants' public statements during the U.S. Class Period were materially false and misleading because they failed to disclose, among other things, that IMAX had recognized revenue on theater systems before installation of the system was complete, in contravention of U.S. generally accepted accounting rules, and in violation of its own accounting policies. Plaintiffs also alleged that IMAX's auditor, PwC-Canada was also responsible for the material misinformation disseminated to the investing public during the U.S. Class Period. Plaintiffs allege that Defendants' actions artificially inflated the price of IMAX stock during the U.S. Class Period and that once the truth was disclosed, the price of IMAX's stock declined, injuring the Class.

On December 10, 2007, the IMAX Defendants and PwC-Canada each separately filed motions to dismiss the Complaint on numerous grounds. On January 22, 2008, Westchester filed its opposition to Defendants' motions to dismiss. Defendants filed their reply briefing on February 11, 2008.

On September 15, 2008, after supplemental submissions and oral argument, the Defendants' motions to dismiss were denied by the Court. Thereafter, Westchester commenced discovery, which included the production and review of hundreds of thousands of pages of documents and transcripts of depositions.

On October 31, 2008, Westchester filed Plaintiffs' first motion for class certification.

On December 3, 2008, the Second Circuit decided *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), holding that an investment adviser that did not directly purchase the securities at issue lacked standing to bring a securities fraud claim on behalf of its clients because it did not suffer an injury in fact. Relying on the Second Circuit's decision in *Huff*, on February 18, 2009, Snow Capital Investment Partners, L.P. ("Snow Capital") requested a pre-motion conference in connection with its anticipated motion for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff.

On February 23, 2009, the Defendants filed oppositions to Westchester's motion for class certification. On March 13, 2009, the Court denied without prejudice Westchester's motion for class certification pending resolution of Snow Capital's anticipated motion for reconsideration of the Court's January 17, 2007 Order.

On April 3, 2009, Snow Capital moved for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff. Westchester filed its opposition on April 24, 2009 and Snow Capital replied on May 1, 2009. On June 29, 2009, the Court determined that under *Huff*, Westchester, an investment advisor, lacked standing and granted Snow Capital's motion and appointed it lead plaintiff and its counsel, Robbins Geller Rudman & Dowd LLP, as lead counsel.

On December 14, 2009, the Canadian Court certified the Canadian Action on behalf of investors worldwide who purchased IMAX securities on or after February 17, 2006 and held some or all of those securities on August 9, 2006. *See Silver v. IMAX Corporation*, [2009] O.J. No. 5585, 2009 ON.C. LEXIS 4847 (December 14, 2009, Sup. Ct. J.).

On April 22, 2010, Snow Capital filed its motion for class certification. On June 10, 2010, the Defendants filed oppositions to Snow Capital's class certification motion. Snow Capital filed its reply in further support of the motion on July 30, 2010. The Court did not hear oral argument on the motion. On December 20, 2010, this Court issued a Memorandum and Order that denied Snow's motion for class certification, held that this case could not proceed with Snow Capital as class representative, and directed that new applications to be named lead plaintiff be filed.

On April 14, 2011, the Court issued an Order naming The Merger Fund (the "Lead Plaintiff") as lead plaintiff and re-appointing Abbey Spanier Rodd & Abrams, LLP as lead counsel.

Between April 2011 and November 2011, the parties met numerous times, both in person and via conference call, in an effort to negotiate a settlement of the U.S. Action. As a result of such efforts, on November 2, 2011, Lead Plaintiff and the Defendants were able to reach an agreement that led to the Settlement, which is separately set forth in greater detail in the Stipulation and Agreement of Settlement, dated January 26, 2012 (the "Stipulation").

After the U.S. Court preliminarily approved this Settlement on January__, 2012, the IMAX Defendants on February __, 2012 made a motion for a final Order from the Canadian Court in the Canadian Action seeking to exclude, from the definition of the Canadian Class, all persons who do not opt out of this Settlement, if and when the settlement is approved by final Order of the U.S. Court (the "Canadian Order").

On February ___, 2012, the Canadian Court amended the definition of the Canadian class to exclude ________________________.

## The Circumstances of the Settlement

The Defendants and the Lead Plaintiff disagree as to the probable outcome of the U.S. Action with respect to liability. While the Lead Plaintiff was prepared to try this case against Defendants, and Lead Counsel were confident in the merits of their case, they recognize that a trial is inherently risky and that the Class may not have prevailed on any or all of its claims. Moreover, each of the Defendants believe that the Complaint lacks merit and had this Stipulation not been reached would have continued to vigorously defend against Lead Plaintiff's claims and present significant defenses thereto. While Lead Plaintiff believes that it had a strong case, Lead Plaintiff also believes that Defendants' defenses would have created uncertainty as to Lead Plaintiff's ability to win at trial or after appeals.

The Defendants and the Lead Plaintiff also disagree as to the probable outcome of the U.S. Action with respect to damages. Lead Plaintiff and their economic consultants believe that the damages arising from the alleged malfeasance in the U.S. Action, depending on the methodology used, are as high as $91 million. This amount results from the use of a damage model under which it was presumed that the proper measure of recoverable damages included the majority of IMAX's stock price drop that occurred when the Company disclosed information that corrected alleged prior false and misleading statements. This figure also assumes that the Court and a jury would make every factual finding in the Class's favor. Defendants have generated damage models showing damages based upon recent Supreme Court decisions which show damages as low as approximately $5 million.

Contrary to Lead Plaintiff's position, Defendants have argued, among other things, that they did not commit fraud, that IMAX's restatement was a result of accounting mistakes, and that their conduct did not cause the value of IMAX stock to decrease. As such, the decline was the result of other factors, including the inability of IMAX to find a buyer after a lengthy search, the announcement of a new business model involving joint ventures, considerable uncertainty surrounding the company, and an SEC investigation. Defendants have also argued that Lead Plaintiff will not be able to demonstrate that any purchasers prior to February 17, 2006 suffered a loss and that Lead Plaintiff will be unable to disentangle any stock drop attributable to the statements alleged to have been false or misleading and will therefore not be able to establish damages.

The Defendants and Lead Plaintiff also disagree as to whether the Court would have granted Lead Plaintiff's motion to certify this case as a class action. Although Lead Plaintiff withdrew its class certification motion in light of the Settlement, Defendants had opposed Lead Plaintiff's motion on the grounds that the U.S. Action is not superior to the previously certified global class action in Canada and that Defendants have rebutted the presumption of reliance set forth in the Supreme Court case *Basic v. Levinson*, 485 U.S. 224 (1988), by demonstrating that the alleged misrepresentations did not impact the price of IMAX securities. Defendants also argued that even if a class is certified, it should not include any shareholders who purchased prior to February 17, 2006.

These disputes would be subject to expert testimony at summary judgment and trial, and, therefore, it is impossible to predict with certainty which arguments would find favor with the Court and the jury. As a result, in a trial or through a summary judgment motion, the U.S. Class could recover substantially less than the amount of the Settlement or nothing. Lead Counsel has recommended the Settlement because it believes that the Settlement provides a substantial recovery to the U.S. Class and believes that the U.S. Class might have obtained a lesser recovery or nothing at all if the Class had gone to trial and through inevitable appeals.

It is important to recognize, that the entry of Judgment and therefore the distribution of the Settlement funds in this case may be delayed because the Settlement is conditioned upon the Canadian Order becoming final and unappealable.

## Further Information

Further information regarding this Settlement may be obtained by contacting: *In re IMAX Corporation Securities Litigation,* Civil Action No. 06 CIV. 6128 (NRB): Lead Counsel, Arthur N. Abbey, Karin E. Fisch and Richard B. Margolies, Abbey Spanier Rodd & Abrams, LLP, 212 East 39th Street, New York, NY 10016.

## WHAT THIS NOTICE CONTAINS


| | | Page |
|---|---|---|
| A. | WHY DID I RECEIVE THIS NOTICE PACKAGE? | 8 |
| B. | WHAT IS A CLASS ACTION? | 8 |
| C. | HOW DO I KNOW IF I AM A SETTLEMENT CLASS MEMBER AND CAN BE PART OF THE SETTLEMENT? | 8 |

D. ARE THERE EXCEPTIONS TO BEING INCLUDED IN THE CLASS? ........... 9

E. I'M STILL NOT SURE I AM INCLUDED ........... 9

F. WHAT DOES THE SETTLEMENT PROVIDE? ........... 9

G. HOW MUCH WILL MY PAYMENT BE IN THE SETTLEMENT? ........... 9

H. HOW CAN I RECEIVE A PAYMENT IN THE SETTLEMENT? ........... 10

I. WHEN WILL I RECEIVE MY PAYMENT IN THE SETTLEMENT? ........... 10

J. WHAT AM I GIVING UP TO RECEIVE A PAYMENT IN THE SETTLEMENT? ........... 10-12

K. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT? ........... 12-13

L. IF I DON'T EXCLUDE MYSELF, CAN I SUE THE SETTLING DEFENDANTS FOR THE SAME THING LATER? ........... 13

M. IF I EXCLUDE MYSELF, CAN I OBTAIN A PAYMENT FROM THE SETTLEMENT? ........... 13

N. DO I HAVE A LAWYER IN THIS CASE? ........... 13

O. HOW WILL THE LAWYERS BE PAID? ........... 13

P. HOW DO I NOTIFY THE COURT THAT I DON'T LIKE THE SETTLEMENT? ........... 14

Q. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND REQUESTING EXCLUSION? ........... 15

R. WHEN AND WHERE WILL THE U.S. COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? ........... 15

S. DO I HAVE TO ANSWER QUESTIONS AT THE FAIRNESS HEARING? ........... 15

T. MAY I SPEAK AT THE FAIRNESS HEARING? ........... 15

U. WHAT WILL HAPPEN IF I DO NOTHING AT ALL? ........... 16

V. ARE THERE MORE DETAILS ABOUT THE SETTLEMENT AND THE CANADIAN ACTION? ........... 16

W. WHAT ARE MY RIGHTS AND OBLIGATIONS AS A SECURITIES BROKER OR NOMINEE? ........... 16-17

BASIC INFORMATION

**A. WHY DID I RECEIVE THIS NOTICE PACKAGE?**

The U.S. Court authorized this Notice to be sent to you because you or someone in your family may have purchased or acquired IMAX shares on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive. If the description above applies to you or someone in your family, you have a right to know about the proposed Settlement of the U.S. Action against the Defendants and about all of your options before the U.S. Court decides whether to approve the Settlement. If the Canadian Order becomes final and unappealable and the U.S. Court approves the Settlement, and any objections or appeals that may be filed in opposition to the Settlement are overruled or otherwise resolved, then Strategic Claims Services (the "Administrator") will distribute the payments that the Settlement permits. This notice package explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

THE U.S. COURT HAS DIRECTED THAT NOTICE SHOULD BE GIVEN TO ALL CLASS MEMBERS TO INFORM THEM OF THE U.S. ACTION, THE CANADIAN ACTION AND THEIR RIGHTS. THE SENDING OF THIS NOTICE IS NOT AN EXPRESSION BY THE U.S. COURT OR THE PARTIES TO THE U.S. ACTION OF ANY OPINION AS TO THE MERITS OF ANY CLAIM OR DEFENSE OR THE LIKELIHOOD OF RECOVERY BY THE CLASS. NOTICE IS BEING PROVIDED SO THAT ALL CLASS MEMBERS MAY MAKE A DECISION AS TO WHAT STEPS, IF ANY, THEY WISH TO TAKE AS THIS MATTER PROCEEDS. NOTICE IS BEING SENT TO YOU BECAUSE RECORDS INDICATE THAT YOU MAY BE A CLASS MEMBER.

**B. WHAT IS A CLASS ACTION?**

In a class action, one or more people and/or entities called a lead plaintiff sues on behalf of people and/or entities that have similar claims. All these people and/or entities are referred to as a class or individually as class members. One court resolves the issues for all class members, except for those who exclude themselves from the class.

**C. HOW DO I KNOW IF I AM A SETTLEMENT CLASS MEMBER AND CAN BE PART OF THE SETTLEMENT?**

To see if you will receive a payment from the Settlement, you first need to know if you are a Class Member. The U.S. Action alleges that everyone who fits the following description is a Class Member: *all persons and entities who purchased or otherwise acquired IMAX shares on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive.*

## D. ARE THERE EXCEPTIONS TO BEING INCLUDED IN THE CLASS?

Excluded from the Settlement Class are the Defendants in the U.S. Action and Canadian Action, members of those Defendants' immediate families, all individuals who are either current officers and/or directors of any Defendant, or who served as officers and directors of any Defendant at any time during the Class Period.

## E. I'M STILL NOT SURE I AM INCLUDED.

If you are still not sure whether you are included in the U.S. Action, you can ask for free help. You can call Strategic Claims Services at 1-866-274-4004 or visit www.______________ for more information. Or you can fill out and return the claim form attached hereto, to see if you qualify.

## F. WHAT DOES THE SETTLEMENT PROVIDE?

The Settlement consists of twelve million dollars ($12,000,000) in cash, plus interest. The Settlement will be used to pay Class Members, and also for the payment of taxes, administrative costs, including the costs of notice, and for attorneys' fees and expenses.

## G. HOW MUCH WILL MY PAYMENT BE IN THE SETTLEMENT?

If you are entitled to a payment, your share of the Settlement Fund will depend on a variety of factors, including the number of valid claim forms that Class Members submit, how many Settlement Class Members choose to exclude themselves from the class, how many shares of IMAX stock you purchased or otherwise acquired, and when you bought, acquired and sold your IMAX stock. The Plan of Allocation is included at the end of this Notice.

The Administrator, will distribute the Settlement Fund according to the Plan of Allocation described at the end of this Notice after the Canadian Order has become final and unappealable, the deadline for submission of Proof of Claim and Release forms has passed and all claims have been processed. The Administrator will process your claim and advise you if your claim does not satisfy the requirements approved by the U.S. Court. The Administrator will calculate your payment, if any, based upon the date you purchased or acquired IMAX stock, the losses you suffered as a result thereof and the type of claim you have.

By following the Plan of Allocation at the end of this Notice, you can calculate your "Recognized Claim." Your recovery will depend on the size of your Recognized Claim as it relates to the size of the Recognized Claims of all Class Members who file a claim form.

## H. HOW CAN I RECEIVE A PAYMENT IN THE SETTLEMENT?

To qualify for payment you must submit the Proof of Claim and Release form enclosed with this Notice. You may also obtain a claim form on the Internet at www.__________. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it and mail it postmarked no later than ______________. If you have any questions, or need assistance, call 1-866-274-4004, and someone will either answer your questions, or help you to complete the Proof of Claim and Release form.

The Administrator will advise Class Members if their claims are deficient and are rejected. Any Class Member who receives a deficiency letter or a rejection letter and who fails to submit documentation sufficient to remedy the deficiency or reason for rejection within the time prescribed herein shall have their claim deemed finally rejected. The Administrator shall advise Class Members in writing that their claims have been finally rejected. Class Members have thirty (30) days from the date of such final rejection letter to write to the Administrator stating the reasons that their claims should not be rejected, in which case the claim shall be submitted to the Court as a disputed claim. Notice of any hearing on such rejected claims shall be provided to all Class Members whose claims are rejected or disputed.

## I. WHEN WILL I RECEIVE MY PAYMENT IN THE SETTLEMENT?

The U.S. Court will hold a hearing on ________________, ___, at __:__ _.m., to decide whether to approve the Settlement. Even if Judge Buchwald approves the Settlement, it could take more than two years before the Settlement Fund is distributed to the Class Members. One reason that the Settlement distribution could be delayed is if Class Members object to any aspect of the Settlement and are not satisfied by the resolution of that objection by the U.S. Court. That Class Member could then appeal the U.S. Court's decision. In addition, it is always uncertain whether an appeal will be resolved in favor of a settlement, and resolving any such appeals or objections can take time. Another reason that the Settlement distribution could be delayed is that the Settlement is conditioned on the entry of the Canadian Order becoming final and unappealable. Finally, it may take more than two years for the Settlement Fund to be distributed because once the Settlement has been approved and any appeals are resolved, the Administrator must process all of the Proof of Claim and Release forms. The processing, by itself, is a very complicated process and will take many months.

## J. WHAT AM I GIVING UP TO RECEIVE A PAYMENT IN THE SETTLEMENT?

If you are a Settlement Class Member, and you do not exclude yourself from the Settlement, you remain in the Class, and that means that if the Settlement is approved, you, on behalf of yourself, your heirs, executors, administrators, successors and assigns and any Persons you represent, will release all "Released Claims," including participation in the Canadian Action, and including all "Unknown Claims," against all "Released Parties."

*The following release applies to the Settlement (as more fully set forth in the Stipulation).*

"Released Claims" means:

(i) with respect to the Released Parties: the release by Lead Plaintiff and all Class Members of all claims that were alleged in the U.S. Action, or the Canadian Action, or that could have been alleged in the U.S. Action, the Canadian Action, or any other proceeding, manner of action, actions, causes of action, suits, claims for sums of money, contracts, controversies, agreements, costs, damages, judgments and demands in law, contract, trust or equity, domestic or foreign, including claims under U.S. securities laws, U.S. federal laws, U.S. state laws, U.S. common law, Canadian securities laws, Canadian federal and provincial laws, and Canadian common law, and the laws of any other jurisdiction relating to transactions in IMAX securities during the Settlement Class Period or the subject matter and facts relating to the U.S. Action, including any acts, failures to act, omissions, misrepresentations, statements, misstatements, facts, events, transactions, occurrences or other subject matter set forth, alleged, embraced, encompassed or otherwise referred to in or related to the U.S. Action.

(ii) the claims that are to be released also include Unknown Claims and claims arising under the laws of any jurisdiction, including, without limitation, in the United States and in Canada, and Lead Plaintiff and all Class Members will waive and relinquish to the fullest extent possible any state, federal or foreign law defenses concerning the release of Unknown Claims. Defendants shall release Lead Plaintiff, all Class Members, and Lead Counsel, from any claims relating to the institution, prosecution, and settlement of the U.S. Action.

"Released Parties" means:

(i) with respect to the Defendants: the Defendants, their respective present and former parents, subsidiaries, divisions, affiliates, and any PricewaterhouseCoopers member firm, the present and former employees, members, partners, principals, managers, officers and directors of each of them, the present and former attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers, and agents of each of them, and the predecessors, heirs, successors and assigns of each (together, the "Defendant Releasees"), and any Person or entity which is or was related to or affiliated with any Defendant Releasee or in which any Defendant Releasee has or had a controlling interest and the present and former employees, members, partners, principals, managers, officers, directors, attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers, and agents of each of them (all, with the Defendant Releasees, the "Defendant Released Parties").

(ii) with respect to Plaintiffs: the Lead Plaintiff and all other Class Members, their respective present and former parents, subsidiaries, divisions and affiliates, the present and former employees, officers and directors of each of them, the present and former attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers, and agents of each of them, and the predecessors, heirs, successors and assigns of each (together, the "Plaintiff Releasees"), and any Person or entity in which any Plaintiff Releasee has or had a controlling interest or which is or was related to or affiliated with any Plaintiff Releasee.

"Unknown Claims" means:

(i) any Released Claims that Lead Plaintiff or any Class Member does not know of or suspect to exist in his, her or its favor at the time of the release of the Defendant Released Parties which, if known by him, her or it might have affected his, her or its Settlement with and release of the Defendant Released Parties, or might have affected his, her or its decision not to object to this Settlement or not to exclude himself, herself or itself from the Class. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Lead Plaintiff shall expressly waive, and each of the Class Members shall be deemed to have waived, and by

operation of the Judgment shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

(ii) Lead Plaintiff and Class Members may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff shall expressly, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff acknowledges, and the Class Members shall be deemed to have acknowledged, and by operation of the Judgment shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

## K. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?

To exclude yourself from the Settlement, you must send a letter by mail saying that you want to be excluded from the *In re IMAX Corporation Securities Litigation*, Civil Action No. 06 CIV. 6128 (NRB) Settlement. To be excluded, you must include your name, address, telephone number, information concerning the quantity of IMAX stock held at the close of business on October 17, 2007, all of your purchase(s) and sale(s) of such stock from February 27, 2003 through and including October 17, 2007, the dates of purchase (or other acquisition) and sale of the IMAX stock, the price paid or received in all purchases and sales excluding commissions and fees, and your signature. No request for exclusion will be considered valid unless all information described in the preceding sentence is included in the request. Any exclusion request must be postmarked or hand delivered to the address below by no later than __________:

In re IMAX Corporation Securities Litigation
c/o Strategic Claims Services
600 North Jackson Street - Suite 3
Media, PA 19063
1-866-274-4004
info@strategicclaims.net

You can't exclude yourself on the telephone. You also can't exclude yourself by e-mail (unless you have made prior written arrangements with the Administrator).

If you properly ask to be excluded, you will not receive any settlement payment and you cannot object to the Settlement from which you exclude yourself. You will also not be legally bound by anything that happens in the U.S. Action, and may be able to sue the Defendants concerning the claims being released in the Settlement in a separate action or remain a member of the Canadian Action. If you properly exclude yourself from the U.S. Action, and you purchased and held IMAX securities during the Canadian Class Period, you will remain a member of the class in the Canadian Action.

**L. <u>IF I DON'T EXCLUDE MYSELF, CAN I SUE THE SETTLING DEFENDANTS FOR THE SAME THING LATER?</u>**

No. If you do not exclude yourself from the Settlement, you cannot bring any of the Released Claims (including participating in the Canadian Action) against any Released Parties in the Settlement. Remember, the exclusion deadline is ____________________.

**M. <u>IF I EXCLUDE MYSELF, CAN I OBTAIN A PAYMENT FROM THE SETTLEMENT?</u>**

No. If you exclude yourself from the Settlement, you cannot receive any payment from the Settlement. In that case, do not send in a Proof of Claim and Release form to ask for any payment.

**N. <u>DO I HAVE A LAWYER IN THIS CASE?</u>**

The U.S. Court appointed the law firm of Abbey Spanier Rodd & Abrams, LLP, 212 East 39th Street, New York, NY 10016, as Lead Counsel to represent Class Members in this U.S. Action. You will not be charged for these lawyers, other than amounts those firms are awarded by the Court from the Settlement Fund. If you want to be represented by another lawyer, you may hire one at your own expense.

**O. <u>HOW WILL THE LAWYERS BE PAID?</u>**

The lawyers who acted as counsel for the Class during the course of the litigation will apply to the U.S. Court for an award of attorneys' fees from the Settlement Fund. Lead Counsel will apply for an award of attorneys' fees from the Settlement Fund not to exceed twenty-five percent (25%) of the Settlement and reimbursement of expenses of no greater than $____, plus interest on such amounts at the same rate earned by the Settlement Fund. This is the equivalent of an average of $____ per share of IMAX stock. Lead Counsel and other plaintiff's counsel have litigated the U.S. Action for five years on a contingent fee basis and have advanced the expenses of litigation with the expectation that if they were successful in recovering money for the Class, they would receive fees and be reimbursed for their expenses from the Settlement Fund, as is customary in this type of litigation.

## P. HOW DO I NOTIFY THE COURT THAT I DON'T LIKE THE SETTLEMENT?

You can tell the U.S. Court that you don't agree with the Settlement, the Plan of Allocation or Lead Counsel's request for attorneys' fees and reimbursement of expenses. If you are a Class Member you can object to the Settlement if you don't like any part of it. If you object to the Settlement, you can present reasons in writing why you think the U.S. Court should not approve the Settlement, the Plan of Allocation or Lead Counsel's request for attorneys' fees or expenses. The U.S. Court will consider your views. To object, you must send a letter saying that you are a Class Member in *In re IMAX Corporation Securities Litigation*, Civil Action No. 06 CIV. 6128 (NRB) and that you object to the Settlement, or any aspect of the Settlement. You must include your name, address, telephone number, information concerning the quantity of IMAX stock held at the close of business on October 17, 2007, all of your purchase(s) and sale(s) of such stock from February 27, 2003 through and including October 17, 2007, the dates of purchase (or other acquisition) and sale of the IMAX stock, the price paid or received in all purchases and sales excluding commissions and fees, and your signature. No objection will be considered valid unless all information described in the preceding sentence is included in the request. Any objection must be postmarked or hand delivered and filed with the Clerk of the U.S. Court no later than ____________ with copies to the addresses below:

**COURT**
Clerk of the Court
United States District Court for the Southern District of New York
Attn: *In re IMAX Corporation Securities Litigation,* Civil Action No. 06 CIV. 6128 (NRB)
500 Pearl Street
New York, NY 10007-1312

**LEAD COUNSEL**
Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, NY 10016

**DEFENDANTS' COUNSEL**
Lewis J. Liman
David Oliwenstein
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

M. Byron Wilder
Jason C. McKenney
Gibson Dunn & Crutcher, LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201

Jennifer L. Conn
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

If the U.S. Court rejects or modifies the Plan of Allocation and/or the amount of attorneys' fees or expenses requested, the U.S. Court may still approve the Settlement.

**Q. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND <u>REQUESTING EXCLUSION?</u>**

Objecting is simply telling the U.S. Court that you don't like something about the Settlement. You can object only if you stay in the U.S. Class. If you object to the Settlement you will be bound by the Settlement, and all the terms of the Stipulation including the terms of the Judgment to be entered in the U.S. Action and the releases provided therein. Excluding yourself means telling the Court that you don't want to be part of the U.S. Class. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you. With respect to the Settlement, you can either object or exclude yourself, but you cannot do both. If you properly exclude yourself from the U.S. Action, and you purchased IMAX stock between February 17, 2006, through August 9, 2006, you will remain a member of the class in the Canadian Action.

**R. WHEN AND WHERE WILL THE U.S. COURT DECIDE WHETHER <u>TO APPROVE THE SETTLEMENT?</u>**

The U.S. Court will hold a Fairness Hearing at ___:___ ___.m. on ____________, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, 10007-1312. At this hearing the U.S. Court will consider whether the Settlement is fair, reasonable and adequate and in the best interests of the U.S. Class. If there are objections, the U.S. Court will consider them. Judge Buchwald will listen to people who have asked in writing to speak at the hearing. The U.S. Court may also decide how much to award Lead Counsel and other counsel for attorneys' fees and expenses and whether to approve the Plan of Allocation. At or after the hearing, the U.S. Court will decide whether to approve the Settlement, the Plan of Allocation and an Award of Attorneys' fees and expenses. We do not know how long it will take the U.S. Court to make these decisions.

**S. DO I HAVE TO ANSWER QUESTIONS AT THE FAIRNESS <u>HEARING?</u>**

No. Lead Counsel and Defendants' Counsel will attempt to answer questions Judge Buchwald may have. But you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the U.S. Court will consider it. You may also pay your own lawyer to attend but it is not necessary.

**T. <u>MAY I SPEAK AT THE FAIRNESS HEARING?</u>**

You may ask the U.S. Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re IMAX Corporation Securities Litigation*". Be sure to include your name, address, telephone number and signature. Your Notice of Intention to Appear must be postmarked no later than ____________, and be sent to the Clerk of Court, Lead Counsel and Defendants' Counsel, at the addresses on page __, in question __. You cannot speak at the hearing if you exclude yourself.

## U. WHAT WILL HAPPEN IF I DO NOTHING AT ALL?

If you fail to file a timely Proof of Claim and Release in response to this Notice, you'll get no money from this Settlement. If you fail to exclude yourself, you will nevertheless release the Released Parties from the Released Claims in the Settlement, even if you do not file a Proof of Claim and Release. If you fail to exclude yourself, you will remain a member of the Class in the U.S. Action, and you cannot participate in the Canadian Action, which will be a Released Claim.

## V. ARE THERE MORE DETAILS ABOUT THE SETTLEMENT AND THE CANADIAN ACTION?

This Notice summarizes the proposed Settlement. More details are contained in the Settlement Agreement itself. You can obtain a copy of the Stipulation of Settlement by writing to Lead Counsel at the addresses set forth below, or by visiting www.__________ or www.abbeyspanier.com. Also available on the website are the Proof of Claim and Release, this Notice and documents relating to the Canadian Action.

If you have questions about the Settlement or the Canadian Action, you may write Lead Counsel at the addresses set forth below or call them toll free at 1-800-889-3701 or call the Administrator at 1-866-274-4004 toll free; or visit the websites referenced above, where you will find a link to the Administrator's website containing answers to common questions about the Settlement and a claim form, plus other information to help you determine whether you are a Class Member, and whether you are eligible for a payment.

ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, NY 10016
ATTN: IMAX Settlement

If you have more questions about the Canadian Action, you may write or contact counsel for the Canadian Class at Siskinds, LLP, 680 Waterloo Street, London, Ontario, Canada, 519-672-2121 or Siskinds.com.

**DO NOT CONTACT THE COURT**

## W. WHAT ARE MY RIGHTS AND OBLIGATIONS AS A SECURITIES BROKER OR NOMINEE?

SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you purchased or otherwise acquired IMAX shares on the NASDAQ between February 27, 2003 and July 20, 2007, inclusive, for the beneficial interest of a person or organization other than yourself, the Court has directed that, WITHIN TEN (10) BUSINESS DAYS OF YOUR RECEIPT OF THIS NOTICE, you must either (1) provide the Administrator the name and last known address of each person or organization for whom or for which you purchased or otherwise acquired such shares during the Class Period, preferably on computer-generated mailing labels or, electronically, in MS Word or

WordPerfect files (label size Avery # 5162), or in an MS Excel data table setting forth (a) title/registration, (b) street address, and (c) city/state/zip or (2) request additional copies of this Notice package (which will be provided to you free of charge) and within seven (7) days mail the Notice package form directly to the beneficial owners of the IMAX stock. If you choose to follow alternative procedure (2), the Court has directed that, upon such mailing, you send a statement to the Administrator confirming that the mailing was made as directed. You are entitled to reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of the beneficial owners. Those expenses will be paid after your request and submission of appropriate supporting documentation. All communications concerning the foregoing should be addressed to the Administrator:

In re IMAX Corporation Securities Litigation
c/o Strategic Claims Services
600 North Jackson Street - Suite 3
Media, PA 19063
1-866-274-4004
info@strategicclaims.net

**APPENDIX I**

**PLAN OF ALLOCATION OF THE SETTLEMENT FUND AMONG CLASS MEMBERS**

The Settlement Fund will be distributed to Class Members eligible for recovery pursuant to the Settlement who submit valid and timely Proof of Claim and Release forms ("Authorized Claimants") in connection with the Plan of Allocation described below. "Class Members" means persons who purchased IMAX shares on the NASDAQ between February 27, 2003 and July 20, 2007, inclusive, excluding the Defendants in the U.S. Action and Canadian Action, members of those Defendants' immediate families, all individuals who are either a current officer and/or director of any Defendant, or who served as an officer or director of any Defendant at any time during the Class Period, who does not submit a timely and valid request for exclusion from the Settlement. The Plan of Allocation provides that you will be eligible to participate in the distribution of the Settlement Fund only if you have a net loss on all transactions in IMAX stock purchased during the Class Period. The Plan of Allocation will be submitted to the Court for its approval at the Fairness Hearing, but will be considered by the Court separately from the Settlement itself.

A purchase or sale of IMAX common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, devise, or operation of law of IMAX common stock during the Class Period shall not be deemed a purchase or sale of IMAX common stock for the calculation of an Authorized Claimant's recognized loss, nor shall it be deemed an assignment of any claim relating to the purchase of such shares unless specifically provided in the instrument of gift or assignment. The receipt of IMAX common stock during the Class Period in exchange for securities of any other corporation or entity shall not be deemed a purchase or sale of IMAX common stock.

To the extent an Authorized Claimant had a gain from his, her, or its overall transactions in IMAX common stock during the Class Period, the value of the recognized loss will be zero. To the extent that a Claimant suffered an overall loss on his, her, or its overall transactions in IMAX common stock during the Class Period, but that loss was less than the recognized loss calculated above, then the recognized loss shall be limited to the amount of the actual loss. There shall be no recognized loss on short sales of IMAX common stock during the Class Period; however, any recognized gains with respect to short sales shall be offset against recognized losses on other transactions.

The Recognized Loss of each Authorized Claimant shall be calculated according to the following formula:

A. For shares held at the end of trading on October 17, 2007, the Recognized Loss shall be that number of shares multiplied by the lesser of:

(1) the applicable purchase date artificial inflation per share figure, as found in Table A; or

(2) the difference between the purchase price per share and $4.42.[1]

---

[1] Pursuant to Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated." $4.42 was the mean closing price of IMAX Corporation common stock on NASDAQ during the 90-day period beginning on July 20, 2007 and ending on October 17, 2007.

B. For shares sold between February 27, 2003 and July 19, 2007, inclusive, the Recognized Loss shall be that number of shares multiplied by the lesser of:

(1) the applicable purchase artificial inflation per share figure less the applicable sales date artificial inflation per share figure, as found in Table A; or

(2) the difference between the purchase price per share and the sales price.

C. For shares sold between July 20, 2007 and October 17, 2007, the Recognized Loss shall be the lesser of:

(1) the applicable purchase date artificial inflation per share figure, as found in Table A; or

(2) the difference between the purchase price per share and the average closing price of IMAX common stock between July 20, 2007 and the date of sale.[2]

**Table A**

| Purchase or Sale Date Range | Artificial Inflation Per Share |
|---|---|
| 02/27/2003 - 08/09/2006 | $3.90 |
| 08/10/2006 - 07/20/2007 | $0.00 |

[2] Pursuant to Section 21(D)(e)(2) of the Private Securities Litigation Reform Act of 1995, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security."