# EXHIBIT A
# (PART 4)

# EXHIBIT E

This is Exhibit E referred to in the affidavit of Carolyn Piovesan sworn before me, this 7 day of May 2012

A COMMISSIONER FOR TAKING AFFIDAVITS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

In re IMAX SECURITIES LITIGATION

**MEMORANDUM AND ORDER**

----------------------------------X

06 Civ. 6128 (NRB)

**NAOMI REICE BUCHWALD**

**UNITED STATES DISTRICT JUDGE**

By Memorandum and Order dated December 20, 2010, we denied former lead plaintiff Snow Capital Investment Partners, L.P.'s ("Snow Capital") motion for class certification and directed the filing of motions by any entity seeking to be named new lead plaintiff in this securities class action. Presently before the Court are motions from The Merger Fund and Ironworkers St. Louis District Counsel Pension Fund ("Ironworkers") to be named lead plaintiff. For the reasons set forth below, The Merger Fund is named lead plaintiff and its counsel, Abbey Spanier Rodd & Abrams LLP ("Abbey Spanier"), is named lead counsel.

**BACKGROUND**

This is the third time that this Court has been presented with a motion to select a lead plaintiff in this five-year old securities class action. Familiarity with this Court's prior orders and opinions in this case are assumed, and we do not repeat them here. The procedural background relevant for the present motions is as follows:

- On January 17, 2007 we named Westchester Capital Management, Inc. ("Westchester") lead plaintiff, and its counsel, Abbey Spanier, lead counsel.
- On December 3, 2008, the Second Circuit decided W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100 (2d Cir. 2008), holding that an investment adviser lacked standing to bring a securities fraud claim on behalf of its clients because it did not suffer an injury in fact.
- On January 17, 2009, Westchester entered into an Assignment Agreement with The Merger Fund (and other funds for which Westchester served as an investment advisor), under which The Merger Fund assigned to Westchester "all rights, legal title and interest in its claims relating to IMAX securities." See Dkt. No. 109, Ex. C.
- Relying on the Second Circuit's decision in Huff, on April 3, 2009, Snow Capital moved for reconsideration of our January 17, 2007 Order appointing Westchester lead plaintiff.
- On June 29, 2009, we granted Snow Capital's motion for reconsideration and appointed it lead plaintiff and it is counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") lead counsel.
- On December 20, 2010 we denied Snow Capital's motion for class certification, held that this case could not proceed with Snow Capital as class representative, and directed that new applications to be named lead plaintiff be filed within twenty-one days.

- On January 5, 2011, Westchester reassigned its interest in its legal claims against IMAX back to The Merger Fund. See Decl. of Richard B. Margolies in Support of The Merger Fund's Reply Mem. of Law to Ironworkers St. Louis District Counsel Pension Fund's Opp'n to its Mot. for Appointment of Lead Pl. and Lead Counsel ("Margolies Reply Decl."), Ex. A.[1]

- On January 10, 2011, The Merger Fund filed its motion to be named lead plaintiff, and for Abbey Spanier to be named lead counsel.

- On January 12, 2011, Ironworkers filed its competing motion to be named lead plaintiff, and for Robbins Geller to be named lead counsel.

**DISCUSSION**

Our previous orders in this case have set forth the legal framework for selecting a lead plaintiff under the Private Securities Litigation Reform Act ("PSLRA"). See, e.g., In re IMAX Sec. Litig., 2009 WL 1905033, at *3 (S.D.N.Y. 2009). As we have stated, a plaintiff is presumed to be the most adequate plaintiff if it: (1) has either filed a complaint or made a motion in response to the publication of notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Id. (citing 15 U.S.C. § 78-4(a)(3)(B)(iii)(I)).

**I. Filing Requirement**

---

[1] Westchester Capital Management, LLC, which acquired substantially all of the business and assets of Westchester on December 31, 2010, was the assignor in the January 5, 2011 agreement. See Margolies Reply Decl., Ex A.

Case 1:06-cv-06128-NRB Document 167 Filed 04/04/11 Page 4 of 22

With regard to the first requirement, both The Merger Fund and Ironworkers have filed motions in response to this Court's December 20, 2010 Order. While The Merger Fund's motion was filed on January 10, 2011, twenty-one days after the December 20, 2010 Order was dated, and Ironworkers' motion was filed on January 12, 2011, twenty-one days after the December 20, 2010 was docketed, we consider both motions timely.

We recognize that while both The Merger Fund and Ironworkers filed timely motions in response to the December 20, 2010 Order, neither moved to be named lead plaintiff in response to the initial notice of pendency filed in this action in 2006. Thus, both appear not to be in compliance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa), which requires that a potential lead plaintiff either file a complaint or make a motion to serve as lead plaintiff within sixty days of having received notice of the suit. Nevertheless, under the circumstances of this case in which we denied the second lead plaintiff's motion for class certification and there was no other lead plaintiff, we determined that the best course of action was to re-open the lead plaintiff application process for a twenty-one day period.

There is support for allowing a plaintiff who did not seek lead plaintiff status at the outset to seek such status after the withdrawal of the original lead plaintiff. Indeed, courts

have re-opened the application process in situations where lead plaintiffs have withdrawn (see, e.g., Order on Pending Motions, In re HealthSouth Sec. Litig., Civ-03-BE-1500-S (N.D. Ala. Dec. 1, 2004); In re Neopharm, Inc. Sec. Litig., 02 C 2967, 2004 WL 742084, at *2-3 (N.D. Ill. Apr. 7, 2004)), and granted a motion to substitute a new lead plaintiff who did not file an application within sixty days of the original notice of pendency. In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 120 (S.D.N.Y. 2003). In In re Initial Pub. Offering Sec. Litig., a court in this district considered any movant timely who either (a) filed a complaint, (b) moved to be appointed lead plaintiff in response to the initial notice of pendency, or (c) moved to be appointed lead plaintiff within sixty days of the withdrawal of the previous lead plaintiff. 214 F.R.D. at 120. The court noted that while there was a "colorable argument" that the entire lead plaintiff process should have been re-opened, it was unnecessary in that case because all putative class members were given notice of the opportunity to move to be named lead plaintiff when the original notice was published, and none did so. Id. at 120, n.5. Here, unlike in In re Initial Pub. Offering Sec. Litig., there were a number of movants who sought to be named lead plaintiff when the original notice was published. See Kaplan v. Gelfond, 240 F.R.D. 88, 90 (S.D.N.Y. 2007). To the extent that any of the original movants (who have

Case 1:06-cv-06128-NRB Document 167 Filed 06/07/11 Page 6 of 23

not withdrawn their applications or previously been removed by this Court) sought to be named lead plaintiff at this stage of the litigation, they received notice of this Court's December 20, 2010 Order, but did not submit an application. In any event, The Merger Fund's claimed losses far exceed the losses of any of the original movants who could have renewed an application at this time. Thus, even if we were to consider the remaining movants from the first lead plaintiff application process, The Merger Fund, for the reasons discussed below, would still be named lead plaintiff.

## II. Largest Financial Interest

With regard to the financial interest requirement, there is no dispute that The Merger Fund has a significantly greater financial interest in the relief sought by the class: The Merger Fund claims losses of between $3,254,827.20 and $3,633,937 during the Class Period (February 27, 2003 through July 20, 2007) (Mem. of Law in Support of The Merger Fund's Mot. to be Appointed Lead Pl. and for Approval of Lead Counsel ("The Merger Fund Mem.") at 6) and Ironworkers claims losses of $65,297.21 (Mem. of Law in Support of Ironworkers St. Louis District

Counsel Pension Fund's Mot. For Appointment of Lead Pl. and Lead Counsel ("Ironworkers Mem.") at 7).[2]

**III. Rule 23 Analysis**

We thus turn to the third inquiry, namely whether the proposed lead plaintiff satisfies Rule 23's typicality and adequacy requirements. Here, Ironworkers argues that The Merger Fund is subject to two unique defenses that prevent it from serving as lead plaintiff. First, Ironworkers argues that The Merger Fund's reassignment of its legal claims subjects it to a unique defense because the reassignment violates New York's anti-champerty statute, N.Y. Jud. Ct. Acts Law § 489(1). Mem. of Law in Opp'n to The Merger Fund's Mot. for Appointment of Lead Pl. and Lead Counsel ("Ironworkers Opp'n Mem.") at 4-5. Second, Ironworkers contends that "The Merger Fund's purchases and sales of IMAX common stock were pursuant to a merger arbitrage investment strategy, and were not influenced by the misleading statements at the heart of this action." Id. at 1.[3] We consider each argument in turn.

---

[2] The Merger Fund argues that Ironworkers' claimed losses of $65,297.21 should be reduced pursuant to this Court's loss causation analysis in its December 20, 2010 opinion. See The Merger Fund's Mem. of Law in Opp'n to Ironworkers St. Louis District Pension Fund's Mot. for Appointment of Lead Pl. and Lead Counsel ("The Merger Fund Opp'n") at 2, n.1. For purposes of the present motions, it is sufficient to find that, under any analysis, The Merger Fund's financial interest substantially exceeds that of Ironworkers. Ironworkers has not suggested otherwise.

[3] Ironworkers also argues that because The Merger Fund previously assigned its causes of action against IMAX to Westchester, it "is not even entitled to

Case 1:06-cv-06128-NRB Document 167 Filed 04/14/11 Page 8 of 22

A. Anti-Champerty

New York's anti-champerty statute provides, in relevant part:

> [N]o corporation or association . . . shall . . . take an assignment of . . . a . . . thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon . . . . Any corporation or association violating the provisions of this section shall be liable to a fine of not more than five thousand dollars; any person or co-partnership, violating the provisions of this section, and any officer, trustee, director, agent or employee of any . . . co-partnership, corporation or association violating this section who, directly or indirectly, engages or assists in such violation, is guilty of a misdemeanor.

N.Y. Jud. Ct. Acts Law § 489(1). Ironworkers contends that The Merger Fund's reassignment of its legal rights to its claims against IMAX "appears to [be] in violation of § 489," and thus that The Merger Fund could be subject to misdemeanor criminal liability under the statute. Ironworkers Opp'n Mem. at 5. As a result, Ironworkers claims, The Merger Fund is subject to a unique defense. We disagree. An analysis of the history of New York's anti-champerty law, the courts' consistently narrow interpretation of that law, and, most significantly, the circumstances of the reassignment in this case all lead to the

---

assert claims against IMAX on its own behalf, much less to act as lead plaintiff on behalf of a proposed class of investors." Ironworkers Opp'n at 1. Ironworkers appears to have advanced this argument prior to having received notice of Westchester's reassignment of its claims against IMAX back to The Merger Fund. See id. at 3 ("The Merger Fund has failed to produce any documentation indicating that . . . it has regained legal title to its claims against IMAX.")

conclusion that The Merger Fund's reassignment of its legal claims does not implicate the anti-champerty statute and does not subject it to a unique defense that could threaten to become the focus of this litigation.

**1. Background on the Statute**

In order to assess Ironworkers' champerty argument, it is useful to consider the history of the doctrine, as explained by the New York Court of Appeals:

> The "champerty" concept is based on a type of French feudal tenure in land, a "champart," in which the fee for use of the land was neither in money nor ordinary service in kind. The tenant-by-champart was a partial owner of the land bound to share any rents and profits with the grantor, but the grantor took the risk that the crops might fail and that there would be no return. Anyone who then obtained a legal interest in that grant of land would also take a share of the profits in champart.
>
> "Champerty," as a term of art, grew out of this practice to describe the medieval situation where someone bought an interest in a claim under litigation, agreeing to bear the expenses but also to share the benefits if the suit succeeded. The most important litigation of that era was over land, and a person who bought lawsuits could acquire a partial interest in landed estates -- an estimable power play. The taint on the process arose because the purchase price was usually far below the value of the potential land acquisition--a transaction suffused with speculation related to the "sin" of usury and its concomitant legal prohibitions. The champerty transaction, however, evaded the strict prohibitive laws involving usury.
>
> Even as the feudal system faded, English law retained the word "champart" as a metaphor to indicate a disapproval of lawsuits brought "for part of the profits" of the action. Because lawyers were usually

> the instruments of such practices, "champertors [were] nearly always lawyers."
>
> Indeed, early New York cases indicate that the prohibition of champerty was limited in scope and largely directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs, which, at the time, included attorneys' fees. Consistent with this limited purpose, New York's early statutory prohibitions against champerty, found in the Revised Statutes and then in the Code of Civil Procedure, were specifically addressed to lawyers. However, in 1907, the prohibitions were extended to nonlawyers and corporations.

Bluebird Partners, L.P. v. First Fid. Bank, N.A., 94 N.Y.2d 726, 733-34, 709 N.Y.S.2d 865 (N.Y. 2000)(internal citations omitted).

In light of this historical background, New York courts have consistently emphasized that the anti-champerty doctrine should be applied narrowly. In a recent analysis of the champerty statute, the New York Court of Appeals observed that "[t]he doctrine of champerty developed to prevent or curtail the commercialization of or trading in litigation," and stated that "the prohibition of champerty has always been limited in scope and largely directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs." Trust for the Certification of Merrill Lynch Mortg. Investors, Inc. v. Love Funding Corp., 13 N.Y.3d 190, 198, 890 N.Y.S.2d 377, 918 N.E.2d 889, 893 (N.Y. 2009). See also Richbell Info. Servs., Inc. v.

Jupiter Partners, 280 A.D.2d 208, 215, 723 N.Y.S.2d 134, 139 (N.Y. App. Div. 1st Dep't 2001) ("The courts historically have interpreted the proscription of § 489 as a narrow one.").

Addressing the question of whether a party's purchase of the rights to bring a lawsuit in order to collect damages for losses on a debt instrument in which the purchaser held a pre-existing proprietary interest violated the anti-champerty law, the Court of Appeals in Love Funding Corp. held that the statute "does not apply when the purpose of an assignment is the collection of a legitimate claim." Id., 13 N.Y.3d at 201, 890 N.Y.S.2d 377, 918 N.E.2d at 889. Rather, "if a party acquires a debt instrument for the purpose of enforcing it-that is not champerty simply because the party intends to do so by litigation." Id., 13 N.Y.3d at 200, 890 N.Y.S.2d 377, 918 N.E.2d at 889. The Court of Appeals further emphasized the distinction between acquiring a right in order to make money from litigating it and acquiring a right in order to enforce it, with the former acquisition being the kind that implicates the anti-champerty statute. See id., 13 N.Y.3d at 200, 890 N.Y.S.2d 377, 918 N.E.2d at 894. The court explained that "[t]he champerty statutes are directed at preventing the 'strife, discord and harassment' that would be likely to ensue 'from permitting attorneys and corporations to purchase claims for the purpose of bringing actions thereon.'" Id., 13 N.Y.3d at 199,

918 N.E.2d at 893 (quoting Fairchild Hiller Corp. v. McDonnell Douglas Corp., 28 N.Y.2d 325, 329, 321 N.Y.S.2d 857, 270 N.E.2d 691 (N.Y. 1971)). "In short, the champerty statute does not apply when the purpose of an assignment is the collection of a legitimate claim. What the statute prohibits, as the Appellate Division stated over a century ago, 'is the purchase of claims with the intent and for the purposes of brining an action that [the purchaser] may involve parties in costs and annoyance, where such claims would not be prosecuted if not stirred up . . . in [an] effort to secure costs." Id., 13 N.Y.3d at 201, 918 N.E.2d at 895 (quoting Wightman v. Catlin, 113 A.D. 24, 28, 98 N.Y.S. 1071 (N.Y. App. Div. 2d Dep't 1906)).

In light of the history and purpose of the anti-champerty statute, courts have often looked to the relationship between the assignor and assignee when considering whether an assignment falls within the statute's purview. For example, in Empresa Cubana Exportadora De Azucar y Sus Derivados v. Lamborn & Co., Inc., 652 F.2d 231, 236 (2d Cir. 1981), the Second Circuit stated that where an assignment had been "made between two closely affiliated business enterprises, both of which had been parties to the transaction upon which suit was brought," New York courts would not apply the anti-champerty statute. See also Sygma Photo News, Inc. v. Global Int'l Inc., 616 F.Supp. 1153, 1157 (S.D.N.Y. 1985) (defining champerty as a "bargain

between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds")(quoting Alexander v. Unification Church of America, 634 F.2d 673, 677 n.5 (2d Cir. 1980); American Hemisphere Marine Agencies, Inc. v. Kreis, 244 N.Y.S.2d 602, 603, 40 Misc.2d 1090, 1091 (Sup.Ct.N.Y.Cty. 1963) ("[I]t is uncontradicted that plaintiff and its assignor are interrelated corporations, and it is clear that plaintiff itself was involved in the transactions alleged from the very beginning. In such circumstance, the assignment was not in the purview of Section 275 of the Penal Law (predecessor of current section 489).").

**2. The Reassignment To The Merger Fund**

Under the circumstances of the reassignment at issue in this case, we find that The Merger Fund's reassignment of its legal rights to it claims against IMAX is not one that implicates New York's anti-champerty statute, and does not subject it to unique defenses that may threaten to become the focus on the litigation.

As a preliminary matter, both the relationship between The Merger Fund and Westchester and the history of this litigation strongly counsel against an application of champerty principles. When Westchester originally applied to be lead plaintiff in 2006, it did so on behalf of The Merger Fund (and other funds). See Margolies Reply Decl., Ex. C. At that time, Westchester

Case 1:06-cv-06128-NRB Document 187 Filed 04/14/11 Page 14 of 22

served as The Merger Fund's investment advisor and controlled all investments made in the Fund. See id., Ex. D at ¶ 2. After the Second Circuit's decision in Huff, The Merger Fund assigned its rights to Westchester in an attempt to allow Westchester to continue as the lead plaintiff in this case. The Merger Fund Opp'n at 3. While that attempt was ultimately unsuccessful, there can be no serious argument (and Ironworkers does not suggest) that the reassignment was the "acquisition of a cause of action by a stranger to the underlying dispute." Richbell Info. Servs., 280 A.D.2d 208, 723 N.Y.S.2d 134, 139 (N.Y. App. Div. 2001) (quoting Jamaica Pub. Serv. Co. v. La Interamericana Compania De Seguros Generales, S.A., 262 A.D.2d 73, 693 N.Y.S.2d 6,7 (N.Y. App. Div. 1999)). Here, the Merger Fund is certainly not a "stranger[] to the dispute merely speculating on the suit." Id. Rather, it has been involved in this suit from the beginning.

Furthermore, it is undisputed that The Merger Fund had a legitimate claim against IMAX prior to the onset of this litigation.[4] The reacquisition of its legal rights to those claims does not suggest a "commercialization of litigation" or

---

[4] In addition, it is clear that The Fund had Article III standing at the time this action was commenced—a factor that we considered when deciding that Westchester should not remain lead plaintiff in spite of its acquisition of the legal rights to The Merger Fund's claims against IMAX. See In re IMAX Sec. Litig. 06 Civ. 6128 (NRB), 2009 WL 1905033, at *2-3 (S.D.N.Y. June 29, 2009); see also In re SLM Corp. Sec. Litig., 08 Civ. 1029 (WHP), 2009 WL 969934, at *3 (S.D.N.Y. Apr. 1, 2009).

involve the bringing of a claim to "involve parties in costs and annoyance, where such claims would not be prosecuted if not stirred up . . . in [an] effort to secure costs." Love Funding Corp., 13 N.Y.3d at 199, 918 N.E.2d at 893. Applying the New York Court of Appeals' recent opinion emphasizing the "difference between one who acquires a right in order to make money from litigating it and one who acquires a right in order to enforce it," it is apparent that, under the circumstances of this case, The Merger Fund's reacquisition falls within the latter category and thus is beyond the scope of the champerty statute. Indeed, it would be an odd result if the reacquisition of a legal right that had been assigned to an assignee for the express purpose of seeking to maintain a claim on behalf of the assignor were to violate a statute designed to curtail the commercialization of litigation.

Thus, in light of the purpose of New York's anti-champerty statute, New York courts' interpretation of that statute, and the circumstances of the reassignment at issue in this case, we find that The Merger Fund's reassignment does not implicate the anti-champerty statute and does not subject it to a unique defense that could threaten to become the focus on this litigation.[5]

---

[5] Furthermore, we note that in all three cases cited by Ironworkers in support of its champerty argument, the courts found that the assignments did not violate the anti-champerty statute.

B. The Merger Fund's Investment Strategies

Ironworkers contends that The Merger Fund is subject to a second unique defense because it utilized a merger arbitrage investment strategy. Ironworkers Opp'n at 5-6. Similar arguments concerning sophisticated investment strategies have been rejected by a number of courts, and we reject the contention here. See, e.g., Burch v. SLM Corp., 08 Civ. 2463 (WHP), 2008 WL 2945348 (S.D.N.Y. July 23, 2008) (rejecting argument that merger arbitrage strategy rendered lead plaintiff (Westchester) atypical); In re Flag Telecom Holdings, Ltd. Sec. Litig., 245 F.R.D. 147, 164 (S.D.N.Y. 2007), aff'd in relevant part, 574 F.3d 29 (2d Cir. 2009)("[I[t is well-established that an investor's sophistication does not preclude him from relying on the integrity of the market and asserting the fraud-on-the-market presumption."); In re Initial Pub. Offering Sec. Litig., 227 F.R.D. 65, 109 (S.D.N.Y. 2004) (stating, in the context of Rule 23(b)'s predominance analysis, that "[i]t can be stated without fear of gainsay that the shareholders of every large, publicly traded corporation includes [sic] institutional investors, short-sellers, arbitragers, etc. The fact that these traders have divergent motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price played no part whatsoever in their decision

making.") (quoting Moskowitz v. Lopp, 128 F.R.D. 624, 630-31 (E.D. Pa. 1989)).

Ironworkers further argues that The Merger Fund is subject to a unique defense because its merger arbitrage investment strategy relies on the proposition that the market is inefficient. To support its argument, Ironworkers cites to the testimony of Roy Behren, the portfolio manager of The Merger Fund, taken during a deposition in connection with Westchester's motion for class certification in this case. A review of that testimony, which is subject to a protective order, leads to the conclusion that The Merger Fund's investment strategy was both sophisticated and based upon merger arbitrage—but was not "reliant upon the proposition that the market is inefficient," as Ironworkers claims. Ironworkers Opp'n Mem. at 6. In sum, Ironworkers has not shown that The Merger Fund's investment strategy subjects it to unique defenses and thus has not rebutted the presumption that The Merger Fund should be named lead plaintiff.[6]

[6] Separately, Ironworkers contends that it is better able to represent the entire class because it purchased IMAX stock both before and after February 17, 2006, whereas The Merger Fund only purchased stock after that date. Ironworkers Reply Mem. at 4. While our December 20, 2010 opinion held that Snow Capital could not be class representative because its purchased all of its shares prior to February 17, 2006 and sold all of its shares prior to August 9, 2006 (and thus could not show loss causation), we did not hold that a lead plaintiff must purchase shares throughout a class period. That is not the law in this Circuit. See, e.g., Hevesi v. Citigroup Inc., 366 F.3d 70,

## IV. Co-Lead Plaintiffs

Ironworkers argues that if it is not named sole lead plaintiff, it should be named co-lead plaintiff with The Merger Fund (and Abbey Spanier and Robbins Geller should be named co-lead counsel). Ironworkers argues that, due to the length of time that this case has been pending, this Court should appoint Ironworkers as co-lead plaintiff "in the interests of 'stability'" and in order to avoid further delay. Ironworkers Reply Mem. at 6. Having found that The Merger Fund is not subject to unique defenses that threaten to become the focus of this litigation, we see no benefit to naming Ironworkers, which has not been involved in any aspect of this five-year old case, co-lead plaintiff.

## V. Lead Counsel

The PSLRA directs the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval. 15 U.S.C. §78u-4(3)(B)(v). We approve of The Merger Fund's selection of the law firm of Abbey Spanier, which previously

---

82 (2d Cir. 2004) ("[B]ecause the PSLRA mandates that courts must choose a party who has, among other things, the largest financial state in the outcome of the case, it is inevitable that, in some cases, lead plaintiff will not have standing to sue on every claim."). See also id. ("Moreover, the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class.").

served as lead counsel for Westchester in this litigation, and whose familiarity with this case will benefit the class members.

Recognizing the unlikelihood of Ironworkers' appointment as lead plaintiff, Robbins Geller has argued that, even if Ironworkers is not named lead plaintiff, Robbins Geller should continue to serve as class counsel or, at a minimum, as co-class counsel. The essence of Robbins Geller's argument is that it should remain as counsel because it has invested significant time and expense in the prosecution of this case, and thus that its continued involvement will benefit the class. Ironworkers Mem. at 11. Even though The Merger Fund has selected Abbey Spanier as its counsel, Robbins Geller emphasizes that, under the PSLRA, a lead plaintiff's selection of lead counsel is subject to court approval. Id. Under the unique circumstances of this case, Robbins Geller contends, the class is best suited by its continued involvement.

It is certainly true that a lead plaintiff's selection of lead counsel is subject to the court's approval. Nevertheless, the "court should generally employ a deferential standard in reviewing the lead plaintiff's choices." In re Smith Barney Transfer Agent Litig., 05 Civ. 7538 (WHP), 2006 WL 991003, at *6 (S.D.N.Y. Apr. 17, 2006)(internal quotation marks and citation omitted). While Robbins Geller cites to a number of cases that recite the general proposition that the appointment of lead

counsel is within the court's discretion, none of those cases support the proposition that Robbins Geller should remain as counsel at this stage of the litigation, after its previous motion to be named class counsel was denied, and now that a new lead plaintiff has been named.[7]

At the same time that it emphasizes this Court's discretion to name lead counsel, Robbins Geller contends that "[t]he Second Circuit has refused to permit class plaintiffs to substitute counsel," and thus that Robbins Geller should remain lead counsel. Ironworkers Mem. at 12. But, again, none of the cases Robbins Geller cites apply to the circumstances of this case. For example, Robbins Geller relies on Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072 (2d Cir. 1995), in which the Second Circuit upheld a district court's denial of a motion brought by class representatives to discharge class counsel after a proposed settlement had been reached. Id. at 1076. The Second Circuit agreed with the district court's "characterization of [the class representatives] attempt to discharge class counsel as a 'hasty' move 'on the eve of the Settlement Hearing.'" Id. at 1079. The facts and procedural

[7] See In re Cree, Inc., Sec. Litig., 219 F.R.D. 369, 372 (M.D.N.C. 2003)(approving a lead plaintiff's choice of lead counsel, and holding that multiple lead plaintiffs were not necessary); In re Lucent Techs. Inc. Sec. Litig., 221 F.Supp.2d 472, 489 (D.N.J. 2001) (holding that lead co-counsel should be selected through a sealed bid auction); In re Milestone Scientific Sec. Litig., 183 F.R.D. 404, 419 (D.N.J. 1998)(rejecting an application for the appointment of multiple lead counsel).

Case 1:06-cv-06128-NRB Document 167 Filed 04/14/11 Page 21 of 22

posture in Maywalt are hardly comparable to those presently before this Court. Indeed, if the designation of new lead counsel were impermissible, Robbins Geller would never have been named lead counsel in this case. Rather, when this Court granted Snow Capital's motion for reconsideration and named it lead plaintiff, it would have ordered that Abbey Spanier remain lead counsel. That, of course, did not happen.[8]

We do not doubt that Robbins Geller has invested significant time and effort into the prosecution of this case. However, in light of the long history of this case, The Merger Fund and Abbey Spanier's prior involvement in this case, the fact that this Court just denied a motion for class certification in which Robbins Geller was moving to be named class counsel and, not insignificantly, the reasoning underlying our denial of the motion for class certification, which was

[8] In its brief, The Merger Fund cites to a recent decision from the Central District of California, Maine State Ret. Sys. v. Countrywide Fin. Corp., No. 10 Civ. 00302 (C.D. Cal. May 14, 2010), in which the court denied the motion of a group of institutional investors to be named lead plaintiff in a federal securities class action because they did not have the largest financial interest in the case. Even though those lead plaintiffs, who were represented by Robbins Geller, had spent over two years prosecuting the case in state court (before it was dismissed for lack of subject matter jurisdiction), and, as the court recognized "a considerable number of attorney hours [had] been expanded by counsel," the court held that the movant with the largest financial interest should be named lead plaintiff, and its selected counsel lead counsel. Id. at 11. While Maine State Ret. Sys. addressed the question of whether a party's prior experience with a case rebutted the presumption that the party with the largest financial interest should be named counsel (and not the question of whether lead counsel should remain on a case regardless of who the named lead plaintiff is), we find the court's analysis instructive and note that the court in that case appointed as lead counsel a firm that presumably did not have the familiarity with the case that Abbey Spanier has here.

critical of Robbins Geller, we find that the best interests of the class will be met through the appointment of a sole lead plaintiff, The Merger Fund, and a sole lead counsel, Abbey Spanier, both of whom have already had significant involvement with this case. Robbins Geller can provide Abbey Spanier with its work product accumulated in this case and, ultimately, if the case ever does reach a successful result for the class, Robbins Geller can make a fee application to this Court at the appropriate time.

CONCLUSION

For the reasons set forth above, The Merger Fund is named lead plaintiff and Abbey Spanier Rodd & Abrams LLP is named lead counsel. The parties are directed to appear for a conference on April 26, 2011 at 4:15 p.m at the United States Courthouse, 500 Pearl Street, New York, New York, in Courtroom 21A.

Dated: New York, New York
April 14, 2011

NAOMI REICE BUCHWALD

UNITED STATES DISTRICT JUDGE

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB)<br>ECF Case |

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("MOU") is entered into as of this 2nd ~~1st~~ day of November, 2011, by and among (i) The Merger Fund ("Lead Plaintiff"), on behalf of all individuals ("Plaintiffs") who purchased or otherwise acquired IMAX Corporation ("IMAX") common stock on the NASDAQ from February 27, 2003 through July 20, 2007, (ii) IMAX, (iii) Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, and Kathryn A. Gamble (the "Individual Defendants", and collectively with IMAX, the "IMAX Defendants"), and (iv) PricewaterhouseCoopers, LLP, an Ontario Limited Liability Partnership ("PwC-Canada") and collectively with the IMAX Defendants, "Defendants") (all, collectively, the "Parties") by their respective undersigned attorneys ("Counsel").

A. WHEREAS, from August 11, 2006 through September 18, 2006, lawsuits were filed (the "Actions") against all or certain of the Defendants in the United States District Court for the Southern District of New York alleging that IMAX improperly recognized revenue on theater systems. Most of the lawsuits alleged that IMAX issued false statements between February 17, 2006 and August 9, 2006 and asserted claims on behalf of a putative class of IMAX shareholders during that period; one complaint alleged that IMAX made false statements between October 28, 2004 and August 9, 2006 and asserted claims on behalf of a putative class of IMAX shareholders from that longer period;

This is Exhibit F referred to in the affidavit of Carolyn Piovesan sworn before me, this 7 day of May 2012

A COMMISSIONER FOR TAKING AFFIDAVITS

B. WHEREAS, on September 20, 2006, following the filings of the Actions, a lawsuit was filed in Ontario Superior Court (the "Canadian Court") in Silver v. IMAX Corp., Court File No. CV-06-3257-00, (Ontario Superior Court of Justice, Canada) (the "Canadian Action") alleging, based on substantially identical facts to those alleged in the Actions, that, during the time period from February 17, 2006 through August 9, 2006, IMAX improperly recognized revenue on theater systems;

C. WHEREAS, on October 2, 2007, a consolidated amended class action complaint was filed in the United States District Court for the Southern District of New York (the "Consolidated Class Action Litigation" or the "U.S. Action");

D. WHEREAS, the Consolidated Class Action Litigation asserts claims on behalf of all persons who purchased IMAX securities on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive, against the IMAX Defendants and PWC-Canada (the "U.S. Class Period") (the "U.S. Class");

E. WHEREAS, the Canadian Action, as amended, and as certified as a class proceeding by order of the Canadian Court, asserts claims against IMAX, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble, Kenneth Copland, Neil Braun, David Leebron, and Garth Girvan on behalf of a global class of individuals who purchased IMAX Securities on either the NASDAQ or the Toronto Stock Exchange during the period from February 17, 2006 through August 9, 2006 (the "Canadian Class Period") (the "Canadian Class");

F. WHEREAS, the IMAX Defendants estimate that approximately 83.9 percent of the shares of IMAX securities at issue in the Canadian Action were purchased on the NASDAQ and those members of the Canadian Class who purchased IMAX securities on the

NASDAQ are also members of the U.S. Class. In addition, the United States Class includes persons who purchased IMAX securities on the NASDAQ from February 27, 2003 to February 17, 2006, (prior to the beginning of the Canadian Class Period) and after August 9, 2006, (after the Canadian Class Period) and are thus not members of the Canadian Class;

G. WHEREAS, on April 14, 2011, the Court entered an order appointing the Merger Fund as Lead Plaintiff and the firm of Abbey Spanier Rodd & Abrams, LLP as lead counsel ("Lead Plaintiff's Counsel");

H. WHEREAS, the Lead Plaintiff has retained counsel in Canada to make submissions to the Canadian Court with respect to the issue of notice to the Canadian Class;

I. WHEREAS, Defendants dispute any liability or damages under the laws of the United States and each of the several States, the laws of Canada, and the laws of any other jurisdiction, and have expressed their intention to vigorously defend themselves in any jurisdiction where they have been sued or could be sued, including by the filing of dispositive motions and defending through trial;

J. WHEREAS, the IMAX Defendants, while expressing their willingness to agree to a global settlement of both the U.S. Action and the Canadian Action, have also expressed to each of Lead Plaintiff's Counsel in the U.S. Action and counsel to the Canadian lead Plaintiffs (the "Canadian Plaintiffs") ("Canadian Lead Counsel") in the Canadian Action, that they would be willing to entertain a settlement demand in either action, while continuing to dispute vigorously the claims of the remaining shareholders in the other action;

K. WHEREAS, from time to time, both Lead Plaintiff's Counsel and, as represented to Lead Plaintiff's Counsel, Canadian Lead Counsel, have made demands on Defendants, separately or globally, to settle the actions;

L. WHEREAS, the Parties to the U.S. Action have completed substantial discovery (including the production of approximately 21,318 documents and 282,975 pages by the IMAX Defendants and approximately 19,615 documents and 247,130 pages by PwC-Canada; and of the transcripts of the depositions of IMAX conducted by the Securities and Exchange Commission; four expert depositions, additional class certification depositions, and responses to interrogatories), Defendants' motion to dismiss the Consolidated Class Action Litigation was denied, and the Parties have litigated three motions for class certification;

M. WHEREAS, following the appointment of Lead Plaintiff's Counsel, Lead Plaintiff's Counsel and the IMAX Defendants' counsel in the U.S. Action re-commenced settlement discussions;

N. WHEREAS, the Parties to the U.S. Action have engaged in settlement negotiations and after an extensive period have reached an agreement that would result in a substantial recovery for members of the Settlement Class (as defined below in Paragraph 5) and that would permit Defendants to settle and resolve all claims by members of the Settlement Class, arising under the laws of any jurisdiction, while continuing to vigorously defend themselves against claims by persons who are not members of the Settlement Class;

O. WHEREAS, solely to avoid the further expense, inconvenience and burden of additional litigation, Defendants have reached an agreement in principle with Lead Plaintiff to settle the U.S. Action;

P. WHEREAS, the Defendants have expressed the intention to continue to defend against any claim of liability in the U.S. Action if it is not settled;

Q. WHEREAS, Lead Plaintiff, represented by Lead Plaintiff's Counsel, has considered the consideration to be provided to the members of the Settlement Class by this

proposed settlement (the "Settlement"), and the costs and risks of litigation, including the strength and weakness of its claims, and has determined that the Settlement is fair, adequate, and reasonable, and in the best interests of the Settlement Class;

R.

**REDACTED**

S. WHEREAS, Lead Plaintiff has agreed, as a material term of this Settlement agreement, to release all claims of the members of the Settlement Class (as defined in paragraph 5 below) against each Defendant, and its affiliates, partners, directors, officers, and employees, known and unknown, including, but not limited to, claims based on the United States and Canadian securities laws and Canadian common law;

T. WHEREAS, this MOU outlines the general terms of the Settlement and is intended to be used as a basis for drafting a stipulation of settlement and accompanying papers (the "Stipulation of Settlement") which shall embody the terms set forth herein and such other and consistent terms, as agreed upon by Counsel for the Parties.

NOW, THEREFORE, THE PARTIES HEREBY AGREE IN PRINCIPLE AS FOLLOWS:

1. Defendants and Lead Plaintiff will cooperate in good faith to expeditiously prepare the Stipulation of Settlement embodying this MOU, and will jointly seek preliminary approval of the Settlement and approval of notice from the United States District Court for the Southern District of New York ("Preliminary Order") promptly after completion of confirmatory discovery of the parties and execution of the Stipulation of Settlement. The Settlement is conditioned upon receiving final judicial approval of the Settlement from the United States

District Court for the Southern District of New York on the terms set forth in this MOU and the Stipulation of Settlement to be negotiated by the parties, after notice and a hearing, and either the expiration of the time to appeal or affirmance of the Settlement on appeal. Following the entry by the United States District Court of the Preliminary Order, the IMAX Defendants shall seek an order from the Canadian Court amending the definition of the Canadian class to exclude all members of the Settlement Class (except for any member of the Settlement Class who properly seeks exclusion from the Settlement Class) ("Canadian Order"). The Settlement is conditioned on the entry of the Canadian Order and upon the Canadian Order becoming final and unappealable. Notice of the proposed Settlement of the U.S. Action shall not be disseminated until after the entry of the Canadian Order. The release or payment of the Settlement Fund (as defined in Paragraph 2 below) to the Settlement Class pursuant to the terms of the Settlement is also conditioned on dismissal of the U.S. Action with prejudice and entry of an order and final judgment containing the general release described below. The Settlement is not conditioned upon any specific plan of allocation being approved or the finality of any appeal of the award of attorneys' fees.

2. In consideration of the settlement of the claims asserted in the U.S. Action, Defendants will cause to be paid the sum of REDACTED in cash in settlement of all claims, arising under the laws of any jurisdiction, by the Settlement Class. Defendants shall cause such funds to be paid in full on or before twenty days after the United States District Court for the Southern District of New York grants preliminary approval to the proposed Settlement. Such funds are to be used solely pursuant to the Stipulation of Settlement, including reasonable notice and administration costs, unless returned in accordance with Paragraph 9 below. This sum is to be deposited into an interest-bearing account (the "Settlement

Account") at such financial institution as Lead Plaintiff may determine. The money deposited into the Settlement Account and all interest accruing thereon (the "Settlement Fund") shall be subject to the jurisdiction of the United States District Court for the Southern District of New York and will remain subject to the jurisdiction of the United States District Court for the Southern District of New York until such time as it is distributed or returned pursuant to this MOU and/or the Stipulation of Settlement to be executed in conformance with this MOU. Lead Plaintiff's Counsel and the court appointed claims administrator shall serve as escrow agents over the Settlement Account. All applicable taxes, and reasonable costs and expenses of class notice and administration of the settlement, shall be paid from the Settlement Account when incurred. Counsel shall be permitted to use up to $250,000 from the Settlement Fund for the purpose of paying administrative costs and providing notice to the Settlement Class prior to the Settlement receiving final approval, subject to the Parties' agreement to renegotiate this amount in good faith, should the need to do so arise. Any award of attorneys' fees and/or reimbursement of expenses to Lead Plaintiff's Counsel and Lead Plaintiff pursuant to PSLRA Section 15 U.S.C. § 78u-4(a)(4), shall be paid from the Settlement Account as ordered by the United States District Court for the Southern District of New York. The award of attorneys' fees and reimbursement of expenses shall be paid out of the Settlement Fund but only if and when the Settlement receives final approval. If the Settlement does not become effective, for any reason, including, without limitation, as a result of the termination of the Settlement under Paragraph 7 below, the failure to obtain approval of the Settlement by the United States District Court for the Southern District of New York, the failure of the Canadian Court to enter the Canadian Order or the overturning of such order on appeal, the Settlement Fund, less any amounts incurred for notice, administration and/or taxes shall revert to the person(s) making the deposits. Defendants and Lead Plaintiff

agree that the Settlement Fund is intended to be a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1. Defendants will not publicly disclose the proportion of the Settlement Fund, if any, that was paid by each defendant, unless that information is compelled by law or so instructed by Judge Buchwald pursuant to Federal Rule of Civil Procedure 23(e)(3). The sums contributed by each defendant have been disclosed to Lead Plaintiff and will be reflected in a separate supplemental agreement to the Stipulation of Settlement.

3. In consideration of the payment of the Settlement Fund, Lead Plaintiff on behalf of the Settlement Class agrees to dismiss, with prejudice, all claims in the U.S. Action. Upon final approval of the Settlement, Lead Plaintiff shall seek the entry of an order and final judgment containing a general release for, and an agreement not to initiate any further actions against, each and every past and current Defendant and, whether or not identified in the Complaint, each Defendant's past or present directors, officers, employees, partners, member firms or affiliates, principals, agents, predecessors, successors, parents, subsidiaries, divisions, joint ventures, attorneys, underwriters, accountants, insurers, reinsurers, assigns, spouses, heirs, associates, related or affiliated entities, or any members of their immediate families, or any trusts for which any of them are trustees, settlers or beneficiaries, as to all claims that were alleged in the U.S. Action, or that could have been alleged in the U.S. Action or any other proceeding, manner of action, actions, causes of action, suits, claims for sums of money, contracts, controversies, agreements, costs, damages, judgments and demands in law, contract, trust or equity, domestic or foreign, including claims under the federal securities laws, state securities laws, common law, Canadian securities laws and common law, and any other laws relating to the purchase of IMAX securities during the Settlement Class Period as defined in Paragraph 5 below or the subject matter and facts relating to the U.S. Action, including any acts, failures to act,

omissions, misrepresentations, statements, misstatements, facts, events, transactions, occurrences or other subject matter set forth, alleged, embraced, encompassed or otherwise referred to in or underlying the U.S. Action. The claims that are to be released also include unknown claims and claims arising under the laws of any jurisdiction, including, without limitation, in the United States and in Canada, and Lead Plaintiff will waive and relinquish to the fullest extent possible any state, federal or foreign law concerning the release of unknown claims. Defendants shall release Lead Plaintiff, the members of the Settlement Class as defined in Paragraph 5 below (excepting any Settlement Class members who opt-out of the Settlement), and Lead Plaintiff's Counsel, from any claims relating to the institution, prosecution, and settlement of the U.S. Action. The Stipulation of Settlement will contain a form of release acceptable to all Parties.

4. Defendants deny liability, and maintain that they have meritorious defenses. Nonetheless, the Parties shall not assert or pursue any action, claim or rights that any party violated any provision of Rule 11 of the Federal Rules of Civil Procedure. Further, the Parties will not deny in any statement made to any media representative that the U.S. Action is being settled voluntarily after consultation with competent counsel. The releases between the Parties will include releases of all Counsel to the U.S. Action. The settling Parties agree that the Settlement was reached in good faith following arm's-length bargaining, and Lead Plaintiff and Plaintiff's Counsel believe that it is in the best interest of the members of the Settlement Class. This MOU cannot be used for any purpose other than to effectuate the terms of the Settlement contemplated herein.

5. The Settlement Class Period shall be February 27, 2003 through July 20, 2007, inclusive. The Settlement Class shall consist of all persons who purchased IMAX shares on the NASDAQ during the Settlement Class Period, excluding Defendants in the U.S. Action and

Canadian Action, members of those Defendants' immediate families, all individuals who are either current officers and/or directors, or who served as officers and directors at any time during the Settlement Class Period (the "Settlement Class"). The Parties will request that the United States District Court for the Southern District of New York certify the Settlement Class for purposes of this Settlement only.

6. Lead Plaintiff's Counsel may apply for and receive an award of attorneys' fees and reimbursement of expenses from the Settlement Fund in such amounts as may be approved by the United States District Court for the Southern District of New York, and any cash amount included in such award shall be paid to Lead Plaintiff's Counsel immediately upon final district court approval of the Settlement and award, subject to Lead Plaintiff's Counsel's obligation to pay back any such amount if, or to the extent that, the award order is amended or does not become final.

7. A separate supplemental agreement will contain a customary provision to be negotiated by Defendants and Lead Plaintiff allowing Defendants to terminate the Settlement if Settlement Class members beneficially owning more than REDACTED of the total publicly-traded stock of IMAX traded on the NASDAQ during the Settlement Class Period opt out of the Settlement.

8. Defendants will cooperate with Lead Plaintiff in obtaining approval of the Settlement pursuant to Paragraph 1 above and shall use their best efforts in order to obtain such orders. The IMAX Defendants shall provide the claims administrator IMAX's transfer records showing names and addresses of record transferees of IMAX securities on the NASDAQ during the U.S. Class Period for the purpose of giving direct mail notices to said class members. Counsel for all Parties shall endeavor to make suitable arrangements for the return or destruction (at the election of the non-producing party) of all confidential discovery materials produced by

the Parties or their Counsel promptly upon final approval and expiration of the time for appeal of the orders and final judgment with respect to the Settlement.

9. If the Settlement is not finally approved under Paragraph 1, does not survive appeal, or is terminated as provided for herein: (i) the amount deposited into the Settlement Fund, plus interest (net of taxes) earned thereon, shall be returned to the person(s) that deposited those amounts as instructed in writing by Defendants' counsel, within 10 business days of notice to the Parties of such termination or failure to obtain final judicial approval or reversal on appeal, except that Lead Plaintiff and Lead Plaintiff's Counsel shall not be obligated to refund any reasonable monies spent on costs associated with notice and administration, (ii) the Parties shall revert to their litigation positions immediately prior to the execution of this MOU, and (iii) the facts and terms of this Settlement shall not be admissible for any purpose in any trial of this or any other action.

10. This MOU may be executed in separate counterparts.

ABBEY SPANIER RODD & ABRAMS, LLP

By:____________________
Arthur N. Abbey
Jill S. Abrams
Richard B. Margolies
212 E. 39th Street
New York, New York 10016
Tel: (212) 889-3700

*Counsel for The Merger Fund*

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:____________________
Lewis J. Liman
David Olitwenstein
One Liberty Plaza
New York, New York 10006-1470
Tel: (212) 225-2000

*Counsel for the IMAX Defendants*

GIBSON, DUNN & CRUTCHER LLP

By:____________________ / D.O.
M. Byron Wilder
Jason C. McKenney
2100 McKinney Avenue, Suite 1100

Dallas, Texas 75201
Tel.: (214) 698-3231

Jennifer L. Conn
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Tel.: (212) 351-4000

*Counsel for Defendant PricewaterhouseCoopers LLP, Toronto, Canada*

# EXHIBIT G

McCarthy Tétrault LLP
Box 48, Suite 5300
Toronto Dominion Bank Tower
Toronto ON M5K 1E6
Canada
Tel: 416-362-1812
Fax: 416-868-0673

**R. Paul Steep**
Direct Line: 416-601-7998
Email: psteep@mccarthy.ca

mccarthy tetrault

November 3, 2011

**Via Facsimile**

The Honourable Madam Justice
Katherine M. van Rensburg
Superior Court of Justice
7755 Hurontario Street
6th Floor
Brampton ON L6W 4T1

Your Honour:

**Re: Imax Corporation, et al. ats. Silver, et al.**
**Court File No. CV-06-3257-00**

We are reporting to you, as counsel to the Defendants in the Ontario action, that we have been advised by counsel to IMAX in the U.S. class action that the Plaintiff and Defendants in that action signed a Memorandum of Understanding ("MOU") yesterday that would settle all claims against IMAX on behalf of the members of the class in the United States case. Earlier today, we submitted the MOU to you in error. The MOU is not being submitted to Judge Buchwald, although she, like you, is being advised that it has been signed. We advised your office of this error immediately and understand that the MOU has not been placed before you. Thank you for your assistance in that regard.

We will discuss with counsel for the Plaintiffs in our case the appropriate manner in which to address Your Honour as to the effect of the proposed resolution of the U.S. litigation on the remaining members in the Canadian case, and we would expect to be in touch shortly to schedule a case teleconference.

Yours very truly,

R. Paul Steep
/hvh

c: Mr. Dimitri Lascaris (Siskinds)
Mr. Jay Strosberg (Sutts, Strosberg)
Mr. Dana M. Peebles

*This is Exhibit* G *referred to in the affidavit of* Carolyn Ploresan *sworn before me, this* 7 *day of* May *20*12

A COMMISSIONER FOR TAKING AFFIDAVITS

*DOCS #10882352*

McCarthy Tétrault LLP
Box 48, Suite 5300
Toronto Dominion Bank Tower
Toronto ON M5K 1E6
Canada
Tel: 416-362-1812
Fax: 416-868-0673

mccarthy tetrault

**R. Paul Steep**
Direct Line: 416-601-7998
Email: psteep@mccarthy.ca

November 3, 2011

**Via Facsimile**

Mr. Dimitri Lascaris
Siskinds LLP
680 Waterloo St.
PO Box 2520, Stn. B
London ON N6A 3V8

Dear Mr. Lascaris:

**Re: Imax Corporation, et al. ats Silver, et al.**

Please find enclosed our letter of today to Her Honour, attaching the Memorandum of Understanding executed by the parties to the U.S. case which contains the terms which will be put to Judge Buchwald to obtain a settlement certification Order.

Please be advised that we are willing to make an offer to resolve the Canadian action so that those class members who do not participate in the U.S. settlement have the opportunity to recover the same compensation through a settlement of the Canadian action. The Canadian settlement would be on the same terms as the U.S.A. MoU with appropriate modifications to account for the Canadian forum and jurisdiction.

Yours very truly,

R. Paul Steep

/hvh
Attach.

c: Mr. Jay Strosberg (Sutts Strosberg LLP)
Mr. Eric R. Hoaken (Bennett Jones LLP)
Mr. William E. Pepall (Lerners LLP)
Mr. Dana M. Peebles

# EXHIBIT H

[redacted]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/1/2012

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**~~[PROPOSED]~~ ORDER PRELIMINARILY APPROVING FINAL SETTLEMENT AND PROVIDING FOR NOTICE**

WHEREAS, a putative class action (the "Class Action") is pending in this Court as part of a consolidated action styled *In re IMAX Corporation Securities Litigation*, Civil Action No. 06 CIV. 6128 (NRB); and

WHEREAS, the Parties, having made an application pursuant to Rule 23 of the Federal Rules of Civil Procedure for an Order approving Settlement of the Class Action, in accordance with a Stipulation and Agreement of Settlement dated as of January 26, 2012 (the "Stipulation"), which, together with the Exhibits annexed thereto and the First Supplemental Agreement and the Second Supplemental Agreement identified to the Court pursuant to Rule 23(e)(2), sets forth the terms and conditions for a proposed Settlement of the Class Action and for dismissal of the Class Action and the Released Claims against IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble and PricewaterhouseCoopers LLP, an Ontario Limited Liability Partnership (the "Defendants") with prejudice and without costs upon the terms and conditions set forth therein;

WHEREAS, all defined terms contained herein shall have the same meanings as set forth in the Stipulation;

This is Exhibit H referred to in the affidavit of Carolyn Piovesan sworn before me, this 7 day of May 2012

A COMMISSIONER FOR TAKING AFFIDAVITS

WHEREAS, the Court has read and considered the Stipulation and the Exhibits annexed thereto.

NOW THEREFORE, IT IS HEREBY ORDERED:

1. The Court preliminarily certifies the Settlement Class for settlement purposes only. The Court finds that the prerequisites to a class action under Rule 23 of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class Members is so numerous that joinder of all Settlement Class Members is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the proposed Lead Plaintiff are typical of the claims of the Settlement Class it seeks to represent; (d) the proposed Lead Plaintiff will fairly and adequately represent the interests of the Settlement Class; (e) Lead Counsel has fairly and adequately represented the interests of the Settlement Class; (f) questions of law and fact common to Settlement Class Members predominate over any questions affecting only individual Settlement Class Members; and (g) a class action settlement is superior to other available methods for the fair and efficient adjudication of the controversy.

2. The Court preliminarily approves the Stipulation and the Settlement set forth therein as being fair, just, reasonable and adequate as to Settlement Class Members and in the best interests of the Class, subject to notice to the Settlement Class and further consideration at the Fairness Hearing described below.

3. A hearing (the "Fairness Hearing") shall be held before this Court on ____/____, 2012, at ____ ____.m. or, alternatively, approximately 90 days after the mailing of Notice (on a date to be determined by the Court) at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, 10007-1312, to determine: (a) whether the proposed Settlement of the Class Action on the terms and conditions provided for in the

Case 1:06-cv-06128-NRB Document 199 Filed 02/01/12 Page 3 of 44

Stipulation is fair, reasonable and adequate as to the Class and should be approved by the Court; (b) whether a Judgment as provided for in the Stipulation should be entered herein; (c) the amount of fees and expenses that should be awarded to Lead Counsel; (d) whether the Plan of Allocation proposed by Lead Plaintiff should be approved by the Court; and (e) whether the Class Action should be dismissed on its merits with prejudice and without costs as against the Defendants and the Defendant Released Parties as provided in the Stipulation. The Court may adjourn the Fairness Hearing without further notice to Class Members.

4. The Court approves, as to form and content, the Notice of Pendency and Settlement of Class Action (the "Notice"), the Proof of Claim and Release Form ("Proof of Claim and Release"), and Summary Notice annexed as Exhibits A-1, A-2 and A-3 hereto, and finds that the mailing and distribution of the Notice and publishing of the Summary Notice substantially in the manner and form set forth in paragraphs 5 and 6 of this Order meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

5. Lead Counsel are hereby authorized to retain the firm of Strategic Claims Services ("Administrator") to supervise and administer the notice procedure, file tax returns and process claims as more fully set forth below:

(a) As soon as practical following the date of this Order, the IMAX Defendants will make a motion in the Canadian Court to exclude the members of the U.S. Settlement Class who do not opt out of the U.S. Action;

(b) Within seventy-five (75) days after the Canadian Court issues an order amending the class definition in the Canadian Action, (the "Notice Date"), Lead Counsel shall cause a copy

of the Notice and the Proof of Claim and Release, substantially in the forms annexed as Exhibits A-1 and A-2 hereto, to be mailed by first class mail to all Settlement Class Members who can be identified with reasonable effort by Lead Counsel;

(c) After the Notice Date, the Administrator shall launch a settlement website available to the public containing the Complaint, the Stipulation, the Notice (in English and in French) and any other publicly filed documents Lead Counsel shall deem appropriate;

(d) After the Notice Date, Lead Counsel shall also post on their website the Complaint, the Stipulation, the Notice (in English and in French) and any other publicly filed documents that they shall deem appropriate;

(e) After the Notice Date, Lead Counsel shall cause the Summary Notice to be published once in the national edition of the <u>Wall Street Journal</u>, once in the <u>New York Times</u> and once in the <u>The National Post</u> (in one quarter page size), the national edition of <u>The Globe and Mail</u> (in one quarter page size), and <u>La Presse</u> (in French in one quarter page size);

(f) After the Notice Date, Lead Counsel shall provide a copy of the Notice to any person who requests it;

(g) After the Notice Date, Lead Counsel shall disseminate the Notice through a newswire in Canada and a newswire in the U.S.;

(h) After the Notice Date, the IMAX Defendants shall post the Notice prominently on their website at www.IMAX.com; and

(i) At least seven (7) calendar days prior to the Fairness Hearing, Lead Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of the mailing and publishing of the Notice required herein.

6. Nominees who purchased or otherwise acquired IMAX shares on the NASDAQ for the benefit of another Person during the period February 27, 2003 through July 20, 2007, inclusive, shall be requested to send the Notice and the Proof of Claim and Release to all such beneficial owners and within ten (10) business days after receipt thereof, either (1) send a list of the names and addresses of such beneficial owners to the Administrator, or (2) request from the Administrator additional copies of the Notice and Proof of Claim and Release and within seven (7) days mail the Notice and Proof of Claim and Release to such beneficial owners. If a nominee chooses to follow alternative procedure (2), such nominee shall send a statement to the Administrator confirming that the mailing was made as directed.

7. Any Person falling within the definition of the Class who desires to request exclusion from the Class shall do so by mailing or delivering by hand a written notice of exclusion in the form set forth in the Notice to the Administrator no later than ten (10) days before the Fairness Hearing. Within three (3) business days of receipt by the Administrator of any request for exclusion, the Administrator shall provide copies of such request to Lead Counsel and Defendants' Counsel. Unless the Court orders otherwise, no request for exclusion shall be valid unless it is made within the time set forth herein and in the manner described in the Notice.

8. Class Members who wish to participate in the Settlement shall complete and submit Proof of Claim and Release forms in accordance with the instructions contained therein. Unless the Court orders otherwise, all Proof of Claim and Release forms must be postmarked or delivered by hand no later than one hundred and twenty (120) days after the Fairness Hearing. Any Class Member who does not submit a Proof of Claim and Release within the time provided shall be forever barred from sharing in the distribution of the proceeds of the Settlement Fund,

Case 1:06-cv-06128-NRB Document 207-4 Filed 06/07/12 Page 47 of 73

unless otherwise ordered by the Court, but shall be bound by all of the terms of the Stipulation and Settlement, including the terms of the Judgment to be entered and the releases provided for therein, and shall be deemed to have and by operation of the Judgment shall have fully, finally and forever released, relinquished and discharged, and thereby be barred and enjoined from asserting any Released Claims (including, for some Class Members, the Canadian Action) against the Defendant Released Parties or bringing any actions against the Defendant Released Parties concerning the Released Claims.

9. All Class Members shall be bound by all determinations and judgments in the Class Action concerning the Stipulation and the Settlement, including, but not limited to, the terms of the Judgment to be entered and the releases provided for therein, whether favorable or unfavorable to the Class.

10. Any Class Member may enter an appearance in the Class Action, at their own expense, individually or through counsel of their own choice. If they do not enter an appearance, they will be represented by Lead Counsel.

11. All proceedings against Defendants in the Class Action are stayed until further order of the Court, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation. Pending final determination of whether the Settlement should be approved, neither the Lead Plaintiff nor any Class Member, either directly, representatively or in any other capacity, shall commence or prosecute against any of the Released Parties, any action or proceeding in any court or tribunal asserting any of the Released Claims.

Case 1:06-cv-06128-NRB Document 199 Filed 02/01/12 Page 7 of 44

12. Any Class Member may appear and show cause, if he, she or it has any reason why the Stipulation and Settlement (and the releases contained therein) should or should not be approved or a judgment entered thereon; why the proposed Plan of Allocation should or should not be adopted or why the attorneys' fees and the reimbursement of expenses should or should not be awarded to Lead Counsel; provided, however, that no Class Member or any other Person shall be heard or entitled to contest any of the above enumerated matters unless such Class Member follows the procedures set forth in the Notice. No later than ten (10) days prior to the Fairness Hearing, written objections, papers and briefs must be filed with the Clerk of the United States District Court for the Southern District of New York, with copies postmarked or delivered by hand to:

Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, New York 10016

*Counsel for Lead Plaintiff*

-and-

Lewis J. Liman
David Oliwenstein
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

*Counsel for the IMAX Defendants*

M. Byron Wilder
Jason C. McKenney
Gibson Dunn & Crutcher, LLP
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201

Jennifer L. Conn
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

***Counsel for defendant PwC-Canada***

13. Any Class Member who does not make his, her or its objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness or adequacy of the Stipulation and proposed Settlement, the Plan of Allocation, the award of attorneys' fees and expenses to Lead Counsel, the Judgment to be entered and the releases provided therein unless otherwise ordered by the Court.

14. Any Plan of Allocation of the Settlement Fund including, but not limited to, any adjustments to any Authorized Claimant's claim or application for Lead Counsel's fees and expenses is not a part of the Stipulation of Settlement or this Preliminary Order and will be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation or Lead Counsel's fees and expenses shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the Settlement herein or any other order entered pursuant to the Stipulation. Further, the Plan of Allocation was drafted, created and negotiated after the Defendants agreed to the Settlement, and neither the Defendants nor the Defendant Released Parties participated in drafting, creating or negotiating the Plan of Allocation. Any order or proceedings relating to the Plan of Allocation or application for Lead Counsel's fees and expenses, or any appeal therefrom or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation or affect or delay the finality of the Judgment and the Settlement of the Class Action.

Case 1:06-cv-06128-NRB Document 199 Filed 02/01/12 Page 9 of 44

15. Neither the Defendants nor the other Defendant Released Parties nor their counsel shall have any responsibility for, interest in or liability whatsoever to any Person, including, without limitation, to any Settlement Class Members, Authorized Claimants, Lead Plaintiff or Lead Counsel with respect to the Settlement Amount (except to the extent that the Defendants shall retain its interest in the Settlement Amount in the event the Effective Date does not occur as provided in the Stipulation or the Settlement is terminated), any investment or distribution of the Settlement Fund, the proposed or actual Plan of Allocation, the determination, administration or calculation of claims, final awards and supervision and distribution of the Settlement Fund as set forth in the Stipulation or any application for attorneys' fees and reimbursement of expenses, the payment or withholding of taxes or any losses incurred in connection with any such matters; and no Person, including, without limitation, the Settlement Class Members, Authorized Claimants, Lead Plaintiff and Lead Counsel, shall have any claims against the Defendant Released Parties or their counsel in connection therewith. The Defendant Released Parties shall have no responsibility for and no liability whatsoever with respect to the Settlement. In no event will the Defendants be responsible for payment of any amount except the Settlement Amount that it agreed to pay in the Stipulation.

16. In the event that the Stipulation should terminate, or be cancelled, or otherwise fail to become effective for any reason, or the Effective Date does not occur as provided in the Stipulation, including without limitation in the event that the Judgment is reversed, modified or vacated following any appeal taken therefrom, then the parties to the Stipulation shall be deemed to have reverted to their respective status in the Class Action as of November 2, 2011, including with respect to class certification, and, except as otherwise expressly provided, the parties shall proceed in all respects as if this Stipulation and any related orders had not been entered, and any

portion of the Settlement Amount previously paid by the Defendants, together with any interest earned thereon, less any taxes due with respect to such interest earned, and less reasonable costs of Administration and Notice actually incurred pursuant to the terms of this Stipulation or as to which a legal obligation to pay has been incurred as of the date of such termination, shall be returned to the Defendants within ten (10) days after written notification of such event by the Defendants to the Escrow Agent. The parties shall abide by any summary orders of the Court with respect to the return of funds to the Defendants. Neither Lead Plaintiff nor Lead Counsel shall oppose or object to the return of the Net Settlement Fund to the Defendants pursuant to the terms of the Stipulation or to entry or an order, if necessary, to return the Net Settlement Fund to the Defendants.

17. The transfer of the Settlement Amount to the Escrow Agent in accordance with the terms and obligations of the Stipulation is approved. No Person that is not a Class Member or Lead Counsel shall have any right to any portion of, or in the distribution of, the Settlement Fund or Notice and Administration Fund unless otherwise ordered by the Court or otherwise provided in the Stipulation.

18. All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further Order(s) of the Court.

19. The Defendants shall not have any responsibility for any application for attorneys' fees or reimbursement of expenses submitted by Lead Counsel, and such matters will be considered separately from the fairness, reasonableness and adequacy of the settlement.

Case 1:06-cv-06128-NRB Document 199 Filed 02/01/12 Page 11 of 44

20. At or after the Fairness Hearing, the Court shall determine whether any application for attorneys' fees or reimbursement of expenses shall be approved.

21. All reasonable costs incurred in identifying and notifying Settlement Class Members, as well as in administering the Net Settlement Fund, shall be paid as set forth in the Stipulation. In particular, counsel may use up to $250,000.00 to pay the costs of notifying the Settlement Class, facilitating the filing of Proofs of Claim by Class Members, assisting Class Members in making their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class prior to the entry of Judgment. In the event the Settlement is not approved by the Court or otherwise fails to become effective, neither the Lead Plaintiff nor Lead Counsel shall have any obligation to repay to the Defendants the reasonable and actual costs of class notice and of administration.

22. The Court reserves the right to adjourn the date of the Fairness Hearing without further notice to Class Members and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement. The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Class.

23. Papers in support of the Settlement, any proposed plan of allocation submitted to the Court for approval and Lead Counsel's application, if any, for attorneys' fees and payment of expenses shall be submitted on or before five (5) business days before the Fairness Hearing.

IT IS SO ORDERED.

Naomi Reice Buchwald

THE HONORABLE NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

January 31, 2012
DATE

Case 1:06-cv-06128-NRB Document 199 Filed 02/01/12 Page 13 of 44

EXHIBIT A-1

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF U.S. CLASS ACTION**

This Notice has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of New York (the "U.S. Court").

This Notice provides you with important information in connection with the resolution (the "Settlement") of certain claims in a class action lawsuit, brought in the United States, by a Class of purchasers ("Plaintiffs" or the "Class", as described in further detail below) of securities issued by IMAX Corporation ("IMAX" or the "Company"). The Settlement resolves Plaintiffs' claims against IMAX, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble and PricewaterhouseCoopers LLP, an Ontario Limited Liability Partnership ("PwC-Canada") (the "Settling Defendants"). This U.S. class action is known as *In re IMAX Securities Litigation*, Civil Action No. 1:06-cv-06128 (the "U.S. Action"). Your rights will be affected by this Notice and the Settlement that it describes, so you should read this Notice carefully.

> If you purchased or otherwise acquired IMAX shares on the NASDAQ between February 27, 2003 and July 20, 2007, inclusive (the "Class Period"), you may be entitled to receive a payment from this Settlement.
>
> **The U.S. Court will hold a Fairness Hearing at __:__ __.m. on __________, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, 10007-1312. At this hearing the U.S. Court will consider whether the Settlement is fair, reasonable and adequate and in the best interests of the Class.**

*A United States federal court authorized this Notice. This is not a solicitation from a lawyer.*

- The Settlement resolves certain claims asserted pursuant to the United States federal securities laws in a class action against the Defendants for damages incurred by the Class in connection with their transactions in IMAX shares. The Settlement consists of twelve million dollars ($12,000,000) in cash (the "Settlement Fund"). The recovery is explained in greater detail below.

**Cet Avis vous a été envoyé car vous avez possiblement droit à une indemnisation en vertu du règlement d'un recours collectif intenté aux États-Unis par un Groupe constitué d'acheteurs d'actions émises par IMAX Corporation. Vous pourriez aussi être un membre du groupe dans une action similaire contre IMAX Corporation intentée au Canada. Vous pouvez obtenir une traduction anglaise du présent Avis en contactant le "Strategic Claims Services" dont les informations sont à la p. 17 de cet Avis.**

- The law firm of Abbey Spanier Rodd & Abrams, LLP ("Lead Counsel") will apply to the Court for an award of attorneys' fees from the Settlement Fund not to exceed twenty-five percent (25%) thereof, and reimbursement of expenses of no greater than $__ million (plus interest on such amounts at the same rate earned by the Settlement Fund) or an average of $__ per share of stock. Lead Counsel and other plaintiffs' counsel have litigated the U.S. Action for five years on a contingent fee basis, and have advanced all the expenses of litigation without reimbursement, with the expectation that if they were successful in recovering money for the Class, they would receive fees and be reimbursed for their expenses from the Settlement Fund, as is customary in this type of litigation.

- If you purchased IMAX securities on the NASDAQ on or after February 17, 2006 and held some or all of those securities on August 9, 2006 (the "Canadian Class Period"), then you are a member of the certified class (the "Canadian Class") in another class action based on substantially similar allegations to those alleged in this case against the IMAX Defendants and others in Ontario Canada (the "Canadian Action" - as described further below). You will not be permitted to recover in both cases and if you do not exclude yourself from the U.S. Action, you will automatically be deemed to be a member of the Class in the U.S. Action, and therefore excluded from the Canadian Class in the Canadian Action. For members of the Canadian Class, a detailed description of the Canadian Action as well as details regarding how to exclude yourself from this action (and thereby participate in the Canadian Action) are contained below.

- Your legal rights are affected whether you act or don't act, so please read this Notice carefully.

| | |
|---|---|
| SUBMIT A PROOF OF CLAIM AND RELEASE FORM | This is the only way to be eligible to receive any portion of the Settlement Fund. If you are a member of the Canadian Class, you cannot participate in that lawsuit if you submit a Proof of Claim and Release Form in the U.S. Action (or if you do not opt out of the U.S. Action). |
| EXCLUDE YOURSELF | This is the only option that allows you to ever file or be part of another lawsuit against the Defendants about the Released Claims. You will not receive any portion of the recovery from the Settlement Fund if you select this option. The requirements to exclude yourself are described below. If you exclude yourself from the U.S. Action and you purchased and held IMAX securities during the Canadian Class Period, you will remain a member of the class in the Canadian Action, as described below. |
| OBJECT BUT REMAIN IN THE SETTLEMENT | Write to the U.S. Court about why you don't like the Settlement. You may object to the Settlement. The requirements to object are described below. |
| GO TO A FAIRNESS HEARING | The Fairness Hearing is open to the public. You may ask in writing to speak to the U.S. Court at the hearing about the fairness of the Settlement. If the Court approves the Settlement, you will be bound by the U.S. Court's Judgment (as it applies to your claim) whether or not you submit a Proof of Claim and Release form or receive any money from the Settlement. |
| DO NOTHING | Receive no payment. Give up your right to file your own or participate in any other lawsuit (including the Canadian Action) against the Defendants concerning the claims asserted by the Class. |

| | |
|---|---|
| | If you are a member of the Canadian Class, you must affirmatively exclude yourself from the U.S. Action to be eligible to recover in the Canadian Action. |

- Your rights and options as well as the deadlines to exercise them are explained further in this Notice.

- The U.S. Court in charge of this case still has to decide whether to approve the Settlement. Payments to eligible claimants in the Settlement will be made only if and when the Canadian Order (defined below) becomes final and unappealable, the U.S. Court approves the Settlement, after any and all U.S. appeals are resolved, and after the claims processing procedure is complete.

**Statement of Plaintiffs' Recovery**

Lead Plaintiff (defined in question __ on page __) estimates that approximately ___ million shares of IMAX stock were purchased and/or acquired during the period from February 27, 2003 and July 20, 2007, inclusive, and that purchasers of those shares were damaged as a result of the purported acts or omissions alleged in the Consolidated Amended Class Action Complaint dated October 2, 2007 (the "Complaint"). Lead Plaintiff estimates that the average recovery per share of IMAX common stock under the Settlement will be $___ per share before the deduction of attorneys' fees, costs and expenses, as approved by the Court. The actual recovery per damaged share will depend on a variety of factors, including: (1) the number of claims filed; (2) when members of the Class ("Settlement Class Members") purchased or acquired their shares during the Class Period; (3) whether Settlement Class Members sold their IMAX shares during the Class Period or held their shares past the end of the Class Period; (4) administrative costs, including the costs of notice; (5) the number of Settlement Class Members who decide to exclude themselves from the Settlement; and (6) the amount awarded by the U.S. Court for attorneys' fees, costs and expenses. Distributions to Class Members will be made based on the Plan of Allocation set forth at the end of this Notice.

**Background of the U.S. Action and the Parallel Canadian Class Action**

The Judge presiding over this case is the Honorable Naomi Reice Buchwald of the United States District Court for the Southern District of New York. From August 11, 2006 through September 18, 2006, eight lawsuits were filed against all or certain of the Defendants in the United States District Court for the Southern District of New York, alleging that IMAX made material misrepresentations and omissions regarding revenue recognition for theater systems in violation of the federal securities laws between February 27, 2003 through July 20, 2007 (the "U.S. Class Period"). The people who brought the lawsuits are called plaintiffs, and the persons and entities they sued are called defendants.

On September 20, 2006, a lawsuit was filed in the Ontario Superior Court of Justice in Canada (the "Canadian Court") alleging, based on substantially identical facts to those alleged in the eight U.S. actions, that IMAX improperly recognized revenue on theater systems (the "Canadian Action"). The Canadian Action is known as *Silver v. IMAX Corp.*, Court File No. CV-06-3257-00 (Ontario Superior Court of Justice, Canada). The Judge presiding over this case is the Honourable Madam Justice van Rensburg of the Canadian Court. The IMAX Defendants estimate that approximately 83.9 percent of the shares of IMAX securities at issue in the Canadian Action were purchased on the NASDAQ and those members of the Canadian Class who purchased IMAX securities on the NASDAQ are also members of the U.S. Class.

There are differences between the U.S. Action and the Canadian Action. For example, while the Class Period in this U.S. Action runs from February 27, 2003, through July 20, 2007 (more than four

Case 1:06-cv-06128-NRB Document 199 Filed 02/01/12 Page 17 of 44

years) the class period in the Canadian Action runs from February 17, 2006, through August 9, 2006 (less than six months). The U.S. Action includes PwC-Canada as a defendant, but the Canadian Action does not. The Canadian Action includes four Directors of IMAX (Neil S. Braun, Kenneth G. Copland, Garth M. Girvan and David W. Leebron) who are not Defendants in the U.S. Action. The U.S. Action seeks relief for violations of the U.S. securities laws. The Canadian Action asserts claims under the Canadian securities laws.

Pursuant to a January 17, 2007 Order of the U.S. Court, the eight U.S. actions were consolidated, and the U.S. Court appointed Westchester Capital Management, Inc. (the investment advisor for GS Master Trust, MSS Merger Arbitrage Fund, The Merger Fund, The Merger Fund VL and SphinX Merger Arbitrage Fund) as lead plaintiff and further approved the appointment of the law firm of Abbey Spanier Rodd & Abrams, LLP as lead counsel for the class.

On October 2, 2007, Westchester filed a Consolidated Amended Class Action Complaint against Defendants in the U.S. Court. In their Complaint, plaintiffs alleged that Defendants' public statements during the U.S. Class Period were materially false and misleading because they failed to disclose, among other things, that IMAX had recognized revenue on theater systems before installation of the system was complete, in contravention of U.S. generally accepted accounting rules, and in violation of its own accounting policies. Plaintiffs also alleged that IMAX's auditor, PwC-Canada was also responsible for the material misinformation disseminated to the investing public during the U.S. Class Period. Plaintiffs allege that Defendants' actions artificially inflated the price of IMAX stock during the U.S. Class Period and that once the truth was disclosed, the price of IMAX's stock declined, injuring the Class.

On December 10, 2007, the IMAX Defendants and PwC-Canada each separately filed motions to dismiss the Complaint on numerous grounds. On January 22, 2008, Westchester filed its opposition to Defendants' motions to dismiss. Defendants filed their reply briefing on February 11, 2008.

On September 15, 2008, after supplemental submissions and oral argument, the Defendants' motions to dismiss were denied by the Court. Thereafter, Westchester commenced discovery, which included the production and review of hundreds of thousands of pages of documents and transcripts of depositions.

On October 31, 2008, Westchester filed Plaintiffs' first motion for class certification.

On December 3, 2008, the Second Circuit decided *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), holding that an investment adviser that did not directly purchase the securities at issue lacked standing to bring a securities fraud claim on behalf of its clients because it did not suffer an injury in fact. Relying on the Second Circuit's decision in *Huff*, on February 18, 2009, Snow Capital Investment Partners, L.P. ("Snow Capital") requested a pre-motion conference in connection with its anticipated motion for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff.

On February 23, 2009, the Defendants filed oppositions to Westchester's motion for class certification. On March 13, 2009, the Court denied without prejudice Westchester's motion for class certification pending resolution of Snow Capital's anticipated motion for reconsideration of the Court's January 17, 2007 Order.

On April 3, 2009, Snow Capital moved for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff. Westchester filed its opposition on April 24, 2009 and Snow Capital replied on May 1, 2009. On June 29, 2009, the Court determined that under *Huff*, Westchester, an investment advisor, lacked standing and granted Snow Capital's motion and appointed it lead plaintiff and its counsel, Robbins Geller Rudman & Dowd LLP, as lead counsel.

On December 14, 2009, the Canadian Court certified the Canadian Action on behalf of investors worldwide who purchased IMAX securities on or after February 17, 2006 and held some or all of those securities on August 9, 2006. *See Silver v. IMAX Corporation*, [2009] O.J. No. 5585, 2009 ON.C. LEXIS 4847 (December 14, 2009, Sup. Ct. J.).

On April 22, 2010, Snow Capital filed its motion for class certification. On June 10, 2010, the Defendants filed oppositions to Snow Capital's class certification motion. Snow Capital filed its reply in further support of the motion on July 30, 2010. The Court did not hear oral argument on the motion. On December 20, 2010, this Court issued a Memorandum and Order that denied Snow's motion for class certification, held that this case could not proceed with Snow Capital as class representative, and directed that new applications to be named lead plaintiff be filed.

On April 14, 2011, the Court issued an Order naming The Merger Fund (the "Lead Plaintiff") as lead plaintiff and re-appointing Abbey Spanier Rodd & Abrams, LLP as lead counsel.

Between April 2011 and November 2011, the parties met numerous times, both in person and via conference call, in an effort to negotiate a settlement of the U.S. Action. As a result of such efforts, on November 2, 2011, Lead Plaintiff and the Defendants were able to reach an agreement that led to the Settlement, which is separately set forth in greater detail in the Stipulation and Agreement of Settlement, dated January 26, 2012 (the "Stipulation").

After the U.S. Court preliminarily approved this Settlement on January __, 2012, the IMAX Defendants on February __, 2012 made a motion for a final Order from the Canadian Court in the Canadian Action seeking to exclude, from the definition of the Canadian Class, all persons who do not opt out of this Settlement, if and when the settlement is approved by final Order of the U.S. Court (the "Canadian Order").

On February ___, 2012, the Canadian Court amended the definition of the Canadian class to exclude ____________________________.

**The Circumstances of the Settlement**

The Defendants and the Lead Plaintiff disagree as to the probable outcome of the U.S. Action with respect to liability. While the Lead Plaintiff was prepared to try this case against Defendants, and Lead Counsel were confident in the merits of their case, they recognize that a trial is inherently risky and that the Class may not have prevailed on any or all of its claims. Moreover, each of the Defendants believe that the Complaint lacks merit and had this Stipulation not been reached would have continued to vigorously defend against Lead Plaintiff's claims and present significant defenses thereto. While Lead Plaintiff believes that it had a strong case, Lead Plaintiff also believes that Defendants' defenses would have created uncertainty as to Lead Plaintiff's ability to win at trial or after appeals.

The Defendants and the Lead Plaintiff also disagree as to the probable outcome of the U.S. Action with respect to damages. Lead Plaintiff and their economic consultants believe that the damages arising from the alleged malfeasance in the U.S. Action, depending on the methodology used, are as high as $91 million. This amount results from the use of a damage model under which it was presumed that the proper measure of recoverable damages included the majority of IMAX's stock price drop that occurred when the Company disclosed information that corrected alleged prior false and misleading statements. This figure also assumes that the Court and a jury would make every factual finding in the Class's favor. Defendants have generated damage models showing damages based upon recent Supreme Court decisions which show damages as low as approximately $5 million.

Case 1:06-cv-06128-NRB Document 199 Filed 02/01/12 Page 19 of 44

Contrary to Lead Plaintiff's position, Defendants have argued, among other things, that they did not commit fraud, that IMAX's restatement was a result of accounting mistakes, and that their conduct did not cause the value of IMAX stock to decrease. As such, the decline was the result of other factors, including the inability of IMAX to find a buyer after a lengthy search, the announcement of a new business model involving joint ventures, considerable uncertainty surrounding the company, and an SEC investigation. Defendants have also argued that Lead Plaintiff will not be able to demonstrate that any purchasers prior to February 17, 2006 suffered a loss and that Lead Plaintiff will be unable to disentangle any stock drop attributable to the statements alleged to have been false or misleading and will therefore not be able to establish damages.

The Defendants and Lead Plaintiff also disagree as to whether the Court would have granted Lead Plaintiff's motion to certify this case as a class action. Although Lead Plaintiff withdrew its class certification motion in light of the Settlement, Defendants had opposed Lead Plaintiff's motion on the grounds that the U.S. Action is not superior to the previously certified global class action in Canada and that Defendants have rebutted the presumption of reliance set forth in the Supreme Court case *Basic v. Levinson*, 485 U.S. 224 (1988), by demonstrating that the alleged misrepresentations did not impact the price of IMAX securities. Defendants also argued that even if a class is certified, it should not include any shareholders who purchased prior to February 17, 2006.

These disputes would be subject to expert testimony at summary judgment and trial, and, therefore, it is impossible to predict with certainty which arguments would find favor with the Court and the jury. As a result, in a trial or through a summary judgment motion, the U.S. Class could recover substantially less than the amount of the Settlement or nothing. Lead Counsel has recommended the Settlement because it believes that the Settlement provides a substantial recovery to the U.S. Class and believes that the U.S. Class might have obtained a lesser recovery or nothing at all if the Class had gone to trial and through inevitable appeals.

It is important to recognize, that the entry of Judgment and therefore the distribution of the Settlement funds in this case may be delayed because the Settlement is conditioned upon the Canadian Order becoming final and unappealable.

## Further Information

Further information regarding this Settlement may be obtained by contacting: *In re IMAX Corporation Securities Litigation*, Civil Action No. 06 CIV. 6128 (NRB): Lead Counsel, Arthur N. Abbey, Karin E. Fisch and Richard B. Margolies, Abbey Spanier Rodd & Abrams, LLP, 212 East 39th Street, New York, NY 10016.

## WHAT THIS NOTICE CONTAINS

**Page**

A. WHY DID I RECEIVE THIS NOTICE PACKAGE? ........ 8

B. WHAT IS A CLASS ACTION? ........ 8

C. HOW DO I KNOW IF I AM A SETTLEMENT CLASS MEMBER AND CAN BE PART OF THE SETTLEMENT? ........ 8

D. ARE THERE EXCEPTIONS TO BEING INCLUDED IN THE CLASS? ..........9

E. I'M STILL NOT SURE I AM INCLUDED ..........9

F. WHAT DOES THE SETTLEMENT PROVIDE? ..........9

G. HOW MUCH WILL MY PAYMENT BE IN THE SETTLEMENT? ..........9

H. HOW CAN I RECEIVE A PAYMENT IN THE SETTLEMENT? ..........10

I. WHEN WILL I RECEIVE MY PAYMENT IN THE SETTLEMENT? ..........10

J. WHAT AM I GIVING UP TO RECEIVE A PAYMENT IN THE SETTLEMENT? ..........10-12

K. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT? ..........12-13

L. IF I DON'T EXCLUDE MYSELF, CAN I SUE THE SETTLING DEFENDANTS FOR THE SAME THING LATER? ..........13

M. IF I EXCLUDE MYSELF, CAN I OBTAIN A PAYMENT FROM THE SETTLEMENT? ..........13

N. DO I HAVE A LAWYER IN THIS CASE? ..........13

O. HOW WILL THE LAWYERS BE PAID? ..........13

P. HOW DO I NOTIFY THE COURT THAT I DON'T LIKE THE SETTLEMENT? ..........14

Q. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND REQUESTING EXCLUSION? ..........15

R. WHEN AND WHERE WILL THE U.S. COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? ..........15

S. DO I HAVE TO ANSWER QUESTIONS AT THE FAIRNESS HEARING? ..........15

T. MAY I SPEAK AT THE FAIRNESS HEARING? ..........15

U. WHAT WILL HAPPEN IF I DO NOTHING AT ALL? ..........16

V. ARE THERE MORE DETAILS ABOUT THE SETTLEMENT AND THE CANADIAN ACTION? ..........16

W. WHAT ARE MY RIGHTS AND OBLIGATIONS AS A SECURITIES BROKER OR NOMINEE? ..........16-17

## BASIC INFORMATION

### A. WHY DID I RECEIVE THIS NOTICE PACKAGE?

The U.S. Court authorized this Notice to be sent to you because you or someone in your family may have purchased or acquired IMAX shares on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive. If the description above applies to you or someone in your family, you have a right to know about the proposed Settlement of the U.S. Action against the Defendants and about all of your options before the U.S. Court decides whether to approve the Settlement. If the Canadian Order becomes final and unappealable and the U.S. Court approves the Settlement, and any objections or appeals that may be filed in opposition to the Settlement are overruled or otherwise resolved, then Strategic Claims Services (the "Administrator") will distribute the payments that the Settlement permits. This notice package explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

THE U.S. COURT HAS DIRECTED THAT NOTICE SHOULD BE GIVEN TO ALL CLASS MEMBERS TO INFORM THEM OF THE U.S. ACTION, THE CANADIAN ACTION AND THEIR RIGHTS. THE SENDING OF THIS NOTICE IS NOT AN EXPRESSION BY THE U.S. COURT OR THE PARTIES TO THE U.S. ACTION OF ANY OPINION AS TO THE MERITS OF ANY CLAIM OR DEFENSE OR THE LIKELIHOOD OF RECOVERY BY THE CLASS. NOTICE IS BEING PROVIDED SO THAT ALL CLASS MEMBERS MAY MAKE A DECISION AS TO WHAT STEPS, IF ANY, THEY WISH TO TAKE AS THIS MATTER PROCEEDS. NOTICE IS BEING SENT TO YOU BECAUSE RECORDS INDICATE THAT YOU MAY BE A CLASS MEMBER.

### B. WHAT IS A CLASS ACTION?

In a class action, one or more people and/or entities called a lead plaintiff sues on behalf of people and/or entities that have similar claims. All these people and/or entities are referred to as a class or individually as class members. One court resolves the issues for all class members, except for those who exclude themselves from the class.

### C. HOW DO I KNOW IF I AM A SETTLEMENT CLASS MEMBER AND CAN BE PART OF THE SETTLEMENT?

To see if you will receive a payment from the Settlement, you first need to know if you are a Class Member. The U.S. Action alleges that everyone who fits the following description is a Class Member: *all persons and entities who purchased or otherwise acquired IMAX shares on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive.*

## D. ARE THERE EXCEPTIONS TO BEING INCLUDED IN THE CLASS?

Excluded from the Settlement Class are the Defendants in the U.S. Action and Canadian Action, members of those Defendants' immediate families, all individuals who are either current officers and/or directors of any Defendant, or who served as officers and directors of any Defendant at any time during the Class Period.

## E. I'M STILL NOT SURE I AM INCLUDED

If you are still not sure whether you are included in the U.S. Action, you can ask for free help. You can call Strategic Claims Services at 1-866-274-4004 or visit www.____________ for more information. Or you can fill out and return the claim form attached hereto, to see if you qualify.

## F. WHAT DOES THE SETTLEMENT PROVIDE?

The Settlement consists of twelve million dollars ($12,000,000) in cash, plus interest. The Settlement will be used to pay Class Members, and also for the payment of taxes, administrative costs, including the costs of notice, and for attorneys' fees and expenses.

## G. HOW MUCH WILL MY PAYMENT BE IN THE SETTLEMENT?

If you are entitled to a payment, your share of the Settlement Fund will depend on a variety of factors, including the number of valid claim forms that Class Members submit, how many Settlement Class Members choose to exclude themselves from the class, how many shares of IMAX stock you purchased or otherwise acquired, and when you bought, acquired and sold your IMAX stock. The Plan of Allocation is included at the end of this Notice.

The Administrator, will distribute the Settlement Fund according to the Plan of Allocation described at the end of this Notice after the Canadian Order has become final and unappealable, the deadline for submission of Proof of Claim and Release forms has passed and all claims have been processed. The Administrator will process your claim and advise you if your claim does not satisfy the requirements approved by the U.S. Court. The Administrator will calculate your payment, if any, based upon the date you purchased or acquired IMAX stock, the losses you suffered as a result thereof and the type of claim you have.

By following the Plan of Allocation at the end of this Notice, you can calculate your "Recognized Claim." Your recovery will depend on the size of your Recognized Claim as it relates to the size of the Recognized Claims of all Class Members who file a claim form.

## [illegible]. HOW CAN I RECEIVE A PAYMENT IN THE SETTLEMENT?

To qualify for payment you must submit the Proof of Claim and Release form enclosed with this Notice. You may also obtain a claim form on the Internet at www.__________. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it and mail it postmarked no later than ______________. If you have any questions, or need assistance, call 1-866-274-4004, and someone will either answer your questions, or help you to complete the Proof of Claim and Release form.

The Administrator will advise Class Members if their claims are deficient and are rejected. Any Class Member who receives a deficiency letter or a rejection letter and who fails to submit documentation sufficient to remedy the deficiency or reason for rejection within the time prescribed herein shall have their claim deemed finally rejected. The Administrator shall advise Class Members in writing that their claims have been finally rejected. Class Members have thirty (30) days from the date of such final rejection letter to write to the Administrator stating the reasons that their claims should not be rejected, in which case the claim shall be submitted to the Court as a disputed claim. Notice of any hearing on such rejected claims shall be provided to all Class Members whose claims are rejected or disputed.

## [illegible]. WHEN WILL I RECEIVE MY PAYMENT IN THE SETTLEMENT?

The U.S. Court will hold a hearing on ________________, ____, at __:__ _.m., to decide whether to approve the Settlement. Even if Judge Buchwald approves the Settlement, it could take more than two years before the Settlement Fund is distributed to the Class Members. One reason that the Settlement distribution could be delayed is if Class Members object to any aspect of the Settlement and are not satisfied by the resolution of that objection by the U.S. Court. That Class Member could then appeal the U.S. Court's decision. In addition, it is always uncertain whether an appeal will be resolved in favor of a settlement, and resolving any such appeals or objections can take time. Another reason that the Settlement distribution could be delayed is that the Settlement is conditioned on the entry of the Canadian Order becoming final and unappealable. Finally, it may take more than two years for the Settlement Fund to be distributed because once the Settlement has been approved and any appeals are resolved, the Administrator must process all of the Proof of Claim and Release forms. The processing, by itself, is a very complicated process and will take many months.

## [illegible]. WHAT AM I GIVING UP TO RECEIVE A PAYMENT IN THE SETTLEMENT?

If you are a Settlement Class Member, and you do not exclude yourself from the Settlement, you remain in the Class, and that means that if the Settlement is approved, you, on behalf of yourself, your heirs, executors, administrators, successors and assigns and any Persons you represent, will release all "Released Claims," including participation in the Canadian Action, and including all "Unknown Claims," against all "Released Parties."

*The following release applies to the Settlement (as more fully set forth in the Stipulation).*

"Released Claims" means:

(i) with respect to the Released Parties: the release by Lead Plaintiff and all Class Members of all claims that were alleged in the U.S. Action, or the Canadian Action, or that could have been alleged in the U.S. Action, the Canadian Action, or any other proceeding, manner of action, actions, causes of action, suits, claims for sums of money, contracts, controversies, agreements, costs, damages, judgments and demands in law, contract, trust or equity, domestic or foreign, including claims under U.S. securities laws, U.S. federal laws, U.S. state laws, U.S. common law, Canadian securities laws, Canadian federal and provincial laws, and Canadian common law, and the laws of any other jurisdiction relating to transactions in IMAX securities during the Settlement Class Period or the subject matter and facts relating to the U.S. Action, including any acts, failures to act, omissions, misrepresentations, statements, misstatements, facts, events, transactions, occurrences or other subject matter set forth, alleged, embraced, encompassed or otherwise referred to in or related to the U.S. Action.

(ii) the claims that are to be released also include Unknown Claims and claims arising under the laws of any jurisdiction, including, without limitation, in the United States and in Canada, and Lead Plaintiff and all Class Members will waive and relinquish to the fullest extent possible any state, federal or foreign law defenses concerning the release of Unknown Claims. Defendants shall release Lead Plaintiff, all Class Members, and Lead Counsel, from any claims relating to the institution, prosecution, and settlement of the U.S. Action.

"<u>Released Parties</u>" means:

(i) with respect to the Defendants: the Defendants, their respective present and former parents, subsidiaries, divisions, affiliates, and any PricewaterhouseCoopers member firm, the present and former employees, members, partners, principals, managers, officers and directors of each of them, the present and former attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers, and agents of each of them, and the predecessors, heirs, successors and assigns of each (together, the "Defendant Releasees"), and any Person or entity which is or was related to or affiliated with any Defendant Releasee or in which any Defendant Releasee has or had a controlling interest and the present and former employees, members, partners, principals, managers, officers, directors, attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers, and agents of each of them (all, with the Defendant Releasees, the "Defendant Released Parties").

(ii) with respect to Plaintiffs: the Lead Plaintiff and all other Class Members, their respective present and former parents, subsidiaries, divisions and affiliates, the present and former employees, officers and directors of each of them, the present and former attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers, and agents of each of them, and the predecessors, heirs, successors and assigns of each (together, the "Plaintiff Releasees"), and any Person or entity in which any Plaintiff Releasee has or had a controlling interest or which is or was related to or affiliated with any Plaintiff Releasee.

"<u>Unknown Claims</u>" means:

(i) any Released Claims that Lead Plaintiff or any Class Member does not know of or suspect to exist in his, her or its favor at the time of the release of the Defendant Released Parties which, if known by him, her or it might have affected his, her or its Settlement with and release of the Defendant Released Parties, or might have affected his, her or its decision not to object to this Settlement or not to exclude himself, herself or itself from the Class. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Lead Plaintiff shall expressly waive, and each of the Class Members shall be deemed to have waived, and by

operation of the Judgment shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

(ii) Lead Plaintiff and Class Members may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff shall expressly, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff acknowledges, and the Class Members shall be deemed to have acknowledged, and by operation of the Judgment shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

## K. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?

To exclude yourself from the Settlement, you must send a letter by mail saying that you want to be excluded from the *In re IMAX Corporation Securities Litigation*, Civil Action No. 06 CIV. 6128 (NRB) Settlement. To be excluded, you must include your name, address, telephone number, information concerning the quantity of IMAX stock held at the close of business on October 17, 2007, all of your purchase(s) and sale(s) of such stock from February 27, 2003 through and including October 17, 2007, the dates of purchase (or other acquisition) and sale of the IMAX stock, the price paid or received in all purchases and sales excluding commissions and fees, and your signature. No request for exclusion will be considered valid unless all information described in the preceding sentence is included in the request. Any exclusion request must be postmarked or hand delivered to the address below by no later than ___________:

In re IMAX Corporation Securities Litigation
c/o Strategic Claims Services
600 North Jackson Street - Suite 3
Media, PA 19063
1-866-274-4004
info@strategicclaims.net

You can't exclude yourself on the telephone. You also can't exclude yourself by e-mail (unless you have made prior written arrangements with the Administrator).

If you properly ask to be excluded, you will not receive any settlement payment and you cannot object to the Settlement from which you exclude yourself. You will also not be legally bound by anything that happens in the U.S. Action, and may be able to sue the Defendants concerning the claims being released in the Settlement in a separate action or remain a member of the Canadian Action. If you properly exclude yourself from the U.S. Action, and you purchased and held IMAX securities during the Canadian Class Period, you will remain a member of the class in the Canadian Action.

## IF I DO NOT EXCLUDE MYSELF, CAN I SUE THE SETTLING DEFENDANTS FOR THE SAME THING LATER?

No. If you do not exclude yourself from the Settlement, you cannot bring any of the Released Claims (including participating in the Canadian Action) against any Released Parties in the Settlement. Remember, the exclusion deadline is ____________________.

## IF I EXCLUDE MYSELF, CAN I OBTAIN A PAYMENT FROM THE SETTLEMENT?

No. If you exclude yourself from the Settlement, you cannot receive any payment from the Settlement. In that case, do not send in a Proof of Claim and Release form to ask for any payment.

## DO I HAVE A LAWYER IN THIS CASE?

The U.S. Court appointed the law firm of Abbey Spanier Rodd & Abrams, LLP, 212 East 39th Street, New York, NY 10016, as Lead Counsel to represent Class Members in this U.S. Action. You will not be charged for these lawyers, other than amounts those firms are awarded by the Court from the Settlement Fund. If you want to be represented by another lawyer, you may hire one at your own expense.

## HOW WILL THE LAWYERS BE PAID?

The lawyers who acted as counsel for the Class during the course of the litigation will apply to the U.S. Court for an award of attorneys' fees from the Settlement Fund. Lead Counsel will apply for an award of attorneys' fees from the Settlement Fund not to exceed twenty-five percent (25%) of the Settlement and reimbursement of expenses of no greater than $____, plus interest on such amounts at the same rate earned by the Settlement Fund. This is the equivalent of an average of $____ per share of IMAX stock. Lead Counsel and other plaintiff's counsel have litigated the U.S. Action for five years on a contingent fee basis and have advanced the expenses of litigation with the expectation that if they were successful in recovering money for the Class, they would receive fees and be reimbursed for their expenses from the Settlement Fund, as is customary in this type of litigation.

Case 1:06-cv-06128-NRB Document 199 Filed 02/01/12 Page 27 of 44

## HOW DO I NOTIFY THE COURT THAT I DON'T LIKE THE SETTLEMENT?

You can tell the U.S. Court that you don't agree with the Settlement, the Plan of Allocation or Lead Counsel's request for attorneys' fees and reimbursement of expenses. If you are a Class Member you can object to the Settlement if you don't like any part of it. If you object to the Settlement, you can present reasons in writing why you think the U.S. Court should not approve the Settlement, the Plan of Allocation or Lead Counsel's request for attorneys' fees or expenses. The U.S. Court will consider your views. To object, you must send a letter saying that you are a Class Member in *In re IMAX Corporation Securities Litigation*, Civil Action No. 06 CIV. 6128 (NRB) and that you object to the Settlement, or any aspect of the Settlement. You must include your name, address, telephone number, information concerning the quantity of IMAX stock held at the close of business on October 17, 2007, all of your purchase(s) and sale(s) of such stock from February 27, 2003 through and including October 17, 2007, the dates of purchase (or other acquisition) and sale of the IMAX stock, the price paid or received in all purchases and sales excluding commissions and fees, and your signature. No objection will be considered valid unless all information described in the preceding sentence is included in the request. Any objection must be postmarked or hand delivered and filed with the Clerk of the U.S. Court no later than ____________ with copies to the addresses below:

**COURT**
Clerk of the Court
United States District Court for the Southern District of New York
Attn: *In re IMAX Corporation Securities Litigation*, Civil Action No. 06 CIV. 6128 (NRB)
500 Pearl Street
New York, NY 10007-1312

**LEAD COUNSEL**
Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, NY 10016

**DEFENDANTS' COUNSEL**
Lewis J. Liman
David Oliwenstein
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

M. Byron Wilder
Jason C. McKenney
Gibson Dunn & Crutcher, LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201

Jennifer L. Conn
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

If the U.S. Court rejects or modifies the Plan of Allocation and/or the amount of attorneys' fees or expenses requested, the U.S. Court may still approve the Settlement.

## Q. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND REQUESTING EXCLUSION?

Objecting is simply telling the U.S. Court that you don't like something about the Settlement. You can object only if you stay in the U.S. Class. If you object to the Settlement you will be bound by the Settlement, and all the terms of the Stipulation including the terms of the Judgment to be entered in the U.S. Action and the releases provided therein. Excluding yourself means telling the Court that you don't want to be part of the U.S. Class. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you. With respect to the Settlement, you can either object or exclude yourself, but you cannot do both. If you properly exclude yourself from the U.S. Action, and you purchased IMAX stock between February 17, 2006, through August 9, 2006, you will remain a member of the class in the Canadian Action.

## R. WHEN AND WHERE WILL THE U.S. COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The U.S. Court will hold a Fairness Hearing at ___:___ ___.m. on ____________, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, 10007-1312. At this hearing the U.S. Court will consider whether the Settlement is fair, reasonable and adequate and in the best interests of the U.S. Class. If there are objections, the U.S. Court will consider them. Judge Buchwald will listen to people who have asked in writing to speak at the hearing. The U.S. Court may also decide how much to award Lead Counsel and other counsel for attorneys' fees and expenses and whether to approve the Plan of Allocation. At or after the hearing, the U.S. Court will decide whether to approve the Settlement, the Plan of Allocation and an Award of Attorneys' fees and expenses. We do not know how long it will take the U.S. Court to make these decisions.

## S. DO I HAVE TO ANSWER QUESTIONS AT THE FAIRNESS HEARING?

No. Lead Counsel and Defendants' Counsel will attempt to answer questions Judge Buchwald may have. But you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the U.S. Court will consider it. You may also pay your own lawyer to attend but it is not necessary.

## T. MAY I SPEAK AT THE FAIRNESS HEARING?

You may ask the U.S. Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re IMAX Corporation Securities Litigation*". Be sure to include your name, address, telephone number and signature. Your Notice of Intention to Appear must be postmarked no later than ____________, and be sent to the Clerk of Court, Lead Counsel and Defendants' Counsel, at the addresses on page __, in question __. You cannot speak at the hearing if you exclude yourself.

Case 1:06-cv-06128-NRB Document 199 Filed 02/01/12 Page 29 of 44

## U. WHAT WILL HAPPEN IF I DO NOTHING AT ALL?

If you fail to file a timely Proof of Claim and Release in response to this Notice, you'll get no money from this Settlement. If you fail to exclude yourself, you will nevertheless release the Released Parties from the Released Claims in the Settlement, even if you do not file a Proof of Claim and Release. If you fail to exclude yourself, you will remain a member of the Class in the U.S. Action, and you cannot participate in the Canadian Action, which will be a Released Claim.

## V. ARE THERE MORE DETAILS ABOUT THE SETTLEMENT AND THE CANADIAN ACTION?

This Notice summarizes the proposed Settlement. More details are contained in the Settlement Agreement itself. You can obtain a copy of the Stipulation of Settlement by writing to Lead Counsel at the addresses set forth below, or by visiting www.____________ or www.abbeyspanier.com. Also available on the website are the Proof of Claim and Release, this Notice and documents relating to the Canadian Action.

If you have questions about the Settlement or the Canadian Action, you may write Lead Counsel at the addresses set forth below or call them toll free at 1-800-889-3701 or call the Administrator at 1-866-274-4004 toll free; or visit the websites referenced above, where you will find a link to the Administrator's website containing answers to common questions about the Settlement and a claim form, plus other information to help you determine whether you are a Class Member, and whether you are eligible for a payment.

ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, NY 10016
ATTN: IMAX Settlement

If you have more questions about the Canadian Action, you may write or contact counsel for the Canadian Class at Siskinds, LLP, 680 Waterloo Street, London, Ontario, Canada, 519-672-2121 or Siskinds.com.

**DO NOT CONTACT THE COURT**

## W. WHAT ARE MY RIGHTS AND OBLIGATIONS AS A SECURITIES BROKER OR NOMINEE?

SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

If you purchased or otherwise acquired IMAX shares on the NASDAQ between February 27, 2003 and July 20, 2007, inclusive, for the beneficial interest of a person or organization other than yourself, the Court has directed that, WITHIN TEN (10) BUSINESS DAYS OF YOUR RECEIPT OF THIS NOTICE, you must either (1) provide the Administrator the name and last known address of each person or organization for whom or for which you purchased or otherwise acquired such shares during the Class Period, preferably on computer-generated mailing labels or, electronically, in MS Word or

WordPerfect files (label size Avery # 5162), or in an MS Excel data table setting forth (a) title/registration, (b) street address, and (c) city/state/zip or (2) request additional copies of this Notice package (which will be provided to you free of charge) and within seven (7) days mail the Notice package form directly to the beneficial owners of the IMAX stock. If you choose to follow alternative procedure (2), the Court has directed that, upon such mailing, you send a statement to the Administrator confirming that the mailing was made as directed. You are entitled to reimbursement from the Settlement Fund of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of the beneficial owners. Those expenses will be paid after your request and submission of appropriate supporting documentation. All communications concerning the foregoing should be addressed to the Administrator:

In re IMAX Corporation Securities Litigation
c/o Strategic Claims Services
600 North Jackson Street - Suite 3
Media, PA 19063
1-866-274-4004
info@strategicclaims.net

Case 1:06-cv-06128-NRB Document 199 Filed 02/01/12 Page 31 of 44

**APPENDIX I**

**PLAN OF ALLOCATION OF THE SETTLEMENT FUND AMONG CLASS MEMBERS**

The Settlement Fund will be distributed to Class Members eligible for recovery pursuant to the Settlement who submit valid and timely Proof of Claim and Release forms ("Authorized Claimants") in connection with the Plan of Allocation described below. "Class Members" means persons who purchased IMAX shares on the NASDAQ between February 27, 2003 and July 20, 2007, inclusive, excluding the Defendants in the U.S. Action and Canadian Action, members of those Defendants' immediate families, all individuals who are either a current officer and/or director of any Defendant, or who served as an officer or director of any Defendant at any time during the Class Period, who does not submit a timely and valid request for exclusion from the Settlement. The Plan of Allocation provides that you will be eligible to participate in the distribution of the Settlement Fund only if you have a net loss on all transactions in IMAX stock purchased during the Class Period. The Plan of Allocation will be submitted to the Court for its approval at the Fairness Hearing, but will be considered by the Court separately from the Settlement itself.

A purchase or sale of IMAX common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, devise, or operation of law of IMAX common stock during the Class Period shall not be deemed a purchase or sale of IMAX common stock for the calculation of an Authorized Claimant's recognized loss, nor shall it be deemed an assignment of any claim relating to the purchase of such shares unless specifically provided in the instrument of gift or assignment. The receipt of IMAX common stock during the Class Period in exchange for securities of any other corporation or entity shall not be deemed a purchase or sale of IMAX common stock.

To the extent an Authorized Claimant had a gain from his, her, or its overall transactions in IMAX common stock during the Class Period, the value of the recognized loss will be zero. To the extent that a Claimant suffered an overall loss on his, her, or its overall transactions in IMAX common stock during the Class Period, but that loss was less than the recognized loss calculated above, then the recognized loss shall be limited to the amount of the actual loss. There shall be no recognized loss on short sales of IMAX common stock during the Class Period; however, any recognized gains with respect to short sales shall be offset against recognized losses on other transactions.

The Recognized Loss of each Authorized Claimant shall be calculated according to the following formula:

A. For shares held at the end of trading on October 17, 2007, the Recognized Loss shall be that number of shares multiplied by the lesser of:

(1) the applicable purchase date artificial inflation per share figure, as found in Table A; or

(2) the difference between the purchase price per share and $4.42.[1]

---

[1] Pursuant to Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated." $4.42 was the mean closing price of IMAX Corporation common stock on NASDAQ during the 90-day period beginning on July 20, 2007 and ending on October 17, 2007.

B. For shares sold between February 27, 2003 and July 19, 2007, inclusive, the Recognized Loss shall be that number of shares multiplied by the lesser of:

(1) the applicable purchase artificial inflation per share figure less the applicable sales date artificial inflation per share figure, as found in Table A; or

(2) the difference between the purchase price per share and the sales price.

C. For shares sold between July 20, 2007 and October 17, 2007, the Recognized Loss shall be the lesser of:

(1) the applicable purchase date artificial inflation per share figure, as found in Table A; or

(2) the difference between the purchase price per share and the average closing price of IMAX common stock between July 20, 2007 and the date of sale.[2]

**Table A**

| Purchase or Sale Date Range | Artificial Inflation Per Share |
|---|---|
| 02/27/2003 - 08/09/2006 | $3.90 |
| 08/10/2006 - 07/20/2007 | $0.00 |

[2] Pursuant to Section 21(D)(e)(2) of the Private Securities Litigation Reform Act of 1995, "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security."