# EXHIBIT B
# (PART 10)

Court File No. CV-06-3257-00

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

BETWEEN:

MARVIN NEIL SILVER and CLIFF COHEN

Plaintiffs

- and –

IMAX CORPORATION, RICHARD L. GELFOND
BRADLEY J. WECHSLER, FRANCIS J. JOYCE, NEIL S. BRAUN
KENNETH G. COPLAND, GARTH M. GIRVAN, DAVID W. LEEBRON
and KATHRYN A. GAMBLE

Defendants

Proceeding under the *Class Proceedings Act, 1992*

**PLAINTIFFS' RESPONDING MOTION RECORD**
**TO AMEND THE CLASS DEFINITION**
**(RETURNABLE JULY 30 – AUGUST 2, 2012)**
**VOLUME 2 OF 3**

**Siskinds** LLP
Barristers & Solicitors
680 Waterloo Street
P.O. Box 2520
London, ON N6A 3V8

A. Dimitri Lascaris (LSUC #: 50074A)
Tel: (519) 660-7844
Fax: (519) 672-6065

**Sutts Strosberg** LLP
Lawyers
600-251 Goyeau Street
Windsor, ON N9A 6V4

Harvey T. Strosberg (LSUC#: 12640O)
Jay Strosberg (LSUC #: 47288F)
Tel: (519) 561-6285
Fax: (866) 316-5308

Lawyers for the Plaintiffs

**TO:** **McCarthy Tetrault** LLP
Barristers and Solicitors
Suite 4700, Toronto Dominion Bank Tower
Toronto Dominion Center
Toronto, ON M5K 1E6

R. Paul Steep
Dana Peebles
Tel: (416) 601-7998
Fax: (416) 868-0673

Lawyers for the Defendants

# INDEX

# INDEX


| | TAB | Page Number |
|---|---|---|
| **VOLUME 1** | | |
| Affidavit of Michael G. Robb, sworn May 9, 2012 | 1 | 1 |
| Exhibit "A" – Statement of Claim, issued September 20, 2006 | A | 21 |
| Exhibit "B" – 2006 Annual Report | B | 36 |
| Exhibit "C" – Email and Amended Statement of Defence | C | 383 |
| Exhibit "D"- *Kaplan v Gelfond*, 240 FRD 88 | D | 464 |
| Exhibit "E" – *In re IMAX Securities Litigation*, 587 F. Supp. 2d 471 | E | 475 |
| Exhibit "F" – *In re IMAX Securities Litigation*, 2009 U.S. Dist. LEXIS 58219 | F | 491 |
| Exhibit "G" – *In re IMAX Securities Litigation*, 272 FRD 138 | G | 499 |
| Exhibit "H" – *In re IMAX Securities Litigation*, 2011 U.S. Dist. LEXIS 41709 | H | 526 |
| Exhibit "I" – *Morrison v National Australia Bank*, 130 S Ct 2869 | I | 538 |
| Exhibit "J" – PACER Docket Report | J | 565 |
| Exhibit "K-1" – Memorandum of Law in Support of Defendants IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce and Kathryn A. Gamble's Opposition to Plaintiffs' Motion for Class Certification | K-1 | 599 |
| Exhibit "K-2" - Memorandum of Law in Support of Defendants IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce and Kathryn A. Gamble's Opposition to Snow Capital Investment Partners, L.P.'s Motion for Class Certification | K-2 | 636 |
| Exhibit "K-3" – Defendant PricewaterhouseCoopers LLP's, an Ontario Limited Liability Partnership, Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification | K-3 | 669 |
| Exhibit "L-1" – Report of Lucy P. Allen, dated February 23, 2009 | L-1 | 695 |

## INDEX


| INDEX | TAB | Page Number |
|---|---|---|
| Exhibit "L-2" – Report of Professor Punam Puri, dated February 23, 2009 | L-2 | 738 |
| **VOLUME 2** | | |
| Exhibit "M" – Litigation Plan, dated February 22, 2007 | M | 796 |
| Exhibit "N" – Letter from Paul Steep, dated November 3, 2011 | N | 812 |
| Exhibit "O" – Email from Sandy Allan and attachments, dated January 27, 2012 | O | 813 |
| Exhibit "P" – Email from Dana Peebles, dated March 30, 2012 | P | 964 |
| Exhibit "Q" – Merger's motion for an amended motion, dated March 26, 2012 | Q | 1012 |
| Exhibit "R-1" – Letter from Mr. Lascaris to Defendants' counsel, dated January 31, 2012 | R-1 | 1014 |
| Exhibit "R-2" – Letter from Mr. Peebles, dated February 1, 2012 | R-2 | 1020 |
| Exhibit "R-3" – Letter from Mr. Leon, dated February 3, 2012 | R-3 | 1022 |
| Exhibit "R-4" – Letter from Mr. Lascaris to Merger Fund, dated February 7, 2012 | R-4 | 1023 |
| Exhibit "R-5" – Letter from Mr. Leon, dated February 8, 2012 | R-5 | 1024 |
| Exhibit "R-6" – Letter from Mr. Lascaris to Richard Margolies, dated February 9, 2012 | R-6 | 1025 |
| Exhibit "S-1" – Revenue-Systems, dated December 1, 2004 | S-1 | 1026 |
| Exhibit "S-2" – Revenue-System Leases, dated December 1, 2004 | S-2 | 1029 |
| Exhibit "S-3" – Revenue-System Sales, dated December 1, 2004 | S-3 | 1031 |
| Exhibit "S-4" – Memorandum, dated December 1, 2005 | S-4 | 1033 |
| Exhibit "S-5" – Memorandum, dated December 7 2005 | S-5 | 1036 |
| Exhibit "S-6" – Presentation, dated December 7, 2005 | S-6 | 1042 |
| Exhibit "S-7" – Report on Installations | S-7 | 1051 |

# INDEX


| | TAB | Page Number |
|---|---|---|
| Exhibit "S-8" – Emails sent by Mark Welton in Q4 2005 and January 2006 | S-8 | 1073 |
| Exhibit "S-9" – Letter from IMAX to the Securities Exchange Commission, dated June 20, 2007 | S-9 | 1095 |
| Exhibit "S-10" - Exhibit "U-33" – notes, undated, titled: Lark and Kazan | S-10 | 1113 |
| Exhibit "S-11" - Exhibit "U-36" - notes, undated, titled "McMinnville, Manila and Winnipeg" | S-11 | 1114 |
| Exhibit "S-12" - minutes of a Meeting of the Board of Directors of Imax Corporation, held on March 8, 2006 | S-12 | 1115 |
| Exhibit "T-1" – Excerpts from the transcript of Lisa Coulman, taken January 31, 2008 | T-1 | 1120 |
| Exhibit "T-2" – Excerpts from the transcript of Bradley J. Wechsler, taken February 28, 2008 | T-2 | 1123 |
| Exhibit "T-3" – Excerpts from the transcript of Neil Braun, taken February 28, 2008 | T-3 | 1125 |
| Exhibit "U-1" - email dated December 17, 2001, from Marnie Hamilton to Kathryn Gamble, et al. | U-1 | 1126 |
| Exhibit "U-2" - email dated June 19, 2004, from Jim Patterson to Marnie Hamilton | U-2 | 1128 |
| Exhibit "U-3" - report dated November 5, 2004, titled "Research Report, Imax Corporation (IMAX) | U-3 | 1130 |
| Exhibit "U-4" - email dated January 9, 2005, from Mark Welton to Loron Orris, et al. | U-4 | 1142 |
| Exhibit "U-5" - Presentation dated February 2005, titled "Imax Corporation, Discussion Materials | U-5 | 1144 |
| Exhibit "U-6" - email dated March 30, 2005, from Ilidio Coito to Rafal Rybski, et al. | U-6 | 1221 |
| Exhibit "U-7" - email dated April 5, 2005, from Frank Joyce to Bill O'Malley | U-7 | 1225 |

INDEX


| | TAB | Page Number |
|---|---|---|
| Exhibit "U-8" - email dated July 12, 2005, from Gary Harbison to Don Kane, et al. | U-8 | 1228 |
| Exhibit "U-9" - email dated July 12, 2005, from Mark Welton to Brad Wechsler, et al. | U-9 | 1230 |
| Exhibit "U-10" - email dated July 24, 2005, from Mark Welton to Richard Wooland, et al. | U-10 | 1232 |
| Exhibit "U-11" - email dated November 3, 2005, from Mark Welton to Don Kane, et al. | U-11 | 1234 |
| Exhibit "U-12" - email dated November 14, 2005, from Don Savant to Huang Ke, et al. | U-12 | 1235 |
| Exhibit "U-13" - email dated December 8, 2005, from Mark Welton to Don Kane | U-13 | 1237 |
| Exhibit "U-14" - email dated December 21, 2005, from Glenn Pederson to Don Kane | U-14 | 1238 |
| Exhibit "U-15" - email dated December 22, 2005, from Mark Welton to Larry O'Reilly, et al. | U-15 | 1239 |
| Exhibit "U-16" - email dated December 31, 2005, from Ilidio Coito to Don Kane | U-16 | 1241 |
| Exhibit "U-17" - Memorandum dated January 16, 2006, titled "Q3 installation of Delhi (AEZ)" | U-17 | 1242 |
| Exhibit "U-18" - email dated January 19, 2006, from Don Kane to Ilidio Coito | U-18 | 1243 |
| Exhibit "U-19" - email dated January 19, 2006, from Ilidio Coito to Lac Nguyen, et al. | U-19 | 1245 |
| Exhibit "U-20" - email dated January 27, 2006, from Mark Welton to Don Kane, et al. | U-20 | 1247 |
| Exhibit "U-21" - email dated January 30, 2006, from Don Kane to Ilidio Coito, et al. | U-21 | 1248 |
| Exhibit "U-22" - email dated February 21, 2006, from Jeffrey Vance to Frank Joyce, et al. | U-22 | 1251 |

INDEX


| | TAB | Page Number |
|---|---|---|
| Exhibit "U-23" - presentation dated March 1, 2006, titled "Auditor's Preliminary Report to the Audit Committee for the year ended December 31, 2005" | U-23 | 1252 |
| Exhibit "U-24" - list dated March 7, 2006, titled "Proposed Media Strategy" | U-24 | 1279 |
| Exhibit "U-25" - email dated May 10, 2006, from Rafa Rybski to Ilidio Coito | U-25 | 1280 |
| Exhibit "U-26" - email dated May 17, 2006, from Kathryn Gamble to Edward MacNeil, et al. | U-26 | 1281 |
| Exhibit "U-27" - email dated June 2, 2006, from Mark Welton to Bill O'Malley, et al. | U-27 | 1284 |
| Exhibit "U-28" - email dated June 21, 2006, from Huang Ke to Richard Wooland, et al. | U-28 | 1287 |
| Exhibit "U-29" - chronology dated January 2005 through September 1, 2006, titled "Question 10: General Chronology" | U-29 | 1288 |
| **VOLUME 3** | | |
| Exhibit "U-30" - letter dated July 2, 2007, from Edward MacNeil to Angela Crane (SEC) | U-30 | 1293 |
| Exhibit "U-31" - presentation dated July 19, 2007, titled "Imax Corporation, Q4 2006 Review Package to the Audit Committee" | U-31 | 1319 |
| Exhibit "U-32" - notes, undated, titled "PWC Current Position" | U-32 | 1342 |
| Exhibit "U-33" - notes, undated, titled "Beijing Radio and Film and Beijing SUC" | U-33 | 1343 |
| Exhibit "U-34" - chart, undated, titled "Information Request" | U-34 | 1345 |
| Exhibit "U-35" - email dated August 2, 2005 from John Schreiner to Mark Welton | U-35 | 1378 |
| Exhibit "U-36" - email dated September 7, 2005 from James A. Skinner to kino@suvar.ru | U-36 | 1379 |
| Exhibit "U-37" - email dated October 4, 2005 from John Schreiner to Ilidio Coito | U-37 | 1381 |

| INDEX | TAB | Page Number |
|---|---|---|
| Exhibit "U-38" - email dated October 4, 2005 from Mark Welton to Brad Wechsler | U-38 | 1382 |
| Exhibit "U-39" - email dated October 7, 2005 from Mark Welton to Ilidio Coito | U-39 | 1405 |
| Exhibit "U-40" - email dated October 7, 2005 from Ilidio Coito to Mark Welton | U-40 | 1407 |
| Exhibit "U-41" - email dated October 7, 2005 from Bill O'Malley to Mark Welton | U-41 | 1408 |
| Exhibit "U-42" - email dated October 26, 2005 from Ilidio Coito to kino@suvar.ru and aleksashin@inbox.ru | U-42 | 1409 |
| Exhibit "U-43" - email dated October 26, 2005 from John Schreiner to Ilidio Coito | U-43 | 1411 |
| Exhibit "U-44" - email dated October 27, 2005 from Ilidio Coito to John Schreiner and Mark Welton | U-44 | 1415 |
| Exhibit "U-45" - email dated November 28, 2005 from Ilidio Coito to Kinoplex Suvar | U-45 | 1419 |
| Exhibit "U-46" - email dated December 14, 2005 from Mark Welton to Karen Dinsmore | U-46 | 1422 |
| Exhibit "U-47" - email dated December 20, 2005 from Don Kane to David Brower | U-47 | 1428 |
| Exhibit "U-48" - email dated December 22, 2005 from Larry T. O'Reilly to Mark Welton | U-48 | 1429 |
| Exhibit "U-49" - email dated December 22, 2005 from Larry T. O'Reilly to Rich Gelfond and Brad Wechsler | U-49 | 1431 |
| Exhibit "U-50" - undated email to Ilidio Coito and copied to John Schreiner | U-50 | 1436 |
| Exhibit "U-51" - email dated January 19, 2006 from Ilidio Coito to John Schreiner | U-51 | 1439 |
| Exhibit "U-52" - email dated January 23, 2006 from Don Kane to David Brower | U-52 | 1440 |
| Exhibit "U-53" - email dated January 30, 2006 from John Schreiner to Mark Welton | U-53 | 1441 |

INDEX


| INDEX | TAB | Page Number |
|---|---|---|
| Exhibit "U-54" - email dated January 30, 2006 from Mark Welton to John Schreiner | U-54 | 1442 |
| Exhibit "U-55" - email dated April 18, 2006 from John Schreiner to Ilidio Coito | U-55 | 1445 |
| Exhibit "U-56" - email dated May 12, 2006 from Ilidio Coito to Kinoplex Suvar | U-56 | 1448 |
| Exhibit "U-57" - email dated May 18, 2006 from Ilidio Coito to Kinoplex Suvar | U-57 | 1449 |
| Exhibit "U-58" - email dated May 26, 2006 from Kinoplex Suvar to Ilidio Coito | U-58 | 1450 |
| Exhibit "U-59" - email dated May 30, 2006 from Larry T. O'Reilly to Eric Jacques | U-59 | 1451 |
| Exhibit "U-60" - email dated June 8, 2006 from John Schreiner to Ilidio Coito | U-60 | 1453 |
| Exhibit "U-61" - email dated July 12, 2006 from Ilidio Coito to Kinoplex Suvar | U-61 | 1456 |
| Exhibit "U-62" - email dated July 14, 2006 from John Schreiner to Kinoplex Suvar | U-62 | 1458 |
| Exhibit "V" – Financial Statements, released April 27, 2012 | V | 1459 |
| Exhibit "W-1" – US Settlement Notice | W-1 | 1526 |
| Exhibit "W-2" – Canadian Certification Notice | W-2 | 1456 |
| Affidavit of Frank C. Torchio, sworn May 9, 2012 | 2 | 1549 |
| Exhibit "A" – Resume | A | 1574 |
| Exhibit "B" – Price Decline Used for IMAX Common Stock Damages | B | 1583 |
| Exhibit "C" - Artificial Inflation Apportionment from February 27, 2003 to August 9, 2006 | C | 1585 |
| Exhibit "D" - IMAX Reported Daily Volume and Closing Price from February 27, 2003 to November 7, 2006 | D | 1589 |
| Exhibit "E" - IMAX Reported and Adjusted Volume for | E | 1611 |

## INDEX


| INDEX | TAB | Page Number |
|---|---|---|
| Multi-Trader Model from February 27, 2003 to November 7, 2006 | | |
| Exhibit "F" - IMAX Float for Multi-Trader Model from February 27, 2003 to November 7, 2006 | F | 1635 |
| Exhibit "G-1" - Estimated Damages for IMAX Common Stock during the U.S. Damage Period of February 27, 2003 to August 9, 2006 and the Canadian Damage Period of February 17, 2006 to August 9, 2006, PSLRA Limitation for U.S. Damage Period | G-1 | 1657 |
| Exhibit "G-2" - Estimated Damages for IMAX Common Stock during the U.S. Damage Period of February 27, 2003 to August 9, 2006 and the Canadian Damage Period of February 17, 2006 to August 9, 2006, PSLRA Limitation for U.S. Damage Period and OSA Limitation for Canadian Damage Period | G-2 | 1659 |
| Exhibit "G-3" - Estimated Damages for IMAX Common Stock during the U.S. Damage Period of February 27, 2003 to August 9, 2006 and the Canadian Damage Period of February 17, 2006 to August 9, 2006, PSLRA Limitation for NASDAQ Purchasers and OSA Limitation for TSX Purchasers | G-3 | 1661 |
| Exhibit "H" - Calculation of IMAX Prejudgment Interest (US$ in millions) | H | 1663 |
| Exhibit "I" - IMAX Common Stock Price from February 27, 2003 to August 9, 2006 and Summary of IMAX Damages ($US) | I | 1665 |
| Exhibit "J" - Estimated Damages for IMAX Common Stock Purchased on the NASDAQ from February 27, 2003 to August 9, 2006 and Estimated Recovery Ratio in the U.S. Proceeding Applicable to the Canadian Damage Period | J | 1667 |
| Exhibit "K" - Liability Limit for IMAX ($C) | K | 1670 |

# EXHIBIT M

This is Exhibit "M" mentioned and referred to in the Affidavit of Michael G. Robb, sworn before me at the City of London, in the Province of Ontario, this 9th day of May, 2012.

A Commissioner, etc.

DANIEL GEORGE STRICKLAND, a Commissioner, etc.,
Province of Ontario, while a Student-at-Law.
Expires: August 8, 2014

1

# PLAINTIFFS' LITIGATION PLAN AS OF FEBRUARY 22, 2007

## DEFINED TERMS

1. Capitalized terms that are not defined in this litigation plan ("Plan") have the meanings as particularized in the statement of claim.

## CLASS COUNSEL

2. The plaintiffs have retained Sutts, Strosberg LLP and Siskinds LLP ("Class Counsel") to prosecute this class action. Class Counsel have the requisite knowledge, skill, experience, personnel and financial resources to prosecute the action to resolution.

## THE COMPOSITION OF THE CLASS

3. The plaintiffs seek to represent:

> *all persons, other than Excluded Persons, who acquired securities of Imax during the Class Period and continued to hold some or all of those securities as at the close of trading on the TSX and NASDAQ on August 9, 2006, or such other definition as may be approved by the court.*

## REPORTING AND COMMUNICATION

4. Class Counsel have developed a website at www.imax-classaction.com for this action ("Website"). Current information on the status of the action is posted and will be updated

regularly. Copies of some of the publicly filed court documents, court decisions, notices, documentation and other information relating to the action are or will be accessible from the Website.

5. The Website also:

(a) contains a communication webpage, a feature that permits putative Class Members to submit inquiries to Class Counsel which are sent directly to a designated member of Class Counsel who will promptly respond;

(b) lists a toll-free telephone number for Class Counsel which will contain a recorded message providing information regarding the status of the litigation which will be updated as required;

(c) lists the direct-dial telephone number for a designated person with Class Counsel, permitting putative Class Members to make inquiries to a live person.

DOCUMENT MANAGEMENT

6. Class Counsel will use data management systems to organize, code and manage the documents produced by the defendants and all relevant documents in the plaintiffs' possession.

LITIGATION SCHEDULE

7. The plaintiffs intend to bring a motion to seek leave to amend the statement of claim to add the Proposed Defendants as defendants in the action and to assert the causes of action contained in Part XXIII.1 of the *Act* against the Individual Defendants and the Proposed Defendants.

8. The plaintiffs intend to request that the class action case management judge schedule the motion referred to in the paragraph 7 above on the same day as the certification motion.

9. The plaintiffs may ask the court to order the defendants to deliver their statements of defence before the hearing of the certification motion in the event that the motion for leave to commence a proceeding under Part XXIII.1 the *Act* is disposed of prior to the motion for certification.

10. After disposition of the motion seeking leave pursuant to the *Act* and the certification motion, absent agreement among counsel, the plaintiffs will ask the court to set a

litigation schedule for the remaining steps in the action. The plaintiffs will probably ask that the litigation schedule be amended from time-to-time.

**THE PLAINTIFFS' EXPERTS**

11. The plaintiffs have retained L. I. Rosen, an accountant, to provide assistance as required.

**NOTICE OF CERTIFICATION OF THE ACTION AS A CLASS PROCEEDING AND THE OPT-OUT PROCEDURE**

12. If the action is certified as a class proceeding, the plaintiffs propose that a notice advising of the certification be circulated to advise Class Members, among other things, that:

(a) the court certified the action as a class proceeding;

(b) a person may only opt out of the class proceeding by sending a written election to opt out to the recipient designated by the court before a date fixed by the court;

(c) a person may not opt out of the class proceeding after the date fixed by the court; and

(d) if the common issues are resolved in favour of the Class Members, claimants may be required to register, file a claim and submit documentation to a designated person in order to be entitled to any compensation.

13. The plaintiffs propose that the notice advising of certification, in a form approved by the court, be distributed and published in the following manner:

(a) posted by Class Counsel on the Website;

(b) provided by Class Counsel to any person who requests it.

(c) published once in the national edition of *The Globe and Mail*, Report on Business section;

(d) published once in the national edition of the *National Post*, Financial Post section;

(e) published once in the national edition of the *Wall Street Journal*;

(f) available orally by recorded message at Class Counsel's toll-free line;

(g) sent electronically by Class Counsel to the list of brokers in Canada attached as Schedule 1 asking them to bring the Notice to the attention of their clients who purchased Imax securities during the Class Period;

(h) sent electronically by Class Counsel to the list of brokers in the U.S. attached as Schedule 2 asking them to bring the Notice to the attention of their clients who purchased Imax securities during the Class Period;

(i) placed online at the websites listed on Schedule 3; and

(j) posted by Imax in a prominent location on its website at www.imax.com.

14. The plaintiffs may ask the court to order that the defendants pay the costs of disseminating the notice in the above manner. Alternatively, the plaintiffs will pay the costs in the first instance, reserving their right to seek recovery of these costs from the defendants by order of the judge presiding at the trial of the common issues.

15. The plaintiffs propose that Sarkis Isaac, an accountant practising in Windsor, receive the opt-out notices and report to the court the names and addresses of the persons who opt out by the date fixed by the court. Mr. Isaac has previously been appointed by the court to fulfil these tasks.

MEDIATION

16. The plaintiffs will participate in mediation before a mutually acceptable mediator if the defendants are prepared to do so.

TRIAL OF THE COMMON ISSUES

17. The plaintiffs will ask the court to hold the trial of the common issues six (6) months after the completion of the examinations for discovery and the production of the information required by the undertakings and any motions.

NOTICE OF THE RESOLUTION OF THE COMMON ISSUES

18. If the common issues, or some of them, are resolved in favour of the plaintiffs, the court will be asked to:

(a) settle the form and content of the notice of resolution of the common issues;

(b) order that the notice of the resolution of the common issues be distributed to those Class Members who did not validly opt out;

(c) prescribe the information required from Class Members in order to make a claim under Part XXIII.1 of the *Act*;

(d) prescribe the information and procedure required in order for Class Members to make a claim at common law;

(e) set a date by which each Class Member will be required to file her/his/its claim.

19. The plaintiffs propose that the notice of resolution advise Class Members, among other things:

(a) that the plaintiffs were successful on the common issues;

(b) that no Class Member will be entitled to any compensation unless she/he/it files a claim in a prescribed manner by a fixed date;

(c) of the procedure to file a claim;

(d) that damages for each Class Member under Part XXIII.1 of the *Act* will be calculated based on her/his/its trading particulars;

(e) that each Class Member will have the opportunity to review and, if necessary, provide information to correct her/his/its damages under Part XXIII.1 of the Act by accessing her/his/its personal transaction particulars through the secure portion of the Website;

(f) that if the liability caps under Part XXIII.1 of the *Act* are engaged, each Class Member will have the opportunity to come forward and establish the defendants' liability at common law by proving the facts prescribed by the court, should she/he/it choose to do so; and

(g) that their rights against the defendants in relation to the Representation will be deemed to have been finally adjudicated whether they submit a claim or not.

20. The plaintiffs will ask the court to order that the notice of resolution of the common issues be distributed substantially in accordance with the procedure set out in paragraph 13 above. This notice, to the extent possible, should be sent directly to each Class Member.

CLAIMS PROCESS

21. The plaintiffs will ask the court to appoint an Administrator, with such rights, powers and duties as the court directs, to receive and evaluate claims in accordance with the protocols approved by the court pursuant to section 25 of the *Class Proceedings Act, 1992.*

22. The plaintiffs will ask the court to appoint one or more Referees with such rights, powers and duties as the court directs to conduct references in accordance with protocols approved by the court.

23. In order to simplify the claims process, the Administrator will, wherever practical, utilize:

(a) a paperless, electronic state-of-the-art web-based technology system which will include a secure database that is incorporated into the Website ("Database");

(b) standardized claims forms and filing procedures; and

(c) summary methods of introducing documentary evidence.

24. The court will be asked to set a deadline ("Claims Deadline") by which Class Members must file their claims with the Administrator.

25. Any person who does not file a claim with the Administrator before the Claims Deadline will not be eligible to participate in the damages assessment procedure and will not be entitled to recover any damages without leave of the court.

26. In order to file a claim, a person must, on or before the Claims Deadline:

(a) register on the Database, or by mail or by fax, with the Administrator; and

(b) submit such documentation to the Administrator as required by the court in support of the claim.

27. The types of records which shall constitute sufficient proof of a claim shall be specified in a protocol to be approved by the court and may include trading account statements, trade confirmation slips or other evidence confirming acquisition of Imax securities, evidence confirming Imax securities continued to be held on August 9, 2006 and, if applicable, evidence confirming disposition of the Imax securities.

28. The name, address and amount claimed by each person who files a claim with the Administrator before the Claims Deadline shall be added to the Database and provided with an identification name and a password by the Administrator to permit the person access to her/his/its claims information in the Database.

29. If any claimant disagrees with the Administrator's decision relating to eligibility or calculation of damages, she/he/it may elect to have the Administrator's decision reviewed by the Referee within a time period fixed by the court. The Referee will carry out the review of the Administrator's decision in the least expensive, most summary manner possible in accordance with a protocol to be approved by the court. The Referee's decisions will be final. There shall be no right of appeal from the Referee's decision.

AGGREGATE DAMAGES

30. Each Class Member may be entitled to her/his/its:

(a) damages assessed in accordance with the assessment formula provided in s. 138.5 of the *Act* or a pro rated amount in respect thereof; or

(b) share of any aggregate assessment of damages made with respect to the claims for common law misrepresentation or conspiracy; and

(c) share of the punitive damage award, if any, allocated as the court directs at the trial of the common issues; plus

(d) share of prejudgment interest; plus

(e) postjudgment interest.

STATUTORY DAMAGES UNDER PART XXIII.1 OF THE *ACT*

31. Part XXIII.1 of the *Act* provides specific directions for the calculation of damages payable under those provisions. The plaintiffs will ask the court at the common issues trial to determine the formula by which the damages of Class Members are to be calculated.

32. The Administrator will review the share purchase and sale data of each Class Member who makes a claim, and calculate her/his/its damages under Part XXIII.1 of the *Act* pursuant to the formula ordered by the court in the judgment on the common issues.

33. In respect of each claimant who files a claim before the Claims Deadline, the Administrator shall make a decision, and promptly notify the claimant of the following:

(a) whether the person is an eligible claimant; and

(b) the amount of the person's damages calculated pursuant to Part XXIII.1 of the *Act*.

34. The Administrator shall post its conclusions on the Database and/or communicate them electronically or in writing by mail or by fax to the persons affected in accordance with a protocol to be approved by the court.

35. Each claimant will be able to access the Administrator's decision and her/his/its damage calculations by going to the Database and inputting her/his/its identification name and password. The defendants shall also have access to the Database.

36. After a claimant has reviewed her/his/its damage calculations in the Database, s/he/it or the defendants can advise the Administrator, within a time period fixed by the court, of any disagreement s/he/it or the defendants may have with the information and/or calculations.

37. After being advised of a disagreement by the Class Member within the period fixed by the court, the Administrator shall consider any information provided by the claimant and/or the defendants and provide its decision on eligibility and/or the damages calculation.

THE ADMINISTRATOR'S FIRST REPORT TO COURT

38. The Administrator shall report to the court, by motion, the amount payable to the Class in respect of Part XXIII.1 of the *Act,* in addition to other aggregate amounts, if any, found owing at the common issues trial.

39. The court will be asked to review the Administrator's First Report to the Court, enter judgment in such amount in favour of the Class and decide whether or not to authorize the Administrator to make a distribution to the eligible Class Members.

COMMON LAW DAMAGES

40. In the event that:

(a) leave is not granted in respect of Part XXIII.1 of the *Act*; or

(b) the damages payable by the defendants are capped pursuant to section 138.7 of the *Act*; and

(c) the recovery by some or all Class Members is accordingly reduced from what it would be but for the application of section 138.7; and

(d) the court's findings at the completion of the common issues trial are such that there remain issues in order for Class Members to assert their claims for misrepresentation or conspiracy at common law;

Class Members will be provided with the opportunity to come forward to prove any such individual issues and their damages pursuant to those causes of action.

41. The Class Members will be notified of the court's judgment following the Administrator's First Report to Court. Within 30 days of the date of notification Class Members will be required to give notice of their intention to proceed with a claim at common law by providing a statement of the facts (limited to those facts relating solely to the individual issues) on which they rely.

**SMALL CLAIMS (UNDER $10,000)**

42. Class Members with remaining claims of less than $10,000 wishing to proceed with such claims will be required to file affidavit evidence setting out their evidence with respect to the individual issues remaining to be proven. Any defendant who wishes may cross examine an affiant on her/his/its affidavit by written interrogatories (in accordance with rule 35 of the *Rules of Civil Procedure*) should s/he/it wish to challenge the evidence. The Referee will then make a decision with respect to the Class Member's claim on the basis of the affidavit and the answers to the written interrogatories.

**SUMMARY CLAIMS ($10,000-$50,000)**

43. Class Members with remaining claims worth between $10,000 and $50,000 wishing to proceed with such claims shall proceed in accordance with the simplified procedure set out in rule 76 of the *Rules of Civil Procedure* and will be required to file:

(a) an affidavit of documents prepared in accordance with rule 76.03; and

(b) affidavit evidence relating to the individual issues remaining to be proven.

44. The Referee may make her or his decision on the claims of the Class Member on the basis of the record, or may, in her or his discretion, conduct a summary trial of such claims in accordance with rule 76.12 of the *Rules of Civil Procedure*.

**FULL CLAIMS (OVER $50,000)**

45. Class Members with remaining claims in excess of $50,000 wishing to proceed with such claims will be required to:

(a) serve on the defendants an affidavit of documents prepared in accordance with rule 30.03 of the *Rules of Civil Procedure;* and

(b) attend for an oral examination for discovery (in accordance with rule 34), or provide answers to written interrogatories (in accordance with rule 35), as any defendant wishing to examine them may elect.

46. The Referee may, in her/his discretion, make a decision on the individual issues based on the documentary and discovery evidence, or conduct a trial of such claims.

THE ADMINISTRATOR'S SECOND REPORT TO COURT

47. Once the Referee(s) has conducted all of the proceedings described above, the Administrator will present the findings to the court in the Administrator's Second Report to the Court.

48. The court will be asked:

(a) to review the Administrator's Second Report to the Court and enter judgment in accordance with it;

(b) decide whether or not to authorize the Administrator to make a distribution to the eligible Class Members; and

(c) discharge the Referee(s) from his or her mandate.

49. If the total available for distribution to Class Members is not fully disbursed to the Class Members within a period of time fixed by the court, the unpaid amount shall be distributed by the Administrator to designated recipients cy près in such manner and on such terms as the court may direct.

ADMINISITRATOR'S FINAL REPORT TO COURT

50. After the Administrator makes its final distribution, it shall report to the court and be discharged as the Administrator.

ORDERS RELATING TO CLASS COUNSEL'S FEES AND THE COSTS OF ADMINISTRATION

51. After the trial of the common issues, the plaintiffs will ask the court to approve an agreement respecting fees and disbursements between them and Class Counsel. To the extent that the approved Class Counsel's fees, disbursements and GST are not completely paid by the costs recovered from the defendants, the unpaid balance shall be a first charge on the total recovery and paid before any distribution to the Class Members.

52. The plaintiffs will ask the court to order that the defendants pay all administration costs, including the costs of all notices associated with the process and the fees and disbursements of the Administrator and Referee as these costs are incurred. Absent that court order, the plaintiffs will seek an order that these costs be paid out of the total recovery after payment of Class Counsel's fees and disbursements but before any distribution to the Class Members.

FURTHER ORDERS CONCERNING THIS PLAN

53. This Plan may be amended from time-to-time by directions given at case conferences or by further order of the court.

EFFECT OF THIS PLAN

54. This Plan shall be binding on all Class Members who do not opt out in accordance with the procedure directed by the court whether or not they make a claim under the Plan.

# EXHIBIT N

This is Exhibit "N" mentioned and referred to in the Affidavit of Michael G. Robb, sworn before me at the City of London, in the Province of Ontario, this 9th day of May, 2012.

A Commissioner, etc.

DANIEL GEORGE STRICKLAND, a Commissioner, etc., Province of Ontario, while a Student-at-Law. Expires: August 8, 2014

McCarthy Tétrault LLP
Box 48, Suite 5300
Toronto Dominion Bank Tower
Toronto ON M5K 1E6
Canada
Tel: 416-362-1812
Fax: 416-868-0673

R. Paul Steep
Direct Line: 416-601-7998
Email: psteep@mccarthy.ca

mccarthy tetrault

November 3, 2011

**Via Facsimile**

The Honourable Madam Justice
Katherine M. van Rensburg
Superior Court of Justice
7755 Hurontario Street
6th Floor
Brampton ON L6W 4T1

Your Honour:

**Re: Imax Corporation, et al. ats. Silver, et al.**
**Court File No. CV-06-3257-00**

We are reporting to you, as counsel to the Defendants in the Ontario action, that we have been advised by counsel to IMAX in the U.S. class action that the Plaintiff and Defendants in that action signed a Memorandum of Understanding ("MOU") yesterday that would settle all claims against IMAX on behalf of the members of the class in the United States case. Earlier today, we submitted the MOU to you in error. The MOU is not being submitted to Judge Buchwald, although she, like you, is being advised that it has been signed. We advised your office of this error immediately and understand that the MOU has not been placed before you. Thank you for your assistance in that regard.

We will discuss with counsel for the Plaintiffs in our case the appropriate manner in which to address Your Honour as to the effect of the proposed resolution of the U.S. litigation on the remaining members in the Canadian case, and we would expect to be in touch shortly to schedule a case teleconference.

Yours very truly,

For: R. Paul Steep
/hvh

c: Mr. Dimitri Lascaris (Siskinds)
Mr. Jay Strosberg (Sutts, Strosberg)
Mr. Dana M. Peebles

DOCS #10882352

# EXHIBIT O

This is Exhibit "O" mentioned and referred to in the Affidavit of Michael G. Robb, sworn before me at the City of London, in the Province of Ontario, this 9th day of May, 2012.

A Commissioner, etc.

DANIEL GEORGE STRICKLAND, a Commissioner, etc.,
Province of Ontario, while a Student-at-Law.
Expires: August 8, 2014

**Nicole Young**

| | |
|---|---|
| **From:** | Allan, Sandy [SALLAN@MCCARTHY.CA] on behalf of Steep, R. Paul [PSTEEP@MCCARTHY.CA] |
| **Sent:** | Friday, January 27, 2012 11:57 AM |
| **To:** | Sherry.McHady@ontario.ca |
| **Cc:** | A. Dimitri Lascaris; LeonJ@bennettjones.com; HoakenE@bennettjones.com; Daniel Bach; Peebles, Dana M. |
| **Subject:** | IMAX - Final Settlement Documents |
| **Attachments:** | JudgeLtr.pdf; ExhA-Part2.pdf; RMDecl.pdf; MotPrelimSet.pdf; MemoInSupp.pdf; ExhA-Part1.pdf |

Further to the appearance of all counsel before Her Honour on January 12, I am attaching, on behalf of the IMAX Defendants in the Ontario action, a copy of the materials filed with Judge Buchwald in the US Action in support of the motion for a preliminary approval Order regarding the settlement of that action.

By copy of this email, the materials are being provided to counsel for the Ontario Plaintiffs (and also to Ontario counsel for the US Action Plaintiff, The Merger Group).

Her Honour had asked that draft notices in the Ontario Action be submitted to the Court for consideration, after the filing in the US Action was completed. I have spoken to Mr Lascaris (for the Ontario Plaintiff) and to Mr Hoaken (as Ontario counsel for The Merger Group), and we have agreed to have a call together on Monday to discuss potential amendments to the original form and method of notice submitted by the Ontario Plaintiff in its motion for approval of the certification notice in the Ontario Action. We will discuss whether, in light of the US Action filing, and the ongoing dialogue over the course of the motions under reserve, the parties can narrow the issues respecting the form and method of notice which are outstanding.

We will then communicate with Her Honour as to our proposed draft notices, taking into account the results of that call.

We are of course otherwise available at Her Honour's convenience should any other or further discussion be required.

mccarthy tétrault

**Sandy Allan**
Litigation Assistant
to R. Paul Steep and H. Michael Rosenberg
T: 416-601-8200, x. 542449

MT Services Limited Partnership
Administrative services provider for McCarthy Tétrault LLP
Box 48, Suite 5300
Toronto Dominion Bank Tower
Toronto ON M5K 1E6

PLEASE, think of the environment before printing this message.

This e-mail may contain information that is privileged, confidential and/or exempt from disclosure. No waiver whatsoever is intended by sending this e-mail which is intended only for the named recipient(s). Unauthorized use, dissemination or copying is prohibited. If you receive this email in error, please notify the sender and destroy all copies of this e-mail. Our privacy policy is available at www.mccarthy.ca.

000814

ABBEY SPANIER RODD & ABRAMS, LLP
ATTORNEYS AT LAW

212 EAST 39TH STREET
NEW YORK, NEW YORK 10016
PHONE 212 889 3700
FAX 212 684 5191
www.abbeyspanier.com

ARTHUR N. ABBEY
DIRECT PHONE 212 284 5200
DIRECT FAX 212 779 2418
aabbey@abbeyspanier.com

January 26, 2012

**VIA HAND DELIVERY**

The Honorable Naomi Reice Buchwald
U.S. District Judge
U.S. District Court, SDNY
500 Pearl Street, Room 2270
New York, New York 10007

Re: *In re IMAX Securities Litigation*, No. 06 Civ. 6128 (NRB)

Dear Judge Buchwald:

My firm is counsel to The Merger Fund, the Lead Plaintiff in the above-referenced action. Today, the parties executed a Stipulation and Agreement of Settlement. Pursuant to Your Honor's Individual Practices, we have enclosed two courtesy copies of Lead Plaintiff's Memorandum of Law in Support of Motion For Preliminary Approval of Class Action Settlement, Conditional Class Certification and Approval of Notice Plan and the Declaration of Richard B. Margolies in Support of Lead Plaintiff's Memorandum of Law in Support of Motion For Preliminary Approval of Class Action Settlement, Conditional Class Certification and Approval of Notice Plan. The parties are available at Your Honor's convenience to answer any questions the Court might have regarding the settlement.

Respectfully Submitted,

Arthur N. Abbey

ANA:lk
Enclosure

cc: Lewis J. Liman (via email)
David Oliwenstein (via email)
Byron M. Wilder (via email)
Jennifer Conn (via email)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CLASS CERTIFICATION AND APPROVAL OF NOTICE PLAN**

ABBEY SPANIER RODD & ABRAMS, LLP
Arthur N. Abbey
aabbey@abbeyspanier.com
Karin E. Fisch
kfisch@abbeyspanier.com
Richard B. Margolies
rmargolies@abbeyspanier.com
212 East 39th Street
New York, NY 10016
(212) 889-3700

*Counsel for Lead Plaintiff*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ....................II

I. INTRODUCTION .................... 1

II. BACKGROUND OF THE LITIGATION .................... 2

III. THE PROPOSED SETTLEMENT .................... 6

IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .................... 8

V. THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED .................... 10

A. THE REQUIREMENT OF NUMEROSITY IS SATISFIED .................... 11

B. THE REQUIREMENT OF COMMONALITY IS SATISFIED .................... 12

C. THE REQUIREMENT OF TYPICALITY IS SATISFIED .................... 14

D. THE REQUIREMENT OF ADEQUATE REPRESENTATION IS SATISFIED .................... 15

E. THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED .................... 16

VI. THE NOTICE PROGRAM IS APPROPRIATE .................... 17

CONCLUSION .................... 19

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 10, 11, 16

*Bano v. Union Carbide Corp.*,
273 F.3d 120 (2d Cir. 2001) ........ 10

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ........ 14

*Central States Se. and Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
504 F.3d 229 (2d Cir. 2007) ........ 11

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ........ 11

*Cromer Fin. Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001) ........ 16

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ........ 8

*Darquea v. Jarden Corp.*,
06 Civ. 722 (CLB), 2008 U.S. Dist. LEXIS 17747 (S.D.N.Y. Mar. 6, 2008) ........ 16

*Denney v. Jenkens & Gilchrist*,
230 F.R.D. 317 (S.D.N.Y. 2005) ........ 10

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) ........ 17

*In re Deutsche Telekom AG Sec. Litig.*,
229 F. Supp. 2d 277 (S.D.N.Y. 2002) ........ 8, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
245 F.R.D. 147 (S.D.N.Y. 2007) ........ 16

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........ 9

*In re Holocaust Victim Assets Litig.*,
105 F. Supp. 2d 139 (E.D.N.Y. 2000) ........ 8

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff The Merger Fund ("Lead Plaintiff"), by and through its counsel, respectfully submits this memorandum of law in support of its motion for an order preliminarily approving the proposed settlement (the "Proposed Settlement") between Lead Plaintiff and Defendants IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble (collectively, the "IMAX Defendants") and PricewaterhouseCoopers LLP ("PwC-Canada") conditionally certifying a settlement class, setting a date for a fairness hearing, and approving the notice program agreed to by the parties. This motion is also supported by the Stipulation of Settlement, dated January 26, 2012 with exhibits attached thereto, and filed simultaneously herewith (the "Stipulation"),[1] and the Declaration of Richard B. Margolies in Support of Preliminary Approval of Proposed Settlement dated January 26, 2012, with exhibits attached thereto.

## I. INTRODUCTION

Lead Plaintiff submits this memorandum of law in support of preliminary approval of the Proposed Settlement with all Defendants in this securities class action brought on behalf of a class consisting of all persons and entities who purchase of otherwise acquired IMAX shares on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive, excluding Defendants in this action as well as the parallel action pending in Ontario Superior Court of Justice in Canada, and members of those Defendants' immediate families, all individuals who are either current officers and/or directors of any Defendant, or who served as officers or directors of any Defendant at any time during the Class Period (the "Settlement Class").

---

1 The Stipulation, together with all attachments thereto, is submitted herewith as Exh. A to the Declaration of Richard B. Margolies in Support of Lead Plaintiff's Motion for Preliminary Approval of Proposed Settlements ("Margolies Decl."). All cited provisions of the Stipulation shall hereinafter be referenced as "Stipulation ¶ __".

The Proposed Settlement provides for a $12 million monetary recovery for the Settlement Class which will be distributed to members of the Settlement Class who are eligible to receive such distribution from the proceeds and who shall release their claims as provided by the Proposed Settlement (the "Settlement Fund"). If finally approved, the Proposed Settlement will resolve all claims asserted in this litigation.

Lead Plaintiff move this Courts to enter a Preliminary Approval Order, submitted herewith as Exhibit B to the Stipulation: (1) granting preliminary approval of the Proposed Settlement; (2) certifying the proposed class pursuant to Rule 23(b)(3) for purposes of the Settlement; (3) directing that the Settlement Class be given notice of the Proposed Settlement, the Plan of Allocation, Lead Counsel's request for fees and reimbursement of expenses; and (4) scheduling a hearing at which the Court will consider the parties' motion for final approval of the Proposed Settlement. As detailed herein, the Proposed Settlement is fair, reasonable, and adequate.

## II. BACKGROUND OF THE LITIGATION

From August 11, 2006 through September 18, 2006, eight lawsuits were filed (the "Actions") against all or certain of the Defendants in the United States District Court for the Southern District of New York alleging that IMAX made material misrepresentations and omissions regarding revenue recognition for theater systems in violation of the federal securities laws. On September 20, 2006, following the filings of the Actions, a lawsuit was filed in the Canadian Court against the IMAX Defendants alleging, based on substantially identical facts to those alleged in the Actions, that, during the time period from February 17, 2006 through August 9, 2006, IMAX made material misrepresentations and omissions regarding revenue recognition for theater systems.

Pursuant to a January 17, 2007 Order of the Court, the Actions were consolidated, the Court appointed Westchester Capital Management, Inc. ("Westchester")(the investment advisor for GS Master Trust, MSS Merger Arbitrage Fund, The Merger Fund, The Merger Fund VL and SphinX Merger Arbitrage Fund) as lead plaintiff and further approved the appointment of the law firm of Abbey Spanier Rodd & Abrams, LLP as lead counsel for the class. On October 2, 2007, Westchester filed a Consolidated Amended Class Action Complaint alleging that Defendants had violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5, promulgated thereunder by the Securities and Exchange Commission. The Complaint asserted claims on behalf of all persons who purchased IMAX securities on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive, against the IMAX Defendants and PwC-Canada.

On December 10, 2007, the IMAX Defendants and PwC-Canada each filed motions to dismiss the Complaint on numerous grounds. After full briefing and oral argument, the Court requested that the parties file supplemental submissions on the pending motions to dismiss the Complaint. Defendants and Westchester submitted supplemental briefing on August 18, 2008.

On September 15, 2008, the Defendants' motions to dismiss were denied by the Court. Thereafter, Westchester commenced discovery.

On October 31, 2008, Westchester filed Plaintiff's first motion for class certification. Shortly thereafter, on December 2, 2008, Lead Counsel, on behalf of Westchester, and counsel for the IMAX Defendants attempted to resolve this litigation through mediation. The Honorable E. Leo Milonas presided over the mediation which concluded without resolution. The next day, December 3, 2008, the Second Circuit decided *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), in which the Circuit held that an

investment adviser that did not actually purchase the securities at issue lacked standing to bring a securities fraud claim on behalf of its clients because it did not suffer an injury in fact. Relying on the Second Circuit's decision in *Huff*, on February 18, 2009, Snow Capital Investment Partners, L.P. ("Snow Capital") requested a pre-motion conference in connection with its anticipated motion for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff.

On March 13, 2009, the Court denied without prejudice Westchester's motion for class certification pending resolution of Snow Capital's anticipated motion for reconsideration of the Court's January 17, 2007 Order. On April 3, 2009, Snow Capital moved for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff. After the issue was fully briefed, on June 29, 2009, the Court determined that under *Huff*, Westchester, an investment advisor, lacked Article III standing and granted Snow Capital's motion and appointed it lead plaintiff and its counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), as lead counsel.

On December 14, 2009, the Canadian Court certified the Canadian Action as a class action on behalf of investors worldwide who purchased IMAX securities on or after February 17, 2006 and held some or all of those securities on August 9, 2006. *See Silver v. IMAX Corporation*, [2009] O.J. No. 5585, 2009 ON.C. LEXIS 4847 (December 14, 2009, Sup. Ct. J.).

On April 22, 2010, Snow Capital filed its motion for class certification which was denied by the Court in December 2010. The Court held that this case could not proceed with Snow Capital as class representative, and directed that new applications for lead plaintiff be filed. On April 14, 2011, the Court issued an Order naming The Merger Fund as lead plaintiff and re-appointing Abbey Spanier Rodd & Abrams, LLP as lead counsel for the Class.

Soon after being reappointed, on May 2, 2011, Lead Counsel was informed by the IMAX Defendants that the Canadian Court would address the form of notice to be provided to the class in the Canadian Action. That day, Lead Counsel sent a letter to the Canadian Court expressing concerns about the form of notice. Lead Counsel suggested that the issuance of the notice in the Canadian Action be deferred until class certification was decided in this action. The next day, Lead Counsel advised the Canadian Court of its intention to move to intervene in the Canadian Action. On May 13, 2011, Lead Counsel moved to intervene in the Canadian Action and submitted an affidavit to the Canadian Court expressing its opinions regarding the proposed notice to be disseminated in the Canadian Action. On May 31, 2011, counsel for the plaintiffs in the Canadian Action submitted its motion record in response to Lead Plaintiff's motion to intervene. On June 3, 2011, Lead Plaintiff filed another motion for class certification in this Court.

From time to time throughout the course of this litigation, both Lead Plaintiff's Counsel and, as represented to Lead Plaintiff's Counsel, Canadian Lead Counsel, have made demands on Defendants, separately or globally, to settle the actions. Following the appointment of Lead Plaintiff and the reappointment of Abbey Spanier Rodd & Abrams, LLP as Lead Counsel, the parties re-commenced settlement discussions through their respective counsel. Between April 2011 and November 2011, the parties met numerous times, both in person and via conference call in an effort to negotiate a settlement. Those efforts resulted in the parties executing a Memorandum of Understanding on November 2, 2011 (the "MOU") to settle the litigation.

On December 6, 2011, the Parties entered into a stipulation in which Lead Plaintiff agreed to withdraw its motion for class certification motion in light of the proposed settlement of

this action. The Parties subsequently entered into the Stipulation, submitted herewith, that details the terms of the Proposed Settlement.

Lead Counsel have conducted an extensive investigation relating to the allegations pertaining to each defendant in the Class Action, the alleged damages suffered by the Class and the defenses asserted by the Defendants in the Class Action. In connection therewith, Lead Counsel reviewed and analyzed hundreds of thousands of pages of documents produced by Defendants, reviewed the transcripts of the testimony of the Individual Defendants and 11 other individuals conducted by the Securities and Exchange Commission and 11 transcripts of depositions conducted by the plaintiffs in the Canadian Action which included the testimony of a member of defendant PwC-Canada; conducted confirmatory discovery and consulted extensively with experts retained to advise on the issues pertinent to Lead Plaintiff's claims in the Class Action, including accounting issues and the damages that Lead Plaintiff would seek to prove at a trial. Lead Plaintiff and Lead Counsel believe that the proceedings described above provide an adequate and satisfactory basis for the Settlement described herein.

## III. THE PROPOSED SETTLEMENT

Defendants have collectively agreed to pay $12,000,000.00 in full and complete Settlement of this action . Lead Counsel may use up to $250,000.00 of that amount to pay the costs of notifying the Class, facilitating the filing of Proofs of Claim by Class Members, assisting Settlement Class Members in making their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class prior to the entry of Judgment. Assuming the approval of the Court for payment of this sum to Lead Counsel for purposes of the Notice and Administration Fund, the Defendants shall advance the $250,000.00 for deposit into the Notice and Administration Fund, in an account identified in writing by Lead Counsel, within the later of ten

(10) business days of entry of the Preliminary Approval Order or the identification of the account by Lead Counsel. The $250,000.00 in the Notice and Administration Fund is part of, and not in addition to, the Settlement Amount to be paid by the Defendants.

Should the Court enter the Preliminary Approval Order, the Settlement Fund shall be deposited into an interest-earning Class Settlement Account designated by Lead Plaintiff. A Settlement Class Member's actual recovery will be a proportion of the Settlement Fund determined by that Claimant's Recognized Claim as compared to the total Recognized Claims (defined below) of all Settlement Class Members who submit valid Proofs of Claim. An individual Settlement Class Member's payment may vary depending on the number of shares represented by the claims submitted, the purchase price for common stock purchased by the Settlement Class Member, and whether that stock was held at the end of the Settlement Class Period or sold during the Settlement Class Period. The terms of the Proposed Settlement are set forth in the Stipulation. The Plan of Allocation of the Settlement Fund provides the manner whereby the Settlement Fund shall in the future be distributed to Authorized Claimants.

Further, following this Court's preliminary approval of the Settlement, the IMAX Defendants shall seek the an Order amending the definition of the Canadian class to exclude from the Canadian class all Class Members who have not opted out of this Settlement. This Settlement is conditioned on the entry of such an order amending the definition of the Canadian class and that order becoming final and unappealable. In the event the Canadian Order is not entered or the Canadian Order is reversed on final appeal, the Parties shall revert to their litigation positions immediately prior to the execution of the MOU including, but not limited to, with respect to class certification.

## IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Lead Plaintiff respectfully submits that the Proposed Settlement achieves a result that is fair, reasonable, and adequate and readily meets the criteria applicable at preliminary approval. The Proposed Settlement was the result of months of arm's-length negotiations among experienced counsel for numerous parties. There is also no preferential treatment for any class representative or segment of the Settlement Class.

Under Fed. R. Civ. P. 23(e), a class action cannot be settled without the approval of the Court. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Approval of a proposed settlement is a matter within the broad discretion of the district court. *See In re Warner Comms. Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986). The procedure for approving a class action settlement consists of two steps: (1) a preliminary fairness evaluation; and (2) a final approval order issued after notice of the settlement is disseminated and a hearing to consider the fairness of the proposed settlement has been held. *See e.g. In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005); *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 143-44 (E.D.N.Y. 2000).

"In terms of the overall fairness, adequacy and reasonableness of the settlement, a full fairness analysis is unnecessary at this [preliminary approval] stage." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006). Rather, "preliminary approval is appropriate where the proposed settlement is merely within the range of possible approval." *Id.* "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to

Defendant, or who served as officers and directors of any Defendant at any time during the Class Period.

Federal Rule of Civil Procedure 23(a) sets forth the requirements for class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, for a class action to be maintainable, it must satisfy one of the subsections of the Federal Rules of Civil Procedure 23(b). In the present Action, Rule 23(b)(3) is applicable. Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement is readily met in securities fraud cases. *See Amchem Prods.*, 521 U.S. at 625.

**A. The Requirement of Numerosity is Satisfied**

In order to satisfy the numerosity requirement of Rule 23(a)(1), the class must be so large that joinder of all members would be impracticable. The numerosity requirement does not mandate that joinder of all parties be impossible -- only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate. *Central States Se. and Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is generally presumed when the proposed class would have at least 40 members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (*citing* 1 Newberg On Class Actions 2d, § 3.05 (1985 ed.)); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226

F.R.D. 456, 466 (S.D.N.Y. 2005). Moreover, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *Vivendi*, 242 F.R.D. at 84 (*quoting Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 U.S. Dist. LEXIS 25927, 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004)); *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 280-81 (S.D.N.Y. 2002) (*citing PaineWebber*, 171 F.R.D. at 123)); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 115 (S.D.N.Y. 2008).

This Court has already determined that the requirements of numerosity have been satisfied in this action. *See In re IMAX Sec. Litig.*, 272 F.R.D. 138, 146 (S.D.N.Y. 2010). Throughout the Class Period, IMAX's common stock was actively traded on the NASDAQ in a well-developed and efficient market. Lead Plaintiff believes there are, at a minimum, thousands of members of the Class. There are over 40 million shares of IMAX common stock issued and outstanding and, during the Class Period, there were hundreds of millions of shares of IMAX common stock traded. Approximately 84 percent of those shares were traded on the NASDAQ.

**B. <u>The Requirement of Commonality is Satisfied</u>**

A single common question can satisfy the commonality element of Fed. R. Civ. P. 23(a)(2). *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). The commonality requirement is generally considered a low hurdle that "has been applied permissively" by courts in the context of securities fraud litigation. *See Vivendi*, 242 F.R.D. at 84. "The critical inquiry is whether the common questions are at the core of the cause of action alleged." *Labbate-D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996). Here, this Court has already determined that the requirements of commonality have been

satisfied. *IMAX*, 272 F.R.D. at 147. Among these questions are: a) whether the federal securities laws were violated by Defendants' acts as alleged herein; (b) whether the SEC filings, press releases, reports and other public statements made by Defendants and disseminated to the investing public during the Class Period contained material misstatements or omitted to state material information; (c) whether and to what extent the Company's financial statements failed to comply with accounting principles during the Class Period; (d) whether PwC's audits of the Company's financial statements during the Class Period were conducted in accordance with generally accepted auditing standards ("GAAS") and the standards of the Public Company Accounting Oversight Board ("PCAOB"); (e) whether the market price of the Company's common stock during the Class Period was artificially inflated due to the materially misleading statements issued by Defendants; (f) whether Defendants acted with scienter in failing to inform investors of material facts and in issuing false and misleading financial statements; (g) whether reliance may be presumed pursuant to the fraud-on-the-market rule; and (h) whether the members of the Class have sustained damages as a result of the misconduct complained of herein, and if so, what is the proper measure of damages.

Courts have held that repeated misrepresentations of the sort alleged here satisfy the commonality requirement. *See e.g. In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374-75 (S.D.N.Y. 2000). Indeed the commonality of shareholder claims in a securities fraud class action is self-evident. *Metge v. Baehler*, 77 F.R.D. 470, 474-75 (S.D. Iowa 1978) ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the

issue may profitably be tried in one suit.") (*quoting Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)). Accordingly, there are common questions of law and fact sufficient to satisfy Rule 23(a)(2).

**C. <u>The Requirement of Typicality is Satisfied</u>**

Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson*, 267 F.3d at 155; *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, No. CV-04-2195, 2006 U.S. Dist. LEXIS 31130, at *14 (E.D.N.Y. May 18, 2006). The focus of the typicality inquiry in a securities class action is the defendants' behavior. *See In re IGI Sec. Litig.*, 122 F.R.D. 451, 456 (D.N.J. 1988) ("it is the defendants' course of conduct . . . upon which the court must focus in determining typicality.") (emphasis in original). Lead Plaintiff stands in the same position as do other investors who acquired IMAX common shares during the Class period. The market prices of IMAX stock reflected uniform, public statements, made in press releases and SEC filings that Lead Plaintiff has alleged contained material misrepresentations concerning IMAX's revenue recognition practices. Lead Plaintiff's claims and the claims of the Class members arise out of the same conduct by Defendants, are based on the same legal theories and focus on precisely the same misstatements and omissions from the same documents. *In re Scor Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 570-71 (S.D.N.Y. 2008) (plaintiffs' securities fraud claims were typical where all claims arose from "the same course of events, namely, the alleged series of misleading or fraudulent statements made by the Defendants, and the subsequent effect of those statements on the market for" the company's stock, and all potential class members' claims were

based on the same legal theories under Sections 10(b) of the Exchange Act). Lead Plaintiff's claims are thus typical of those of the Settlement Class.

### D. <u>The Requirement of Adequate Representation is Satisfied</u>

The final requirement of Rule 23(a) is adequacy of representation. To meet the adequacy requirement, "the representatives' interests must not conflict with the class members' interests, and . . . the representatives and their attorney must be able to prosecute the action vigorously." *In re Livent Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Both requirements are met here.

First, the interests of Lead Plaintiff are not antagonistic to those of the Class. Lead Plaintiff, like the other Class members, has been damaged as a result of the purchase of IMAX share at prices alleged to have been affected by alleged false and misleading statements made by Defendants and has been committed to vigorously prosecuting the claims asserted. There are no unique defenses which apply only to Lead Plaintiff. The interests of the other members of the Class, therefore, have been and will continue to be protected by Lead Plaintiff. Moreover, the respective claims of Lead Plaintiff and the Class arise from the same wrongful conduct, involve the same legal theories, and require the same proof. See *Livent*, 210 F.R.D. at 516-17 ("The commonality and typicality requirements blend together in determining whether the representative plaintiffs' claims are typical enough of the classwide claims that the representatives will adequately represent the class.") (citations and quotation marks omitted).

Second, the requirement of adequacy of representation is met by the qualifications of Counsel for Lead Plaintiff herein. Lead Counsel are experienced in securities litigation and have successfully prosecuted numerous securities class actions in courts throughout the United States

and in this Circuit. Counsel for Lead Plaintiff have vigorously pursued this action to a favorable resolution.

**E. The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied**

To certify a class under Rule 23(b)(3), a court must find that the common issues of fact and law predominate over individual issues. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). To satisfy this requirement, it must be shown that the issues subject to generalized proof predominate over the issues subject to only individualized proof. *Id.* at 136. The predominance requirement is "readily met" in many securities fraud actions. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 171 (S.D.N.Y. 2007); In *re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 288 (S.D.N.Y. 2003) (*quoting Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). As discussed above, Lead Plaintiff alleged that Defendants engaged in a common course of fraudulent conduct to artificially inflate the price of IMAX stock. Because liability can be determined on a class-wide basis, and therefore, the issues common to the Class predominate over any individual issues, the predominance requirement of Rule 23(b)(3) is satisfied. *See In re Visa Check/MasterMoney*, 280 F.3d at 139; *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 127 (S.D.N.Y. 2001).

Rule 23(b)(3) also requires that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Courts have held that "[s]ecurities suits easily satisfy the superiority requirement." *Darquea v. Jarden Corp.*, 06 Civ. 722 (CLB), 2008 U.S. Dist. LEXIS 17747, at *14 (S.D.N.Y. Mar. 6, 2008).

> Most violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible. Multiple lawsuits would be costly and inefficient. Moreover, although a large number of individuals

> may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*Id.* (internal citation omitted). Here, potential Class Members may number in the thousands and are dispersed throughout the country. In addition, most of those injured have not been damaged to a degree where it would be cost-effective for them to seek recovery of their own. *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999). Accordingly, certification of the Settlement Class for purposes of the Proposed Settlement is appropriate.

## VI. THE NOTICE PROGRAM IS APPROPRIATE

Under Rule 23(c)(2)(B), this Court is to direct to the members of the Class, "the best notice practicable under the circumstances, including individual notice to all members who can be identified though reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The form of notice must fairly apprise the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982); *Reade-Alvarez*, 2006 U.S. Dist. LEXIS 31130, at *23. The standard for the adequacy of settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005).

Here, the proposed notice program has been specifically geared to reaching all members of the Settlement Class, including all Canadian citizens who purchased IMAX shares on the NASDAQ. As set forth in the Stipulation, notice to the Class shall be given by mailing a notice to all Settlement Class Members who can be identified with reasonable effort (the "Mailed Notice"). That effort will include a direct mailing to shareholders and brokers or other nominees who purchased IMAX shares on behalf of others. A summary notice will be published (the

"Summary Notice"), substantially in the forms of Exhibits B to the Stipulation, in *The Wall Street Journal* and the *New York Times*, as well as in three Canadian newspapers selected in an effort to reach as many Canadian purchasers as possible. One of the summary notices will be in French and all notices will indicate that a French translation is available on the settlement website. The notice program also encompasses a dedicated website which will contain the Complaint, the Stipulation, the Notice and other publicly filed documents. Similar documents will be available on IMAX's and Lead Counsel's websites. Class counsel will also issue press release over a national newswire in a form substantially similar to the Summary Notice. Both the Mailed Notice and Summary Notice include the general terms of the Proposed Settlement set forth in the Stipulation, the definition of the class certified, the procedure by which persons who otherwise would be Members of the Settlement Class may request to be excluded from the Settlement Class, and the binding effect of any judgment rendered in the Action with respect to Defendants. The date and time of the Settlement Hearing will be added to the Mailed Notice and Summary Notice before they are sent to the Settlement Class Members. Importantly, the Mailed Notice also describes the Canadian Action and the effect of a Class Member's decision to exclude oneself from the Proposed Settlement.

Lead Plaintiff believes that this notice program is reasonable and the best notice practicable under the circumstances to provide due, adequate, and sufficient notice to all persons entitled to be provided with notice, and as meeting the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution.

## CONCLUSION

For the reasons set forth above, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Proposed Settlement and enter the proposed Preliminary Order, submitted herewith as Exhibit A to the Stipulation.

Dated: January 26, 2012

Respectfully submitted,

ABBEY SPANIER RODD & ABRAMS, LLP

By: /s/ Richard B. Margolies

Arthur N. Abbey
aabbey@abbeyspanier.com
Karin E. Fisch
kfisch@abbeyspanier.com
Richard B. Margolies
rmargolies@abbeyspanier.com
212 East 39th Street
New York, NY 10016
(212) 889-3700

*Counsel for Lead Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CLASS CERTIFICATION AND APPROVAL OF NOTICE PLAN**

Lead Plaintiff, by and through its undersigned counsel, hereby moves this Court for entry of an Order granting preliminary approval of the proposed settlement as set forth in the Stipulation and Agreement of Settlement Between Settlement Class Members and Imax Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble and PricewaterhouseCoopers LLP dated January 26, 2012 (the "Stipulation"), and other relief pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

Through the [Proposed] Order Preliminarily Approving Final Settlement and Providing For Notice (the "Preliminary Approval Order"), Lead Plaintiff seeks to establish a schedule leading to a hearing to determine whether the proposed settlement, on the terms and conditions provided in the Stipulation, should be approved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. The Preliminary Approval Order also conditionally certifies the class, and sets forth the procedure whereby notice to class members is provided, and whereby class members who wish to be excluded from the class or object to the proposed settlement may do so.

Based on the proposed timing of the mailing of individual notices to affected shareholders, Lead Plaintiff respectfully request that the settlement hearing be scheduled at the Court's convenience, on a date that falls approximately 90 days after the mailing of Notice of Pendency and Proposed Settlement of Class Action, so as to allow sufficient time following

dissemination of the notices for individual shareholders to review the notice and assess their options.

WHEREFORE, for the reasons stated above, in Lead Plaintiff's memorandum in support of this motion and in the accompanying Stipulation (with exhibits), Lead Plaintiff respectfully requests that the Court enter the Preliminary Approval Order, a proposed version of which is attached as Exhibit A to the Stipulation.

Dated: January 26, 2012

Respectfully submitted,

ABBEY SPANIER RODD & ABRAMS, LLP

By: /s/ Richard B. Margolies

Arthur N. Abbey
aabbey@abbeyspanier.com
Karin E. Fisch
kfisch@abbeyspanier.com
Richard B. Margolies
rmargolies@abbeyspanier.com
212 East 39th Street
New York, NY 10016
(212) 889-3700

*Counsel for Lead Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**DECLARATION OF RICHARD B. MARGOLIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CLASS CERTIFICATION AND APPROVAL OF NOTICE PLAN**

1. I am an associate at the law firm of Abbey Spanier Rodd & Abrams, LLP, Lead Counsel for Lead Plaintiff in this Action.

2. This declaration is being submitted in support of Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement, Conditional Class Certification and Approval of Notice Plan, dated January 26, 2012.

3. Attached hereto as Exhibit A is a true and correct copy of the Stipulation and Agreement of Settlement Between Settlement Class Members and IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble and PricewaterhouseCoopers LLP, with exhibits attached thereto.

I affirm under penalty of perjury that the foregoing is true and correct.

Dated: January 26, 2012

By: /s/Richard B. Margolies
Richard B. Margolies

# EXHIBIT A
(Part 1)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**STIPULATION AND AGREEMENT OF SETTLEMENT BETWEEN SETTLEMENT CLASS MEMBERS AND IMAX CORPORATION, RICHARD L. GELFOND, BRADLEY J. WECHSLER, FRANCIS T. JOYCE, KATHRYN A. GAMBLE AND PRICEWATERHOUSECOOPERS LLP**

This Stipulation and Agreement of Settlement (the "Stipulation") is entered into between: (i) the Lead Plaintiff,[1] the Class and (ii) the Defendants, all by and through the undersigned attorneys.

The Settlement and compromise of the Class Action provided herein is intended by the Parties to fully and finally compromise, resolve, discharge and settle the Released Claims subject to the terms and conditions set forth below.

**WHEREAS:**

**The Litigation**

A. From August 11, 2006 through September 18, 2006, eight lawsuits were filed (the "Actions")[2] against all or certain of the Defendants in the United States District Court for the Southern District of New York alleging that IMAX made material misrepresentations and omissions regarding revenue recognition for theater systems in violation of the federal securities laws.

[1] Except where stated otherwise, all capitalized terms are defined in Section 1 of this Stipulation.

[2] The docket numbers of the Actions are as follows: 06 Civ. 6128 (NRB), 06 Civ. 6235 (NRB), 06 Civ. 6313 (NRB), 06 Civ. 6349 (NRB), 06 Civ. 6449 (NRB), 06 Civ. 6693 (NRB), 06 Civ. 7057 (NRB) and 06 Civ. 7162 (NRB).

B. On September 20, 2006, following the filings of the Actions, a lawsuit was filed in the Canadian Court against the IMAX Defendants (and other individuals) alleging, based on substantially identical facts to those alleged in the Actions, that, during the time period from February 17, 2006 through August 9, 2006 (the "Canadian Class Period"), IMAX made material misrepresentations and omissions regarding revenue recognition for theater systems.

C. The IMAX Defendants estimate that approximately 83.9 percent of the shares of IMAX securities at issue in the Canadian Action were purchased on the NASDAQ and those members of the Canadian Class (as defined in paragraph S) who purchased IMAX securities on the NASDAQ are also members of the U.S. Class. In addition, the U.S. Class includes persons who purchased IMAX securities on the NASDAQ from February 27, 2003 to February 17, 2006 (prior to the beginning of the Canadian Class Period), and after August 9, 2006, (after the Canadian Class Period) and are thus not members of the Canadian Class.

D. Pursuant to a January 17, 2007 Order of the Court, the Actions were consolidated, the Court appointed Westchester (the investment advisor for GS Master Trust, MSS Merger Arbitrage Fund, The Merger Fund, The Merger Fund VL and SphinX Merger Arbitrage Fund) as lead plaintiff and further approved the appointment of the law firm of Abbey Spanier Rodd & Abrams, LLP as lead counsel for the class.

E. On October 2, 2007, Westchester filed a Consolidated Amended Class Action Complaint against the Defendants in the United States District Court for the Southern District of New York. The Complaint alleged that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5, promulgated thereunder by the Securities and Exchange Commission. The Complaint asserted claims on behalf of all persons who purchased IMAX securities on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive, against the IMAX Defendants and PwC-Canada.

F. On December 10, 2007, the IMAX Defendants and PwC-Canada each filed motions to dismiss the Complaint on numerous grounds. On January 22, 2008, Westchester filed its opposition to Defendants' motions to dismiss. Defendants filed their reply briefing on February 11, 2008.

G. On August 5, 2008, the Court heard oral argument on the Defendants' motions to dismiss the Complaint.

H. On August 12, 2008, the Court requested that the parties file supplemental submissions on the pending motions to dismiss the Complaint. The Defendants and Westchester submitted supplemental briefing on August 18, 2008.

I. On September 15, 2008, the Defendants' motions to dismiss were denied by the Court. Thereafter, Westchester commenced discovery, which included the production and review of hundreds of thousands of pages of documents and transcripts of depositions.

J. On October 31, 2008, Westchester filed plaintiffs' first motion for class certification.

K. On December 2, 2008, Lead Counsel, on behalf of Westchester, and counsel for the IMAX Defendants attempted to resolve this litigation through mediation. The Honorable E. Leo Milonas presided over the mediation which concluded without resolution.

L. On December 3, 2008, the Second Circuit decided *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), holding that an investment adviser that did not actually purchase the securities at issue lacked standing to bring a securities fraud claim on behalf of its clients because it did not suffer an injury in fact.

M. Relying on the Second Circuit's decision in *Huff*, on February 18, 2009, Snow Capital Investment Partners, L.P. ("Snow Capital") requested a pre-motion conference in

connection with its anticipated motion for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff.

N. On February 23, 2009, Defendants filed oppositions to Westchester's motion for class certification.

O. On March 13, 2009, the Court denied without prejudice Westchester's motion for class certification pending resolution of Snow Capital's anticipated motion for reconsideration of the Court's January 17, 2007 Order.

P. On April 3, 2009, Snow Capital moved for reconsideration of the Court's January 17, 2007 Order appointing Westchester lead plaintiff. Westchester filed its opposition on April 24, 2009 and Snow Capital replied on May 1, 2009.

Q. On June 29, 2009, the Court determined that under *Huff*, Westchester, an investment advisor, lacked Article III standing and granted Snow Capital's motion and appointed it lead plaintiff and its counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), as lead counsel.

R. On July 14, 2009, Westchester filed a Petition for Writ of Mandamus with the United States Court of Appeals for the Second Circuit seeking reversal of the Court's June 29, 2009 Order. Robbins Geller filed an answer to Westchester's Petition on July 31, 2009. Westchester filed a reply brief in support of its Petition on August 14, 2009. Westchester's Petition was denied by the Second Circuit on October 1, 2009.

S. On December 14, 2009, the Canadian Court certified the Canadian Action on behalf of investors worldwide who purchased IMAX securities on or after February 17, 2006 and held some or all of those securities on August 9, 2006 (the "Canadian Class"). *See Silver v. IMAX Corporation*, [2009] O.J. No. 5585, 2009 ON.C. LEXIS 4847 (December 14, 2009, Sup. Ct. J.).

T. On April 22, 2010, Snow Capital filed its motion for class certification. On June 10, 2010, the Defendants filed oppositions to Snow Capital's class certification motion. Snow Capital filed its reply in further support of the motion on July 30, 2010. The Court did not hear oral argument on the motion.

U. On December 20, 2010, this Court issued a Memorandum and Order that denied Snow's motion for class certification, held that this case could not proceed with Snow Capital as class representative, and directed that new applications for lead plaintiff be filed.

V. On January 10, 2011, the Merger Fund moved to be appointed lead plaintiff for the class. On January 12, 2011, Ironworkers St. Louis District Counsel Pension Fund also moved to be appointed lead plaintiff for the class.

W. On April 14, 2011, the Court issued an Order naming the Merger Fund as lead plaintiff and re-appointing Abbey Spanier Rodd & Abrams, LLP as lead counsel.

X. On May 2, 2011, Lead Counsel was informed by the IMAX Defendants that the Canadian Court would address the form of notice to be provided to the class in the Canadian Action. That day, Lead Counsel sent a letter to the Canadian Court expressing concerns about the form of notice. Lead Counsel suggested that the issuance of the notice in the Canadian Action be deferred until class certification was decided in the U.S. Action. The next day, Lead Counsel advised the Canadian Court of its intention to move to intervene in the Canadian Action.

Y. On May 13, 2011, Lead Counsel moved to intervene in the Canadian Action and submitted an affidavit to the Canadian Court expressing its opinions regarding the proposed notice to be disseminated in the Canadian Action. On May 31, 2011, counsel for the plaintiffs in the Canadian Action submitted its motion record in response to Lead Plaintiff's motion to intervene. Further motion materials continued to be served and filed thereafter. The

intervention motion and the motion to approve the proposed notice were argued before the Canadian Court on September 9 and 13, 2011, and further requests were made by the Canadian Court on January 12, 2012. The motions remain outstanding.

Z. On June 3, 2011, Lead Plaintiff filed its motion for class certification. On July 1, 2011, IMAX and PwC-Canada each filed an opposition to Lead Plaintiff's motion. On August 3, 2011, Lead Plaintiff filed its reply in further support of its motion.

AA. The IMAX Defendants, while expressing their willingness to agree to a global settlement of both the U.S. Action and the Canadian Action, have also expressed to Lead Counsel and Robbins Geller in the U.S. Action and counsel to the lead plaintiffs in the Canadian Action, that they would be willing to entertain a settlement demand in either action, while continuing to dispute vigorously the claims of the remaining shareholders in the other action.

BB. From time to time, Lead Counsel, Robbins Geller, and Canadian Lead Counsel have made demands on Defendants, separately or globally, to settle the actions.

CC. Following the appointment of Lead Plaintiff, Lead Counsel and Defendants' Counsel re-commenced settlement discussions. Between April 2011 and November 2011, the parties met numerous times, both in person and via conference call, in an effort to negotiate a settlement. Those efforts resulted in the parties executing a Memorandum of Understanding on November 2, 2011 (the "MOU") to settle the litigation.

DD. On December 6, 2011, the Parties entered into a stipulation in which Lead Plaintiff agreed to withdraw its motion for class certification in light of the proposed settlement of the U.S. Action. The Parties agreed that if any condition to the settlement is not satisfied, Lead Plaintiff would have the right to refile its motion upon five days written notice to Defendants and that consistent with Judge Buchwald's ruling, Defendants would be permitted to

take the deposition of Dr. John Finnerty regarding his class certification reply declaration and file a sur-reply brief with respect thereto.

EE. Lead Counsel have conducted an extensive investigation relating to the allegations pertaining to each defendant in the U.S. Action, the alleged damages suffered by the Class and the defenses asserted by the Defendants in the U.S. Action. In connection therewith, Lead Counsel reviewed and analyzed hundreds of thousands of pages of documents produced by Defendants, reviewed the transcripts of the testimony of the Individual Defendants and 11 other individuals conducted by the Securities and Exchange Commission and 11 transcripts of depositions conducted by the plaintiffs in the Canadian Action which included the testimony of a member of defendant PwC-Canada; conducted confirmatory discovery and consulted extensively with experts retained to advise on the issues pertinent to Lead Plaintiff's claims in the U.S. Action, including accounting issues and the damages that Lead Plaintiff would seek to prove at a trial.

FF. In the absence of a settlement demand from Canadian lead counsel on substantially the same terms as the Settlement which provides substantially the same compensation for those members of the Canadian Class who do not participate in the Settlement, the IMAX Defendants have expressed their intention to continue to vigorously defend the Canadian Action up through to trial.

GG. Lead Plaintiff and Lead Counsel believe that the proceedings described above provide an adequate and satisfactory basis for the Settlement described herein.

**Benefits of the Settlement to the Class**

HH. Lead Plaintiff and Lead Counsel believe that the Settlement provides an excellent monetary recovery for the Class Members based on the claims asserted, the evidence

developed, the defenses asserted, and the damages that might be proven against the Defendants in the U.S. Action.

II. Lead Plaintiff and Lead Counsel further recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the U.S. Action against the Defendants through discovery, summary judgment, trial and appeals. They have also considered the uncertain outcome and the risk of any litigation, especially in complex litigation such as this U.S. Action, as well as the delay in recovery that would result from prosecuting this case through trial and appeals. They are further mindful of the inherent problems of proving their claims and addressing Defendants' possible defenses to the alleged federal securities law violations and therefore believe that it is desirable that the Released Claims be fully and finally compromised, settled and resolved with prejudice and enjoined as set forth herein. Based upon their evaluation, Lead Plaintiff and Lead Counsel have determined that the Settlement set forth in this Stipulation is fair, reasonable and adequate and in the best interests of the Lead Plaintiff and the Class Members, and that it confers substantial benefits upon the Class Members.

JJ. The Defendants have denied that they have committed any act or omission giving rise to any liability and/or violation of law, in any jurisdiction, and state that they are entering into this Settlement solely to eliminate the uncertainties, burden and expense of further protracted litigation. The Parties further agree that neither the Stipulation, nor the Settlement, nor any of their terms, nor any press release or other statement or report by the Parties or by others concerning this Stipulation or the Settlement or their terms, shall constitute an admission or finding of wrongful conduct, acts or omissions on the part of any Released Party, or be admissible as evidence of any such wrongful act or omission in any proceeding, including but not limited to arbitrations, other than a proceeding to enforce the terms of the Stipulation, for any purpose whatsoever.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED**, by (i) Lead Plaintiff, for itself and on behalf of the Class Members, and (ii) the Defendants, that subject to the approval of the Court, the U.S. Action shall be settled, compromised and dismissed as to the Parties, on the merits and with prejudice and the Released Claims shall be finally and fully compromised, settled, released and dismissed as to the Released Parties, in the manner and upon the terms and conditions hereafter set forth:

**<u>Definitions</u>**

1. The following capitalized terms, used in this Stipulation, shall have the meanings specified below:

(a) "<u>Administrator</u>" means the Court-appointed notice and claims administrator.

(b) "<u>Authorized Claimant</u>" means any Class Member who submits a Proof of Claim that is allowed pursuant to the terms of this Stipulation.

(c) "<u>Canadian Action</u>" means the lawsuit filed by plaintiffs in the Canadian Court in *Silver v. IMAX Corp.*, Court File No. CV-06-3257-00. (Ontario Superior Court of Justice, Canada).

(d) "<u>Canadian Court</u>" means the Ontario Superior Court.

(e) "<u>Canadian Order</u>" means a final Order from a Canadian court that excludes, from the definition of the Canadian Class, all persons who do not opt out of this Settlement, if and when the Settlement is approved by final Order of the U.S. Court.

(f) "<u>Class</u>" or "<u>Settlement Class</u>" means all persons and entities who purchased or otherwise acquired IMAX shares on the NASDAQ from February 27, 2003 through July 20, 2007 (the "Class Period"), inclusive, excluding the Defendants in the U.S. Action and Canadian Action, members of those Defendants' immediate families, all individuals who are

either current officers and/or directors of any Defendant, or who served as officers and directors of any Defendant at any time during the Class Period.

(g) "Class Action" or "U.S. Action" means the Actions, consolidated by Order of the Court dated January 17, 2007.

(h) "Class Member" means a member of the Class who does not submit a timely and valid request for exclusion, substantially in the form required by the Notice attached hereto as Exhibit B or as otherwise approved by the Court, thereby opting out of the U.S Action.

(i) "Class Settlement Account" means the bank account maintained by Lead Counsel into which the Settlement Fund shall be deposited.

(j) "Complaint" means the October 2, 2007 Consolidated Amended Class Action Complaint filed by Westchester against the Defendants in the United States District Court for the Southern District of New York.

(k) "Counsel for the IMAX Defendants" means Cleary Gottlieb Steen & Hamilton LLP.

(l) "Counsel for defendant PwC-Canada" means Gibson, Dunn & Crutcher LLP.

(m) "Court" or "U.S. Court" means the United States District Court for the Southern District of New York.

(n) "Defendants" means the IMAX Defendants and PwC-Canada

(o) "Defendants' Counsel" means Counsel for the IMAX Defendants and Counsel for defendant PwC-Canada.

(p) "Effective Date" means the first day following the date on which the Judgment is finally affirmed on appeal and/or is no longer subject to appeal or certiorari, and the time for any petition for reargument, appeal, or review, by certiorari or otherwise, has expired.

For these purposes, an "appeal" shall not include an appeal of an order concerning only attorney's fees and/or expenses.

(q) "Escrow Agent" means Lead Counsel.

(r) "Fairness Hearing" is as defined in paragraph 5(c).

(s) "First Supplemental Agreement" is as defined in paragraph 14.

(t) "IMAX" means IMAX Corporation, and its respective present and former parents, subsidiaries, divisions and affiliates.

(u) "IMAX Defendants" mean defendants IMAX, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce and Kathryn A. Gamble.

(v) "Individual Defendants" means Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce and Kathryn A. Gamble.

(w) "Judgment" means the judgment to be entered in the Class Action pursuant to paragraph 7, below, of this Stipulation.

(x) "Lead Counsel" means Abbey Spanier Rodd & Abrams, LLP.

(y) "Lead Plaintiff" means The Merger Fund.

(z) "Net Settlement Fund" means the Settlement Fund less any applicable taxes, attorneys' fees, expert fees, costs and expenses, including those associated with notice to the Class and administration of the Settlement, approved by the Court.

(aa) "Notice and Administration Fund" means the fund consisting of a maximum of $250,000 from the Settlement Amount that may be used by Lead Counsel to pay the costs of notifying the Class, facilitating the filing of Proofs of Claim by Class Members, assisting Class Members in making their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class.

(bb) "Parties" means the Plaintiffs and the Defendants.

(cc) "Person" means any individual, corporation, partnership, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, government and any political subdivision thereof or any other type of business or legal entity, and the predecessors, heirs, successors and assigns of each of them.

(dd) "Plaintiff Releasees" is as defined in (mm)(ii).

(ee) "Plaintiffs" means the Lead Plaintiff and the Class, collectively.

(ff) "Plan of Allocation" means any plan or formula of allocation of the Net Settlement Fund, which plan or formula shall be proposed by Lead Plaintiff to be approved by the Court upon notice to the Class, or such other Plan of Allocation as the Court shall approve, whereby the Net Settlement Fund shall in the future be distributed to Authorized Claimants.

(gg) "Preliminary Approval Order" means the Order that Lead Plaintiff and Defendants will seek from the Court, as described in paragraph 4, below.

(hh) "Proof of Claim" means the submission to be made by Class Members, on the Proof of Claim and Release form, which shall be agreed upon by the Parties or as may be required by the Court.

(ii) "PwC-Canada" means defendant PricewaterhouseCoopers LLP, an Ontario Limited Liability Partnership.

(jj) "Released Parties" is as defined in (mm).

(kk) "Recognized Claim" is as defined in the Plan of Allocation, as set forth in Appendix I to Exhibit B.

(ll) "Released Claims" means:

(i) with respect to the Released Parties, the release by Lead Plaintiff and all Class Members of all claims that were alleged in the U.S. Action, or the Canadian Action, or that could have been alleged in the U.S. Action, the Canadian Action, or any

other proceeding, manner of action, actions, causes of action, suits, claims for sums of money, contracts, controversies, agreements, costs, damages, judgments and demands in law, contract, trust or equity, domestic or foreign, including claims under U.S. securities laws, U.S. federal laws, U.S. state laws, U.S. common law, Canadian securities laws, Canadian federal and provincial laws, and Canadian common law, and the laws of any other jurisdiction relating to transactions in IMAX securities during the Settlement Class Period or the subject matter and facts relating to the U.S. Action, including any acts, failures to act, omissions, misrepresentations, statements, misstatements, facts, events, transactions, occurrences or other subject matter set forth, alleged, embraced, encompassed or otherwise referred to in or related to the U.S. Action.

(ii) the claims that are to be released also include Unknown Claims and claims arising under the laws of any jurisdiction, including, without limitation, in the United States and in Canada, and Lead Plaintiff and all Class Members will waive and relinquish to the fullest extent possible any state, federal or foreign law defenses concerning the release of Unknown Claims. Defendants shall release Lead Plaintiff, all Class Members, and Lead Counsel, from any claims relating to the institution, prosecution, and settlement of the U.S. Action.

(mm) "Released Parties" means:

(i) with respect to the Defendants: the Defendants, their respective present and former parents, subsidiaries, divisions, affiliates and any PricewaterhouseCoopers member firm, the present and former employees, members, partners, principals, managers, officers and directors of each of them, the present and former attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers and agents of each of them, and the predecessors,

heirs, successors and assigns of each (together, the "Defendant Releasees"), and any Person or entity which is or was related to or affiliated with any Defendant Releasee or in which any Defendant Releasee has or had a controlling interest and the present and former employees, members, partners, principals, managers, officers, directors, attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers and agents of each of them (all, with the Defendant Releasees, the "Defendant Released Parties").

(ii) with respect to Plaintiffs: the Lead Plaintiff and all other Class Members, their respective present and former parents, subsidiaries, divisions and affiliates, the present and former employees, officers and directors of each of them, the present and former attorneys, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers and agents of each of them, and the predecessors, heirs, successors and assigns of each (together, the "Plaintiff Releasees"), and any Person or entity in which any Plaintiff Releasee has or had a controlling interest or which is or was related to or affiliated with any Plaintiff Releasee.

(nn) "Second Supplemental Agreement" is as defined in paragraph 10.

(oo) "Settlement" means the settlement of the Class Action between and among Lead Plaintiff (on behalf of itself and the Class Members) and the Defendants, as set forth in this Stipulation.

(pp) "Settlement Class Member" or "Member of the Settlement Class" means a Person who falls within the definition of the Settlement Class.

(qq) "Settlement Class Period" means the period beginning February 27, 2003 through July 20, 2007, inclusive.

(rr) "Settlement Amount" means twelve million dollars ($12,000,000.00) in cash.

(ss) "Settlement Fund" means the Settlement Amount less the Notice and Administration Fund.

(tt) "Tax Expenses" is as defined in paragraph 12.

(uu) "Taxes" is as defined in paragraph 11.

(vv) "Unknown Claims" means any Released Claims that Lead Plaintiff or any Class Member does not know of or suspect to exist in his, her or its favor at the time of the release of the Defendant Released Parties which, if known by him, her or it might have affected his, her or its Settlement with and release of the Defendant Released Parties, or might have affected his, her or its decision not to object to this Settlement or not to exclude himself, herself or itself from the Class. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Lead Plaintiff shall expressly waive, and each of the Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542 and any provisions, rights and benefits conferred by any law of any state or territory of the United States or principle of common law which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

Lead Plaintiff and Class Members may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff shall expressly, and each Class Member, upon the Effective Date,

shall be deemed to have, and by operation of the Judgment shall have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiff acknowledges, and the Class Members shall be deemed to have acknowledged, and by operation of the Judgment shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

(ww) "Westchester" means Westchester Capital Management, Inc.

**Submission of the Settlement to Court for Approval**

2. After execution of the Stipulation, Lead Plaintiff and the Defendants shall apply to the Court for preliminary approval of the Settlement and for the scheduling of a hearing for consideration of final approval of the Settlement, approval of the Plan of Allocation and in Lead Counsel and Lead Plaintiff's discretion, an application for an award of attorneys' fees and expenses. The Parties and their counsel shall use their best efforts to obtain final Court approval of the Settlement.

3. Following the U.S. Court's preliminary approval of the Settlement, the IMAX Defendants shall seek the Canadian Order amending the definition of the Canadian Class, as defined above. The Settlement is conditioned on the entry of the Canadian Order and upon the Canadian Order becoming final and unappealable. The Fairness Hearing shall be conducted approximately ninety (90) days after Notice of the Settlement is disseminated, on a date and time to be determined by the U.S. Court. In the event the Canadian Order is not entered or the

Canadian Order is reversed on final appeal, the Parties shall revert to their litigation positions immediately prior to the execution of the MOU including, but not limited to, with respect to class certification. Notice of the Settlement of the U.S. Action shall be disseminated within seventy-five (75) days after the Canadian Court issues the Canadian Order.

4. The Parties have agreed upon the following documents to be submitted to the Court for its consideration along with this Stipulation: Proposed Preliminary Approval Order (Exhibit A); Notice of Pendency and Proposed Settlement of Class Action (Exhibit B); Proof of Claim and Release (Exhibit C); Summary Notice of Proposed Settlement of Class Action (Exhibit D); and Proposed Judgment Dismissing Claims Against the Defendants (Exhibit E).

5. The Parties shall jointly apply to the Court for entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A:

(a) preliminarily certifying the Class for settlement purposes;

(b) preliminarily approving the Settlement;

(c) setting a date for a hearing (the "Fairness Hearing"), upon notice to the Class, to: (i) consider whether the Settlement should be approved as fair, reasonable and adequate to the Class Members, and dismissing the claims of Lead Plaintiff and all Class Members against Defendants, as set forth in this Stipulation, on the merits and with prejudice; (ii) consider whether the Plan of Allocation is fair and reasonable and should be approved; and (iii) consider Lead Counsel's application, if any, for an award of attorneys' fees and payment of costs and expenses;

(d) setting the method of giving notice of the Settlement to the Class;

(e) approving the form of notice attached hereto as Exhibit B;

(f) approving the Proof of Claim and Release form attached hereto as Exhibit C;

(g) approving the summary form of notice attached hereto as Exhibit D;

(h) setting a period of time during which members of the Class may serve written objections to the Settlement or to the application for attorneys' fees and expenses;

(i) enjoining the prosecution of any action or claims that are subject to the release and dismissal contemplated by this Settlement by any Class Member, other than those actions (apart from the Class Action) now pending before the Court as part of *In re IMAX Corporation Securities Litigation*, 06 CIV. 6128 (NRB); and

(j) setting a period of time during which Class Members must file Proofs of Claim in order to participate in the distribution of the Net Settlement Fund.

6. The Parties hereby stipulate to certification of the Class, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, solely for the purposes of this Stipulation and Settlement.

7. At the Fairness Hearing, the Parties shall jointly request entry of a Judgment, substantially in the form attached hereto as Exhibit E, the entry of which is a condition of this Stipulation and Settlement:

(a) approving finally the Settlement as fair, reasonable and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

(b) confirming certification of the Class solely for purposes of this Stipulation and the Settlement, and finding that each element for certification of the Class is met, for these limited purposes;

(c) dismissing the U.S. Action and all of the claims asserted by Lead Plaintiff and all Class Members in the Complaint as to the Defendants without costs and with prejudice, and releasing the Released Claims as against each of the Released Parties;

(d) finding that the Complaint, and the complaints filed by Plaintiffs in the Actions, were filed on a good faith basis in accordance with the Private Securities Litigation Reform Act of 1995 and Rule 11 of the Federal Rules of Civil Procedure;

(e) permanently barring and enjoining the institution and prosecution, by Lead Plaintiff and other Class Members, of any action, suit, claim, or other proceeding, including arbitration, against the Released Parties in any federal or state court, the courts of Canada, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere asserting any Released Claims;

(f) reserving jurisdiction over the U.S. Action, including all further proceedings concerning the administration, consummation and enforcement of this Settlement;

(g) permanently barring, enjoining and finally discharging all claims as provided for in this Stipulation; and

(h) containing such other and further provisions consistent with the terms of this Settlement to which the Parties hereto expressly consent in writing.

8. At the Fairness Hearing, Lead Plaintiff may also request entry of an Order approving the Plan of Allocation. The Plan of Allocation proposed, or to be proposed, by Lead Plaintiff is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement. The Plan of Allocation is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular Plan of Allocation be approved. Any decision by the Court concerning the Plan of Allocation shall not affect the validity, enforceability or finality of this Stipulation and Settlement, and any modification of the Plan of Allocation by the Court shall not provide any of the Parties with the right to terminate the Settlement or impose an obligation on the Defendants to increase the consideration paid in connection with the Settlement. Any order

or proceedings relating to a request for approval of the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate the Settlement or affect or delay the effectiveness or finality of the Judgment and the release of the Released Claims.

9. At the Fairness Hearing, Lead Counsel may also request entry of an Order approving Lead Counsel's application for an award of attorneys' fees and expenses, consistent with the notice sent to members of the Class in connection with this Settlement. Any award of attorneys' fees and expenses to Lead Counsel shall be paid exclusively from the Settlement Fund. In no event shall Defendants otherwise be obligated to pay for such attorneys' fees and expenses. The attorneys' fees, expenses and costs, including the fees of experts and consultants, as awarded by the Court, shall be payable to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses, even if there is an appeal thereof, subject to the joint and several obligation of Lead Counsel to make appropriate refund repayments to the Settlement Fund as more particularly set forth below. In the event that the Effective Date does not occur, or the Judgment or the order making the fee and expense award is reversed or modified, or the Settlement is terminated, and in the event that any fee and expense award has been paid to any extent, then Lead Counsel shall, within ten (10) business days from receiving notice from the Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund, any fees, expenses and costs previously paid or otherwise transferred to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund, (a) in the full amount if the Effective Date does not occur or the Settlement is terminated, or (b) in such other amount corresponding to that portion of any fee and expense award that is reversed or modified. Lead Counsel, as a condition of receiving such fees and expenses, agrees that Lead Counsel is subject to the jurisdiction of the Court for the purpose

of enforcing the provisions of this paragraph. The disposition of Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses is not a material term of this Stipulation and it is not a condition of this Stipulation that such application be granted. Any disapproval or modification of the application for an award of attorneys' fees and reimbursement of expenses by the Court shall not affect the enforceability of the Stipulation, provide any of the Parties with the right to terminate the Settlement, or impose an obligation on the Defendants to increase the compensation paid in connection with the Settlement. The Defendants take no position as to the reasonableness of any application for attorneys' fees and costs made by Lead Counsel.

**Settlement Consideration**

10. In full and complete settlement of the U.S. Action and the Released Claims, the Defendants shall pay to Lead Plaintiff, for the benefit of the Class, the Settlement Amount as follows:

(a) The Defendants agree to collectively pay a total of $12,000,000.00 (the "Settlement Amount"), severally and not jointly, as apportioned in the amounts as set forth in a second supplemental agreement dated January 26, 2012 (the "Second Supplemental Agreement"), with no Party or Person having responsibility or liability whatsoever for any portion of the Settlement Amount attributed to any other Party or Person. Lead Counsel may use up to two hundred and fifty thousand dollars ($250,000.00) of that amount to pay the costs of notifying the Class, facilitating the filing of Proofs of Claim by Class Members, assisting Class Members in making their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class prior to the entry of Judgment. Assuming the approval of the Court for payment of this sum to Lead Counsel for purposes of the Notice and Administration Fund, the Defendants shall collectively advance the $250,000.00 for deposit into the Notice and Administration Fund,

severally and not jointly, as apportioned in the amounts as set forth in the Second Supplemental Agreement, in an account identified in writing by Lead Counsel, within the later of ten (10) business days of entry of the Preliminary Approval Order or the identification of the account by Lead Counsel. The $250,000.00 in the Notice and Administration Fund is part of, and not in addition to, the Settlement Amount to be paid by the Defendants.

(b). Within twenty (20) business days after the Court grants the Preliminary Approval Order, the Defendants shall pay into the Class Settlement Account the Settlement Fund.

11. The Settlement Fund shall be deposited into an interest-earning Class Settlement Account designated by Lead Plaintiff. The parties agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 and the Administrator shall be responsible for filing tax returns for the Class Settlement Account and paying from the Class Settlement Account any taxes, including any interest or penalties thereon (the "Taxes"), owed with respect to such Class Settlement Account. In addition, the Administrator, as required, shall do all things that are necessary or advisable to carry out the provisions of this paragraph.

12. All Taxes arising with respect to the income earned by the Settlement Fund, including any Taxes or tax consequences that may be imposed upon the Defendants with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes and any expenses and costs incurred in connection with the payment of Taxes pursuant to this paragraph (including without limitation, expenses of tax attorneys and/or accountants and mailing, administration and distribution costs, expenses relating to the filing or the failure to file all necessary or advisable tax returns and Taxes imposed on amounts payable to or on behalf of

the Defendants pursuant to this paragraph 11 (the "Tax Expenses"), shall be paid out of the Settlement Fund. The Defendants shall not have any liability or responsibility for the Taxes or the Tax Expenses. The Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the distributions and payments therefrom, including, without limitation, the tax returns described in Treas. Reg.. § 1.468B-2(k), and to the extent applicable, Treas. Reg., § 1.468B-2(l). Such tax returns shall be consistent with the terms herein and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. The Administrator shall also timely pay Taxes and Tax Expenses out of the Settlement Fund, and is authorized to withdraw, without prior order of the Court, from the Class Settlement Account amounts necessary to pay Taxes and Tax Expenses. The Defendants shall not have any responsibility or liability for the acts or omissions of Lead Counsel, the Administrator, or their agents, as described herein.

13. This is not a claims-made settlement. As of the Effective Date, the Defendants shall not have any right to the return of the Settlement Fund or any portion thereof irrespective of the number of Proofs of Claim filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Settlement Fund. Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his or her Recognized Claim compared to the total Recognized Claims of all Authorized Claimants. The Defendants shall have no involvement in reviewing or challenging claims. If any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, then, after the Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed, after payment

of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution, to Class Members who have cashed their checks and who would receive at least ten dollars ($10.00) from such re-distribution. If after six months after such re-distribution any funds shall remain in the Net Settlement Fund, then such balance shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Lead Counsel.

14. Each of the Defendants shall have the option to terminate the Settlement in its entirety in the event that Settlement Class members beneficially owning more than a certain percentage of the total publicly-traded stock of IMAX traded on the NASDAQ during the Class Period opt out of the Settlement, as set forth in the parties' agreement dated January 26, 2012, (the "First Supplemental Agreement").

15. In order to effectuate the provisions of paragraphs 14, the schedule reflected in the Preliminary Approval Order submitted to the Court pursuant to paragraph 5 shall provide that any requests for exclusion must be postmarked (or hand delivered) at least ten (10) days prior to the Fairness Hearing and that within three (3) business days of receipt by the Administrator of any requests for exclusion, copies of all such requests shall be provided to Defendants' Counsel. The Parties acknowledge that the Defendants' option to terminate the Settlement and the calculations provided for in the First Supplemental Agreement constitute material terms of this Stipulation and Settlement. Accordingly, the Parties will confer in good faith to perform the calculations required by such agreement. Lead Counsel and Defendants' Counsel shall confer to perform any necessary calculations in advance of the Fairness Hearing. If no agreement can be reached concerning the calculations within thirty (30) days prior to the date set for the Fairness Hearing, Lead Counsel and Defendants' Counsel shall submit their respective positions to a settlement mediator for mediation. In the event they are not able to resolve their dispute through mediation, Lead Counsel and Defendants' Counsel will submit their

respective positions to the Court for resolution concurrent with the Fairness Hearing, which resolution shall be final and not appealable.

16. Under no circumstances will any Party or Person be required to pay more than the portion of the Settlement Amount attributed to it in the Second Supplemental Agreement.

**The Notice and Administration Fund**

17. Notice of the proposed Settlement of the U.S. Action shall not be disseminated until after the entry of the Canadian Order.

18. The Notice and Administration Fund consisting of $250,000.00 advanced by the Defendants shall be used by Lead Counsel to pay the costs of notifying the Class, facilitating the filing of Proofs of Claim by Class Members, assisting Class Members in submitting their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class. The $250,000.00 in the Notice and Administration Fund is part of, and not in addition to, the Settlement Amount to be paid by the Defendants.

19. As of the Effective Date, any balance, including interest, then remaining in the Notice and Administration Fund, less expenses incurred but not yet paid, shall be deposited into the Settlement Fund.

20. If the Effective Date does not occur, the balance of the Notice and Administration Fund which has not been expended pursuant to paragraph 18 above, including all accrued interest, shall be returned to Defendants. All monies already spent and monies not yet spent but attributable to expenses which have been incurred, need not be repaid to Defendants.

**Releases**

21. The Released Claims against each and all of the Released Parties shall be fully, finally and forever released, relinquished, discharged and dismissed with prejudice and on the merits, without costs to any party, upon entry of the Judgment.

22. Upon entry of the Judgment, any and all claims for contribution and/or indemnity (whether direct, implied, or equitable) by any Released Party against any other Released Party relating to any Released Claim or to any claim by Settlement Class Members under federal, state or other law that has been or could have been asserted relating to transactions in IMAX securities during the Class Period shall be barred.

**Administration and Distribution of the Settlement Fund**

23. Lead Counsel, the Administrator or their authorized agents, subject to the supervision, direction and approval of the Court, shall administer and calculate the Proofs of Claim submitted by Class Members and shall oversee distribution of the Settlement Fund. As part of the Preliminary Approval Order, Lead Plaintiff shall seek appointment of the Administrator.

24. The Settlement Fund shall be applied as follows:

(a) to pay the costs of notifying the Class, facilitating the filing of Proofs of Claim by Class Members, assisting Class Members in making their Proofs of Claim, and otherwise administering the Settlement on behalf of the Class, and to pay Class Settlement Account fees and costs, if any.

(b) subject to the approval and further order(s) of the Court, to pay to Lead Counsel the amount awarded by the Court as attorneys' fees, plus interest, and to pay Lead Counsel the amount awarded as costs and expenses, including fees of experts and consultants, plus interest, which fee and expense award shall be allocated at the discretion of Lead Counsel.

(c) to pay Taxes and Tax Expenses owed by the Settlement Fund.

(d) subject to the approval and further order(s) of the Court, to distribute the balance of the Net Settlement Fund to Authorized Claimants as provided in the Plan of Allocation, to be submitted by Lead Plaintiff to the Court for approval and upon notice to the Class, or as otherwise ordered by the Court.

(e) in order for a member of the Class to participate in such distribution of the Net Settlement Fund:

(i) that member of the Class must be an Authorized Claimant.

(ii) to qualify as an Authorized Claimant, a member of the Class must timely submit a separate Proof of Claim and Release, signed, subject to penalties of perjury, substantially in the form attached as Exhibit C and supported by proof of all purchases or acquisitions and sales of IMAX shares during the Class Period.

(iii) unless otherwise ordered by this Court, any Class Member who fails to submit a Proof of Claim and Release within such period as may be established by this Court shall be forever barred from receiving any payments pursuant to this Stipulation, but in all other respects will be subject to and bound by the provisions of this Stipulation and the Judgment.

(f) The Defendants shall bear no responsibility for the costs, fees or expenses described in this paragraph 24. Neither the Defendants nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to the Settlement Fund, any Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of taxes, the distribution of the Net Settlement Fund, or any losses incurred in connection with any such matters.

25. Prior to the distribution of the Net Settlement Fund, Lead Counsel shall present for the approval of the Court a final accounting of the receipts to and disbursements from the Settlement Fund and the proposed distribution of the Net Settlement Fund to Authorized Claimants. No such distribution shall be made in the absence of an order approving the accounting and the proposed distribution.

26. Payment from the Net Settlement Fund made pursuant to and in the manner set forth above shall be deemed conclusive of compliance with this Stipulation as to all Authorized Claimants.

27. No Authorized Claimant shall have any claim against Lead Plaintiff, the Defendant Released Parties, the Administrator, or any of their counsel, based on the distributions made substantially in accordance with this Stipulation and/or orders of the Court.

**Effect of Disapproval, Cancellation or Termination of Agreement**

28. If the Court does not enter the Judgment substantially in the form provided for in paragraph 7 or if the Court enters the Judgment and appellate review is sought and on such review, the entry of Judgment is vacated, modified or reversed, then this Stipulation shall be cancelled and terminated, unless all parties who are adversely affected thereby, in their sole discretion within thirty (30) days from the date of the mailing of such ruling to such parties, provide written notice to all other parties hereto of their intent to proceed with the Settlement under the terms of the Judgment as it may be modified by the Court. Such notice may be provided on behalf of Lead Plaintiff and the Class Members by Lead Counsel. No party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein. If any party hereto engages in a material breach of the terms hereof, any other party, provided that it is in substantial compliance with the terms of this

Stipulation, may terminate this agreement on notice to the breaching party or sue for enforcement.

29. In the event this Settlement is terminated or cancelled or fails to become effective for any reason, then within ten (10) business days after Lead Counsel gives written notice to Defendants' Counsel, or Defendants' Counsel gives written notice to Lead Counsel, the balance of the Notice and Administration Fund, less any funds paid therefrom or funds attributable to expenses incurred but not yet paid, any cash deposited by the Defendants, or any of them, into the Class Settlement Account, and any funds received by Lead Counsel, shall be refunded as directed by Defendants' Counsel, including interest accrued. In such event, the Parties shall be deemed to have reverted *nunc pro tunc* to their respective status as of the date and time immediately before the execution of this Stipulation, including with respect to class certification, and they shall proceed in all respects as if this Stipulation and related orders had not been executed and without prejudice in any way from the negotiation, fact or terms of this Settlement.

**Miscellaneous Provisions**

30. All of the exhibits attached hereto are incorporated by reference as though fully set forth herein.

31. Lead Plaintiff acknowledges that, given the amount of discovery taken of the Defendants and others to date, including extensive document discovery and the review of 26 deposition transcripts as well as confirmatory discovery, Lead Plaintiff is satisfied that an adequate factual record has been established that supports the Settlement.

32. This Stipulation may be amended or modified only by a written instrument signed by counsel for the Parties.

33. Neither the Stipulation nor the Settlement, whether or not consummated, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim or of any wrongdoing or liability of the Defendants; or (ii) is or may be deemed to be or may be used as an admission or evidence of the truth of any fact alleged or of any liability, fault or omission of the Defendants in any civil, criminal or administrative proceeding in any court, arbitration proceeding, administrative agency or other forum or tribunal in which the Defendants are or become parties, other than in such proceedings as may be necessary to consummate or enforce the Stipulation, the Settlement or the Judgment. Notwithstanding the foregoing, the Defendants and/or the Released Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion, issue preclusion or similar defense or counterclaim.

34. The Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Lead Plaintiff or Class Members against the Released Parties with respect to the Released Claims. The Defendants agree not to assert any claim under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the U.S. Action was brought in bad faith or without a reasonable basis. The Parties to the Stipulation agree that the amount paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

35. The Parties agree that the Settlement set forth herein constitutes a fair, reasonable and adequate resolution of the claims that Plaintiffs asserted against the Defendants in the U.S. Action, and the Released Claims and that it promotes the public interest.

36. Except as Lead Counsel and Defendants' Counsel may otherwise in writing agree, to the extent permitted by law, all agreements made and orders entered during the course of the U.S. Action relating to the confidentiality of information shall survive this Stipulation.

37. The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

38. This Stipulation, the exhibits attached hereto, the First Supplemental Agreement and the Second Supplemental Agreement (which will not be filed, unless otherwise required by this Court) constitute the entire agreement among these Parties, and no representations, warranties or inducements have been made to the Parties, other than the representations, warranties and covenants contained and memorialized in such documents.

39. In the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit to be attached hereto, the terms of this Stipulation shall prevail.

40. This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties shall exchange among themselves original signed counterparts.

41. The Parties hereto and their respective counsel of record agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Stipulation.

42. Each counsel signing this Stipulation represents that such counsel has authority to sign this Stipulation on behalf of his or her identified clients.

43. This Stipulation, the exhibits attached hereto, the First Supplemental Agreement and the Second Supplemental Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any party hereto may merge, consolidate or reorganize.

44. Notices required by this Stipulation shall be submitted either by any form of overnight mail or in person to:

**ABBEY SPANIER RODD & ABRAMS, LLP**
Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
212 East 39th Street
New York, New York 10016
Tel.: 212-889-3700
Fax: 212-684-5191

**COUNSEL FOR LEAD PLAINTIFF AND THE CLASS**

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Lewis J. Liman
One Liberty Plaza
New York, New York 10006
Tel: 212-225-2000
Fax: 212-225-3999

**COUNSEL FOR THE IMAX DEFENDANTS**

**GIBSON DUNN & CRUTCHER, LLP**
M. Byron Wilder
Jason C. McKenney
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201
Tel: 214-698-3100
Fax: 214-571-2900

Jennifer L. Conn
200 Park Avenue
New York, New York 10166
Tel: 212-351-4000
Fax: 212-351-4035

**COUNSEL FOR PwC-CANADA**

45. Except for attorney notes, pleadings and other Court submissions, Lead Counsel agrees to destroy all discovery obtained from Defendants within thirty (30) days after all the claims in the U.S. Action have been settled, tried to final judgment, or otherwise resolved against all Defendants.

46. This Stipulation, the exhibits attached hereto, the First Supplemental Agreement and the Second Supplemental Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to choice of law principles, to the extent that federal law does not apply. The Court shall retain jurisdiction over actions or proceedings based upon, including the enforcement of, this Stipulation or any of its terms. All parties to this Stipulation shall be subject to the jurisdiction of the Court for all purposes related to this Stipulation.

Dated: January 26, 2012

000876

**ABBEY SPANIER RODD & ABRAMS, LLP**

______________________

Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
212 East 39th Street
New York, New York 10016
Tel.: 212-889-3700
Fax: 212-684-5191

*Counsel for Lead Plaintiff and the Class*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

______________________

Lewis J. Liman
David Oliwenstein
One Liberty Plaza
New York, New York 10006
Tel: 212-225-2000
Fax: 212-225-3999

*Counsel for the IMAX Defendants*

**GIBSON DUNN & CRUTCHER, LLP**

______________________

M. Byron Wilder
Jason C. McKenney
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201-6912
Tel: 214-698-3100
Fax: 214-571-2900

Jennifer L. Conn
200 Park Avenue
New York, New York 10166
Tel: 212-351-4000
Fax: 212-351-4035

*Counsel for PwC-Canada*

**ABBEY SPANIER RODD & ABRAMS, LLP**

______________________________
Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
212 East 39th Street
New York, NY 10016
Tel.: 212-889-3700
Fax: 212-684-5191

*Counsel for Lead Plaintiff and the Class*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

______________________________
Lewis J. Liman
David Oliwenstein
One Liberty Plaza
New York, NY 10006
Tel: 212-225-2000
Fax: 212-225-3999

*Counsel for the IMAX Defendants*

**GIBSON DUNN & CRUTCHER, LLP**

______________________________
M. Byron Wilder
Jason C. McKenney
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201-6912
Tel: 214-698-3100
Fax: 214-571-2900

Jennifer L. Conn
200 Park Avenue
New York, New York 10166
Tel: 212-351-4000
Fax: 212-351-4035

*Counsel for PwC-Canada*

**ABBEY SPANIER RODD & ABRAMS, LLP**

Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
212 East 39th Street
New York, New York 10016
Tel.: 212-889-3700
Fax: 212-684-5191

*Counsel for Lead Plaintiff and the Class*

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

Lewis J. Liman
David Oliwenstein
One Liberty Plaza
New York, New York 10006
Tel: 212-225-2000
Fax: 212-225-3999

*Counsel for the IMAX Defendants*

**GIBSON DUNN & CRUTCHER, LLP**

M. Byron Wilder
Jason C. McKenney
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201-6912
Tel: 214-698-3100
Fax: 214-571-2900

Jennifer L. Conn
200 Park Avenue
New York, New York 10166
Tel: 212-351-4000
Fax: 212-351-4035

*Counsel for PwC-Canada*

# EXHIBIT A

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**[PROPOSED] ORDER PRELIMINARILY APPROVING FINAL SETTLEMENT AND PROVIDING FOR NOTICE**

WHEREAS, a putative class action (the "Class Action") is pending in this Court as part of a consolidated action styled *In re IMAX Corporation Securities Litigation*, Civil Action No. 06 CIV. 6128 (NRB); and

WHEREAS, the Parties, having made an application pursuant to Rule 23 of the Federal Rules of Civil Procedure for an Order approving Settlement of the Class Action, in accordance with a Stipulation and Agreement of Settlement dated as of January 26, 2012 (the "Stipulation"), which, together with the Exhibits annexed thereto and the First Supplemental Agreement and the Second Supplemental Agreement identified to the Court pursuant to Rule 23(e)(2), sets forth the terms and conditions for a proposed Settlement of the Class Action and for dismissal of the Class Action and the Released Claims against IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble and PricewaterhouseCoopers LLP, an Ontario Limited Liability Partnership (the "Defendants") with prejudice and without costs upon the terms and conditions set forth therein;

WHEREAS, all defined terms contained herein shall have the same meanings as set forth in the Stipulation;

WHEREAS, the Court has read and considered the Stipulation and the Exhibits annexed thereto.

NOW THEREFORE, IT IS HEREBY ORDERED:

1. The Court preliminarily certifies the Settlement Class for settlement purposes only. The Court finds that the prerequisites to a class action under Rule 23 of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class Members is so numerous that joinder of all Settlement Class Members is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the proposed Lead Plaintiff are typical of the claims of the Settlement Class it seeks to represent; (d) the proposed Lead Plaintiff will fairly and adequately represent the interests of the Settlement Class; (e) Lead Counsel has fairly and adequately represented the interests of the Settlement Class; (f) questions of law and fact common to Settlement Class Members predominate over any questions affecting only individual Settlement Class Members; and (g) a class action settlement is superior to other available methods for the fair and efficient adjudication of the controversy.

2. The Court preliminarily approves the Stipulation and the Settlement set forth therein as being fair, just, reasonable and adequate as to Settlement Class Members and in the best interests of the Class, subject to notice to the Settlement Class and further consideration at the Fairness Hearing described below.

3. A hearing (the "<u>Fairness Hearing</u>") shall be held before this Court on _______ __, 2012, at __:__ __.m. or, alternatively, approximately 90 days after the mailing of Notice (on a date to be determined by the Court) at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, 10007-1312, to determine: (a) whether the proposed Settlement of the Class Action on the terms and conditions provided for in the

Stipulation is fair, reasonable and adequate as to the Class and should be approved by the Court; (b) whether a Judgment as provided for in the Stipulation should be entered herein; (c) the amount of fees and expenses that should be awarded to Lead Counsel; (d) whether the Plan of Allocation proposed by Lead Plaintiff should be approved by the Court; and (e) whether the Class Action should be dismissed on its merits with prejudice and without costs as against the Defendants and the Defendant Released Parties as provided in the Stipulation. The Court may adjourn the Fairness Hearing without further notice to Class Members.

4. The Court approves, as to form and content, the Notice of Pendency and Settlement of Class Action (the "Notice"), the Proof of Claim and Release Form ("Proof of Claim and Release"), and Summary Notice annexed as Exhibits A-1, A-2 and A-3 hereto, and finds that the mailing and distribution of the Notice and publishing of the Summary Notice substantially in the manner and form set forth in paragraphs 5 and 6 of this Order meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

5. Lead Counsel are hereby authorized to retain the firm of Strategic Claims Services ("Administrator") to supervise and administer the notice procedure, file tax returns and process claims as more fully set forth below:

(a) As soon as practical following the date of this Order, the IMAX Defendants will make a motion in the Canadian Court to exclude the members of the U.S. Settlement Class who do not opt out of the U.S. Action;

(b) Within seventy-five (75) days after the Canadian Court issues an order amending the class definition in the Canadian Action, (the "Notice Date"), Lead Counsel shall cause a copy

of the Notice and the Proof of Claim and Release, substantially in the forms annexed as Exhibits A-1 and A-2 hereto, to be mailed by first class mail to all Settlement Class Members who can be identified with reasonable effort by Lead Counsel;

(c) After the Notice Date, the Administrator shall launch a settlement website available to the public containing the Complaint, the Stipulation, the Notice (in English and in French) and any other publicly filed documents Lead Counsel shall deem appropriate;

(d) After the Notice Date, Lead Counsel shall also post on their website the Complaint, the Stipulation, the Notice (in English and in French) and any other publicly filed documents that they shall deem appropriate;

(e) After the Notice Date, Lead Counsel shall cause the Summary Notice to be published once in the national edition of the Wall Street Journal, once in the New York Times and once in the The National Post (in one quarter page size), the national edition of The Globe and Mail (in one quarter page size), and La Presse (in French in one quarter page size);

(f) After the Notice Date, Lead Counsel shall provide a copy of the Notice to any person who requests it;

(g) After the Notice Date, Lead Counsel shall disseminate the Notice through a newswire in Canada and a newswire in the U.S.;

(h) After the Notice Date, the IMAX Defendants shall post the Notice prominently on their website at www.IMAX.com; and

(i) At least seven (7) calendar days prior to the Fairness Hearing, Lead Counsel shall serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of the mailing and publishing of the Notice required herein.

6. Nominees who purchased or otherwise acquired IMAX shares on the NASDAQ for the benefit of another Person during the period February 27, 2003 through July 20, 2007, inclusive, shall be requested to send the Notice and the Proof of Claim and Release to all such beneficial owners and within ten (10) business days after receipt thereof, either (1) send a list of the names and addresses of such beneficial owners to the Administrator, or (2) request from the Administrator additional copies of the Notice and Proof of Claim and Release and within seven (7) days mail the Notice and Proof of Claim and Release to such beneficial owners. If a nominee chooses to follow alternative procedure (2), such nominee shall send a statement to the Administrator confirming that the mailing was made as directed.

7. Any Person falling within the definition of the Class who desires to request exclusion from the Class shall do so by mailing or delivering by hand a written notice of exclusion in the form set forth in the Notice to the Administrator no later than ten (10) days before the Fairness Hearing. Within three (3) business days of receipt by the Administrator of any request for exclusion, the Administrator shall provide copies of such request to Lead Counsel and Defendants' Counsel. Unless the Court orders otherwise, no request for exclusion shall be valid unless it is made within the time set forth herein and in the manner described in the Notice.

8. Class Members who wish to participate in the Settlement shall complete and submit Proof of Claim and Release forms in accordance with the instructions contained therein. Unless the Court orders otherwise, all Proof of Claim and Release forms must be postmarked or delivered by hand no later than one hundred and twenty (120) days after the Fairness Hearing. Any Class Member who does not submit a Proof of Claim and Release within the time provided shall be forever barred from sharing in the distribution of the proceeds of the Settlement Fund,

unless otherwise ordered by the Court, but shall be bound by all of the terms of the Stipulation and Settlement, including the terms of the Judgment to be entered and the releases provided for therein, and shall be deemed to have and by operation of the Judgment shall have fully, finally and forever released, relinquished and discharged, and thereby be barred and enjoined from asserting any Released Claims (including, for some Class Members, the Canadian Action) against the Defendant Released Parties or bringing any actions against the Defendant Released Parties concerning the Released Claims.

9. All Class Members shall be bound by all determinations and judgments in the Class Action concerning the Stipulation and the Settlement, including, but not limited to, the terms of the Judgment to be entered and the releases provided for therein, whether favorable or unfavorable to the Class.

10. Any Class Member may enter an appearance in the Class Action, at their own expense, individually or through counsel of their own choice. If they do not enter an appearance, they will be represented by Lead Counsel.

11. All proceedings against Defendants in the Class Action are stayed until further order of the Court, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation. Pending final determination of whether the Settlement should be approved, neither the Lead Plaintiff nor any Class Member, either directly, representatively or in any other capacity, shall commence or prosecute against any of the Released Parties, any action or proceeding in any court or tribunal asserting any of the Released Claims.

12. Any Class Member may appear and show cause, if he, she or it has any reason why the Stipulation and Settlement (and the releases contained therein) should or should not be approved or a judgment entered thereon; why the proposed Plan of Allocation should or should not be adopted or why the attorneys' fees and the reimbursement of expenses should or should not be awarded to Lead Counsel; provided, however, that no Class Member or any other Person shall be heard or entitled to contest any of the above enumerated matters unless such Class Member follows the procedures set forth in the Notice. No later than ten (10) days prior to the Fairness Hearing, written objections, papers and briefs must be filed with the Clerk of the United States District Court for the Southern District of New York, with copies postmarked or delivered by hand to:

Arthur N. Abbey
Karin E. Fisch
Richard B. Margolies
ABBEY SPANIER RODD & ABRAMS, LLP
212 East 39th Street
New York, New York 10016

***Counsel for Lead Plaintiff***

-and-

Lewis J. Liman
David Oliwenstein
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

***Counsel for the IMAX Defendants***

M. Byron Wilder
Jason C. McKenney
Gibson Dunn & Crutcher, LLP
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201