UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR ENTRY OF SETTLEMENT DISTRIBUTION ORDER**

Lead Plaintiff[1] in the above-captioned class action (the "Action"), by and through its attorneys Abbey Spanier, LLP ("Lead Counsel"), respectfully submits this Memorandum of Points and Authorities in Support of its Motion for Entry of Settlement Distribution Order.[2]

## I. PRELIMINARY STATEMENT

The processing of all submitted claims in this Action is now complete and the Canadian Order has become final and unappealable. As such, Lead Plaintiff respectfully requests that the Court enter an Order: (1) approving the distribution of the Net Settlement Fund (defined below) to Class Members whose Proof of Claim and Release forms have been accepted in accordance with the procedures set forth in the Notice and Plan of Allocation and processed by the Claims Administrator in this matter ("Authorized Claimants"); (2) approving the acceptance of specified late claims; (3)

---

1 Except where stated otherwise, all capitalized terms shall have the same meanings as defined in the Settlement Agreement (defined below).

2 A proposed Settlement Distribution Order (the "Distribution Order") is being submitted herewith and is attached as Exhibit A. In accordance with the Settlement Agreement, the Distribution Order also contains provisions concerning the continuing administration of the Settlement, including continuing tax reporting, tax payment and efforts to obtain tax refunds; procedures for dealing with any disputes that might arise; efforts to reissue uncashed, stale or returned undeliverable distribution checks, authorizing destruction of Proof of Claim forms after two years (paper) and three years (electronic) after final distribution and other matters that might arise; and the Court's continuing jurisdiction over the administration process.

disallowing rejected claims; and (4) authorizing payment of fees and expenses to the Claims Administrator. *See* Declaration of Arthur N. Abbey in Support of Lead Plaintiff's Motion for Entry of Order Approving Distribution of Net Settlement Funds to Authorized Claimants, Allowing Late-Filed Claims, Disallowing Rejected Claims, and Authorizing Payment to Claims Administrator (the "Abbey Dec.") at p. 1.

Pursuant to the Amended Stipulation of Settlement between Class Members and IMAX Corporation, Richard L. Gelfond, Bradley J. Wechsler, Francis T. Joyce, Kathryn A. Gamble and PricewaterhouseCoopers-Canada LLP, an Ontario Limited Liability Partnership dated March 20, 2012 (the "Settlement Agreement"), a cash settlement fund was created in the amount of $12,000,000 (the "Settlement Fund"). Abbey Dec. ¶1.

Pursuant to this Court's order dated June 20, 2012, a Settlement Class was certified consisting of all persons and entities who purchased or otherwise acquired IMAX shares on the NASDAQ from February 27, 2003 through July 20, 2007, inclusive (the "Settlement Class Period"). Abbey Dec. ¶4. Excluded from the Settlement Class are the Defendants in the U.S. Action and Canadian Action, members of those Defendants' immediate families, all individuals who are either current officers and/or directors of any Defendant, or who served as officers and directors of any Defendant at any time during the Class Period. *Id.*

Pursuant to the order entered by this Court on August 1, 2012 (the "Fee and Expense Order"), Lead Plaintiff's Counsel and other plaintiff's counsel were awarded $3,960,000.00 (plus a percentage of the interest that accrued on the Settlement Fund held in escrow) in fees and expenses out of the Settlement Fund. Abbey Dec. ¶2.

The Settlement Agreement also permitted $250,000.00 to be allocated from the Settlement Fund ("Notice & Administrative Fund") for the express purpose of providing notice of the

Settlement and administering the Settlement to the Class. Abbey Dec. ¶3. Lead Plaintiff's professional claims administrator, Strategic Claims Services, ("SCS"), has incurred administration fees and expenses totaling $331.411.44. *Id.* As detailed in the Mulholland Affidavit, SCS' total fees and expenses sought encompasses work already performed as well as an estimate of additional fees and expenses that will be required to complete the Final Distribution and administration of the Settlement. The claims administrator has already received payments totaling $246,061.82, and through this application, requests that its outstanding fees and expenses in the amount of $85,349.62 be paid out of the Net Settlement Fund.

After allowance of fees and expenses, and the addition of interest earned on the Settlement Fund as of April 2, 2014, there remains $7,828,191.87 in the Settlement Fund (the "Net Settlement Fund"). Abbey Dec. ¶2. Lead Plaintiff now seeks to distribute the Net Settlement Fund to the Settlement Class.

## II. DISTRIBUTION OF THE NET SETTLEMENT FUND

### A. Notice and the Claims Administration Process

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, this Court entered two orders preliminarily approving the settlement of this Action dated March 28, 2012 and June 20, 2012, respectively (the "Preliminary Approval Orders"). As directed in the Preliminary Approval Orders and as explained in detail in the accompanying Supplemental Affidavit of Paul Mulholland In Support of the Distribution of the Settlement Fund, dated April 2, 2014, (the "Mulholland Affidavit"), Lead Counsel caused the Notice of Pendency and Proposed Settlement of U.S. Class Action (the "Notice") and Proof of Claim and Release form (the "Proof of Claim"), in the forms approved by the Court, to be mailed to persons and entities who purchased or otherwise acquired IMAX common stock on the NASDAQ between February 27, 2003, and July 20, 2007, inclusive

("Class Period"). *See* Mulholland Affidavit ¶4. In order to provide actual notice to those persons and entities who purchased or otherwise acquired IMAX shares on the NASDAQ during the Class Period, SCS mailed the Claims Package, by first class mail, to all individuals and organizations identified on the records of IMAX's transfer agent, Computershare. *Id.* These records reflect persons and entities that owned or purchased common stock of IMAX for their own account or for their clients' account(s) during the Class Period. *Id.* In addition, SCS mailed Claims Packages to all brokerage companies, banks and trust companies contained on SCS' master mailing list. *Id.* This master list consisted of the 1,087 largest banks and brokerage companies ("Nominee Account Holders"), and 726 mutual funds, insurance companies, pension funds, and money managers ("Institutional Groups"), which may have traded IMAX common stock in their clients' or their own accounts during the Class Period. *Id.* The mailing of Claim Packages was completed on April 23, 2012 as required by the Notice Order. *Id.*

In addition, pursuant to the Preliminary Approval Order, Lead Counsel caused a summary publication notice, in the form approved by the Court, to be published on April 26, 2012 in English in the national editions of *The Wall Street Journal, The New York Times*, *The National Post* (in one quarter page size), the national edition of *The Globe and Mail* (in one quarter page size), and in French-Canadian in *La Presse* (in one quarter page size) as well as electronically in French-Canadian over Marketwire and in English over Globe Newswire. *Id.* ¶7. Further, Lead Counsel caused SCS to create a standalone website (www.imaxussettlement.com) containing true and correct copies of, *inter alia*, the Complaint, the Amended Stipulation, the Notice and Proof of Claim forms (in English and French) and Publication Notice (in English and French). *Id.* ¶5.

The Plan of Allocation, included as Appendix I to the Notice, was approved by this Court. The Plan of Allocation sets out the method for calculating an Authorized Claimant's Recognized

Loss and generally provides that each Authorized Claimant will be entitled to receive a pro rata share of the Net Settlement Fund determined by the ratio that such Authorized Claimant's "Recognized Loss" bears to the Recognized Loss of all Authorized Claimants.

Pursuant to the Preliminary Approval Orders, the initial deadline for Class members to file claims was October 12, 2012. Abbey Dec. ¶12.

As detailed in the Mulholland Affidavit, all notice and administration procedures, and all other steps necessary for the review, processing, validation and calculation of claims submitted by potential Class members have now been completed. *See* Mulholland Affidavit ¶10.

On November 21, 2013, after being informed that the processing of all submitted claims in this Action had been completed and that the Canadian Order had become final and unappealable, this Court entered the final judgment and order of dismissal in the Action against the Defendants (the "Final Judgment Order").

**B. Summary of Payable and Non-Payable Claims**

PROPERLY DOCUMENTED CLAIMS: SCS has identified 1,403 properly documented valid claims. Mulholland Affidavit ¶10(a). These valid claims represent total Recognized Losses of $62,249,197.93.[3] *Id.* These valid claims were calculated in the manner set forth in the Court-approved Plan of Allocation of the Net Settlement Fund, included in the Notice. *Id.* 64 claims were submitted after the Court-approved claims filing deadline, October 12, 2012, but are otherwise valid. *Id.* As no prejudice would accrue if such late claims were accepted (subject to the existence of deficiencies as were determined to exist), Lead Counsel believe that it would be fair, reasonable and in the interest of justice to allow the late claims to be treated as timely. Lead Counsel requests that

---

[3] This amount includes recognized losses for timely filed, valid claims of $59,142,282.36 and recognized losses for late (but otherwise valid) claims of $3,106,915.57.

these late claimants with valid claims be allowed to participate in the distribution of the Net Settlement Fund as if their claims were timely filed. In addition, in order to promote the finality of the Settlement and the Claims Administrator's administrative determinations and loss calculations, it is respectfully requested that the Distribution Order provide that any Proof of Claim or any curative responses received by SCS after April 3, 2014 shall be denied or rejected.

CLAIMS NOT DOCUMENTED: SCS initially identified 236 inadequately documented claims. Mulholland Affidavit ¶10(b). SCS mailed deficiency notices to each of these claimants, advising them of the nature of their deficiency and providing them with an opportunity to cure. *Id.* Among these 236 deficient claims, 109 were successfully cured and are considered valid. *Id.* Each of the remaining 127 deficient claimants either did not respond to the deficiency notice or responded with insufficient documentation, and were sent a rejection notice setting forth the reason for their rejection. *Id.* To date, none of these 127 rejected claimants has objected to or contested this determination. *Id.*

INELIGIBLE CLAIMS: In addition to the 127 claims discussed above, SCS has identified 5,203 claims, which Lead Counsel and SCS recommend for complete rejection. Mulholland Affidavit ¶10(c). Included in this category are: (i) claims with no Recognized Losses; (ii) claims with no purchases during the class period; (iii) claims with purchases made on the Toronto Stock Exchange; (iv) shares that were received/transferred but not purchased; (v) claims with a short balance; (vi) duplicate claims; (vii) claims filed for other securities not IMAX Corporation; and (viii) claimants who withdrew their claims. *Id.* SCS has communicated with these 5,203 claimants and advised them of its determination. *Id.*

**C. Claims Administration Processing Procedures and Fees and Expenses**

Pursuant to the Settlement Agreement, as Claims Administrator, SCS was charged with the responsibilities of administering and calculating Proof of Claim forms and distributing the Net Settlement Fund, subject to court approval. SCS has performed an extensive amount of work. Lead Counsel respectfully requests that the Court find that the procedures and methods utilized in the administration, review, processing, validation and calculation of the claims submitted satisfied the requirements of the notice and administration provisions and the Plan of Allocation set forth in the Settlement Agreement as approved by the Court. Lead Counsel and SCS further respectfully request that all funds remaining in the Net Settlement Fund be distributed to the approved claimants.

Lead Plaintiff further requests approval to pay from the Net Settlement Fund additional and final expenses incurred by SCS in connection with the administration process in the amount of $85,349.62. As set forth in the Mulholland Affidavit ¶15, SCS has already received payments totaling $246,061.82 out of the $250,000.00 Notice & Administrative Fund as previously permitted by the Court. SCS has provided Lead Counsel with a final invoice for its fees and expenses that includes an estimate of fees and expenses required to complete the administration of the Settlement, which is attached as Exhibit H to the Mulholland Affidavit. Lead Counsel have reviewed the invoice and believe the fees and expenses are reasonable and appropriate and recommend that the outstanding balance owed to SCS be approved for payment.

**D. Disposition of any Unclaimed/Uncashed Balance**

It is expected that not all of the payments to be distributed to Authorized Claimants will be cashed promptly. In order to encourage Authorized Claimants to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, all the distribution drafts should bear a notation (or a similar notation) "CASH PROMPTLY. VOID AND SUBJECT TO RE-

DISTRIBUTION IF NOT CASHED BY 180 DAYS AFTER ISSUE DATE." If any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, then after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution, to Class Members who have cashed their checks and who would receive at least $10.00 from such re-distribution.

### E. Miscellaneous

If following six (6) months after such re-distribution any funds shall remain in the Net Settlement Fund, then SCS, following consultation with Lead Counsel shall donate any remaining funds to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Lead Counsel.

It is further respectfully requested that the Court enter the proposed Distribution Order authorizing SCS to destroy the paper or hard copies of the Proof of Claim forms and other materials two (2) years after final distribution of the Net Settlement Fund to eligible claimants, and electronic or magnetic media data three (3) years after final distribution of the Net Settlement Fund to eligible claimants.

## III. CONCLUSION

Based on the foregoing, Lead Plaintiff respectfully requests that the Court approve and enter the proposed Distribution Order submitted herewith.

Dated: April 3, 2014

Respectfully submitted,

/s/ Arthur N. Abbey
Arthur N. Abbey
aabbey@abbeyspanier.com
Karin E. Fisch
kfish@abbeyspanier.com
Richard B. Margolies
rmargolies@abbeyspanier.com
**ABBEY SPANIER, LLP**
212 East 39th Street
New York, New York 10016
Telephone: 212-889-3700
Facsimile: 212-684-5191

*Counsel for Lead Plaintiff*