UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE IMAX CORPORATION SECURITIES LITIGATION | 06 CIV. 6128 (NRB) |

**AFFIDAVIT OF PAUL MULHOLLAND, CPA**
**IN SUPPORT OF THE DISTRIBUTION OF THE SETTLMENT FUND**

I, Paul Mulholland, being duly sworn, depose and say:

1. I am the President of Strategic Claims Services ("SCS"), a nationally recognized claims administration firm, which was retained by Lead Counsel to serve as Claims Administrator in the above-captioned class action. I am a Certified Public Accountant and a Certified Valuation Analyst. SCS was approved to administer the Settlement in this action by Court Order dated March 28, 2012 (the "Notice Order"). I have over twenty years of experience specializing in administration of class action cases and I have administered over three-hundred (300) class actions. SCS was established in April 1999 and has administered over two-hundred twenty-five (225) class actions since its inception. I am over 21 years of age and am not a party to this action.[1]

2. From March 28, 2012 through the date of this affidavit, SCS, under my supervision, has administered the Settlement in this action. As such, I have personal knowledge of the facts stated herein. This Affidavit supplements my Affidavit of June 7, 2012 Concerning Mailing of Notice of Pendency and Proposed Settlement of U.S. Class Action and Proof of Claim and Release.

**DISSEMINATION OF NOTICE AND PROOF OF CLAIM AND RELEASE**

3. SCS has administered the Settlement by organizing the printing of the Notice of Pendency and Proposed Settlement of U.S. Class Action ("Notice") and the Proof of Claim and Release form ("Proof of Claim") (together the "Claims Package"); providing the Claims Package to the class; notifying brokerage firms or other nominee accounts of the appropriate manner to provide

[1] Except where stated otherwise, all capitalized terms shall have the same meanings as defined in the Stipulation and Agreement of Settlement dated January 26, 2012, and amended as of March 20, 2012 (the "Amended Stipulation" or "Settlement Agreement").

individual notice to Class Members; establishing and maintaining a dedicated website; forwarding Notice and Proof of Claim forms returned by the United States Postal Service with updated address information; skip tracing Notice and Proof of Claim forms returned as undeliverable; tracking exclusion requests; distributing, accepting and processing Proof of Claim forms filed by Class Members; reviewing submitted Proof of Claim forms for accuracy and completeness and to ensure that they are supported by sufficient documentary evidence; providing notice of deficient or rejected claims, when appropriate; and calculating recognized losses of the Class, on both an individual and classwide basis.

4. As explained in my prior Affidavit, in order to provide actual notice to those persons and entities who purchased or otherwise acquired IMAX shares on the NASDAQ between February 27, 2003, and July 20, 2007, inclusive ("Class Period"), we mailed, by first class mail the Claims Package which was approved by the Court, to all individuals and organizations identified on the records of IMAX's transfer agent, Computershare. These records reflect persons and entities that owned or purchased common stock of IMAX for their own account or for their clients' account(s) during the Class Period. In addition, we mailed Claims Packages to all brokerage companies, banks and trust companies contained on our master mailing list. This master list consists of the 1,087 largest banks and brokerage companies ("Nominee Account Holders"), and 726 mutual funds, insurance companies, pension funds, and money managers ("Institutional Groups"), which may have traded IMAX's common stock in their clients' or their own accounts during the Class Period. The mailing of Claim Packages were completed on April 23, 2012 as required by the Notice Order.

5. Pursuant to the Notice Order, SCS launched a settlement website, www.imaxussettlement.com. This website contains the Complaint, the Amended Stipulation, the Notice and Proof of Claim forms (in English and French) and Publication Notice (in English and French). Additionally, a link to that website was placed on both SCS's and Lead Counsel's websites.

6. SCS has mailed 87,934 Claims Packages. SCS mailed 426 Claims Package to individuals and organizations from the shareholders' list provided by IMAX. As noted in paragraph 4 above, 1,813 Claims Packages were sent to Nominee Account Holders and Institutional Groups. To date, an additional 85,695 Claims Packages were requested by the Nominee Account Holders and Institutional Groups and other individuals.

7. As required by the Notice Order, on April 26, 2012, the Summary Notice was published in English in the national editions of *The Wall Street Journal*, *The New York Times*, *The National Post* (in one quarter page size), the national edition of *The Globe and Mail* (in one quarter page size), and in French-Canadian in the *La Presse* (in one quarter page size) as well as electronically in French-Canadian over Marketwire and in English over Globe Newswire.

8. The notice procedures described in paragraphs three (3) through seven (7) above are consistent with the procedures I have used in each of the class action securities litigation cases in which I have been involved over the past twenty years.

9. To date, 6,733 Proof of Claims ("Claims") have been submitted. SCS has carefully reviewed, processed and analyzed all of these Claims, and has responded to all claimant inquiries regarding the action, the Settlement and the procedures for filling out the Proof of Claim forms. SCS has also been in close contact with Lead Counsel to review the administration process. SCS's Report of the Settlement Administrator is annexed hereto as Exhibit A and described below.

10. The annexed Report of the Settlement Administrator sets forth the final status of Claims submitted to SCS as follows:

a. PROPERLY DOCUMENTED CLAIMS: SCS has identified 1,403 properly documented valid Claims. These valid Claims represent total Recognized Losses of $62,249,197.93[2]. These valid Claims were calculated in the manner set forth in the Court-approved Plan of Allocation of the Net Settlement Fund, included in the Notice. *See* **Exhibit B-1** for a spreadsheet of a complete listing of properly documented Claims, which includes 64 Claims that were submitted after the Court-approved Claims filing deadline, October 12, 2012, but are otherwise valid. *See* **Exhibit B-2** listing the 64 Late Claims and **Exhibit B-3** listing the 1,339 properly documented and timely submitted Claims.

b. CLAIMS NOT DOCUMENTED: SCS initially identified 236 inadequately documented Claims. SCS mailed deficiency notices to each of these claimants, advising them of the nature of their deficiency and providing them an opportunity to cure those deficiencies. A sample deficiency notice is annexed hereto as **Exhibit C**. Among

[2] This amount includes recognized losses for timely filed, valid Claims of $59,142,282.36 and recognized losses for late (but otherwise valid) Claims of $3,106,915.57.

these 236 deficient Claims, 109 have been successfully cured and are considered valid. Each of the remaining 127 deficient claimants either did not respond to the deficiency notice or responded with insufficient documentation, and were sent a rejection notice setting forth the reason for their rejection. To date, none of these 127 rejected claimants has objected to or contested this determination. See **Exhibit D** for a list of these rejected claimants.

c. <u>INELIGIBLE CLAIMS</u>: In addition to the 127 Claims discussed above in paragraph b, SCS has identified 5,203 claims, which we recommend for complete rejection. Included in this category are: (i) Claims with no Recognized Losses; (ii) Claims with no purchases during the class period; (iii) Claims with purchases made on the Toronto Stock Exchange; (iv) shares that were received/transferred but not purchased; (v) Claims with a short balance; (vi) duplicate Claims; (vii) Claims filed for securities other than those of IMAX Corporation; and (viii) claimants who withdrew their Claims. *See* **Exhibit E** for a list of these ineligible Claims. We have communicated with these 5,203 claimants and advised them of our determination. A sample rejection notice is annexed hereto as **Exhibit F**. To date, one claimant (claim number 1862) has objected to/ contested his rejection. This Claim was filed by Jeffrey Dayton. Mr. Dayton purchased 25,000 shares during the class period, 20,000 were purchased on December 14, 2006 and 5,000 were purchased on April 25, 2007. Both of his purchases occurred between August 10, 2006 and July 20, 2007, which Table A in the plan of allocation states have an artificial inflation of $0.00, and therefore all 25,000 shares have no recognized losses. **Exhibit G** is a copy of Mr. Dayton's claim, the rejection notice, and Mr. Dayton's email contesting his rejection. We recommend to the Court that Mr. Dayton's claim remains rejected.

11. Each authorized claimant shall be paid the percentage of the net settlement fund that each authorized claimant's recognized loss bears to the total of the recognized losses of all 1,339 Authorized Claimants and 64 Late (but otherwise valid) Claims if those Claims are deemed valid by the Court.

## <u>DISTRIBUTION OF THE SETTLEMENT FUND</u>

12. To carry out such orders as the Court may issue with respect to the distribution of the Settlement Fund to authorized claimants with valid Claims as reflected in Exhibit B-2 and B-3, SCS

staff will calculate the pro rata distribution amounts from the financial statements after payment of administrative fees and expenses and taxes (the "Net Settlement Fund") by comparing the authorized claimants' total recognized loss with the dollar value of the Net Settlement Fund at the time of distribution, prepare checks and check registers and mail checks by prepaid first class mail; issue replacement checks upon request by payee; respond to inquiries about checks and claim calculations; and retain records until further direction of the Court.

13. SCS requests that all funds remaining in the Net Settlement Fund be distributed to the approved claimants.

## FEES AND RECORDS RETENTION

14. SCS incurred unpaid fees and expenses for services rendered and to be rendered in connection with the administration of this settlement through the distribution in the amount of $85,349.62 as set forth in our invoice attached as **Exhibit H**. The fees and expenses cover a variety of services, including but not limited to: (1) creating databases and programming services; (2) arranging for the printing of Claim Packages and the publication of the Summary Notice; (3) printing mailing labels, generating lists of nominees and potential claimants for the initial mailing of the Claim Packages; (4) postage costs; (5) fulfilling all subsequent requests from nominees and beneficial owners for copies of the Claim Package; (6) reviewing and analyzing Claims; (7) sending out notifications for those Claims which were deficient or otherwise rejected; (8) calculating the aggregate Recognized Losses for ultimate distribution of the Net Settlement Fund to Authorized Claimants; (9) preparing income tax returns; (10) preparation of affidavits; (11) preparation of reports and exhibits; (12) correspondence with brokers and nominees; (13) website services; and (14) preparing and mailing out distribution checks.

15. To date $246,061.82 has been received from the Notice & Administrative Fund. SCS respectfully requests that the Court order the payment of the remaining invoiced amount of $85,349.62 from the Net Settlement Fund.

16. SCS respectfully requests authorization to destroy hard copy claim forms and supporting documentation no less than two (2) years following distribution and electronic or magnetic-media data not less than three (3) years after final distribution of the Net Settlement Fund.

Paul Mulholland
Paul Mulholland, CPA

Sworn to and Subscribed before me
This 2nd day of April 2014
In the County of Delaware,
Commonwealth of Pennsylvania
Christina L. Kerper
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Christina L. Kerper, Notary Public
Upper Providence Twp., Delaware County
My Commission Expires Feb. 25, 2015
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES